IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARBUTUS  BIOPHARMA  CORPORATION ) 
and GENEVANT SCIENCES GmbH, )
 )
Plaintiffs, )          **Redacted - Public Version**
 )
v. )          C.A. No. 22-252 (MSG)
 )
MODERNA, INC. and MODERNATX, INC. )
 )
Defendants. )
─────────────────────────────── )
MODERNA, INC. and MODERNATX, INC., )
 )
Counterclaim-Plaintiffs, )
 )
v. )
 )
ARBUTUS  BIOPHARMA  CORPORATION )
and GENEVANT SCIENCES GmbH, )
 )
Counterclaim-Defendants. )

## LETTER TO THE HONORABLE MITCHELL S. GOLDBERG
## REGARDING MODERNA'S MOTION TO COMPEL DISCOVERY
## FROM PLAINTIFFS AND ROIVANT SCIENCES

OF COUNSEL:

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Mark C. McLennan
Caitlin Dean
N. Kaye Horstman
Shaoyao Yu
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

June 7, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

Yan-Xin Li
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400

Dear Judge Goldberg:

Moderna seeks the Court's assistance in fully resolving the discovery disputes between Moderna and Plaintiffs, and Moderna and third party Roivant Sciences Ltd. ("Roivant"), which were previously raised at the March 26, 2024 discovery hearing regarding lobbying materials.[1] *See* D.I. 223; D.I. 264 ("Mar. 26, 2024 Hr'g Tr.") at 13:21–16:7 (inviting Moderna to re-raise this issue with the Court pending more information from Plaintiffs regarding the existence of lobbying materials).

Discovery has confirmed that Plaintiffs and Roivant have engaged in a years-long effort to sway the public against Moderna, including by influencing members of Congress. Ex. 1 (GENV-00508209; GENV-00508210); Mar. 26, 2024 Hr'g Tr. at 9:10–14; Ex. 2 (Feb. 27 to Apr. 30, 2024 Email Chain) at 3–4; Ex. 3 (Zorn Rough Dep. Tr.) at 196:17–207:1. Moderna has sought production of these "lobbying" communications and associated materials from both Plaintiffs and Roivant as they are highly relevant to the hypothetical negotiation analysis associated with Plaintiffs' damages claim. *See* Ex. 4 (Moderna RFP No. 108 to Plaintiffs) at 4; Ex. 5 (Moderna RFP No. 16 to Roivant) at 8. For example, statements made by Plaintiffs or Roivant to members of Congress in an effort to tilt licensing positions more favorably towards Plaintiffs are at least relevant to *Georgia-Pacific* Factors 10 (nature and benefits of patented invention) and 11 (extent to which accused infringer made use of invention). *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). Such communications are also relevant to the extent they undercut Plaintiffs' unfounded assertions that Moderna improperly influenced the U.S. Government regarding the application of 28 U.S.C. § 1498 and the pricing of Moderna's COVID-19 vaccine. Indeed, Plaintiffs and Roivant do not dispute the relevance of lobbying materials. *See* Mar. 26, 2024 Hr'g Tr. at 10:25–11:14. And their shared counsel, Williams & Connolly, ***conceded*** at the March 26 hearing that "there ha[ve] been general efforts" concerning lobbying, but could not confirm at the hearing which entity had retained the lobbyists. *Id.* at 9:10–14; *see also* Ex. 6 (Genevant's 2023 lobbying expenditures); Ex. 7 (Roivant's annual lobbying expenditures). This resulted in the Court directing the parties at the March 26 hearing to meet and confer on the scope and search terms for production of lobbying materials.

Unfortunately, Moderna's good faith efforts following the March 26 hearing to negotiate a resolution have been met by a stone wall, with Plaintiffs and Roivant inappropriately agreeing to engage in such discovery only if, in return, Moderna provides expansive discovery far beyond lobbying related materials. *See generally* Ex. 2 (Feb. 27 to Apr. 30, 2024 Email Chain). Specifically, in line with the discussion with the Court during the March 26 hearing, on April 2, Moderna requested that Plaintiffs and Roivant "perform a targeted collection and production of documents and communications with lobbyists and political consultants concerning Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract." *Id.* at 13. The same day, Plaintiffs requested that Moderna "confirm that Moderna will be providing the same discovery that Moderna is requesting from Plaintiffs." *Id.* at 11. Moderna promptly agreed on April 3 to produce, to the extent they exist, any non-privileged lobbying communications and documents concerning "This Action (*i.e.*, *Arbutus v. Moderna*, No. 22-252

---

[1] Roivant owns a majority interest in Plaintiff Genevant and a minority interest in Plaintiff Arbutus. D.I. 240 at 1.

The Honorable Mitchell S. Goldberg
June 7, 2024
Page 2

(D. Del.)),” “Contract No. W911QY20C0100 ('C0100 Contract'), executed August 2020, between Moderna and U.S. Government for the supply of Moderna's COVID-19 Vaccine,” “[a]pplication of 28 U.S.C. § 1498 to Moderna's C0100 Contract,” and “[t]he U.S. Government's February 2023 Statement of Interest (D.I. 49) filed in This Action concerning Moderna's C0100 Contract.” *Id.* at 10.

The dispute should have ended there. But five days later, Plaintiffs changed their demand and argued that Moderna's production should include swaths of non-lobbying materials, including Moderna's communications with all federal agencies and communications not relevant to this case. Ex. 2 (Feb. 27 to Apr. 30, 2024 Email Chain) at 8–9. In doing so, Plaintiffs' counsel also fabricated a new definition for “lobbying,” which is both inconsistent with the discussion at the March 26 hearing, Mar. 26, 2024 Hr'g Tr. at 6:20–9:2; 9:22–24, and extends far beyond lobbying members of Congress with respect to legislation, capturing essentially any communications any employee of Moderna has had with any federal agency or government department concerning its COVID-19 vaccine. Moderna subsequently attempted to navigate Plaintiffs' efforts to shift and expand the scope of “lobbying materials” beyond the limited set of documents discussed at the March 26 hearing, Mar. 26, 2024 Hr'g Tr. at 10:25–11:14, and even agreed to produce communications between Moderna's Government Affairs Department and the executive branch, Ex. 8 (May 28 to June 6, 2024 Email Chain) at 2. But Plaintiffs still found this compromise insufficient and demanded that Moderna produce “all documents and communications with the Government regarding the U.S. Government's February 2023 Statement of Interest (D.I. 49) and the application/non-application of § 1498, and ***not assert any privilege including the common interest privilege over such documents***.” *Id.* at 1 (emphasis added). In effect, Plaintiffs have conditioned their production of lobbying materials on Moderna's agreement to ***waive privilege*** over its common interest communications with the U.S. Government. Such a condition is inappropriate, and in any event, the requested communications are far beyond the scope of “lobbying.”

Moreover, discovery has further confirmed the relevance of Plaintiffs' lobbying materials. Peter Zorn, Genevant's President and Chief Legal Officer, testified on June 5, 2024 that Genevant began engaging lobbyists after filing suit against Moderna and that Genevant's lobbying efforts have related to “the negative implication of the application of Section 1498 to divert responsibility for patent infringement to the government”—an issue indisputably relevant to this case. Ex. 3 (Zorn Rough Dep. Tr.) at 197:8–23.

Given the relevance of the lobbying related materials sought by Moderna and Plaintiffs' and Roivant's ever-expanding and changing scope of materials they maintain Moderna must produce, Moderna seeks the Court's assistance in bringing this dispute to a close. Specifically, Moderna moves for an order compelling Plaintiffs and Roivant to produce documents and communications with lobbyists and political consultants concerning Moderna, Spikevax®, this Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract. As previously agreed, Moderna will reciprocate and produce the same scope of documents and communications.

The Honorable Mitchell S. Goldberg
June 7, 2024
Page 3

Respectfully,

*/s/ Travis Murray*

Travis Murray (#6882)

Attachments

cc:     All Counsel of Record (via CM/ECF and electronic mail; w/attachments)

# EXHIBIT 1
# Redacted in its Entirety

# EXHIBIT 2

| | |
|---|---|
| **From:** | Haunschild, Philip |
| **To:** | Li, Yan-Xin; Genevant Team; Arbutus_MoFo; Nate Hoeschen; Karen Keller; *jshaw@shawkeller.com |
| **Cc:** | #KEModernaSpikevaxService; "Brian Egan"; "tmurray@morrisnichols.com"; "Blumenfeld, Jack" |
| **Subject:** | RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108) |
| **Date:** | Tuesday, April 30, 2024 12:36:17 PM |

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Yan-Xin,

What your email hyperbolically characterizes as "relentless one-sided demands" are nothing more than our attempts to have Moderna answer the same set of basic questions about what it intends to produce, in the context of a Court-ordered meet-and-confer directed to mutuality. Perplexingly, your email yet again dodges our questions. We have been ready for quite some time to agree on a mutual scope of production for communications concerning lobbying activities, and Moderna's refusal to engage in our meet-and-confer—and that refusal alone—is the cause of any delay. For that reason, any threat to hold open depositions or recall witnesses is baseless.

To the extent Moderna is willing to engage in our meet-and-confer process, here—again—is our list of questions:

1. Please confirm that Moderna will be producing its documents and communications regarding Moderna's lobbying efforts for appropriations for COVID-19 Vaccines or indemnity, and that Moderna is not limiting its agreement to just producing documents specifically discussing the -0100 Contract.

2. Please confirm that Moderna will be producing its communications with the Government regarding the application/non-application of § 1498 to the -0017 Contract, and any documents and communications concerning the decision not to include FAR Clause 52.227-1 or 52.227.1 Alt 1 in the -0017 Contract.

3. Please confirm that Moderna will be producing its communications with the Government concerning this litigation, and the filing of the Statement of Interest [D.I. 49] specifically.

These documents are indisputably relevant to the application of § 1498 and Plaintiffs' damages contentions, as we have already explained. If Moderna's position is that it has already produced all responsive documents identified after a reasonable search within categories (1) and (2) above, and that it has no communications with the U.S. Government concerning the Statement of Interest [D.I. 49] that are responsive to (3), then please say so. Otherwise, please answer our questions.

Moderna's attempt to redefine the scope of the word "lobbying" so as to exclude relevant communications is improper. Any reciprocal agreement must resolve the full scope of these materials and plainly is consistent with, not "contrary" to, the parties' discussions with the Court. Accordingly, to the extent that Moderna engaged in any executive branch lobbying concerning the

issues the parties have identified, those are relevant communications, and Moderna should be collecting and producing those as part of a reciprocal scope. Please confirm that Moderna will be doing so.

We continue to stand ready to bring this issue to a close when Moderna is willing to do so.

Thank you,

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Monday, April 29, 2024 11:37 AM
**To:** Haunschild, Philip <phaunschild@wc.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Philip:

Although you reference "the Court's direction" "regarding mutuality," Plaintiffs' relentless and one-sided demands of Moderna are anything but mutual. Moderna has not "dodge[d]" Plaintiffs' questions. We answered them clearly, and it is frankly perplexing what you are intending to achieve beyond unnecessary delay by using different words to ask a question Moderna already answered multiple times.

- On your first point, please refer to our April 15 correspondence where we reiterated what we have agreed to search and produce. We did not place "narrow[] limit[s]" on the 4 categories that we identified to you over and over again. We decline to engage in further unproductive discourse on this long-standing issue. Please produce the lobbying materials that Plaintiffs "stand ready to produce" but for their own hold out. And as you further know, Plaintiffs' responses to Moderna's Interrogatory No. 17 are plainly deficient. Plaintiffs' delay in producing their lobbying documents and related failure for providing an actual substantive response to Interrogatory No. 17, just weeks before close of fact discovery and with depositions already commencing, is prejudicial to Moderna.
- Your attempt to expansively redefine lobbying is contrary to what was discussed with the Court during the March 26 hearing. Williams & Connolly notably did not offer this definition of "lobbying" during that teleconference, and only sought to do so after Moderna agreed it would produce reciprocal lobbying communications, to try to extract yet more discovery out of Moderna. Although irrelevant to the current discussion on lobbying, as we have said again and again, we have produced responsive communications related to negotiations concerning FAR 52-227-1 for the C-0100 and C-0017 contracts.
- As to your second point, which undermines your first, it is unclear how the laundry list of items you identify fall within your own quoted definition of 2 U.S.C. § 1602(8). The entire basis for which Plaintiffs keep raising this issue appears to be some belief that "there is more" than what Moderna already produced, while failing to accept that what you mischaracterize as "a narrow scope" is, in fact, the actual scope of existing, non-

privileged, and responsive documents that were found and produced after a good faith, reasonable investigation under the Federal Rules.

Please confirm **by noon ET on Tuesday, April 30, 2024** that Plaintiffs will produce **by Friday, May 3, 2024** the lobbying materials requested per Moderna's RFP 108 and as outlined in our April 3 email. Otherwise, Moderna will need to seek relief from the Court, and hold deposition(s) open and/or recall Plaintiffs' witness(es) as a result of Plaintiffs' late productions of lobbying materials. Moderna reserves all rights.

Best regards,
Yan-Xin

**Yan-Xin Li**
-----------------------------------------------------------
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
-----------------------------------------------------------
yanxin.li@kirkland.com

---

**From:** Haunschild, Philip <phaunschild@wc.com>
**Sent:** Friday, April 19, 2024 12:56 PM
**To:** Li, Yan-Xin <yanxin.li@kirkland.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Yan-Xin:

We stand ready to produce the lobbying materials in the categories we have identified to you in our discussions if Moderna lives up to it its commitment to the Court—and the Court's direction to the parties—regarding mutuality.  To confirm our understanding in that regard, we have now asked our questions four times, and your email below dodges most of them yet again.  To your first two bullet points below:

- We disagree that Moderna can narrowly limit its "lobbying" to communications with Congress. That is contrary to the statutory definition for lobbying.  *See e.g.*, 2 U.S.C. § 1602 ("The term 'lobbying contact' means any oral or written communication (including an electronic communication) to a covered executive branch official or a covered legislative branch official that is made on behalf of a client with regard to—(i) the formulation, modification, or adoption of Federal legislation (including legislative proposals); (ii)the formulation, modification, or adoption of a Federal rule, regulation, Executive order, or any other program, policy, or position of the United States Government; (iii) the administration or execution of a Federal program or policy (including the negotiation, award, or administration of a Federal contract, grant, loan, permit, or license) . . . .").  If Moderna engaged in any executive branch lobbying concerning the issues the parties have identified, those are

relevant communications, and Moderna should be collecting and producing those as part of a reciprocal scope.  Please confirm that Moderna will be doing so.

- We do not dispute that Moderna has produced a narrow scope of its communications with the Government concerning the negotiation of the -0100 and -0017 Contracts, and we have reviewed those documents.  We are raising our questions because, based on our review, Moderna has **not** provided its communications with the Government concerning the Statement of Interest, this litigation, or the application of § 1498 to the -0017 Contract.  We have simply asked Moderna to confirm that as part of its "targeted collection" it will be collecting and producing communications with DOJ, HHS, the Department of Defense, and/or other federal agencies, concerning this litigation, the application/non-application of § 1498 to the -0017 Contract, and any documents and communications concerning the decision not to include FAR Clause 52.227-1 or 52.227.1 Alt 1 in the -0017 Contract, and the filing of the Statement of Interest [D.I. 49] specifically.  Please confirm that Moderna will be producing these communications, and answer the questions under numbers 2, 3, and 4, in my April 18, 2024 email below.

Please let us know if we need to seek the Court's assistance in obtaining answers to these questions.

Thank you,

Phil

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Friday, April 19, 2024 10:50 AM
**To:** Haunschild, Philip <phaunschild@wc.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Philip:

The issue is simple: are Plaintiffs providing lobbying discovery or not? Instead of resolving this narrow issue, as encouraged by the Court during the March 26 teleconference, Plaintiffs continue to string this dispute along with endless questions seeking to relitigate various stale aspects of discovery. Please confirm by **4:00 pm ET today** whether Plaintiffs are providing the lobbying materials we requested long ago. Otherwise, Moderna will have to approach the Court for relief, which is disappointing since the parties largely appear to be in agreement about what lobby discovery each side is going to provide.

As to your questions and for clarity:

- Yes, we are defining lobbying as communications with lobbyists/members of congress.
- Moderna has produced vast communications with the U.S. Government, including on issues you raise below (negotiation of the C0100/C017 contract, including clauses at issue such as FAR 52-227). It appears Plaintiffs just haven't bothered to look at Moderna's production, despite the incredible burden inflicted on Moderna in producing it.
- Both parties agree that lobbying discovery will _**not**_ be limited to only those that are pre-complaint.


**Yan-Xin Li**

---------------------------------------------------------------

**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618

---------------------------------------------------------------

yanxin.li@kirkland.com

---

**From:** Haunschild, Philip <phaunschild@wc.com>
**Sent:** Thursday, April 18, 2024 12:31 PM
**To:** Li, Yan-Xin <yanxin.li@kirkland.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Hi Yan-Xin,

Moderna has not "clearly stated" the discovery that it is agreeing to provide, and we have provided precise and narrow questions to which we would appreciate answers.  We have now asked these questions three times.  We cannot agree to a reciprocal scope of discovery when we do not even know what Moderna is agreeing to provide.

1. Regarding "federal agencies," your email ignores our questions.  Is Moderna agreeing to produce its communications with federal agencies regarding the topics Moderna has identified below?  In other words, if Moderna communicated with any federal agencies regarding the topics that we have requested, then they should be produced.  If Moderna is narrowly defining its "lobbying communications/documents" to mean its communications with lobbyists and/or Congress, then please say so.

2. To the extent that Moderna is seeking Plaintiffs' communications with the federal government—whether or not couched as lobbying communications—then Plaintiffs are similarly seeking confirmation that Moderna will be producing its communications with the Government about the same issues.  Please answer our questions.  Regarding your assertion that our requests "seek[] privileged information," we strongly disagree. To the extent that Moderna is asserting a common interest privilege over these communications, then Moderna must provide them on a privilege log, so that Plaintiffs can challenge this improper assertion

of a common interest.  Please confirm whether such communications have occurred, and if so, please confirm that Moderna will be searching for and producing them, or providing them on a privilege log, as soon as possible to avoid further delay in Plaintiff's ability to seek relief from the Court.

3. The document we have cited establishes that Moderna has lobbied for appropriations related to the COVID-19 Pandemic generally, and legislation affecting the funding and federal response more generally.  Moderna's involvement and attempts to secure additional funding, indemnity, or protection are relevant to assessing the parties' respective positions during the Hypothetical Negotiation.  Please answer the question that we have asked:

>Please confirm that Moderna will be producing its documents and communications regarding Moderna's lobbying efforts for appropriations for COVID-19 Vaccines or indemnity, and that Moderna is not limiting its agreement to just producing documents specifically discussing the -0100 Contract.

4. We understand that Moderna may have produced documents concerning the negotiations of the -0100 and -0017 Contracts, but we have asked a specific question regarding the application of § 1498 to the -0017 Contract, which your email does not answer:

>Please confirm that Moderna will be producing its communications with the Government regarding the application/non-application of § 1498 to the -0017 Contract, and any documents and communications concerning the decision not to include FAR Clause 52.227-1 or 52.227.1 Alt 1 in the -0017 Contract.

5. Plaintiffs continue to disagree with the relevance of any of Plaintiffs' lobbying communications, but will agree not to limit their production of such communications to those prior to the filing of the complaint, on the understanding that Moderna is doing the same.

Finally, your assertions that any delay is Plaintiffs fault, not Moderna's, is simply incorrect.  You assert that we waited "days" to follow up, yet we responded after three business days.  Moderna waited more than a week.  Plaintiffs did not let the April 15, 2024 date "come and go"—we responded to your email in the early morning on April 8, and Moderna did not respond until late in the evening on April 15.  We would like to resolve this issue expeditiously, but Moderna' refusal to provide us with responses to our straightforward questions undermines our ability to do so.  Please provide answers to the questions above by April 19.

Thank you,

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Monday, April 15, 2024 9:39 PM
**To:** Haunschild, Philip <phaunschild@wc.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen

Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan'
<began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>;
'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Hi Philip:

Your reliance on Plaintiffs' RFPs 36, 88, and 172 is misplaced, and ignores Moderna's prior responses and the parties' earlier discussions as to these specific requests, which Plaintiffs refused to reasonably limit to relevant issues in this litigation.  *See, e.g.*, Moderna's 2/2/2023 R&O to Plaintiffs' 1st Set of RFPs (agreeing to produce non-privileged documents responsive to RFP 88); Moderna's 8/1/2023 Letter (indicating that seeking all correspondence with any @gov email account is overbroad for RFP 36); Moderna's 12/27/2023 Letter (noting Plaintiffs' tenuous explanation of relevance for communications with ***any*** U.S. government agency as to RFP 172).

Although Moderna has already ***clearly stated*** the scope of additional reasonable search it is willing to conduct as to lobbying communications/documents, your five bullets yet again attempt to shift and expand Plaintiffs' endless and disproportionate discovery on an issue Moderna originally raised nearly a year ago.  We provide responses below, and accordingly understand that Plaintiffs ***will also be reciprocally*** searching and producing Plaintiffs' lobbying communications/documents.

1.  It is unclear what "federal agencies" Plaintiffs appear to believe that Moderna is omitting, or what relevance a specific federal agency may have over another or over Congress.  Nevertheless, as stated in our April 3 email below, Moderna agrees to conduct a reasonable search and produce non-privileged lobbying communications/documents concerning (i) this Action (i.e., Arbutus v. Moderna, No. 22-252 (D. Del.)); (ii) Contract No. W911QY20C0100 ("C0100 Contract"), executed August 2020, between Moderna and U.S. Government for the supply of Moderna's COVID-19 Vaccine; (iii) Application of 28 U.S.C. § 1498 to Moderna's C0100 Contract; (iv) The U.S. Government's February 2023 Statement of Interest (D.I. 49) filed in This Action concerning Moderna's C0100 Contract.  Although Plaintiffs' latest questions go far ***beyond*** lobbying, Moderna already agreed to extensive discovery regarding its interactions with other agencies such as FDA, etc.

2.  Your second bullet seeking "communications with the Department of Justice—HHS and the Department of Defense" appears again to go ***beyond*** lobbying communications/documents, which is improper and outside of the scope of Moderna's ongoing attempt to come to agreement on lobbying communications/documents, which Plaintiffs continue to stymie rather than resolve.  Moreover, Plaintiffs have already received HHS or DoD communications via its subpoena to the U.S. government, and Moderna has produced such information through search terms and ESI custodians.  Your request for "communications made through Moderna's litigation counsel for this action … to the extent that such communications have transpired" seeks privileged information.  That said, if Moderna's search for lobbying communications/documents on the four enumerated categories locates privileged communications, Moderna will log them in a privilege log to the extent required by the ESI order.

3.  It is unclear for what purpose Plaintiffs cite to https://lda.senate.gov/filings/public/filing/b24517e2-44c7-4aca-b86b-f634b58e26e1/print/ or what Plaintiffs are attempting to encompass by "appropriations for COVID-19 Vaccines or indemnity."  As Moderna already reiterated in the first point above, Moderna has already laid out the four categories for which it will search and produce non-privileged lobby communications/documents.  Plaintiffs have otherwise articulated no basis of relevance or why the categories Moderna clearly laid out do not resolve their concerns.

4.   This bullet is again asking for information **beyond** the scope of the parties' production of lobbying communications/documents.  Moderna has already produced relevant and non-privileged documents concerning the C-0017 contract after a reasonable search, including through use of search terms across ESI custodians, to the extent such information exists. Indeed, Moderna has produced many documents concerning the negotiations the C-0100 and C-0017 contracts.

5.   Moderna will not limit search and production of its lobbying communications/documents to only pre-Complaint, **provided that** Plaintiffs agree to do the same.  During the parties' February 29 meet and confer, Plaintiffs stated that Plaintiffs' 2023 lobbying activities were not relevant because litigation was ongoing.  Based on Plaintiffs' ask now, please confirm that Plaintiffs are not limiting search and production of Plaintiffs' lobbying communications/documents to only prior to the filing of the Complaint.

Any "delay" in this process has been brought on by Plaintiffs, not Moderna, particularly because you waited days to follow-up to Moderna's April 3 email on an issue for which Plaintiffs should have already been investigating.

With the above, please provide by **Wednesday, April 17** your confirmation that the issue of reciprocal scope as to lobby communications/documents is resolved, and propose a date for which the parties can mutually make the corresponding productions given that Plaintiffs let the April 15 date come and go.

Best regards,
Yan-Xin

**Yan-Xin Li**

---------------------------------------------------
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
---------------------------------------------------

yanxin.li@kirkland.com

---

**From:** Haunschild, Philip <phaunschild@wc.com>
**Sent:** Monday, April 8, 2024 8:58 AM
**To:** Li, Yan-Xin <yanxin.li@kirkland.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Hi Yan-Xin,

Contrary to the representations in your email our requests have not "shift[ed] and expand[ed]." We asked Moderna whether it would be producing these relevant documents during our February 29, 2024 meet-and-confer, and we explained that the communication and documents we have repeatedly requested are responsive to Plaintiff's RFPs, including RFP 36 (All documents related to, or constituting, communications with any U.S. government agency concerning the Accused Product), RFP 88 (All documents relating to Defendants' seeking indemnification from the U.S. Government for infringing the Patents-in-Suit), and RFP 172 (All documents related to, or constituting,

communications with any U.S. government agency concerning this action).  Moderna's communications with its lobbyists are responsive to these RFPs, as are communications between Moderna and its agents with the Department of Justice and/or other government agencies.

We appreciate Moderna providing a proposed scope of reciprocal discovery. In the interest of compromise, we will agree to narrow the reciprocal scope that Plaintiffs have requested of Moderna.  But regarding the categories of documents that you have identified, we have the following clarifying questions and adjustments:

- Please confirm that Moderna is not limiting its "non-privileged lobbying communications/documents" to just those with lobbyists and/or Congress.  In other words, will Moderna be including its communications with federal agencies regarding the topics Moderna has identified?
- Please confirm that Moderna will be producing its communications with the Department of Justice, and/or its clients—HHS and the Department of Defense—regarding this litigation, and the filing of the Statement of Interest [D.I. 49] specifically.  This includes communications made through Moderna's litigation counsel for this action, to the extent that such communications have transpired.  To the extent that Moderna claims a common interest over these communications and will be withholding them, then please confirm that Moderna will be updating its privilege log to identify these communications.
- Please confirm that Moderna will be producing its documents and communications regarding Moderna's lobbying efforts for appropriations for COVID-19 Vaccines or indemnity, and that Moderna is not limiting its agreement to just producing documents specifically discussing the -0100 Contract. *See, e.g.*, https://lda.senate.gov/filings/public/filing/b24517e2-44c7-4aca-b86b-f634b58e26e1/print/.
- Please confirm that Moderna will be producing its communications with the Government regarding the application/non-application of § 1498 to the -0017 Contract, and any documents and communications concerning the decision not to include FAR Clause 52.227-1 or 52.227.1 Alt 1 in the -0017 Contract.  Based on our review of Moderna's production to date, Moderna has produced no such communications.  This is a narrowed scope of documents responsive to the first category of documents we identified in our April 2, 2024 email below.
- Please confirm that Moderna is not limiting its production of documents just to documents prior to the filing of the Complaint.

Provided that Moderna will confirm the above, Genevant and Roivant will agree to "perform a targeted collection and production of documents and communications with lobbyists and political consultants concerning Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract," as requested in your April 2, 2024 email below.  We will conduct a search of the custodians most likely to have such documents and communications, from each company.   We have already confirmed that we do not have noncustodial repositories of these documents and communications.

Please provide us with your confirmation to the information that we have requested above by Tuesday, April 9.  We will endeavor to make this production as soon as possible.  But given

Moderna's delay in providing a reciprocal scope, we cannot guarantee that this production will be made by April 15.

Thank you,

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Wednesday, April 3, 2024 11:39 PM
**To:** Haunschild, Philip <phaunschild@wc.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Philip:

Of note, in the supposed "four times" Plaintiffs have asked Moderna regarding lobbying communications, the scope of your requests continue to shift and expand. As one example, your March 19, 2024 email seeks Moderna's "communications (including through agents) with the Government … including government purchases of COVID-19 Vaccines, liability protections and indemnification, and the application of § 1498," which you claim are "responsive" to "numerous" unidentified Plaintiffs' RFPs. Your April 2, 2024 email goes on to expand the scope to include the Government's Statement of Interest and "communications regarding any public relations campaigns regarding COVID-19 Vaccines" (whatever that may mean, given that such a request is not remotely related to any of Plaintiffs' RFPs). By contrast, Moderna's request for Plaintiffs' lobbying communications is clearly sought by Moderna's RFP 108.

Your comparison of Moderna's burdensome additional collection and timely production of documents regarding GAO Report No. 21-319 with Plaintiffs' ongoing fumbles in collecting patent prosecution and prior litigation documents rings hollow. See, e.g., 3/26/2024 and 3/29/2024 K. Horstman emails.

That said, given your representation that Plaintiffs will agree to "reciprocal scope of discovery" as to this issue, Moderna confirms that it will conduct a reasonable search and produce any non-privileged lobbying communications/documents concerning:

- This Action (i.e., *Arbutus v. Moderna*, No. 22-252 (D. Del.)).
- Contract No. W911QY20C0100 ("C0100 Contract"), executed August 2020, between Moderna and U.S. Government for the supply of Moderna's COVID-19 Vaccine.
- Application of 28 U.S.C. § 1498 to Moderna's C0100 Contract.
- The U.S. Government's February 2023 Statement of Interest (D.I. 49) filed in This Action concerning Moderna's C0100 Contract.

Although Moderna has already searched for information responsive to the above four categories based on the parties' agreed-upon search terms across Moderna's 10 ESI custodians, Moderna will additionally perform a

targeted search from individual(s) and department(s) at Moderna who are responsible for lobbying and produce non-privileged information that may exist as to these four categories.

Moderna's proposal above is contingent on Plaintiffs' confirmation that they will perform the same targeted collection—including from individual(s) and department(s) at Arbutus and Genevant who are responsible for lobbying—for the categories of lobbying communications/documents outlined in our April 2, 2024 email below. For sake of clarity, Plaintiffs will not arbitrarily limit its search efforts to a fixed number of individual custodians (beyond Plaintiffs' already-agreed-upon 10 ESI custodians) or to only custodial repositories. We propose that the parties complete productions of any identified lobbying communications/documents by April 15, 2024.

Please confirm Plaintiffs' agreement by **COB tomorrow, April 4, 2024**.

Thanks,
Yan-Xin

**Yan-Xin Li**
------------------------------------------------
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
------------------------------------------------
yanxin.li@kirkland.com

---

**From:** Haunschild, Philip <phaunschild@wc.com>
**Sent:** Tuesday, April 2, 2024 5:10 PM
**To:** Li, Yan-Xin <yanxin.li@kirkland.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Yan-Xin,

As expressed in my separate email today regarding Moderna's request for lobbying communications from Roivant, and in my March 19 email below, Plaintiffs would like to confirm that Moderna will be providing the same discovery that Moderna is requesting from Plaintiffs. We have asked Moderna for this confirmation at least four times. Resolving a reciprocal scope of discovery on this topic is proper, and Moderna was directed by the Court to do so. *See* D.I. 262. In light of Moderna's request that "Plaintiffs perform a ***targeted*** collection and production of documents and communications with lobbyists and political consultants concerning Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract," please respond by COB tomorrow, confirming that:

- Moderna is producing its communications (including through agents) with the Government, about Government purchases of COVID-19 Vaccines, liability protections and indemnification, Plaintiffs or this Action, and the application of § 1498.

- Moderna is producing its communications (including through agents such as litigation counsel for this Action) with the Government regarding this Action, and regarding the Government's Statement of Interest filed in this Case.
- Moderna is producing its lobbying communications and communications regarding any public relations campaigns regarding COVID-19 Vaccines, liability protections and indemnification, the application of § 1498, and Plaintiffs.
- For each of the foregoing categories, Moderna is not limiting its search to those documents that hit on search terms within the agreed-to custodians. Moderna will conduct targeted collections, including of all relevant non-custodial repositories, of the responsive files from any custodian most likely to have responsive information concerning these categories.

Finally, Moderna's reliance on its targeted search for the narrowed scope of communications regarding the plainly relevant GAO Report No. 21-319 are inapt. Further, Plaintiffs have gone to separate outside counsel and conducted targeted searches for materials from their files repeatedly at Moderna's repeated request, including the files of patent prosecution counsel and the files of prior litigation counsel.

Thank you,

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Tuesday, April 2, 2024 11:06 AM
**To:** Haunschild, Philip <phaunschild@wc.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Philip:

As the Court indicated during the parties' March 26, 2024 teleconference, lobby documents and communications (e.g., statements about this lawsuit) are discoverable. 3/26/2024 Hr'g Tr. 10:25-11:2. Moreover, Williams & Connolly **conceded** that "there ha[ve] been general efforts" concerning lobbying. *Id.* 9:10-14; *see also* https://lda.senate.gov/filings/public/filing/f80ce191-b09b-47af-b676-d3e9cc51cd82/print/. Thus, your representation that merely because Plaintiffs do not have non-custodial repositories and that certain predefined categories of documents have been searched across Plaintiffs' custodians using search terms does **not** mean that lobbying communications would already be captured as you claim.

Indeed, just as Moderna took on the added burden and expense of separately investigating, collecting, and

producing documents concerning GAO Report No. 21-319 from other custodians and even separate outside counsel, so too should Plaintiffs perform a **_targeted_** collection and production of documents and communications with lobbyists and political consultants concerning Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract as requested in RFP No. 108. Your statement that Moderna is "demanding Plaintiffs engage in a whole sale additional custodial review" is incorrect. To the extent you state that such lobby communications "have no relevance to the issues in the case," the Court disagrees. 3/26/2024 Hr'g Tr. 10:25-11:2. This is a targeted request that could easily be resolved by simply asking your in-house contacts who or which department at Genevant and at Arbutus are responsible for any such lobbying efforts and collecting the responsive documents. Plaintiffs' feigned difficulty with such a collection is not productive and will only delay the schedule if we have to seek relief from the Court.

Please confirm that Plaintiffs will perform a targeted collection and produce documents requested by RFP No. 108 by **April 15, 2024**, in advance of any deposition of Plaintiffs' witnesses. Any delay or refusal to produce these discoverable documents prejudices Moderna, as we have been seeking this information since May 2023. Moderna reserves all rights as necessary, including to recall Plaintiffs' witnesses and take depositions out of time.

As to your query, Moderna will respond separately regarding Plaintiffs' specific RFPs that you claim seek comparable documents.

Best regards,
Yan-Xin

**Yan-Xin Li**
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑
yanxin.li@kirkland.com

**From:** Haunschild, Philip <phaunschild@wc.com>
**Sent:** Tuesday, March 19, 2024 1:30 PM
**To:** Li, Yan-Xin <yanxin.li@kirkland.com>; Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Hi Yan-Xin,

To your first question below, Plaintiffs confirm that we do not have non-custodial repositories of "lobbying" communications.

To your second question, Plaintiffs have already agreed to produce (and have produced) categories of documents that include their non-privileged communications with third parties discussing the Patents-in-Suit, Moderna's LNP technology, or the Accused Product in this case, identified after the reasonable scope of Plaintiffs' custodial search. Put simply, any non-privileged "lobbying"

communications that would have any ostensible relevance to this case would already be captured by these categories.

To the extent that Moderna is demanding Plaintiffs engage in a wholesale additional custodial review, above and beyond the extensive scope of Plaintiffs' agreed-upon custodial ESI search, that is not proportional, given that these communications have no relevance to issues in the case.

We also asked Moderna to investigate and confirm whether Moderna would likewise be producing its communications (including through agents) with the Government, about relevant issues, including government purchases of COVID-19 Vaccines, liability protections and indemnification, and the application of § 1498, which are responsive to numerous of Plaintiffs' RFPs. We have explained that unlike any lobbying communications from Plaintiffs, Moderna's communications with the Government—including through its $ 2.4 million in lobbying expenditures since the start of the Pandemic—are directly relevant to disputed issues. Moderna said it would investigate and revert back to us. Please let us know Moderna's position with respect to its own lobbying communications.

Thank you,

**Philip N. Haunschild**
**Associate | Williams and Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5979 | phaunschild@wc.com | www.wc.com

---

**From:** Li, Yan-Xin <yanxin.li@kirkland.com>
**Sent:** Tuesday, March 12, 2024 10:30 AM
**To:** Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Counsel:

As discussed during the parties' meet and confer on February 29, please let us know Plaintiffs' position with respect to the below.

Best regards,
Yan-Xin

**Yan-Xin Li**
--------------------------------------------
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
--------------------------------------------

yanxin.li@kirkland.com

---

**From:** Li, Yan-Xin
**Sent:** Tuesday, February 27, 2024 12:41 PM
**To:** Genevant Team <GenevantTeam@wc.com>; Arbutus_MoFo <Arbutus_MoFo@mofo.com>; Nate Hoeschen <nhoeschen@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; *jshaw@shawkeller.com <jshaw@shawkeller.com>
**Cc:** #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com>; 'Brian Egan' <began@morrisnichols.com>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com>
**Subject:** Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Dear Counsel:

As a follow-up to separate correspondence concerning Moderna's RFP No. 108 (lobbyists and political consultants Plaintiffs have retained w/r/t Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract), Plaintiffs stated:

> To the extent that Plaintiffs have non-privileged communications with lobbyists or consultants regarding Moderna, including Moderna's COVID-19 vaccine, and such documents are responsive to other categories that Plaintiffs have agreed to produce, e.g., the Moderna Accused Product and LNP Communications, and were hit on by the parties' agreed-upon search terms and custodians, such documents have been or will be produced.

2/1/2024 P. Haunschild Email. Please confirm that Plaintiffs have also conducted a search for responsive, non-privileged information across non-custodial sources or repositories. For instance, Genevant had spent approximately $220,000 of total lobbying expenditures in 2023. https://www.opensecrets.org/federal-lobbying/clients/summary?cycle=2023&id=D000107411. If any part of the lobbying expenditures in 2023 (or 2024 or prior years) was related to this case, including regarding Moderna and Spikevax®, such responsive information should be produced—whether or not hit on by ESI search terms or falling into a predefined category.

Separately, the language of your prior correspondence suggests that non-privileged communications with lobbyists or consultants have or would be produced **only if** such documents were (i) also responsive to other categories Plaintiffs already agreed to produce **and** (ii) were hit on by ESI search terms across agreed-upon custodians—which is overly limiting. Please clarify if our understanding is not accurate.

Best regards,
Yan-Xin

**Yan-Xin Li**
-----------------------------------------
**KIRKLAND & ELLIS LLP**
555 California Street, San Francisco, CA 94104
**T** +1 415 439 1618
-----------------------------------------

yanxin.li@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email

to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 3

1

```
1              N O T I C E
2        This transcript is an UNCERTIFIED ROUGH
3   DRAFT TRANSCRIPT ONLY.  It contains the raw output
4   from the court reporter's stenotype machine
5   translated into English by the court reporter's
6   computer, without the benefit of proofreading.  It
7   will contain untranslated steno outlines,
8   mistranslations (wrong words), and misspellings.
9   These and any other errors will be corrected in
10  the final transcript.  Since this rough draft
11  transcript has not been proofread, the court
12  reporter cannot assume responsibility for any
13  error.  This rough draft transcript is intended to
14  assist attorneys in their case preparation and is
15  not to be construed as the final transcript.  It
16  is not to be read by the witness or quoted in any
17  pleading or for any other purpose and may not be
18  filed with any court.
19
20
21
22
23
24
25
```

; ; ;

2

1          P R O C E E D I N G S

2     VIDEO TECHNICIAN:  Here begins media

3 unit 1 in the videotaped deposition of witness

4 witness in the matter of Arbutus Biopharma corp,

5 et al., versus Moderna Inc., et al., in the United

6 States District Court for the district of

7 Delaware, case 1:  22-cv-00252-MSG.

8     Today's date is June 5th, 2024.  The time

9 on the video monitor is 810 a.m.

10     The videographer today is Adam humeen,

11 representing Planet Depos.

12     This video deposition is taking place at

13 Williams & Connolly, LLP, 680 Maine avenue,

14 Southwest, Washington, D.C. 20024.

15     Would counsel please voice identify

16 themselves and state whom they represent.

17     MS. LI:  Attorney attorney of Kirkland &

18 Ellis on behalf of Moderna defendants **CHECK**.

19 With me is Gina whacker **SPELLING** of Kirkland &

20 Ellis.

21     MR. HARBER:  Adam Harber for plaintiff

22 Genevant and the witness.  With me is Ricardo

23 Leyva.  And I believe by video we have Jack Lane

24 of Morrison Foerster for Arbutus.

25     I want to say at the outset, because the

3

1  witness is in-house lawyer for Genevant, obviously

2  we do not intend to and are not waving privilege

3  with anything today.  And so, you know, as we said

4  in response to the 30(b)(6) notice, a lot of the

5  topics sort of call for and are on the edge of

6  what's privileged and what's not.

7      And in none of our answers are we

8  intending to waive privilege and we may need

9  breaks to discuss what the witness can or can't

10  say, depending on the question.

11      VIDEO TECHNICIAN:  The court reporter is

12  Christina Hotsko representing Planet Depos.

13  Whereupon,

14          PETER ZORN,

15  being first duly sworn or affirmed to testify to

16  the truth, the whole truth, and nothing but the

17  truth, was examined and testified as follows:

18  BY MS. LI:

19      Q  Good morning, Mr. Zorn.  Would you please

20  state your full name and address for the record?

21      A  Peter Andrew Zorn.  4 Goldman circle.

22  Bedford, Massachusetts 01730.

23      Q  And you understand that there is a court

24  reporter and a videographer here today?

25      A  I do.

4

1    Q  And you understand that the purpose of

2  this deposition is to record and transcribe your

3  testimony?

4    A  I do.

5    Q  And do you agree to let me know that, if I

6  ask a question and you don't understand it, you'll

7  let me know?

8    A  I will try.  Yes.

9    Q  Okay.  And if you answer a question, I'm

10  going to assume that you heard the question and

11  that you understood it.  Agreed?

12    A  Agreed.

13    Q  For the benefit of the court reporter, if

14  we could please provide audible answers.  And I

15  will do my best not to speak over you.  Agreed?

16    A  Agreed.

17    Q  Okay.  At times, your counsel may object.

18  And these are kind of a formality.  So unless your

19  counsel instructs you not to answer, you are

20  required to answer the question that I posed.

21      Do you understand?

22    A  I do.

23    Q  And you understand that you are under oath

24  today?

25    A  I do.

5

1    Q  Is there any reason that you cannot

2  provide truthful and accurate testimony?

3    A  No.

4    Q  And could you tell me what your current

5  role **CHECK** are at Genevant?

6    A  I'm the president and chief legal officer.

7    Q  And how long have you been with Genevant?

8    A  I joined Genevant in January of 2019.

9    Q  And when you joined Genevant, were you

10  president and chief legal officer?

11    A  I was not.

12    Q  Okay.  What was your title when you joined

13  Genevant?

14    A  Chief operating officer.

15    Q  And when did you become president and

16  chief legal officer?

17    A  I'm not sure I remember specifically.  I

18  believe it was in the middle of 2020.

19    Q  And has your role changed since becoming

20  president and chief legal officer?

21    A  No.

22    Q  And can you describe, generally, your

23  responsibilities at Genevant?

24    A  Sure.  I head up all of our corporate

25  partnering and also handle all legal matters for

6

1 Genevant.

2    Q  And can you give a little more detail as

3 to what corporate partnering is?

4    A  Sure.  We -- we collaborate *selectively

5 with companies from pharma to biotech to

6 universities, spinouts **CHECK** and the like.

7 And I negotiate document those transactions -- or

8 lead those functions.

9    Q  Are there any activities for for which

10 Genevant does not have corporate partners?

11    A  What do you mean by "activities"?

12    Q  So you mentioned that you're in charge of

13 corporate partnering and you work with various

14 universities or companies.

15      Are there any things that Genevant does

16 that does not involve corporate partnering?

17    A  Well, we have G&A, just like any other

18 company.  We also have our own internal technology

19 development as well.

20    Q  And how long have you been leading

21 functions relating to corporate partnering?

22  A  I don't know precisely.

23  Q  And prior to Genevant, where were you?

24  A  Immediately prior?

25  Q  Uh-huh.

196

███ ████████████████

█████████████████████████

██████████████████████████

████████████████████████

███████████████████

███  █████████████████████

7    Q  And looking at Exhibit 26, to date has

8  Genevant ever received royalties equal to

9  15 percent of net sales for a licensed product?

10    A  Genevant hasn't received royalties on net

11  sales for licensed products to date.

12    Q  Do you expect -- does Genevant expect to

13  receive royalties on net sales for licensed

14  products in the future?

15    A  That's certainly the plan.  That's what we

16  hoped will happen.  Yes.

17    Q  Mr. Zorn, does Genevant engage in

18  lobbying?

19      MR. HARBER:  Objection.  Outside the

20  scope.

21      THE WITNESS:  Do we engage in lobbying?

22  We have engaged in lobbying.

23  BY MS. LI:

24    Q  And for what subject matter purpose has

25  Genevant engaged in lobbying?

197

1      MR. HARBER:  I'll object to the whole line

2  of questions as outside the scope, so I don't have

3  to interrupt every time.

4      THE WITNESS:  Repeat the question, I'm

5  sorry.

6  BY MS. LI:

7    Q  Sure.

8      For what purpose has Genevant engaged in

9  lobbying?

10     A  We engage in lobbying to increase

11  awareness of the importance to the biotech

12  industry of intellectual property and the negative

13  implication of the application of Section 1498 to

14  divert responsibility for patent infringement to

15  the government.

16     Q  In what time periods has Genevant engaged

17  in this lobbying?

18     A  I do not recall specifically when we

19  started to do that.  It was within the last few

20  years.

21     Q  Was it before or after Genevant and

22  Arbutus filed suite against Moderna?

23     A  I believe it was after.

24     Q  Okay.  Are you aware if Roivant engages in

25  lobbying efforts?

198

1    A  I am not.

2    Q  Is the lobbying efforts by... separate and

3  apart from any lobbying efforts by Roivant?

4      MR. HARBER:  Objection to form.

5      THE WITNESS:  What do you mean by separate

6  and apart?

7  BY MS. LI:

8    Q  Does Roivant -- is Roivant involved in

9  Genevant's lobbying efforts?

10      MR. HARBER:  Objection to form.  Outside

11  the scope.

12      THE WITNESS:  Genevant engaged the

13  lobbyists -- Genevant engaged the lobbyists.

14  BY MS. LI:

15    Q  Do you know which lobbying groups Genevant

16  hire for the purposes of its lobbying efforts?

17    A  We currently have engaged a firm called

18  Prizism.  And prior to Prism, we had engaged a

19  firm called S3 /(.

20    Q  And you engaged that Genevant was engaged

21  in lobbying to **CHECK** brief awareness in the

22  biotech industry and the negative application of

23  the application of Section 1498.

24      Why did Genevant engage in this lobbying?

25    A  Because orphour interest in ensuring that

199

1 intellectual property is respected and to

2 encourage innovation.

3     Q  Do you review the lobbying materials

4 before they're sent to members of Congress or

5 other branches of the government or agencies

6 related to those branches?

7     A  At the earliest stages of the engagement,

8 I was involved in kind of explaining the issue and

9 the concern of the...*internet, background, if you

10 will, and I may have seen stages in the early

11 stages, but I haven't been involved in that for a

12 good while now.  A long time.

13     Q  Who presently at Genevant is involved in

14 the lobbying efforts?

15     A  I have a part-time special counsel that

16 works with me by the name of *Lindsay Androski.

17 She's kind of taken the lead on that.

18     Q  And is Genevant presently still engaged in

19 lobbying efforts?

20  A  Yes.

21     Q  Do you know approximately how much

22 Genevant has spent on lobbying efforts?

23     MR. HARBER:  And again, I'll just make

24 clear my continuing objection to all of this as

25 still continuing being outside the scope.

200

1    THE WITNESS:  My recollection, which I

2  would need to confirm to be certain, is $20,000 a

3  quarter.

4  BY MS. LI:

5    Q  For each year that Genevant has engaged in

6  lobbying?

7    A  Yes.

8    Q  And you're not sure which years Genevant

9  began its lobbying efforts?

10    A  Correct.  I think if we're talking in

11  years, it would either be 2021 or 2022.  I don't

12  remember much more.

13    Q  Okay.  And are the lobbyist paid by

14  Genevant or are they paid by another entity?

15    A  We pay the lobbyists.

16    Q  And which members of Congress have the

17  lobbyists that Genevant has hired spoken -- let me

18  re-ask that.

19    Which members of Congress have been spoken

20  to by lobbyists hired by Genevant?

21    A  I don't know.  I don't know.  I was -- in

22  the early stages of it, I was hearing about

23  potential meetings with staffers and potential --

24  but I never really followed through to pay close

25  attention to who was talking to who.

201

1    Q  Would Lindsay Androski know which members

2  of Congress have been spoken to by a lobbyist

3  hired by Genevant?

4    A  I don't know, but I suspect so.

5    Q  In the time period for which -- strike

6  that.

7        In the time period in which Genevant has

8  engaged in lobbying, what has been the outcome of

9  such lobbying efforts?

10       MR. HARBER:  Objection to form.

11       THE WITNESS:  I'm not sure what you mean

12  by "outcome."

13  BY MS. LI:

14    Q  Has Genevant seen -- has Genevant seen an

15  interest by Congress or other branches of

16  government concerning intellectual property in the

17  biotech industry?

18    A  Yeah, I am under the impression that there

19  have been some interests in hearing about the

20  issue and understanding the issue, but I don't

21  know the specifics.

22    Q  Who would know the specifics?

23    A  I don't have any names to give you beyond

24  what we've already talked about.

25    Q  And similarly, has Genevant seen any

202

1  interest by Congress or other branches of the

2  government concerning the application of

3  Section 1498?

4      A  I'm sorry, the beginning of the question

5  again?

6      Q  Sure.

7          Has Genevant seen any interest by Congress

8  or other branches of the government concerning the

9  application of Section 1498 as a result of

10 Genevant's lobbying efforts?

11     A  I guess I thought that was the question I

12 just answered.

13     Q  I guess I wasn't sure if you were drawing

14 a distinction between IP and biotech and --

15     A  Yeah, the -- connected.  In this context,

16 I was not **CHECK**.

17     Q  What was the reason to lobbying to members

18 of Congress versus lobbying to, for example, the

19 Department of Justice?

20        MR. HARBER:  Objection to form.  Lacks

21 foundation.

22        THE WITNESS:  I don't know the answer, nor

23 do I know that lobbying the Department of Justice

24 is even something that one can do.

25 BY MS. LI:

203

1    Q  Is one outcome of -- is one intended

2  outcome of Genevant's lobbying efforts for a

3  change in the law regarding the application of

4  Section 1498?

5      MR. HARBER:  Objection to form.

6      THE WITNESS:  No.

7  BY MS. LI:

8    Q  What are Genevant's intended outcomes for

9  lobbying against the application of 1498?

10     A  To ensure that our political leaders are

11  aware of the importance of IP to the biotech

12  industry and the -- and innovation; and to ensure

13  decisions are made that would negatively impact

14  that.

15    Q  What is your understanding of the

16  application of 1498?

17     MR. HARBER:  Objection to form.  Outside

18  the scope.  Calls for a legal conclusion.

19      And to the extent your understanding is

20  based on privileged communications, I instruct you

21  not to answer.

22     THE WITNESS:  I can't answer that

23  question.

24  BY MS. LI:

25    Q  On the instruction of counsel?

204

1   A  Yes.

2   Q  Okay.  Specifically -- strike that.

3      Were Genevant's lobbying efforts regarding

4  the application of 1498 specifically related to

5  indemnity that Moderna has with respect to certain

6  of Moderna's U.S. contracts with the U.S.

7  government?

8      MR. HARBER:  Objection to form.

9      THE WITNESS:  No.

10 BY MS. LI:

11     Q  And was Genevant aware that certain

12 contracts Moderna had with the U.S. government had

13 a specific provision regarding the application of

14 1498?

15     MR. HARBER:  Objection to form.  Outside

16 the scope.

17     And to the extent you have an

18 understanding that is independent from discussions

19 with outside counsel in this case, you may answer;

20 otherwise, I instruct you not to answer on the

21 grounds of attorney-client privilege.

22     THE WITNESS:  To the extent I could answer

23 it, I'll -- my answer is that I think the question

24 is factually incorrect.

25 BY MS. LI:

205

1   Q  How is it factually incorrect?

2   A  Repeat the question.

3   Q  Was Genevant aware that certain contracts

4  Moderna had with the U.S. government had a

5  specific provision regarding the application of

6  1498?

7      MR. HARBER:  Same caution and objection.

8      THE WITNESS:  Yeah, I'm not aware that the

9  contracts had that specific provision, so I'm

10  not -- I can't -- nothing -- I have no answer to

11  that question.

12  BY MS. LI:

13   Q  Is it your understanding that the

14  application of 1498 prevents the protection of

15  intellectual property in the biotech industry?

16      MR. HARBER:  Objection to form.  Outside

17  the scope.

18      And I would caution you not to reveal any

19  privileged communications or information to the

20  extent you can answer that question.

21      THE WITNESS:  I don't think I can.

22  BY MS. LI:

23   Q  At the advice of counsel?

24   A  Yes.

25   Q  Is there a reason for why Genevant

206

1 switched from S3 to Prism Group for lobbying?

2      MR. HARBER:  Objection.  Continuing back

3 to the outside the scope topic -- or the other

4 outside the scope topic.

5      THE WITNESS:  Yeah, and I think Genevant

6 wasn't satisfied with the performance.

7 BY MS. LI:

8    Q  And why was Genevant not satisfied with

9 the performance?

10     A  The reports we were getting, they weren't

11 the right level of engagement.  We didn't feel we

12 had the right level of engagement.

13    Q  And are these written reports?

14    A  I didn't not mean written reports.  I

15 meant *communications.

16    Q  Were these communications by e-mail or by

17 phone call or by some other means?

18    A  Probably both.  You know, updates of what

19 was being done.

20    Q  And is Genevant currently satisfied with

21 Prism Group's lobbying efforts?

22    A  Satisfied enough to maintain the

23 engagement.

24    Q  Do you expect that the spend for lobbying

25 efforts would increase this year, next year?

207

1    A  I don't know.

2    Q  Okay.



# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, <br><br> Plaintiffs, <br><br> v. <br><br> MODERNA, INC. and MODERNATX, INC., <br><br> Defendants. | C.A. No. 22-252-MSG <br><br> **JURY TRIAL DEMANDED** |
| MODERNA, INC. and MODERNATX, INC., <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, <br><br> Counterclaim-Defendants. | |

**DEFENDANTS' SECOND SET OF REQUESTS FOR PRODUCTIONS TO PLAINTIFFS
(NOS. 101–126)**

Pursuant to Federal Rules of Civil Procedure Rules 26 and 34, Defendants Moderna, Inc. and ModernaTX, Inc. (collectively, "Moderna" or "Defendants") hereby request that Plaintiffs Arbutus Biopharma Corporation ("Arbutus") and Genevant Sciences GmbH ("Genevant") (collectively, "Plaintiffs") produce for inspection, copying, and/or testing all documents and things set forth below, within thirty (30) days of the service of these Requests, at the offices of Kirkland and Ellis LLP, 601 Lexington Avenue, New York, NY 10022, or at such time and place as may be agreed upon by counsel. These requests are deemed to be continuing and impose upon Plaintiffs the obligations stated in Fed. R. Civ. P. 26.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications concerning lobbyists and political consultants one or more Plaintiffs (as defined in Moderna's First Set of RFPs, which includes affiliates and parents) have retained in relation to Moderna, the Accused Products, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the Contract No. W911QY20C0100 between Moderna and U.S. Government, including Documents concerning any work such lobbyists or political consultants have performed, the compensation paid for that work, and the instructions given by Plaintiffs and their Affiliates.

**REQUEST FOR PRODUCTION NO. 109:**

All Communications between Plaintiffs and any third party regarding the U.S. Government's Statement of Interest (D.I. 49).

**REQUEST FOR PRODUCTION NO. 110:**

All Documents and Communications concerning any agreements between one or more Plaintiffs and the University of British Columbia. This includes but is not limited to the 1998 LNP license agreement and the related agreements executed in 2001, 2006, 2007, 2009 referred to in Arbutus' SEC filings.[2]

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications concerning any agreements between Plaintiffs (including any predecessors) and the U.S. Government, including but not limited to Agreement No. W9113M-10-C-0057 between Tekmira Pharmaceuticals Corporation and the U.S. Department of Defense for development of products targeting Ebola virus (e.g. TKM-Ebola-Kikwit), and Documents and Communications concerning the negotiation of that Agreement and any

---

[2]  https://www.sec.gov/Archives/edgar/data/1447028/000162828018003276/arbutus10k2017.htm

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

_____

OF COUNSEL:

James F. Hurst
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Mark C. McLennan
Nancy Kaye Horstman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Yan-Xin Li
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
(415) 439-1400

Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

April 24, 2023

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2023, copies of the foregoing were caused to be served

upon the following in the manner indicated:

John W. Shaw, Esquire        *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs Arbutus Biopharma*
*Corporation and Genevant Sciences GmbH*

Daralyn J. Durie, Esquire       *VIA ELECTRONIC MAIL*
Shaelyn K. Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

Kira A. Davis, Esquire        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David N. Tan, Esquire        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David I. Berl, Esquire                                    *VIA ELECTRONIC MAIL*
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Jessica Palmer Ryen, Esquire
Lydia B. Cash, Esquire
Shaun P. Mahaffy, Esquire
Anthony H. Sheh, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*


                                    */s/ Travis J. Murray*
                                    _____
                                    Travis J. Murray (#6882)

# EXHIBIT 5

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | | |
|---|---|---|
| Arbutus Biopharma Corp.,Genevant Sciences GmbH | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   C.A. No. 22-252-MSG |
| Moderna, Inc. and ModernaTX, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Roivant Sciences Ltd., Suite 1, 3rd Floor 11-12 St. James's Square, London SW1Y 4LB, United Kingdom
c/o Williams & Connolly LLP, 680 Main Avenue SW, Washington DC 20024

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT A

| Place: Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022 | Date and Time:<br><br>09/22/2023 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/31/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Mark McLennan |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Moderna, Inc. & ModernaTX, Inc. _____ , who issues or requests this subpoena, are:

Mark McLennan, Kirkland & Ellis LLP, 601 Lexingon Ave., NY, NY 10022, mark.mclennan@kirkland.com,  212-446-4800

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  C.A. No. 22-252-MSG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A—REQUESTS FOR PRODUCTION

### DEFINITIONS

1.        "You," "Your," or "Roivant" shall, unless otherwise noted, refer to Roivant Sciences Ltd., and includes (i) any and all predecessors-in-name; (ii) any and all past or present, domestic or foreign parents, sisters, affiliates, subsidiaries (owned in whole or part, at any time), partnerships, joint ventures, predecessors-in-interest, successors-in interest, divisions, departments, corporate subunits, foundations, organizations, or other business entities of any of the foregoing; and (iii) any and all past and present officers, directors, agents, Employees, consultants, attorneys, and other Persons or entities acting or purporting to act on behalf of any of the foregoing.

2.        "Genevant" shall, unless otherwise noted, refer to Genevant Sciences GmbH, and includes (i) any and all predecessors-in-name and (ii) any and all parents, sisters, affiliates, subsidiaries (owned in whole or part, at any time) joint ventures, predecessors-in-interest, successors-in interest, including Genevant Sciences Ltd., Genevant Sciences, Inc., or Genevant Sciences Corporation.

3.        "Arbutus" shall, unless otherwise noted, refer to Arbutus Biopharma Corporation, and includes (i) any and all predecessors-in-name and (ii) any and all past or present, domestic or foreign parents, sisters, affiliates, subsidiaries (owned in whole or part, at any time), predecessors-in-interest, and successors-in interest, including Tekmira Pharmaceuticals Corporation.

4.        "Moderna" means Moderna, Inc. and ModernaTX, Inc., individually or collectively.

1

5.      "Moderna's COVID-19 Vaccine" shall mean Moderna's mRNA-1273 COVID-19 vaccine.

6.      "LNP" shall mean lipid nanoparticle.

7.      "This Action" refers to *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 1:22-cv-00252 (D. Del.).

8.      "Patents-in-Suit" means U.S. Patent Nos. 8,058,069, 8,492,359, 8,822,668, 9,364,435, 9,504,651, and 11,141,378, and any others that are asserted against Moderna in This Action, and the respective patent applications, including any applications to which they claim priority, that led to each.

9.      "Related Applications" means any patent or patent application that claims priority from the Patents-in-Suit and any patent or patent application from which a claim of priority has been made in the Patents-in-Suit, including any divisional, continuation, CPA, or CIP application, any reissue, reexamination or extension thereof, any foreign counterpart application, and any patent issuing from any of the foregoing.

10.     "Person" shall mean any natural person, alive or deceased, and any business, legal or governmental entity or association.

11.     "Employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate, or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

12.     "Documents" shall mean all materials, as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, any handwritten, printed, typed, recorded photographic, and computer-generated materials of any kind or nature, however produced or reproduced, as well as material stored electronically, electromagnetically, mechanically,

optically, and electronic recordings or transcripts thereof, and includes drafts, revisions of drafts,

preliminary and preparatory materials, originals, copies, emails, attachments, exhibits, removable

notes, and all translations and summaries thereof.

13.    "Communication(s)" means the transmittal of information (in the form of facts,

ideas, inquiries, or otherwise) by oral, written, telephonic, electronic, or any other means.

14.    "Thing" is defined to be synonymous in meaning and equal in scope to the usage

of the term "tangible things" in Federal Rule of Civil Procedure 34(a)(1)(B).  This meaning

includes any tangible object of any kind and nature other than a Document, including prototypes,

models, and physical specimens thereof.

15.    "Date" means the exact day, month, and year, if ascertainable, or, if not, the

closest approximation thereto that can be made by means of a relationship to other events,

locations, or matters.  Identify each instance in which the given date is an approximation, and

state Your bases for making such approximation.

16.    The term "including" or "includes" shall mean including without limitation.

17.    The terms "concerning" and "relating to" shall mean, in whole or in part, referring

to, describing, evidencing, constituting, containing, comprising, referring to, embodying,

connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating,

regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in

respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

18.    The singular form of each word shall be interpreted in the plural, and vice versa,

so as to give each request the broadest possible scope.

19.    Regardless of the tense employed, all verbs shall be read as applying to past,

present, and future as necessary to make any phrase more, rather than less, inclusive.

20.     The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

21.     The terms "all," "each," and "any" shall be construed as all and any.

## INSTRUCTIONS

1.     These Requests are to be responded to in accordance with the definitions and instructions provided herein.  In the event that You do not understand a Request, the definition of a term, or the meaning of an instruction, You should immediately seek clarification from counsel for Moderna.

2.     A separate answer should be given to each Request.

3.     These Requests are intended to cover all Documents in Your possession, custody or control, whether located at any of Your offices, or at the offices of Your successors or assigns, accountants, agents, Employees, directors, officers, representatives, attorneys, assistants, bankers, brokers, or others, or at any other place.  Documents to be produced include Documents in Your possession, custody, or control, wherever located.

4.     Documents shall be produced as they are maintained in the ordinary course of business.  All associated file labels, file headings, and file folders shall be produced together with the responsive Documents and Things from each file.

5.     Electronic materials shall be produced in accordance with the Federal Rules of Civil Procedure and any applicable standards adopted by the United States District Court for the District of Delaware, unless otherwise agreed to in writing by counsel for Moderna .

6.     If You have any good faith objection(s) to any Request or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to part of the

4

Request shall be stated.  If there is an objection to any part of a Request, then the part objected to should be identified, and Documents responsive to the part that is not objected to shall be produced.

7.      If any of the requested Documents cannot be disclosed or produced in full, produce the Documents to the extent possible, and specify Your reasons for Your inability to produce the remainder, stating whatever information, knowledge or belief You have concerning the unproduced portions.

8.      If any responsive Document or Thing is not produced on the grounds of the attorney client privilege, work product immunity, or any other applicable privilege or immunity, You shall identify the Document by providing the Date of the Document; the names of all authors, addressees, and recipients; a summary of the contents of the general subject matter of the Document; and the basis for withholding the Document.  To the extent that only a portion of a Document is claimed to be privileged, the non-privileged portions of the Document should be produced, and information set forth above should be provided with respect to the redacted portions of the Document.

9.      To the extent that You are aware of any Document that would be responsive to any of these Requests, but is no longer in existence, identify such Document and the circumstances surrounding its destruction or loss.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Communications relating to the Patents-in-Suit, Related Applications, and/or patent infringement actions (actual or contemplated) against Moderna in relation to Moderna's COVID-19 Vaccine, including This Action.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications concerning any due diligence or valuation of the

Patents-in-Suit and/or Related Applications (or of an intellectual property portfolio that includes

one or more of the Patents-in-Suit), including when You acquired a financial or ownership

interest in the Patents-in-Suit and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Things concerning any opinion, assessment, or evaluation regarding

the value, patentability, enforceability, validity, claim scope, and/or infringement of one or more

of the Patents-in-Suit and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to identify Your rights and/or interests in the Patents-in-Suit and/or

Related Applications, including past and current rights and interests.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents relating to valuations or projections of royalty or license fees or rates,

potential royalty or license fees or rates, upfront payments, and/or milestones related to one or

more of the Patents-in-Suit and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Things concerning analysis (including testing and data collection)

and monitoring of Moderna's COVID-19 Vaccine or other LNP products developed or

commercialized by Moderna.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Things related to monthly, quarterly, or otherwise periodic investor

updates, market updates, or internal company monitoring alerts concerning the Patents-in-Suit

and/or Related Applications, This Action, Moderna's COVID-19 Vaccine, or other LNP products commercialized by Moderna.

**REQUEST FOR PRODUCTION NO. 8:**

Appendices A through H and Exhibits A through C identified as part of the Master Contribution and Share Subscription Agreement by and among Genevant Sciences Ltd., Arbutus Biopharma Corporation, and Roivant Sciences Ltd. dated April 11, 2018.[1]

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to identify Your ownership interest (including the amount or percentage) or control in Genevant and/or in Arbutus.[2]

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to identify Genevant's and/or Arbutus' ownership interest(s) (including the amount or percentage) or control in Roivant.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications concerning any litigation funding, investment, or financing arrangements You have with Genevant and/or Arbutus concerning This Action, the Patents-in-Suit, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications concerning any involvement by Roivant in the decision to file suit against Moderna in This Action, including the timing of filing suit.

---

[1] *See* https://www.sec.gov/Archives/edgar/data/1447028/000162828018005886/exhibit101genevantmasterag.htm.

[2] *See* https://www.sec.gov/Archives/edgar/data/1447028/000144702820000118/R11.htm ("In connection with the recapitalization, the three parties entered into an Amended and Restated Shareholders Agreement that provides Roivant with substantial control of Genevant.").

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show all Your investment, capitalization, recapitalization, and contributions, whether financial, equity, or otherwise, made to Genevant and/or to Arbutus.

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to identify the amount or percentage of proceeds You expect or are entitled to receive if Genevant and Arbutus prevail in This Action.[3]

**REQUEST FOR PRODUCTION NO. 15:**

All agreements and licenses (including sub-licenses and intellectual property transfer agreements or assignments and any corresponding amendments, supplements, appendices, attachments, and exhibits thereto) and related negotiations between You and Genevant and/or Arbutus concerning LNP technology and/or the Patents-in-Suit or Related Applications, including but not limited to the Intellectual Property Security Agreement between Genevant and Roivant dated March 27, 2020.

**REQUEST FOR PRODUCTION NO. 16:**

Communications between You and third parties relating to Moderna or Moderna's COVID-19 Vaccine, or This Action (including the U.S. Government's Statement of Interest (filed February 14, 2023 at D.I. 49) and/or Contract No. W911QY20C0100 between Moderna and U.S. Government).

---

[3] *See* https://www.sec.gov/Archives/edgar/data/1635088/000119312521365107/d268332dex1037.htm ("The Parties shall share in the proceeds from any Infringement Action … including settlements thereof (the 'Proceeds'), as follows: … (B) Roivant Sciences. or any of its Affiliates").

# EXHIBIT 6

| Clerk of the House of Representatives | Secretary of the Senate | |
|---|---|---|
| Legislative Resource Center | Office of Public Records | |
| 135 Cannon Building | 232 Hart Building | **LOBBYING REPORT** |
| Washington, DC 20515 | Washington, DC 20510 | |
| http://lobbyingdisclosure.house.gov | http://www.senate.gov/lobby | |

Lobbying Disclosure Act of 1995 (Section 5) - **All Filers Are Required to Complete This Page**

**1. Registrant Name** ☑ Organization/Lobbying Firm ☐ Self Employed Individual
S-3 Group

**2. Address**
Address1  418 C St NE    Address2
City  Washington    State DC    Zip Code 20002    Country USA

**3. Principal place of business (if different than line 2)**
City    State    Zip Code    Country

**4a. Contact Name**   **b. Telephone Number  c. E-mail**
Mrs.    Jennifer Holmes    2028195036    holmes@s-3group.com

**5. Senate ID#**
400774330-54952

**7. Client Name** ☐ *Self*    ☐ *Check if client is a state or local government or instrumentality*
Genevant Sciences, Inc.

**6. House ID#**
417320144

**TYPE OF REPORT**   8. Year 2023   Q1 (1/1 - 3/31) ☑  Q2 (4/1 - 6/30) ☐  Q3 (7/1 - 9/30) ☐  Q4 (10/1 - 12/31) ☐

9. Check if this filing amends a previously filed version of this report ☐

10. Check if this is a Termination Report ☐    Termination Date _____    11. No Lobbying Issue Activity ☐

| **INCOME OR EXPENSES - YOU MUST complete either Line 12 or Line 13** | |
|---|---|
| **12. Lobbying** | **13. Organizations** |
| **INCOME** relating to lobbying activities for this reporting period was: | **EXPENSE** relating to lobbying activities for this reporting period were: |
| Less than $5,000  ☐ | Less than $5,000  ☐ |
| $5,000 or more  ☑  $ 20,000.00 | $5,000 or more  ☐  $ _____ |
| Provide a good faith estimate, rounded to the nearest $10,000, of all lobbying related income for the client (including all payments to the registrant by any other entity for lobbying activities on behalf of the client). | **14. REPORTING** Check box to indicate expense accounting method. See instructions for description of options. |
| | ☐ **Method A.** Reporting amounts using LDA definitions only |
| | ☐ **Method B.** Reporting amounts under section 6033(b)(8) of the Internal Revenue Code |
| | ☐ **Method C.** Reporting amounts under section 162(e) of the Internal Revenue Code |

**Signature**  Digitally Signed By: Jennifer Holmes    **Date**  4/20/2023  2:25:12 PM

**LOBBYING ACTIVITY.** Select as many codes as necessary to reflect the general issue areas in which the registrant engaged in lobbying on behalf of the client during the reporting period. Using a separate page for each code, provide information as requested. Add additional page(s) as needed.

15. General issue area code HCR

16. Specific lobbying issues

| Healthcare matters |
| --- |

17. House(s) of Congress and Federal agencies ☐ Check if None

| U.S. SENATE, U.S. HOUSE OF REPRESENTATIVES |
| --- |

18. Name of each individual who acted as a lobbyist in this issue area

| First Name | Last Name | Suffix | Covered Official Position (if applicable) | New |
|---|---|---|---|---|
| Michaeleen | Crowell | | Leg Director, Rep. Denise Majette; Leg Director, Rep. John Lewis; Chief of Staff, US Sen. Bernie Sanders | ☐ |
| Martin | Reiser | | Policy Director, Republican Whip Steve Scalise, professional staff House Ways and Means Committee, Chief of Staff, Rep. Dan Miller, Budget Associate, House Budget Committee | ☐ |
| Kate | Dickens | | Chief of Staff, US Sen Mark Kirk; Leg Director, Rep Mike Castle; Foreign Policy Adv, Rep. Connie Morella | ☐ |
| Olivia | Kurtz | | Chief of Staff, Leg Director, Dep Leg Director, Sr Leg Asst, US Sen Susan Collins; Dep Staff Dir, Sen Special Comm on Aging; Leg Director, Sr Leg Asst, Leg Asst, Exec Asst, Rep Mike Castle | ☐ |

19. Interest of each foreign entity in the specific issues listed on line 16 above ☐ Check if None

| Genevant Sciences Holdings Limited, London, GBR<br>Genevant Sciences Ltd., Hamilton, BER<br>Roivant Sciences, Ltd., Hamilton, BER |
| --- |

**Information Update Page - Complete ONLY where registration information has changed.**

20. Client new address

Address _____

City _____  State _____  Zip Code _____  Country _____

21. Client new principal place of business (if different than line 20)

City _____  State _____  Zip Code _____  Country _____

22. New General description of client's business or activities

_____

# LOBBYIST UPDATE

23. Name of each previously reported individual who is no longer expected to act as a lobbyist for the client

| First Name | Last Name | Suffix | | First Name | Last Name | Suffix |
|---|---|---|---|---|---|---|
| 1 | | | 3 | | | |
| 2 | | | 4 | | | |

# ISSUE UPDATE

24. General lobbying issue that no longer pertains

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## AFFILIATED ORGANIZATIONS

25. Add the following affiliated organization(s)

Internet Address:

| Name | Address<br>Street Address<br>City          State/Province    Zip     Country | Principal Place of Business<br>(city and state or country)<br>City<br>State                Country |
|---|---|---|
| | | |

26. Name of each previously reported organization that is no longer affiliated with the registrant or client

| 1 | 2 | 3 |
|---|---|---|

## FOREIGN ENTITIES

27. Add the following foreign entities:

| Name | Address<br>Street Address<br>City      State/Province    Country | Principal place of business<br>(city and state or country) | Amount of<br>contribution for<br>lobbying activities | Ownership<br>percentage in<br>client |
|---|---|---|---|---|
| | | City<br>State          Country | | % |

28. Name of each previously reported foreign entity that no longer owns, or controls, or is affiliated with the registrant, client or affiliated organization

| 1 | 3 | 5 |
|---|---|---|
| 2 | 4 | 6 |

## CONVICTIONS DISCLOSURE

29. Have any of the lobbyists listed on this report been convicted in a Federal or State Court of an offense involving bribery, extortion, embezzlement, an illegal kickback, tax evasion, fraud, a conflict of interest, making a false statement, perjury, or money laundering?

☑ No  ☐ Yes

| Lobbyist Name | Description of Offense(s) |
|---|---|
| | |

# EXHIBIT 7

# Roivant Sciences Lobbying Profile • OpenSecrets

opensecrets.org/federal-lobbying/clients/summary



2022

A special interest's lobbying activity may go up or down over time, depending on how much attention the federal government is giving their issues. Particularly active clients often retain multiple lobbying firms, each with a team of lobbyists, to press their case for them.

## Annual Lobbying by Roivant Sciences



## Roivant Sciences Lobbying by Industry

| Industry | Total |
|---|---|
| Pharmaceuticals/Health Products | $0 |

NOTE: Figures on this page are calculations by OpenSecrets based on data from the Senate Office of Public Records. Data for the most recent year was downloaded on April 24, 2024 and includes spending from January 1 - March 31. Prior years include spending from January through December.

Feel free to distribute or cite this material, but please credit OpenSecrets. For permission to reprint for commercial uses, such as textbooks, contact OpenSecrets: info@opensecrets.org

Search our lobbying database

## We follow the money. You make it possible.

## Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

# EXHIBIT 8

| | |
|---|---|
| **From:** | Harber, Adam <AHarber@wc.com> |
| **Sent:** | Thursday, June 6, 2024 6:32 PM |
| **To:** | McLennan, Mark C. |
| **Cc:** | Haunschild, Philip; Li, Yan-Xin |
| **Subject:** | RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108) |

---

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

---

Mark,

I think we are very close to an agreement.  But as I explained to you on our call last week, we want to be sure that this is an actual reciprocal deal, and that Moderna is not withholding its relevant documents necessary to make this reciprocal based on the assertion of a privilege we view as improper.  To that end, in addition to what you have proposed below, we request that Moderna also search for and produce (1) documents and communications concerning lobbying activities related to the application/non-application of § 1498 to the -0017 Contract, and the decision not to include FAR Clause 52.227-1 or 52.227.1 Alt 1 in the -0017 Contract, and (2) all documents and communications with the Government regarding the U.S. Government's February 2023 Statement of Interest (D.I. 49) and the application/non-application of § 1498, and not assert any privilege including the common interest privilege over such documents.  If Moderna will agree to those items, in addition to the points listed in your email below, then Genevant and Roivant will conduct a targeted collection and production of lobbying documents/communications with lobbyists and political consultants (subject to the same provisos as below) about Genevant and/or Roivant's lobbying efforts concerning Moderna, Spikevax®, This Action, the U.S. Government's Statement of Interest (D.I. 49), and/or the C0100 contract.  See Y. Li. Apr. 2, 2024 Email; P. Haunschild Apr. 2, 2024 Email.  Given Moderna's delay in getting back to us to confirm the scope of discovery for months, such that we are now past the fact discovery cutoff, our offer is contingent on Moderna agreeing not to seek further deposition testimony about this issue or the documents we produce.  Please confirm Moderna's agreement to these points.

Thanks,
Adam

**Adam Harber | Williams & Connolly LLP |** 202.434.5820

---

From: McLennan, Mark C. <mark.mclennan@kirkland.com>
Sent: Wednesday, June 5, 2024 8:39 PM
To: Harber, Adam <AHarber@wc.com>
Cc: Haunschild, Philip <phaunschild@wc.com>; Li, Yan-Xin <yanxin.li@kirkland.com>
Subject: RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Adam,

Thanks for the call last week about the lobbying RFPs.

Based on our discussion, here's our revised compromise proposal for the RFPs – please let us know if Plaintiffs agree by noon tomorrow to avoid us having to file our letter seeking the Court's assistance:

- Moderna will conduct a reasonable search for lobbying communications/documents concerning (i) this Action (i.e., Arbutus v. Moderna, No. 22-252 (D. Del.)); (ii) Contract No. W911QY20C0100 ("C0100 Contract"), executed August 2020, between Moderna and U.S. Government for the supply of Moderna's COVID-19 Vaccine; (iii) Application of 28 U.S.C. § 1498 to Moderna's C0100 Contract; (iv) The U.S. Government's February 2023 Statement of Interest (D.I. 49) filed in This Action concerning Moderna's C0100 Contract; (v) appropriations for Moderna's COVID-19 Vaccine.
- Although we disagree with Plaintiffs' expanded definition of lobbying, we're willing to expand the search for "lobbying" on these topics to members of the executive branch, with the understanding the search is focused on outreach coordinated through Moderna's Government Affairs department and as explained during the call we will not be searching across the entire company for any potential contact with any executive branch/agency/department.
- All of our previous provisos below remain the same: it will be a targeted search, not limited to our ESI custodians (Yan-Xin Li Email April 3, 2024), and will not be limited to pre-complaint materials.

Moderna's compromise proposal is contingent on Plaintiffs and Roivant producing the materials we requested in our email below (Yan-Xin Li Email April 2, 2024).

We're happy to continue discussing the 30(b)(6) topic on the statement of interest. Please let us know when you've had a chance to discuss with your team.

Thanks,
Mark

**Mark C. McLennan**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3451

mark.mclennan@kirkland.com

---

**From:** McLennan, Mark C.
**Sent:** Tuesday, May 28, 2024 9:58 PM
**To:** 'Harber, Adam' <AHarber@wc.com>
**Cc:** Haunschild, Philip <phaunschild@wc.com>; Li, Yan-Xin <yanxin.li@kirkland.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Great, thanks Adam. 10am works tomorrow, I'll call you then.

I've included bullets below repeating what we've already told Plaintiffs multiple times – which is unfortunately why we need to seek assistance from the Court.

**Mark C. McLennan**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3451

mark.mclennan@kirkland.com

---

**From:** Harber, Adam <AHarber@wc.com>
**Sent:** Tuesday, May 28, 2024 8:41 PM
**To:** McLennan, Mark C. <mark.mclennan@kirkland.com>

2

**Cc:** Haunschild, Philip <phaunschild@wc.com>; Li, Yan-Xin <yanxin.li@kirkland.com>
**Subject:** RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Sorry, Mark.  I meant to say I could do 10-10:30am ET tomorrow.  If that still works, just call my cell then (617-877-9712).  If you think those questions have been answered, it would be helpful if you would just put the answers inline below after each question in my email.  We're struggling to figure out where the answers have been given in the numerous times we've asked.  Thanks.

Adam Harber | Williams & Connolly LLP | 202.434.5820


From: McLennan, Mark C. <mark.mclennan@kirkland.com<mailto:mark.mclennan@kirkland.com>>
Date: Tuesday, May 28, 2024 at 8:38 PM
To: Harber, Adam <AHarber@wc.com<mailto:AHarber@wc.com>>
Cc: Haunschild, Philip <phaunschild@wc.com<mailto:phaunschild@wc.com>>, Li, Yan-Xin <yanxin.li@kirkland.com<mailto:yanxin.li@kirkland.com>>
Subject: Re: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Great, thanks Adam. 10:30am tomorrow works for me. I'll call your office line then if that works for you.
I think the questions you raise below have already been addressed but happy to talk through them to see if it moves us any closer to resolving things.
Thanks
Mark

Mark C. McLennan
-------------------------------------------------------
KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
T +1 212 909 3451
-------------------------------------------------------
mark.mclennan@kirkland.com<mailto:mark.mclennan@kirkland.com>

On May 28, 2024, at 7:18 PM, Harber, Adam <AHarber@wc.com> wrote:


Hi Mark – Happy to talk, but I'm confused by your email.  We're ready to produce the documents and the holdup continues to be Moderna not engaging in the meet and confer process about a reciprocal scope, as the Court ordered.  Your email below doesn't answer our questions either.  Specifically:

1. Whether Moderna will be producing its documents and communications regarding Moderna's lobbying efforts for appropriations for COVID-19 Vaccines or indemnity, rather than just producing documents specifically discussing the -0100 Contract and -0017 Contracts.
   - We've already explained that we produced non-privileged communications concerning application of 1498 (see my earlier email tonight, and earlier emails on this chain). Regarding "appropriations" we explained this was not relevant given the hypothetical negotiation is between Moderna and Plaintiffs, not Moderna and its customer.
   - Yan-Xin Li April 15, 2024 Email (to which we did not receive an explanation of relevance): "It is unclear for what purpose Plaintiffs cite to https://lda.senate.gov/filings/public/filing/b24517e2-44c7-4aca-b86b-f634b58e26e1/print/ or what Plaintiffs are attempting to encompass by "appropriations for COVID-19 Vaccines or indemnity." As Moderna already reiterated in the first point above, Moderna has already laid out the four categories for which it will search and produce non-privileged lobby communications/documents.  Plaintiffs have otherwise articulated no basis of relevance or why the categories Moderna clearly laid out do not resolve their concerns."

3

2.  Whether Moderna is producing its communications with the Government concerning this litigation, and the filing of the Statement of Interest [D.I. 49] specifically.

    Yan-Xin Li April 15, 2024 Email "Your second bullet seeking "communications with the Department of Justice—HHS and the Department of Defense" appears again to go *beyond* lobbying communications/documents, which is improper and outside of the scope of Moderna's ongoing attempt to come to agreement on lobbying communications/documents, which Plaintiffs continue to stymie rather than resolve.  Moreover, Plaintiffs have already received HHS or DoD communications via its subpoena to the U.S. government, and Moderna has produced such information through search terms and ESI custodians.  Your request for "communications made through Moderna's litigation counsel for this action … to the extent that such communications have transpired" seeks privileged information. "

    We previously noted this request aimed at communications relating to "this litigation" is clearly aimed at counsel's communications with DOJ. We note that Plaintiffs have withheld up to 37,000 documents/communications with various third parties as privileged based on a claim of common interest. You continued pursuit of Moderna's communications under common interest is surprising. Are Plaintiffs planning to produce their communications with Roivant concerning this lawsuit?

3.  Whether Moderna engaged in any executive branch lobbying concerning the issues the parties have identified, and whether Moderna is producing those communications and documents.

    We've previously explained that any "executive branch" lobbying is inconsistent with the definition of lobbying discussed with the Court, which was communications with Congress advocating for legislation.
    Plaintiffs initially tried to press for "all communications" between Moderna and any branch/entity/department of the U.S. government and we explained that such a request was absurdly broad given the whole of government coordination during the pandemic, the vast majority of which has no relevance whatsoever to this lawsuit. *See* Plaintiffs' RFP No. 36 that Plaintiffs abandoned long ago. Plaintiffs have an enormous volume of communications with relevant departments of the USG (e.g. FDA, NIH, BARDA, DOD), nothing further is justified and certainly is not "reciprocal."
    Yan-Xin Li Email April 19, 2024 "we are defining lobbying as communications with lobbyists/members of congress."
    Yan-Xin Li Email April 15, 2024: "Plaintiffs' latest questions go far *beyond* lobbying, Moderna already agreed to extensive discovery regarding its interactions with other agencies such as FDA, etc."

4.  Whether Moderna is collecting its lobbying communications from the custodians most likely to have responsive information concerning Moderna's lobbying efforts, outside of Moderna's designated ESI custodians, as Moderna has asked Roivant to do.

    We've answered this one multiple times very clearly, e.g. Yan-Xin Li Email April 3, 2024: "Although Moderna has already searched for information responsive to the above four categories based on the parties' agreed-upon search terms across Moderna's 10 ESI custodians, Moderna will additionally perform a targeted search from individual(s) and department(s) at Moderna who are responsible for lobbying and produce non-privileged information that may exist as to these four categories."

I'm available after 8:45pm ET tonight or from 10:30-11am ET tomorrow (and possibly briefly at 11:30am ET tomorrow) to talk through this by phone, but again, if Moderna will simply answer our questions and agree to the scope of production we're requesting, there won't be a dispute.  It goes without saying that if Moderna moves the Court, we'll respond by asking for the same information and production that Moderna continues to refuse to provide and note that this has been our consistent position for months.

Thanks,
Adam

Adam Harber | Williams & Connolly LLP | 202.434.5820

From: McLennan, Mark C. <mark.mclennan@kirkland.com>
Sent: Tuesday, May 28, 2024 5:54 PM
To: Harber, Adam <AHarber@wc.com>; Haunschild, Philip <phaunschild@wc.com>
Cc: Li, Yan-Xin <yanxin.li@kirkland.com>
Subject: RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)

Hi Adam and Phil, we're planning to approach the Court about the lobbying materials from Roivant/Plaintiffs outlined below and will be serving a dispute letter tomorrow COB. Are you around this evening or tomorrow morning to discuss by phone to see if we can resolve beforehand?

Regarding Phil's question No. 2 below, we've produced all non-privileged communications/documents on those topics (as is clear from the Bennett/Thomas depos during which you examined our witnesses on those communications). Regarding Nos. 1 and 3, we've already responded to these queries below in Yan-Xin's emails from earlier in April.

Thanks,
Mark

Mark C. McLennan
-------------------------------------------------------
KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
T +1 212 909 3451
-------------------------------------------------------
mark.mclennan@kirkland.com<mailto:mark.mclennan@kirkland.com>


From: Haunschild, Philip <phaunschild@wc.com<mailto:phaunschild@wc.com>>
Sent: Tuesday, April 30, 2024 12:36 PM
To: Li, Yan-Xin <yanxin.li@kirkland.com<mailto:yanxin.li@kirkland.com>>; Genevant Team <GenevantTeam@wc.com<mailto:GenevantTeam@wc.com>>; Arbutus_MoFo <Arbutus_MoFo@mofo.com<mailto:Arbutus_MoFo@mofo.com>>; Nate Hoeschen <nhoeschen@shawkeller.com<mailto:nhoeschen@shawkeller.com>>; Karen Keller <kkeller@shawkeller.com<mailto:kkeller@shawkeller.com>>; *jshaw@shawkeller.com<mailto:*jshaw@shawkeller.com>; <jshaw@shawkeller.com<mailto:jshaw@shawkeller.com>>
Cc: #KEModernaSpikevaxService <KEModernaSpikevaxService@kirkland.com<mailto:KEModernaSpikevaxService@kirkland.com>>; 'Brian Egan' <began@morrisnichols.com<mailto:began@morrisnichols.com>>; 'tmurray@morrisnichols.com' <tmurray@morrisnichols.com<mailto:tmurray@morrisnichols.com>>; 'Blumenfeld, Jack' <JBlumenfeld@morrisnichols.com<mailto:JBlumenfeld@morrisnichols.com>>
Subject: RE: Arbutus v. Moderna (22-252) // Lobbying (RFP 108)



Yan-Xin,

What your email hyperbolically characterizes as "relentless one-sided demands" are nothing more than our attempts to have Moderna answer the same set of basic questions about what it intends to produce, in the context of a Court-ordered meet-and-confer directed to mutuality.  Perplexingly, your email yet again dodges our questions.  We have been ready for quite some time to agree on a mutual scope of production for communications concerning lobbying activities, and Moderna's refusal to engage in our meet-and-confer—and that refusal alone—is the cause of any delay.  For that reason, any threat to hold open depositions or recall witnesses is baseless.

To the extent Moderna is willing to engage in our meet-and-confer process, here—again—is our list of questions:


  1.  Please confirm that Moderna will be producing its documents and communications regarding Moderna's lobbying efforts for appropriations for COVID-19 Vaccines or indemnity, and that Moderna is not limiting its agreement to just producing documents specifically discussing the -0100 Contract.