IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 22-252 (MSG) |
| MODERNA, INC. and MODERNATX, INC. | ) ) ) |
| Defendants. | ) |
| MODERNA, INC. and MODERNATX, INC., | ) ) |
| Counterclaim-Plaintiffs, | ) ) |
| v. | ) ) |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) |
| Counterclaim-Defendants. | ) |

**MODERNA'S LETTER TO THE HONORABLE MITCHELL S. GOLDBERG OPPOSING PLAINTIFFS' REQUEST FOR RECONSIDERATION (D.I. 469)**

OF COUNSEL:

James F. Hurst
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Yan-Xin Li
Hannah Suh
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Leslie M. Schmidt, P.C.
Mark C. McLennan
N. Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

Noah Frank
Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

May 19, 2025

Dear Judge Goldberg:

      Moderna respectfully submits this letter opposing Plaintiffs' motion for reconsideration D.I. 469.

      The Court's May 16, 2025 Order (D.I. 468) gave Plaintiffs what they asked for: the Court applied the case narrowing regime based on *10x Genomics* that Plaintiffs ***repeatedly*** urged this Court to adopt to limit Moderna's § 112 and §§ 102/103 invalidity defenses. Plaintiffs are content for Moderna to narrow its case as the Court ordered. Contrary to Plaintiffs' handwaving, the narrowing Moderna must engage in is significant, from as many as fourteen § 112 defenses to six in the first instance, and then still further reduce before trial. But Plaintiffs do not want to narrow their own case as the Court ordered, so, Plaintiffs make a host of new arguments that they "inexcusably" failed to present previously. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. MC 19-290-LPS, 2021 WL 5056094, at *2 (D. Del. Jan. 15, 2021). Plaintiffs claim there are purported disparities in damages windows, unspecified differences in infringement theories, and, for the first time, invoke due process concerns. None of this is new, and Plaintiffs could have made these arguments in their prior submission—but did not.

      Even worse, Plaintiffs make arguments that directly conflict with their prior submission to try to get a different result. For example, in Plaintiffs' May 13 submission, Plaintiffs stated that "[b]ecause all but one of the patents are from a single patent family (the Lipid Composition Patents), it makes no difference to the scope of the case which patent (within that family) a claim is from." D.I. 466 at 4. But now that the Court has required Plaintiffs to narrow their asserted patents, Plaintiffs say the opposite, *i.e.*, that "[t]here are unique and important issues related to liability and damages for various of the Patents-in-Suit." D.I. 469 at 1. Plaintiffs made factual representations to the Court about the scope of their patents-in-suit in effort to limit Moderna's defenses. And now that Moderna's defenses have been limited, Plaintiffs are unabashedly making different factual representations under the guise of "reconsideration" so that their case is not similarly limited. That is improper, and Plaintiffs' motion should be denied.

**I.    Plaintiffs Fail to Meet the Stringent Standard for Reargument**

      A motion for reargument may only be granted in "three narrow circumstances: (1) where the court has patently misunderstood a party, (2) where the court has made an error not of reasoning, but of apprehension, or (3) where the court has made a decision outside the scope of the issues presented to the court by the parties." *Corning Inc. v. SRU Biosystems, LLC*, No. 03-633-JJF, 2004 WL 2348089, at *1 (D. Del. Oct. 13, 2004) (referred to in this letter as "**Reargument Factors (1) to (3)**"); Del. L.R. 7.1.5(a) ("Motions for reargument shall be sparingly granted."). These considerations generally align with those for reconsideration under Rule 59(e), which requires "the movant … show at least one of the following: (i) there has been an intervening change in controlling law; (ii) there is new evidence that was not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice." *OI*, 2021 WL 5056094, at *1 ("**Reconsideration Factors (i) to (iii)**"). Plaintiffs cannot meet this standard (and they do not even acknowledge it). Plaintiffs' motion should be denied.

### A. The Court Understood Plaintiffs' Position and Decided the Specific Issue Before It (Reargument Factors (1)–(3))

One of the issues before the Court based on the parties' recent letter briefs was case narrowing, for both Plaintiffs and Moderna. D.I. 462, ¶ 2. In its May 16 Order (D.I. 468), the Court decided that issue by adopting a case-narrowing approach based on *10x Genomics*—an order which Plaintiffs were the first to point to and ask this Court to adopt. D.I. 456 at 4 (referring to and attaching *10x Genomics* case narrowing order); D.I. 466 at 3 (same). In fact, Plaintiffs asked this Court to limit Moderna to "***precisely*** the limitations on defenses set by Chief Judge Connolly in *10x Genomics* (Ex. E)," in advocating for Moderna to be limited to a total number of defenses including both § 112 and §§ 102/103 references. D.I. 456 at 4; *see also* D.I. 466 at 3. And Plaintiffs did so with no mention of a need to wait until *after* summary judgment to avoid prejudice to either party.

In its briefing, Moderna pointed out that Plaintiffs ignored a critical aspect of *10x Genomics*, *i.e.*, that Chief Judge Connolly also limited the number of patents, explaining that narrowing "goes both ways" and that "there has to be narrowing from both sides." D.I. 467, Ex. 2 at 17:20–23. As Plaintiffs' reconsideration letter acknowledges, Plaintiffs knew that Moderna was requesting a narrowing of patents. D.I. 469 at 1, n.1. In response, Plaintiffs argued only that narrowing of patents "ma[de] little sense" because the five Ratio Patents were from a single family, and that there could be different (but unspecified) IPR estoppel impacts on each Ratio Patent. D.I. 466 at 4. Neither party requested that the timing of case narrowing be changed. D.I. 466 at 2–4; D.I. 467 at 3–4. Indeed, the whole purpose of the parties re-briefing case narrowing was to address proposals for the parties to narrow the case before summary judgment and *Daubert*. D.I. 464 (May 7, 2025 Hearing Tr.) at 43:15–44:11, 52:22–53:15, 62:13–64:13.

Plaintiffs got what they asked for: this Court adopted the *10X Genomics* approach.[1] As to Moderna, the Court imposed a total limit on both §§ 102/103 and § 112 invalidity defenses. D.I. 468, ¶¶ 2, 5. As to Plaintiffs, the Court limited their patents from six to three before summary judgment and then from three to two before trial. D.I. 468, ¶¶ 1, 5. This aligns with the narrowing in *10x Genomics*, and Plaintiffs' representations to the Court. In their May 13 filing, Plaintiffs stated that "[b]ecause all but one of the patents are from a single patent family (the Lipid Composition Patents), ***it makes no difference to the scope of the case which patent (within that family) a claim is from***." D.I. 466 at 4. The six patents-in-suit come from two patent families, and the Court's order permits Plaintiffs to maintain two patents at trial. Thus, under Plaintiffs' view, the patent narrowing should make no difference to the scope of the case.

Plaintiffs now contend that the Court somehow misapprehended their arguments, but those assertions are based on arguments Plaintiffs never made in the letter briefing, as explained below. Plaintiffs' decision not to raise those arguments, and instead take the position that the particular patents-in-suit made little differences to the scope of the case, was strategic. In the prior letter briefing, Plaintiffs wanted the Court to require Moderna to narrow its case, and Plaintiffs' argument for requiring Moderna to do so would be stronger if the patents-in-suit had few

---

[1] The *10x Genomics* order narrowed that case shortly before trial, whereas here, Plaintiffs urged the Court to adopt that framework in two stages: (1) before summary judgment and *Daubert* and (2) before trial. Moderna's proposal based on *10x Genomics* appropriately included narrowing of claims and patents proportional with Moderna's narrowing of invalidity defenses. D.I. 467 at 3–4.

differences. But now that the Court has limited Moderna's defenses, Plaintiffs say something different, *i.e.*, that "[t]here are unique and important issues related to liability and damages for various of the Patents-in-Suit," so they would be prejudiced if the number of patents-in-suit were limited. D.I. 469 at 1. Plaintiffs' opportunistic change-in-position is not an indicator that the Court "misapprehended" Plaintiffs' arguments. It is confirmation that reconsideration should be denied.

### B. Plaintiffs Identify No Change in Law and No Evidence Not Previously Available (Reconsideration Factors (i) and (ii))

Plaintiffs identify no change in law from the week-old letter briefing. Although Plaintiffs refer to a Federal Circuit decision (D.I. 469 at 2), that decision is 14 years old. Plaintiffs also identify no new evidence that came to light since the briefing less than a week ago. Instead, Plaintiffs raise a host of arguments they could have made, but chose not to. In their May 13 letter briefing, Plaintiffs argued that the five Ratio Patents generally raise the same issues and reducing the number would not meaningfully narrow the case. D.I. 466 at 4 ("That makes little sense . . . [b]ecause all but one of the patents are from a single patent family (the Lipid Composition Patents), it makes no difference to the scope of the case which patent (within that family) a claim is from."). Plaintiffs' only other argument against narrowing patents in the letter brief was that "the legal status of the patents within that family may be different" due to the IPR history of two patents. *Id.* Now, to justify keeping all six patents-in-suit, Plaintiffs make entirely new arguments that are irreconcilable with the position in their May 13 letter that it "***makes no difference***" which Ratio Patent is asserted, including: (1) the patents have different expiry and issuance dates which may affect damages, (2) the patents have differing effects on infringement theories, and (3) dropping patents before summary judgment "deprives Plaintiffs of their due process rights." As explained below, none withstand scrutiny or justify granting Plaintiffs' motion for reargument.

### 1. Plaintiffs Overstate the Impact of Patent Issuance and Expiry Dates

Plaintiffs argue that the patents-in-suit implicate different issuance and expiry dates which "may" affect damages and liability. D.I. 469 at 1–2. This argument was not made in Plaintiffs' May 13 submission (D.I. 466) and was therefore waived. *Golden Bridge Tech. v. Apple Inc.*, 758 F.3d 1362, 1369 (Fed. Cir. 2014) (holding argument first raised on "motion for reconsideration comes too late and is ordinarily deemed waived"); *Amgen Inc. v. Amneal Pharm. LLC*, No. 16853-MSG, 2021 WL 6882653, at *2 (D. Del. Oct. 20, 2021) (denying motion for reconsideration where moving party "had multiple opportunities to take a position" and failed to do so until moving to reconsider); *OI*, 2021 WL 5056094, at *2 (finding reconsideration motion "procedurally improper because it presents a new legal theory that was not raised at the time of the initial attachment motion"); *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998) ("a motion for reargument may not be used by the losing litigant as a vehicle to supplement or enlarge the record provided to the Court and upon which the merits decision was made unless new factual matters not previously obtainable have been discovered since the issue was submitted.").

Even so, Plaintiffs' new arguments do not demonstrate any prejudice. Of the 15 potential two-patent combinations Plaintiffs can assert at trial, all would allow Plaintiffs to seek their maximum window of damages. The issuance and expiry dates of the Patents-in-Suit are summarized in Appendix A. Four of the six patents-in-suit ('435, '069, '668, '359) issued before the alleged infringement and expire on the same date in 2029. Plaintiffs could therefore assert any

two of those patents, or any one of those patents with the '651 or '378 patents and obtain their maximum window of damages.

### 2. Plaintiffs Fail to Identify Any "Differing Effect of Infringement Theories on Different Patents"

Plaintiffs vaguely reference "potential[]" differences in infringement theories under different patents-in-suit. D.I. 469 at 2. Again, this argument was made for the first time in Plaintiffs' motion for reargument and is therefore waived. *Golden Bridge*, 758 F.3d at 1369.

Regardless, Plaintiffs' argument that there "***could potentially***" be differences in infringement is true for any narrowing of asserted claims which are necessarily of different scope. D.I. 469 at 2. Critically, Plaintiffs' motion fails to explain ***how*** the narrowing of the patents-in-suit affects any of its infringement theories, and leads to any prejudice. Indeed, Plaintiffs do not even refer to a single claim or a single patent to explain how the infringement analysis differs. *Id*. Such vague and unsupported assertions are not grounds for reconsideration, particularly given that Plaintiffs previously argued that narrowing the Ratio Patents was not necessary because they raise the same issues. *See* § I.B *supra*.

### C. Plaintiffs Identify No Manifest Injustice or Error of Fact or Law (Reconsideration Factor (iii))

The Court's narrowing order does not result in any manifest injustice or error of fact or law. Plaintiffs, however, argue that they would be deprived of "due process" if they must narrow from six patents to three, and then to two. D.I. 469 at 2. Again, this argument was made for the first time in its motion for reargument and was therefore waived. *Golden Bridge*, 758 F.3d at 1369.

Even if the Court considers this argument, Plaintiffs have had more than adequate process. As an initial matter, Plaintiffs concede that narrowing of patents is within this Court's discretion. D.I. 469 at 1. Other courts, just like Chief Judge Connolly in *10x Genomics*, have similarly narrowed patents. *LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 434 (D. Del. 2010) (noting the court had "required the parties to reduce the number of patents and claims asserted to a total of four patents and seven claims per side."); *Oracle Am., Inc. v. Google Inc.*, 2011 WL 12209477, at *1 (N.D. Cal. May 3, 2011) (ordering reduction of 132 claims from seven patents to three claims to be presented to the jury, reducing number of patents by at least four); *Huawei Technologies, Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 3:16-cv-02787-WHO, D.I. 143 at 2 (N.D. Cal June 2, 2017) (ordering reduction of four to six patents one week after fact discovery and reduction of one further patent after expert discovery); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 1:09-cv-00080, D.I. 148 at 2 (D. Del. Oct. 4, 2010) (ordering reduction of plaintiff's asserted patents from 14 patents to four, despite plaintiff's objection to the reduction of patents). And here, Plaintiffs were able to brief narrowing to the Court twice and used ***both*** opportunities to ask the Court to adopt the narrowing regime from *10x Genomics*, which this Court did. *See* § I.A *supra*. Plaintiffs' disagreement with the Court's order does not mean they were deprived of due process.

Although Plaintiffs contend that *In Re Katz* (D.I. 469 at 2) demonstrates they received a lack of due process, *Katz* confirms the opposite. In that case, the Court affirmed the district court's order requiring the patentee to limit the number of patent claims in circumstances similar to those

4

present here. *In Re Katz,* 639 F.3d 1303, 1310–13 (Fed. Cir. 2011). In doing so, the Federal Circuit rejected the patentee's argument that the narrowing procedure violated its due process rights. *Id.* at 1311. Specifically, the Federal Circuit held that "the district court acted reasonably in concluding that it would be more efficient to require [the patentee] to point out those unselected [patent] claims that raised separate issues of infringement and invalidity rather than requiring the defendants to prove that all of the unselected claims were duplicative." *Id.* at 1312. The patentee there "made no effort to identify any such claims" raising separate issues of infringement and invalidity. *Id.* Likewise, here, Plaintiffs failed to meet their burden to demonstrate that any patents they must drop "present[] unique questions of validity or infringement." *Id.* at 1313. Plaintiffs did no such analysis before the Court issued its order, and even now, on reconsideration, Plaintiffs simply attach the claims of the six patents-in-suit without even identifying which 66 claims are currently asserted, let alone explain how any claim presents unique issues of infringement of invalidity. Plaintiffs also fail to explain how the difference in claim scope of any Ratio Patent could render a different outcome with respect to IPR estoppel.

Moreover, just like the patents in *Katz*, the five Ratio Patents share a common specification, have a common claim of priority, and Plaintiffs filed terminal disclaimers[2] such that they all expire at the same time (in 2029). *In re Katz*, 639 F.3d at 1311 ("The district court noted that by providing examples of duplicative claims and pointing out the common genealogy of [the plaintiff's] patents and the terminal disclaimers in almost all of them, the defendants had made 'a convincing showing that many of the claims are duplicative.'").

Even if Plaintiffs' cursory reference to unspecified unique issues of infringement or invalidity sufficed (it does not), Chief Judge Connolly disagreed that *In Re Katz* mandates that a patentee is permitted to assert all such claims, otherwise "courts could never limit the number of claims asserted by a plaintiff, and this Court's docket would grind to a halt." *VLSI Tech. LLC v. Intel Corp.*, No. CV 18-0966-CFC, 2020 WL 4437401, at *2 (D. Del. Aug. 3, 2020) ("if due process required courts to allow plaintiffs to assert a claim merely because the claim presented a unique issue of infringement and/or validity, this District Court—in which plaintiffs routinely assert in hundreds of patent cases each year dozens of patents with dozens of claims—could not function . . . . each claim of an asserted patent necessarily presents a unique issue of infringement or invalidity").

Those principles are particularly critical here. While Plaintiffs claim that "moving forward as expeditiously as possible remains of critical importance to Plaintiffs" (D.I. 469 at 3 n.2), Plaintiffs show no willingness to narrow the case. Plaintiffs' motion confirms they seek to maintain ***all*** infringement theories with ***no*** meaningful narrowing: two different theories of literal infringement and a DOE infringement theory. And as explained in Moderna's letter (D.I. 467 at 4), Plaintiffs' three infringement arguments accuse ***three*** distinct aspects of Moderna's vaccine through ***five*** different statutory theories (35 U.S.C. §§ 271(a) (direct), 271(b) (induced), 271(c) (contributory) and 271(f)(1) and (2) (export of components)).

On top of maintaining all infringement theories, Plaintiffs ask to maintain all six patents through summary judgment and *Daubert*, generating tremendous (and unnecessary) burden on the

---

[2] A terminal disclaimer surrenders part of a patent's term to avoid rejection based on obviousness-type double patenting over similar patents or applications. Essentially, it allows a patent applicant to shorten a patent's life to match a related, earlier patent, preventing double patenting issues.

5

parties and the Court. Plaintiffs' proposed summary judgment ground on IPR estoppel and issue preclusion (D.I. 466 at 1) requires the Court to examine estoppel across 15 patent claims and all five Ratio Patents. Similarly, Moderna's proposed summary judgment ground on prosecution history estoppel relating to Plaintiffs' DOE infringement theory would require the Court to consider the claims and file histories of all five Ratio Patents (D.I. 467 at 1–2).

Plaintiffs sensationalize the Court's narrowing order, claiming it forces them into a "guessing game of Russian Roulette." D.I. 469 at 2. But Plaintiffs did not ask the Court to wait to impose narrowing requirements until after summary judgment. And they fail to acknowledge that Moderna is in the same position: Moderna must essentially halve its § 112 defenses before knowing which will survive Plaintiffs' *Daubert* and summary judgment motions. D.I. 456 at 1, 3 (Plaintiffs proposing three motions on Moderna's § 112 theories). Streamlining is a two-way street, and meaningful narrowing necessarily demands real concessions from both sides—Plaintiffs included.

The Court's narrowing of the claims and defenses of both parties was reasonable exercise of its discretion, and far from "a clear error of law or fact." *See* § I.A *supra*. This Court appropriately required **both parties** to narrow their claims and defenses before summary judgment and *Daubert*. *See, e.g.*, *Unified Messaging Sols. LLC v. Facebook, Inc.*, 2012 WL 11606516, at *1 (E.D. Tex. July 12, 2012) ("Narrowing the case at an earlier stage will serve to reduce the overall costs of the litigation by eliminating needless discovery regarding issues that will likely be dropped prior to trial, and allow the Court to dedicate its resources to the truly dispositive and meritorious issues.").

\*   \*   \*

Plaintiffs failed to meet their burden for reargument. *In re TK Holdings Inc.,* No. 17-11375-BLS, 2024 WL 964205, at *7 (D. Del. Mar. 6, 2024) (citations omitted) ("Reconsideration is reserved for 'extraordinary circumstances.' ... The movant 'bears a heavy burden' in showing that reconsideration is appropriate."). The Court should deny Plaintiffs' motion and maintain the narrowing regime that fairly limited the parties' claims and defenses.

Respectfully,

*/s/ Brian P. Egan*

Brian P. Egan (#6227)


cc:   All Counsel of Record (via CM/ECF and electronic mail)