```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF DELAWARE
 2                           -  -  -

 3   ARBUTUS BIOPHARMA            :  CIVIL ACTION NO.
     CORPORATION, ET AL.         :  22-252
 4                               :
         v.                      :  TELEPHONE
 5                               :  CONFERENCE
     MODERNA, ET AL.             :
 6                               :
     _____

 7
                                 James A. Byrne U.S. Courthouse
 8                               601 Market Street
                                 Philadelphia, PA 19106
 9                               May 19, 2025
                                 Commencing at 3:05 p.m.
10   _____

11          BEFORE THE HONORABLE MITCHELL S. GOLDBERG
     _____

12

13   APPEARANCES:

14   FOR THE              WILLIAMS & CONNOLLY, LLP
     PLAINTIFFS:          BY:  DAVID I. BERL, ESQUIRE
15                        680 Maine Avenue SW
                          Washington, DC 20024
16                        (202) 434-5491
                          dberl@wc.com

17

18                           -  -  -

19            Cherilyn M. McCollum, CCR-NJ, RPR
                    Official Court Reporter
20         Cherilyn_McCollum@paed.uscourts.gov

21

22

23

24
     Proceedings taken stenographically and prepared utilizing
25   computer-aided transcription
```

*United States District Court*

```
 1   APPEARANCES CONTINUED:

 2
     FOR THE                  KIRKLAND ELLIS, LLP
 3   DEFENDANTS:              BY:  MARK C. McLENNAN, ESQUIRE
                              601 Lexington Avenue
 4                            New York, NY 10022
                              (212) 446-4800
 5                            mark.mclennan@kirkland.com

 6

 7

 8

 9                                 -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*United States District Court*

```
 1              (Proceeding commences at 3:05 p.m.)
 2         THE COURT:  So what I want to make clear, which maybe
 3    I didn't last time and I sort of wasn't as clear as I could be
 4    last patent jury trial I handled, where I required narrowing of
 5    claims in patents.  I don't view, unless I got this concept
 6    wrong, but I don't view narrowing, so we'll use the patents
 7    here, to three, which is what my order was, to constitute a
 8    proclamation the other three that aren't picked by the
 9    plaintiff somehow amounts to a forfeiture of the plaintiffs'
10    right to pursue infringement on the three that they don't pick.
11    And I'm happy to hear, Mr. Berl, if I got this concept wrong,
12    but I sort of view it as, well, we've got a lot of claims on a
13    lot of patents, patent is inherently complicated for a fact
14    finder, I have other cases on my docket, I'm a visiting judge
15    in this case, and there has got to be an efficient way to
16    present this information that's incredibly, incredibly
17    complicated, so given those factors, I'm allowed to exercise my
18    discretion and narrow those claims on patents.  But that
19    doesn't mean that you've lost your right to, after the dust
20    settles on the first trial, which is sort of a bellwether trial
21    in a way, you don't lose your right to still say the ones that
22    weren't picked aren't still infringed.  There has been no
23    ruling on that.
24         Mr. Berl, in that general concept, are we on the same
25    page?  I didn't spell it out as much the last time we were
```

*United States District Court*

1    together because I didn't think it was necessary.  But are we

2    on the same page?

3         MR. BERL:  I guess I'm not entirely sure whether we

4    are or not, Your Honor, because it has never been entirely

5    clear to me based on the case law of what the status is of

6    non-selected claims for patents.  I think the general idea in

7    most of these cases, as I read them at least, is that the

8    patents or claims that are selected generally address all the

9    legal and factual issues so they will resolve all of the issues

10   with respect to the non-narrowed patents so that they, in a

11   sense, all rise and fall together, and therefore, if the

12   plaintiff wins on the selected patents, the narrow patents --

13        THE COURT:  Suppose the claims, just for sake of

14   discussion -- I mean, I sort of disagree with that concept, and

15   I'm not saying I know what the case law answer is, but suppose

16   you have -- I'm just picking a number just to make a point --

17   like 15 claims in a complicated case.  You can't expect a jury

18   to make a determination on 15 separate infringement claims.

19   And if they don't all mesh together, in my view, if I said,

20   well, I've got a month and I think based on an intelligent

21   attestment that only seven of these claims can be litigated on

22   infringement alone, where does that proclamation say that you

23   lose your right to the other seven?  Whether we're on the same

24   page or not, I'm saying to you, I don't view it that way.  I'm

25   the judge in this case, and I don't view it as a waiver at all

*United States District Court*

1    of your rights.

2            MR. BERL:  Understood.  Understood, Your Honor.

3            And I think the issue from our perspective is that

4    everyone agrees about how many claims the jury, fact finder can

5    digest.  We proposed six, Moderna proposed six for trial, and

6    Your Honor adopted six.  So in our view, the information that's

7    going to be presented to the jury will be about those six

8    claims.  And whether there are three patents at trial or four

9    patents at trial or two patents at trial, that information will

10    be the same for the jury.  They'll assess our three arguments

11    on infringement, which we laid out briefly on Friday.  There

12    was doctrine of equivalents theory and then there are two

13    literal infringement theories, and that will be the same.  So

14    the difference in terms of patent to patent is not about what

15    information the jury is going to have to hear about and digest

16    but, rather, the legal import of the jury's rulings just

17    because the patents differ from each other in terms of the

18    estoppel issues, both IPR estoppel and garden variety --

19            THE COURT:  Let me ask you to educate me on a basic

20    patent concept I think I'm missing.  So if you are saying six

21    claims we agree -- that's me putting aside the invalidity

22    issues that Moderna was going to raise -- but six claims go to

23    the jury, Judge, and it's not going to matter which patent they

24    come from, I mean, I don't understand why if you have one --

25    say, Here is our claim, members of the jury, here is what it

*United States District Court*

1  says, and here is why Moderna infringes, and you are doing it

2  for six separate claims, why did you need six separate patents?

3  I mean, did they come -- and one is -- five you told me are

4  under one family with the same expiration date.

5            MR. BERL:  That's right.  There are five under one

6  family, so let's talk about those.  For the most part, the

7  claims are similar, but they differ in really important ways.

8  To take one example, one of those patents issued after the

9  beginning of Moderna's sales.  So, for example, if we assert

10  that patent rather than the others, which happens to be our

11  broadest patent where we claim the most infringement under most

12  of our theories, that is our broadest patent, a third of the

13  sales we can't even touch because they happened before the

14  issuance of the patent and so --

15            THE COURT:  I'm sorry to interrupt.  Five in the one

16  family, which I'm looking at the number now, everything except

17  the '069?

18            MR. BERL:  Everything except the '651.

19            THE COURT:  I'm sorry.  Okay.  So the '378, the '435,

20  the '668, the '359, and the '069 are all one family.

21            MR. BERL:  Yes.

22            THE COURT:  Don't all of them have the same expiration

23  date?

24            MR. BERL:  They have the same expiration date, but

25  they don't have the same issuance date.  And we're not allowed

*United States District Court*

1   to get damages before the issuance of the patent.  And so a lot
2   of Moderna's sales, for example, in late 2020, we can't recover
3   under that patent because it hadn't issued yet, and yet that is
4   our broadest patent.  So we are, in a sense, having to choose
5   between our broadest patent where we confirmed the most
6   infringement in terms of the theories of literal infringement,
7   for example, and trying to capture the late-2020 sales, which
8   we can't do with this patent because it hadn't issued yet.
9           THE COURT:  Would your view change if I would put
10  in -- well, I'm on the record.  I'm not making a ruling now.
11  But would your view change if I were to say, I'm sticking with
12  three patents and the same number of claims, motion for
13  reconsideration is denied; however, it is understood that after
14  the first trial, to the extent that Arbutus wants to continue
15  to press other claims not litigated in the first trial, they
16  retain that right to do so?  Would your view change in all of
17  this if I said that?
18          MR. BERL:  I don't really think so, Your Honor.  The
19  reason is it is not clear to me how that would work.  Because
20  then -- I mean, would the jury's determination with respect to
21  our literal infringement theories and doctrine of equivalents
22  theories apply?  And if so -- so for example --
23          THE COURT:  No, it would -- to the extent the issues
24  on liability are the same, it would be a -- I mean, I heard you
25  say we're having trouble with this because we have a different

*United States District Court*

1   issuance date so our damages theory is different, and we would

2   take what happened in the first trial and then give you, to the

3   extent you had a different issuance date, give you a short and

4   quick damages trial.

5           MR. BERL:  I mean, I suppose that's just the same

6   information -- I don't think our damages theories are different

7   with respect to the issuance date as much as it is that the

8   damages would only apply on the '378 after a certain date, so I

9   guess that would create two trials where there is no more

10  complexity in one trial.  And so I just -- you know, I suppose

11  that's better than nothing, but I think we can just do all six

12  of these claims in one trial rather than splitting them into

13  two and it would be much more efficient that way.

14          There are -- just to take another example, you know, all

15  of these patent claims from the family you just read have all

16  of these ranges in them.  Sometimes the ranges say, you know,

17  for one of them from three to 15, sometimes they say from four

18  to 10, and so a different number of lots will infringe each of

19  these different patents simply because of the numbers, you

20  know, in Moderna's products in our testing of them.  So it's

21  the same issue presented to the jury:  Do you agree with our

22  version of the testing from Dr. Schuster or do you agree with

23  Moderna's response?  Do you agree with our theory or -- (audio

24  distortion) -- and so the jury is going to have to decide those

25  issues.  The only difference is going to be -- (audio

*United States District Court*

1    distortion) --

2            THE COURT REPORTER:  I'm sorry, counsel.

3            MR. BERL:  -- what is the number in terms of damages

4    that -- (audio distortion) --

5            THE COURT:  Mr. Berl.

6            MR. BERL:  -- so that we can try this case and get

7    this done -- (audio distortion) --

8            THE COURT:  Mr. Berl.  Calling Mr. Berl.

9            MR. BERL:  -- and then we can move on rather than

10   saying, well, the jury got this and not this and try to --

11   (audio distortion) --

12           THE COURT:  Can you hear me?

13           MR. BERL:  -- and then have the trial on whatever

14   claims, you know, or, I'm sorry, whatever patents did continue.

15           Again, we're fine just leaving it at six.  You know, we

16   don't worry about the other -- (audio distortion) -- we want to

17   have one trial.  And I think we can do that with six -- (audio

18   distortion) -- so that the difference from patent to patent is

19   all -- (audio distortion) --

20           THE COURT:  Mr. Berl.

21           MR. BERL:  -- in terms of damages and that's now --

22   (audio distortion) --

23           THE COURT:  Mr. Berl.

24           MR. BERL:  -- two patents close enough to make

25   decisions between do we -- (audio distortion) -- aren't

*United States District Court*

 1  productive in terms of the efficiency of the case and aren't

 2  fair in terms of the property rights.

 3            THE COURT:  Can you hear me, Mr. Berl?

 4            MR. BERL:  No.  Sorry, I can't.

 5            THE COURT:  I said, "Can you hear me?"  And you said,

 6  "No."

 7            MR. BERL:  Right.  Right when you said that, I heard a

 8  faint voice.  I think a button got pushed.  I'm sorry, Your

 9  Honor.

10            THE COURT:  Can you hear me now?

11            MR. BERL:  I can, Your Honor.

12            THE COURT:  Okay.  Well, I was trying to stop you

13  about five minutes ago because I couldn't hear a word you were

14  saying and something happened, and I'm now worried that you

15  haven't taken a breath in five minutes.  Have you fainted?  Are

16  you okay?

17            MR. BERL:  I'm here, Your Honor.

18            THE COURT:  Okay.  I didn't -- about -- literally

19  about three minutes ago, the last time you started talking up

20  until now, I could not hear a word you were saying.  It was

21  very blurred.

22            MR. BERL:  I apologize.

23            THE COURT:  It's a tech issue.  It's not your fault.

24            Now give me the 30-second version of what you said in

25  the last three minutes.  Say it again.

*United States District Court*

1          MR. BERL:  Sure.  The 30-second version is that, in

2    our view, having this done only once with one trial is the

3    simplest and most efficient way to go forward because if we

4    have -- (audio distortion) --

5          THE COURT REPORTER:  Judge, I can't hear him again.

6          MR. BERL:  -- the jury can be presented in a single

7    trial with only six claims.  Whether there are two patents,

8    three patents, four patents -- (audio distortion) --

9          THE COURT:  Mr. Berl, I can't hear you.

10          MR. BERL:  -- totally different in terms of the number

11    of patents is how much you get based on adjudication of the

12    dispute.  And so that's not going to add complexity to the

13    trial.  It would avoid a second trial -- (audio distortion) --

14    and that's what our strong preference -- (audio distortion) --

15    and be done with it and not deal with a second trial.

16          THE COURT:  That was way more than 30 seconds, and I

17    couldn't hear you again.  You want to just hang up and dial

18    back in or go on a different phone?  Are you on your cell

19    phone?  What is going on?

20          MR. BERL:  I am, Your Honor.  Let me try to fix the

21    problem.

22          THE COURT:  Are you in your office?  Can you go to a

23    hardline?

24          MR. BERL:  I don't have a hardline here,

25    unfortunately.

*United States District Court*

1          THE COURT:  Just so you know, everything you said in

2    the last five minutes the court reporter I am sure -- could the

3    court reporter hear Mr. Berl?  Because I couldn't.

4          THE COURT REPORTER:  I couldn't hear, and I did try to

5    stop him, but he couldn't hear me.  I don't think anyone could

6    hear me.

7          THE COURT:  I think his technical glitch is he can't

8    hear through his phone.

9          I'm going to try to repeat what I think you said, which

10   is we're trying to be efficient, we are -- we're good with the

11   number of claims that you have narrowed it to, and if you make

12   us pick three, we may have to do a second trial, and that's not

13   efficient, we want a little more leeway to add more patents in

14   than three, and that will be more efficient.

15         I mean, is that the gist of it?

16         MR. BERL:  That is the gist.  The one addendum is that

17   the issues presented to the jury in terms of our infringement

18   theories would be the same.  Whether it is two patents or three

19   patents or four patents, it's the same issues on infringement,

20   so what happens then is the only difference is, when the jury

21   decides those infringement issues, how much do we get in

22   damages, so that's --

23         THE COURT:  I understand.  I understand your argument.

24   All right.  I get it.

25         So let me hear from Mr. McLennan.

*United States District Court*

1          MR. McLENNAN:  Thank you, Your Honor.

2          So on this point about preclusion and what the impact

3    would be on later cases and whether plaintiffs could just

4    proceed in this in the new case, plaintiffs cited the case *In*

5    *Re: Katz*, the Federal Circuit decision, which is informative to

6    Your Honor's question.  So in that case, when the court issued

7    a narrowing order requiring a limit on the number of asserted

8    claims, which also limited the asserted patents, the Federal

9    Circuit approved of the procedure and agreed with the district

10   court's decision that they would not allow the patentee to set

11   up the -- basically, the unasserted claims and save those for

12   another case.  So I think it's very similar to this situation

13   here where you are suggesting that possibly these patents could

14   be asserted again.  The Federal Circuit has already approved of

15   a procedure where, yes, a district court does maintain the

16   discretion to limit claims.  And I don't have the cases at hand

17   addressing the preclusion effects, but I believe are not too

18   far off of what Mr. Berl was saying, that there would be some

19   preclusion effect.  But generally courts assume that plaintiff

20   move forward with their strongest claims.  You move forward

21   with the claims you think are strongest on infringement and

22   invalidity, and that's essentially the reason for the precluded

23   effect in later cases.

24          On the number of patents --

25          THE COURT:  Hold on.  So are you saying you disagree

*United States District Court*

1   with my instinct that, if I held him to three and we had a

2   trial, he would be able to maintain and ask for a trial on the

3   other three?  Are you disagreeing with that premise?  It sounds

4   like you are.

5           MR. McLENNAN:  Your Honor, I don't think there is an

6   absolute answer I can give you on the phone now.

7           THE COURT:  Okay.

8           MR. McLENNAN:  I think it's an issue that is quite

9   complicated in the case law.

10          THE COURT:  Okay.  All right.  Go ahead.

11          MR. McLENNAN:  On the number of patents, counsel for

12  plaintiffs referred to there being different issuance and

13  expiry dates.  So to the later-issued patents that they

14  mentioned that was broader that issued during the pandemic,

15  they could always, under the Court's order allowing them to

16  move forward with three and then two patents, they could still

17  present a case at trial and pick any one of the five other

18  patents that were issued before the alleged infringement period

19  began.  They are not missing out on anything in terms of the

20  damages window.  There is no reason to proceed on all six

21  patents through trial when there is only a difference in

22  issuance date for one patent.  That doesn't justify keeping

23  more than two or three in the case.

24          And with the numbers that were presented in plaintiffs'

25  brief asking for five and then four patents at trial, there is

*United States District Court*

1   no analysis whatsoever justifying why that particular number is

2   any less prejudicial than the number that the Court's already

3   ordered.  There just wasn't a patent-by-patent analysis

4   explaining how that could be justified.  And I think other

5   counsel for plaintiffs just say that the issues of infringement

6   are the same between those patents.  So if it is just about

7   damages, they can still have their full damages window under

8   the Court's current procedure.

9        THE COURT:  Okay.  You can respond.  Go ahead.

10        MR. BERL:  Yes.  Let me respond to two points.

11        On the first one with respect to preclusion, what

12  Mr. McLennan is saying is that the limiting of patents would be

13  a draconian result because what they are --

14        THE COURT:  No, he didn't say that.  He said he wasn't

15  sure.  But go ahead.

16        MR. BERL:  Okay.  Or that it could be a draconian

17  result.  But with respect --

18        THE COURT:  He didn't say that either, but go ahead.

19        MR. BERL:  But with respect to the number of patents,

20  let me be clear, I mean, what Mr. McLennan just said is that we

21  could get around this by not asserting the '378 patent, which

22  is the later-issuance patent, and therefore claim the full

23  period of damages, but the issue is that the '378 patent is the

24  broadest patent.  And so under some of our infringement

25  theories we would -- there is a lot more infringement of the

*United States District Court*

1    '378 than others.  So what we are basically being asked to do

2    is choosing between our broadest patent that issued later, and

3    so we can't get damages for the first part of the pandemic, on

4    the one hand, or asserting a narrower patent which is less

5    infringed under some of our theories but covers the whole

6    period.  We shouldn't have to make choices like that with our

7    property rights.  That doesn't seem right.

8         And I'm happy to give further analysis.  For example, on

9    the issue of preclusion and estoppel, there are three different

10   buckets into which these patents might fall.  The '069 everyone

11   agrees they are precluded, obviously.  The '435 we think their

12   statutory forum is precluded; they don't.  The other three

13   patents we think they are precluded from argument based on

14   common law estoppel; they don't.

15        And so again, we're having to choose from different

16   categories for no reason.  In both cases there are six claims

17   that the jury is getting.  It's not going to make a difference

18   to the jury whether those six claims come from two, three, or

19   four patents.  It's the same infringement theories but just

20   that the results are different.

21        THE COURT:  You made that argument already.  I heard

22   you.

23        Mr. McLennan, do you agree that if I allow more patents

24   it won't elongate the trial?

25        MR. McLENNAN:  Your Honor, so to take us back to where

*United States District Court*

1   we started with this we when had the hearing a couple weeks

2   ago, we were asked to propose narrowing before summary judgment

3   and trial.  That's exactly what we've done.  So in terms of the

4   trial, maybe, you know, the focus on whether it's going to make

5   a difference at trial is one thing, but I think we also need to

6   think about the burden on the parties and the Court going

7   through summary judgment and *Daubert*.  And what I essentially

8   hear is they want to keep all six patents through summary

9   judgment and *Daubert*.  We laid out in our letter today --

10          THE COURT:  Mr. McLennan, could you answer my

11  question?

12          MR. McLENNAN:  Apologize, Your Honor.  You are asking

13  us to give a different analysis for the Court -- or the jury --

14          THE COURT:  No, I'm asking, in your view, if I allow

15  more than three patents in -- Mr. Berl is saying it's not going

16  to affect the length of the trial, the length of the trial is

17  going to be affected by the claims, not the number of patents.

18  Do you agree or disagree?

19          MR. McLENNAN:  I disagree.  We do have different

20  defenses across different patents, so I do think it increases

21  the complexity across the trial.

22          MR. BERL:  Your Honor, they listed which defenses --

23  which claims their defenses are applicable to.  Most of their

24  defenses they said are applicable to all of the claims.

25          THE COURT:  Most of them.  But my takeaway, you know,

*United States District Court*

1    with this discussion, and I could have gotten the wrong

2    impression, but I suggested -- my memory -- let's lay out on

3    *Daubert* -- to try to economize the thing, let's lay out

4    everyone's opinion so we can figure out what to do with

5    *Daubert*, and then I take, you know, whatever motions for

6    summary judgment.  I thought both sides were like no, no, no,

7    no, narrow, narrow first, and then we can talk about that.  But

8    so now I've done that, and I guess Arbutus is having a

9    different view.

10           All right.  This discussion has been helpful.

11           Did you want to say anything else, Mr. Berl?

12           MR. BERL:  No, Your Honor.

13           THE COURT:  Okay.  All right.  Let me mull this over a

14   little bit and I'll -- when is this -- when is this narrowing

15   due?

16           MR. BERL:  It would be due today, Your Honor.

17           THE COURT:  You are not obligated to submit any -- I

18   want to think about this, so I'm giving a verbal order -- I'll

19   put it in writing, but you can tell your team you don't have to

20   submit anything today.  I'm going to try to issue an order -- I

21   got a lot going on today and tomorrow, but you will hear from

22   me on this by the end of close of business tomorrow, and I'll

23   give you some time to figure out what to do.  So don't worry

24   about the deadlines for today.  That's off the table.

25           MR. McLENNAN:  Thank you, Your Honor.


*United States District Court*

1              MR. BERL:  I appreciate that, Your Honor.

2              THE COURT:  Thank you.  Take care.

3              (Proceeding concluded at 3:29 p.m.)

4                                -  -  -

5

6         I certify that the foregoing is a correct transcript

7    from the record of proceedings in the above-entitled matter.

8

9    */s/ Cherilyn M. McCollum*

10   Cherilyn M. McCollum, CCR, RPR
     Official Court Reporter
11
     Date:  23rd day of May, 2025
12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*

'

**'069** [3] - 6:17, 6:20, 16:10
**'359** [1] - 6:20
**'378** [5] - 6:19, 8:8, 15:21, 15:23, 16:1
**'435** [2] - 6:19, 16:11
**'651** [1] - 6:18
**'668** [1] - 6:20

**/**

**/s** [1] - 19:9

**1**

**10** [1] - 8:18
**10022** [1] - 2:4
**15** [3] - 4:17, 4:18, 8:17
**19** [1] - 1:9
**19106** [1] - 1:8

**2**

**20024** [1] - 1:15
**202** [1] - 1:16
**2020** [1] - 7:2
**2025** [2] - 1:9, 19:11
**212** [1] - 2:4
**22-252** [1] - 1:3
**23rd** [1] - 19:11

**3**

**30** [1] - 11:16
**30-second** [2] - 10:24, 11:1
**3:05** [2] - 1:9, 3:1
**3:29** [1] - 19:3

**4**

**434-5491** [1] - 1:16
**446-4800** [1] - 2:4

**6**

**601** [2] - 1:8, 2:3
**680** [1] - 1:15

**A**

**able** [1] - 14:2
**above-entitled** [1] - 19:7
**absolute** [1] - 14:6
**ACTION** [1] - 1:3
**add** [2] - 11:12,

12:13
**addendum** [1] - 12:16
**address** [1] - 4:8
**addressing** [1] - 13:17
**adjudication** [1] - 11:11
**adopted** [1] - 5:6
**affect** [1] - 17:16
**affected** [1] - 17:17
**ago** [3] - 10:13, 10:19, 17:2
**agree** [6] - 5:21, 8:21, 8:22, 8:23, 16:23, 17:18
**agreed** [1] - 13:9
**agrees** [2] - 5:4, 16:11
**ahead** [4] - 14:10, 15:9, 15:15, 15:18
**aided** [1] - 1:25
**AL** [2] - 1:3, 1:5
**alleged** [1] - 14:18
**allow** [3] - 13:10, 16:23, 17:14
**allowed** [2] - 3:17, 6:25
**allowing** [1] - 14:15
**alone** [1] - 4:22
**amounts** [1] - 3:9
**analysis** [4] - 15:1, 15:3, 16:8, 17:13
**answer** [4] - 4:15, 14:6, 17:10
**apologize** [2] - 10:22, 17:12
**APPEARANCES** [2] - 1:13, 2:1
**applicable** [2] - 17:23, 17:24
**apply** [2] - 7:22, 8:8
**appreciate** [1] - 19:1
**approved** [2] - 13:9, 13:14
**ARBUTUS** [1] - 1:3
**Arbutus** [2] - 7:14, 18:8
**argument** [3] - 12:23, 16:13, 16:21
**arguments** [1] - 5:10
**aside** [1] - 5:21
**assert** [1] - 6:9
**asserted** [2] - 13:7, 13:8, 13:14
**asserting** [2] - 15:21, 16:4
**assess** [1] - 5:10
**assume** [1] - 13:19
**attestation** [1] - 4:21

**audio** [14] - 8:23, 8:25, 9:4, 9:7, 9:11, 9:16, 9:17, 9:19, 9:22, 9:25, 11:4, 11:8, 11:13, 11:14
**Avenue** [2] - 1:15, 2:3
**avoid** [1] - 11:13

**B**

**based** [4] - 4:5, 4:20, 11:11, 16:13
**basic** [1] - 5:19
**BEFORE** [1] - 1:11
**began** [1] - 14:19
**beginning** [1] - 6:9
**bellwether** [1] - 3:20
**Berl** [13] - 3:11, 3:24, 9:5, 9:8, 9:20, 9:23, 10:3, 11:9, 12:3, 13:18, 17:15, 18:11
**BERL** [33] - 1:14, 4:3, 5:2, 6:5, 6:18, 6:21, 6:24, 7:18, 8:5, 9:3, 9:6, 9:9, 9:13, 9:21, 9:24, 10:4, 10:7, 10:11, 10:17, 10:22, 11:1, 11:6, 11:10, 11:20, 11:24, 12:16, 15:10, 15:16, 15:19, 17:22, 18:12, 18:16, 19:1
**better** [1] - 8:11
**between** [4] - 7:5, 9:25, 15:6, 16:2
**BIOPHARMA** [1] - 1:3
**bit** [1] - 18:14
**blurred** [1] - 10:21
**breath** [1] - 10:15
**brief** [1] - 14:25
**briefly** [1] - 5:11
**broader** [1] - 14:14
**broadest** [6] - 6:11, 6:12, 7:4, 7:5, 15:24, 16:2
**buckets** [1] - 16:10
**burden** [1] - 17:6
**business** [1] - 18:22
**button** [1] - 10:8
**BY** [2] - 1:14, 2:3
**Byrne** [1] - 1:7

**C**

**capture** [1] - 7:7
**care** [1] - 19:2
**case** [14] - 3:15, 4:5, 4:15, 4:17, 4:25, 9:6,

10:1, 13:4, 13:6, 13:12, 14:9, 14:17, 14:23
**cases** [6] - 3:14, 4:22, 13:3, 13:16, 13:23, 16:16
**categories** [1] - 16:16
**CCR** [2] - 1:19, 19:10
**CCR-NJ** [1] - 1:19
**cell** [1] - 11:18
**certain** [1] - 8:8
**certify** [1] - 19:6
**change** [2] - 7:9, 7:11, 7:16
**Cherilyn** [3] - 1:19, 19:9, 19:10
**Cherilyn_ McCollum@paed. uscourts.gov** [1] - 1:20
**choices** [1] - 16:6
**choose** [2] - 7:4, 16:15
**choosing** [1] - 16:2
**Circuit** [3] - 13:5, 13:9, 13:14
**cited** [1] - 13:4
**CIVIL** [1] - 1:3
**claim** [3] - 5:25, 6:11, 15:22
**claims** [32] - 3:5, 3:12, 3:18, 4:6, 4:8, 4:13, 4:17, 4:18, 4:21, 5:4, 5:8, 5:21, 5:22, 6:2, 6:7, 7:12, 7:15, 8:12, 8:15, 9:14, 11:7, 12:11, 13:8, 13:11, 13:16, 13:20, 13:21, 16:16, 16:18, 17:17, 17:23, 17:24
**clear** [5] - 3:2, 3:3, 4:5, 7:19, 15:20
**close** [2] - 9:24, 18:22
**commences** [1] - 3:1
**Commencing** [1] - 1:9
**common** [1] - 16:14
**complexity** [3] - 8:10, 11:12, 17:21
**complicated** [4] - 3:13, 3:17, 4:17, 14:9
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concept** [5] - 3:5, 3:11, 3:24, 4:14, 5:20
**concluded** [1] - 19:3
**CONFERENCE** [1] -

1:5
**confirmed** [1] - 7:5
**CONNOLLY** [1] - 1:14
**constitute** [1] - 3:7
**continue** [2] - 7:14, 9:14
**CONTINUED** [1] - 2:1
**CORPORATION** [1] - 1:3
**correct** [1] - 19:6
**counsel** [3] - 9:2, 14:11, 15:5
**couple** [1] - 17:1
**court** [4] - 12:2, 12:3, 13:6, 13:15
**Court** [4] - 1:19, 17:6, 17:13, 19:10
**COURT** [42] - 1:1, 3:2, 4:13, 5:19, 6:15, 6:19, 6:22, 7:9, 7:23, 9:2, 9:5, 9:8, 9:12, 9:20, 9:23, 10:3, 10:5, 10:10, 10:12, 10:18, 10:23, 11:5, 11:9, 11:16, 11:22, 12:1, 12:4, 12:7, 12:23, 13:25, 14:7, 14:10, 15:9, 15:14, 15:18, 16:21, 17:10, 17:14, 17:25, 18:13, 18:17, 19:2
**Court's** [3] - 14:15, 15:2, 15:8
**court's** [1] - 13:10
**Courthouse** [1] - 1:7
**courts** [1] - 13:19
**covers** [1] - 16:5
**create** [1] - 8:9
**current** [1] - 15:8

**D**

**damages** [7] - 7:1, 8:1, 8:4, 8:6, 8:8, 9:3, 9:21, 12:22, 14:20, 15:7, 15:23, 16:3
**Date** [1] - 19:11
**date** [9] - 6:4, 6:23, 6:24, 6:25, 8:1, 8:3, 8:7, 8:8, 14:22
**dates** [1] - 14:13
**Daubert** [4] - 17:7, 17:9, 18:3, 18:5
**DAVID** [1] - 1:14
**dberl@wc.com** [1] - 1:16
**DC** [1] - 1:15
**deadlines** [1] - 18:24

*United States District Court*

**deal** [1] - 11:15
**decide** [1] - 8:24
**decides** [1] - 12:21
**decision** [2] - 13:5, 13:10
**decisions** [1] - 9:25
**DEFENDANTS** [1] - 2:3
**defenses** [4] - 17:20, 17:22, 17:23, 17:24
**DELAWARE** [1] - 1:1
**denied** [1] - 7:13
**determination** [2] - 4:18, 7:20
**dial** [1] - 11:17
**differ** [2] - 5:17, 6:7
**difference** [7] - 5:14, 8:25, 9:18, 12:20, 14:21, 16:17, 17:5
**different** [16] - 7:25, 8:1, 8:3, 8:6, 8:18, 8:19, 11:10, 11:18, 14:12, 16:9, 16:15, 16:20, 17:13, 17:19, 17:20, 18:9
**digest** [2] - 5:5, 5:15
**disagree** [4] - 4:14, 13:25, 17:18, 17:19
**disagreeing** [1] - 14:3
**discretion** [2] - 3:18, 13:16
**discussion** [3] - 4:14, 18:1, 18:10
**dispute** [1] - 11:12
**distortion** [14] - 8:24, 9:1, 9:4, 9:7, 9:11, 9:16, 9:18, 9:19, 9:22, 9:25, 11:4, 11:8, 11:13, 11:14
**DISTRICT** [2] - 1:1, 1:1
**district** [2] - 13:9, 13:15
**docket** [1] - 3:14
**doctrine** [2] - 5:12, 7:21
**done** [5] - 9:7, 11:2, 11:15, 17:3, 18:8
**Dr** [1] - 8:22
**draconian** [2] - 15:13, 15:16
**due** [2] - 18:15, 18:16
**during** [1] - 14:14
**dust** [1] - 3:19

**E**

**economize** [1] - 18:3

**educate** [1] - 5:19
**effect** [2] - 13:19, 13:23
**effects** [1] - 13:17
**efficiency** [1] - 10:1
**efficient** [6] - 3:15, 8:13, 11:3, 12:10, 12:13, 12:14
**either** [1] - 15:18
**ELLIS** [1] - 2:2
**elongate** [1] - 16:24
**end** [1] - 18:22
**entirely** [2] - 4:3, 4:4
**entitled** [1] - 19:7
**equivalents** [2] - 5:12, 7:21
**ESQUIRE** [2] - 1:14, 2:3
**essentially** [2] - 13:22, 17:7
**estoppel** [4] - 5:18, 16:9, 16:14
**ET** [2] - 1:3, 1:5
**exactly** [1] - 17:3
**example** [7] - 6:8, 6:9, 7:2, 7:7, 7:22, 8:14, 16:8
**except** [2] - 6:16, 6:18
**exercise** [1] - 3:17
**expect** [1] - 4:17
**expiration** [3] - 6:4, 6:22, 6:24
**expiry** [1] - 14:13
**explaining** [1] - 15:4
**extent** [3] - 7:14, 7:23, 8:3

**F**

**fact** [2] - 3:13, 5:4
**factors** [1] - 3:17
**factual** [1] - 4:3
**faint** [1] - 10:8
**fainted** [1] - 10:15
**fair** [1] - 10:2
**fall** [2] - 4:11, 16:10
**family** [5] - 6:4, 6:6, 6:16, 6:20, 8:15
**far** [1] - 13:18
**fault** [1] - 10:23
**Federal** [3] - 13:5, 13:8, 13:14
**figure** [2] - 18:4, 18:23
**finder** [2] - 3:14, 5:4
**fine** [1] - 9:15
**first** [7] - 3:20, 7:14, 7:15, 8:2, 15:11, 16:3, 18:7

**five** [8] - 6:3, 6:5, 6:15, 10:13, 10:15, 12:2, 14:17, 14:25
**fix** [1] - 11:20
**focus** [1] - 17:4
**FOR** [3] - 1:1, 1:14, 2:2
**foregoing** [1] - 19:6
**forfeiture** [1] - 3:9
**forum** [1] - 16:12
**forward** [4] - 11:3, 13:20, 14:16
**four** [6] - 5:8, 8:17, 11:8, 12:19, 14:25, 16:19
**Friday** [1] - 5:11
**full** [2] - 15:7, 15:22

**G**

**garden** [1] - 5:18
**general** [2] - 3:24, 4:6
**generally** [2] - 4:8, 13:19
**gist** [2] - 12:15, 12:16
**given** [1] - 3:17
**glitch** [1] - 12:7
**GOLDBERG** [1] - 1:11
**guess** [3] - 4:3, 8:9, 18:8

**H**

**hand** [2] - 13:16, 16:4
**handled** [1] - 3:4
**hang** [1] - 11:17
**happy** [2] - 3:11, 16:8
**hardline** [2] - 11:23, 11:24
**hear** [19] - 3:11, 5:15, 9:12, 10:3, 10:5, 10:10, 10:13, 10:20, 11:5, 11:9, 11:17, 12:3, 12:4, 12:5, 12:6, 12:8, 12:25, 17:8, 18:21
**heard** [3] - 7:24, 10:7, 16:21
**hearing** [1] - 17:1
**held** [1] - 14:1
**helpful** [1] - 18:10
**hold** [1] - 13:25
**Honor** [17] - 4:4, 5:2, 5:6, 7:18, 10:9, 10:11, 10:17, 11:20, 13:1,

14:5, 16:25, 17:12, 17:22, 18:12, 18:16, 18:25, 19:1
**Honor's** [1] - 13:6
**HONORABLE** [1] - 1:11

**I**

**idea** [1] - 4:6
**impact** [1] - 13:2
**import** [1] - 5:16
**important** [1] - 6:7
**impression** [1] - 18:2
**IN** [1] - 1:1
**increases** [1] - 17:20
**incredibly** [2] - 3:16
**information** [5] - 3:16, 5:6, 5:9, 5:15, 8:6
**informative** [1] - 13:5
**infringe** [1] - 8:18
**infringed** [2] - 3:22, 16:5
**infringement** [18] - 3:10, 4:18, 4:22, 5:11, 5:13, 6:11, 7:6, 7:21, 12:17, 12:19, 12:21, 13:21, 14:18, 15:5, 15:24, 15:25, 16:19
**infringes** [1] - 6:1
**inherently** [1] - 3:13
**instinct** [1] - 14:1
**intelligent** [1] - 4:20
**interrupt** [2] - 5:21, 13:22
**invalidity** [2] - 5:21, 13:22
**IPR** [1] - 5:18
**issuance** [9] - 6:14, 6:25, 7:1, 8:1, 8:3, 8:7, 14:12, 14:22, 15:22
**issue** [7] - 5:3, 8:21, 10:23, 14:8, 15:23, 16:9, 18:20
**issued** [6] - 6:8, 7:3, 7:8, 13:6, 14:13, 14:14, 14:18, 16:2
**issues** [10] - 4:9, 5:18, 5:22, 7:23, 8:25, 12:17, 12:19, 12:21, 15:5

**J**

**James** [1] - 1:7
**Judge** [2] - 5:23, 11:5
**judge** [2] - 3:14, 4:25

**judgment** [4] - 17:2, 17:7, 17:9, 18:6
**jury** [17] - 3:4, 4:17, 5:4, 5:7, 5:10, 5:15, 5:23, 5:25, 8:21, 8:24, 9:10, 11:6, 12:17, 12:20, 16:17, 16:18, 17:13
**jury's** [2] - 5:16, 7:20
**justified** [1] - 15:4
**justify** [1] - 14:22
**justifying** [1] - 15:1

**K**

**Katz** [1] - 13:5
**keep** [1] - 17:8
**keeping** [1] - 14:22
**KIRKLAND** [1] - 2:2

**L**

**laid** [2] - 5:11, 17:9
**last** [6] - 3:3, 3:4, 3:25, 10:19, 10:25, 12:2
**late** [1] - 7:2
**late-2020** [1] - 7:7
**later-issuance** [1] - 15:22
**later-issued** [1] - 14:13
**law** [4] - 4:5, 4:15, 14:9, 16:14
**lay** [2] - 18:2, 18:3
**least** [1] - 4:7
**leaving** [1] - 9:15
**leeway** [1] - 12:13
**legal** [2] - 4:9, 5:16
**length** [1] - 17:16
**less** [2] - 15:2, 16:4
**letter** [1] - 17:9
**Lexington** [1] - 2:3
**liability** [1] - 7:24
**limit** [2] - 13:7, 13:16
**limited** [1] - 13:8
**limiting** [1] - 15:12
**listed** [1] - 17:22
**literal** [3] - 5:13, 7:6, 7:21
**literally** [1] - 10:18
**litigated** [2] - 4:21, 7:15
**LLP** [1] - 1:14, 2:2
**looking** [1] - 6:16
**lose** [2] - 3:21, 4:23
**lost** [1] - 3:19

*United States District Court*

**M**

**Maine** [1] - 1:15
**maintain** [2] - 13:15, 14:2
**MARK** [1] - 2:3
**mark.mclennan@ kirkland.com** [1] - 2:5
**Market** [1] - 1:8
**matter** [2] - 5:23, 19:7
**McCollum** [3] - 1:19, 19:9, 19:10
**McLennan** [14] - 2:3, 12:25, 13:1, 14:5, 14:8, 14:11, 15:12, 15:20, 16:23, 16:25, 17:10, 17:12, 17:19, 18:25
**mean** [9] - 3:19, 4:14, 5:24, 6:3, 7:20, 7:24, 8:5, 12:15, 15:20
**members** [1] - 5:25
**memory** [1] - 18:2
**mentioned** [1] - 14:14
**mesh** [1] - 4:19
**might** [1] - 16:10
**minutes** [5] - 10:13, 10:15, 10:19, 10:25, 12:2
**missing** [2] - 5:20, 14:19
**MITCHELL** [1] - 1:11
**Moderna** [3] - 5:5, 5:22, 6:1
**MODERNA** [1] - 1:5
**Moderna's** [4] - 6:9, 7:2, 8:20, 8:23
**month** [1] - 4:20
**most** [8] - 4:7, 6:6, 6:11, 7:5, 11:3, 17:23, 17:25
**motion** [1] - 7:12
**motions** [1] - 18:5
**move** [4] - 9:9, 13:20, 14:16
**MR** [40] - 4:3, 5:2, 6:5, 6:18, 6:21, 6:24, 7:18, 8:5, 9:3, 9:6, 9:9, 9:13, 9:21, 9:24, 10:4, 10:7, 10:11, 10:17, 10:22, 11:1, 11:6, 11:10, 11:20, 11:24, 12:16, 13:1, 14:5, 14:8, 14:11, 15:10, 15:16, 15:19, 16:25, 17:12, 17:19, 17:22, 18:12, 18:16,

18:25, 19:1
**mull** [1] - 18:13

**N**

**narrow** [4] - 3:18, 4:12, 18:7
**narrowed** [2] - 4:10, 12:11
**narrower** [1] - 16:4
**narrowing** [5] - 3:4, 3:6, 13:7, 17:2, 18:14
**necessary** [1] - 4:1
**need** [2] - 6:2, 17:5
**never** [1] - 4:4
**new** [1] - 13:4
**New** [2] - 2:4
**NJ** [1] - 1:19
**NO** [1] - 1:3
**non** [2] - 4:6, 4:10
**non-narrowed** [1] - 4:10
**non-selected** [1] - 4:6
**nothing** [1] - 8:11
**number** [14] - 4:16, 6:16, 7:12, 8:18, 9:3, 11:10, 12:11, 13:7, 13:24, 14:11, 15:1, 15:2, 15:19, 17:17
**numbers** [2] - 8:19, 14:24
**NY** [1] - 2:4

**O**

**obligated** [1] - 18:17
**obviously** [1] - 16:11
**OF** [1] - 1:1
**office** [1] - 11:22
**Official** [2] - 1:19, 19:10
**once** [1] - 11:2
**one** [19] - 5:24, 6:3, 6:4, 6:5, 6:8, 6:15, 6:20, 8:10, 8:12, 8:17, 9:17, 11:2, 12:16, 14:17, 14:22, 15:11, 16:4, 17:5
**ones** [1] - 3:21
**opinion** [1] - 18:4
**order** [5] - 3:7, 13:7, 14:15, 18:18, 18:20
**ordered** [1] - 15:3

**P**

**p.m** [3] - 1:9, 3:1, 19:3
**PA** [1] - 1:8

**page** [3] - 3:25, 4:2, 4:24
**pandemic** [2] - 14:14, 16:3
**part** [2] - 6:6, 16:3
**particular** [1] - 15:1
**parties** [1] - 17:6
**patent** [27] - 3:4, 3:13, 5:14, 5:20, 5:23, 6:10, 6:11, 6:12, 6:14, 7:1, 7:3, 7:4, 7:5, 7:8, 8:15, 9:18, 14:22, 15:3, 15:21, 15:22, 15:23, 15:24, 16:2, 16:4
**patent-by-patent** [1] - 15:3
**patentee** [1] - 13:10
**patents** [47] - 3:5, 3:6, 3:13, 3:18, 4:6, 4:8, 4:10, 4:12, 5:8, 5:9, 5:17, 6:2, 6:8, 7:12, 8:19, 9:14, 9:24, 11:7, 11:8, 11:11, 12:13, 12:18, 12:19, 13:8, 13:13, 13:24, 14:11, 14:13, 14:16, 14:18, 14:21, 14:25, 15:6, 15:12, 15:19, 16:10, 16:13, 16:19, 16:23, 17:8, 17:15, 17:17, 17:20
**period** [3] - 14:18, 15:23, 16:6
**perspective** [1] - 5:3
**Philadelphia** [1] - 1:8
**phone** [4] - 11:18, 11:19, 12:8, 14:6
**pick** [3] - 3:10, 12:12, 14:17
**picked** [2] - 3:8, 3:22
**picking** [1] - 4:16
**plaintiff** [3] - 3:9, 4:12, 13:19
**PLAINTIFFS** [1] - 1:14
**plaintiffs** [4] - 13:3, 13:4, 14:12, 15:5
**plaintiffs'** [2] - 3:9, 14:24
**point** [2] - 4:16, 13:2
**points** [1] - 15:10
**possibly** [1] - 13:13
**precluded** [4] - 13:22, 16:11, 16:12, 16:13
**preclusion** [5] - 13:2, 13:17, 13:19, 15:11, 16:9
**preference** [1] -

11:14
**prejudicial** [1] - 15:2
**premise** [1] - 14:3
**prepared** [1] - 1:24
**present** [2] - 3:16, 14:17
**presented** [5] - 5:7, 8:21, 11:6, 12:17, 14:24
**press** [1] - 7:15
**problem** [1] - 11:21
**procedure** [3] - 13:9, 13:15, 15:8
**proceed** [2] - 13:4, 14:20
**Proceeding** [2] - 3:1, 19:3
**proceedings** [1] - 19:7
**Proceedings** [1] - 1:24
**proclamation** [2] - 3:8, 4:22
**productive** [1] - 10:1
**products** [1] - 8:20
**property** [2] - 10:2, 16:7
**propose** [1] - 17:2
**proposed** [1] - 5:5
**pursue** [1] - 3:10
**pushed** [1] - 10:8
**put** [2] - 7:9, 18:19
**putting** [1] - 5:21

**Q**

**quick** [1] - 8:4
**quite** [1] - 14:8

**R**

**raise** [1] - 5:22
**ranges** [2] - 8:16
**rather** [4] - 5:16, 6:10, 8:12, 9:9
**Re** [1] - 13:5
**read** [2] - 4:7, 8:15
**really** [2] - 6:7, 7:18
**reason** [4] - 7:19, 13:22, 14:20, 16:16
**reconsideration** [1] - 7:13
**record** [2] - 7:10, 19:7
**recover** [1] - 7:2
**referred** [1] - 14:12
**repeat** [1] - 12:9
**REPORTER** [3] - 9:2, 11:5, 12:4
**reporter** [2] - 12:2,

12:3
**Reporter** [2] - 1:19, 19:10
**required** [1] - 3:4
**requiring** [1] - 13:7
**resolve** [1] - 4:9
**respect** [6] - 4:10, 7:20, 8:7, 15:11, 15:17, 15:19
**respond** [2] - 15:9, 15:10
**response** [1] - 8:23
**result** [2] - 15:13, 15:17
**results** [1] - 16:20
**retain** [1] - 7:16
**rights** [3] - 5:1, 10:2, 16:7
**rise** [1] - 4:11
**RPR** [1] - 1:19, 19:10
**ruling** [2] - 3:23, 7:10
**rulings** [1] - 5:16

**S**

**sake** [1] - 4:13
**sales** [4] - 6:9, 6:13, 7:2, 7:7
**save** [1] - 13:11
**Schuster** [1] - 8:22
**second** [3] - 11:13, 11:15, 12:12
**seconds** [1] - 11:16
**seem** [1] - 16:7
**selected** [3] - 4:6, 4:8, 4:12
**sense** [2] - 4:11, 7:4
**separate** [3] - 4:18, 6:2
**set** [1] - 13:10
**settles** [1] - 3:20
**seven** [2] - 4:21, 4:23
**short** [1] - 8:3
**sides** [1] - 18:6
**similar** [2] - 6:7, 13:12
**simplest** [1] - 11:3
**simply** [1] - 8:19
**single** [1] - 11:6
**situation** [1] - 13:12
**six** [16] - 5:5, 5:6, 5:7, 5:20, 5:22, 6:2, 8:11, 9:15, 9:17, 11:7, 14:20, 16:16, 16:18, 17:8
**sometimes** [2] - 8:16, 8:17
**sorry** [6] - 6:15, 6:19, 9:2, 9:14, 10:4, 10:8
**sort** [4] - 3:3, 3:12,

3:20, 4:14
**sounds** [1] - 14:3
**spell** [1] - 3:25
**splitting** [1] - 8:12
**started** [2] - 10:19, 17:1
**STATES** [1] - 1:1
**status** [1] - 4:5
**statutory** [1] - 16:12
**stenographically** [1] - 1:24
**sticking** [1] - 7:11
**still** [4] - 3:21, 3:22, 14:16, 15:7
**stop** [2] - 10:12, 12:5
**Street** [1] - 1:8
**strong** [1] - 11:14
**strongest** [2] - 13:20, 13:21
**submit** [2] - 18:17, 18:20
**suggested** [1] - 18:2
**suggesting** [1] - 13:13
**summary** [4] - 17:2, 17:7, 17:8, 18:6
**suppose** [4] - 4:13, 4:15, 8:5, 8:10
**SW** [1] - 1:15

**T**

**table** [1] - 18:24
**takeaway** [1] - 17:25
**team** [1] - 18:19
**tech** [1] - 10:23
**technical** [1] - 12:7
**TELEPHONE** [1] - 1:4
**terms** [11] - 5:14, 5:17, 7:6, 9:3, 9:21, 10:1, 10:2, 11:10, 12:17, 14:19, 17:3
**testing** [2] - 8:20, 8:22
**THE** [46] - 1:1, 1:1, 1:11, 1:14, 2:2, 3:2, 4:13, 5:19, 6:15, 6:19, 6:22, 7:9, 7:23, 9:2, 9:5, 9:8, 9:12, 9:20, 9:23, 10:3, 10:5, 10:10, 10:12, 10:18, 10:23, 11:5, 11:9, 11:16, 11:22, 12:1, 12:4, 12:7, 12:23, 13:25, 14:7, 14:10, 15:9, 15:14, 15:18, 16:21, 17:10, 17:14, 17:25, 18:13, 18:17, 19:2

**theories** [10] - 5:13, 6:12, 7:6, 7:21, 7:22, 8:6, 12:18, 15:25, 16:5, 16:19
**theory** [3] - 5:12, 8:1, 8:23
**therefore** [2] - 4:11, 15:22
**third** [1] - 6:12
**three** [21] - 3:7, 3:8, 3:10, 5:8, 5:10, 7:12, 8:17, 10:19, 10:25, 11:8, 12:12, 12:14, 12:18, 14:1, 14:3, 14:16, 14:23, 16:9, 16:12, 16:18, 17:15
**today** [5] - 17:9, 18:16, 18:20, 18:21, 18:24
**together** [3] - 4:1, 4:11, 4:19
**tomorrow** [2] - 18:21, 18:22
**totally** [1] - 11:10
**touch** [1] - 6:13
**transcript** [1] - 19:6
**transcription** [1] - 1:25
**trial** [33] - 3:4, 3:20, 5:5, 5:8, 5:9, 7:14, 7:15, 8:2, 8:4, 8:10, 8:12, 9:13, 9:17, 11:2, 11:7, 11:13, 11:15, 12:12, 14:2, 14:17, 14:21, 14:25, 16:24, 17:3, 17:4, 17:5, 17:16, 17:21
**trials** [1] - 8:9
**trouble** [1] - 7:25
**try** [7] - 9:6, 9:10, 11:20, 12:4, 12:9, 18:3, 18:20
**trying** [3] - 7:7, 10:12, 12:10
**two** [11] - 5:9, 5:12, 8:9, 8:13, 9:24, 11:7, 12:18, 14:16, 14:23, 15:10, 16:18

**U**

**U.S** [1] - 1:7
**unasserted** [1] - 13:11
**under** [8] - 6:4, 6:5, 6:11, 7:3, 14:15, 15:7, 15:24, 16:5
**understood** [3] - 5:2, 7:13
**unfortunately** [1] -

11:25
**UNITED** [1] - 1:1
**unless** [1] - 3:5
**up** [3] - 10:19, 11:17, 13:11
**utilizing** [1] - 1:24

**V**

**variety** [1] - 5:18
**verbal** [1] - 18:18
**version** [3] - 8:22, 10:24, 11:1
**view** [13] - 3:5, 3:6, 3:12, 4:19, 4:24, 4:25, 5:6, 7:9, 7:11, 7:16, 11:2, 17:14, 18:9
**visiting** [1] - 3:14
**voice** [1] - 10:8

**W**

**waiver** [1] - 4:25
**wants** [1] - 7:14
**Washington** [1] - 1:15
**ways** [1] - 6:7
**weeks** [1] - 17:1
**whatsoever** [1] - 15:1
**whole** [1] - 16:5
**WILLIAMS** [1] - 1:14
**window** [2] - 14:20, 15:7
**wins** [1] - 4:12
**word** [2] - 10:13, 10:20
**worried** [1] - 10:14
**worry** [2] - 9:16, 18:23
**writing** [1] - 18:19

**Y**

**York** [1] - 2:4

*United States District Court*