

Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0709 – Direct
nhoeschen@shawkeller.com

June 17, 2025

**BY CM/ECF & FEDEX**
The Honorable Mitchell S. Goldberg
U.S. District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse, Room 17614
601 Market Street, Philadelphia, PA 19106-1797

Re:   *Arbutus Biopharma Corporation, et. al. v. Moderna, Inc., et. al.* C.A. No. 22-252-MSG

Dear Chief Judge Goldberg:

We write in response to the letter submitted yesterday by Moderna (D.I. 480), yet again seeking to delay the trial date, this time on the newly-furnished basis that attorney James Hurst has an adjacent (not overlapping) trial. The Court should decline this improper request and set a trial date for two weeks in 2025, preferably beginning December 1, when none of Moderna's ***nine*** partners who have entered an appearance in the case has a conflict. *See* D.I. 9, 79, 339, 426, 447 (appearances for Pat Carson, Brian Egan, Noah Frank, James Hurst, Yan-Xin Li, Mark McLennan, Leslie Schmidt, Jeanna Wacker, and Jason Wilcox).

Plaintiffs have sought information about Moderna's trial availability since May 20—two business days after the Court's order postponing trial, D.I. 468. *See* A. Harber Email to M. McLennan (June 11, 2025), Ex. A at 4. Moderna claimed there ***were no available trial dates within six months of the previous date*** but refused to identify which of the nine partners representing Moderna had the trial conflicts at issue. *Id* at 3. Plaintiffs then requested this information specifically, to assess whether the attorney who had the purported conflict played a substantial role in this case. *Id.* at 3. Moderna again refused to provide this information, including when Plaintiffs proposed a December 1, 2025 trial date in advance of the June 12 hearing. *Id.* at 1-2. Nor did Moderna provide this information or raise any conflict issue when Plaintiffs again proposed a December 1 trial during the June 12 hearing.

In in its letter yesterday, D.I. 480, Moderna revealed that the conflict does not involve a lawyer who has been active in this case, like Dr. Carson or Mr. McLennan. Instead, it concerns an attorney that neither the Court nor Plaintiffs' counsel has interacted with in connection with this litigation, James Hurst. Mr. Hurst was not present at the June 12 hearing, just as he has not been present for a single one of the approximately dozen hearings and conferences the Court has conducted in this case, which may explain Moderna's hesitance to disclose the nature of the conflict in court. Mr. Hurst has never previously been identified as lead trial counsel, as Moderna now asserts. In support of that supposed disclosure, Moderna cites only the motion for admission *pro hac vice* of Mr. Hurst and three other Kirkland & Ellis partners, none of whom are designated as lead counsel. *See* D.I. 9.

This case has proceeded without issue for over 1,200 days without Mr. Hurst's involvement. Mr. Hurst has not appeared at any hearing or conference in this case, including the crucial Markman

hearing; Mr. Hurst has not appeared at any of the roughly 45 depositions in this matter, including examinations of Moderna's most senior executives; Mr. Hurst has not authored any correspondence written to Plaintiffs; and he has not appeared at any meet-and-confer between the parties. The long history of this case refutes conclusively any notion of Mr. Hurst's indispensability.

Moreover, notwithstanding the suggestion that Mr. Hurst will be central to the November trial cited in Moderna's letter, neither Mr. Hurst nor any other lawyer from Kirkland & Ellis even has entered an appearance in that case, *Brown et al. v. Abbott Laboratories, Inc. et al.*, 1:22-cv-02001 (N.D. Ill.), despite Mr. Hurst having represented Abbott in different trials in the same multidistrict litigation. Moderna also concedes that trial will be over prior to December 1. Its suggestion that the trials are adjacent assumes that the *Abbott* trial will last 3-4 weeks, but Moderna offers no citation in support. Based on the approximately 2.5 weeks the court has set for another upcoming *Abbott* bell weather trial, *Diggs v. Abbott Laboratories, et al.*, 22-cv-5356, D.I. 79 at 4 (N.D. Ill.), the gap between the trials may be larger. Regardless, this non-conflicting trial does not justify moving, until long after its conclusion, the potential December 1 trial date in this case.

Moderna thus faces no prejudice whatsoever from a December 1 trial date; the eight other partners who represent Moderna in this case—nearly all of whom have appeared at depositions or hearings—have no conflict. By contrast, Moderna's rapidly declining cash balance means delay would impose significant prejudice on Plaintiffs, who face the prospect of no more than a Pyrrhic victory if they were to prevail at trial, only to be denied the damages they are owed.

While Moderna's letter dismisses this risk, (D.I. 480 at 2, n.2), the earnings announcement it cites confirms Plaintiffs' concerns. That announcement includes the $6 billion cash-on-hand figure Plaintiffs mentioned at the hearing, which is Moderna's own estimate for how much cash it will still have at the end of this year. Moderna Q1 2025 Press Release, Ex. B.[1] That $6 billion already accounts for the projected revenues Moderna identified in its letter. In other words, even if Moderna achieves its expected revenues—a dubious proposition, given that its projections were made before the modified recommendations for its COVID vaccine and the removal of funding for its bird flu clinical trials, Ex. C—it still expects its cash balance to decline by an additional **$2.4 billion** by the end of the year.

Moderna offers no factual basis for disregarding this concern. Its only response is to suggest that earlier events, like when the suit was filed or the parties' scheduling stipulations, mean Plaintiffs' urgency is insincere.[2] Plaintiffs' desire for a quick trial is sincere. The current degree of urgency simply did not exist earlier, when Moderna's fiscal position was sound. Moderna's

---

[1] The $6 billion cash-on-hand projection was also publicly reported in the *Barron's* article referenced at the June 12 hearing. *See* Barron's Online, *Moderna is Imperiled by Kennedy's Health Department. It May Run Out of Cash* (May 29, 2025), Ex. C at 2.

[2] Moderna also points to Plaintiffs' decision not to seek injunctive relief, ignoring the explanation in the complaint: "Plaintiffs are proud that their LNP technology has had such a profound impact on the heroic fight against the COVID-19 pandemic, and they do not seek to impede by an injunction or otherwise the production or distribution of Moderna's COVID-19 vaccine, including boosters." D.I. 1 ¶ 7.

deteriorating finances now pose a more significant risk—with losses in the range of $1 billion per quarter, Moderna's available cash will likely dip below Plaintiffs' compensatory damages claim alone in the first half of next year, likely before post-trial motions are adjudicated. If Moderna were willing to place $5 billion into escrow, Plaintiffs would have no objection to a later trial. But absent such a step, justice delayed may very well be justice denied.

While Delaware courts (and thus federal courts in Delaware, *see* Fed. R. Civ. P. 64) can impose requirements for pre-trial security in rare circumstances, they recognize that in the face of a defendant's potential future insolvency, the "best source for relief is a prompt trial date." *Beal Bank, SSB v. Lucks*, 1998 WL 778362, at *3 (Del. Ch. Oct. 23, 1998). Plaintiffs thus ask the Court to set a trial date of December 1, 2025. Alternatively, as a compromise, Plaintiffs would request trial start on December 8, 2025—allowing an additional week after the other trial Mr. Hurst may be attending.

Respectfully submitted,

*Nathan R. Hoeschen*

Nathan R. Hoeschen (No. 6232)

cc:   Clerk of the Court (by CM/ECF)
      All Counsel of Record (by CM/ECF & Email)