UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
                                  .
ARBUTUS BIOPHARMA.                .
CORPORATION, et al,               .  Case No. 1:22-cv-00252-MSG
                                  .
            Plaintiffs,           .
                                  .
          vs.                     .  Courtroom 17-A
                                  .  601 Market Street
MODERNA, INC., et al,             .  Philadelphia, Pennsylvania 19106
                                  .
            Defendants.           .
. . . . . . . . . . . . . .       .  Thursday, June 12, 2025
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE MITCHELL S. GOLDBERG
UNITED STATES DISTRICT COURT CHIEF JUDGE

APPEARANCES:

For the Plaintiffs:          Nathan Roger Hoeschen, Esq.
                             SHAW KELLER, LLP
                             1105 North Market Street
                             12th Floor
                             Wilmington, Delaware 19801

                             David I. Berl, Esq.
                             Shaun P. Mahaffy, Esq.
                             Matthew W. Lachman, Esq.
                             WILLIAMS & CONNOLLY, LLP
                             680 Maine Avenue SW
                             Washington, D.C. 20024

(Appearances Continued)

Audio Operator:              Electronically Recorded
                             by Nelson Quiles Malave,
                              Deputy Clerk/ESR

Transcription Company:       RedDoor Legal Services, LLC
                             44 Valley Forge Road
                             Bordentown, N.J. 08505
                             (973)985-3668
                             www.reddoorlegalservices.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:   (Continued)

For the Plaintiffs:         Eric C. Wiener, Esq.
                            MORRISON & FOERSTER, LLP
                            425 Market Street
                            San Francisco, California 94105

For the Defendants:         Brian P. Egan, Esq.
                            MORRIS, NICHOLS, ARSHT
                             & TUNNELL, LLP
                            1201 North Market Street
                            16th Floor
                            Wilmington, Delaware 19899

                            Marc C. McLennan, Esq.
                            Patricia A. Carson, Esq.
                            KIRKLAND & ELLIS, LLP
                            601 Lexington Avenue
                            New York, New York 10022

Also Appearing:             Peter Zorn
                            Lindsay Androski
                            GENEVANT SCIENCES GMBGH

                            Lauren Rabinovic
                            MODERNA, INC.

3

1          (Proceedings commence at 9:33 a.m.)

2          THE COURT:  All right.  This is the Arbutus v.

3     Modera matter.

4          A couple of discovery things to discuss.  And the

5     first one would be the, I think, outstanding issue regarding

6     Dr. Schuster.

7          Excuse me one second.

8       (Court and court personnel confer)

9          THE COURT:  So let me just re-acclimate because we

10    had a little momentum, and I got sidetracked.

11         Arbutus -- Dr. Schuster is Arbutus' expert.  He was

12    in deposition in April and indicated that he conducted an

13    earlier series of tests on the accused product that was --

14    according to Moderna, was not disclosed, it was in the

15    original expert reports.

16         So, for simplicity's sake, he has his opinions, his

17    opinions are based on testing.  I'm going to call that "level

18    one."  And then, to prepare for the testing, he did -- or put

19    together earlier tests, which are called "level two."  And I

20    think Moderna is saying well, we don't know, really, much

21    about how he put his level one testing together, so we want

22    to get into level two, I think it -- I think more properly

23    referred to as "method development feasibility tests."

24         So the rub becomes should there be more discovery

25    on that.  And Moderna listed five areas of further

4

1    information.  I think I found Number 2 to be too broad, all

2    documents relating to -- including any methods resulting in

3    samples, testing of which Dr. Schuster or Coriolis is aware.

4         And I think we talked about maybe there was some

5    flexibility with Arbutus with a discrete deposition of a

6    couple of hours would be appropriate, with the narrowing of

7    documents beforehand.

8         And then there was the issue of further reports,

9    which I think Moderna wanted to put together after the

10   deposition.

11        So I forgot to acknowledge the attorneys.  Good

12   morning.

13        (Laughter)

14        THE COURT:  So do I have that right?  And do you

15   want to identify yourselves for the record?  Arbutus first.

16        MR. HOESCHEN:  Good morning, Your Honor.

17        THE COURT:  Good morning.

18        MR. HOESCHEN:  Nate Hoeschen for plaintiffs, and

19   I'm just doing the identification portion.

20        THE COURT:  Sure.

21        MR. HOESCHEN:  With me at counsel table, on behalf

22   of Genevant, we have, from Williams & Connolly, David Berl,

23   Matt Lachman, and Shaun Mahaffy.

24        Just behind them, on behalf of Arbutus, from

25   Morrison & Foerster, we have Eric Wiener.

5

1          And with us from the client, we have Special

2     Counsel for Genevant Lindsay Androski and President and Chief

3     Legal Office Pete Zorn.

4               THE COURT:  Good morning.

5               Do I have -- before we go to the other side, did I

6     capture the discovery issue correct?

7               MR. BERL:  I believe so, Your Honor.

8               THE COURT:  Okay.

9               Good morning.

10              MR. EGAN:  Good morning, Your Honor.  Brian Eagan

11    from Morris Nichols on behalf of Moderna.  Joining me at

12    counsel table from Kirkland & Ellis are Pat Carson and Mark

13    McLennan.  And also joining us this morning is in-house

14    counsel from Moderna Lauren Rabinovic.

15              THE COURT:  Good morning.

16              Did I capture the discovery issue correctly, maybe?

17              MR. MCLENNAN:  Yes, Your Honor.

18              THE COURT:  Okay.

19              MR. MCLENNAN:  Yes.

20              THE COURT:  All right.  Have you made any progress?

21    Do you want to suggest -- Arbutus' counsel is shaking his

22    head no.  So is that right?  Do you want me to make some

23    rulings and hear further argument?  I mean, I have some

24    suggestions.  But do you have an agreement or not?

25              MR. MCLENNAN:  No, we do not have an agreement,

6

1    Your Honor.

2                THE COURT:  Okay.  Okay.  Well, so let me talk to

3    Arbutus' counsel.

4                Do you -- are you objecting across the board that

5    you don't have to do any further discovery?

6                MR. BERL:  Yes, Your Honor.

7                THE COURT:  Okay.  I disagree with that, so --

8    maybe I shouldn't be so -- I shouldn't jump to that

9    conclusion so quickly.

10               I preliminarily disagree because I don't understand

11   if your expert is going to rely on certain testing or

12   methodology that he engaged in that allowed him to do testing

13   that forms the basis of his opinion.  Why isn't the other

14   side allowed to understand how that occurred?  So I can -- I

15   was trying to think of a more simple example, and the one I

16   thought of -- and it may not be applicable, but I'll posit it

17   anyway.

18               So let's say that the issue in the case is what's

19   caused a fire.  And commonly, in fire cases -- I used to know

20   the name of this -- gas chromatogram, a gas chromatogram

21   tests whether there was accelerant, and that there's been a

22   lot of litigation over the reliability of the gas

23   chromatogram.  So why wouldn't -- if the basis of an opinion

24   the fire was caused by fill-in-the-blank, let's say an

25   accelerant, what's the basis of that opinion, Mr. Expert?

1    Well, this, this, and this, and the gas chromatogram.  To me,

2    the other side gets to find out as much information as they

3    deem appropriate about the reliability of the gas

4    chromatogram.

5        So why is this different?

6        MR. BERL:  I don't believe it is, Your Honor.  I

7    think that's a perfectly useful analogy to use.

8        And so the gas chromatogram testing -- in this

9    case, it's a different technique, of course, but the actual

10   testing that Dr. Schuster relied on, his actual method and

11   technique that he used to test their samples, that he put in

12   the report, they've received all of the documents about his

13   development of that method.  It was a long appendix to the

14   report --

15       THE COURT:  "All of the documents."  Be more

16   specific.

17       MR. BERL:  Sure.  All of the testing of -- you

18   know, all of the, what they call "method development."  So

19   what they do, for example -- because the -- what matters here

20   is the concentration of the various lipids in Moderna's

21   product, so you have to do what's called "method

22   development."  And so one way of doing that is you put into

23   the machine known quantities of a chemical, let's say one of

24   their lipids.  And you say I know that this is .1, and so

25   what signal is it giving.  And then I know that I put in .2,

1    and what signal is it giving me.  It's got to be linear, so

2    that then, if I do .3, it should be 3 times as much as .1, in

3    terms of the signal.  That way, when I get a signal from

4    testing Moderna's product, I can tell the concentration

5    because I've created this method that basically creates a

6    linear relationship between the signal I get out of the

7    machine and the concentration of the particular chemical that

8    I'm looking for.

9              And so that's the method that he developed.  And he

10   produced all of the documents and explained in excruciating

11   detail -- it will put you to sleep to read that appendix to

12   the report before your ten percent of the way through -- how

13   he developed that method.  All of that was given to them with

14   his report.  They didn't have to ask for it.  We gave them

15   all of it.

16             This material that they're asking for is the

17   preliminary testing.  Does the machine work at all?  Does the

18   machine work at all for this purpose?  Do you have to turn

19   the knobs on this way?  Do you have to use this kind of

20   chemical or that kind of chemical?  This is the initial sort

21   of buildup, just to make sure that the machine is working

22   correctly and that you have the parameters, right?

23             THE COURT:  Suppose --

24             MR. BERL:  Before you do --

25             THE COURT:  Suppose --

1          MR. BERL:  -- the method --

2          THE COURT:  -- the machine --

3          MR. BERL:  -- development.

4          THE COURT:  -- wasn't working correctly.  Isn't

5     that information that Moderna is entitled to?

6          MR. BERL:  Well, if the machine wasn't working

7     correctly, then he couldn't go on to the method development

8     that he did --

9          THE COURT:  Suppose --

10          MR. BERL:  -- and actually --

11          THE COURT:  -- the machine was set up incorrectly.

12     Isn't that information Moderna was entitled to?

13          MR. BERL:  The -- if the machine was set up

14     incorrectly when it did the testing that Dr. Schuster relied

15     on, absolutely, they're entitled to that.  The method

16     development documents -- and there are reams of them that

17     they got -- would reflect that.  That's the testing that

18     shows okay, I've developed a reliable method, so, when I get

19     a reading out of that machine that says .56321, that means

20     you have this amount of the lipid in your sample.

21          THE COURT:  Uh-huh.

22          MR. BERL:  That they got all of.

23          This is just the testing to show and does this

24     parameter work, do I want to use this, do I want to use that.

25     He either developed a reliable method that tells you whether

1    the accelerant was used or he didn't.  That method they have

2    in full and all of the documents about it.  They examined him

3    in gross detail about that method.  Their own experts

4    responded to the reports.

5            Just to be clear, when their experts responded to

6    Dr. Schuster's report -- and they have two experts responding

7    to his report, both Dr. Prud'homme and Dr. Fenton, scores and

8    scores of pages of expert reports about this -- they never

9    said -- they never said I don't know whether the machine was

10   set up right, I need more information, I need the earlier

11   testing, too, to see whether the machine works at all.  They

12   didn't suggest that they couldn't respond or had difficulty

13   responding because they didn't have enough.

14           Moderna didn't say to us, when they first received

15   the report with all this method development testing, we need

16   more, we want more.  They waited four months --

17           THE COURT:  Suppose --

18           MR. BERL:  -- to ask for this.

19           THE COURT:  Suppose I would tell you I'm 80 percent

20   persuaded -- 85 percent persuaded by your argument that this

21   is unnecessary -- my word, not yours.  What's the harm of a

22   two-hour deposition in a case with the stakes this high?

23   What's your prejudice?

24           MR. BERL:  The ultimate prejudice -- and I assume

25   we're going to talk about this more later today -- is we want

1    this case tried as quicky as possible.

2              THE COURT:  I know, you've made that clear.

3              MR. BERL:  And --

4              THE COURT:  We're not -- the trial date is not

5    going to happen because you also want -- what was the trial

6    date that I postponed?

7              MR. BERL:  September 29th.

8              THE COURT:  Okay.  So you also want Dauberts and

9    motions for summary judgment, so I have other cases on my

10   docket; this is not my only case, and you can't have it both

11   ways.  So the case is not -- if you want all that litigation

12   to happen -- and I understand plaintiffs want cases to go to

13   trial, I don't fault you for pressing that.  But you can't

14   have it all.  You can't have extensive Daubert litigation and

15   summary judgment litigation and trial preparation -- and we

16   haven't even talked about motions in limine and jury

17   instructions -- in between now and September.  It's

18   impossible, even if you were my only case.

19             MR. BERL:  I understand that, Your Honor.  We are -

20   - and we understand that and appreciate that.

21             THE COURT:  So let's go back --

22             MR. BERL:  We are --

23             THE COURT:  Let's go back to my question --

24             MR. BERL:  Sure.

25             THE COURT:  -- which was:  If I am persuaded -- and

1    you've been persuasive -- that this is just sort of overkill

2    -- my word, not yours -- beyond that you want this case to go

3    to trial sooner, what is a two-hour deposition and production

4    of a discrete amount of documents?  How does that prejudice

5    you?

6              MR. BERL:  If it's not going to have any effect on

7    the schedule, Your Honor, which is --

8              THE COURT:  It's not.

9              MR. BERL:  -- really what matters, then -- and

10   that's going to resolve this, then that's fine with us.

11             THE COURT:  Thank you.

12             MR. BERL:  I do want --

13             THE COURT:  Thank you.

14             MR. BERL:  -- to say one --

15             THE COURT:  Thank you for --

16             MR. BERL:  -- more thing, though.

17             THE COURT:  -- being reasonable about that.

18             MR. BERL:  And can I say one more thing, though --

19             THE COURT:  Sure, sure.

20             MR. BERL:  -- in response to your prior statement -

21   -

22             THE COURT:  Yeah.

23             MR. BERL:  -- that we can't have it all?  We

24   understand we can't have it all.  And what I'm here to tell

25   you today is that we are prepared to do what it takes to get

1    this case tried in 2025.  And if that means filing fewer

2    summary judgment motions --

3                THE COURT:  I think that --

4                MR. BERL:  -- or fewer Daubert --

5                THE COURT:  I think that that's very doable.  Okay?

6                Okay.  Okay.  So I'm going to -- unless you want to

7    say something, I'm going to allow some discrete discovery on

8    Dr. Schuster, but it's going to be discrete and it's not

9    going to be everything that you asked for.

10               So, on the issue of the -- and I'll figure that out

11   and issue an order.  On the issue of the report, I'm going to

12   guess -- and I don't want to speak for Moderna, but they want

13   a do-over report, I think, because they don't want to be in a

14   situation at trial where -- there's a lot of levels here --

15   should they find something in this discrete discovery of

16   Schuster that they believe is relevant to their case and

17   admissible and they want to bring it out, they don't want the

18   objection oh, it's not in some report.  Is that your problem?

19   Did I read your mind correctly or not?

20               MR. MCLENNAN:  Yes, generally, Your Honor.

21               I just wanted to make one correction that -- I

22   think it's -- it addresses to addresses your question about -

23   -

24               THE COURT:  Uh-huh.

25               MR. MCLENNAN:  -- what are our experts actually

1    trying to do.  So our experts analyzed the method that was

2    developed by Dr. Schuster.  And so he has -- in Exhibit E to

3    plaintiff's opposition, he has the Paragraph 48, where he

4    says this is the method I came up with and this is how I

5    developed it, and there's this method qualification report

6    attached to the report.  That was the report that Mr. Berl

7    was referring to.

8              So we thought that was it when we went into the

9    deposition.  We examined him about it.  Our experts analyzed

10   --

11             THE COURT:  You did --

12             MR. MCLENNAN:  -- that and --

13             THE COURT:  -- hear me --

14             MR. MCLENNAN:  -- had critiques.

15             THE COURT:  You did hear me rule in your favor,

16   right?

17             MR. MCLENNAN:  Yes, Your Honor.  Thank you.

18             THE COURT:  Okay.

19             MR. MCLENNAN:  It's -- you're right.  It's so that

20   our experts can actually address the real method that was

21   developed earlier.

22             THE COURT:  I ruled in your favor.

23             MR. MCLENNAN:  Okay.

24             THE COURT:  I appreciate --

25             MR. MCLENNAN:  Thank you, Your Honor.

```
 1              THE COURT:  I appreciate you getting my back, but
 2      I'm letting you do the dep, I'm letting you do the discovery.
 3              So am I right about why you want the report?
 4              MR. MCLENNAN:  Yes, Your Honor.
 5              THE COURT:  Okay.  All right.  So I'll ask -- Thank
 6      you.  I'll ask Arbutus' counsel what's the -- if -- and I --
 7      again, I'm going to say thank you for your reasonableness in
 8      your presentation.  I hear what you're saying, all principled
 9      arguments.  And thank you for being -- a reasonable response.
10              I mean, I think that their concern is -- they're
11      being overly cautious, but I think it's prudent.  And they
12      don't want to be in a situation where they want to bring this
13      information out and you stand up and object and say it's not
14      in their report.
15              MR. BERL:  Yeah.  I guess the question is:  Where
16      does this end?  I mean, someone, at some point, always has to
17      go last and doesn't get a response then.
18              THE COURT:  It's going to end, it's going to end.
19              MR. BERL:  I hope so.
20              THE COURT:  Yes, it is.
21              MR. BERL:  And so, for example, they get another
22      report where they say on, now we learned X.  Do we get to
23      examine that expert about the report?  I mean --
24              THE COURT:  No.
25              MR. BERL:  -- generally -- okay.  Again, I want the
```

```
 1    trial as quickly as possible --

 2              THE COURT:  I understand.

 3              MR. BERL:  -- so I don't want an examination.  I --

 4    you know, if they're going to put in a report that is really,

 5    truly limited to the particular issues they learned about in

 6    this limited discovery Your Honor is ordering, that's one

 7    thing.  What I don't want is sort of a recapitulation and

 8    going back now, after these people have been deposed, and

 9    plugging up all the holes.

10              THE COURT:  I have noted your very principled

11    position that the case needs -- the discovery needs to end

12    and we need to move into the next phase, noted, noted.  And I

13    will do my best to balance that principled request with

14    making sure everyone is prepared.  Okay?  So noted.

15              Okay.  So we did -- we had some discussions about

16    narrowing, I've issued that order, that issue is resolved.

17              I looked at the summary judgment requests.  Unless

18    someone wants to talk about it, I thought that your requests,

19    everyone requests, seemed reasonable, the issues that you

20    want to litigate on summary judgment, that seems right to me.

21    I don't have a quibble with what you've suggested.  We can

22    talk about that, if you want.

23              I think, as it relates to Dauberts -- I forget

24    which side said let's just narrow it to three.  And my -- I

25    go back to -- I'm not trying to be argumentative; I just want
```

1    to talk it through.  But I go back to my suggestion of well,

2    how do you know -- who suggested three?  Was that you, was

3    that Arbutus?  Yeah.

4          My question would be -- there's so much discover --

5    there's so much information about the experts with -- I think

6    I determined -- I forget how many thousands of pages.   Don't

7    you want to know what they're going to introduce at trial of

8    these thousands of pages before you raise your Daubert

9    issues?  So, when you say three, it sort of seems to me like

10   you're -- you don't even know, of these thousands of pages,

11   what's actually going to be put in front of a jury.  So why

12   just pick three out of the air?

13         Why is my suggestion -- and I'm not saying it's the

14   best way -- that we suss out, of all the expert information,

15   what's actually going to go in front of a fact-finder, and

16   then make the Daubert decision?  Why is that not a good way

17   to do it?

18         MR. BERL:  I actually think, subject to summary

19   judgment practice, that we have a pretty good idea of what

20   the other side is going to present at trial and which

21   arguments we're going to present at trial.

22         THE COURT:  Uh-huh.

23         MR. BERL:  So I'm not sure building in another step

24   would be productive.  Let me just explain why.

25         THE COURT:  And that goes to your -- it builds in

1     another step and delays our picking a jury again.

2           MR. BERL:  And let -- yeah.  And let me explain why

3     we would propose lopping off two of the Dauberts, is that

4     there's some experts that served reports about this so-called

5     "1498 issue," the government contractor defense.  Now both

6     sides have agreed that they're going to move for summary

7     judgment on that issue.  To be perfectly candid, we expect

8     that the Court will resolve that issue in our favor of

9     Moderna's favor before trial.

10          Out of an abundance of caution, I think, both sides

11    put in expert reports about Section 1498; first, Moderna, and

12    then, in response, we obviously needed someone to respond to

13    what they were saying.

14          It seems very, very unlikely that those experts

15    ever will testify at trial because Your Honor likely will say

16    that Moderna wins on 1498 or we win on 1498, so that those

17    witnesses will probably never see the witness chair.  And so

18    it seemed to us that it's somewhat wasteful to be filing

19    Daubert motions about experts on issues like 1498 --

20          THE COURT:  Should we wait --

21          MR. BERL:  -- that the Court is --

22          THE COURT:  -- until after --

23          MR. BERL:  -- going to resolve.

24          THE COURT:  -- rulings on summary judgment to

25    decide how we're going to deal with Dauberts?

1          MR. BERL:  Certainly, as to those two, I think

2     they'll go away, and so I don't think there will be much to

3     decide.  As to the others, I don't think there are all that

4     many Daubert motions that remain.  It would seem most

5     efficient to do that at the same time as summary judgment.

6     But the 1498 experts just seem to be somewhat wasteful, and

7     that's why --

8          THE COURT:  Okay.

9          MR. BERL:  -- we raised that issue.

10          THE COURT:  Yeah, got it.  I don't think we all

11     need to wring our hands too much over this issue; it will

12     work out one way or another.

13          What's your view?

14          DR. CARSON:  Good morning, Your Honor.

15          THE COURT:  Good morning.

16          DR. CARSON:  Pat Carson.

17          THE COURT:  Ms. Carson.

18          DR. CARSON:  It does seem like summary judgment

19     could narrow what the Dauberts are, in addition to what Mr.

20     Berl just referred to, those were the experts that relate to

21     1498.  So, if the summary judgment is decided on the 1498,

22     then those two Dauberts may not be necessary.

23          Similarly, if the summary -- if the summary

24     judgment motion on our doctrine of equivalence is decided,

25     it's going to obviate a portion of their summary -- their

1    Daubert on Dr. Prud'homme, and the same thing with their

2    summary judgment on enablement will obviate part of their

3    Daubert on mister -- Dr. Prud'homme.

4         So we do think that the Daubert motions will be

5    impacted by the Court's decisions on summary judgment.  And

6    you know, subject to what the Court wants to do, there are

7    reasons to stage it, so that the summary judgment happens

8    first, and then the Daubert happens second.

9         THE COURT:  Okay.  Thank you.

10        All right.  I think I have enough information to

11   issue the next order on how we're going to do this.

12        Anything else you want to talk about?  I sort of --

13   we haven't been here very long, and I sort of feel bad asking

14   you to come in to court, but we could have done this on the

15   phone.  But I think more gets done in person, though, anyway.

16        MR. BERL:  Yeah, I agree with that --

17        THE COURT:  Is there anything --

18        MR. BERL:  -- Your Honor.

19        THE COURT:  -- you want to talk about?

20        MR. BERL:  Yeah, Your Honor, if I may.

21        THE COURT:  Yeah.

22        MR. BERL:  And I don't want to try Your Honor's

23   patience.

24        THE COURT:  You're not --

25        MR. BERL:  But I think --

1          THE COURT:  -- trying my patience --

2          MR. BERL:  -- it's important --

3          THE COURT:  -- not at all.

4          MR. BERL:  I think it's important for me to explain

5    to Your Honor why the trial date is so paramount for us.

6    This is not simply a matter of a plaintiff who wants the

7    trial date --

8          THE COURT:  Sure.

9          MR. BERL:  -- as soon as possible.  That's the

10   typical case.  That's not what's going on here.

11         THE COURT:  Okay.  Tell me.

12         MR. BERL:  I just want to be clear, when we sued

13   Moderna back in 2022, they had $20 billion of cash.  Now they

14   have $6 billion of cash, and it is bleeding at a rate of $1

15   billion per quarter.  And you don't have to ask me about it.

16   This is an article from Barron's, a well known financial

17   publication, that came out on May 29th, just two weeks ago,

18   and it is entitled "Moderna is in Peril, It May Run Out of

19   Cash."

20         What we have here is a case where discovery has

21   shown their own documents submitted to the FDA show

22   infringement on a massive scale.  They produced samples

23   pursuant to Your Honor's order; we then tested them through

24   Dr. Schuster.  That testing showed that every lot we tested,

25   67 out of 67, have particles that infringe our claims.  They

1    infringed their first version of the vaccine, the second

2    version of the vaccine; it all infringed.

3             THE COURT:  Is there -- certainly, a situation or

4    waters I've never been in as a judge.  Is there precedent

5    where trial dates have been expedited based on

6    representations made by plaintiffs that there may not be a

7    recovery avenue?

8             MR. BERL:  I can't sit here and cite precedent for

9    Your Honor.  I think most judges don't say why they set trial

10   dates; they just do.

11            THE COURT:  Right.

12            MR. BERL:  I think Your Honor has broad discretion

13   --

14            THE COURT:  Yes.

15            MR. BERL:  -- to set whatever --

16            THE COURT:  Broad.

17            MR. BERL:  -- trial date he pleases, and that's

18   essentially unappealable, so I don't think you get appellate

19   court decisions --

20            THE COURT:  Yeah.

21            MR. BERL:  -- analyzing that --

22            THE COURT:  I didn't --

23            MR. BERL:  -- sort of issue.

24            THE COURT:  I didn't mean -- I should have been

25   more precise.  I didn't mean actual precedent, like federal

```
 1      circuit precedent.

 2                  MR. BERL:  Yes.

 3                  THE COURT:  I meant it just seems like a bit

 4      unusual.  I've never --

 5                  MR. BERL:  I --

 6                  THE COURT:  -- heard a request like this.

 7                  MR. BERL:  Well, I --

 8                  THE COURT:  But this is an unusual case, thought.

 9                  MR. BERL:  It is an unusual case.

10                  THE COURT:  Yeah.

11                  MR. BERL:  I thin these are unusual circumstances.

12      Our damages demand in this case is $5 billion.  And so, in

13      our view, Moderna is, in a sense, frittering away that money

14      that we think we are entitled to, and it won't be there, and

15      so we sort of see this as justice delayed is justice denied.

16                  We asked Moderna what trial dates it has available.

17      Their response, essentially, was that they have no dates

18      available in the six months after the original trial, as a

19      result of trial counsel --

20                  THE COURT:  I will --

21                  MR. BERL:  -- conflicts.

22                  THE COURT:  I will give very serious consideration

23      to -- I don't want to commit.  I will give very serious

24      consideration to a firm trial date in 2025.

25                  MR. BERL:  Okay, Your Honor.  And just so Your
```

1    Honor understands, we've fashioned --

2                THE COURT:  I think --

3                MR. BERL:  -- a draft --

4                THE COURT:  -- that's likely --

5                MR. BERL:  -- a draft --

6                THE COURT:  -- very likely.

7                MR. BERL:  -- schedule --

8                THE COURT:  Uh-huh.

9                MR. BERL:  -- that lands on a trial on December 1st

10    of 2025.  That date wasn't picked out of thin air.  We got

11    all of their trail counsel's conflicts.  They don't have any

12    trials between December 1st and December 12th, that two-week

13    period.  We're, obviously, free to do it during that two-week

14    period.  They have -- they say their trial counsel has trials

15    before or after.  We don't even know whose trial conflicts

16    they are; they have nine partners who have entered

17    appearances in this case, so --

18                THE COURT:  I think I just read an article that the

19    Kirkland firm is the largest firm in the world.

20                MR. BERL:  They are a large and --

21                THE COURT:  They're cringing when I --

22                MR. BERL:  -- capable and prestigious firm.  It's

23    not possible that they're --

24                THE COURT:  When I was --

25                MR. BERL:  -- not able --

1           THE COURT:  -- practicing --

2           MR. BERL:  -- to try --

3           THE COURT:  -- at a --

4           MR. BERL:  -- this case.

5           THE COURT:  -- not nearly the size of those firms,

6    I used to hate when judges and/or clients would say to me,

7    you know, I'm not available, they go, well, you're at a firm

8    of 300 lawyers, so get someone else to do it.  So I'm sure

9    the Kirkland lawyers don't like me --

10          MR. BERL:  Then --

11          THE COURT:  -- don't like hearing that.

12          MR. BERL:  That's -- well --

13          THE COURT:  They -- you should --

14          MR. BERL:  -- taken --

15          THE COURT:  The Kirkland lawyers should anticipate

16   that this case is going to be tried in 2025.  I don't -- I

17   haven't figured out when and how, but that's likely coming.

18   Okay?

19          MR. BERL:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          DR. CARSON:  Your Honor --

22          THE COURT:  Yes?

23          DR. CARSON:  -- can I just make a couple of

24   comments?

25          THE COURT:  Sure.

1           DR. CARSON:  I -- first, I didn't realize that we

2    were going to be arguing summary judgment and infringement,

3    but Mr. Berl's diatribe, they're not asking to file summary

4    judgment of infringement.

5           In terms of their interest in having a trial date

6    right away, I think it's completely undermined by the fact

7    that they have asked us to reopen fact discovery, so that

8    they could get discovery on the issue that was raised in your

9    chambers during the last hearing.

10          THE COURT:  In chambers?

11          DR. CARSON:  During chambers, Mr. McLennan and Mr.

12   Berl came back and told you about an outrageous request that

13   the plaintiffs have made.  And now they have asked us to

14   accept service of a subpoena --

15          THE COURT:  Excuse me one --

16          DR. CARSON:  -- to reopen --

17          THE COURT:  Excuse me.

18          DR. CARSON:  -- fact discovery.

19          THE COURT:  Excuse me one -- excuse me one second.

20   Let's go off the record and turn on the white noise and come

21   to sidebar, please.

22       (Off the record discussion at sidebar at 10:00 a.m.)

23       (At 10:02 a.m.)

24          THE COURT:  Okay.  So I interrupted Kirkland's

25   lawyer.  Were you -- did we finish?

1      DR. CARSON:  Your Honor, we were reminding you of -
2  -
3      THE COURT:  Yes.
4      DR. CARSON:  -- what the issue was.
5      THE COURT:  Yes.
6      DR. CARSON:  And my point is, is that asking to
7  reopen fact discovery into that completely irrelevant issue
8  is completely at odds with what Mr. Berl is saying, we're in
9  a hurry to get to trial.
10      THE COURT:  Well, your -- okay.  Understood.  I'm
11  doing my best to balance everyone's needs here --
12      DR. CARSON:  Thank you.
13      THE COURT:  -- so I understand your position.
14      Okay.  I think I have enough information to set up
15  the next phase of this.  And unless there's anything else,
16  we're good?
17      MR. BERL:  I suppose I --
18      THE COURT:  We're here, so let's chitchat about
19  whatever you want.
20      MR. BERL:  I didn't get an opportunity to respond
21  to what Ms. Carson just said about --
22      THE COURT:  Go ahead.
23      MR. BERL:  -- the outstanding discovery issue --
24      THE COURT:  Yeah.
25      MR. BERL:  -- that we had raised, but I'm loathe to

1    do that in open court because they seem to think it's very

2    sensitive and confidential.

3              THE COURT:  The issue is resolved.  I didn't hear

4    that there needs to be any -- regarding the issue we talked

5    about at sidebar, I understood it to be a resolved issue, and

6    it's moot.  Am I right?

7              MR. BERL:  Not in our view, Your Honor.

8              THE COURT:  Okay.

9              MR. BERL:  And I --

10             DR. CARSON:  Your Honor, as far as we know --

11             THE COURT:  Well, I don't want to -- I don't want

12   to -- I don't want to air things out -- well, I don't want

13   this to be a sidebar situation.  If someone wants to file a

14   motion that they believe is in good faith, then file it.

15   We're not going to do this in chambers or at sidebar.  Okay?

16             MR. BERL:  Very, very well understood, Your Honor.

17   Thank you.

18             THE COURT:  Okay.  All right.  Okay.  Nice to see

19   everyone.  Thank you.

20             THE COURT OFFICER:  All rise.

21        (Proceedings concluded at 10:04 a.m.)

22                            *****

23

24

25

1                          <u>CERTIFICATION</u>

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9

10

11    _____          June 18, 2025

12    Coleen Rand, AAERT Cert. No. 341

13    Certified Court Transcriptionist

14    For RedDoor Legal Services, LLC

15

16

17

18

19

20

21

22

23

24

25