IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-252-JDW |
| MODERNA, INC. and MODERNATX, INC., | ) ) ) | |
| Defendants. | ) ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Counterclaim-Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO MODERNA'S MOTION TO SEAL

OF COUNSEL:
David I. Berl
Adam D. Harber
Thomas S. Fletcher
Shaun P. Mahaffy
Andrew L. Hoffman
Matthew W. Lachman
Ricardo Leyva
Arthur J. Argall III
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

Andrei Iancu
Jeffrey B. Wall
Sullivan & Cromwell llp
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500
*Attorneys for Plaintiff Genevant*
*Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
Morrison & Foerster llp
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080

Kira A. Davis
Morrison & Foerster llp
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

David N. Tan
Morrison & Foerster llp
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
*Attorneys for Plaintiff Arbutus*
*Biopharma Corporation*

Dated: August 11, 2025

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD............................................................................................2

III. ARGUMENT .......................................................................................................3

    A.  Neither Mr. Fernandez's Declaration Nor Moderna's Arguments Justify Sealing Documents Related to Moderna's LNP Products .......................................5

        1.  Plaintiffs' MSJ and Ex. 25 to Plaintiffs' MSJ............................................8

        2.  Plaintiffs' Statement of Uncontested Facts................................................8

        3.  Exhibit 2 to Plaintiffs' MSJ: Sept. 19, 2023 Letter....................................9

        4.  Exhibit 5 to Plaintiffs' MSJ: Murthy Report .............................................9

        5.  Exhibit 6 to Plaintiffs' MSJ: Anderson Reply .........................................10

        6.  Exhibit 10 to Plaintiffs' MSJ: Prud'homme Transcript...........................10

        7.  Exhibit 20 to Plaintiffs' MSJ: Mitchell Report .......................................11

        8.  Exhibit 29 to Moderna's MSJ: Lawton Report.........................................11

        9.  Exhibit 42 to Moderna's MSJ: Mitchell Report .......................................12

        10. Exhibits 44-45 to Moderna's MSJ: Interrogatory Response.....................12

        11. Exhibit 61 to Moderna's MSJ: Prud'homme Report ................................13

    B.  Neither Mr. Cao's Declaration Nor Moderna's Arguments Justify Sealing the Acuitas Licenses and Other Business-Related Documents............................13

        1.  Exhibits 21-24 to Moderna's MSJ: The Acuitas Agreements ..................14

        2.  Exhibit 17 to Moderna's MSJ: BARDA's Technical Evaluation.............15

        3.  Exhibit 9 to Moderna's MSJ: The C-034 Contract ...................................15

IV. CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019) ................................................................................................................2, 3, 7

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d. Cir. 2006)............................................3

*MED-EL Elektromedizinische Gerate GmbH v. Advanced Bionics, LLC*, Case No. 1:18-cv-01530-JDW, 2024 WL 774905 (D. Del. Feb. 26, 2024) ......................................................2

*Mosaid Techns. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503 (D. Del. 2012)..................................4, 15

*PACT XPP Schweiz AG v. Intel Corp.*, Case No. 1:19-cv-01006-JDW, 2024 WL 3539018 (D. Del. May 9, 2024)...............................................................................................................2

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ................................................3, 4

*Rushford v. The New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) .........................................3

*S.C. v. Wyndham Hotels & Resorts, Inc.*, Case No. 1:23-cv-871-JSG, 2024 WL 584996 (N.D. Ohio Feb. 13, 2024) ......................................................................................................8

*Smarte Carte, Inc. et al v. Innovative Vending Solutions LLC*, Case No. 1:19-cv-08681-JDW, D.I. 398 (D.N.J.) ........................................................................................................7

*SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, Case No. 22-cv-266-JDW, D.I. 487 (D. Del. Mar. 11, 2025) ............................................................................................7

**STATUTES**

28 U.S.C. § 1498................................................................................................................1, 3

## I.    INTRODUCTION

The COVID-19 pandemic marked one of the greatest public health challenges in modern history.  With it came the rise of mRNA-based vaccines, like Moderna's.  Before the pandemic, Moderna was a relatively small biotech company based in Cambridge, Massachusetts.  Moderna is now a household name thanks to its COVID-19 vaccine, which the government funded and millions of Americans received.  Moderna's COVID-19 vaccine also generated billions of dollars in profits for the company and its executives.  It thus should come as no surprise that the media and public have been following this lawsuit closely.  *See, e.g.*, Exs. 1 (*Moderna Seeks To Be Cleared in $5B COVID Vax Patent Case*, Law360 (Aug. 4, 2025), https://www.law360.com/articles/2372573/moderna-seeks-to-be-cleared-in-5b-covid-vax-patent-case), 2 (*Moderna Says Order to Narrow Vax IP Case Should Stay*, Law360 (May 20, 2025), https://www.law360.com/articles/2342957/moderna-says-order-to-narrow-vax-ip-case-should-stay), 3 (*Arbutus, Genevant gain an edge in COVID patent scrap with Moderna*, Fierce Pharma (Apr. 4, 2024), https://www.fiercepharma.com/pharma/arbutus-and-genevant-gain-edge-covid-patent-scrap-moderna-claim-construction-ruling).

Now on the precipice of trial, Moderna seeks to shield relevant—and plainly non-confidential—details about its vaccine and communications from the millions of Americans who received it.  At the same time, Moderna argues that, pursuant to 28 U.S.C. § 1498, it should keep all the profits from its vaccine sales, but taxpayers should bear the cost of Moderna's knowing and willful infringement.  This case thus raises issues of significant importance to the public.  Moderna's sealing motion ignores this reality and relies improperly on general allegations of serious harm to carry its burden.  Such assertions are insufficient to overcome the public's well-established right of access.  Plaintiffs do not oppose Moderna's request to seal as to certain limited information that is genuinely confidential.  But Moderna seeks to sweep in significant

amounts of information and communications that are not confidential—including information that is already public.  The Court should deny Moderna's motion, save for those specific limited redactions Plaintiffs do not oppose, as set forth in the accompanying Proposed Order.[1]

## II.    LEGAL STANDARD

"Motions to seal judicial records are a big deal.  They seek to shield from public view information that judges consider when rendering their decisions."  *MED-EL Elektromedizinische Gerate GmbH v. Advanced Bionics, LLC*, Case No. 1:18-cv-01530-JDW, 2024 WL 774905, at *1 (D. Del. Feb. 26, 2024).  "The right of access 'promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.'"  *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (citation omitted).

The common law presumption that the public has a right of access to judicial records "is particularly robust" in the Third Circuit.  *PACT XPP Schweiz AG v. Intel Corp.*, Case No. 1:19-cv-01006-JDW, 2024 WL 3539018, at *1 (D. Del. May 9, 2024).  "To overcome the strong presumption of access that attaches to judicial records, [Moderna] must show that an interest in secrecy outweighs the presumption by demonstrating that the material is the kind of information that judges will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Id*.  "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient," and the court "must 'conduct[] a document-by-document review'" to determine whether sealing is warranted.  *In re Avandia Mktg.*, 924 F.3d at 673 (citation omitted).

---

[1] Since the parties' abbreviated meet and confer resulting from Moderna's late disclosure of redactions, *see* D.I. 532 at 12, Plaintiffs have determined that some additional, narrow redactions are appropriate, as set forth herein and in the Proposed Order.

The presumption of public access is even stronger here, given that Moderna's sealing motion concerns summary judgment filings that will be the subject of a significant public hearing.  "[S]ummary judgment adjudicates substantive rights and serves as a substitute for trial." *Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988); *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d. Cir. 2006) (reaching same conclusion).  And separate from the common law principles that militate strongly in favor of public disclosure, "[t]he public and the press have a First Amendment right of access to civil trials." *In re Avandia Mktg.*, 924 F.3d at 673.  Thus, before sealing summary judgment proceedings, any restriction on access should be evaluated under the "much higher" "strict scrutiny" standard that accompanies the public's First Amendment right.  *See id.*  Although the Third Circuit has not resolved "whether the First Amendment right of access applies to records of summary judgment proceedings," *id.* at 680, "there is no principled basis to hold that the First Amendment right of public access extends to records of civil trials, but not records submitted in connection with motions for summary judgment," *id.* at 683 (Restrepo, J. concurring in part and dissenting in part).

## III.    ARGUMENT

Under either the common law or First Amendment standards articulated above, Moderna's motion to seal should largely be denied.  Moderna's motion ignores the significant public interest in access to documents related to a vaccine that millions of Americans bankrolled and then received—an interest made even more salient by Moderna's effort to shift a substantial portion of its billions of dollars of patent liability to taxpayers under 28 U.S.C. § 1498.  Moderna argues that "because this 'case involves private litigants' and their confidential information, there is 'little legitimate public interest' in the proposed redactions."  D.I. 532 ("Moderna's Br.") at 7 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 722, 788 (3d Cir. 1994)).  Not so.  The

public has a right to know information about the product they extensively used and funded—supporting its research and clinical trials, transforming Moderna into a household name, and enriching its executives.

Moderna also notes that "Judge Goldberg has maintained under seal similar highly confidential proprietary information." Moderna's Br. at 8 (citing D.I. 178). That sealing order issued at an early juncture of the case and did not concern information filed in support of a dispositive motion. Moderna similarly observes that the parties agreed to treat proprietary information about their products as "Confidential" under the agreed-upon Protective Order. Moderna's Br. at 8. However, protective orders serve the unique purpose of "expediting the flow of pretrial discovery materials" and "are by nature overinclusive." *Pansy*, 23 F3d at 790 n.26 (3d Cir. 1994). "[T]he subject-matter of [Moderna's] request for sealing is two degrees removed from the discovery process—it concerns (1) multiple, potentially case-dispositive motions that (2) [will be] the subject of argument on the record before this Court." *Mosaid Techns. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 509 (D. Del. 2012). At this juncture, Moderna "cannot rely solely on a blanket protective order to justify sealing of a presumptively public transcript of arguments regarding the substantive resolution of this case," particularly given the significant public interests at stake. *Id.*

Finally, Moderna's motion also relies on precisely the type of legally insufficient, conclusory allegations (from both attorneys and declarants) and lumps records into overly broad groups instead of offering the requisite document-specific analysis. As described below, neither of Moderna's declarations (by Mr. Fernandez or Mr. Cao) provide the factual support necessary to deprive the public of its right to access this information. The Court should deny Moderna's

motion, save for certain unopposed redactions, as set forth below and in the accompanying Proposed Order.

### A. Neither Mr. Fernandez's Declaration Nor Moderna's Arguments Justify Sealing Documents Related to Moderna's LNP Products

Moderna lumps together proposed redactions to (1) Exhibits 29, 42, 44, 45, and 61 to Moderna's Motion for Summary Judgment, (2) Plaintiffs' Opening MSJ Brief, (3) Plaintiffs' Statement in Support of its MSJ Brief, and (4) Exhibits 2, 5, 6, 10, 20, and 25 to Plaintiffs' MSJ as all "relat[ing] to Moderna's clinical development of LNP products as well [as] related regulatory, business, and technical aspects for these proprietary LNP [p]roducts." Moderna's Br. at 5. Moderna relies on Mr. Jason Fernandez's (Moderna's Executive Director of LNP and Drug Product Development since March 2025) declaration to support its sealing requests.

Plaintiffs do not oppose, at this juncture, Moderna sealing the only specific technical information identified in its brief—"Moderna's method and materials for its proprietary and non-public assay for measuring mRNA encapsulation"—as well as certain details of its non-public manufacturing process (the specific paragraphs are identified below). *Id.* at 6, 11-12.

For the rest of Moderna's proposed redactions, Moderna and Mr. Fernandez parrot totemic language about competitive harm and fail to provide the types of specific arguments necessary to overcome the public's presumed right of access. Mr. Fernandez even copies irrelevant language used in Mr. Cao's (Assistant Counsel, Discovery & Research at Moderna) declaration addressing licensing agreements discussed below that are not the subject of Mr. Fernandez's declaration. *Compare* D.I. 532 Ex. A ¶ 11, *with* D.I. 532 Ex. B ¶ 8. Moderna's lackadaisical approach belies its claims of commercial injury should the sealed information be made public. The information Moderna seeks to seal is nothing more than commentary about its lipid nanoparticle (LNP) formulation and high-level descriptions of the testing and

formulation development work it has conducted, much of it conducted a decade or more in the past. It is neither proprietary nor a trade secret.

Moreover, much of the information already is public. For example, across multiple exhibits, Moderna seeks to redact details of the lipid composition of its COVID-19 vaccine, including the lipid molar ratios across versions of the vaccine. *See, e.g.*, Exhibits to Moderna's MSJ 29, 42. This information repeatedly has been disclosed publicly.[2] Mr. Fernandez's public declaration submitted in support of Moderna's sealing motion expressly states that "Moderna's proprietary LNP is comprised of four lipid components including SM-102, cholesterol, phospholipid, and PEGDMG-2000." D.I. 532 Ex. B ¶ 3. The molar ratio of these components is also public. In a preprint published on the internet and cited widely by researchers in the field, Moderna publicly disclosed molar ratios used in the earliest version of its COVID-19 vaccine. *See* Ex. 27 to Plaintiffs' MSJ at 3 (disclosing "molar ratio of 50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG-lipid)"). As for its commercial formulations, Moderna disclosed the precise amount of each lipid—which permits a facile mathematical calculation of the molar ratio—in the ***public product label*** for the vaccine in Japan. *See* Exs. 4 at 1 (https://www.mhlw.go.jp/content/10601000/000783069.pdf), 5 at 1 (https://pins.japic.or.jp/pdf/newPINS/00071038.pdf).[3] And though English publication is unnecessary to foreclose sealing content from public view, the information from one of Moderna's Japanese product labels has since been cited in an academic article written in English.

[2] These molar ratios represent the aggregate inputs used during manufacture of the vaccine, not the output lipid ratios of the lipid particles themselves, to which the Lipid Composition Patent claims are directed.

[3] Google machine translations of these labels are submitted herewith as Exhibits 6 and 7, along with certified translations of the first pages, which disclose the lipid compositions, as Exhibits 8 and 9.

Ex. 10 (Suzuki 2021) at 4-5. Moderna even attempts to redact the name for the LNPs it uses in its COVID-19 vaccine (named for one of the four lipids in the LNPs, SM-102) . *See*, *e.g.*, Ex. 2 to Plaintiffs' MSJ. But that name is publicly available in FDA filings. *See* Ex. 11 at 8 (Food and Drug Administration, *Summary Basis for Regulatory Action* 8 (Jan. 30, 2022), https://www.fda.gov/media/155931/download) ("The SPIKEVAX DP is a sterile, preservative-free solution that contains 0.20 mg/mL CX-024414 mRNA and 3.87 mg/mL SM-102 LNPs . . . .").

Even were this information not already public (it is), Moderna cannot credibly argue that competitive harm will flow from disclosing the lipid composition of its COVID-19 vaccine. A competitor easily can reverse engineer the lipid composition—as Plaintiffs did in this litigation using well-known and standard techniques to further prove Moderna's infringement of the Asserted Patents. That lessens the significance of disclosure. Unlike the parties in *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, Case No. 22-cv-266-JDW, D.I. 487 (D. Del. Mar. 11, 2025), Moderna does not (and cannot) state that the information it seeks to seal would permit "their competitors [to] replicate certain products and capabilities." *id.* ¶ 5. Moreover, broad allegations of strategic advantages and competitive harm are insufficient "to make out the specific showing that *Avandia* requires," and alone justify denying Moderna's motion. *See Smarte Carte, Inc. et al v. Innovative Vending Solutions LLC*, Case No. 1:19-cv-08681-JDW, D.I. 398 at 2 (D.N.J.) (denying sealing motions where parties' declarations "generically assert[ed] that because certain information is nonpublic and could be useful to competitors, they will suffer harm").

The Court should deny Moderna's motion as to each document identified in the Fernandez declaration, specifically:

### 1.    Plaintiffs' MSJ and Ex. 25 to Plaintiffs' MSJ

Moderna redacts the deposition transcript of its scientist, Dr. Himansu, as well as a quotation from that transcript in Plaintiffs' brief.  The Fernandez declaration offers no specific justification for sealing this brief or exhibit.  Nor could it, since the testimony is about Moderna's use of a specific molar ratio—claimed in the Asserted Patents—that Moderna disclosed in a patent.  *See* Ex. 12 (U.S. Patent No. 10,933,127) col. 213 l. 14 ("In experiments where a lipid nanoparticle (LNP) formulation is used, the formulation may include a cationic lipid, non-cationic lipid, PEG lipid and structural lipid in the ratios 50:10:1.5:38.5.").  As discussed above, that exact same formulation was also disclosed publicly in a pre-print article about Moderna's COVID-19 vaccine.  *See* Ex. 27 to Plaintiffs' MSJ at 3.

### 2.    Plaintiffs' Statement of Uncontested Facts

Moderna offers no specific justification for redacting paragraphs 93 and 94 of Plaintiffs statement of uncontested facts.  Moderna agreed to making essentially the same information available publicly in Plaintiffs' brief.  *See* Plaintiffs' MSJ Br. at 30.  Moderna offers no argument for why the additional detail in the Statement of Uncontested Facts must be redacted.  Moreover, while the experimental work that is the subject of those paragraphs is highly relevant to this case, the specific results of an experiment Moderna conducted over a decade ago could not conceivably cause competitive harm.  The harm that it would cause—the public becoming aware of the weakness of Moderna's positions in this case—is not cognizable in this context and militates strongly against sealing.  *See, e.g.*, *S.C. v. Wyndham Hotels & Resorts, Inc.*, Case No. 1:23-cv-871-JSG, 2024 WL 584996 at *1 (N.D. Ohio Feb. 13, 2024) ("'The public has a strong interest in obtaining the information contained in the court record,' both to 'assess for itself the merits of judicial decisions' and to understand 'the conduct giving rise to the case.'  This public interest is particularly strong in a case's adjudicative stage, which includes summary

judgment."). More fundamentally, Moderna does not—and cannot—identify with the legally required specificity the competitive harm that publication of this information would inflict.

### 3.    Exhibit 2 to Plaintiffs' MSJ: Sept. 19, 2023 Letter

Plaintiffs do not object to the redaction of the description of Moderna's manufacturing process on page 7 of Exhibit 2 to Plaintiffs' summary judgment motion. But Moderna also repeatedly and inappropriately redacts the name of the LNP used in its COVID-19 vaccine, despite that name having been disclosed publicly and remaining available on the FDA web site for more than three years. *See* Ex. 11 at 8.

### 4.    Exhibit 5 to Plaintiffs' MSJ: Murthy Report

The redactions to the report of Plaintiffs' expert Dr. Murthy, Exhibit 5 to Plaintiffs' summary judgment motion, are not justified by the generalized allegations of harm in Moderna's submissions. Moderna again redacts information that is publicly available, such as the subject of deposition testimony, *see* Ex. 5 to Plaintiffs' MSJ ¶¶ 1278, 1345, which concerned information Moderna disclosed in a patent, *see* Ex. 13 (U.S. Patent No. 10,195,156) Claims 20, 28.

Many of Moderna's proposed redactions reflect instances where Moderna praised Plaintiffs' work or publications, or referenced techniques disclosed in the '651 patent or other Plaintiff publications. *See* Ex. 5 to Plaintiffs' MSJ ¶¶ 495, 637, 652, 655, 697-702, 712, 717, 726, chart on page 325. There is no evidence whatsoever—much less the required specific evidence of harm that would justify sealing of summary judgment filings—that Moderna's discussion of work published by Plaintiffs would cause any harm.

Moderna also attempts to redact high level discussions about encapsulation and Moderna's ability to achieve certain encapsulation levels. Contrary to the generalized assertions that this is sensitive or confidential, Moderna has published detailed research findings on the subject. *See, e.g.*, Ex. 14 (Sabnis 2018) at 1511 (reflecting encapsulation levels from different

experiments in Table 1). Plaintiffs have agreed to the redactions concerning a specific confidential encapsulation assay developed by Moderna. *See* D.I. 532 Ex. B ¶ 7. Thus, Plaintiffs do not object to the redaction of the four words between "MRNA-GEN-01602989 at -991" and "Historically at Moderna" in paragraph 573 or of the one word between "and" and "assay" in paragraph 673. But Moderna offers no evidence that publication of other information related to its encapsulation research would harm it. Nor does it offer evidence of harm relating to other types of testing—which involved known techniques—despite redacting that information. *See, e.g.*, Ex. 5 to Plaintiffs' MSJ ¶ 1217.

### 5.    Exhibit 6 to Plaintiffs' MSJ: Anderson Reply

Moderna again inappropriately redacts from its expert Dr. Anderson's reply report references to discussions of Plaintiffs' publications by Moderna employees. Ex. 6 to Plaintiffs' MSJ at 151. The other redactions are to descriptions of various studies and experiments with different LNP formulations, including references to other published literature on the topic. *See, e.g.*, *id.* ¶ 162. Much of this work, while relevant to the development of the COVID-19 vaccine and the merits of this case, occurred a decade or more ago. *See id.* Moderna fails to articulate how the high-level descriptions of this work would cause it harm.

### 6.    Exhibit 10 to Plaintiffs' MSJ: Prud'homme Transcript

Plaintiffs do not object to the redaction of Moderna's expert Dr. Prud'homme's deposition transcript on page 324 or to the redaction of the same term on line 18 of page 186. However, the remaining redactions are simply descriptions of the type of data Moderna reports to the FDA. Moderna provides no explanation—let alone a sufficient one—of the potential harm that would result from disclosing the types of data that Moderna reports to government regulators. Moreover, the European Medicines Agency has publicly disclosed that Moderna reports similar types of data to regulators in Europe. *See* Ex. 15 (EMA, *Assessment Report:*

*COVID-19 Vaccine Moderna*, (March 11, 2021)) at 32 ("The following attributes have been

included in the specification for mRNA-1273 LNP: appearance, mRNA identity by reverse

transcription/Sanger sequencing, total RNA content by anion exchange chromatography, purity

and product-related impurities by RP-HPLC, % RNA encapsulation by absorbance assay, mean

particle size and polydispersity by DLS, lipid identity by UPLC-CAD (SM-102, cholesterol,

DSPC, PEG2000-DMG), lipid content by UPLC-CAD (SM-102, cholesterol, DSPC, PEG2000-

DMG), lipid impurities by UPLC-CAD (% individual impurities and sum of impurities), pH,

osmolality, bacterial endotoxins (Ph. Eur. 2.6.14, kinetic chromogenic method) and bioburden.").

### 7.    Exhibit 20 to Plaintiffs' MSJ: Mitchell Report

Plaintiffs do not object to redacting the specific description of Moderna's manufacturing

process in paragraph 615 of the report of Plaintiffs' infringement expert, Dr. Mitchell.  But the

other redactions repeat the same flaws as prior documents, including redacting the publicly

available name of the LNP, *see e.g.*, Ex. 20 to Plaintiffs' MSJ at 424, and redacting references to

testing unrelated to the specific confidential method referenced in the Fernandez declaration, *see

id.* ¶¶ 610, 612, 613, 614, 620, 622.  Moderna does not articulate any support for these

redactions.

### 8.    Exhibit 29 to Moderna's MSJ: Lawton Report

The redaction of information from the damages report of Plaintiffs' expert Dr. Lawton,

regarding the lipid molar ratios used in Moderna's formulation, *see* Ex. 29 to Moderna's MSJ

¶ 1690, is inappropriate because, as discussed above, Moderna has already publicly disclosed the

relative amounts of the lipid components of its vaccine in its Japanese product label.  *See supra*

Section III.A.  The other redactions to this exhibit are likewise inappropriate—Moderna redacts

an executive's characterization of the work Moderna did to try to get around Plaintiffs' patents,

for which Moderna identifies no possible harm.  Indeed, Moderna is arguing in the publicly

available version of its summary judgment brief that the public would not be on notice of how to avoid Plaintiffs' patents, *see* D.I. 516 (Moderna's MSJ) at 18, while simultaneously trying to hide its internal, pre-litigation communication that plainly contradicts its present position. Again, that a document is harmful to Moderna's case does not justify sealing it from public view.

### 9. Exhibit 42 to Moderna's MSJ: Mitchell Report

Moderna again redacts publicly disclosed molar ratio information, *see supra* Section III.A, this time from Dr. Mitchell's expert report, Ex. 42 to Moderna's MSJ ¶¶ 654, 678, 711. And as with other documents, Moderna also redacts—without articulating any justification—the publicly disclosed name of the LNP used in its vaccine, *see id.* ¶¶ 678, 679, 680, 707, 708; charts on pages 484-486, 512-513, and references to testing unrelated to the specific confidential method referenced in the Fernandez declaration, *see id.* ¶¶ 707, 737. Moderna even redacts information about how its part numbers for its vaccine correspond to particular products (again without any justification). *See id.* ¶ 736. Plaintiffs do not oppose the redaction to Paragraph 743.

### 10. Exhibits 44-45 to Moderna's MSJ: Interrogatory Response.

Plaintiffs do not object to redacting the description of the manufacturing process on page 88 of both exhibits (the substance of both exhibits, interrogatory responses, is identical). But Moderna fails to justify the remaining redactions for the same reasons discussed above—it redacts the name of the LNP, *see* Exs. 44-45 to Moderna's MSJ at 83, high level descriptions of Moderna studies concerning different lipid compositions, *see id.* at 84-85, 90, and discussion of testing methods other than the confidential assay described in the Fernandez Declaration, *see id.* at 87.

### 11.   Exhibit 61 to Moderna's MSJ: Prud'homme Report

Moderna broadly redacts its expert Dr. Prud'homme's references to mRNA encapsulation, even where they have nothing to do with the confidential assay that is the only test that Moderna even purports to identify as sensitive in the Fernandez Declaration. Moderna should not be permitted to redact its speculation about the performance of another method—which is not confidential and was not developed by Moderna. *See* Exhibit 61 to Moderna's MSJ at 47, 50. Nor should it be able to redact discussion of hypothetical physical properties of mRNA encapsulation. *See id.* at 48.

### B.   Neither Mr. Cao's Declaration Nor Moderna's Arguments Justify Sealing the Acuitas Licenses and Other Business-Related Documents

Moderna seeks to seal significant portions of four, decade-old license agreements (Exs. 21-24 to Moderna's MSJ) between Acuitas Biotherapeutics and Moderna, which demonstrate Moderna's awareness and use of the technology claimed in the Asserted Patents. *See* D.I. 527 (Plaintiffs' MSJ) at 3. Moderna also seeks to seal information from contracts with the United States related to procurement of Moderna's COVID-19 vaccine. Exs. 1, 9, 17-20 to Moderna's MSJ. Moderna relies on Mr. Jimmy Cao's declaration to support these requests.

To begin, Plaintiffs have no objection to Moderna redacting royalty and payment terms from the Acuitas agreements. Plaintiffs likewise do not object to the limited redactions requested by the Government and Moderna in Exhibits 1, 18, 19, and 20 to Moderna's MSJ (the C-100 contract and its amendments). And Plaintiffs have no objection to sealing any non-public names of third-party suppliers and distributors in Exhibit 17 to Moderna's MSJ—a technical evaluation prepared by the U.S. Government's Biomedical Advanced Research and Development Authority (BARDA) that "assesses some cost elements but primarily the technical

13

approach and deliverables" pursuant to an agreement with Moderna.  Moderna otherwise fails to justify its sealing requests.

Both Moderna and its declarant, Mr. Cao, rely on the types of conclusory and inconsistent justifications that routinely fail to overcome the public's presumed right of access, specifically:

### 1.    Exhibits 21-24 to Moderna's MSJ: The Acuitas Agreements

Moderna and Mr. Cao describe the mRNA vaccine market as "highly competitive" and state that "any information about one of the competitors, even seemingly minor information, may prove competitively advantageous."  Moderna's Br. at 4; D.I. 532 Ex. A ¶ 8.  Yet Mr. Cao's public declaration discloses some of the very information Moderna seeks to redact.  *See* D.I. 532 Ex. A ¶ 4 (disclosing the viral targets of the Acuitas licenses); Ex. 21 to Plaintiffs' MSJ at 10.[4] Moderna also seeks to redact information about third-party in-licenses, including patents in-licensed from Arbutus.  *See* Ex. 21 to Plaintiffs' MSJ at 12-13, 38-42.  That information was made public over seven years ago.  *See* Ex. 16 (*Arbutus Settles Litigation, Terminating Acuitas' Rights to LNP Technology*, ARBUTUS BIOPHARMA (Feb. 22, 2018), https://investor.arbutusbio.com/news-releases/news-release-details/arbutus-settles-litigation-terminating-acuitas-rights-lnp-0).

This information is contained in Appendix A and Appendix B to the license agreements. Plaintiffs have discussed with counsel for Acuitas, who indicated that Acuitas does not object to unsealing Appendix B of each agreement, as well as the portions of Appendix A that identify the name of the viral target (while maintaining the redactions on the other information in Appendix

---

[4] Exhibit 21 is cited as exemplary of the other Acuitas licenses, all of which share identical or near identical redactions applied to the same page numbers.

A, concerning the specific proteins). The Court should deny Moderna's motion as to Appendix B and the portions of Appendix A that identify the name of the viral target.

### 2.    Exhibit 17 to Moderna's MSJ: BARDA's Technical Evaluation

Moderna claims this exhibit contains "private, non-public contracts and business associations with third-party suppliers and distributors of the COVID-19 vaccine," which would result in (unspecified and unexplained) competitive harm if disclosed. D.I. 532 Ex. A ¶ 7. It is unclear what supplier information is non-public, given the repeated press releases about Moderna's relationship with its suppliers. *See, e.g.*, Exs.17 (*Moderna Extends Lipid Supply for Coronavirus Vaccine*, Corden Pharma (May 28, 2020), https://cordenpharma.com/articles/cordenpharma_and_moderna_extend_lipid_supply_agreement _for_moderna_vaccine_mrna-1273_against_novel_coronavirus_sars-cov-2/) (Corden), 18 (*Moderna Completes Enrollment of Phase 2 Study of its mRNA Vaccine Against COVID-19 (mRNA-1273)* (July 8, 2020), https://feeds.issuerdirect.com/news-release.html?newsid=8537903157301675&symbol=MRNA) (Lonza). To the extent any of the suppliers are non-public, any harm could be averted by redacting just the names of those suppliers, rather than the broad redactions that Moderna seeks.

The remainder of the information Moderna seeks to redact reflects BARDA's evaluation and opinions, yet the United States has not moved to seal this information—an acknowledgment that the public interest outweighs any need to keep the information secret.

### 3.    Exhibit 9 to Moderna's MSJ: The C-034 Contract

The basis for Moderna's sealing request is that Exhibit 9, a government contract, "contain[s] highly confidential pricing, sales, and proposed offers," and "[c]onfidential distribution, storage, and manufacturing considerations." D.I. 532 Ex. A ¶ 6. But Moderna is seeking to seal much more than that. For example, it redacts information about licensing rights,

Ex. 9 to Moderna's MSJ at 5, review milestones, *id.* at 6, data rights, *id.* at 8, and the plans for clinical development of the vaccine, *id.* at 10-14.  Moderna has not met its burden to justify such broad redactions.

## IV.    CONCLUSION

Moderna has not carried its heavy burden to justify sealing information the public is entitled to view.  Moderna's motion should be denied, save for the redactions Plaintiffs do not oppose.

<table>
<tr><td></td><td>/s/ Nathan R. Hoeschen</td></tr>
</table>

|  |  |
|---|---|
|  | */s/ Nathan R. Hoeschen* |
|  | John W. Shaw (No. 3362) |
|  | Karen E. Keller (No. 4489) |
|  | Nathan R. Hoeschen (No. 6232) |
| OF COUNSEL: | SHAW KELLER LLP |
| David I. Berl | I.M. Pei Building |
| Adam D. Harber | 1105 North Market Street, 12th Floor |
| Thomas S. Fletcher | Wilmington, DE 19801 |
| Shaun P. Mahaffy | (302) 298-0700 |
| Andrew L. Hoffman | jshaw@shawkeller.com |
| Matthew W. Lachman | kkeller@shawkeller.com |
| Ricardo Leyva | nhoeschen@shawkeller.com |
| Arthur J. Argall III | *Attorneys for Plaintiffs* |
| Falicia Elenberg |  |
| Kathryn Larkin |  |
| WILLIAMS & CONNOLLY LLP |  |
| 680 Maine Avenue S.W. |  |
| Washington, DC 20024 |  |
| (202) 434-5000 |  |
|  |  |
| Andrei Iancu |  |
| Jeffrey B. Wall |  |
| Sullivan & Cromwell llp |  |
| 1700 New York Avenue, N.W. |  |
| Suite 700 |  |
| Washington, DC 20006 |  |
| (202) 956-7500 |  |
| *Attorneys for Plaintiff Genevant Sciences GmbH* |  |

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
*Attorneys for Plaintiff Arbutus Biopharma Corporation*

Dated: August 11, 2025