IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ARBUTUS BIOPHARMA CORPORATION** and **GENEVANT SCIENCES GMBH**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **MODERNA, INC. and MODERNATX, INC.**, <br><br> *Defendants*. | Case No. 1:22-cv-00252-JDW |

### ORDER

**AND NOW**, this 19th day of August, 2025, upon consideration of the United States' Combined Motion To Intervene And Seal (D.I. 530) and Defendants Moderna, Inc. and ModernaTX, Inc.'s Opposed Motion To Seal Portions Of Plaintiffs' And Moderna's Opening Dispositive Motion Filings (D.I. 531), I note as follows.

1. The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, Third Circuit law governs motions to seal in this patent case. *See, e.g., Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020).

2. The common law presumes that the public has a right of access to judicial records. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "In the Third Circuit, the right is particularly robust." *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding*, No. 19-cv-209, 2020 WL 2949742, at *7 (D. Del. Mar. 25, 2020), *report and recommendation adopted in part*, 2020 WL 2915781 (D. Del. June 3, 2020). To overcome the strong presumption of access that attaches to judicial records, a movant must show that the interest in secrecy outweighs the presumption by demonstrating that "the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (quotation omitted) (emphasis added). A party seeking to file material under seal must make a specific showing; "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quotation omitted). A court "must 'conduct[ ] a document-by-document review'" to determine whether sealing is warranted. *Id.* (same). That standard does not vary depending on the level of public interest in a case or which members of the public might be interested in it.

**The United States' Motion To Seal**

3. I will grant the United States' motion to intervene in this case for the limited purpose of filing a motion to seal. However, the United States has not met its burden to justify its proposed redactions.

4. When appropriate, courts permit litigants to seal the identities and personal identifying information of uninterested third parties. Thus, "the personal identifying information of nonparties is precisely 'the kind of information that courts will protect.'" *McCowan v. City of Philadelphia*, No. 2:19-cv-3326, 2021 WL 3737204, at *3 (E.D. Pa. Aug. 24, 2021) (quotation omitted). However, the United States' Motion falls short because the Government has failed to convince me that disclosure of certain government employees' names and contact information will cause them a clearly defined and serious injury.

5. The Government makes a conclusory assertion that disclosing the names of certain Department Of The Army employees and their workplace contact information on the docket in a "high-profile litigation matter risks an unwarranted invasion of privacy to these individuals, including subjecting them to possible harassment or threats." (D.I. 530-2 at 4(b).) The Government does not offer anything but its declarant's say-so to support this assertion, and there is no basis for me to conclude that these third parties will face harassment or threats if their identities and contact information become public. Such unsupported, speculative harm falls short of the burden a litigant must meet in order to establish that a judicial record should be kept from the public. And where, as here, the case is "high-profile" and involves the Government in some way, the presumption in favor of the public's right of access is likely at its strongest. Thus, I will not permit the United

States to redact the names and workplace contact information of its employees in Exhibits 1, 16, and 18-21 to Moderna's Motion For Summary Judgment.[1]

6. To the extent the Government points to FOIA exemptions as a basis for redaction, I find the argument unpersuasive. FOIA is about the public's right to access government documents (mostly executive branch documents). Those documents are not subject to a common law right of access; the only right of access is statutory. On the other hand, documents filed in court, even executive branch documents, are subject to the common law right of access, and the standard to overcome that is not just an exemption that Congress created. Therefore, I do not find persuasive the fact that the information that the Government seeks to redact is not subject to disclosure under FOIA.

**Moderna's Motion To Seal**

**License Agreements**

7. "[C]ourts may permissibly seal judicial records 'where they are sources of business information that might harm a litigant's competitive standing.'" *Avandia*, 924 F.3d at 679 (quotation omitted). Because the disclosure of a litigant's licensing strategies or the terms of their license agreements "could cause real and serious harm to the parties' future negotiations if disclosed to competitors[,]" courts have permitted litigants to redact this sort of information. *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp.2d 503, 510 (D. Del.

---

[1] The Federal Rules of Civil Procedure do not require that this information be redacted for privacy purposes. *See* Fed. R. Civ. P. 5.2(a).

2012). Thus, the license agreements between Moderna and Acuitas Biotherapeutics ("Acuitas") at Exhibits 21 thru 24 to Plaintiffs' Motion For Summary Judgment are the types of documents that courts will shield from public view. However, Moderna has not satisfied the second prong of the *Avandia* inquiry.

8. Moderna has not demonstrated that it will suffer a competitive or economic injury if these license agreements are made public. It contends that it will be disadvantaged if its competitors have access to the agreements because they would "gain a significant advantage in creating their own business strategies, and potential future negotiations involving Moderna[.]" (D.I. 532-1 at ¶ 11.) But Moderna does not explain how it will suffer harm if these particular license agreements become public. All it says is that if information becomes public, it "may prove competitive advantageous" to Moderna's competitors. (D.I. 532 at 4.) That speculation is not enough to carry Moderna's burden.

9. In fact, each of the agreements at issue is quite old and pre-dates the Covid-19 pandemic by many years. For example, the most recent license agreement (at Exhibit 21) is from December 14, 2016.[2] The nearly nine-year-old information in these license agreements undermines the "rationale for protecting materials from disclosure" and "weighs against" a finding of competitive harm. *Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*, No. 20-cv-1519, 2021 WL 2188169, at *2 (D. Del. May 28, 2021) (quotation

---

[2] The license agreement at Exhibit 22 is dated May 15, 2015. The license agreement at Exhibit 23 is dated October 12, 2016, and the license agreement at Exhibit 24 is dated August 19, 2016.

omitted).[3] Moderna fails to explain why this stale information "has value now or how its disclosure could impact **current** negotiations." *PACT XPP Schweiz AG v. Intel Corp.*, No. 19-cv-1006, 2022 WL 22905010, at *2 (D. Del. Aug. 4, 2022) (emphasis added). Thus, it has not met its burden to demonstrate that it will suffer a clearly defined and a serious injury if portions of these license agreements are made public.

10. The fact that Moderna and Acuitas agreed to keep the terms of the license agreements confidential is of no moment. Indeed, their private agreement to maintain confidentiality "does not govern [the Court's] obligation to ensure public access." *Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.*, No. 15-cv-1059, 2017 WL 11573695, at *3 (D. Del. Aug. 28, 2017).

**Moderna's LNP Products**

11. Several filings in this case "reflect non-public and highly sensitive details about Moderna's proprietary [lipid nanoparticle ("LNP")] formulation" that it uses in its SpikeVax vaccine and other products. (D.I. 532-2 at ¶ 4.) Moderna contends that it "has

---

[3] *See also Donahue v. Borough of Collingdale*, 714 F. Supp. 3d 504, 517 n.21 (E.D. Pa. 2024) (noting that parties could not overcome presumption of public access where, *inter alia*, the documents at issue "are over five years old"); *PACT XPP Schweiz AG v. Intel Corp.*, No. 19-cv-1006, 2022 WL 22904945, at *2 (D. Del. Dec. 16, 2022) (rejecting redactions to "decade-old internal … assessments of [Plaintiff's] patent portfolio and claim value, as well as internal … projections and discussions of license agreements from the same time"); *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, No. 19-cv-514, 2021 WL 915721, at *2 (E.D. Pa. Mar. 10, 2021) (finding insufficient allegations of competitive harm where agreement at issue was "more than six years old"); *Samsung*, 2017 WL 11573695 at *3 (denying motion to seal four-year-old license agreement).

always taken extensive measures to maintain the confidentiality of its technical and business information," both internally and externally. (*Id.* at ¶ 5.) "Because there are so few competitors in [the relevant] markets, the markets are highly competitive, and any information about one of the competitors, even seemingly minor information, may prove competitively advantageous." (*Id.* at ¶ 6.) Thus, information relating to the development, testing, and formulation of Moderna's LNP products is likely a trade secret. *See, e.g.*, *Elenza, Inc. v. Alcon Lab'ys Holding Corp.*, 183 A.3d 717, 721 (Del. 2018) (defining trade secret) (quotation omitted). And trade secrets and other confidential technical information are types of material that courts will protect from public disclosure. *See Mosaid*, 878 F. Supp.2d at 511.

12. In addition, Moderna offers evidence that the disclosure of this information "would significantly harm Moderna" if its competitors and new entrants to the vaccine market discover "Moderna's proprietary formulation and ratio of ingredients" or its "non-public testing, methods, and development." (D.I. 532-2 at ¶¶ 6, 7, 8.) This satisfies the second prong of the *Avandia* inquiry.

13. However, not all of the information that Moderna seeks to redact is confidential. In his supporting declaration, Jason Fernandez explains that "Moderna's proprietary LNP is comprised of four lipid components including SM-102, cholesterol, phospholipid, and PEGDMG-2000." (D.I. 532-2 at ¶ 3.) And Moderna concedes that the name of its product—SM-102 LNP—is not confidential on its own. Instead, it seeks to

7

redact the identities of certain "materials in Moderna's COVID-19 Vaccine, that, in context with the surrounding descriptions of other materials, would reveal information about highly confidential and trade secret manufacturing processes for its LNPs." (D.I. 542 at 4.)

14. That makes sense to me, but the problem is that Moderna did not explain that in its Motion To Seal or in the supporting declarations; nor did it take care to identify which redactions fall into this category. And—as an outsider of the mRNA vaccine industry—it is not always obvious to me which combination of product names and surrounding context reveals Moderna's confidential information. Thus, I will permit Moderna to redact only those references where it was clear to me that the overall context would give competitors or other members of the public insight into Moderna's confidential information pertaining to its products.

15. Next, I will permit Moderna to redact information in the filings that relates to the molar ratios of its vaccine products. To support its Motion To Seal, Moderna provides a sworn declaration in which Mr. Fernandez states that the information Moderna seeks to redact is non-public and confidential. In opposing Moderna's motion, Plaintiffs have not rebutted that assertion with contrary evidence. Instead, Plaintiffs *argue* that Moderna's molar ratios are essentially public because someone could look at Moderna's patents or its product labels in Japan and calculate the actual molar ratios in Moderna's

products.[4] But that attorney argument is not evidence, and as such, it is not sufficient to rebut Moderna's evidence that the ratios are confidential. Thus, I will permit Moderna to keep this information redacted.

16. Finally, in opposing Moderna's Motion To Seal, Plaintiffs apply a far-too-narrow reading of Mr. Fernandez's supporting declaration. While Mr. Fernandez explains that it was expensive and intensive for Moderna to develop its method and materials for its proprietary and non-public assay for measuring mRNA encapsulation, a fair reading of both Moderna's brief and Mr. Fernandez's declaration makes clear that that is not the only information that Moderna seeks to seal. Indeed, Mr. Fernandez goes on to explain that "Moderna would be severely exposed and disadvantaged if its competitors had access to non-public testing, methods, and development[,]" in general. (D.I. 532-2 at ¶ 7.) Given this sworn assertion, I have little trouble concluding that information about other Moderna testing and development set forth in the filings should be redacted as well.

17. Finally, I note that Moderna's requests for redaction are narrowly tailored. Moderna has not sought to seal any documents in full, and it seeks to redact limited portions of just 22 filings—in a case where the Parties filed 110 exhibits in connection with their dispositive motions.

---

[4] On the other hand, Plaintiffs have evidence that the target lipid molar ratio Moderna used in preclinical studies is public. However, it does not matter because "Moderna does not seek to redact" that information. (D.I. 542 at 2.) And, in any event, the fact that this particular ratio may be public does not undermine the confidential nature of any other ratios at issue.

18. Against this backdrop, I find that most of the redactions that Moderna seeks are proper. However, some redactions are not warranted for the reasons set forth above and for additional reasons noted below

    a. The express references to SM-102 LNP on pages 4, 5, 6, and 8 of Exhibit 2 to Plaintiff's Motion For Summary Judgment.

    b. The parenthetical reference to "SM-102 LNP specification" on page 83 of Exhibit 44 and page 82 of Exhibit 45 to Moderna's Motion For Summary Judgment.

    c. The parenthetical description of a document in Paragraph 736 of Exhibit 42 to Moderna's Motion For Summary Judgment is not an appropriate redaction because it does not disclose how Moderna associates part numbers with product specifications.

    d. The redacted information in Paragraph 495 of Exhibit 5 to Plaintiffs' Motion For Summary Judgment (*i.e.*, the Responsive Expert Report Of Dr. Niren Murthy Regarding Validity) because it does not disclose Moderna's trade secrets. Instead, it discloses that Moderna shared some of Plaintiffs' publications with its own scientists.

    e. The following phrase from Paragraph 637 of Ex. 5: "Dr. Mike Smith, Director of Process Development at Moderna, described Jeffs 2005, a publication which describes the teachings of the '651 patent, as a 'seminal work'" because that statement is not a Moderna trade secret.

    f. The last five lines of Paragraph 655 and the last sentence of Paragraph 698 of Ex. 5 are also not trade secrets, nor are the citations and accompanying parentheticals that follow "see also" in Paragraph 701, as well as everything that follows "Furthermore" in Paragraph 702.

    g. The redactions in Paragraph 1278 because, without additional context, the quoted exchange is meaningless. Indeed, without knowing who is speaking or what they are discussing, I have no way to conclude that this information reveals Moderna's trade secrets. The same is true of the redactions in Paragraph 1345, which pertain to work that Moderna has ***not*** done.

    h. The redacted information in Paragraph 300 of Exhibit 6 to Plaintiffs' Motion For Summary Judgment (*i.e.* the Reply Expert Report Of Daniel Griffith Anderson) does not disclose Moderna's trade secrets. Dr. Anderson's Reply does not even make clear what documents he is citing, though they appear to be internal Moderna documents. Even if that is the case—which isn't clear to me—the fact that those documents refer to Jeffs 2005—a prior art reference—does not disclose a Moderna trade secret.

  **Business And Financial Information**

  19. Courts may shield a party's confidential business and financial information from public view. *See Avandia*, 924 F.3d at 679. The declaration from Jimmy Cao confirms that Exhibits 1, 9, and 17-20 to Moderna's Motion For Summary Judgment contain

confidential information about Moderna's business. However, Moderna has not met its burden with respect to the second prong under *Avandia*.

20. Moderna has not established that disclosure of the Most Favored Nation ("MFN") Clause in its contract with the U.S. Government would cause it a significant injury. First, the pricing alignment mechanisms set forth in that clause applied in the event that Moderna entered into agreements with other nations prior to March 31, 2022, and Moderna has not explained how or why this provision has any "continuing vitality today." *Samsung*, 2017 WL 11573695 at *3. In addition, the MFN Clause was premised on the "exceptional and unprecedented nature of the COVID-19 threat to global public health[.]" (D.I. 512-1 at H.9(i).) I am not convinced that disclosure of this contract term will provide Moderna's competitors with insight into its alleged strategic approach to government contracting in general. Thus, I will not permit Moderna to redact this information from Exhibits 1, 18, 19, and 20 to its Motion For Summary Judgment.

21. Moderna's motion fails for similar reasons with respect to Exhibits 9 and 17 to its Motion For Summary Judgment. In short, Moderna has not explained how or why the disclosure of five-year-old pricing information and other contract terms poses a commercial threat to Moderna today.[5] In addition, the information that Moderna seeks to

---

[5] I also note that Moderna's contractual relationships with many of the identified suppliers and distributors identified in Exhibit 17 is a matter of public record, based on a simple Google search. This is another reason why redaction is not warranted. *See, e.g.*, *Insight Equity AP X LP v. Transitions Optical Inc.*, No. 10-cv-635, 2016 WL 7477751, at *1

redact in Ex. 9 is similar to information that has been disclosed in Exs. 1, and 18-21, so I am hard-pressed to conclude that Moderna will suffer a unique harm from this particular disclosure. Thus, I will not permit Moderna to redact Exs. 9 and 17 either.

Therefore, it is **ORDERED** as follows:

1. The United States' Combined Motion To Intervene And Seal (D.I. 530) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. The Government's Motion To Intervene is **GRANTED**; and

   b. The Government's Motion To Seal is **DENIED**.

2. Moderna's Opposed Motion To Seal Portions Of Plaintiffs' And Moderna's Opening Dispositive Motion Filings (D.I. 531) is **DENIED IN PART** and **GRANTED IN PART**, as follows:

   a. Moderna's Motion To Seal is **DENIED** with respect to:

      i. Certain redactions to Exhibits 2, 5, 6, 21, 22, 23, and 24 to Plaintiffs' Motion For Summary Judgment, as set forth above; and

      ii. Certain redactions to Exhibits 1, 9, 17, 18, 19, 20, 42, 44, 45 to Moderna's Motion For Summary Judgment, as set forth above.

   b. Moderna's Motion To Seal is **GRANTED** in all other respects.

---

(D. Del. Dec. 29, 2016) ("Things that typically weigh against the necessity of sealing include that the information is … already in the public record[.]").

3. On or before August 22, 2025, and consistent with the analysis set forth above, the Parties shall either re-file any exhibits for which I have denied a request for redaction or coordinate with the Clerk's Office to substitute those documents on the docket.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.