# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARBUTUS BIOPHARMA CORP. and GENEVANT SCIENCES GmbH, <br><br> Plaintiffs, <br><br> v. <br><br> MODERNA, INC. and MODERNATX, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) C.A. No. 22-252-JDW ) ) ) ) ) ) |

**BRIEF OF 16 FORMER JUDGES, FORMER OFFICIALS, AND ACADMIC SCHOLARS AS AMICUS CURIAE IN OPPOSITION IN PART TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Dated: August 22, 2025

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Proposed Amici*

# Table of Contents

**Page(s)**

Interest of Amicus Curiae ............................................................... 1

Summary of Argument .................................................................. 1

Argument ....................................................................................... 2

I.      Section 1498(a) is an Eminent Domain Statute ................. 2

          A.      The Provenance of § 1498(a) ................................... 2

          B.      The Legislative History of § 1498(a) Confirms it is an Eminent Domain Statute .................................... 4

          C.      The Text of § 1498(a) Confirms it is an Eminent Domain Statute ......................................................... 4

II.     Judicial Interpretation of § 1498(a) Confirms it is an Eminent Domain Statute Inapposite to Private Transactions in the Marketplace ........................................ 7

Conclusion ..................................................................................... 9

Appendix Of Amici ..................................................................... A1

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*,
  583 F.3d 1371 (Fed. Cir. 2009) .............................. 7, 8, 9

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
  No. CV 22-252, 2023 WL 2455979 (D. Del. Mar. 10, 2023 ............................................................ *passim*

*Brady v. Atlantic Works*,
  3 F. Cas. 1190 (C.C.D. Mass. 1876) .............................. 3

*Cammeyer v. Newton*,
  94 U.S. 225 (1876) ........................................................ 3

*Carter-Wallace, Inc. v. United States*,
  449 F.2d 1374 (Ct. Cl. 1971) ......................................... 7

*Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*,
  399 F.2d 913 (5th Cir. 1968) .......................................... 6

*Decca Ltd. v. United States*,
  544 F.2d 1070 (Ct. Cl. 1976) ......................................... 7

*Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
  527 U.S. 627 (1999) ...................................................... 3

*Horne v. U.S. Dept. of Agriculture*,
  135 S. Ct. 2419 (2015) .................................................. 3

*Hughes Aircraft Co. v. Messerschmitt-Boelkow-Blohm*,
  625 F.2d 580 (5th Cir. 1980) .......................................... 5

*Hughes Aircraft Co. v. United States*,
  534 F.2d 889 (Ct. Cl. 1976) ........................................... 5

*IRIS Corp. v. Japan Airlines Corp.*,
  769 F.3d 1359 (Fed. Cir. 2014) ..................................... 6

*Irving Air Chute Co. v. United States*,
    93 F. Supp. 633 (Ct. Cl. 1950)......................................................7

*James v. Campbell*,
    104 U.S. 356 (1882)....................................................................4

*Larson v. United States*,
    26 Cl. Ct. 365 (1992) ................................................................8, 9

*McKeever v. United States*,
    14 Ct. Cl. 396 (1878). ..............................................................3, 5

*United States v. Adams*,
    383 U.S. 39 (1966) ......................................................................6

*United States v. Burns*,
    79 U.S. 246 (1870)...................................................................2, 5

**Statutes**

28 U.S.C. § 1498(a)................................................. *passim*

Act of June 26, 1910, ch. 423, 36 Stat. 851, 851-52
    (1910) (codified as amended in 28 U.S.C. §
    1498(a))...........................................................................3

Act of July 1, 1918, ch. 114, 40 Stat. 704, 705 (1918)
    (codified as amended in 28 U.S.C. § 1498(a))................4

Act of October 31, 1942, Pub. L. 768, § 6, 77th
    Cong. 2d Sess., 56 Stat. 1013, 1014 (1942)
    (codified as amended in 28 U.S.C.  1498(a)) .................5

U.S. Const., Amend. V......................................................2

U.S. Const., Amend. XIV..................................................3

**Other Authorities**

Braden, Susan G. & Kresh, Joshua A., *Section
    1498(A) is Not a Rx to Reduce Drug Prices*, 77
    FOOD & DRUG L.J. 274 (2022) ........................................9

45 Cong. Rec. 8755 (1910) ................................................4

Fed. R. App. P. 29(a)(4)(E) ................................................1

H.R. Rep. No. 61-1288 (1910) ............................................... 4

Mossoff, Adam, *The False Promise of Breaking Patents to Lower Drug Prices*, 98 ST. JOHN'S L. REV. 287, 292-310 (2024) ............................................... 9

Mossoff, Adam, *Patents as Constitutional Private Property: The Historical Protection of Patents under the Takings Clause*, 87 B.U. L. REV. 689, 712-14 (2007) ............................................... 3

Silverman, Milton & Lee, Philip R., *Pills, Profits, and Politics* 187 (1974). ............................................... 9

**Interest of Amicus Curiae**

*Amici curiae* are 16 former judges, former federal officials, and academic scholars who have expertise in patent law, takings law, or both. They have an interest in ensuring the integrity of the patent system and the proper application of the federal government's eminent domain power to patented inventions. *Amici* have no stake in the parties or in the outcome of this case. A full list of signatories to this brief is set forth in Addendum A.[1]

**Summary of Argument**

This Court previously and correctly held that 28 U.S.C. § 1498(a) is inapplicable to a private company that enters into a contract with the federal government for payment of vaccine doses distributed by private companies for use by private citizens. *See Arbutus Biopharma Corp. v. Moderna, Inc.*, No. CV 22-252, 2023 WL 2455979 (D. Del. Mar. 10, 2023). In the context of a federal payment or subsidy of private transactions, the use of a patented invention between the private parties is not "'for the Government' which is . . . a necessary factor under § 1498(a)." *Id.* at *2. As this Court's prior decision recognized, the text, legislative history, and judicial interpretation of 28 U.S.C. § 1498(a) establish this is an eminent domain statute with no applicability to the portion of the contract between Moderna and the federal government that subsidized vaccine doses for the general public, as opposed to the federal government's purchase of vaccine doses for military personnel or federal employees.

The C-100 contract between Moderna, Inc. and the federal government states that the federal government will pay for the manufacture and use of vaccine doses "for the United States Government (USG) and the US population." In this case, Moderna elides the express distinction in the C-100 contract between the federal government's payment for vaccine doses for its own employees and military personnel and payment for the vaccine doses "for . . . the US population." The federal government's

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici* state that no counsel for a party authored this brief in whole or in part, and that no person other than *amici*, their members, or their counsel contributed money that was intended to fund preparing or submitting the brief.

decision to subsidize vaccine doses "for. . . the US population" does not meet the statutory requirement in § 1498(a) that a patented invention is made or used "by or for the United States" or that a contractor like Moderna made or used a patented invention "for the Government."

Section 1498(a) is an eminent domain statute that is inapplicable to the federal government's policy decisions to subsidize private transactions in the marketplace, such as paying for the costs of private citizens receiving vaccine doses from private companies. This statute authorizes the U.S. Court of Federal Claims to adjudicate a claim by a patent owner for "reasonable and entire compensation" when its patented invention is "used or manufactured *by or for the United States* without license of the owner." *Id.* (emphasis added). Thus, this Court should hold again as a matter of law that § 1498(a) is inapplicable to the patent infringement claim by Arbutus Biopharma Corporation against Moderna for the unauthorized manufacture and use of vaccine doses "for the . . . US population," as distinguished from the express portion of the C-100 contract in which vaccine doses were manufactured and used "for the United States Government."

## Argument

**I.   Section 1498(a) is an Eminent Domain Statute**

**A.  The Provenance of § 1498(a)**

The provenance of § 1498(a) is found in many nineteenth-century federal court decisions that patents are private property rights secured under the Takings Clause of the U.S. Constitution. In these decisions, the Supreme Court and lower federal courts consistently held that patents are private property secured under the Constitution. They include, for example:

- "[T]he government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor or making compensation to him." *United States v. Burns*, 79 U.S. 246, 252 (1870).

- A patent owner can seek compensation for the unauthorized use of his patented invention by federal

2

- officials because "[p]rivate property … shall not be taken for public use without just compensation." *Cammeyer v. Newton*, 94 U.S. 225, 234 (1876).

- "Inventions secured by letters-patent are property in the holder of the patent, and as such are as much entitled to protection as any other property. . . . Private property, the constitution provides, shall not be taken for public use without just compensation . . . ." *Brady v. Atlantic Works*, 3 F. Cas. 1190, 1192 (C.C.D. Mass. 1876) (Clifford, Circuit Justice), *rev'd on other grounds*, 107 U.S. 192 (1883).

- A patent is not a "grant" of special privilege; the text and structure of the Constitution, as well as court decisions, establish that patents are property rights secured under the Takings Clause). *McKeever v. United States*, 14 Ct. Cl. 396, 421 (1878).

Despite these many court decisions, courts expressed confusion at the turn of the twentieth century concerning their jurisdiction to adjudicate a takings claim by a patent owner. *See* Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents under the Takings Clause*, 87 B.U. L. REV. 689, 712-14 (2007). Congress thus enacted in 1910 the predecessor statute to § 1498(a) to resolve this constitutional confusion. *See* Act of June 26, 1910, ch. 423, 36 Stat. 851, 851-52 (1910) (codified as amended in 28 U.S.C. § 1498(a)). The text and legislative history confirm that this is an eminent domain statute.

The modern Supreme Court has confirmed the long-standing rule that patents are property rights secured under the Takings Clause and Due Process Clauses. Roughly twenty years ago, the Supreme Court held that patents are "property" under the Due Process Clause of the Fourteenth Amendment. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642–43 (1999). In 2015, the Supreme Court approvingly quoted an 1882 decision stating that "[a patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser." *Horne v. U.S. Dept. of*

3

*Agriculture*, 135 S. Ct. 2419, 2427 (2015) (quoting *James v. Campbell*, 104 U.S. 356, 358 (1882)).

### B. The Legislative History of § 1498(a) Confirms it is an Eminent Domain Statute

The House committee report for the bill that became § 1498(a) expressly stated that the federal government was using patents without authorization "in flat violation of [the Takings Clause] and the decisions of the Supreme Court." H.R. Rep. No. 61-1288, at 3 (1910). During the congressional debates leading up to the enactment of § 1498(a), the bill's sponsor, Representative Currier, emphasized that the legislation "does not create any liability; it simply gives a remedy upon an existing liability." 45 Cong. Rec. 8755, 8756 (1910). Throughout the congressional debates, legislators repeatedly referenced the earlier-cited court decisions, (*see supra* Part I.A), that consistently stated that patent owners have a constitutional remedy under the Takings Clause to receive just compensation for an unauthorized use of their patents by federal officials. *See* H.R. Rep. No. 61-1288, at 1-4.

### C. The Text of § 1498(a) Confirms it is an Eminent Domain Statute

The court precedents and legislative history confirm the plain meaning of the text of § 1498(a), which simply authorizes claims of reasonable compensation arising from exercises of the government's eminent domain power. Section 1498(a) states that a patent owner can sue the federal government in the Court of Federal Claims (originally the Court of Claims) for "recovery of his reasonable and entire compensation" when a patented invention is "used or manufactured by or for the United States without license of the owner."

In 1918, after extensive federal procurement efforts with contractors during World War One, Congress amended § 1498(a) to authorize lawsuits by patent owners for reasonable compensation from the government when federal contractors infringe their patents. *See* Act of July 1, 1918, ch. 114, 40 Stat. 704, 705 (1918) (codified as amended in 28 U.S.C. § 1498(a)). This amendment added the "used or manufactured by or for the United States" that currently exists in § 1498(a). *Id.* Consistent with its function as an eminent domain statute, the statute was amended

4

again shortly after the U.S. entered World War Two, requiring suits against the government for compensation for patent infringement by federal contractors, but again this amendment is limited to only when contractors make or use a patented invention "for the Government." Act of October 31, 1942, Pub. L. 768, § 6, 77th Cong. 2d Sess., 56 Stat. 1013, 1014 (1942) (codified as amended in 28 U.S.C. 1498(a)).

In this case, the C-100 contract between Moderna and the federal government expressly distinguishes between the vaccine doses acquired for use by the federal government versus the vaccine doses acquired for use by private citizens in the general public. In the C.1 Scope provision, the contract states that the federal government is paying for "manufacturing of vaccine doses . . . for the United States Government (USG) *and* the US population" (emphasis added). (D.I. 520-1 § C.1.) In provision C.1.1.1, the C-100 contract further stipulates that the federal government is paying for "large scale manufacturing so that vaccine doses . . . are immediately available for *nationwide access* . . . and the medical countermeasures are authorized for *widespread use*." (*Id.* § C.1.1.1.)

The federal government's payment of manufacture and use of vaccine doses "for the . . . US population" and "for nationwide access" is not an example of a contractor making and using a patented invention "for the United States," 35 U.S.C. § 1498(a), because these vaccine doses were distributed by private companies for use by private healthcare patients. The "by and for the United States" text in § 1498(a) limits its applicability to manufacture or use of patent inventions by the federal government, or by federal contractors acting "for the Government," such as the unauthorized use of patented inventions for the U.S. military in the nineteenth century. *See Burns*, 79 U.S. at 251-54 (unauthorized use of patented tent by U.S. military); *McKeever*, 14 Ct. Cl. at 417 (unauthorized use of a patented cartridge by U.S. military).

The twentieth-century lawsuits brought by patent owners under § 1498(a) confirm the express limitation of this statute to classic examples of the federal government's exercise of its eminent domain power in acquiring property for the use by the U.S. military or federal agencies. *See, e.g.*, *Hughes Aircraft Co. v. Messerschmitt-Boelkow-Blohm*, 625 F.2d 580 (5th Cir. 1980); *Hughes Aircraft Co. v. United States*, 534 F.2d 889 (Ct. Cl. 1976);

5

*Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913 (5th Cir. 1968), *cert. denied*, 393 U.S. 1050 (1969). One famous § 1498(a) case arose from the U.S. military's unauthorized use of a patented battery during World War Two. *See United States v. Adams*, 383 U.S. 39 (1966).

In sum, the plain text of § 1498(a) and its legislative history make clear that it does not apply to products and services that are paid for by the public fisc but are ultimately made for private companies to distribute for "widespread use" by private citizens across the nation. (D.I. 520-1 § C.1.1.1.) Although the C-100 contract provides for the authorization or consent of the Government, this consent triggers this statute's indemnity protections for federal contractors only when such manufacture or use is "for the Government." 35 U.S.C. § 1498(a). Thus, § 1498(a) applies only to the portion of the C-100 contract by which the government paid for the manufacture of vaccine doses "for the United States Government," (*id.*), such as for "use" by U.S. military personnel and federal employees. For the other portion of the C-100 contract providing for payment of vaccine doses for "the US population," § 1498(a) is inapplicable as a matter of law. For the nationwide access to its vaccine doses by the US population generally, Moderna's contract with the federal government was *for use by private patients* in the U.S. healthcare market.

This Court previously and correctly denied Moderna's motion to dismiss by recognizing that § 1498(a) applies only when a contractor makes or uses a patented invention "for the Government." *Arbutus Biopharma Corp.*, 2022 WL 16635341, at *7. The federal government may have derived an incidental benefit from resolution of the COVID-19 public health emergency through the *private distribution and use of vaccines by private patients*, but this Court rightly recognized that "[i]ncidental benefit to the government is insufficient" to trigger § 1498(a) as an affirmative defense in a patent infringement lawsuit. *Id.* at *5 (quoting *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1361 (Fed. Cir. 2014)).

6

## II. Judicial Interpretation of § 1498(a) Confirms it is an Eminent Domain Statute Inapposite to Private Transactions in the Marketplace

This Court, in its prior decision denying Moderna's motion to dismiss the complaint by Arbutus, recognized and applied binding precedents that have construed § 1498(a) as an eminent domain statute. This explains why the federal government must use a patented invention, or at least be a direct beneficiary of a contractor making or using a patented invention for the government, to trigger its requirement of payment of "reasonable and entire compensation" by the government. § 1498(a). In addition to the cases discussed by this Court, *see Arbutus Biopharma Corp.*, 2022 WL 16635341, at *4-*7, federal courts have consistently recognized for well over half a century that § 1498 is an eminent domain statute. *See Decca Ltd. v. United States*, 544 F.2d 1070, 1082 (Ct. Cl. 1976) ("It is [the government's] taking of a license, without compensation, that is, under an eminent domain theory, the basis for a suit under § 1498."); *Carter-Wallace, Inc. v. United States*, 449 F.2d 1374, 1390 (Ct. Cl. 1971) (Nichols, J., concurring) (stating that § 1498(a) authorizes a claim in court "to recover just compensation for a taking under the power of Eminent Domain"); *Irving Air Chute Co. v. United States*, 93 F. Supp. 633, 635 (Ct. Cl. 1950) (stating that § 1498(a) is "an eminent domain statute").

This Court acknowledged in its earlier decision that courts have recognized that the federal government need not be a primary or sole beneficiary, as first stated in *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371, 1373-74 (Fed. Cir. 2009). In *Advanced Software*, the U.S. Court of Appeals for the Federal Circuit held that a regional Federal Reserve bank acted "for the government" when it used a process for detecting fraudulent Treasury checks that infringed a patent on this process. The Federal Circuit concluded that "the benefits to the government of using the [infringing fraud-detection] technology on Treasury checks are not incidental effects of private interests." *Id.* at 1379. Thus, the *Advanced Software* court concluded that the patent owner had to proceed in a lawsuit against the federal government under § 1498(a), and not in a lawsuit against the specific Federal Reserve bank that infringed its patent. Given the formal relationship between the federal government and the Federal Reserve System in managing the official currency printed by the U.S. Bureau of Engraving and

7

Printing in the U.S. Department of Treasury, this decision makes sense, both legally and commonsensically.

The Federal Reserve System is not the same legal or commercial entity as a private company that manufactures and sells a drug or vaccine dose. The Federal Reserve System is also not the same legal or commercial entity as a private company that distributes this drug or vaccine dose for use by private patients in the marketplace. Notably, the *Advanced Software* court expressly distinguished the Federal Reserve System as an entity "for the Government" from a private company that was paid by Medicare in providing a medical device to a private patient in *Larson v. United States*, 26 Cl. Ct. 365, 369 (1992).

*Larson* is more similar in its facts to the C-100 contract between Moderna and the federal government than the facts of *Advanced Software*, as previously recognized by this Court. *Arbutus Biopharma Corp.*, 2022 WL 16635341, at *7 ("I find this case more akin to *Larson* than *Advanced Software Design*"). In *Larson*, a patent owner sued a private medical company for infringing its patent on a medical device (a splint), and the splints were paid through government programs such as Medicaid or Medicare. *Id.* at 367-68. Given that "the government reimbursed the cost [of the infringing splint] through Medicare and other federal programs," *id.*, the defendant argued that the patent owner's lawsuit must proceed against the government under § 1498(a). The *Larson* court rejected this argument, stating that "government reimbursement of medical care expenses did not constitute a use of a medical patent for government purposes," as required by the text of § 1498(a) in authorizing lawsuits against the federal government for compensation. *Id.* at 369. Similarly in this case, the federal government's payment to Moderna for its vaccine doses to be distributed "for the . . . US population" in the healthcare market for "nationwide access" by private individuals, (D.I. 520-1 § C.1.1.1), is not a use of a patent "for the Government." 23 U.S.C. § 1498(a).

In the Federal Circuit's decision in *Advanced Software* seventeen years later, the appellate court reaffirmed the key holding of *Larson* that "[t]he fact that the government has an interest in the [healthcare] program generally, or *funds or reimburses all or part of its costs*, is too remote to make the government the program's beneficiary for the purposes underlying § 1498." *Advanced Software*, 583 F.3d at 1379

8

(quoting *Larson*, 26 Ct. Cl. at 369) (emphasis added). This has long been recognized by scholars as well. One monograph acknowledges that § 1498(a) must be "modified" if it is "to apply to governmental payment for drugs prescribed for beneficiaries of such federal health programs as Medicare and Medicaid." Milton Silverman & Philip R. Lee, *Pills, Profits, and Politics* 187 (1974).[2]

Applying both *Advanced Software* and *Larson*, this Court rightly recognized in its order denying Moderna's motion to dismiss, "Moderna's argument . . . could mean that every government-funded product used to advance any policy goal articulated by the U.S. Government—such as IV needles to fight HIV to cancer drugs to fight the war on cancer—would be subject to a § 1498(a) defense." *Arbutus Biopharma Corp.*, 2022 WL 16635341, at *7. Given widespread federal funding of healthcare services today, Moderna's argument would convert every patent infringement lawsuit arising from patents covering drugs or other healthcare treatments into a suit for compensation against the federal government for the exercise of its eminent domain power. The absence of any limiting principle in Moderna's argument reveals how divorced this argument is from the text, congressional intent, and judicial interpretation of § 1498(a) as an eminent domain statute.

## Conclusion

This Court should hold again as a matter of law that § 1498(a) is applicable only to the unauthorized manufacture or use of patents by or for the United States, and thus deny Moderna's motion for summary judgment as applied to the vaccine doses manufactured by Moderna under the C-100 contract "for the . . . US population."

---

[2] For more recent scholarship analyzing the text and judicial construction of § 1498(a) and reaching the same conclusion, *see* Adam Mossoff, *The False Promise of Breaking Patents to Lower Drug Prices*, 98 ST. JOHN'S L. REV. 287, 292-310 (2024); Susan G. Braden & Joshua A. Kresh, *Section 1498(a) is Not a Rx to Reduce Drug Prices*, 77 FOOD & DRUG L.J. 274 (2022).

Dated: August 22, 2025	BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Proposed Amici*

10

# APPENDIX OF AMICI

## *Full List of Amici Curiae**

The Honorable Paul Michel
*Chief Judge (Retired)*
United States Court of Appeals for the Federal Circuit

The Honorable Kathleen M. O'Malley
*Circuit Judge (Retired)*
United States Court of Appeals for the Federal Circuit

The Honorable Susan G. Braden
*Chief Judge (Retired)*
United States Court of Federal Claims

The Honorable Ronald A. Cass
*Former Vice-Chairman*
United States International Trade Commission
*Dean Emeritus*
Boston University School of Law

Jonathan M. Barnett
*Torrey H. Webb Professor of Law*
University of Southern California Gould School of Law

Daniel R. Cahoy
*Robert G. & Caroline Schwartz Professor of Business Law*
Smeal College of Business
Penn State University

Richard A. Epstein
*Laurence A. Tisch Professor of Law*
New York University School of Law
*James Parker Hall Distinguished Service Professor of Law Emeritus*
University of Chicago Law School

---

* Institutions of all signatories are for identification purposes only. The undersigned do not purport to speak for their institutions, and the views of *amici* should not be attributed to these institutions.

Bowman Heiden
*Executive Director*
Tusher Strategic Initiative for Technology Leadership
University of California, Berkeley

Keith N. Hylton
*William Fairfield Warren Distinguished Professor*
Boston University School of Law

Layne Keele
*Professor of Law*
Cumberland School of Law
Samford University

Adam J. MacLeod
*Professor of Law*
*Katherine A. Ryan Chair for Global and International Law*
St. Mary's University School of Law

Geoffrey A. Manne
*President and Founder*
International Center for Law and Economics

Emily Michiko Morris
*David L. Brennan Endowed Chair and Associate Professor*
The University of Akron School of Law

Adam Mossoff
*Professor of Law*
Antonin Scalia Law School
George Mason University

Lateef Mtima
*Professor of Law*
Howard University School of Law

Kristen Jakobsen Osenga
*Austin E. Owen Research Scholar & Professor of Law*
University of Richmond School of Law

A2