IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-252-JDW |
| MODERNA, INC. and MODERNATX, INC., | ) ) ) | |
| Defendants. | ) ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Counterclaim-Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO MODERNA'S MOTION TO SEAL**

OF COUNSEL:
David I. Berl
Adam D. Harber
Thomas S. Fletcher
Shaun P. Mahaffy
Andrew L. Hoffman
Matthew W. Lachman
Ricardo Leyva
Arthur J. Argall III
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

Andrei Iancu
Jeffrey B. Wall
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500

*Attorneys for Plaintiff Genevant
Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500

*Attorneys for Plaintiff Arbutus
Biopharma Corporation*

Dated: September 4, 2025

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT ..................................................................................................................1

II.    LEGAL STANDARD .........................................................................................................2

III.   ARGUMENT .......................................................................................................................3

     A.     Despite repeated public disclosure, Moderna continues to improperly redact its use of the 50% formulation. .......................................................................3

     B.     The lipid amounts and ratios in Moderna's COVID-19 vaccine are publicly available. ...................................................................................................6

     C.     The parties' fractionation testing should not be sealed. .........................................12

         1.     Moderna's fractionation testing ................................................................12

         2.     Plaintiffs' fractionation testing ................................................................13

     D.     Moderna should not be permitted to seal an email concerning a formulation it did not use and where the content has been publicly disclosed ............................................................................................................15

IV.   CONCLUSION ..................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

*In re Application of Storag Etzel GmbH*, 2020 WL 2949742 (D. Del. Mar. 25, 2020).................17

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019) ...........................................................................................................................................2, 3, 14

*In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2 (D.D.C. 2013)...........................................14

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) ...........................11

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d. Cir. 2006)............................................3

*MED-EL Elektromedizinische Gerate GmbH v. Advanced Bionics, LLC*, Case No. 1:18-cv-01530-JDW, 2024 WL 774905 (D. Del. Feb. 26, 2024) ......................................................2

*Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544 (W.D. Pa. 2014)...............14

*Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503 (D. Del. 2012).........................................11

*PACT XPP Schweiz AG v. Intel Corp.*, Case No. 1:19-cv-01006-JDW, 2024 WL 3539018 (D. Del. May 9, 2024).....................................................................................................2, 3, 4

*Rushford v. The New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) .........................................3

*Starrett v. United States*, 2023 WL 152827 (Fed. Cir. Jan. 11, 2023).........................................17

## I.     NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT

Moderna's motion, D.I. 577 ("Mot."), repeatedly asks the Court to seal information that is already public.  Plaintiffs challenge this effort with respect to four narrow categories where the public nature of the information ensures there is no risk of harm from disclosure.  First, Moderna seeks to redact numerous references to a 50% cationic lipid formulation, despite conceding that the formulation was disclosed publicly.  Second, Moderna seeks to redact all references to the amounts of lipids in, and the associated target lipid molar ratios of, its COVID-19 vaccine. Plaintiffs' opposition cites evidence—including from Moderna's own expert—showing that these lipid amounts are publicly available and that as a result, the molar ratios are likewise public, since lipid amounts can be converted to molar ratios through a commonly-known equation.  Third, Plaintiffs challenge Moderna's attempt to shield from the public the results of the parties' respective fractionation testing, which shows that Moderna infringes Plaintiffs' patents.  Moderna's justification for sealing this information is that it would reveal the vaccine's lipid molar ratios, which are already public.  Finally, Plaintiffs challenge Moderna's attempt to redact a crucial email demonstrating, among other things, Moderna's willful infringement, despite the content of that email already being public.

Moderna's declarant, Brian Doyle, offers no justification for sealing public information— nor could he, since its presence in the public sphere means disclosure here cannot cause any harm.  Nor does Mr. Doyle attempt to distinguish the specific redactions cited by Moderna from what is already public.  Moderna's dubious explanation of the harm it faces from disclosure is thus untethered from the challenged redactions.  Plaintiffs told Moderna of their objections to sealing these categories in advance of Moderna's motion, consistent with the parties' stipulation. *See* D.I. 545.  Despite updating and revising their redactions following the parties' meet and confer, Moderna pressed on with its request to seal this public information.  Neither Mr. Doyle

nor Moderna's counsel makes any attempt to explain how disclosure of the redacted material that is already public would harm Moderna. Plaintiffs thus sought to depose Mr. Doyle—to test his assertions of harm in light of the existing disclosures—but Moderna rejected Plaintiffs' request out of hand, despite relying on Mr. Doyle's declaration heavily in its effort to shield materials from public view. The Court should reject Moderna's improper redactions, or in the alternative, order Mr. Doyle to sit for a deposition before ruling on the motion.

## II.    LEGAL STANDARD

"Motions to seal judicial records are a big deal. They seek to shield from public view information that judges consider when rendering their decisions." *MED-EL Elektromedizinische Gerate GmbH v. Advanced Bionics, LLC*, Case No. 1:18-cv-01530-JDW, 2024 WL 774905, at *1 (D. Del. Feb. 26, 2024). "The right of access 'promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (citation omitted).

The common law presumption that the public has a right of access to judicial records "is particularly robust" in the Third Circuit. *PACT XPP Schweiz AG v. Intel Corp.*, Case No. 1:19-cv-01006-JDW, 2024 WL 3539018, at *1 (D. Del. May 9, 2024). "To overcome the strong presumption of access that attaches to judicial records, [Moderna] must show that an interest in secrecy outweighs the presumption by demonstrating that the material is the kind of information that judges will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id*. (emphasis added). "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient," and the court "must 'conduct[] a document-by-document review'" to determine whether sealing is warranted. *In re Avandia Mktg.*, 924 F.3d

at 673 (citation omitted).  "There can be no risk of harm from disclosing information [that] is already publicly available."  *PACT XPP*, 2024 WL 3966753, at *2.

The presumption of public access is even stronger here, given that Moderna's sealing motion concerns summary judgment filings that will be the subject of a significant public hearing.  "[S]ummary judgment adjudicates substantive rights and serves as a substitute for trial."  *Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988); *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d. Cir. 2006) (reaching same conclusion).  And separate from the common law principles that militate strongly in favor of public disclosure, "[t]he public and the press have a First Amendment right of access to civil trials."  *In re Avandia Mktg.*, 924 F.3d at 673.  Thus, before sealing summary judgment proceedings, any restriction on access should be evaluated under the "much higher" "strict scrutiny" standard that accompanies the public's First Amendment right.  *See id.*  Although the Third Circuit has not resolved "whether the First Amendment right of access applies to records of summary judgment proceedings," *id.* at 680, "there is no principled basis to hold that the First Amendment right of public access extends to records of civil trials, but not records submitted in connection with motions for summary judgment," *id.* at 683 (Restrepo, J. concurring in part and dissenting in part).

## III.    ARGUMENT

### A.    Despite repeated public disclosure, Moderna continues to improperly redact its use of the 50% formulation.

There is no dispute that Moderna has publicly disclosed its use of a 50% ionizable (cationic) lipid formulation.  Plaintiffs are thus at a loss as to why Moderna believes its use of that formulation can be sealed.  The Court should reject Moderna's attempt to seal public information.

3

In its motion to seal, Moderna attempts to downplay the extent of its public disclosures, characterizing its disclosure of the 50% formulation as having been limited to "early preclinical studies of mRNA-1273 [Moderna's COVID-19 vaccine]."  Doyle Decl. ¶ 14.  But the true extent of Moderna's disclosures is far greater.  With respect to the COVID-19 vaccine, Moderna published an article that disclosed the use of a "molar ratio of 50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG-lipid)" in a "a first in human Phase 1 clinical trial . . . and a Phase 2" trial.  Ex A (Corbett 2020 Preprint) at 6, 11.[1]  That preprint has been downloaded over 40,000 times and cited over 140 times.  Ex B (bioRxiv metrics).  The disclosure of the 50% formulation also extended well beyond COVID-19, with Moderna publishing repeatedly about its use of that formulation in other clinical and preclinical work years earlier.  This included work on vaccines for influenza, Ex C (Bahl 2017) at 1322 ("[L]ipids were dissolved in ethanol at molar ratios of 50:10:38.5:1.5 (ionizable lipid: 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC): cholesterol: PEG-lipid)."); Zika, Ex D (Richner 2017) at e2 ("50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG-lipid))"; and CMV, Ex E (John 2018) at 1690 ("[L]ipids were dissolved in ethanol at molar ratios of 50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG lipid).").  And Moderna is not seeking to seal the admission by its scientist that it "used the 50% cationic lipid formulation as its 'standard LNP.'"  D.I. 568 ("CSOF") ¶ 151.

The Court thus correctly concluded that this target lipid molar ratio is public.  D.I 546 at 9 n.4.  Because it is public, there is no risk of harm from further disclosure.  *See PACT XPP*, 2024 WL 3966753, at *2.  Yet Moderna inexplicably asks the Court to approve numerous redactions relating to the 50% formulation.  In **Plaintiffs' Exhibit 59**, Moderna redacts

---

[1] Lettered exhibits are attached to this brief.  References to the redacted "Plaintiffs' Exhibits" refer to the redacted versions of the exhibits to the August 22, 2025 Declaration of Matthew Lachman.

references to the 50% formulation in two tables.  Each reference concerns the use of that formulation in public literature, with one of the references even citing a *public* article published in the journal *Molecular Therapy Nucleic Acids*, Ex F, Hassett 2019 (cited by Bates number, MRNA-GEN-00036907), in which Moderna reported using lipids "at molar ratios of 50:10:38.5:1.5 (ionizable lipid:DSPC:cholesterol:PEG lipid)."  Plaintiffs' Ex 59 at 3, 6. Moderna declarant Brian Doyle stated that the (public) information in Exhibit 59 is nevertheless "highly confidential information surrounding the proprietary molar ratio of its product that Moderna maintains as a trade secret."  Doyle Decl. ¶ 24.  Plaintiffs sought to depose Mr. Doyle and to inquire how a quotation from an article Moderna published in 2019 could be a trade secret, and how Moderna could be harmed substantially by the publication of information it chose to publish repeatedly, but Moderna shielded its declarant from cross-examination.  Ex G (Lachman Aug. 29, 2025 Email).  Charitably put, Mr. Doyle's statement calls into question how closely he reviewed the underlying exhibits described in his sworn declaration.

Moderna also seeks to seal numerous references to its use of the 50% formulation in **Plaintiffs' Exhibit 48**.  Paragraphs 238, 243, 261-262, 264-266, 312, 392-393, 667, 719, and 824 all include redactions of the 50% formulation.  Some of these redactions expressly involve the formulation's use in vaccine programs that were the subject of the published articles cited above (COVID-19, Flu, Zika, and CMV).  But given the repeated public disclosure of Moderna's use of this formulation, it cannot reasonably claim harm would result from disclosure of any of its historical uses of the 50% formulation.

Finally, Moderna's redaction in **Plaintiffs' Exhibit 84**, and its first redaction in **Plaintiffs' Exhibit 91** (and corresponding redactions on page 15 of Plaintiffs' opposition brief and paragraph 157 of Plaintiffs' counterstatement of facts), are likewise inappropriate in light of

the public disclosure of Moderna's use of the 50% formulation. Both exhibits reference that formulation. Mr. Doyle claims these documents concern "highly confidential information about the development of its SM-102 concentration." Doyle Decl. ¶¶ 25, 27. But the redacted material does not reveal specifics about that development or the changes made to the concentration. And, even if it did, Moderna already disclosed publicly that it sought to change its formulation because of "intellectual property regarding 50 mole percent cationic lipid." Plaintiffs' Ex 84 at 2. There is thus no risk of harm from lifting the challenged redactions.

**B.    The lipid amounts and ratios in Moderna's COVID-19 vaccine are publicly available.**

Plaintiffs renew their challenge to sealing the lipid molar ratios of Moderna's COVID-19 vaccine. Moderna's representations to the Court that these ratios were not readily calculable from the publicly-available lipid amounts, D.I. 542 at 2, are contrary to the opinions of both parties' experts, and came as a surprise to Plaintiffs when this issue arose previously. The evidence cited below justifies the denial of Moderna's current request to seal the lipid molar ratios, as well as its new request to seal even the information about the amount of each lipid (in milliliter per milliliter, mg/ml).

As noted in Plaintiffs' prior submission on sealing, D.I. 541 at 6, the amount of each lipid in the Moderna's COVID-19 vaccines is disclosed in the Japanese label, which provides lipid concentrations in milligrams per milliliter (mg/ml). D.I. 541-8; D.I. 541-9 (Japanese Labels). The same information on lipid amounts is also disclosed in English-language publications. *See* D.I. 541-10 (Suzuki 2021) at 6. Remarkably, despite suggesting in its prior submission that there was some question about whether "the Japanese product" labels concerned "Moderna's COVID-19 Vaccine that Moderna seeks to maintain under seal," D.I. 542 at 2, Mr. Doyle now acknowledges that "some drug product labels for Moderna's COVID-19 vaccine have included

information on the weight amount of the components," Doyle Decl. ¶ 11, and he does not dispute that the weights of the components can readily be converted to molar ratios using a well-known equation.

Despite the public availability of the amount of each lipid in Moderna's COVID-19 vaccine, Moderna has asked the Court to redact that information from Table 3 in Plaintiffs' Exhibit 93. The label, Suzuki 2021, and Exhibit 93 all provide this same information in mg/ml. But Mr. Doyle nevertheless claims "[t]his information is treated as a trade secret and is not publicly known." Doyle Decl. ¶ 29. Moderna denied Plaintiffs the opportunity to examine Mr. Doyle and ask him how information that can be accessed through a Google search could be a trade secret. The disclosure of this information in product labels and public journal articles shows that it is not.

There is likewise strong evidence that the molar ratios were publicly disclosed by the disclosure of the lipid concentrations. Obtaining lipid molar ratios from lipid amounts merely requires converting one unit of measurement to another. The calculation to convert lipid amounts (e.g., lipid concentration values) to molar ratios involves basic arithmetic and is quite literally a textbook approach: the formulas required to calculate mol percentages or mol fractions based on the input amounts of compounds can be found across many introductory textbooks. *See, e.g.*, Ex H, Atef Korchef, *Understanding General Chemistry* § 4.13.2 (2022) (teaching mol fraction percentage calculation based on total weight and molecular weight); Ex I, Rohit Manglik, *Bioanalytical Techniques* § 1.3.5 (2024) (same). This well-known conversion calculation is also widely used, including by Moderna's own experts. For example, in Paragraph 439 of his Infringement Rebuttal Report, Ex J, Dr. Prud'homme describes his Exhibit B stating he "calculate[d] the lipid molar ratios in lots of Moderna's COVID-19 vaccine based on the lipid

inputs" from MRNA-GEN-02656542, an excel file that provides input lipid weights and volumes. Dr. Prud'homme then proceeds to describe the well-known arithmetic that can be used to calculate lipid mol percent from lipid concentration values:

> Once the lipid contents in mg/ml of each of the lipids are calculated, the mol% of the lipids are calculated according to equation 9 ("Eq. 9") and equation 10 ("Eq. 10).
>
> Eq. 9
>
> $$[X_{lipid}](\frac{mol}{L}) = \frac{Conc. X_{lipid}\left(\frac{mg}{mL}\right) * \left(\frac{1g}{1000mg}\right) * \left(\frac{1000mL}{1L}\right)}{Mw_{X lipid (\frac{g}{mol})}}$$
>
> Eq. 10
>
> $$mol\% X_{lipid} = \frac{[X_{lipid}](mol/L)}{[Chol]\left(\frac{mol}{L}\right) + [DSPC]\left(\frac{mol}{L}\right) + [SM102]\left(\frac{mol}{L}\right) + [PEGDMG]\left(\frac{mol}{L}\right)}$$

Ex J (Prud'homme Rebuttal) ¶ 441. As can be seen from the above equations, the only input values needed to conduct this basic calculation are "Conc. X lipid" (i.e., the concentration of the lipids in the formulation) and "Mw$_{Xlipid}$" (i.e., the lipid molecular weight of the lipids). Because the molecular weights of the lipids used in Moderna's COVID-19 vaccine are publicly known— Ex K (Agilent, "Analysis of Lipid Nanoparticle Composition")[2] at 3 (providing molecular weight for all lipids but SM-102, Ex L (PubChem, "SM-102" compound summary)[3] at 1—and the only other input needed is concentration (i.e., the mg/ml information disclosed in the label), the mol % of the formulation can easily be calculated based on the label or journal article. Plaintiffs' expert Dr. Mitchell likewise used these simple formulas to back-calculate the molar ratio of Moderna's vaccines. Ex M (Mitchell Infringement) at 190. Moderna does not dispute

---

[2] https://www.agilent.com/cs/library/applications/an-elsd-1260-infinity%20II-prime-bio-lc-1290-infinity%20II-lcsd-5994-4709en-agilent.pdf

[3] https://pubchem.ncbi.nlm.nih.gov/compound/sm-102

that this arithmetic is public knowledge; indeed, when Moderna provided Plaintiffs with a version of Plaintiffs' expert report that redacted all Moderna confidential information, it left that arithmetic unredacted:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ reported mg/mL concentration values ($\rho$) of its manufacturing products can be converted to molar concentrations[89] ($N$) using the molecular weight ($MW$) of the lipids; the mole percent ($X$) of each lipid can then be determined in a standard calculation, by dividing the moles of each lipid component by the sum of the moles of all the lipid components, as described in the following formulae:

$$N_{\text{SM-102}} = \rho_{\text{SM-102}}/MW_{\text{SM-102}}$$

$$N_{\text{Cholesterol}} = \rho_{\text{Cholesterol}}/MW_{\text{Cholesterol}}$$

$$N_{\text{DSPC}} = \rho_{\text{DSPC}}/MW_{\text{DSPC}}$$

$$N_{\text{PEG2000-DMG}} = \rho_{\text{PEG2000-DMG}}/MW_{\text{PEG2000-DMG}}$$

$$X_{\text{SM-102}} = \frac{N_{\text{SM-102}}}{N_{\text{SM-102}} + N_{\text{Cholesterol}} + N_{\text{DSPC}} + N_{\text{PEG2000-DMG}}}$$

$$X_{\text{Cholesterol}} = \frac{N_{\text{Cholesterol}}}{N_{\text{SM-102}} + N_{\text{Cholesterol}} + N_{\text{DSPC}} + N_{\text{PEG2000-DMG}}}$$

$$X_{\text{DSPC}} = \frac{N_{\text{DSPC}}}{N_{\text{SM-102}} + N_{\text{Cholesterol}} + N_{\text{DSPC}} + N_{\text{PEG2000-DMG}}}$$

$$X_{\text{PEG2000-DMG}} = \frac{N_{\text{PEG2000-DMG}}}{N_{\text{SM-102}} + N_{\text{Cholesterol}} + N_{\text{DSPC}} + N_{\text{PEG2000-DMG}}}$$

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[89] A "mole" represents a certain amount of a substance; a mole of the SM-102 compound, for instance, would be generally understood to mean $6.022 \times 10^{23}$ molecules of SM-102, where $6.022 \times 10^{23}$ represents a number known as Avogadro's number. The molecular weight of compound is typically expressed in terms of its weight per mole, *e.g.*, gram per mole (g/mol) or milligrams per millimole (mg/mmol) which allows for the conversion between weights (or weight concentrations) to moles or molar concentrations.

190

Ex M (Moderna Approved Redactions of Mitchell Report) at 190.

Indeed, before the Federal Circuit, Moderna relied on this well-known mathematical conversion to represent that lipid quantities of one of its products, presented in mg/ml, were sufficient evidence to show that those quantities "overlap with the claimed ***molar ratio ranges*** in '435 patent":



The stated lipid ranges overlap with the claimed molar ratio ranges in '435 patent.

Ex N Ryan Decl. ¶ 5 (emphasis added).

The foregoing evidence confirms that Moderna knew that conversion from lipid concentrations to lipid molar ratios was well known, and its submission to the Court disputing that calculation, D.I. 542 at 2, was demonstrably untrue. Moderna now doubles down and seeks yet again to seal information calculable through public formulas found in textbooks and unredacted filings in this case. In attempting to seal the information again, Moderna presents only the declaration of Mr. Doyle. But Mr. Doyle, conspicuously, does not address whether molar ratios can be calculated from the lipid quantities he concedes are public, Doyle Decl. ¶ 11, and Plaintiffs did not have the opportunity to question Mr. Doyle about this issue either. Instead, Moderna responds only with attorney argument, contending that if such a calculation "were so

10

easy, then the allegations in Plaintiffs' own complaint would not have identified the incorrect target molar ratios." Mot. 20. Implying that Plaintiffs got the math wrong is misleading. The Complaint relied on Moderna's public disclosure of the 50% formulation and thus did not involve a calculation of the molar ratio based on lipid quantities. D.I. 1 ¶¶ 45, 49, 76, 95, 114, 137, 179 (alleging the molar ratio identified in "the Moderna/NIH preprint").

Moderna also argues that Plaintiffs' challenge to the confidentiality of the molar ratios contradicts the position it took as to its own products in earlier motions to seal. Mot. 20-21. But Plaintiffs' concerns with confidentiality are differently situated, because they concerned products under development, not a commercial formulation being sold and used in large volumes for which the concentration of the relevant ingredients (from which, both sides experts agree, the molar ratios can be calculated using a well-known formula) was publicly disclosed. Moreover, the parties' earlier sealing requests were made in connection with non-dispositive motions, such as discovery letter briefs. By contrast, Moderna cannot clear the far higher bar it faces at this later juncture of the case—"'the strong presumption' in favor of public access applies with particular force to judicial records relating to summary judgment because those proceedings 'adjudicate[ ] the substantive rights [of parties] and serve[ ] as a substitute for trial.'" *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 509 (D. Del. 2012); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("[T]here is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents."). The Court should deny Moderna request to seal the molar ratios of its COVID-19 vaccine.

C.    **The parties' fractionation testing should not be sealed.**

Both Moderna and Plaintiffs performed a type of lipid composition testing known as fractionation testing.  And both parties' testing demonstrates Moderna's infringement of the Lipid Composition Patents.  The Court should deny Moderna's attempt to shield the specific results of those tests from the public despite its significance and the lack of any harm from disclosure.

1.    **Moderna's fractionation testing**

The existence of Moderna's own fractionation testing is now a matter of public record. Moderna did not seek to seal the fact that it "performed a fractionation study on its COVID-19 vaccine—the same type of testing Plaintiffs have performed in this case—which showed 'infringing fractions having greater than 50 mol% ionizable lipid in each batch tested.'" CSOF ¶ 158.  Nevertheless, it asks to redact the specifics of those same test results in paragraphs 464-476 and 825 of **Plaintiffs' Exhibit 48**.  Likewise, Moderna did not seek to seal Plaintiffs' Exhibit 86, an email containing details on the fractionation study design and in which a lead Moderna scientist expresses concerns that the fractionation study may "pose uncomfortable questions" about what "will soon be a commercial product."  Yet in **Plaintiffs' Exhibit 48**, Moderna still seeks to redact paragraphs 461-464, which deal specifically with Exhibit 86, and even redacts a direct quote from (the public) Exhibit 86 in paragraph 825 of Exhibit 48.

In support of this sealing request, Moderna relies on the same recitation of purported harms based on the disclosure of its lipid molar ratios.  Doyle Decl. ¶¶ 20-21.  As described above, the lipid amounts, and thus the molar ratios, are public and cannot support a motion to seal.  *Supra* Sec. III.B.  Sealing is thus inappropriate with respect to paragraphs 461-476 and 825 of **Plaintiffs' Exhibit 48**.  Sealing those paragraphs is also separately improper in light of the details about Moderna's fractionation study that are now public as a result of Plaintiffs' Exhibit

12

86 and paragraph 158 of Plaintiffs' Counterstatement of Facts.  Neither Moderna nor Mr. Doyle even attempts to justify sealing in view of the publication of essentially the same information on the public docket.

### 2.    Plaintiffs' fractionation testing

In addition to Moderna's own test results, Moderna also seeks to seal the results from third-party testing firm Coriolis, which was engaged by Plaintiffs to conduct fractionation testing on samples of Moderna's COVID-19 vaccine.  *See* Plaintiffs' Ex 48 at 320-386.  These data show that Moderna infringes the Lipid Composition Patents and are cited by Plaintiffs in opposing Moderna's summary judgment motion on Section 1498, in connection with Plaintiffs' argument concerning Moderna's fraudulent inducement of authorization and consent in the C-100 contract.  *See* D.I. 564 (Plaintiffs' Opp. Br.) at 13-15.  As with Moderna's own fractionation testing, Moderna seeks to seal these results because of what they reveal about the lipid molar ratios of the COVID-19 vaccine.  *See* Doyle Decl. ¶¶ 20-21.  Its request fails for the same reason. *Supra* Sec. III.B.

In addition, Moderna's request should be rejected because the data were not created by Moderna but rather are the result of tests performed on a commercially available product by a third-party laboratory.  Moderna's claim of confidentiality is based on having produced the specific samples of its accused COVID-19 vaccine that were tested.  But Moderna has sold billions of doses of its COVID-19 vaccine.  It should not be permitted to keep from the public— many of whom were injected with Moderna's vaccine—the results of third-party testing of that same vaccine.  Indeed, academic researchers have conducted experiments with commercially-available doses of Moderna's vaccine and published the results without restriction.  *See, e.g.*, Ex O (Hermosilla 2023) at abstract ("In this research, the in-use stability of Comirnaty™ and Spikevax™ clinical samples was analysed and results compared."); Ex P (Grau 2022) at abstract

("We reveal that the mRNA integrity of Comirnaty® and Spikevax® vaccines remained unaffected after re-freezing during 1 month at −20 °C or −80 °C."). Under Moderna's theory, such research could not be published without Moderna's permission. Reality reflects otherwise.

In support of its motion to seal, Moderna claims the Court should permit sealing because Plaintiffs' citation to the results relate to "untimely and baseless fraud allegation[s]." Mot. 22. This is a transparent attempt to flip the burden—it is Moderna that must show cause for sealing. *Avandia*, 924 F.3d at 673. Moreover, Plaintiffs' fraudulent inducement argument is neither baseless nor untimely. The evidence plainly shows that Moderna made a representation to the Government during contract negotiations that it was not infringing Plaintiffs' patents. Plaintiffs' Ex 74. As its own fractionation testing and the Coriolis fractionation testing confirms, that representation was false. Plaintiffs' Ex 48 at 320-386. Plaintiffs also raised this argument at the appropriate juncture—identifying a dispute of fact precluding summary judgment as part of Plaintiffs' opposition to Moderna's motion.

Finally, Moderna claims it somehow would be harmed if the information may be used against it in a European patent proceeding. Mot. 22. But that argument provides no support for its sealing motion—"guarding a party from adverse consequences in other civil lawsuits is not a proper basis for sealing judicial records." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 10 (D.D.C. 2013); *see also Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 581 (W.D. Pa. 2014) ("This disclosure might harm [defendant] by exposing it to additional liability and litigation, as noted above, but a litigant is not entitled to the court's protection from this type of harm."). Simply put, the purpose of a Protective Order is not to shield information from other adjudicative bodies. Moreover, if any party has acted improperly in connection with the European proceeding, it is Moderna, which has mischaracterized this Court's protective order

14

in that proceeding to shield documents from discovery improperly.  Moderna represented to the European Unified Patent Court that this Court's Protective Order mandates that "even if [Moderna] were ordered to produce the US Coriolis Report in the UPC proceedings, Section 6.1 of the Protective Order makes clear that [Plaintiffs] could not lawfully use it for any purpose in these proceedings."  Ex Q, Moderna UPC Reply at 5.  That representation is plainly wrong.  The Protective Order specifically states that it does not "preclude another court from finding that information may be relevant and subject to disclosure in another case."  D.I. 91 § 17.7.  In the absence of clearly defined harm, Moderna should not be permitted to use this Court's Protective Order to improperly shield evidence of Moderna's extensive infringement from a foreign court..

### D.     Moderna should not be permitted to seal an email concerning a formulation it did not use and where the content has been publicly disclosed.

In connection with Plaintiffs' arguments that Moderna's infringement was willful (and thus fraudulent) and that the patents are valid and infringed, Plaintiffs' Counterstatement of Facts quotes a 2017 email from Moderna executive Stephen Hoge, who explains that Moderna has "***incredibly strong business reasons*** why a composition with" a certain, specific lipid content "is more attractive," and that he "would be willing to contemplate a delay to identify such a composition."  CSOF ¶ 156.  The Counterstatement explains that Moderna experimented with formulations with that same content, but those experiments failed repeatedly.  CSOF ¶ 157.

The email concerns a molar ratio desired for "business reasons," but not one that Moderna actually used.  Thus, the evidence does not reveal the lipid molar ratio of any Moderna product (which, as explained above, is publicly known in any event).  Nor would a business directive about formulations Moderna did not use allow competitors to "replicate Moderna's proprietary formulations."  Doyle Decl. ¶ 32.

Despite the lack of any clearly defined injury, Moderna redacted the reference to the desired formulation in **Plaintiffs' Exhibit 85**, and in quotations from it on pages 15 and 17 of Plaintiffs' Opposition Brief.  However, a quotation from that same email, identifying the specific desired formulation, was not redacted in the Counterstatement of Facts filed on the public docket.  *See* CSOF ¶¶ 156-157.  Moderna did not identify that quotation for redaction in its initial set of redactions, nor in its revised set of redactions following the parties' meet and confer. Yet it now seeks to redact the reference there was well, informing Plaintiffs just hours before the filing of this opposition brief that Moderna claims that it inadvertently failed to do so earlier. Out of professional courtesy, Plaintiffs agreed that a revised, redacted version of the Counterstatement of Facts could be submitted pending the Court's decision on the motion to seal.  But Plaintiffs do not agree that this redaction is appropriate or that Moderna can now put the toothpaste back in the tube.

The Court should reject both the original redaction and the revised redaction in the Counterstatement of Facts.  First, Moderna has not identified a clearly defined harm justifying sealing.  It offers no explanation as to how statements about formulations it did not use would cause it harm.  The harm identified in the Doyle declaration is premised on competitors "replicat[ing] Moderna's proprietary formulations, analytical processes, and manufacturing." Doyle Decl. ¶ 32.  Plaintiffs' Exhibit 85 does not identify such information—it identifies a formulation Moderna did not use, despite having "strong business reasons" to do so.  Moderna has not put forward the necessary evidence to establish clearly defined harm from that disclosure.

There is also a more fundamental, practical barrier to sealing.  Moderna cannot ask the Court to seal what has already been unsealed.  "Once material is in the public domain on the

public dockets of courts, there is little sound justification for sealing subsequent filings containing the same public domain material." *In re Application of Storag Etzel GmbH*, 2020 WL 2949742, at *29 (D. Del. Mar. 25, 2020); *see also Starrett v. United States*, 2023 WL 152827, at *4 (Fed. Cir. Jan. 11, 2023) ("[U]nsealed matter should not be resealed."). The material in question was publicly available for a week in a case subject to significant public attention. Neither Moderna nor the Court can unring that bell.

## IV.    CONCLUSION

Moderna has not carried its heavy burden to justify sealing information the public is entitled to view. Moderna's motion should be denied as to the challenged redactions.

/s/ Nathan R. Hoeschen

OF COUNSEL:

John W. Shaw (No. 3362)

David I. Berl

Karen E. Keller (No. 4489)

Adam D. Harber

Nathan R. Hoeschen (No. 6232)

Thomas S. Fletcher

SHAW KELLER LLP

Shaun P. Mahaffy

I.M. Pei Building

Andrew L. Hoffman

1105 North Market Street, 12th Floor

Matthew W. Lachman

Wilmington, DE 19801

Ricardo Leyva

(302) 298-0700

Arthur J. Argall III

jshaw@shawkeller.com

Falicia Elenberg

kkeller@shawkeller.com

Kathryn Larkin

nhoeschen@shawkeller.com

WILLIAMS & CONNOLLY LLP

*Attorneys for Plaintiffs*

680 Maine Avenue S.W.

Washington, DC 20024

(202) 434-5000

Andrei Iancu

Jeffrey B. Wall

SULLIVAN & CROMWELL LLP

1700 New York Avenue, N.W.

Suite 700

Washington, DC 20006

(202) 956-7500

*Attorneys for Plaintiff Genevant*
*Sciences GmbH*

Daralyn J. Durie

Adam R. Brausa

Eric C. Wiener

Annie A. Lee

Shaelyn K. Dawson

MORRISON & FOERSTER LLP

425 Market Street

San Francisco, CA  94105-2482

(415) 268-6080

Kira A. Davis

MORRISON & FOERSTER LLP

707 Wilshire Boulevard

Los Angeles, CA  90017-3543

(213) 892-5200

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500

*Attorneys for Plaintiff Arbutus
Biopharma Corporation*

Dated: September 4, 2025