IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARBUTUS BIOPHARMA CORPORATION )
and GENEVANT SCIENCES GmbH, )
)
    Plaintiffs, )
)    C.A. No. 22-252 (MSG)
    v. )
)
MODERNA, INC. and MODERNATX, INC. )
)
    Defendants. )
)

**PLAINTIFFS BRIEF IN SUPPORT OF MOTION TO SEAL
PORTIONS OF _DAUBERT_ BRIEFING**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   LEGAL STANDARD ................................................................................................. 2

III.  ARGUMENT .............................................................................................................. 3

      A.    Plaintiffs' Confidential Materials ............................................................... 3

IV.   CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Del. Display Grp. LLC v. LG Elecs. Inc.*,
     221 F. Supp. 3d 495 (D. Del. 2016).................................................................4, 6, 9

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
     924 F.3d 662 (3d Cir. 2019)..............................................................................2, 3

*In re Cendant Corp.*,
     260 F.3d 183 (3d Cir. 2001)...................................................................................2

*Kaleo, Inc. v. Adamis Pharms. Corp.*,
     No. CR 19-917-RGA, 2019 WL 11680196 (D. Del. July 16, 2019) ............................... *passim*

*Littlejohn v. Bic Corp.*,
     851 F.2d 673 (3d Cir. 1988).....................................................................................2

*Mosaid Techs. Inc. v. LSI Corp.*,
     878 F. Supp. 2d 503 (D. Del. 2012).................................................................2, 3, 4

*Nixon v. Warner Commc'ns, Inc.*,
     435 U.S. 589 (1978)................................................................................................10

*PACT XPP Schweiz AG v. Intel Corp.*,
     No. 1:19-CV-01006-JDW, 2024 WL 3966753 (D. Del. Jan. 4, 2024).......................................4

*Pansy v. Borough of Stroudsburg*,
     23 F.3d 772 (3d Cir. 1994)........................................................................................3

*Techfields Pharma Co. v. Covance Inc.*,
     No. 3:16-CV-1148-MAS-LHG, 2019 WL 2478109 (D.N.J. June 13, 2019) ........................3, 6

*United States v. Dentsply Int'l, Inc.*,
     187 F.R.D. 152 (D. Del. 1999) ...............................................................................3, 8

## I.    INTRODUCTION

Pursuant to the Protective Order (D.I. 91) as modified by the Court's November 14, 2023 Order (D.I. 155), and the Court's July 28, 2025 Order (D.I. 503), Plaintiffs respectfully move to seal their sensitive and confidential information and to grant leave to file partially redacted versions of the parties' briefing regarding their *Daubert* motions, together with Exhibits 1, 3, 5, 12, 13, 14, 31, 33, 36, 37, 38 A, C, D, R, and S to the parties' briefing regarding their motions. (collectively, the "Plaintiffs' Confidential Materials").[1]  As explained in more detail below, the portions marked for redaction/sealing contain Plaintiffs' sensitive and confidential information, including information regarding the financial terms Genevant's license agreements, information disclosing Genevant's business and licensing strategies, and information disclosing the confidential business information of Genevant's third-party licensee.  Plaintiffs have narrowly tailored the documents that they seek to redact or file under seal.  Of more than 5,000 pages of exhibits to the parties' filings, the materials Plaintiffs seek to seal is contained on only about 200 pages, much of which is limited to only a few lines on each page.  Moreover, the actual information being sealed is significantly smaller, as most of the redacted material is repeated in multiple exhibits.

In support of this motion, Plaintiffs attach as **Exhibit A** the Declaration of Pete Zorn, President and Chief Legal Officer of Genevant who is knowledgeable about Plaintiffs' confidential material that Plaintiffs seek to seal and is familiar with its sensitivity.  The Confidential Materials contain Plaintiffs' highly confidential information, and the Court should maintain that material under seal in order to prevent serious and real harm to Plaintiffs.  Release of the Plaintiffs' highly

---

[1]    The parties' proposed redactions are identified in green highlighting.  Plaintiffs have used yellow highlighting for emphasis.  The parties have also agreed to redact from the versions to be filed with the Court certain confidential and irrelevant information of third parties.

confidential information to the public, Plaintiffs' competitors, and to Plaintiffs' future partners, would create a clearly defined and serious injury, as discussed in detail below.

## II.    LEGAL STANDARD

Third Circuit common law presumes a public right of access to judicial records, but it also protects business and financial information when access would cause economic harm, including competitive harm. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that the right is not absolute." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (citations and quotations omitted); *see also Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("Despite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing.").

This presumption of public access is overcome where a movant shows "that the interest in secrecy outweighs the presumption." *In re Avandia Mktg.*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). This showing may be made by demonstrating that disclosure will work a clearly defined and serious injury to the movant and that the material is the kind of information that courts will protect. *See In re Avandia Mktg.*, 924 F.3d at 672 (citing *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). The Court will apply a "good cause" standard justifying sealing or redacting judicial records, requiring a "balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507-08 (D. Del. 2012) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)).

2

### III.    ARGUMENT

#### A.    Plaintiffs' Confidential Materials

Plaintiffs seek to file redacted versions of and seal components of Plaintiffs' Confidential Materials.  Good cause exists here to redact and seal Plaintiffs' Confidential Materials because they contain Plaintiffs' highly confidential business information, and the confidential information of third parties, the disclosure of which would cause real and serious competitive harm to Plaintiffs and these third parties.  Moreover, the narrowly identified information does not need to be disclosed to the public to understand the filings at issue.

Plaintiffs' Confidential Materials are the type of information that courts in the Third Circuit have recognized as protectable, namely highly sensitive and confidential business information regarding Plaintiffs' license and business agreements with third parties and details about third-parties' ongoing work to commercialize LNP products.  *Avandia Mktg.*, 924 F.3d at 673; *Kaleo, Inc. v. Adamis Pharms. Corp.*, No. CR 19-917-RGA, 2019 WL 11680196, at *2 (D. Del. July 16, 2019) (granting motion to seal "details of, discussion of, and/or reference surrounding licensing negotiations ... which refer to timing of the discussions that led up to the execution of the agreement and the breadth of subject matter to be included in the license," and finding "this information provides subsequent licensees insight into the factors beyond the financial terms that Adamis considers during licensing"); *id.* (good cause to seal information that "provides insight on Adamis' legal and business strategy"); *Techfields Pharma Co. v. Covance Inc.*, No. 3:16-CV-1148-MAS-LHG, 2019 WL 2478109, at *2 (D.N.J. June 13, 2019) (granting motion to seal discussion of contracts that are subject to confidential negotiations, where disclosure would put party at disadvantage in future negotiations); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159 (D. Del. 1999) (shielding a nonparty competitors' information from disclosure); *Pansy*, 23 F.3d at 786. For example, in *Mosaid Technologies.*, 878 F. Supp. 2d at 510, the court noted that "confidential

3

financial information and licensing strategy" "is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors. It is also the sort of material that courts have frequently redacted." *Id.* (collecting cases). Plaintiffs seek to similarly redact disclosures of their "confidential financial information and licensing strategy" here. In *Kaleo*, No. CR 19-917-RGA, 2019 WL 11680196, at *2, the court permitted the sealing of information that would "provide[] subsequent licensees insight into the factors beyond the financial terms that [the licensor] considers during licensing," *id*, as Plaintiffs seek to redact here. Finally, in *PACT XPP Schweiz AG v. Intel Corp.*, No. 1:19-CV-01006-JDW, 2024 WL 3966753, at *2 (D. Del. Jan. 4, 2024), the court permitted the redaction of "confidential business and financial information regarding third-party license agreements, past settlement agreements, licensing strategies and negotiations, and [the party's] marketing and business strategy," as Plaintiffs seek to do here. *Id.*; *see also Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (Good cause exists to seal or redact information such as "the pricing terms in license agreements, some other non-public financial information, trade secrets, and other proprietary technology.").

The harms caused by revealing Plaintiffs' confidential information are discussed below, and further in the attached declaration of Pete Zorn (Exhibit A), who is familiar with this information and its sensitivity. As Mr. Zorn explains, there is significant competition in connection with the research, development, and sale of products related to Plaintiffs' LNP technology. Ex. A ¶ 5. Disclosure of the information that Plaintiffs seek to file under seal would give Genevant's current and future licensees, and Genevant's competitors in the LNP industry, substantial insight into its internal business and licensing strategies, which would allow these entities to make decisions about where, when, and how to negotiate more favorable terms in

licensing discussions or to more directly compete with full knowledge of Genevant's technology and strategies. *Id.* ¶ 6. Further, Plaintiffs continue to work with third parties regarding LNP technology, and Genevant continues to license its LNP technology, and the disclosure of Plaintiffs' Confidential Information would hinder Plaintiffs' ability to enter into further confidential third-party business relationships. *Id*. ¶ 4.

As described briefly below, and further explained in the Declaration of Mr. Zorn, Plaintiffs consider as confidential information the details of their licensing agreements and negotiations with third parties, as well as the remaining information that they seek to file under seal. Ex. A ¶¶ 4, 7, 9, 10, 11, 13, 14, 16. Plaintiffs' development and maintenance of their commercial relationships regarding the development of LNP work is ongoing. Plaintiffs have not publicly disclosed the information that they propose to file under seal within the parties briefing or within Exhibits 1, 3, 12, 13, 14, 31, 33, 36, 37, 38, A, C, D, R, and S thereto, which refer to, summarize, or otherwise disclose Plaintiffs' confidential licenses and negotiations with third parties.

Because of the highly competitive nature in connection with the research, development, and sale of products related to Plaintiffs' LNP technology, Plaintiffs have spent significant effort and resources to develop their third-party relationships and collaborations and develop their business strategies. The release of confidential information regarding these efforts to the public, including Plaintiffs' competitors, would significantly harm Plaintiffs. Ex. A ¶¶ 4, 5, 6.

Plaintiffs have sought to redact portions of several exhibits that disclose the financial terms, and other confidential information, of Genevant's license agreements with certain third parties. These specific exhibits that disclose the contents of these agreements, include:

- Exhibit 1, pages 10, 11, 45, 49, 50-74, 91, 98, 99, 100, 107, 122, 124, 156, and 187;
- Exhibits 13, limited portions on each page;
- Exhibit 14, limited portions on each page;
- Exhibit 31, limited portions on each page;

5

- Exhibit 3, limited portions on each page;
- Exhibit 38, pages 945, 946, 1024;
- Exhibit A, pages 507, 517–520, 523, 524, 526, 531–533, 535, 537, 539, 541–543, 546, 548, 551, 553, 554, 555, 727, 728, 739, 768, 807, 808, and 88;
- Exhibit C, pages 25, 26, 86, 87, and 88;
- Exhibit D;
- Exhibit V, pages 9 and 10.

As Mr. Zorn explains, these exhibits, all of which are drawn from expert reports and testimony of the parties' damages experts in this case, would disclose the financial terms, including the lump sum amount, royalty amounts, royalty reduction terms, milestone amounts, and milestone triggers for Genevant's license agreements with many third parties. Ex. A ¶¶ 7, 11, 12, 13, 15, 17, 18. Disclosure of this information would work a competitive harm to both Genevant and its licensees by disclosing information that may bear upon negotiations or discussions with future potential licensees or licensors. *Id.* Genevant invests heavily in pursuing its licenses and continues to negotiate licenses with third parties and has active collaborations and licensing agreements with parties disclosed in the excerpted portions of these exhibits. *Id.* As Mr. Zorn explains, disclosing the financial terms of these licenses would undermine Genevant's ability to negotiate licenses with future potential licensees. *Id.* Other courts have found good cause to redact information such as "the pricing terms in license agreements, some other non-public financial information, trade secrets, and other proprietary technology." *Del. Display Grp*, 221 F. Supp. 3d at 497; *Kaleo*, No. CR 19-917-RGA, 2019 WL 11680196, at *2 (granting motion to seal "details of, discussion of, and/or reference surrounding licensing negotiations ... which refer to timing of the discussions that led up to the execution of the agreement and the breadth of subject matter to be included in the license," and finding "this information provides subsequent licensees insight into the factors beyond the financial terms that Adamis considers during licensing"); *Techfields Pharma Co.*, No. 3:16-CV-1148-MAS-LHG, 2019 WL 2478109, at *2 (granting motion to seal discussion of

6

contracts that are subject to confidential negotiations, where disclosure would put party at disadvantage in future negotiations).

Plaintiffs also seek to seal limited portions of Exhibit 3, which includes excerpts of Mr. Zorn's testimony in this case, and Exhibit 38, which contains excerpts of this testimony. Plaintiffs have proposed redacting the portions of these exhibits that discloses Genevant's licensing practices, including descriptions of the factors that Genevant considers when negotiating licenses with counterparties, the relative weight that Genevant considers in its negotiations, and Genevant's overall licensing strategy. Ex. A ¶ 8. As Mr. Zorn explains in his declaration in support of this motion, disclosing this information would affect a competitive harm to Genevant, because it would provide additional information to Genevant's potential licensees regarding the information and strategy that goes into Genevant's licensing decisions. *Id.* And Genevant has active and ongoing discussions and negotiations with counterparties for potential licenses to Genevant's patents and LNP technology, and so this disclosure would harm its ongoing commercial activities. *Id.* Other courts have similarly permitted the sealing of information that would "provide[] subsequent licensees insight into the factors beyond the financial terms that [the licensor] considers during licensing," *Kaleo*, No. CR 19-917-RGA, 2019 WL 11680196, at *2, as Plaintiffs seek to redact from Exhibit 3.

Plaintiffs also seek to seal Exhibit 12, as it consists entirely of excerpts from a confidential presentation from one of Genevant's licensees regarding its manufacturing plans and budgeting for its Covid-19 vaccine. Ex. A ¶ 9. Similarly, Exhibit 5 is an excerpt of the Opening Expert Report of Catharine Lawton, Plaintiffs' expert witness in this case, which discusses the information contained in Exhibit 12, which Plaintiffs seek to redact. As Mr. Zorn explains, Genevant has treated the information disclosed in this presentation as confidential, including the presentation's

disclosure of this licensee's clinical trial and manufacturing timelines along with its budget projections, costs of manufacturing, and costs of conducting its clinical trials. Ex. A ¶ 9. Disclosure of this information would affect a commercial harm on this licensee, as it continues to develop a Covid-19 vaccine as well as other products, and this information could provide a competitive advantage to its competitors in the industry. *Id.* Furthermore, if the confidential information of this third party that Genevant obtained pursuant to confidentiality agreement was disclosed, then Genevant would be harmed in its ability to ensure potential third-party collaborators that the disclosure of third-party information will remain in confidence. *Id.* Other courts have similarly shielded from disclosure "a nonparty competitors' sales and marketing plans, financial forecasts, margin, pricing, cost and customer information." *See United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159 (D. Del. 1999).

Plaintiffs also seek to redact portions of Exhibits 33, 37, R, and S. These exhibits are excerpts of Genevant's licenses with three of its licensees: Providence Therapeutics Covid Inc. (Exs. 33 and S), Gritstone Oncology, Inc (Ex. 37), and Chulalongkorn University (Ex. R). As Mr. Zorn explains, the excerpted versions of these agreements would disclose their financial terms, including the lump sum amount, royalty amounts, royalty reduction terms, milestone amounts, and milestone triggers. Ex. A ¶ 10. Disclosure of this information would work a competitive harm to both Genevant and its licensees by disclosing information that may bear upon negotiations or discussions with future potential licensees or licensors. *Id.* Genevant invests heavily in pursuing its licenses, continues to negotiate licenses with third parties, and has active collaborations and licensing agreements with parties disclosed in the excerpted portions of these exhibits. *Id.* As Mr. Zorn explains, disclosing the financial terms of these licenses would undermine Genevant's ability to negotiate licenses with future potential licensees. *Id.* Other courts have found good cause to

8

redact information such as "the pricing terms in license agreements, some other non-public financial information, trade secrets, and other proprietary technology." *Del. Display.*, 221 F. Supp. 3d at 497.

Plaintiffs also seek to redact from pages 271 and 556 of Exhibit A, an excerpt of Ms. Lawton's Opening Expert Report, as those pages contain information regarding certain offers to acquire Genevant and/or Genevant's LNP portfolio, and Genevant's internal valuation of its LNP portfolio. As Mr. Zorn explains, the pharmaceuticals industry is very competitive, and the disclosure of the dollar amounts of these confidential transactions that did not proceed to execution would competitively affect Plaintiffs by allowing competitors and others in the industry to use this information to Genevant's detriment in other negotiations or potential acquisitions of Genevant, its assets, or its technology. Ex. A ¶¶ 13, 14. These confidential offers and internal valuations for Genevant and its technology are consistent with the types of information that other courts have allowed to remain sealed. *See Del. Display Grp.*, 221 F. Supp. 3d at 497.

Plaintiffs also seek to redact information on pages 144 and 233 of Exhibit A and page 118 of Exhibit 3, concerning confidential settlement offers that Genevant made in order to resolve ongoing or anticipated litigation with Moderna. As Mr. Zorn explains, disclosure of the details of these offers would cause competitive harm to Genevant, as Genevant deems its litigation strategies as confidential, and the disclosure of the terms for this settlement offer could affect Genevant's standing in its industry because, as already noted, the industry is very competitive, and Genevant's competitors could use this information to undermine Genevant's position in the industry. Ex. A ¶ 16. Moreover, Genevant has ongoing litigation with other third parties, and disclosure of Genevant's confidential settlement discussions with Moderna could similarly affect Genevant's position with respect to these other actions. Other courts have allowed parties to file similar

information under seal.  *See Kaleo*, No. CR 19-917-RGA, 2019 WL 11680196, at \*2 (good cause to seal information that "provides insight on Adamis' legal and business strategy").

Plaintiffs have proposed narrow redactions and sealing requests, such that the redacted and sealed portions of the identified exhibits would not impair the public's ability to understand the parties respective briefing regarding their *Daubert* motions any more than necessary to prevent the release of Plaintiffs' and third parties' confidential business and commercial information, preventing clear competitive harm.  Specifically, Plaintiffs have proposed filing under seal only one document—which contains a third-party's confidential information—and have otherwise identified narrow redactions of information that discloses the financial terms of Genevant's agreements with third parties, its confidential negotiations, and Genevant's confidential business strategies.  Under such circumstances, Plaintiffs' interest in maintaining the confidentiality of the proposed redacted information outweighs any countervailing public interest.  *See id*; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve as ... sources of business information that might harm a litigant's competitive standing.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs request the Court grant this Motion to Seal with respect to its highly confidential information and the highly confidential information of third parties.

OF COUNSEL:
David I. Berl
Adam D. Harber
Thomas S. Fletcher
Shaun P. Mahaffy
Andrew L. Hoffman
Matthew W. Lachman
Ricardo Leyva
Arthur J. Argall III
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000

Andrei Iancu
Jeffrey B. Wall
Sullivan & Cromwell llp
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500
*Attorneys for Genevant
Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080
Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs/Counterclaim-Defendants*

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
*Attorneys for Arbutus*
*Biopharma Corporation*

Dated: December 16, 2025