# EXHIBIT 34

**Exhibit 8**
**Patent Citation Analysis:**
**Relative Value of Providence Agreement Genevant Patent Portfolio Attributable to Patents-in-Suit and Family Members Thereof**
**Using Patent Classes A61K31, A61K9, A61K47, C12N15, A61P35[1]**
**By Patent Value Distribution**

| | | | | | | | | | Portfolio Value Apportionment by Distribution | | | | |
| | Patent No. | Title | Issue Date | Estimated Expiration Date | Family ID[2] | Explicitly Included in Providence Agreement[3] | Forward Citation Count[2] | Age-Adjusted Forward Citation Count[4] | Schankerman[4] | Vigil-Zhang-Adjusted Schankerman[5,6] | Kogan-Adjusted Schankerman[5,7] | Barney-Adjusted Schankerman[5,8] | Kogan 2020[9] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] | [F] | [G] | [H] | [I] | [J] | [K] | [L] | [M] |
| | *Patents-in-Suit [10]* | | | | | | | | | | | | |
| [1] | 8,058,069 | Lipid formulations for nucleic acid delivery | 11/15/2011 | 4/15/2029 | 41198741 | Yes | 656 | 324 | 5.80% | 4.96% | 5.80% | 5.80% | 4.89% |
| [2] | 8,492,359 | Lipid formulations for nucleic acid delivery | 7/23/2013 | 6/13/2029 | 41198741 | Yes | 112 | 64 | 1.11% | 1.36% | 1.11% | 1.11% | 1.38% |
| [3] | 8,822,668 | Lipid formulations for nucleic acid delivery | 9/2/2014 | 4/15/2029 | 41198741 | Yes | 163 | 105 | 1.88% | 2.05% | 1.88% | 1.88% | 2.06% |
| [4] | 9,364,435 | Lipid formulations for nucleic acid delivery | 6/14/2016 | 4/15/2029 | 41198741 | Yes | 157 | 131 | 2.36% | 2.45% | 2.36% | 2.36% | 2.45% |
| [5] | 9,504,651 | Lipid compositions for nucleic acid delivery | 11/29/2016 | 7/15/2023 | 30000947 | Yes | 200 | 180 | 3.20% | 3.11% | 3.20% | 3.20% | 3.10% |
| [6] | 11,141,378 | Lipid formulations for nucleic acid delivery[11] | 10/12/2021 | 4/15/2029 | 41198741 | No | 23 | 60 | 1.03% | 1.28% | 1.03% | 1.03% | 1.30% |
| | *Patents-in-Suit Subtotal* | | | | | | | | *15.38%* | *15.20%* | *15.38%* | *15.38%* | *15.19%* |
| | *Family Members of Patents-in-Suit [12]* | | | | | | | | | | | | |
| [7] | 7,901,708 | Liposomal apparatus and manufacturing methods | 3/8/2011 | 6/28/2026 | 30000947 | Yes | 591 | 279 | 4.89% | 4.34% | 4.89% | 4.89% | 4.29% |
| [8] | 8,329,070 | Liposomal apparatus and manufacturing method | 12/11/2012 | 12/11/2024 | 30000947 | Yes | 169 | 91 | 1.61% | 1.81% | 1.61% | 1.61% | 1.83% |
| [9] | 9,492,386 | Liposomal apparatus and manufacturing methods | 11/15/2016 | 12/29/2023 | 30000947 | Yes | 208 | 186 | 3.33% | 3.21% | 3.33% | 3.33% | 3.20% |
| [10] | 11,298,320 | Liposomal apparatus and manufacturing methods[11] | 4/12/2022 | 6/30/2023 | 30000947 | No | 2 | 6 | 0.11% | 0.22% | 0.11% | 0.11% | 0.23% |
| [11] | 11,318,098 | Liposomal apparatus and manufacturing methods[11] | 5/3/2022 | 6/30/2023 | 30000947 | No | 2 | 6 | 0.11% | 0.22% | 0.11% | 0.11% | 0.24% |
| [12] | **Family-Adjusted Totals** | | | | | | | | **25.43%** | **25.01%** | **25.43%** | **25.43%** | **24.97%** |

**Notes:**

1. Each of the 42 patents explicitly licensed in the Providence agreement's Genevant Patent Portfolio is classified under at least one of five Cooperative Patent Classification Groups ("Patent Classes"), as are the 3 additional patents I conservatively add to the Providence agreement's Genevant Patent Portfolio, *see* Notes 11 and 12. Of those 45 total patents, 42 belong to Patent Class A61K31, 42 belong to Patent Class A61K9, 36 belong to Patent Class A61K47, 32 belong to Patent Class C12N15, and 30 belong to Patent Class A61P35, according to AcclaimIP data taken from AcclaimIP.com. Patent Class A61K31 entails "Preparations for medical, dental or toiletry purposes, Medicinal preparations containing organic active ingredients."
*See* https://www.uspto.gov/web/patents/classification/cpc/html/cpc-A61K.html. Patent Class A61K9 entails "Preparations for medical, dental or toiletry purposes, Medicinal preparations characterized by special physical form."
*See* https://www.uspto.gov/web/patents/classification/cpc/html/cpc-A61K.html. Patent Class A61K47 entails "Preparations for medical, dental or toiletry purposes, Medicinal preparations characterized by the non-active ingredients used, e.g. carriers or inert additives; Targeting or modifying agents chemically bound to the active ingredient." *See* https://www.uspto.gov/web/patents/classification/cpc/html/cpc-A61K.html. Patent Class C12N15 entails "Microorganisms or enzymes; compositions thereof; propagating, preserving, or maintaining microorganisms; mutation or genetic engineering; culture media, Mutation or genetic engineering; DNA or RNA concerning genetic engineering, vectors, e.g. plasmids, or their isolation, preparation or purification; Use of hosts therefor."
*See* https://www.uspto.gov/web/patents/classification/cpc/html/cpc-C12N.html. Patent Class A61P35 entails "Specific therapeutic activity of chemical compounds or medicinal preparations, antineoplastic agents."
*See* https://www.uspto.gov/web/patents/classification/cpc/html/cpc-A61P.html. Therefore, for the purposes of comparing Forward Citation counts, I compare the patents in the Genevant Patent Portfolio as licensed in the Providence agreement to all of the U.S. patents classified under the combined Patent Classes A61K31, A61K9, A61K47, C12N15, and A61P35 that have been issued since December 29, 2009 (six months before the first issued patent in the Genevant Patent Portfolio as licensed in the Providence agreement) through January 26, 2025 (the "Genevant Combined Patent Class Sample").

2. Family IDs and Forward Citation Counts obtained from AcclaimIP as of January 26, 2025.

3. I consider a patent to be "Explicitly Included in the Providence Agreement" if it is listed in Exhibit A to the Providence agreement as an issued patent. *See* GENV-00022307 at 352-402. As a conservative measure, I include in my Patent Citation Analysis only these patents, plus any Patents-in-Suit or family members thereof that were not explicitly included in the Providence agreement, regardless of whether those additional patents had issued at the time the Providence agreement was signed in May 2020. *See* Notes 11 and 12.

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**q**uantitative **e**conomic **s**olutions, LLC

**Exhibit 8**
**Patent Citation Analysis:**
**Relative Value of Providence Agreement Genevant Patent Portfolio Attributable to Patents-in-Suit and Family Members Thereof**
**Using Patent Classes A61K31, A61K9, A61K47, C12N15, A61P35[1]**
**By Patent Value Distribution**

**Notes (continued):**

4. I estimate the age-adjusted citations for each patent in the Genevant Combined Patent Class Sample to ensure that I am accurately comparing citation counts across patents that issued at different points in time. The logic behind this adjustment is intuitive: a patent's age may bias its forward citation count, as older patents have had a longer time period to accumulate patent citations than newer patents, and thus a direct one-to-one comparison between forward citations totals for patents of different ages, without further adjustment, is inadvisable. To perform my age adjustment, I conduct a nonlinear least-squares regression using a logistic functional form of the number of forward citations (ForwardCites) on time (Days). *See* "PCA Analysis.do." I use the patents in the Genevant Combined Patent Class Sample that issued from December 29, 2009 through January 26, 2025. Using only the patents in the Genevant Combined Patent Class Sample to perform the age adjustment ensures that the age adjustment is based on patents related to similar technologies as the technologies underlying the Genevant Patents licensed under the Providence agreement. The underlying concept is that patents from unrelated fields may accumulate citations at different rates over time, and the logistic functional form captures the notion that a patent will accumulate citations relatively quickly early on, but at a decreasing rate as time progresses. *See* Vellturo Report, Section III.C.1.e.iii. Since the age-adjustment model predicts the expected number of forward citations for an average-valued patent at each given age, I am able to rescale observed forward citations for each patent by the ratio of average forward citations of the Genevant Combined Patent Class Sample to the patent's expected forward citations as a function of time, resulting in a set of "Age-Adjusted Forward Citation Counts." I determine a percentile rank for each patent in the Genevant Combined Patent Class Sample using the ordinal ranking of each patent based on its Age-Adjusted Forward Citation Count. I use this set of percentile ranks to match the percentile ranks of each of the patents in the Genevant Combined Patent Class Sample to simulations of patent value. To perform this matching process, I turn to estimates of patent values by percentile reported in Schankerman (1998) (*see* Vellturo Report, Section III.C.1.e.iii) and rely on the pharmaceuticals Schankerman fit, since it is the most comparable patent technology field to the Genevant Patents licensed under the Providence agreement. I then specify a lognormal distribution of patent values that fits the reported 95th and 99th percentiles of the Schankerman distribution and simulate approximately 179,000 observations to create a set of simulated patent values. I base the sample size of the simulated patent values on the number of patents in the Genevant Combined Patent Class Sample, which includes approximately 179,000 patents. This process ensures that my relative valuations of each patent reflect the fact that patent values tend to be lognormally distributed, *see* Schankerman (1998), p. 88. Courts have repeatedly approved of this methodology for determining patent value, see, e.g., *USAA v. PNC*, 2:20-cv-00319-JRG-RSP, Dkt. 600 at *9-10 (E.D. Tex. April 24, 2022); *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 2019 WL 4198194, *2-3 (D. Del. Sept. 4, 2019); *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *12 & n. 15 (S.D. Cal. Sept. 14, 2016); *Packet Intel. LLC v. NetScout Sys., Inc.*, 2017 WL 11631146, at *3 (E.D. Tex. Sept. 29, 2017); *Better Mouse Co. v. SteelSeries ApS*, 2016 WL 3611528, at *3 (E.D. Tex. Jan. 5, 2016); *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at *43 (N.D. Ill. Oct. 3, 2013). I then percentile rank these simulated values from lowest to highest and use these rankings to assign a relative valuation to each of the 45 patents upon which I conduct my analysis (*see* Note 1), matching the percentile rank of Age-Adjusted Forward Citation Counts for each patent to the corresponding percentile rank of simulated value in the set of simulated values. Next, I calculate a relative proportional value for each of the 45 patents by dividing the corresponding simulated patent value by the total simulated value among all 45 patents analyzed. The resulting relative proportional value apportioned to each patent is such that the total sum of all relative proportional value estimates for each patent in the Genevant Patent Portfolio licensed under the Providence agreement equals 100 percent. *See* "PCA Analysis.do" and Schankerman (1998).

5. As I note in my report, the apportionment estimate of the Genevant Patent Portfolio as licensed under the Providence agreement requires assumptions about the relative distribution of all patent values in related technological fields to determine the relative values of the Genevant patents included in the Genevant Patent Portfolio as licensed under the Providence agreement. These assumptions are taken from the distributions of patent value provided in published academic literature, *see* Note 4. To test the robustness of my analysis to changes in these assumptions, I run my analysis under various alternative assumptions about the distribution of patent values that can be found in published research, using four alternative distributions (Vigil-Zhang, Kogan 2019, Barney, Kogan 2020, *see* Notes 6-9). To analyze the first three distributions, I perform three separate adjustments to the standard deviation of the Schankerman distribution, $\sigma_s$. The Schankerman distribution is a lognormal distribution parameterized by mean $\mu_s$ and standard deviation $\sigma_s$. For a lognormal distribution, the coefficient of variation and degree of skewness depend only on $\sigma$, and decreasing $\sigma$ for a given $\mu$ has the effect of lowering the portion of the total value associated with the patents at the high end of the valuation spectrum, *see, e.g.* https://www.itl.nist.gov/div898/handbook/eda/section3/eda3669.html; https://www.sciencedirect.com/topics/mathematics/lognormal-distribution. Accordingly, in my adjustments to the Schankerman distribution, I hold $\mu_s$ constant and adjust $\sigma_s$ to allow for the top patents to hold less of the total value across all similar patents, while the remainder of the patents are able hold more of the total value across all similar patents. To determine which scalar adjustments of $\sigma$ to use for each of the Vigil-Zhang, Kogan 2019, and Barney distributions, I proceed according to the following: first, I simulate patent values from 1,000 lognormal distributions, wherein for each distribution, I scalar adjust the standard deviation of the Schankerman distribution, $\sigma_s$. The scalar adjustments $\alpha$ that I apply range from .001 to 1, in increments of .001. In effect, I simulate values from a lognormal distribution parameterized by $\mu_s$ and $\sigma'$, where $\sigma'$ takes on the following values: $\sigma_s \cdot .001$, $\sigma_s \cdot .002$, $\sigma_s \cdot .003...$, $\sigma_s \cdot .998$, $\sigma_s \cdot .999$, $\sigma_s \cdot 1$. The smaller the scalar adjustment, the relatively less skewed the corresponding lognormal distribution is. Similarly, the higher the scalar adjustment, the relatively more skewed the corresponding lognormal distribution is, with patent values becoming closer to those pertaining to the Schankerman distribution. Next, I calculate cumulative value shares corresponding to each of these 1,000 distributions and retain the values corresponding to the 95th and 99th percentiles. Then, for each of these three alternative distributions (Vigil-Zhang, Kogan 2019, Barney), I compare the corresponding known cumulative shares for the 95th and 99th percentiles and identify the scalar adjustment $\alpha$ of $\sigma_s$ that yields the closest match across that of the 1,000 simulated lognormal distributions, $\alpha^*$. I determine this by identifying the smallest sum of percentage differences between the cumulative shares for the 95th percentile for the simulated distribution and the known alternative distribution and the percentage differences between the cumulative shares for the 99th percentile for the simulated distribution and the known alternative distribution. Once I have determined which scalar adjustment of $\sigma_s$ yields the closest approximation to each of the known alternative distributions ($\alpha^*$), I perform alternative versions of my analysis using patent values simulated from a lognormal distribution parameterized by $\mu_s$ and $\sigma^*$ where $\sigma^* = \sigma_s \cdot \alpha^*$. I refer to these distributions as the Vigil-Zhang-Adjusted Schankerman, the Kogan-Adjusted Schankerman, and the Barney-Adjusted Schankerman. I describe my use of the Kogan 2020 distribution below in Note 9.

6. U.S. patents issued between 1976 and 2006, limited to pharmaceuticals. *See* Vigil, Robert L. and Zhang, Xiao, Apportioning Value in Patent Portfolio License and Sale Agreements (October 19, 2020). Les Nouvelles - Journal of the Licensing Executives Society, Volume LV No. 4, December 2020 (available at https://ssrn.com/abstract=3714864) ("Vigil & Zhang (2020)"), pp. 250-253.

7. U.S. patents issued between 1926 and 2019, limited to pharmaceuticals and those belonging to publicly traded firms. *See* Vigil & Zhang (2020), pp. 247-250.

8. U.S. patents issued in 1986. *See* Vigil & Zhang (2020), p. 244.

9. I am able to recreate this distribution of values from Kogan, Leonid, Dimitris Papanikolaou, Amit Seru, and Noah Stoffman, "Technological Innovation, Resource Allocation, and Growth*." The Quarterly Journal of Economics 132, 2 (March 2017): 665-712 (available at http://hdl.handle.net/1721.1/120536) using a dataset of calculated patent values provided by the authors (available at https://github.com/KPSS2017/Technological-Innovation-Resource-Allocation-and-Growth-Extended-Data). I use this publicly available dataset of patent values for a restricted set of U.S. patents (those belonging to publicly traded firms with issue dates from 1926 to 2020), and merge these patent values to the patents in the Genevant Combined Patent Class Sample to determine the parameters of the corresponding distribution of patent value rights (the "Kogan 2020 distribution"). I then determine the 95th and 99th percentiles of value using this combined dataset and use those parameters to perform another alternative analysis.

10. Complaint, Civil Action No. 22-252-MSG, 02/28/22, ¶ 29.

11. U.S. Patent Nos. 11,141,378, 11,298,320, and 11,318,098 had not issued at the time the Providence agreement was signed on May 11, 2020, but rights to them were implicitly included in the agreement, *see* GENV-00022307 at 313-314. I therefore conservatively include these patents in the Genevant Patent Portfolio as licensed in the Providence agreement, upon which I conduct my Patent Citation Analysis, because U.S. Patent No. 11,141,378 is one of the Patents-in-Suit, and U.S. Patents Nos. 11,298,320 and 11,318,098 are family members of U.S. Patent No. 9,504,651, another Patent-in-Suit. (*See* Note 12 for further explanation of why I include family members of the Patents-in-Suit in this analysis.) The inclusion of these 3 additional patents (but no family members of the other patents included in the Genevant Patent Portfolio as licensed in the Providence agreement) is a conservative measure, as it ensures that the value associated with all of the Patents-in-Suit and their respective family members is accounted for in my analysis without diluting that value by including additional other Genevant Patents that would have been covered by the Providence agreement.

**Exhibit 8**
**Patent Citation Analysis:**
**Relative Value of Providence Agreement Genevant Patent Portfolio Attributable to Patents-in-Suit and Family Members Thereof**
**Using Patent Classes A61K31, A61K9, A61K47, C12N15, A61P35[1]**
**By Patent Value Distribution**

**Notes (continued):**

12. A "Patent Family" is defined as "a collection of patent applications covering the same or similar technical content," where a Simple Patent Family protects "a single invention, by a common inventor… the collection of patents covers one single invention and the technical content is identical." *See* https://asklib.library.hbs.edu/faq/267630. AcclaimIP therefore defines a Simple Patent Family as containing "foreign counterparts, continuations, and divisionals," as well as continuations-in-part if they have the same priority date as the other members of the family. *See* https://help.acclaimip.com/m/acclaimip_help/l/279025-simple-family-field-sfam. To ensure that the value of the inventions disclosed in the Patents-in-Suit is fully reflected in my Patent Citation Analysis, I perform a conservative two-step family adjustment. First, I conservatively include in my analysis all (simple) family members of the Patents-in-Suit (as listed in AcclaimIP) that were not already explicitly licensed in the Providence agreement, *see* Note 3. In the present case, U.S. Patents Nos. 11,298,320 and 11,318,098 are family members of U.S. Patent No. 9,504,651, one of the Patents-in-Suit, but those patents were not explicitly included in the Providence agreement and had not issued as patents at the time that agreement was signed. I therefore conservatively add those patents to the Genevant Patent Portfolio as licensed in the Providence agreement, upon which I perform my Patent Citation Analysis. (As noted above in Note 11, I also conservatively include U.S. Patent No. 11,141,378, one of the Patents-in-Suit that had also not issued at the time the Providence agreement was signed.) I thereby obtain relative patent values for the 42 patents explicitly licensed under the Providence agreement as well as U.S. Patents Nos. 11,141,378, 11,298,320, and 11,318,098. As the second step of my family adjustment, I sum the relative values of both the Patents-in-Suit and their family members to calculate the relative value of the Patents-in-Suit. The logic of this two-step adjustment is straightforward and conservative: by including all family members of the Patents-in-Suit in my analysis and by then summing the relative values of the Patents-in-Suit and all of their family members to obtain my measure of the relative value of the Patents-in-Suit, I ensure that citations to patents disclosing the same invention(s) as the Patents-in-Suit are not left unaccounted for and therefore that the value of the inventions disclosed in the Patents-in-Suit is not understated. Additionally, I conservatively do not apply this family adjustment to the patents licensed under the Providence agreement that are not simple family members of the Patents-in-Suit, as doing so would reduce the relative value assigned to the Patents-in-Suit and their simple family members.

**Sources:**
[A], [F]: Providence Agreement, Exhibit A (GENV-00022307 at 352-402).
[B]-[E], [G]: AcclaimIP Data
[H]-[M]: "PCA Analysis.do"
[12] = SUM([1]:[11])

**HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY**

**q**uantitative **e**conomic **s**olutions, LLC