# EXHIBIT 39

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 22-252-MSG |
| v. | ) ) | **HIGHLY CONFIDENTIAL –** |
| MODERNA, INC. and MODERNATX, INC., | ) ) | **OUTSIDE COUNSEL EYES ONLY** |
| Defendants. | ) | |

**PLAINTIFF GENEVANT SCIENCES GMBH'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS MODERNA, INC. AND MODERNATX, INC.'S SECOND SET OF INTERROGATORIES (NOS. 8–10)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the U.S. District Court for the District of Delaware, Plaintiff Genevant Sciences GmbH ("Genevant"), by undersigned counsel, hereby objects and responds as follows to Defendants Moderna, Inc. and ModernaTX Inc.'s (collectively, "Moderna" or "Defendants") Second Set of Interrogatories (Nos. 8–10).

**GENERAL OBJECTIONS & OBJECTIONS TO DEFINITIONS**

Genevant incorporates the General Objections and Objections to Definitions provided in Plaintiffs' Responses and Objections to Defendants Moderna, Inc. and ModernaTX Inc.'s First Requests for Production. These objections form a part of, and are hereby incorporated into, the response to each and every Interrogatory set forth below. Nothing in those responses, including any failure to recite a specific objection in response to a particular Interrogatory, should be construed as a waiver of any of these General Objections and Objections to Definitions.

1

an identification of all portions of the specification that You contend provide alleged written description support (including all citations to relevant specifications and figures); and (vii) all bases for a contention that any such patent claim is allegedly enabled. Your answer should also include an Identification of the Person(s) most knowledgeable about Your answer and an Identification of all Documents that relate to or support Your answer.

**RESPONSE TO INTERROGATORY NO. 9**

Genevant incorporates its General Objections as though fully set forth herein. Genevant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of the case, to the extent it requests "all factual and legal bases" for Plaintiffs' contentions. Genevant further objects to this Interrogatory to the extent that it calls for a legal conclusion. Specifically, the Interrogatory asks Genevant's counsel to provide their analysis as to validity. Plaintiffs do not bear the burden of proving validity, and Moderna has not established any claim to be invalid by clear and convincing evidence. Genevant will respond as to matters of fact only; Genevant's response shall not be construed as stating or implying any conclusions of law. Genevant further objects to this Interrogatory to the extent it requests information that is publicly available and therefore equally available to Moderna as to Genevant. Genevant further objects to this Interrogatory to the extent it seeks information already in Moderna's possession regarding Moderna's own products and actions. Genevant further objects to this Interrogatory to the extent it seeks information regarding third-party communications or other information not within Genevant's possession, custody, or control. Genevant further objects to this Interrogatory as containing numerous subparts representing discrete requests. For instance, this Interrogatory requests Plaintiffs' contentions with respect to 35 U.S.C. §§ 101, 102, 103, as well as the enablement, written description, and definiteness requirements of 35 U.S.C. § 112, for each of the Patents-in-Suit and "individually for each asserted claim," as well as contentions with respect to each piece of cited Prior Art, rendering the number of discrete subparts demanded by this Interrogatory well in excess of 25 discrete subparts, if not well in excess of 50 discrete

23

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

subparts.  Genevant further objects to this Interrogatory as premature to the extent it implicates the interpretation of the asserted claims prior to the Court's entry of a claim construction order. Genevant further objects to this Interrogatory as premature given that fact discovery has only just begun and expert discovery has yet to begin.  Expert discovery will be provided according to the case schedule.  Genevant further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing specific and General Objections, Genevant provides the following response in view of its ongoing investigation:

## I.      Scope and Content of the Prior Art

### A.      Prior Art Patents and Patent Applications

Moderna has not established that each and every reference cited in its contentions constitutes prior art to the Asserted Patents.  For example, to the extent a reference was published after the priority date of one of the Asserted Patents, that reference does not constitute prior art to that patent.  It is Moderna's burden to establish the prior art status of the references that it cites— for example, the date of publication and public availability of the references that it cites—which it has not done, and Genevant reserves the right to dispute the prior art status of the references cited by Moderna should it come forward with such evidence, including because they were published after the conception and reduction to practice of the inventions claimed in the Asserted Patents. *See, e.g.*, Plaintiffs' Responses to Moderna's Interrogatory No. 1.  Additionally, as Moderna itself acknowledges, *see* Initial Invalidity Contentions at 102, it is relying on numerous references that are assigned to Plaintiffs.  For purposes of the obviousness inquiry, many of those references— particularly those references that Moderna only relies on under § 102(e)—are not properly considered prior art, pursuant to § 103(c).  Genevant intends to establish that, at the time the

24

claimed inventions were made, Moderna's references and the claimed inventions were owned by the same person or subject to an obligation of assignment to the same person.

### B.    Admitted Prior Art

Moderna has not established that any of the statements alleged to be "admitted" prior art, *see, e.g.*, Initial Invalidity Contentions at 30-36, are such.  For example, many of the statements that Moderna cites are characterizations of the "present invention," and as such do not constitute admissions concerning the prior art.  Many of the statements cited by Moderna constitute interpretations of past work by the inventors, rather than descriptions of the content of any publications/patents as would be understood by the POSA, and therefore likewise do not constitute admitted prior art.  Additionally, Moderna simply quotes a laundry list of statements from the specifications of the Asserted Patents, without providing any explanation for how the POSA would have interpreted those statements or how those statements anticipate and/or render obvious the inventions claimed in the Asserted Patents, and Genevant disagrees that any of the statements quoted by Moderna—even if they were to constitute "admitted prior art," which they do not— anticipate and/or render obvious any of the asserted claims.  Additionally, throughout their contentions, Moderna frequently characterizes "admissions" in the specifications of the Asserted Patents.  *E.g.*, Initial Invalidity Contentions at 59 ("the Molar Ratio Patents admit that adjustment across the ranges was merely routine").  Moderna's characterizations are inaccurate and the statements characterized do not constitute admitted prior art, including because many of Moderna's citations relate to discoveries by the inventors and/or interpretations of the art by the inventors, rather than admissions about the content of any prior art.

### C.    Prior Sales, Prior Use, and/or Public Use

Moderna has failed to establish that any public use or sale qualifies as prior art to any of the Asserted Patents, or that any of the Asserted Patents are invalid based on the prior sale or prior

25

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

public use.  *See* Initial Invalidity Contentions at 36-40.[1]  While Moderna's case citations imply that it intends to rely on prior public uses or sales to prove obviousness, *see* Initial Invalidity Contentions at 36, Moderna does not attempt to address the correct standard under 35 U.S.C. § 102(b), and has thus not proven any prior sale or public use.  Moderna does not show any prior sale or public use more than one year before the effective filing date of the Lipid Formulation Patents or the '651 patent.

Instead, Moderna relies exclusively and selectively on statements from Tekmira and Protiva's June 30, 2011 Amended Complaint in the Tekmira Trade Secrets Case.  *See* Initial Invalidity Contentions at 38-40.  Notably, none of Moderna's contentions appear to be relevant to the '651 patent and thus Moderna has not shown any prior public use or sale applicable to that patent.  In addition, the allegations in Tekmira and Protiva's June 30, 2011 Amended Complaint in the Tekmira Trade Secrets case fail to establish (and in fact undermine) any prior public use or sale, much less one occurring more than a year before the relevant dates of the Asserted Patents.

Moderna's contentions regarding unauthorized disclosures by Alnylam to third parties such as the Patent Office and Takeda are similarly insufficient to show that these disclosures qualify as prior art, much less invalidating public uses or sales.  Moderna, for instance, has not shown how the mere fact of an unauthorized disclosure establishes a public use or sale that places the claimed features in the possession of the public.  Moderna also does not establish that the timing of any of these unauthorized disclosures qualify them as prior art or invalidating public uses or sales.  Similarly, Moderna references filing of provisional applications dated less than one year before

---

[1] Moderna's contentions indicate that it considers any "prior use" to qualify as prior art, regardless of whether the use qualifies as a "public use" under 35 U.S.C. § 102(b).  Initial Invalidity Contentions at 36, 39.  With respect to any such "prior use," Moderna has not established that such use qualifies as a "public use" and thus cannot rely on these non-public uses as prior art.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Plaintiffs' filing of *inter alia* the '069 patent, *see* Initial Invalidity Contentions at 38, but these filings, which Moderna further has not shown to be publicly available before any critical date, are not "more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b). Moderna thus has not established any prior art based on a prior public use or sale.

### D.    Prior Invention and Derivation

Moderna has failed to identify prior invention or derivation related to the Asserted Patents. *See* Initial Invalidity Contentions at 40-41. Genevant reserves the right to dispute any such allegations, should Moderna raise them in the future.

### II.    Priority Dates

Moderna contends that the '651 patent is not entitled to claim priority to its provisional application in view of Moderna's § 112 arguments related to the term "mRNA." Moderna's arguments are addressed below. *Infra* Section V.

Moderna alleges that certain "exemplary limitations in Asserted Claims of the Molar Ratio Patents" are not entitled to claim priority to provisional application 61/045,228. For example, Moderna contends that certain particle-size limitations are not supported, but the provisional contains numerous disclosures related to particle size. *E.g.*, '228 Provisional ¶¶ 20, 75, 134, 179, 183, 187, 188, 190, 233, 237, 241, 247, 251, 260, 273. Moderna contends that various limitations related to the phospholipid and cholesterol content are not supported, but the provisional contains numerous disclosures related to the non-cationic lipid, as well as phospholipid and cholesterol. *E.g.*, '228 Provisional ¶¶ 10, 15-16, 22, 146-149, 233, 237. Moderna contends that a claim directed to "the nucleic acid-lipid particle comprises about 55 mol % cationic lipid, about 11 mol % phospholipid, about 33 mol % cholesterol or a derivative thereof, and about 1.6 mol % PEG-lipid conjugate" is not supported, but the general disclosures of the provisional related to concentrations

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

of cationic lipid, phospholipid, cholesterol, and PEG-lipid conjugates, as well as the specific examples disclosed in the provisional, support this claim.

Moderna alleges that the '378 patent may not claim priority to the provisional because "claim 1 claims 'a cationic lipid having a protonatable tertiary amine,' absent a mole % range." Initial Invalidity Contentions at 44. When read as a whole, the claim is supported by the disclosures of the provisional and the specific examples, including the disclosures related both to the non-cationic lipid and the cationic lipid. *E.g.*, '228 Provisional ¶¶ 10, 14-16, 22, 139, 146-149, 231, 233, 237.

### III. Anticipation and Obviousness

Moderna's arguments about anticipation, obviousness, and obviousness-type double patenting are highly overlapping. To the extent Genevant's responses in one section apply to Moderna's arguments in another section, those responses are hereby incorporated by reference.

Moderna's anticipation contentions are deficient and fail to reasonably apprise Genevant of Moderna's position. Moderna provides a laundry list of references that allegedly anticipate the Asserted Claims, without providing any description for how those references purportedly anticipate any claims. *E.g.*, Initial Invalidity Contentions at 47, 56-57. Moderna's anticipation allegations are deficient, particularly because its references contain various disclosures and embodiments, and Moderna fails to identify which of those disclosures and/or embodiments purportedly anticipate any of the Asserted Claims. Instead, Moderna provides a claim chart with "Exemplary Disclosures" from those references in Exhibits A and B of their contentions. However, Moderna fails to provide any explanation for how those disclosures allegedly anticipate (or render obvious) the asserted claims. Moreover, given that they are labeled as "exemplary," it is apparent that Moderna believes that there may be other, undisclosed teachings in those references that allegedly anticipate (or render obvious) the Asserted Claims—Moderna does not

28

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

explain why it has failed to identify those teachings with particularity, and Moderna's failure to do so is prejudicial to Genevant. Moreover, nowhere in its contentions does Moderna explain how any of the anticipation references that it cites disclose the elements of the Asserted Claims as arranged in those claims. To the contrary, Moderna points to disparate teachings and embodiments in the references that it cites, many of which are disconnected from each other and/or incompatible (for example, disclosures related to embodiments made by different processes or using different formulations). Moderna has failed to explain how the disclosures that it cites are sufficiently connected to anticipate any of the Asserted Claims.

Moderna's obviousness contentions are similarly lacking. Moderna fails to identify with particularity any combination of references that allegedly render the Asserted Claims obvious, rendering Moderna's contentions facially deficient. The multitude of references that Moderna relies on contain conflicting and incompatible teachings, and Moderna fails to explain why the POSA would have been motivated to follow the references or the teachings within those references cited by Moderna, while ignoring other references or teachings within references that contravene Moderna's arguments. Moderna fails to address the claims as a whole, instead making arguments about individual limitations. Moderna's discussion of references is tainted by hindsight, and Moderna has engaged in improper picking-and-choosing of its references and the teachings within those references guided by the inventions themselves, ignoring references and teachings within references that would have taught the POSA away from the claimed inventions. Moderna has failed to establish that the POSA would have been motivated to practice the Asserted Claims, and Moderna has also failed to establish that the POSA would have had a reasonable expectation of success of achieving the inventions recited in the Asserted Claims.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Moderna's positions are also in violation of the estoppel that attaches in light of its prior proceedings before the Patent Trial and Appeal Board.

### A.    The '651 Patent

Moderna fails to identify any reference that anticipates the Asserted Claims of the '651 patent.  As noted above, Moderna's contentions fail to provide any description of how any single reference discloses all of the limitations as they are arranged in claim 1 of the '651 patent, much less how any single reference discloses all of the limitations of the asserted dependent claims. Moderna's anticipation allegations related to the '651 patent involve improper picking-and-choosing from unconnected portions of its references.

Moderna has not established that any of the embodiments on which it relies with respect to anticipation of the '651 patent meets each and every limitation of the '651 patent as arranged in the claims.  For example, Moderna appears to rely on disclosures of embodiments that do not contain PEG.  To the extent that the embodiments and/or disclosures that Moderna alleges anticipate the '651 patent do not include the lipid elements recited in claim 1, Moderna has failed to establish that those reference anticipate and/or render obvious any of the Asserted Claims of the '651 patent.

Certain of the Asserted Claims of the '651 patent, such as claims 2, 3, 6, and 7, require particular amphipathic lipids or particular phospholipids.  Moderna's contentions with respect to these claims are conclusory.  *E.g.*, Initial Invalidity Contentions, Exhibit A at 90-91.  Moderna fails to map the particular disclosures in its laundry list of allegedly anticipatory references to the particular lipids recited in, for example, claims 3 and 7, and Moderna has failed to establish that the references that it cites anticipate and/or render obvious the claimed amphipathic lipids/phospholipids, including in combination with the other required elements recited by the claims.  To the extent any of the disclosures and/or embodiments that Moderna cites do not include

30

the claimed amphipathic lipids/phospholipids, those disclosures and/or embodiments do not anticipate and/or render obvious those claims.

Certain of the Asserted Claims of the '651 patent, such as claims 4, 5, 6, and 7, require a sterol or cholesterol.  In many of the allegedly anticipatory references it cites, Moderna fails to identify any particular embodiments containing a sterol or cholesterol.  *See* Initial Invalidity Contentions, Exhibit A at 92-103.  Additionally, many of the teachings and embodiments cited elsewhere in its contentions do not contain a sterol or cholesterol.  *See* Initial Invalidity Contentions, Exhibit A at 1-89.  Moderna fails to explain how the references that it cites disclose all the required elements, including a sterol or cholesterol, as arranged in the claims.  Particularly to the extent that Moderna relies on disparate, generic disclosures about the components of lipid vesicles—such as about sterol or cholesterol—Moderna has failed to establish that those combinations of elements would yield the other required elements of the claims, such as the requirements related to percent encapsulation.  Indeed, many of the embodiments and disclosures that Moderna relies on with respect to percent encapsulation do not contain a sterol or cholesterol. *See* Initial Invalidity Contentions, Exhibit A at 75-89.  Moderna fails to explain why the POSA would have been motivated to use a sterol or cholesterol, in combination with the other elements of the claims, in view of the disclosures in its cited references.

Claim 11 of the '651 patent requires that "the cationic lipid only carries a positive charge at below physiological pH."  Moderna provides no description as to how any of its allegedly anticipatory references satisfy this claim limitation.  Initial Invalidity Contentions, Exhibit A at 115-119.  Many of the teachings and embodiments that Moderna relies on elsewhere in its contentions do not contain a cationic lipid that only carries a positive charge at below physiological pH.  *See* Initial Invalidity Contentions, Exhibit A at 17-31.  Moderna fails to explain how the

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

references that it cites disclose all the required elements, including a cationic lipid that only carries a positive charge at below physiological pH, as arranged in the claims. Many of the embodiments and disclosures that Moderna relies on with respect to percent encapsulation do not contain a cationic lipid that only carries a positive charge at below physiological pH. *See* Initial Invalidity Contentions, Exhibit A at 75-89. Moderna fails to explain why the POSA would have been motivated to use a cationic lipid that only carries a positive charge at below physiological pH, in combination with the other elements of the claims, in view of the disclosures in the references it cites that do not contain a cationic lipid that only carries a positive charge at below physiological pH.

Claim 1 of the '651 patent requires "messenger RNA (mRNA), wherein at least 70% of the mRNA in the formulation is fully encapsulated in the lipid vesicles." Moderna fails to identify any allegedly anticipatory reference that discloses any embodiment with mRNA, much less an embodiment in which the mRNA satisfies the '651 patent's encapsulation limitations. *See* Initial Invalidity Contentions, Exhibit A at 67-89. In numerous of the disclosures and embodiments that Moderna cites, the encapsulation percentage is either not reported or is reported to be less than one or more of the encapsulation limitations in the '651 patent. *See* Initial Invalidity Contentions, Exhibit A at 75-89. Moreover, to the extent that the references that Moderna does cite relate to nucleic acid other than mRNA, Moderna fails to establish that the techniques described in those references would successfully encapsulate mRNA, with the required encapsulation efficiencies. Genevant incorporates by reference the file history of the application giving rise to the '651 patent, including the experimental evidence demonstrating that the techniques described in Moderna's references do not result in the encapsulation percentages recited in the claims of the '651 patent. Moderna has failed to demonstrate that the references that it cites would have enabled a person

32

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

skilled in the art to practice the claimed inventions, including to successfully obtain the claimed mRNA encapsulation percentages.

Claims 10 and 13 recite limitations related to the diameter of the lipid vesicles. Moderna fails to identify any embodiments with all of the claimed elements, including mRNA, having the claimed diameters. Moderna also fails to establish that the particular disclosures or embodiments that it cites related to this limitation also exhibit the claimed encapsulation percentage. Moreover, the references that Moderna cites recite values outside the claim limitations. Moderna has failed to demonstrate that the references that it cites would have enabled the POSA to practice the claimed inventions, including to successfully obtain the claimed diameters.

In view of the above deficiencies, Moderna has failed to establish that the prior art disclosed all of the elements recited in the claims of the '651 patent and has thus failed to establish that those claims would have been obvious. Additionally, Moderna has failed to identify any combinations of references that allegedly render obvious the claims of the '651 patent. Moderna has likewise failed to identify combinations of particular disclosures within the references that it cites that allegedly render obvious the claims of the '651 patent. Instead, Moderna simply states that the claims of the '651 patent "are rendered obvious by the anticipatory references above and in the attached claim charts in **Exhibit A**, either alone, based on the knowledge of a POSA, or in combination with one of more of the references identified below in bold." Initial Invalidity Contentions at 48. Moderna's allegations—which fail to identify any specific combination of references, or teachings within those references, that supposedly render obvious the claims of the '651 patent—are inadequate and fail to apprise Genevant of Moderna's obviousness theories. Given that Moderna has failed to identify even a single obviousness combination that purportedly renders obvious the claims of the '651 patent, Moderna has failed to establish a *prima facie* case

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

of obviousness with respect to those claims. Moreover, Moderna has failed to identify any motivation for combining the dozens of references that it cites. Moderna's allegations related to motivation to combine are particularly inadequate because the references that Moderna cites provide different and incompatible teachings. Moderna does not explain how or why the POSA would have been motivated to combine those disparate teachings, and the POSA would not have been so motivated. Moderna has also failed to identify any motivation that the POSA would purportedly have had to modify the prior art in any way to arrive at the claimed invention. Moderna has failed to explain why the POSA would have been motivated to practice the claims as a whole. Moderna also ignores the prior art as a whole, including with respect to other lipid components and combinations that would have been available to the POSA. Moderna has also failed to provide any explanation as to why the POSA would have had a reasonable expectation of success in practicing the claimed inventions, including the limitations related to mRNA encapsulation and diameter. Moderna has failed to provide any explanation as to why the POSA would have had a reasonable expectation of success of practicing the claims as a whole.

With respect to the mRNA encapsulation limitations in the claims of the '651 patent, Moderna suggests that those limitations "would have been an obvious modification" because the prior art "taught to wash away free nucleic acid" and/or "use a nuclease to remove free nucleic acid." Initial Invalidity Contentions at 48. Besides a generic reference to using a "nuclease," Moderna fails to identify how the POSA purportedly would "remove free nucleic acid" in compositions of the invention. Moderna has failed to establish that the POSA would have had a reasonable expectation of success in obtaining the claimed mRNA encapsulation percentages using any methods that it identifies, including in combination with the other claim elements. Moreover, Moderna has failed to establish that the POSA would have been motivated to attempt to remove

34
**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

mRNA in the way that it suggests, including by using a nuclease, and the POSA would have had reason not to add a nuclease to the formulations of the invention.  Moreover, Moderna fails to explain why the POSA would have engaged in the mRNA-removal techniques that it identifies.

Moderna contends that its references "disclose 'mRNA.'"  Initial Invalidity Contentions at 49.  Moderna, however, fails to cite any allegedly anticipatory formulations comprising mRNA, and thus likewise fails to cite any formulations containing mRNA in combination with the other claim elements.  To the extent Moderna's references disclose mRNA to any extent, Moderna fails to explain why the POSA would have selected mRNA in combination with the other claimed elements.  Moderna fails to explain how any of the references it cites disclose all of the limitations as they are arranged in the claims of the '651 patent, including with respect to mRNA and the other elements of the claims of the '651 patent.

Moderna contends that the POSA would have been "motivated to try to encapsulate mRNA."  Initial Invalidity Contentions at 49.  However, Moderna has failed to cite any examples of such motivation and the POSA would not have had any motivation to modify the prior art in the manner Moderna suggests.  Moreover, to the extent the POSA would have been motivated to work with mRNA, Moderna fails to identify a motivation for pursuing formulations with the other claimed characteristics.  Moderna has also failed to establish that the POSA would have had a reasonable expectation of success of achieving the claimed characteristics with mRNA.

With respect to claims 3-7, Moderna contends that the recited lipid elements are "naturally occurring in cell membranes" and thus "more likely to be acceptable to the FDA during approval process."  Initial Invalidity Contentions at 50-51.  As described above, Moderna has failed to establish that the references it cites include the particular lipids listed in claims 3-7 of the '651 patent.  To the extent Moderna's references do not include those lipids, Moderna provides no

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the lipid combinations of the recited claims.  Moderna also fails to explain why the criterion it sets forth (*i.e.*, that the lipids are naturally occurring in cell membranes) would have motivated the POSA to use them to arrive at formulations of the invention.  Moderna also fails to articulate any reason why the POSA would have had a reasonable expectation of success in achieving the claimed inventions with the particular lipids recited in these claims.

With respect to claims 8 and 9, Moderna argues that liposomes and lipid-nucleic acid particles were "known" systems "of encapsulating active substances."  Initial Invalidity Contentions at 51-52.  Moderna provides no explanation, however, of how this would have provided any motivation to the POSA to use liposomes in combination with the other elements of the claim.  Moderna does not offer any explanation of why the POSA would have reasonably expected success in practicing the claims with liposomes.  Likewise, Moderna does not provide any explanation as to why the POSA would have been motivated to use lipid-nucleic acid particles with the other elements of the claims.  Moderna does not offer any explanation of why the POSA would have reasonably expected success in practicing the claims with lipid-nucleic acid particles.

With respect to claims 10 and 12, Moderna contends that the POSA would have been motivated to use vesicles of less than 100 nm.  Initial Invalidity Contentions at 52.  Moderna fails to explain why the POSA would have been specifically motivated to arrive at a vesicle diameter of less than 100 nm in light of the prior art as a whole, including its own references, and Moderna ignores the potential drawbacks and difficulties associated with obtaining vesicles less than 100 nm in diameter.  Moderna also fails to establish that the POSA would have had a reasonable expectation of success in obtaining vesicles with the claimed diameters, including in conjunction with the other claim limitations.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

With respect to claim 11, Moderna contends that "each of the anticipatory references teaches various known cationic lipids." Initial Invalidity Contentions at 52. However, as explained above, many of Moderna's purportedly anticipatory references do not disclose a cationic lipid that "only carries a positive charge at below physiological pH." Moreover, Moderna fails to offer any explanation for why the POSA would have had a motivation or reasonable expectation of success in obtaining the claimed subject matter when using a cationic lipid that only carries a positive charge at below physiological pH, particularly in light of the prior art as a whole.

Moderna's obviousness arguments also fail because they do not account for unexpected results, which evidence the non-obviousness of the claims, including the excellent physicochemical and biological properties of the claimed formulations. Additionally, other objective indicia further rebut any case of obviousness including:

- A long-felt but unmet need, including for formulations having the claimed encapsulation percentages.

- Failure of others, including to develop formulations exhibiting the claimed encapsulation percentages.

- Skepticism in the industry.

- Commercial success of products embodying the '651 patent.

- Copying.

- Industry praise.

- Licensing of the '651 patent.

### B.      The '069, '435, '668, and '378 Patents (Lipid Formulation Patents)

Moderna's arguments on the Lipid Formulation Patents are a violation of the estoppel that attached in light of its prior proceedings before the Patent Trial and Appeal Board. Moderna is

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

estopped from making the invalidity arguments that it raises and citing the references that it includes in its invalidity contentions.

Moderna fails to identify any reference that anticipates the Asserted Claims of the Lipid Formulation Patents.  It is axiomatic that to anticipate, *every element and limitation* of the claimed invention must be found in a *single* prior art reference, arranged as in the claim.  *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed. Cir. 2001).  Moderna's contentions fail to provide any description of how any single reference discloses all of the limitations of claim 1 of any of the Lipid Formulation Patents, much less any of the dependent claims. Moderna's anticipation theories also impermissibly rely on multiple pieces of prior art. Moderna's anticipation allegations related to the Lipid Formulation Patents involve improper picking-and-choosing from unconnected portions of its references.  Anticipation requires that a reference *clearly and unequivocally* disclose the claimed invention without any need for picking, choosing, and combining various disclosures not directly related to each other in the cited reference.  *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008).

Moderna has not established that any of the embodiments on which it relies with respect to anticipation of the Lipid Formulation Patents meets each and every limitation of the Lipid Formulation Patents as arranged in the claims.  For example, claim 1 of the '435 patent recites a conjugated lipid and claims 9 and 10 of that patent recite compositions that specifically contain PEG.  Moderna appears to rely on disclosures of embodiments that do not contain a conjugated lipid, such as those in Felgner 1993 and Bennett 1995.  *E.g.*, Initial Invalidity Contentions at 61. To the extent that the embodiments and/or disclosures that Moderna alleges anticipate the Lipid Formulation Patents do not include the conjugated lipid elements recited, Moderna has failed to

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

establish that those references anticipate and/or render obvious any of the Asserted Claims of the Lipid Formulation Patents.

Certain of the Asserted Claims of the Lipid Formulation Patents, such as claims 7 and 8 of the '435 patent, require cholesterol. In many of the allegedly anticipatory references it cites, Moderna fails to identify any particular embodiments containing cholesterol, including WO'152. *See* Initial Invalidity Contentions at 63. Additionally, many of the teachings and embodiments cited elsewhere in its contentions do not contain a cholesterol.

Moderna claims that the Lipid Formulation Patents are anticipated because references it cites disclose overlapping ranges for the lipid components recited in the Asserted Claims. *See* Initial Invalidity Contentions at 57-60. As described below, some of the ranges cited by Moderna do not encompass the claimed ranges, and Moderna has failed to establish that such non-encompassing ranges can anticipate the claimed ranges. Moreover, even where the prior art fully encompasses the claimed range but there is considerable difference between the claimed range and the range in the prior art, the reference is not anticipatory.

Various claims of the Lipid Formulation Patents require a cationic lipid in a particular molar ratio. Moderna provides a laundry list of references and concludes that these references recite a range of about 2% to about 60% of cationic lipids. *See* Initial Invalidity Contentions at 58. The POSA would not consider the broad ranges in the references relied on by Moderna as describing the claimed ranges with sufficient specificity to render them anticipated.

Various claims of the Lipid Formulation Patents also require a non-cationic lipid in a particular molar ratio. Moderna provides a laundry list of references and concludes that these references recite a range of about 5% to about 90% of non-cationic lipids. *See* Initial Invalidity Contentions at 58. The POSA would not consider the broad ranges in the references relied on by

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Moderna as describing the claimed ranges with sufficient specificity to render them anticipated. Moreover, references cited by Moderna, including Maclachlan '189, disclose more preferred ranges for the non-cationic lipids that do not overlap with the claimed range. Further, various claims of the Lipid Formulation Patents require specific amounts of phospholipid and cholesterol. The POSA would not consider the broad ranges in the references relied on by Moderna as describing the claimed ranges with sufficient specificity to render them anticipated.

Various claims of the Lipid Formulation Patents also require a conjugated lipid in a particular molar ratio. Moderna provides a laundry list of references and concludes that these references recite a range of about 1% to about 20% of conjugated lipid. *See* Initial Invalidity Contentions at 58. The POSA would not consider the broad ranges in the references relied on by Moderna as describing the claimed ranges with sufficient specificity to render them anticipated.

In view of the above deficiencies, Moderna has failed to establish that the prior art disclosed all of the elements recited in the claims of the Lipid Formulation Patents and has thus failed to establish that those claims would have been obvious. Additionally, Moderna has failed to identify any combinations of references that allegedly render obvious the claims of the Lipid Formulation Patents.

Moderna has likewise failed to identify combinations of particular disclosures within the references that it cites that allegedly render obvious the claims of the Lipid Formulation Patents. Instead, Moderna simply states that the claims of the Lipid Formulation Patents "are rendered obvious by the anticipatory references above and in the attached claim charts in **Exhibit B**, either alone, based on the knowledge of a POSA, or in combination with one of more of the references identified below in bold." Initial Invalidity Contentions at 60. Given that Moderna has failed to identify even a single obviousness combination that purportedly renders obvious the claims of

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

the Lipid Formulation Patents, Moderna has failed to establish a *prima facie* case of obviousness with respect to those claims.  Moreover, Moderna has failed to identify any motivation for combining the dozens of references that it cites, instead stating in conclusory fashion that the POSA "would have been motivated to combine each reference in such a way to reach the alleged invention and would have a reasonable expectation of success in doing so."  Initial Invalidity Contentions at 60.  Moderna has also failed to provide any explanation as to why the POSA would have had a reasonable expectation of success in practicing the claimed inventions.  To the extent that any of Moderna's allegations could be construed to relate to reasonable expectation of success, *see* Initial Invalidity Contentions at 60-90, those allegations relate only to individual claim elements, and Moderna has failed to provide any explanation as to why the POSA would have had a reasonable expectation of success of practicing the claims as a whole.

Moderna argues that the POSA would have been motivated to "use a four-lipid system comprising a cationic lipid, a cholesterol, a phospholipid, and a conjugated lipid, which had been known in the art long before the Lipid Formulation Patents."  Initial Invalidity Contentions at 60.  Moderna's conclusory assertion relies on unwarranted and unreasonable assumptions of where the POSA would begin in view of the prior art's teachings.

Moderna argues that "[w]here a claimed range overlaps with a range disclosed in the prior art, there is a presumption of obviousness."  Initial Invalidity Contentions at 60 (citing *Ormco Corp. v. Align Tech., Inc.*, 463 F. 3d 1299, 1311 (Fed. Cir. 2006)).  With respect to the references cited by Moderna, however, routine optimization is not applicable, including because of the breadth of the ranges disclosed and the nature of the technology at-issue.  Moderna argues that adjusting the amount of the various lipid components in the particle would have been a matter of "routine optimization."  Initial Invalidity Contentions at 59.  The POSA would not

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

believe that it is, and Moderna cites no evidence to support this proposition in light of the claims and prior art as a whole.

The claims of the Lipid Formulation Patents require particular lipid components, in particular molar ratios. As discussed above, Moderna's overlapping ranges argument relies on references that do not disclose an overlapping range for one or more of the claimed components, including WO '152.

Moderna contends that the POSA "would be motivated to pursue a composition comprising 43-50 mol% cationic lipid or between 43-65 mol%." Initial Invalidity Contentions at 63. In this vein, Moderna argues that the POSA would have chosen a starting composition recited in one of its prior art references and then increased the percentage of cationic lipid upward to reach the claimed range. Moderna does not explain how or why the POSA would have chosen any particular composition from its dozens of references as the starting point, much less that there would be a motivation or reasonable expectation of success of arriving at the claimed compositions.

Moderna argues a POSA would be "motivated to decrease mol % peg to 2 mol% or lower." Initial Invalidity Contentions at 66. Moderna asserts, once again without justifying how or why the POSA would have chosen any particular composition as the starting point, that the POSA would be motivated to optimize the molar ratio of the conjugated lipid component downward from that disclosed in its references. Initial Invalidity Contentions at 66. The POSA would have understood that there were drawbacks to the adjustments proposed by Moderna, and the POSA would not have been motivated to make the modifications that Moderna posits.

Moderna has likewise failed to identify combinations of particular disclosures within the references that it cites that allegedly render obvious dependent claims of the Lipid Formulation

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Patents.  Certain of the Asserted Claims of the Lipid Formulation Patents recite particular lipid:nucleic acid mass ratios.  To the extent Moderna's references do not include those mass ratios, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the mass ratios of the recited claims.  Moderna fails to sufficiently justify why the POSA would have had any motivation to select the recited mass ratios, or modify the prior art in the manner Moderna suggests.  Further, Moderna fails to explain why the POSA would have had a reasonable expectation of success in obtaining the claimed mass ratios, including in combination with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents recite nucleic acid-lipid particles of a particular median diameter.  To the extent Moderna's references do not include those diameters, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the diameters of the recited claims.  Moderna fails to sufficiently justify why the POSA would have had any motivation to select the recited diameters, or modify the prior art in the manner Moderna suggests.  Further, Moderna fails to explain why the POSA would have had a reasonable expectation of success in obtaining the claimed diameters, including in combination with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents require a pharmaceutically acceptable carrier.  To the extent Moderna's references do not include a pharmaceutically acceptable carrier, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the inclusion of a pharmaceutically acceptable carrier as in the recited claims.  Moderna fails to sufficiently justify why the POSA would have had any motivation to include a pharmaceutically acceptable carrier, or modify the prior art in the manner Moderna suggests.  Further, Moderna fails to explain why

43

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

the POSA would have had a reasonable expectation of success in combining the other recited elements with a pharmaceutically acceptable carrier as recited in the Asserted Claims.

Certain of the Asserted Claims of the Lipid Formulation Patents recite a cationic lipid having a protonatable tertiary amine. To the extent Moderna's references do not include a cationic lipid having a protonatable tertiary amine, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue a cationic lipid having a protonatable tertiary amine of the recited claims. Moderna fails to sufficiently justify why the POSA would have had any motivation to select the recited cationic lipid, or modify the prior art in the manner Moderna suggests. Further, Moderna fails to explain why the POSA would have had a reasonable expectation of success in combining a cationic lipid having a protonatable tertiary amine with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents recite the use of "dipalmitoylphosphatidylcholine (DPPC), distearoylphosphatidylcholine (DSPC), or a mixture thereof" in the lipid formulation. To the extent Moderna's references do not include these ingredients, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the ingredients of the recited claims. Moderna fails to sufficiently justify why the POSA would have had any motivation to select these ingredients, or modify the prior art in the manner Moderna suggests. Further, Moderna fails to explain why the POSA would have had a reasonable expectation of using these ingredients, including in combination with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents recite the use of polyethyleneglycol (PEG), and specifically a PEG-diacylglycerol (PEG-DAG) conjugate or a PEG-dialkyloxypropyl (PEG-DAA) conjugate or a mixture thereof in the lipid formulation.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Other dependent claims require that the PEG element have a particular molecular weight or group.  To the extent Moderna's references do not include these ingredients, with the recited characteristics, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue these ingredients, with the recited characteristics, of the recited claims.  Moderna fails to sufficiently justify why the POSA would have had any motivation to select these ingredients, with the recited characteristics, or modify the prior art in the manner Moderna suggests.  Further, Moderna fails to explain why the POSA would have had a reasonable expectation of using these ingredients, with the recited characteristics, including in combination with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents recite nucleic acid-lipid particles that are fully encapsulated.  To the extent Moderna's references do not include this feature, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue particles that are fully encapsulated.  Moderna fails to sufficiently justify why the POSA would have had any motivation to modify the prior art in the manner Moderna suggests.  Further, Moderna fails to explain why the POSA would have had a reasonable expectation of success in obtaining this feature, including in combination with the other claim elements.

Certain of the Asserted Claims of the Lipid Formulation Patents recite the use of mRNA. Moderna, however, fails to cite any formulations containing mRNA in combination with the other claim elements.  To the extent Moderna's references disclose mRNA to any extent (and many of them do not), Moderna fails to explain why the POSA would have selected mRNA in combination with the other claimed elements.  Moderna fails to sufficiently justify why the

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

POSA would have had any motivation to select mRNA or modify the prior art in the manner Moderna suggests.

Certain of the Asserted Claims of the Lipid Formulation Patents recite particular methods comprising particular steps, including contacting the cell with a nucleic acid-lipid particle. To the extent Moderna's references do not include this method comprising this step, Moderna provides no explanation for why the POSA would have been motivated to ignore those disclosures and instead pursue the recited method containing the recited step. Moderna fails to sufficiently justify why the POSA would have had any motivation to modify the prior art in the manner Moderna suggests. Further, Moderna fails to explain why the POSA would have had a reasonable expectation of success in choosing the method with the recited step, including in combination with the other claim elements.

Moderna's obviousness arguments also fail because they do not account for unexpected results, which evidence the non-obviousness of the claims. For example, the claimed nucleic acid-lipid particles recited in the Lipid Formulation Patents are surprisingly non-toxic, non-immunogenic, and more potent and efficacious than prior art compositions. These unexpected results are different in kind. Additionally, other objective indicia further rebut any case of obviousness including:

- A long-felt but unmet need, including for particles having the benefits of those described and claimed in the Lipid Formulation Patents.

- Failure of others, including to develop particles having the advantageous properties as those described and claimed in the Lipid Formulation Patents.

- Skepticism in the industry.

- Commercial success of products embodying the Lipid Formulation Patents.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

- Copying.

- Industry praise.

- Licensing of the Lipid Formulation Patents.

Moderna contends that simultaneous invention is indicative of obviousness. Initial Invalidity Contentions at 100. Moderna has not established simultaneous invention. Moderna has not established that others developed the claimed subject matter simultaneous with the inventors of the Lipid Formulation Patents.

Further, multiple of the anticipation and obviousness references that Moderna cites, including, for example, Bennett 1995, Chen '554, Maclachlan '189, and Zimmermann 2006 were previously presented to the PTAB in challenging the validity of some of the Lipid Formulation patents, which strengthens the presumption of validity over those references. Genevant hereby incorporates by reference Patent Owner's Response as well as the other filings filed in *Moderna Therapeutics, Inc., v. Arbutus Biopharma Corporation*, IPR2019-00554; *Moderna Therapeutics, Inc., v. Protiva Biotherapeutics, Inc.*, IPR2018-00680; and *Moderna Therapeutics, Inc., v. Protiva Biotherapeutics, Inc.*, IPR2018-00739.

## IV.    Obviousness-Type Double Patenting

As noted above, Moderna's obviousness-type double patenting ("OTDP") arguments substantially overlap with its anticipation and obviousness arguments, and Genevant incorporates by reference its contentions above with respect to anticipation and obviousness. Moreover, to the extent that Moderna purports to allege that some of the Asserted Claims are invalid for OTDP, its allegations are entirely conclusory and consist principally of listing two claims in comparison, without any mapping of particular limitations, much less an explanation of how the claims of the reference patents map onto (or otherwise render obvious) the Asserted Claims. Moderna's deficient contentions fail to reasonably apprise Genevant of Moderna's contentions. Additionally,

47

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

Moderna has failed to establish that any of the purported reference patents are proper comparators for OTDP. For example, Moderna has not made allegations, much less established, common ownership between the reference patents and the patents-at-issue, and Moderna has not otherwise established that any of the purported reference patents are properly considered pursuant to OTDP. Moderna has likewise not made any allegations related to the purported expiration dates of the reference patents. As such, Moderna has failed to carry its burden with respect to its OTDP allegations.

### 1.     The '651 Patent

The arguments that Moderna appears to be making with respect to OTDP are similar to the arguments that it made regarding anticipation and obviousness and rely on many of the same references. Moderna's OTDP arguments thus fail for the same reasons discussed above with respect to anticipation and obviousness.

Additionally, to the extent Genevant can understand Moderna's OTDP contentions, they fail for additional reasons. The OTDP reference claims that Moderna has cited do not disclose all of the elements of the challenged claim.

For example, many of the reference claims cited by Moderna fail to disclose an amphipathic lipid, a phospholipid, or one of the particular phospholipids of claim 7, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include one of those elements in those claims, or why the POSA would have had a reasonable expectation of success of achieving the claim elements (including percent encapsulation) when incorporating those additional elements.

A number of the reference claims cited by Moderna fail to disclose a polyethyleneglycol (PEG)-lipid, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a polyethyleneglycol (PEG)-lipid in those claims, or why the POSA would

48

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

have had a reasonable expectation of success of achieving the claim elements (including percent encapsulation) when incorporating a polyethyleneglycol (PEG)-lipid.

Many of the reference claims cited by Moderna fail to disclose a sterol or cholesterol, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a sterol or cholesterol in those claims, or why the POSA would have had a reasonable expectation of success of achieving the claim elements (including percent encapsulation) when incorporating a sterol or cholesterol.

None of the reference claims cited by Moderna recite "mRNA" or that 70% of the mRNA in the formulation is fully encapsulated in the lipid vesicles. Moderna fails to contend (much less establish) why the POSA would have been motivated to include mRNA in those claims or why the POSA would have had a reasonable expectation of success of achieving the claim elements (including percent encapsulation) when incorporating mRNA.

Most of the reference claims cited by Moderna fail to disclose any method of encapsulating the nucleic acid. The reference claims that Moderna cites likewise fail to identify any other method for achieving the claimed encapsulation percentage. Moreover, to the extent the reference claims that Moderna cites do include a particular encapsulation method, Moderna fails to establish that the POSA would have had a reasonable expectation of success of achieving the claimed percent encapsulation with the formulations set forth in the '651 patent, including with mRNA. Moderna likewise has failed to demonstrate that the reference claims that it relies on would enable the POSA to achieve the claimed formulations, including with the claimed encapsulation percentage. The experiments discussed in the prosecution history of the '651 patent indicate that the POSA would not have had a reasonable expectation of achieving the claimed encapsulation percentage and would not have been able to achieve the claimed encapsulation percentage without undue

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

experimentation, including with the methods recited in the reference claims cited by Moderna. Additionally, many of Moderna's reference claims do not disclose a particular percent encapsulation, and Moderna fails to explain how the POSA would have had a reasonable expectation of success of obtaining the claimed mRNA encapsulation percentage in view of the reference claims that it cites.

### 2.    The Lipid Formulation Patents

The arguments that Moderna appears to be making with respect to OTDP of the Lipid Formulation Patents are similar to the arguments that it made regarding anticipation and obviousness and rely on many of the same references. Moderna's OTDP arguments thus fail for the same reasons discussed above with respect to anticipation and obviousness.

Additionally, to the extent Genevant can understand Moderna's OTDP contentions, they fail for additional reasons. The OTDP reference claims that Moderna has cited do not disclose all of the elements of the challenged claim.

For example, many of the reference claims cited by Moderna fail to disclose an overlapping range for one or more of the claimed components. Indeed, some of the cited references omit one or more of the recited elements entirely. These references also fail to disclose why the POSA would be motivated to include the claimed elements in the right ratios. Moderna fails to contend (much less establish) why the POSA would have been motivated to include one or more of those elements in those claims, or why the POSA would have had a reasonable expectation of success of achieving the claim elements when incorporating those additional elements.

Many of the reference claims cited by Moderna fail to disclose overlapping ranges of a cationic lipid, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a cationic lipid in the claimed amount, or why the POSA would have had a

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

reasonable expectation of success of achieving the claim elements when incorporating a cationic lipid in the claimed amount.

Many of the reference claims cited by Moderna fail to disclose overlapping ranges of a non-cationic lipid, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a non-cationic lipid in the claimed amount, or why the POSA would have had a reasonable expectation of success of achieving the claim elements when incorporating a non-cationic lipid in the claimed amount.

A number of the reference claims cited by Moderna fail to disclose an overlapping range for a phospholipid or cholesterol, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a phospholipid or cholesterol in the claimed amounts, or why the POSA would have had a reasonable expectation of success of achieving the claim elements when incorporating those ingredients in the claimed amounts.

Many of the reference claims cited by Moderna fail to disclose overlapping ranges of a conjugated lipid, and Moderna fails to contend (much less establish) why the POSA would have been motivated to include a conjugated lipid in the claimed amount, or why the POSA would have had a reasonable expectation of success of achieving the claim elements when incorporating a conjugated lipid in the claimed amount.

Moderna also cites references that the POSA purportedly would have considered in combination with the claims of the OTDP patents. *See* Initial Invalidity Contentions at 128-136. These arguments fail for the same reasons as described above with respect to obviousness, including because the POSA would not have had a motivation to arrive at the claimed lipid amounts in view of the broad and conflicting disclosures of the references cited by Moderna and because the POSA would not have had a reasonable expectation of success of obtaining the

51

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

claimed subject matter in view of the references that Moderna cites.  Moderna has failed to establish that the POSA would have been motivated to modify the subject matter claimed in the alleged OTDP references it cites to arrive at the claims of the Lipid Formulation Patents with a reasonable expectation of success.

## V.    Invalidity Under 35 U.S.C. § 112

### A.    Indefiniteness

Moderna has failed to demonstrate that any claim of the Asserted Patents is indefinite, when considered in light of their specifications (including the material incorporated therein by reference) and the knowledge of the POSA.

### 1.    The '651 Patent

Moderna contends that the term "fully encapsulated" is indefinite, including because the specification allegedly does not disclose a method "for measuring encapsulation."  Initial Invalidity Contentions at 137.  The POSA, however, would have been familiar with techniques for measuring encapsulation and would have understood the term "fully encapsulated," particularly in light of the disclosures of the specification, which would have further informed the POSA as to the scope of the term "fully encapsulated." *See, e.g.*, '651 patent, 1:34-2:8, 2:39-67, 3:17-38, 5:30-40, Examples 1-7, Figures 5-12.  The prosecution history of the application that resulted in the '651 patent would have further informed the POSA as to the scope of the term "fully encapsulated."  Moderna's anticipation and obviousness arguments on the '651 patent, including related to the term "fully encapsulated," provide further evidence that the POSA would have understood the scope of this term. *See, e.g.*, Initial Invalidity Contentions, Exhibit A at 75-89.

Moderna lists the term "wherein each lipid vesicle is a lipid-nucleic acid particle" in its section on indefiniteness, but its contentions regarding that term appear to be contingent on potential future constructions of that term.  Initial Invalidity Contentions at 137.  As Moderna

52

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

concedes elsewhere in its contentions, *see* Initial Invalidity Contentions at 52, the POSA would have understood the scope of this term, particularly in light of the intrinsic evidence relating to the '651 patent.

Moderna contends that the term "wherein each lipid vesicle is a liposome" is indefinite. Initial Invalidity Contentions at 138. Moderna's contentions on this term, however, appear to be based on a mischaracterization of Plaintiffs' infringement contentions. As Moderna concedes elsewhere in its contentions, *see* Initial Invalidity Contentions at 51, the POSA would have understood the scope of this term, particularly in light of the intrinsic evidence relating to the '651 patent.

### 2.    The Lipid Formulation Patents

Moderna contends that the term "the total lipid present in the particle" is indefinite. Initial Invalidity Contentions at 138. Moderna fails to demonstrate that this term is indefinite. The POSA would have been familiar with the term "the total lipid present in the particle" and would not have had uncertainty as to the scope of the claims using that term. Moderna itself uses the language "total lipid present" elsewhere in its contentions, *e.g.*, Initial Invalidity Contentions at 68-69, and Moderna's other invalidity arguments provide further evidence that the POSA would have understood the scope of this term. The disclosures of the patents' specifications and prosecution histories would have further informed the POSA as to the scope of the term. *See, e.g.*, '069 patent at 3:10-56, 14:16-26, 18:40-22:42, 24:14-49, 24:50-67, 49:56-62, 50:55-62, Examples 1-11, Figures 1-22. Moderna argues that "the specification of the Molar Ratio Patents further refers to the disclosed formulations as 'target' formulations," and "distinguished between starting composition and finished product characteristics." Initial Invalidity Contentions at 139 (citing '378 patent at 25:55, 70:32-43). The terms "target" and "finished product" are not recited in the

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

asserted claims and Moderna fails to explain how the cited language otherwise supports Moderna's indefiniteness theory.

Moderna's remaining contentions regarding the term "the total lipid present in the particle" are based on prior IPR proceedings in which Moderna sought to invalidate the asserted claims. These contentions fail because they mischaracterize the record, improperly equate the prior art with the asserted patents, and conflate distinct legal inquiries (§§ 102/103 vs. § 112). For example, Moderna ignores that the prior art reference Moderna asserted in its challenge to the '435 patent, IPR2018-00739, utilized a detergent-based method that would skew the proportions of lipids in the particle. *See* Appeal No. 20-1184, Dkt. 67 at 64. The Board found that while the evidence "suggested that there would be some variation in the final compositions of the lipid particles fabricated from the L054 formulation," "some" particles would fall in the claimed ranges, thereby anticipating certain claims. Appeal No. 20-1184, Dkt. 135 at 18. The Federal Circuit affirmed.

Moderna next cites the Federal Circuit's decision in CAFC No. 20-2329, which upheld the asserted claims of the '069 patent. Initial Invalidity Contentions at 140 (citing CAFC No. 20-2329, Dkt. 66 at 15). Moderna's assertion that "according to Plaintiffs, the specification of the Molar Ratio Patents fails to adequately explain how a POSA in 2008 is to determine—or pick from the claimed ranges—the appropriate amount of each lipid to create a specific formulation," Initial Invalidity Contentions at 140, is unsupported by any record citation and the passage cited by Moderna discusses the prior art. *See* CAFC No. 20-2329, Dkt. 66 at 15. The POSA reading the patent specifications would not have lacked certainty as to the scope of the claims.

Moderna next contends that the term "a nucleic acid-lipid particle" is indefinite. Initial Invalidity Contentions at 141. Moderna fails to demonstrate that this term is indefinite. The POSA would have been familiar with the term "nucleic acid-lipid particle" and would have understood

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

its scope. Moderna itself uses the language "nucleic acid-lipid particle" elsewhere in its contentions, demonstrating that the POSA would have understood the scope of this term, *see, e.g.*, Initial Invalidity Contentions at 44, 68-69, 70-73, 79, 84, 88. The disclosures of the patents' specifications and prosecution histories would have further informed the POSA as to the scope of the term "nucleic acid-lipid particle." *See, e.g.*, '069 patent at Abstract, 3:10-4:8, 11:4-48, 27:35-38, 47:13-28, Examples 1-11, Figures 1-22.

Moderna contends that claims reciting "a cationic lipid" are indefinite "as a POSA in 2008 would be unable to determine a priori which lipids fall within the claims." Initial Invalidity Contentions at 142. Moderna fails to demonstrate that this term is indefinite. The POSA would have been familiar with the term "a cationic lipid" and understood the scope of the term and would have been able to determine which lipids are cationic lipids. The patents' specifications would have further informed the POSA as to the scope of the term. *See, e.g.*, '069 patent at 2:37-54, 10:64-11:3, 12:51-13:3, 17:39-18:39, 24:5-13, 47:13-49:67, 57:56-57. Moderna uses the term "cationic lipid[s]" throughout its contentions, and its other invalidity arguments provide further evidence that the POSA would have understood the scope of this term. *E.g.*, Initial Invalidity Contentions at 21, 53, 58, 60, 64, 142. The file histories' discussion of "cationic lipid" is consistent with the specifications and would have confirmed the POSA's understanding of the scope of that term.

Moderna next contends that claim 16 of the '069 patent is indefinite because "the term 'substantially degraded' is indefinite." Initial Invalidity Contentions at 143. Moderna fails to demonstrate that this term is indefinite. The POSA would have been familiar with the concept of degradation and would have understood how to assess it, and would not have had uncertainty as to the scope of the claims reciting this term. The POSA's understanding also would have been

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY

informed by the patents' specifications and file histories. *See, e.g.*, '069 patent 3:3-7, 5:58-61, 11:7-48, 13:24-29, 22:43-23:6, 57:50-55, Examples 1-11, Figures 1-22. Moderna itself uses the term "substantially degraded" in its contentions, and its other invalidity arguments provide further evidence that the POSA would have understood the scope of this term. *See, e.g.*, Initial Invalidity Contentions at 85-86.

Moderna contends that claim 20 of the '668 patent and claim 17 of the '435 patent are indefinite because they require "a method for treating a disease or disorder in a mammalian subject in need thereof, the method comprising administering to the mammalian subject a therapeutically effective amount." Initial Invalidity Contentions at 143. Moderna fails to demonstrate that this term is indefinite. The POSA would have been familiar with methods for treating a disease or disorder by administering lipid particles, as further described in the specifications and file histories, that could be applied to various conditions. *See, e.g.*, '069 patent, Abstract, 2:55-61, 2:65-3:2, 3:21-26, 3:60-4:8, 4:16-5:38, 14:10-16, 25:4-28:48, 35:60-64, 61:7-64:56, Examples 1-11, Figures 1-22. The POSA likewise would have been familiar with the concept of a "therapeutically effective amount" and how to determine it, as further described in the specifications and file histories. *See, e.g.*, '069 patent, 3:60-4:8, 4:16-5:38, 7:44-59, 61:7-64:56, Examples 1-11, Figures 1-22.

### B.      Written Description and Enablement

Moderna has failed to demonstrate that any claim of the Asserted Patents lacks written description support or is not enabled, when considered in light of their specifications (including the material incorporated therein by reference) and the knowledge of the POSA.

### 1.      The '651 Patent

Moderna lists the term "fully encapsulated" in its section on written description and enablement. Initial Invalidity Contentions at 146. Moderna, however, simply repeats the

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

arguments that it makes with respect to indefiniteness.  Those arguments are incorrect, for the reasons discussed above in the section on indefiniteness.  Additionally, the specification demonstrates possession of this limitation. *See, e.g.*, '651 patent, 1:34-2:8, 2:39-67, 3:17-38, 5:30-40, Examples 1-7, Figures 5-12.  Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation.  To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation in light of the disclosures in the patent and the knowledge of the POSA.

Moderna contends that the term "mRNA" lacks support in the specification.  Initial Invalidity Contentions at 147.  The specification, however, explicitly recites mRNA as one of the types of nucleic acid within the scope of the invention. '651 patent, 3:50-4:3.  Moderna argues that the specification focuses on plasmid DNA, Initial Invalidity Contentions at 147, but this argument ignores that the specification repeatedly refers to "nucleic acid"—which includes mRNA. *E.g.*, '651 patent, 2:14-16.

Moderna contends that it would require "undue experimentation for a POSA to make and use the claimed vesicle formulation comprising mRNA."  Initial Invalidity Contentions at 148.  Moderna provides no evidence that any experimentation—much less undue experimentation—would have been required to practice the claimed invention, in view of the teachings of the specification.  Moderna contends that there are various physicochemical differences between DNA and RNA, *see* Initial Invalidity Contentions at 148-149, but fails to explain how these purported differences would render the POSA unable to obtain the claimed formulation without undue experimentation, in view of the disclosures of the specification.  Moderna cites experimental evidence proffered during prosecution, *see* Initial Invalidity Contentions at 149, but fails to explain

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

how any of those experiments suggest that the POSA, in view of the disclosures in the '651 patent, would have been unable to obtain the claimed subject matter (including the claimed encapsulation percentage) without undue experimentation. To the contrary, to the extent necessary, the evidence will show that the POSA, in view of the disclosures of the '651 patent and the knowledge of the POSA, would have been able to practice the claimed inventions, including the claimed encapsulation percentage, without undue experimentation.

Moderna includes "lipid vesicles," "liposome," and "lipid-nucleic acid particle" in its list of terms that purportedly lack written description support and/or enablement. Initial Invalidity Contentions at 151. The specification discloses all three of those types of compositions, though, and—as explained above with respect to indefiniteness—the POSA would have understood the scope of those terms, as Moderna itself appears to acknowledge. *See* Initial Invalidity Contentions at 51-52, 151-52. Moreover, Moderna has provided no evidence that it would have required experimentation—much less undue experimentation—to achieve the claimed formulation using lipid vesicles, liposomes, or lipid-nucleic acid particles, in view of the teachings of the specification. To the contrary, the guidance from the specification—in combination with the knowledge of the POSA—would have enabled the POSA to practice the full scope of the claimed inventions, including with respect to lipid vesicles, liposomes, and lipid-nucleic acid particles.

Moderna recites the diameter-related limitations in its section on written description and enablement. Initial Invalidity Contentions at 152-53. Moderna asserts, based on experimental testing submitted during prosecution, that the inventors "were not in possession of the full scope of the claimed subject matter." Initial Invalidity Contentions at 153. Moderna does not appear to dispute, however, that the specification does disclose possession of vesicles having the claimed diameters.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Moderna contends that "the type of nucleic acid being encapsulated could affect the diameter of the resulting vesicle." Initial Invalidity Contentions at 153. As explained above, however, the specification of the '651 patent demonstrates possession of mRNA, and Moderna provides no evidence that the POSA would not have been able to achieve the claimed subject matter (including the claimed diameter) without undue experimentation, in view of the disclosures of the specification and the knowledge of the POSA.

Finally, Moderna contends that the limitations related to percent encapsulation lack written description support and are not enabled. Initial Invalidity Contentions at 153-57. Moderna's criticisms ignore the teachings in the specification related to methods of making compositions that satisfy the percent encapsulation limitations, as well as the disclosures related to appropriate formulations. *E.g.*, '651 patent, 7:3-18, 14:10-15:56. These and other disclosures in the specification demonstrate possession of lipid vesicles having the claimed encapsulation percentages, which Moderna does not appear to dispute. The specification of the '651 patent provides written description support for the claimed inventions, including the claimed encapsulation percentage. Moreover, the teachings in the specification would have enabled the POSA to practice the full scope of the claimed invention without undue experimentation—indeed, Moderna fails to put forward any evidence that, in view of the teachings of the specification and the knowledge of the POSA, it would have required undue experimentation to practice the claimed invention. To the contrary, to the extent necessary, the evidence will show that the POSA, in view of the disclosures of the '651 patent and the knowledge of the POSA, would have been able to practice the claimed inventions, including the claimed encapsulation percentage, without undue experimentation. Additionally, although Moderna cites disclosures in the specification related to the cationic lipid and the amphipathic lipid, Initial Invalidity Contentions at 154-155, Moderna

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

fails to identify any lipid on those lists for which it would have required undue experimentation to practice the claimed invention.

### 2.    The Lipid Formulation Patents

Moderna contends that the term "the total lipid present in the particle" lacks written description support and is not enabled.  Initial Invalidity Contentions at 158-59.  Moderna's arguments retread the arguments made in its indefiniteness contentions and again rely on mischaracterizations of the record in the prior IPR proceedings, which fail for the reasons discussed above.  *Supra* V.A.2.  Moderna cannot show that the claims reciting this term are invalid for lack of written description or non-enablement.  The specifications demonstrate possession of this limitation, including by disclosing numerous embodiments and examples.  *See, e.g.*, '069 patent at 3:10-56, 14:16-26, 18:40-22:42, 24:14-49, 24:50-67, 49:56-62, 50:55-62, Examples 1-11, Figures 1-22.  The POSA would have had the benefit of the teachings in the specifications, as well as the POSA's knowledge of methods of making nucleic-acid lipid particles.  Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation.  To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.  As discussed above in connection with indefiniteness, Moderna's attempts to cherry-pick the record from the IPR addressing "Moderna's anticipation challenge,"  Initial Invalidity Contentions at 158 n.25 (citing Dkt. 67-1 at 29), are irrelevant to whether the patent specifications support and enable the claims.  *See supra* V.A.2.

Moderna contends that the claims reciting "a nucleic acid," "an RNA," or "mRNA" lack written description support and are not enabled.  Initial Invalidity Contentions at 159.  Moderna contends that "it would require undue experimentation for a POSA to deduce the proper process and formulation for each of the nucleic acids enumerated in the specification ('069 patent at 10:16-

60

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

42), let alone all nucleic acids generally," and "would not understand the inventors to be in possession of nucleic acid-lipid particle comprising or consisting essentially of nucleic acids other than siRNA." Initial Invalidity Contentions at 163. Moderna cannot show that the claims reciting this term are invalid for lack of written description or non-enablement. The specifications expressly disclose "that **RNA** may be in the form of siRNA, asymmetrical interfering RNA (aiRNA), microRNA (miRNA), **mRNA**, tRNA, rRNA, tRNA, viral RNA (vRNA), and combinations thereof," *e.g.*, '069 patent, 10:23-26 (emphases added), demonstrating possession of this limitation, *see also e.g.*, 10:16-19 ("The term "nucleic acid as used herein refers to a polymer containing at least two deoxyribonucleotides or ribonucleotides in either single- or double-stranded form and includes DNA and RNA."), 26:62-27:2, 28:1-11, 43:31-44:33. Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications.

Moderna's sole argument to the contrary is that there are various physicochemical differences between nucleic acids, but Moderna fails to explain how these purported differences would render the POSA unable to obtain the claimed formulation without undue experimentation, in view of the disclosures of the specification. The articles cited by Moderna are inapposite to the claimed invention and fall far short of suggesting that the asserted Lipid Formulation Patent claims are not described or enabled. Moderna fails to explain how the disclosures of the cited articles, several of which are post-priority, demonstrate a lack of possession or enablement of the claimed subject matter. The cited articles do not suggest that the POSA would be unable to practice the asserted claims.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Moderna contends that the term "nucleic acid-lipid particle" lacks written description support and is not enabled. Initial Invalidity Contentions at 163. Moderna's arguments retread their indefiniteness contentions, *see* Initial Invalidity Contentions at 141. Regardless, Moderna cannot show that the claims reciting this term are invalid for lack of written description or non-enablement. As discussed above in connection with Moderna's indefiniteness contentions, Moderna's attempt to rely on mischaracterizations of arguments relating to the prior art and presented in the prior IPR proceedings is unfounded. *See supra* V.A.2. The patent specifications amply demonstrate possession of this limitation, *see supra* V.A.2, including, as Moderna concedes, working examples within the claims, *see* Initial Invalidity Contentions at 164-165.[2] Moderna's argument that "the claims of the Molar Ratio Patents are also invalid for lack of written description as there is no disclosed embodiment encompassing all limitations directed to the mol% ranges for the constituent lipids," citing claim 1 of the '378 patent, Initial Invalidity Contentions at 164-165, fails because the specifications support the claim limitations, including the claimed lipid mol% ranges. *See*, *e.g.*, '069 patent at 3:10-56, 12:51-13:3, 14:16-26, 17:22-22:42, 23:61-24:67, 49:56-62, 50:55-62, 51:4-40, Examples 1-11, Figures 1-22. Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

---

[2] Moderna asserts at various points in its Contentions, without further explanation, that the disclosures relating to the "1:62 formulation" "is not relevant to the majority of the Asserted Claims of the '069 Family, which require a four-lipid system." *E.g.* Initial Invalidity Contentions at 165 fn. 26. The POSA would have the benefit of the entire specification including the disclosures relating to the 1:62 formulation.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Moderna contends that the claims reciting cationic lipid amounts "less than 56.5 mol%," Initial Invalidity Contentions at 165, that is, "cationic lipid comprising from 50 mol % to 65 mol % of the total lipid present in the particle" or "50 mol % to 85 mol % of the total lipid present in the particle," are not described. *Id.* Moderna cannot show that the claims reciting these terms are invalid for lack of written description. The specifications demonstrate possession of these limitations. *See*, *e.g.*, '069 patent at 3:10-56, 12:51-13:3, 14:16-26, 17:22-22:42, 23:61-24:67, 49:56-62, 50:55-62, 51:4-40, Examples 1-11, Figures 1-22. Moderna's only support is an office action in a different patent application. Initial Invalidity Contentions at 165-66. Moderna fails to explain how a discussion of unasserted, unissued claims in a different patent application supports invalidity of the asserted issued claims. Moderna does not contend that the claims reciting "cationic lipid comprising from 50 mol % to 65 mol % of the total lipid present in the particle" or "50 mol % to 85 mol % of the total lipid present in the particle" are not enabled on this basis, and has not offered evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

Moderna further contends that claim 1 of the '378 patent, reciting "[a] nucleic acid-lipid particle consisting essentially of . . . a cationic lipid having a protonatable tertiary amine," is not described or enabled. Initial Invalidity Contentions at 166. Moderna's contentions appear to be based on a mischaracterization of Plaintiffs' infringement contentions. Moderna has not shown that the claims reciting this term are invalid for lack of written description or non-enablement. The specifications demonstrate possession of this claim limitation. *See*, *e.g.*, '069 patent at 3:10-56, 12:51-13:3, 14:16-26, 17:22-22:42, 23:61-24:67, 49:56-62, 50:55-62, 51:4-40, Examples 1-11,

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

Figures 1-22. Moderna concedes the patent discloses embodiments of the claims, including working examples, but argues that "[t]he specification of the Molar Ratio Patents, however, discloses at most three exemplary formulations, none of which comprise less than 50% cationic lipid." Initial Invalidity Contentions at 166. Based on the disclosures of the patent and the POSA's knowledge and experience, the POSA would have understood the inventors to have possessed the claimed invention. Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

Moderna states that its contentions are "in the alternative to Moderna's contention that Plaintiffs disclaimed any scope covering cationic lipids present below 50 mol % during prosecution of the '069 Patent, which carried through to the '378 Patent." Initial Invalidity Contentions at 166 n.27. That claim scope was not disclaimed during prosecution, and Moderna cannot establish that it was. As discussed above in connection with Moderna's indefiniteness contentions, Moderna's attempt to rely on mischaracterizations of prior IPR proceedings, Initial Invalidity Contentions at 166-167, is unfounded. *See supra* V.A.2. Indeed, Moderna ignores the IPR proceedings when convenient, *e.g.*, in asserting that "even if these claims are not invalid for lack of written description and/or enablement, they are nonetheless invalid as obvious at least on the basis of the prior art raised in the prosecution of the '069 patent." Initial Invalidity Contentions at 168. Having unsuccessfully challenged the asserted claims of the '069 and '435 patents in IPR, Moderna is estopped from asserting that the claims are "invalid as obvious at least on the basis of the prior art raised in the prosecution of the '069 patent." *Id.* Regardless, Moderna's contentions

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

fail.   Moderna contends that "even if the purportedly unexpected results" discussed during prosecution "were commensurate with the scope of the claims of the '069 patent, which they are not, they cannot be commensurate with the scope of the claims of the '378 patent, which includes no limitation on the mol% of the cationic lipid." Initial Invalidity Contentions at 166-67.  Moderna does not explain how the cited discussion, which according to Moderna distinguished "prior art formulations including a 2:40 formulation having 40% cationic lipid," *id.*, supports the invalidity of claims that do not recite 40% cationic lipid.  Moderna's assertion that "the '378 patent . . . includes no limitation on the mol% of cationic lipid" appears to be contingent on a hypothetical, and incorrect, claim construction.

Moderna next contends that Claim 1 of the '668 Patent and Claim 8 of the '435 patent are not described because each of those claims "allows for" a range of phospholipid "based on the recited ranges of the other components" of below 10 mol %.  Initial Invalidity Contentions at 168. Moderna concedes the patents disclose embodiments of the claims, including working examples, but Moderna argues that "the specification, however, only describes the use of phospholipids at 10 mol % and higher, with no disclosures of use of less than 10 mol %."  Initial Invalidity Contentions at 168.  Moderna cannot show that these claims are invalid for lack of written description. The specifications demonstrate possession of this limitation.  *See*, *e.g.*, '069 patent at 3:10-56, 12:51-13:3, 14:16-26, 17:22-22:42, 23:61-24:67, 49:56-62, 50:55-62, 51:4-40, Examples 1-11, Figures 1-22.  Based on the disclosures of the patent and the POSA's knowledge and experience, the POSA would have understood the inventors to have possessed the claimed invention.  Moderna does not contend that these claims are not enabled and has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications.  To the extent necessary, the

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

Moderna contends that claims reciting "0.5-2 mol% conjugated lipid" ('069, '359, '668, and '435 patents) or "0.1-2 mol% conjugated lipid" ('378 patent)" are neither described or enabled because "based on the exemplary formulations disclosed, at most compositions with 1.5 mol% or 1.4 mol% conjugated lipid are enabled and/or supported by the specification." Initial Invalidity Contentions at 169. Moderna's contentions appear to be based on a mischaracterization of Plaintiffs' infringement contentions. As discussed in connection with the other mol% terms above, Moderna cannot show that the claims reciting this term are invalid for lack of written description or non-enablement. The patent specifications demonstrate possession of this limitation, including by disclosing embodiments and examples. *See*, *e.g.*, '069 patent at 3:10-56, 12:51-13:3, 14:16-26, 17:22-22:42, 23:61-24:67, 49:56-62, 50:55-62, 51:4-40, Examples 1-11, Figures 1-22. Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

Moderna contends that claim 17 of the '069 patent, claim 20 of the '359 patent, claim 16 of the '668 patent, claim 13 of the '435 patent, and claims 9, 11, 20, 22, and 27 of the '378 patent, are invalid for lack of written description and non-enablement because they require that "the nucleic acid 'is fully encapsulated in the nucleic acid-lipid particle.'" Initial Invalidity Contentions at 169-170. Moderna cannot show that these claims are invalid for lack of written description or non-enablement. As discussed above in connection with Moderna's indefiniteness, lack of written description, and non-enablement contentions regarding the '651 patent, *see supra* V.A.1, V.B.1,

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

the POSA would have understood the scope of the term "fully encapsulated."  The patent specifications amply demonstrate possession of this limitation, including by disclosing embodiments and examples.  *See, e.g.*, '069 patent at 11:49-55, 22:43-23:35, 57:50-55, 62:22-26, 69:20-23, Examples 1-11, Figures 1-22.  Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications.  To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.  Moderna's attempts to rely on mischaracterizations of prior IPR proceedings, Initial Invalidity Contentions at 170-171, are unfounded.  *See supra* V.A.2.

Moderna contends that claim 16 of the '069 patent is invalid for lack of written description or non-enablement because it requires that "the nucleic acid in the nucleic acid-lipid particle is not substantially degraded after incubation of the particle in serum at 37° C. for 30 minutes."  Initial Invalidity Contentions at 171.  Moderna cannot show that this claim is invalid for lack of written description or non-enablement.  The specifications demonstrate possession of this limitation.  *See, e.g.*, '069 patent 3:3-7, 5:58-61, 11:7-48, 13:24-29, 22:43-23:6, 57:50-55, Examples 1-11, Figures 1-22.  Moderna itself uses the term "substantially degraded" in its contentions, and its other invalidity arguments provide further evidence that the POSA would have understood the scope of this term.  *See, e.g.*, Initial Invalidity Contentions at 85-86; *supra* V.A.2.  Moderna argues that "the examples in the specification refer to the use of a Ribogreen assay to measure encapsulation as opposed to the use of a degradation assay generally," but does not explain what it means by "degradation assay" or otherwise explain how the cited examples support its contentions with respect to this term.  Likewise, Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation, in light of the

67

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

knowledge of the POSA and the disclosures in the specifications.  To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.

Moderna contends that claim 19 of the '069 patent is invalid for lack of written description or non-enablement because it requires that "the nucleic acid-lipid particle has a median diameter of from about 40 nm to about 150 nm."  Initial Invalidity Contentions at 171.  Moderna cannot show that this claim is invalid for lack of written description or non-enablement.  The specifications demonstrate possession of this limitation, including by disclosing embodiments and examples.  *See, e.g.*, '069 patent at 11:37-41, 23:47-60, 47:8-12, 59:1-42, Examples 1-11, Figures 1-22.  Moderna has not offered any evidence that the POSA would have been unable to practice this claim limitation without undue experimentation.  To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice this claim limitation without undue experimentation.  Moderna also argues that "A POSA in 2008 would further understand that the type of nucleic acid being encapsulated could affect the diameter of the resulting vesicle."  Initial Invalidity Contentions at 172.  The meaning of this contention is unclear because the asserted Lipid Formulation Patent claims do not recite a "vesicle."  To the extent Moderna is arguing that there are various physicochemical differences between nucleic acids, Moderna fails to explain how such purported differences would render the POSA reading the specification unable to obtain the claimed formulation without undue experimentation.

Moderna contends that the claims requiring "contacting the cell with a nucleic acid-lipid particle," "in vivo delivery of a nucleic acid," or "administering to a mammalian subject a nucleic acid-lipid particle" are invalid for lack of written description or non-enablement because "the only disclosures in the Molar Ratio Patents specification relate to contacting cells with siRNA or

68

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

administration of siRNA." Initial Invalidity Contentions at 172. Moderna cannot show that these claims are invalid for lack of written description or non-enablement. As discussed above in connection with indefiniteness, the specifications demonstrate possession of these claim limitations. *See supra*, V.A.2; *see, e.g.*, '069 patent, Abstract, 2:55-61, 2:65-3:2, 3:21-26, 3:60-4:8, 4:16-5:38, 13:30-55, 14:10-16, 25:4-28:48, Examples 1-11, Figures 1-22. Moderna has not offered any evidence that the POSA would have been unable to practice these claim limitations without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice these claim limitations without undue experimentation.

Moderna contends that claim 20 of the '668 patent and claim 17 of the '435 patent, which require "administering to the mammalian subject a therapeutically effective amount of a nucleic acid-lipid particle," and claim 21 of the '668 patent and claim 18 of the '435 patent, which require that "the disease or disorder is a viral infection," are invalid for lack of written description or enablement. Initial Invalidity Contentions at 172-73. Moderna argues that "the specification does not contain any disclosures relating to prevention of disease, including viral infections." Moderna cannot show that these claims are invalid for lack of written description or non-enablement. Moderna's contentions generally repeat the arguments it made in connection with indefiniteness, *supra* V.A.2. As already discussed, those arguments fail because the POSA would not have had uncertainty as to the scope of these claims, and the specification demonstrates possession of these claim limitations. *See, e.g.*, '069 patent, Abstract, 2:55-61, 2:65-3:2, 3:21-26, 3:60-4:8, 4:16-5:38, 7:44-59, 13:30-55, 14:10-16, 25:4-28:48, 35:60-64, 61:7-64:56, Examples 1-11, Figures 1-22. Moderna has not offered any evidence that the POSA would have been unable to practice these claim limitations without undue experimentation. Moderna argues that there are various

69

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

physicochemical differences between nucleic acids, *see* Initial Invalidity Contentions at 174 (citing Moderna's contentions regarding the '651 patent, Sections III.B.1.b and III.B.2.b). Moderna fails to explain how these purported differences would render the POSA unable to obtain the claimed formulation without undue experimentation, in light of the knowledge of the POSA and the disclosures in the specifications. *See supra* V.A.1, V.B.1. To the extent necessary, the evidence will demonstrate that the POSA would have been able to practice these claim limitations without undue experimentation. Moderna generally contends that "a POSA in 2008 would not understand the inventors to be in possession of the claimed compositions because the specification also lacks blaze marks to the claimed combination of components" and "there is no single embodiment or example in the specification that describes a formulation falling within the Asserted Claims of the Molar Ratio Patents, with the recited lipids, at the recited mol%, with the recited nucleic acids and/or mRNA." Initial Invalidity Contentions at 175. Elsewhere in its contentions, Moderna argues that "each limitation of claim 1 of the '378 patent, for example, is taken from a different portion of the specification. A POSA therefore would not recognize that the inventors had possession of the claimed compositions." Initial Invalidity Contentions at 164-165. Moderna's argument fails for the reasons already discussed above: the specifications demonstrate possession of each limitation of the asserted claims, including numerous embodiments and examples. *See also* '069 patent at 19:39-21:42, 22:30-42, 23:61-24:67, 51:4-40, Examples 1-11, Figures 1-22.

## VI.    Forfeiture and/or Abandonment Under § 102(c)

Moderna contends that the Lipid Formulation Patents are invalid pursuant to § 102(c) for forfeiture or abandonment. Initial Invalidity Contentions at 175. Moderna has not established the required elements to establish forfeiture and/or abandonment. Moderna has not established that the inventors intended to abandon the invention or to dedicate the invention to the public.

70

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

\*      \*      \*

The above contentions and evidence are exemplary and based on information available to Genevant to date.   Genevant's investigation is ongoing, and Genevant reserves the right to supplement this response in accordance with Fed. R. Civ. P. 26(e)(1).

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (1/19/2024)**

Genevant incorporates by reference its prior objections to this Interrogatory.  In follow-on correspondence between the parties, Moderna has requested additional information regarding, as is relevant for purposes of this supplementation, "(2) which references Plaintiffs contend 'were owned by the same person or subject to an obligation of assignment to the same person,' and (3) which OTDP references Plaintiffs contend are 'not properly considered pursuant to OTDP.'" Letter from Caitlin Dean to Counsel re: Plaintiffs' Resp. & Objs. To Moderna's Interrogatory No. 9 (dated November 1, 2023).  Without accepting that it has any burden to so identify such information—to the contrary, Moderna at all times bears the burden to prove that references qualify as prior art, and Moderna has not satisfied that burden—and subject to the General Objections and the Specific Objections to this Interrogatory, Genevant further responds based on its reasonable and diligent investigation to date:

**35 U.S.C. § 103(c)**

For purposes of the obviousness inquiry, many of the references Moderna relies on are not properly considered prior art, pursuant to § 103(c).  Moderna bears the burden to prove that any asserted reference is prior art, and Moderna has failed to demonstrate that the references it cites are in fact prior art properly considered under both § 102 and § 103.  At the time that one or more of the claimed inventions were made, at least the following of Moderna's references were owned by the same person or subject to an obligation of assignment to the same person as the claimed inventions:

71

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY**

depositions in this case.

Genevant's investigation is ongoing, and Genevant reserves the right to amend or supplement this response in accordance with Fed. R. Civ. P. 26(e)(1).

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
David I. Berl
Adam D. Harber
Thomas S. Fletcher
Jessica Palmer Ryen
Shaun P. Mahaffy
Jihad J. Komis
Anthony H. Sheh
Matthew W. Lachman
Ricardo Leyva
Philip N. Haunschild
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
*Attorneys for Plaintiff Genevant*
*Sciences GmbH*

Dated: June 7, 2024

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY