# Exhibit 19

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

C.A. No. 22-252-MSG

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ARBUTUS BIOPHARMA CORPORATION

and GENEVANT SCIENCES GmbH,

Plaintiffs,


vs.


MODERNA, INC. and MODERNATX,

INC.,

Defendants.


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


HIGHLY CONFIDENTIAL

OUTSIDE ATTORNEYS' EYES ONLY


Videotaped Deposition of DONALD M.
PARSONS, Ph.D., held at Kirkland & Ellis, 200
Clarendon Street, Boston, Massachusetts,
commencing at 9:01 a.m., on the 7th of June,
2024, before Maureen O'Connor Pollard,
Registered Diplomate Reporter, Realtime Systems
Administrator, Certified Shorthand Reporter,
Notary Public.

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

6/7/2024                    Arbutus Biopharma Corp., et al. v. Moderna, Inc. et al. Donald M. Parsons, Ph.D.
Highly Confidential - Outside Attorneys' Eyes Only

Page 193

I'm not sure if I'm answering your question.

Q.    I guess my big picture question, what I'm confused about, how is it a platform harmonization if the other products in the pipeline had 48 mol percent SM-102 but you were proposing a change to 48.5 percent SM-102?

A.    Because we're harmonizing the lipid structure solution composition.

Q.    The starting materials?

A.    That's one part of the process, yes.

MR. MCLENNAN:  Objection to form.

BY MR. MAHAFFY:

Q.    Okay.  So you were not harmonizing the final product at this point?

MR. MCLENNAN:  Objection to form.

THE WITNESS:  So I think we've discussed a few times that we needed to make this change in a two-step manner because our main objective in addition to arriving at the final composition was to ensure

6/7/2024        Arbutus Biopharma Corp., et al. v. Moderna, Inc. et al. Donald M. Parsons, Ph.D.
Highly Confidential - Outside Attorneys' Eyes Only

Page 194

continuity of clinical trials.

We reviewed a memorandum -- or an e-mail exchange with the project leader who explained what some delays might be expected if we made the full change at one go, and we decided not to do that.  This was the change that we felt we could prudently make at this time and was the closest harmonization that was consistent with keeping the clinical trials going without interruption.

BY MR. MAHAFFY:

Q.   Did you tell the FDA that you intended to make a subsequent change to the product?

MR. MCLENNAN:  Objection to form.

THE WITNESS:  We do not communicate intention with the FDA.  We provide them with data as to the changes that have been made and our rationale for those changes.

BY MR. MAHAFFY:

Q.   So you didn't tell the FDA that -- about this two-step process that you've alluded