# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Plaintiffs*,<br><br>v.<br><br>MODERNA, INC. and MODERNATX, INC.,<br><br>*Defendants.* | C.A. No. 22-252-JDW |
| MODERNA, INC. and MODERNATX, INC.,<br><br>*Counterclaim-Plaintiffs*,<br><br>v.<br><br>ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH,<br><br>*Counterclaim- Defendants.* | **JURY TRIAL DEMANDED**<br><br>Redacted - Public Version |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION TO EXCLUDE EXPERT TESTIMONY**

## **TABLE OF CONTENTS**

I. DR. VELLTURO'S DAMAGES OPINIONS SHOULD BE EXCLUDED ....................... 1

    A. Dr. Vellturo's Damages Model Violates Federal Circuit Precedent ........................ 1

    B. Dr. Vellturo's Hold-Up Theory Misstates the Law ................................................ 2

    C. Dr. Vellturo's Non-Infringing Alternatives Opinions Are Inadmissible ................ 4

II. DR. PRUD'HOMME'S ERRONEOUS OPINIONS SHOULD BE EXCLUDED ............ 6

    A. Dr. Prud'homme's Reliance on Unclaimed Features for DOE is Improper ............ 6

    B. Dr. Prud'homme's Irrelevant DOE Comparisons Should be Excluded .................. 7

    C. Dr. Prud'homme's Other Improper Opinions Should Be Excluded ....................... 8

III. DR. ANDERSON'S HINDSIGHT OPINIONS SHOULD BE EXCLUDED .................... 9

# **TABLE OF AUTHORITIES**[1]

## CASES

*Abbott Lab'ys v. Dey, L.P.*,
   287 F.3d 1097 (Fed. Cir. 2002)..................................................................................7, 8

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   616 F.3d 1283 (Fed. Cir. 2010).......................................................................................7

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015).............................................................................3, 4, 5

*Astrazeneca AB v. Apotex Corp.*,
   985 F. Supp. 2d 452 (S.D.N.Y. 2013)............................................................................3

*Baltimore Aircoil Co. v. SPX Cooling Techs.*,
   2016 WL 4426681 (D. Md. Aug. 22, 2016) ..................................................................2

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002).......................................................................................8

*CMU v. Marvell Tech.*,
   807 F.3d 1283 (Fed. Cir. 2015).......................................................................................5

*EcoFactor, Inc. v. Google LLC*,
   137 F.4th 1333 (Fed. Cir. 2025) (en banc) ..............................................................1, 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).......................................................................................3

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997).........................................................................................................6

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996).........................................................................................4

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
   114 F.3d 1161 (Fed. Cir. 1997).......................................................................................7

*In re Nomiya*,
   509 F.2d 566 (C.C.P.A. 1975) ......................................................................................10

---

[1] Unless otherwise noted, all emphasis is added, and internal citations, alterations, and quotations are omitted. All highlighting in the exhibits has been added.

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008)......................................................................................9, 10

*Ironburg Inventions Ltd. v. Valve Corp.*,
   64 F.4th 1274 (Fed. Cir. 2023) ................................................................................................9

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014)............................................................................................10

*Johns Hopkins Univ. v. CellPro, Inc.*,
   152 F.3d 1342 (Fed. Cir. 1998)..............................................................................................8

*Kaneka Corp. v. Designs for Health, Inc.*,
   2025 WL 1684677 (D. Del. June 16, 2025)......................................................................8, 9

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)..................................................................................................4

*ModernaTx, Inc. v. Arbutus Biopharma Corp.*,
   18 F.4th 1364 (Fed. Cir. 2021) ..............................................................................................9

*Orexo AB v. Actavis Eliz.*,
   2019 WL 10060475 (D. Del. Mar. 19, 2019) .......................................................................3

*Pavo Sols. v. Kingston Tech. Co.*,
   35 F.4th 1367 (Fed. Cir. 2022) ..............................................................................................2

*Perreira v. Sec'y of HHS*,
   33 F.3d 1375 (Fed. Cir. 1994)................................................................................................5

*Phillips Petroleum Co. v. U.S. Steel Corp.*,
   673 F. Supp. 1278 (D. Del. 1987)..........................................................................................8

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017)..............................................................................................3

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
   2022 WL 17084156 (D. Del. Nov. 18, 2022) .......................................................................5

*SmithKline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005)..............................................................................................9

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011)..............................................................................................4

*SRI Int'l v. Internet Sec. Sys.*,
   2011 WL 5166436 (D. Del. Oct. 31, 2011) ......................................................................5, 8

*Supernus Pharms. Inc. v. Actavis Inc.*,
  2016 WL 527838 (D.N.J. Feb. 5, 2016) ............................................................................8

*Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*,
  109 F.3d 726 (Fed. Cir. 1997) ..........................................................................................8

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ........................................................................................8

*United States v. Cors*,
  337 U.S. 325 (1949) ......................................................................................................3, 4

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
  17 F.4th 155 (Fed. Cir. 2021) ...........................................................................................9

*Whitserve, LLC v. Comp. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ............................................................................................4

*Zygo Corp. v. Wyko Corp.*,
  79 F.3d 1563 (Fed. Cir. 1996) ..........................................................................................4

## I. DR. VELLTURO'S DAMAGES OPINIONS SHOULD BE EXCLUDED

### A. Dr. Vellturo's Damages Model Violates Federal Circuit Precedent

Moderna concedes that Dr. Vellturo used *Moderna's* $14 billion in COVID vaccine sales to calculate a running royalty from lump-sum milestones in licenses for research-stage products. Moderna's half-hearted attempts to distinguish *EcoFactor* and other binding authority cannot avoid these cases' clear instructions to exclude testimony like Dr. Vellturo's.

Both Dr. Vellturo's royalty and criticisms of Ms. Lawton rely on his opinion that Plaintiffs' patents had a "going rate" from prior agreements "to royalty payment terms within a fairly narrow range of effective running royalty rates." Ex 1 ¶¶ 192, 348. He calls this effective rate range "the royalty rates that Genevant agreed to receive and that third parties were willing to pay." *Id.* ¶ 245.

*EcoFactor v. Google* examined a royalty opinion with the same "fundamental premise"— that the defendant "should pay the same rate as comparable licenses" based on a converted running royalty rate the expert deemed equivalent to their lump-sum terms. 137 F.4th 1333, 1341-45 (Fed. Cir. 2025). Just like Dr. Vellturo, the *EcoFactor* expert lacked "relevant sales figures to verify whether the lump sums corresponded" to the proposed running royalty, and without "this fundamental premise, [his] testimony unravel[ed]." *Id.* at 1346.

Moderna defends Dr. Vellturo's royalty calculation on the basis that only *part* of it violated controlling law, since Genevant's licenses contained both lump sums and a running royalty. Opp. 4. To view that as exculpatory defies both law and logic. Each agreement's milestones are different and undisputedly a key part of the agreed-upon royalty. Dr. Vellturo thus had to account for them to opine about the "royalty rates that Genevant agreed to receive and that third parties were willing to pay." Ex 1 ¶ 245. Dr. Vellturo did so by "converting those fixed payments into a percentage," which he agreed required using "sales expectations." Ex 4 (Vellturo Tr.) 182:1-21.

Moderna now tries to excuse Vellturo's use of Moderna's actual sales in that conversion

1

by claiming that the licenses' best-case-scenario sales tiers reflect the licensees' expectations. But Moderna's sales are not the same as the best-case sales tiers Moderna cites, and Vellturo used the former not the latter. Ex 1 (Vellturo) ¶ 217. Moderna's example (Opp. 7) is illustrative. The ▇ ▇ milestone payment is ▇▇▇▇ trigger, but only ▇▇ of the $5.7 billion annual Moderna sales for 2021-22 used in his calculation. Ex 13. In any event, there is no evidence linking the top sales tiers in these agreements to the licensees' expectations—and the available evidence suggests otherwise. Moderna disparages evidence of Providence's expectations as "news articles," but offers no basis to ignore that evidence or to forgo third party discovery. Opp. 7. Nor was that evidence just "news articles"; internal company documents show the top tier did *not* reflect expectations. Ex 12. Moderna has no answer beyond baseless speculation. Opp. 7.

The use of Moderna's sales instead of the licensees' expectations is a fatal flaw. *Baltimore Aircoil Co. v. SPX Cooling Techs.*, 2016 WL 4426681, at *25 (D. Md. Aug. 22, 2016). Moderna (at 6) seeks to distinguish *Baltimore Aircoil* based on a different holding about using settlement agreements. But the court also held it impermissible to use a defendant's sales to convert a lump-sum payment to a running royalty, *id.*, consistent with the requirement that comparable license analyses look to "the economic circumstances of the ***contracting parties***," *Pavo Sols. v. Kingston Tech. Co.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022). Moderna concedes that Dr. Vellturo's effective royalty calculation sought "to determine what ***Moderna***," rather than the contracting parties, "would have paid under the terms of each Comparable Agreement." Opp. 5. He thus lacks the "basis for comparison" required to present his model to the jury. *EcoFactor*, 137 F.4th at 1341.

### B. Dr. Vellturo's Hold-Up Theory Misstates the Law

Dr. Vellturo's "hold-up" opinion seeks to sidestep the lack of non-infringing alternatives ("NIAs") by telling the jury that the resulting bargaining pressures are irrelevant to the value of Plaintiffs' patents. Though he could rebut Ms. Lawton with opinions (if disclosed and admissible)

2

about Moderna's alternatives, he cannot tell the jury, contrary to law, that the (un)availability of those alternatives cannot be considered. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015); *Orexo AB v. Actavis Eliz.*, 2019 WL 10060475, at *2 (D. Del. Mar. 19, 2019).

Tellingly, Moderna seeks to defend the hold-up opinion with caselaw from dramatically different contexts, like standard essential patents ("SEP") and government takings. Hold-up concerns arise from the instruction to "adjust[]" the *Georgia-Pacific* factors "for SEP patents." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1231, 1234 (Fed. Cir. 2014). Moderna cites *no case* accepting a hold-up adjustment with non-SEP patents. It instead argues that its theory just extends the requirement to tie damages to the "invention's footprint in the marketplace." Opp. 10. But that ignores clear precedent that the cost of delay required to avoid infringement does speak directly to the "'footprint' of the invention." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017); *AstraZeneca*, 782 F.3d at 1335. Moderna argues that these cases did not address "hold-up" expressly, even though *AstraZeneca* affirmed a decision that "hold-up" considerations "are simply inapplicable here, as the Patents do not cover a standard technology." 985 F. Supp. 2d 452, 501 (S.D.N.Y. 2013). Moderna chose to use Plaintiffs' technology for years, Ex 40 (Himansu Tr.) 203:6-23, including in COVID-19 clinical trials ongoing during the hypothetical negotiation, Ex 41 (Rog 13 Resp.) at 6. The "technical and practical obstacles," to switching to an NIA (if one existed), as well as the cost of the resulting delay, are evidence of the invention's value and cannot be ignored. *AstraZeneca*, 782 F.3d at 1334-35.

This lack of alternatives is distinct from the scarcity at issue in Moderna's lead case, *United States v. Cors*. Opp. 10. *Cors* is inapposite—it is a Takings case about a boat requisitioned by the Government and a wartime compensation statute that expressly excluded enhancements in value from "the Government's need of vessels." 337 U.S. 325, 330 (1949). Even setting aside that

3

distinct legal regime, the boat's increased value in *Cors* resulted from "demand that outruns the supply," which did not require compensation. *Id.* at 333. The bargaining dynamic in Vellturo's hold-up opinion is not scarcity from increased demand; it stems from Moderna's inability to deploy acceptable alternatives without incurring substantial losses due to delay. Ex 5 (Lawton R.) ¶¶ 159-161. *LaserDynamics*, Opp. 10, also concerned a different type of bargaining pressure (litigation uncertainty) in which payments are based on litigation risk and doubts about validity and infringement, rather than technology value. 694 F.3d 51, 77 (Fed. Cir. 2012). Here, by contrast, time pressure speaks directly to the invention's value. *AstraZeneca*, 782 F.3d at 1335.

Finally, Moderna casts Dr. Vellturo's opinion as a mere dispute about the nature of "real-world bargaining," which cross-examination can address. Opp. 11. But while that may be true of testimony about *how* factors affect the negotiation, it is not true of testimony about *which* factors can be legally considered. Dr. Vellturo would testify that Moderna's "limited time … to pursue a design-around [is] a measure of economic 'hold-up,'" Ex 1 ¶ 374, and thus "has nothing to do with the specific footprint of the Claimed Inventions," *id.* ¶ 25. Because that is based on "markedly incorrect law," it is inadmissible. *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996).

## C. Dr. Vellturo's Non-Infringing Alternatives Opinions Are Inadmissible

Dr. Vellturo's failure to "fully analyz[e]" NIAs, *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 30, 31 (Fed. Cir. 2012), bars his opinions that alternatives were available and renders his hypothetical negotiation analysis unreliable. That failure is fatal in both royalty and lost profits cases, *contra* Opp. 11, as the availability of NIAs is "a factor relevant to the determination of a proper royalty during hypothetical negotiations." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996). Such alternatives must be "available and acceptable." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011), *overruled on other grounds*, *Halo Elecs. v. Pulse Elecs.*, 579 U.S. 93, 101 (2016).

4

Contrary to Moderna (Opp. 12), the defect in Vellturo's NIA opinions is not that he failed to perform a "quantitative analysis." Nor do Plaintiffs contend he bore a burden of proof, as was the case in *RSB Spine*. 2022 WL 17084156, at *4 (D. Del. 2022). Rather, his opinions are inadmissible because he failed to perform any analysis *at all* about the availability of NIAs. "An expert opinion is no better than the soundness of the reasons supporting it." *Perreira v. Sec'y of HHS*, 33 F.3d 1375, 1377 n.6 (Fed. Cir. 1994). Vellturo addressed only unspecified "alternative lipid formulations," Ex 1 ¶ 241, and did not consider if those alternatives were acceptable to Moderna and FDA, or could have been implemented in time. He simply opined that alternatives existed, without providing any reason they "would work," rendering his opinion unhelpful to the trier of fact. *SRI Int'l v. Internet Sec. Sys.*, 2011 WL 5166436, at *2 (D. Del. Oct. 31, 2011).

Dr. Vellturo's use of historical licenses, relying entirely on Dr. Prud'homme, Ex 4 at 265:4-7, cannot obviate this failure because Moderna could not identify any opinion from Prud'homme about alternatives available to licensees. Opp. 12. Other than its vaccine versions—also accused of infringement and thus not NIAs, *AstraZeneca*, 782 F.3d at 1340—Moderna can point only to a publication discussing broad ranges of potential formulations, Opp. 12, without any opinion that the licensees had an acceptable alternative from those ranges available. Dr. Vellturo also fails to establish that the historical licenses are economically comparable with respect to NIAs. At the hypothetical negotiation, an alternative to Plaintiffs' technology would have been far more significant for Moderna, which was on the verge of commercialization and had conducted clinical trials using the patented ratios, Ex 41 at 6, than for the historical licensees, who sought licenses for research-stage products that may not even infringe, Ex 4 (Vellturo Tr.) 159:2-20. Vellturo does not account for these plainly "economically relevant differences," *CMU v. Marvell Tech.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015). He simply urges (without support) that the historical licenses

5

"implicitly control for" NIAs. Ex 1 ¶ 242. This "*ipse dixit* of the expert" does not render his opinion admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## II. DR. PRUD'HOMME'S ERRONEOUS OPINIONS SHOULD BE EXCLUDED

### A. Dr. Prud'homme's Reliance on Unclaimed Features for DOE is Improper

Moderna does not dispute the bases for Plaintiffs' motion: that it is legal error to consider unclaimed features from the specification in the DOE analysis, Opp. 13-15; Br. 15-16, and that DOE is only asserted over lipid *amounts*, *id.* The question is thus whether Dr. Prud'homme improperly relied on unclaimed features to dispute DOE infringement. The answer is clearly yes.

Dr. Prud'homme's DOE arguments hinged on comparisons of unclaimed structures, like "ester" bonds of Moderna's SM-102 lipid and "unsaturation" of the patent's exemplary lipids. Br. 15; Ex 21 ¶¶ 550-554. Moderna does not try to defend these comparisons. It is undisputed that the claims literally cover SM-102—ester bonds and unsaturation are irrelevant. Br. 15-16. Moderna cites opinions from Prud'homme—principally in introductory or summary paragraphs—mentioning lipid concentration, Opp. 14, but the rationale and evidence he cites for his opinions clearly relied on unclaimed differences, *e.g.*, Ex 21 ¶ 551 (highlighting "Chemical features").

Moderna excuses Dr. Prud'homme's reliance on unclaimed features by arguing that Dr. Mitchell did the same. Opp. 14-17. Not so. Dr. Mitchell addressed features of the claimed lipid category, noting that *all* "cationic lipids," by definition, can carry a positive charge. Ex 22 ¶ 656; '435 patent, 12:59-61. That is a proper use of the "written description"—to "examin[e] [] the *claim*" term itself. Opp. 14. Prud'homme, by contrast, relied on differences *between* particular lipids *within* the claims, thereby adding claim limitations. Br. 15. Those opinions are improper.

Moderna justifies Dr. Prud'homme's comparisons of MC3 and SM-102, Br. 15, as "background" on "Moderna's experiments" showing "improved 'result[s],'" Opp. 15. But the cited studies, *e.g.*, Ex 21 ¶ 497 (Hassett 2019), used the *same* lipid amounts (50 mol% cationic), Ex 42

6

¶ 587, and thus address only differences in *unclaimed* elements, unlike *Warner*, Opp. 15.

Moderna similarly concedes that Prud'homme compared "manufacturing methods" but attempts to defend it as "context." Opp. 15-16. No precedent allows reliance on unclaimed features for "context," and his opinions that manufacturing steps defeat DOE *regardless of lipid amounts* are not mere context. Br. 16; *e.g.*, Ex 21 ¶ 462 (no DOE due to use of "formed" LNP).

Finally, Moderna concedes that Dr. Prud'homme read in a delivery limitation, claiming the patent's "single embodiment" is "directed to IV siRNA delivery." Opp. 16. Precedent does not support this excuse for committing the cardinal sin of patent law, Br. 19, especially as the patent *does* recite other nucleic acids and delivery modes. '435 patent, 10:26-36, 25:20-24, 62:44-61. Moderna criticizes Dr. Mitchell for citing the specification, Opp. 17, but nowhere does he read limitations into the claims. Prud'homme's reliance on unclaimed features is plainly improper.

### B. Dr. Prud'homme's Irrelevant DOE Comparisons Should be Excluded

Moderna does not dispute that the proper DOE inquiry is "whether the *accused value* is insubstantially different from the claimed value," Br. 17 (quoting *Adams*), or that the accused product need only be equivalent to *any* part of a claimed range, *id.* Dr. Prud'homme's opinions about values outside the "**scope of equivalents asserted by [Plaintiffs]**" are therefore plainly "irrelevant." *Abbott Lab'ys v. Dey, L.P.*, 287 F.3d 1097, 1107 (Fed. Cir. 2002); Br. 18-19.

Moderna argues that Dr. Prud'homme spent "almost 150 pages" "disputing Plaintiffs' DOE theories." Opp. 17. Plaintiffs do not object to his testimony to the extent it actually is a "rebut[tal]," *id.*, *about a comparison Plaintiffs allege to be equivalent* (*e.g.*, 50 vs. 48% cationic). While it is uncontested that demonstrating equivalence to a range endpoint is sufficient to establish DOE, Br. 17, if Plaintiffs allege equivalence to a value "within the claimed ranges," such as "1.5 mol% PEG," Opp. 18, Moderna can advance responsive evidence about that comparison.

However, Prud'homme should *not* be allowed to confuse the jury by comparing values *not*

7

alleged to be equivalent. Br. 17. Moderna cites no case justifying his comparisons of formulations with 57% cationic lipid, Opp. 17-18, which is not the subject of Plaintiffs' DOE assertion and contravenes law that non-equivalence to particular embodiments does not defeat DOE. Br. 17 (*CCS*, *Supernus*). Moderna also cites formulations *outside* the claims that Plaintiffs do not argue are equivalent (*e.g.*, 2:30/2:40), Br. 18—contending they are relevant to "results," Opp. 18—but these comparisons are irrelevant to the proper DOE inquiry (*e.g.*, 50 vs. 48% cationic), *Abbott* 287 F.3d at 1107. Moderna acknowledges that *Tanabe* involved "failures" with an "*alleged equivalent*," Opp. 18-19, thereby making it inapt. Moderna cites no case allowing comparisons of values *not* alleged to be equivalent. These irrelevant and confusing opinions should be excluded.

### C. Dr. Prud'homme's Other Improper Opinions Should Be Excluded

**RDOE.** Moderna states, without citation, that RDOE may "consider unclaimed aspects," Opp. 19, but ignores the contrary caselaw, Br. 19 (*Phillips*, *SRI*). Moderna also fails to explain how Plaintiffs "misconstrue[d]" Dr. Prud'homme's opinions, Opp. 19, by quoting them, Br. 19.

**Intermediate Particle Infringement**. Moderna's argument that Prud'homme's duration opinions go only to patent "value," Opp. 19, belies those opinions, Br. 20; Ex 21 at p. 376 ("No Literal Infringement"). On stability, Moderna contends only one paragraph is improper, Opp. 19 n.2, ignoring similar testimony elsewhere that, to be infringing, the particles cannot be "unstable," Ex 21 ¶ 725. Moderna cannot rewrite Dr. Prud'homme's opinions to try to correct his legal errors.

**Enablement.** On unclaimed features, Moderna agrees not to present four paragraphs, Opp. 20, but its error is not so limited, D.I. 589, 5-6. On manufacturing, it fails to explain how opinions about modes not in the patent affect whether *disclosed modes* are enabled. Br. 21 (citing *Hopkins*). On measurement, it ignores the law that claimed values impose no testing requirement. Br. 21.

**Indefiniteness.** Moderna cites no "definitional problem" created by its measurement critiques, unlike *Teva* and *Dow*. *Kaneka Corp. v. Designs for Health, Inc.*, 2025 WL 1684677, at

8

*5 (D. Del. June 16, 2025). And its answer to *SmithKline* is to wish it away, Opp. 21, ignoring contrary precedent. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1290 (Fed. Cir. 2023).

**III.     DR. ANDERSON'S HINDSIGHT OPINIONS SHOULD BE EXCLUDED**

Moderna does not dispute that the predicates of obviousness—motivation and expectation of success—cannot rely on hindsight. Opp. 21-25; Br. 22. Nor can it dispute that Dr. Anderson used hindsight by viewing "the prior art … through the lens of the" asserted patents. Ex 23 at 169:4-11, 95:11-14. Moderna focuses on prior-art enablement, Opp. 22, but prior-art enablement of the Lipid Composition Patents *is not even challenged*. And even if Anderson's use of the '651 patent was proper for enablement, his reliance on the "inventor's own path" for the distinct expectation of success inquiry mandates exclusion. Br. 22, 24 (quoting *Strathclyde*).

**Lipid Composition Patents**. Moderna gestures at Anderson's "pages of explanations" about prior art ratios, Opp. 24, yet does not even try to justify his unsupported "mix and match" opinions, Br. 23. And while Moderna cites deposition testimony supposedly offering a rationale to "arrive at the claimed ratios," Opp. 24, it fails to identify *any* such opinion with particularity. That is because there was none. Anderson could not "remember the thought process[]" underlying his arbitrary combinations, Ex 23 at 235:14-236:4, which he admitted he "select[ed]" via "the lens of the molar ratio patents," *id.* at 169:4-11. This has nothing to do with enablement. Opp. 22.

Moderna invokes "routine optimization," Opp. 24, which the Federal Circuit rejected. *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1377 (Fed. Cir. 2021). In any event, like the bare assertion of obviousness in *Innogenetics*, merely reciting routine optimization fails to provide "articulated reasoning with some rational underpinning." 512 F.3d 1363, 1373 (Fed. Cir. 2008). Anderson confirmed that hindsight underpinned his obviousness theory. Br. 23-24.

Moderna's discussion of Plaintiffs' cases, Opp. 24, confirms exclusion is appropriate. Just like *Innogenetics*, Anderson "merely listed" formulations and asserted the POSA would "mix and

9

match the molar percentages." Opp. 24; Br. 23-24. And as in *InTouch*, he "did not articulate reasons" to do so but instead used the patent as a "roadmap." Opp. 24; Br. 22-23. That "technical flaw in his analysis," Opp. 25, warrants exclusion, as it is both "contrary to the law," Br. 1, and would not be "helpful" to a "jury in avoiding … hindsight," *Innogenetics*, 512 F.3d at 1373-74.

Moderna contends that Anderson used the patent's "admissions" about "prior art." Opp. 25. But its citations address *the invention* and teach nothing regarding Anderson's prior art formulations; they thus cannot justify his arbitrary combination. Moderna's *Nomiya* case (Opp. 25) is inapt; there, the patent labeled two figures as "PRIOR ART," 509 F.2d 566, 567, 570-71 (C.C.P.A. 1975). Moderna's citations do not mention prior art, much less the art Anderson cites.

**'651 Patent**. Dr. Anderson repeatedly confirmed his reliance on the '651 patent for his obviousness opinions. Br. 24-25. Moderna asserts that, in one instance, he addressed enablement. Opp. 23. Not so. Though he initially pointed to paragraph 59, he was then asked whether "for *all of your … obviousness opinions, it's through the lens of the '651 patent*," and he confirmed that he "considered the disclosures of the '651 to analyze the prior art." Ex 23 at 135:23-136:13. And he testified that he considered the patent to assess expectation of success in evaluating purported "prior art disclosing methods achieving high nucleic acid encapsulation." Opp. 23. When asked if "a POSA *would have expected* the encapsulation process of the Semple article to work with mRNA," he responded that he used the "lens of the '651" for his "analysis of Semple." *Id.* at 120:13-121:9. He did the same with Saravolac, *id.* at 292:24-294:11, including with respect to "remov[ing] unencapsulated mRNA," Opp. 23; Ex 23 at 58:10-23. Over pages of testimony, he could not explain why "the POSA *would have expected* … to achieve 70 percent encapsulation of mRNA." *Id.* at 292:24-294:11. Dr. Anderson's testimony was plainly not "only" about enablement, Opp. 22, and Moderna's attempt to rewrite that clear deposition testimony must fail.

10

|  |  |
|---|---|
| | /s/ Nathan R. Hoeschen |
| | John W. Shaw (No. 3362) |
| | Karen E. Keller (No. 4489) |
| OF COUNSEL: | Nathan R. Hoeschen (No. 6232) |
| David I. Berl | SHAW KELLER LLP |
| Adam D. Harber | I.M. Pei Building |
| Thomas S. Fletcher | 1105 North Market Street, 12th Floor |
| Shaun P. Mahaffy | Wilmington, DE 19801 |
| Andrew L. Hoffman | (302) 298-0700 |
| Matthew W. Lachman | jshaw@shawkeller.com |
| Ricardo Leyva | kkeller@shawkeller.com |
| Arthur J. Argall III | nhoeschen@shawkeller.com |
| Falicia Elenberg | |
| Kathryn Larkin | *Attorneys for Plaintiffs* |
| WILLIAMS & CONNOLLY LLP | |
| 680 Maine Avenue S.W. | |
| Washington, DC 20024 | |
| (202) 434-5000 | |

Andrei Iancu
Jeffrey B. Wall
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500

*Attorneys for Plaintiff Genevant Sciences GmbH*


Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-6080

Kira A. Davis
MORRISON & FOERSTER LLP

11

707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500

*Attorneys for Plaintiff Arbutus Biopharma Corporation*

Dated: December 16, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

Brian P. Egan
Travis J. Murray
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

Patricia A. Carson, Ph.D.
Jeanna M. Wacker
Mark C. McLennan
Nancy Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Leslie M. Schmidt, P.C.
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
patricia.carson@kirkland.com
jeanna.wacker@kirkland.com
mark.mclennan@kirkland.com
kaye.horstman@kirkland.com
shaoyao.yu@kirkland.com
mara.greenberg@kirkland.com
leslie.schmidt@kirkland.com
andrew.lee@kirkland.com
brad.deem@kirkland.com

Alina Afinogenova
Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
alina.afinogenova@kirkland.com
noah.frank@kirkland.com

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
james.hurst@kirkland.com

Yan-Xin Li
Hannah Suh
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
yanxin.li@kirkland.com
hannah.suh@kirkland.com
lauraashley.harris@kirkland.com

Jaime A. Santos
William M. Jay
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000
jsantos@goodwinlaw.com
wjay@goodwinlaw.com

| | |
|---|---|
| Jason M. Wilcox, P.C.<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>(202) 389-5000<br>jason.wilcox@kirkland.com | Jordan Bock<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>(617) 570-1000<br>jbock@goodwinlaw.com |
| Gabriel B. Ferrante<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>(212) 813-8800<br>gferrante@goodwinlaw.com | |
| | */s/ Nathan R. Hoeschen*<br>John W. Shaw (No. 3362)<br>Karen E. Keller (No. 4489)<br>Nathan R. Hoeschen (No. 6232)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>kkeller@shawkeller.com<br>nhoeschen@shawkeller.com<br>*Attorneys for Plaintiffs/Counterclaim-Defendants* |