# EXHIBIT 33

LICENSE AND DEVELOPMENT AGREEMENT

by and between

PROVIDENCE THERAPEUTICS COVID INC.

on the one hand,

and

GENEVANT SCIENCES GMBH

on the other hand

Dated as of May 11, 2020

VAN_LAW\ 3385162\2-vG050520

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022307

## LICENSE AND DEVELOPMENT AGREEMENT

This LICENSE AND DEVELOPMENT AGREEMENT (this "Agreement") is entered into as of May 11, 2020 (the "Effective Date"), by and between (a) Providence Therapeutics Covid Inc., a corporation incorporated under the laws of Alberta having a place of business at 140 Sunhaven Close SE, Calgary, Alberta, Canada T2X2V9 ("Providence"), on the one hand, and (b) Genevant Sciences GmbH, a limited liability company organized and existing under the laws of Switzerland, having an address of Viaduktstrasse 8, 4051 Basel, Switzerland ("Genevant"), on the other hand. Capitalized terms when used in this Agreement have the meanings set forth in Article I.

WHEREAS Genevant has expertise and intellectual property relating to, among other things, LNP (as defined below) formulations for delivery of nucleic acid (such as ribonucleic acid) and methods for manufacturing LNPs;

WHEREAS Providence has expertise and intellectual property relating to mRNA (as defined below) vaccines;

WHEREAS Providence wishes to license Genevant's intellectual property for use with therapies consisting of LNP formulations for intracellular delivery of mRNA that encodes for one or more antigens for SARS-CoV-2, and Genevant is willing to grant such a license or sublicense on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, Providence and Genevant enter into this Agreement effective as of the Effective Date:

## ARTICLE I - DEFINITIONS

1.1    General. When used in this Agreement, each of the following terms, whether used in the singular or plural, shall have the meanings set forth in this Article I.

"Accounting Standards" means applicable Generally Accepted Accounting Principles in the United States (GAAP) or International Financial Reporting Standards (IFRS), as in effect from time to time, consistently applied.

"Affiliate" means, with respect to: (a) a Person (other than Genevant, but including Providence), any corporation, company, partnership, joint venture or firm that controls, is controlled by, or is under common control with such Person; and (b) Genevant, each of Genevant Sciences Ltd. and each of its direct and indirect wholly owned subsidiaries. For purposes of the foregoing sentence, "control" means (i) in the case of corporate entities, direct or indirect ownership of at least fifty percent (50%) of the stock or shares having the right to vote for the election of directors, or (ii) in the case of noncorporate entities, direct or indirect ownership of at least fifty percent (50%) of the equity interest with the power to direct the management and policies of such noncorporate entities.

"Agreement" has the meaning set forth in the introductory paragraph.

"Applicable Laws" means all applicable laws, statutes, rules, regulations, guidelines, guidances, ordinances, orders, decrees, writs, judicial or administrative decisions and the like of any nation or government, any state or other political subdivision thereof, any entity exercising executive, judicial, regulatory or administrative functions of or pertaining to government (including any

VAN_LAW\ 3385162\2

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY                    GENV-00022308

"Payload(s)" means one or more mRNA contained in or comprising a Product that encodes at least one antigen for SARS-CoV-2.

"Payload IP" means Intellectual Property directed solely to Payload(s).

"Payload Material" has the meaning set forth in Section 3.3(c).

"Payload Patent" means any Patent Controlled by Providence at the Effective Date or from time to time during the Term which solely includes claims that include a limitation to a Payload.

"Permitted Contractor" means a Third Party (e.g., a contractor or consultant) that performs activities for which Providence is responsible under this Agreement under a *bona fide* contract services arrangement; provided, however, that no LNP Company shall be a Permitted Contractor without Genevant's prior written consent (which consent may be granted or withheld in Genevant's sole discretion).

"Person" means an individual, corporation, limited liability company, syndicate, association, trust, partnership, joint venture, unincorporated organization, government agency or any agency, instrumentality or political subdivision thereof, or other entity.

"Pivotal Study" means a human clinical study of a biological or pharmaceutical product candidate that: (a) is (i) conducted in patients with a particular disease or condition in any country, (ii) conducted under the same or substantially similar protocol or IND, as each may be amended or supplemented, in any country that would satisfy the requirements of 21 US CFR Part 312.21(c) and (iii) intended to evaluate the benefit-risk relationship of such product candidate in a defined patient population that provides, alone or together with other clinical studies, an adequate basis of data to support a Marketing Authorization Approval; or (b) is a human clinical study that Providence, any of its Affiliates or any Sublicensee refers to publicly (whether in a press release, a filing with the Securities and Exchange Commission or otherwise) as an actual or potential "Phase 3," "pivotal" or "registration" study, in each case (clauses (a) and (b)) even if denominated as a Phase 2 or Phase 2/3 study.

"Proceeds" has the meaning set forth in Section 6.3(d).

"Product" means a vaccine product containing at least one mRNA that encodes at one or more antigens for SARS-CoV-2 formulated in, or comprising, a Genevant LNP; provided that, without limitation, no product that contains an mRNA that is self-replicating or part of a self-replicating RNA system is or shall be a Product.

"Project Funding" means funding of any kind, whether demominated as a grant, award, subsidy, reimbursement, research support or otherwise, awarded by any actual or quasi national, provincial, municipal or local government, governmental, regulatory or administrative authority, agency, body, branch, bureau or instrumentality of/in Canada, including the Government of Canada or any province of Canada, National Research Council, for the research, development and commercialization of a product for the Field.

"Project Funding Deadline Date" means July 31, 2020.

11

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022318

respect thereto. After successful transfer of an LNP formulation for a Product to Providence or Providence's CMO, Providence will assume responsibilities for future Manufacturing of such Product; *provided* that Genevant will provide reasonable ongoing technical support if reasonably requested by Providence subject to compensation therefor at the FTE Rate.

<u>ARTICLE IV - FINANCIAL PROVISIONS</u>

4.1    <u>Initial Payment</u>. Subject to Section 9.4, Providence shall make a one-time fully-earned, nonrefundable and noncreditable payment to Genevant in the amount of the Initial Payment upon (a) five (5) Business Days following Providence and its Affiliates collectively being awarded aggregate Project Funding in an amount at least equal to the Project Funding Threshold or (b) if earlier, fifteen (15) Business Days after such date as Genevant may request; provided that, in the event prior to the Project Funding Deadline Date, Providence and its Affiliates collectively are awarded aggregate Project Funding in an amount less than the Project Funding Threshold, (i) Providence shall promptly notify Genevant, (ii) Genevant shall have the right, upon notice to Providence, to elect to receive within ten (10) Business Days a nonrefundable and noncreditable payment from Providence in the amount of forty percent (40%) of such Project Funding without prejudice to its future right (contingent on the Project Funding Threshold) to receive the difference between such amount and ███████, and (iii) in the event Genevant makes the election, and receives the payment, set forth in clause (ii), Genevant shall be deemed to have waived its termination right in Section 9.4.

4.2    <u>FTE Retainer; Payments for R&D Support Plan, Technology Transfer, Manufacture and Supply, Regulatory Support</u>.

(a)    On the Effective Date, Providence shall pay the FTE Retainer to Genevant. The FTE Retainer shall be applied against amounts payable by Providence pursuant to Section 4.2(b)(i) (i.e., FTE costs) until exhausted.

(b)    On or before the 15th day of the last month in each Calendar Quarter, Genevant shall provide Providence with an invoice including good faith estimates of: (i) the product of the number of Genevant's FTEs to perform the R&D Support Plan for the succeeding Calendar Quarter multiplied by the FTE Rate; (ii) the cost of materials to be used by Genevant to perform the R&D Support Plan for the succeeding Calendar Quarter ███████████ and (iii) other Out-of-Pocket expenses to be incurred by Genevant to perform the R&D Support Plan for the succeeding Calendar Quarter. No later than 30 days after the date of such notice, Providence shall pay to Genevant the amount shown on such invoice. In the event the aggregate estimated amount for any quarter (A) is greater than the actual amount incurred, the excess shall be credited against the amounts estimated for the next Calendar Quarter or, if there are no more such Calendar Quarters of the R&D Support Plan, paid by Genevant to Providence within ten (10) Business Days of the end of the Calendar Quarter to which the estimate related, or (B) is less than the actual amount incurred, the shortfall shall be paid by Providence to Genevant within ten (10) Business Days of Genevant providing notice of such shortfall. Genevant shall provide reasonable supporting documentation of any excess or shortfall.

(c)    Within thirty (30) days after an invoice from Genevant with respect thereto, Providence shall: (i) reimburse Genevant for (A) materials utilized by Genevant or its Affiliates in the performance of a technology transfer pursuant to Section 3.4 or Manufacturing and supply services pursuant to Section 3.5 in an amount equal to Genevant's cost therefor ████████████ and (B) all other Out-of-Pocket expenses incurred by Genevant or its Affiliates in the performance of a

19

GENV-00022326

technology transfer pursuant to Section 3.4 or Manufacturing and supply services pursuant to Section 3.5; and (ii) pay to Genevant for time spent by employees or consultants of Genevant or its Affiliates working on a technology transfer pursuant to Section 3.4, Manufacturing and supply services or ongoing technical support pursuant to Section 3.5, or providing regulatory support pursuant to Section 5.3 or Section 5.5 in an amount calculated based on the FTE Rate.

4.3    Development Milestone Payments.  Subject to the provisions of this Article IV, for each Product, Providence shall pay to Genevant each of the following one-time (per Product) nonrefundable, noncreditable payments (each a "Development Milestone Payment") upon the first achievement of the corresponding development milestone (as set forth in the table in this Section 4.3, each a "Development Milestone") by Providence, its Affiliates or Sublicensees.  Providence shall provide written notice to Genevant of the occurrence of each Development Milestone within ten (10) Business Days of its occurrence if achieved by Providence or its Affiliates, and within ten (10) Business Days after receipt by Providence of the corresponding milestone payment from Providence's Sublicensee if achieved by a Sublicensee, and pay the corresponding Development Milestone Payment to Genevant within thirty (30) days after receipt of an invoice from Genevant therefor, as follows:

| Development Milestone | Development Milestone Payment | |
|---|---|---|
| | Development Milestone occurs: | |
| | Prior to License Conversion, if any | From or after License Conversion, if any |
| ███████████ | ██████ | ██████ |
| ███████████ | ██████ | ██████ |
| ███████████ | ██████ | ██████ |
| ███████████ | ██████ | ██████ |

If both (a) a particular Development Milestone Payment is paid for a Product and (b) Providence or its Affiliate or Sublicensee, as the case may be, subsequently discontinues Development of such Product for any reason, then such Development Milestone Payment shall be creditable against the same Development Milestone Payment that would otherwise become due for a subsequent Product and only that same Development Milestone Payment.  For example, if (i) a given Product achieves "Initiation of dosing of First Pivotal Study," (ii) the ████████████████████████████████ Development Milestone Payment is paid in respect of such Product, (iii) Providence or its Affiliate or Sublicensee, as the case may be, subsequently discontinues Development of such Product, and (iv) a subsequent Product achieves "Initiation of dosing of First Pivotal Study," then no Development Milestone Payment would be due for the subsequent Product for achieving "Initiation of dosing of First Pivotal

20

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022327

Study" but each subsequent Development Milestone Payment would become payable if the subsequent Product achieves the corresponding Development Milestone in accordance with the above table.

4.4    Commercial Milestone Payments.

(a)    Subject to the provisions of this Article IV, for all Products cumulatively, Providence shall pay to Genevant each of the following one-time nonrefundable and noncreditable payments (each, a "Commercial Milestone Payment") upon the first achievement of the corresponding sales milestone (each, a "Commercial Milestone") by Providence, its Affiliates or Sublicensees, as follows:

| | Commercial Milestone Payment | |
| --- | --- | --- |
| | Commercial Milestone occurs: | |
| ▮▮▮▮▮▮▮▮ | ▮▮▮▮▮ ▮▮ | ▮▮▮▮▮ ▮▮ |
| ▮▮▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
| ▮▮▮▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |

(b)    Each Commercial Milestone Payment shall be due to Genevant solely as of the first achievement by Providence, its Affiliates or Sublicensees of the corresponding Commercial Milestone. For clarity (i) each Commercial Milestone Payment shall be payable only on the first occurrence of the Commercial Milestone, (ii) none of the Commercial Milestone Payments shall be payable more than once regardless of how many times such Commercial Milestone is achieved and (iii) if multiple Commercial Milestones are achieved in respect of the same Calendar Year, the Commercial Milestone Payments corresponding to all of such Commercial Milestones shall be payable in respect of such Calendar Year by Providence to Genevant.

4.5    Royalty Payments. Subject to the provisions of this Article IV and except in any Calendar Quarter to the extent there is Providence Downstream Consideration that includes reasonable royalties on Product sales with respect to which Providence pays Genevant pursuant to Section 4.7, Providence shall pay to Genevant a royalty on a Product-by-Product and country-by-country basis during the Royalty Payment Term for such Product in such country (the "Royalty") equal to ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of such Product beginning with such Calendar Quarter and continuing thereafter. Following expiry of the Royalty Payment Term in respect of any Product and country (i) the licenses granted by Genevant to Providence with respect to such

21

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

Product and country become fully paid-up, sublicensable (subject to Section 2.2), royalty-free, exclusive, transferable, perpetual and irrevocable licenses and (ii) the obligation of Providence to pay any Royalty or Commercial Milestones with respect to sales of such Product in such country shall terminate. For clarity, if in any Calendar Quarter there is both Providence Downstream Consideration and Net Sales made by Providence or its Affiliates, Providence shall pay to Genevant (a) the Royalty in accordance with this Section 4.5 with respect to Net Sales made by Providence or its Affiliates and (b) the portion of such Providence Downstream Consideration called for by Section 4.7.

4.6    Royalty Reductions.



(a)    The Royalty due and payable under Section 4.5 shall be reduced, on a country-by-country and Product by-Product basis, by an amount equal to ███████████ of any royalty payments made by Providence to Third Parties for a license to Necessary Third-Party IP; provided that in no event will the Royalty payable by Providence to Genevant be less than ███████████ of the Royalty otherwise due.

(b)    The Royalty due and payable under Section 4.5 shall be reduced, on a country-by-country and Product by-Product basis, by ███████████ if there is Generic Competition for such Product in such country solely during the time such Generic Competition exists.

(c)    The Royalty due and payable under Section 4.5 shall be reduced, on a country-by-country and Product by-Product basis, by ███████████ from and after the date on which a Product is sold in a country and is not Covered by a Genevant Patent or a Joint Patent in such country and continuing for the remainder of the Royalty Payment Term for such Product and country.

(d)    If a Governmental Authority compels Providence to grant a compulsory sublicense of Licensed Intellectual Property to a Third Party with respect to a Product in any country pursuant to which Providence would receive royalties on product sales by such compulsory sublicensee at a royalty rate lower than the Royalty set out in Section 4.5, then the Royalty rate to be paid to Genevant on Net Sales of such Product made pursuant to such compulsory sublicense in such country will be reduced to the rate payable by the compulsory licensee to Providence.

(e)    Notwithstanding Sections 4.6(a) through 4.6(d), in no event shall the total of those deductions reduce the Royalty payable to Genevant with respect to a given Product in a given country in any Calendar Quarter by more than ███████████

4.7    Providence Downstream Consideration. Subject to Sections 4.9 and 4.10, Providence shall pay to Genevant an amount equal to ███████████ (to be reduced to ███████████ following the License Conversion, if any) of all Providence Downstream Consideration ███████████ ███████████ (to be reduced to ███████████ following the License Conversion, if any) in the case of Providence Downstream Consideration in the form of royalties on Product sales); provided that, notwithstanding the foregoing, no amount of Providence Downstream Consideration shall be due from Providence to Genevant in the event of a Change of Control with respect to Providence Parent if, previously, a Change of Control with respect to Providence (and not, for clarity, Providence Parent) has occurred and payment to Genevant made in accordance with this Section 4.7. Each such payment shall be due, in respect of Providence Downstream Consideration (a) from a Sublicensee, ten (10) Business Days after receipt thereof by Providence, its Affiliates or equity holders or (b) in a Change of Control, immediately upon payment thereof to Providence, its Affiliates or equity holders.

22

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022329