# EXHIBIT 37

NONEXCLUSIVE LICENSE AND DEVELOPMENT AGREEMENT

by and between

GRITSTONE ONCOLOGY, INC.

on the one hand,

and

GENEVANT SCIENCES GMBH

on the other hand

Dated as of January 15, 2021

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022689

## NONEXCLUSIVE LICENSE AGREEMENT

This NONEXCLUSIVE LICENSE AND DEVELOPMENT AGREEMENT (this "Agreement") is entered into as of January 15, 2021 (the "Effective Date"), by and between (a) Gritstone Oncology, Inc., a Delaware corporation having a place of business at 5959 Horton Street, Suite 300, Emeryville, California 94608, USA ("Gritstone"), on the one hand, and (b) Genevant Sciences GmbH, a limited liability company organized and existing under the laws of Switzerland, having an address of Viaduktstrasse 8, 4051 Basel, Switzerland ("Genevant"), on the other hand. Capitalized terms when used in this Agreement have the meanings set forth in Article I.

WHEREAS Genevant has expertise and intellectual property relating to, among other things, LNP (as defined below) formulations for delivery of nucleic acid (such as ribonucleic acid) and methods for manufacturing LNPs;

WHEREAS Gritstone has expertise and intellectual property relating to developing pharmaceutical products and methods based on the (i) identification and selection of disease-associated antigens to induce T cells or B cells by vaccination, (ii) therapeutic vaccine platforms including ChAdV (as defined below) and SAM (as defined below), (iii) research and GMP (as defined below) biomanufacturing capabilities and (iv) related technology;

WHEREAS Gritstone wishes to apply Genevant's intellectual property to Develop and Commercialize Licensed Products in the Field in the Territory (each such term as defined below); and

WHEREAS Genevant desires to grant Gritstone certain nonexclusive (sub)licenses to its intellectual property upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, Gritstone and Genevant enter into this Agreement effective as of the Effective Date:

## ARTICLE I - DEFINITIONS

1.1     General.  When used in this Agreement, each of the following terms, whether used in the singular or plural, shall have the meanings set forth in this Article I.

"Affiliate" means, with respect to: (a) a Person (other than Genevant), any corporation, company, partnership, joint venture or firm that controls, is controlled by, or is under common control with such Person; or (b) Genevant, each of Genevant Sciences Ltd. and each of its direct and indirect wholly owned subsidiaries.  For purposes of the foregoing sentence, "control" means (a) in the case of corporate entities, direct or indirect ownership of at least fifty percent (50%) of the stock or shares having the right to vote for the election of directors, or (b) in the case of noncorporate entities, direct or indirect ownership of at least fifty percent (50%) of the equity interest with the power to direct the management and policies of such noncorporate entities.

"Agreement" has the meaning set forth in the introductory paragraph.

"Agreement Activities" has the meaning set forth in Section 6.1(a)(iv).

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

supplemented, in any country, following completion of one or more Phase I Studies of such Product and with a principal purpose of evaluating the effectiveness, safety, or acceptable dose range for such Product for a particular use, as described or contemplated by 21 C.F.R. §312.21(b).

"Phase III Study" means a human clinical study (including any safety run-in to such clinical study, which for clarity shall be considered part of the same clinical study and not a separate clinical study) of a Product that: (a) is (i) conducted in patients with a particular disease or condition in any country, (ii) conducted under the same or substantially similar protocol or IND, as each may be amended or supplemented, in any country that would satisfy the requirements of U.S. 21 C.F.R. Part 312.21(c) and (iii) intended to evaluate the benefit-risk relationship of such Product in a defined patient population that provides, alone or together with other clinical studies, an adequate basis of data to support a Marketing Authorization Approval (or EUA); or (b) is a human clinical study that (i) Gritstone or any of its Affiliates refers to publicly in a press release issued, or a filing with the Securities and Exchange Commission, by Gritstone or any of its Affiliates or Sublicensees, as a (or as a potential) "Phase III," "pivotal" or "registration" study or (ii) supports a Marketing Authorization Approval (or EUA), in each case (clauses (a) and (b)) even if denominated as a Phase II study.

"Prime" means the initial vaccine that precedes the Boost vaccine.

"Proceeds" has the meaning set forth in Section 6.3(h).

"Product" means a COVID mRNA Vaccine (a) containing at least one (1) Genevant LNP and (b) where each RNA contained therein is part of a SAM and, for clarity, not a nonreplicating messenger RNA ("mRNA")), in any form, dosage or cassette composition; provided that Product does not include any product that can be used for treatment or prevention of a hepatitis B virus infection in a human.

"Product IP" means (a) all Product Patents and (b) all Product-specific Know-How, including for clarity nonclinical and clinical data.

"Product Patents" means all Patents that include at least one claim with a limitation to a Payload and wherein each claim related or directed in any respect to any LNPs (if any) or component thereof includes a limitation to a Payload.

"R&D Budget" has the meaning set forth in Section 3.2.

"R&D Support Plan" has the meaning set forth in Section 3.2.

"Receiving Party" means the Party that receives Confidential Information of the other Party.

"Record Retention Period" has the meaning set forth in Section 4.7(b).

"Regulatory Authority" means any federal, national, multinational, state, provincial or local regulatory agency, department, bureau or other governmental entity anywhere in the world with authority over the Development, Manufacture or Commercialization of a Product under this

15

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY     GENV-00022704

(A) transfer all Manufacturing Know-How to Gritstone or a Third Party CMO designated by Gritstone and (B) support Gritstone in the establishment and validation of an alternative facility for the Manufacture of such Product (the "Manufacturing Facility"). In particular, Genevant shall:

(i)    transfer to Gritstone or such CMO all tangible embodiments of all Manufacturing Know-How;

(ii)    provide Gritstone or such CMO technical assistance to implement the processes for the Manufacture of such Product, including the procurement and installation of any process and analytical equipment and, at the request of Gritstone, provide additional documentation, telephone or on-site visits; provided, however, that Gritstone shall reimburse Genevant for all travel expenses reasonably incurred at the request of Gritstone; and

(iii)    at the request of Gritstone, provide such on-site technical assistance necessary for the installation, startup and validation of the Manufacturing Facility and Manufacture of Product.

(b)    With respect to each Product, once the technology transfer is complete pursuant to this Section 3.4, Gritstone shall assume all responsibilities for future Manufacturing of such Product and any further technical support that Genevant may provide shall be at the sole reasonable expense of Gritstone.

3.5    Manufacturing and Supply.  Solely if and to the extent the Parties agree after the Effective Date on manufacturing and supply terms (including compensation therefor), Genevant will: (a) be responsible for the Manufacture and supply to Gritstone of each Product (excluding the Manufacture and supply of Payloads and SAM) for preclinical use prior to the initiation of human clinical testing of such Product, including analytical testing of LNP components; and (b) provide associated manufacturing and analytical documentation.  After successful transfer of an LNP formulation for a Product to Gritstone or Gritstone's CMO, Gritstone will assume responsibilities for future manufacturing of such Product; provided that Genevant will provide reasonable ongoing technical support if reasonably requested by Gritstone.

## ARTICLE IV - FINANCIAL PROVISIONS

4.1    Upfront Payment.  In partial consideration for the rights granted to Gritstone under this Agreement, on or before the second (2nd) Business Day following the Effective Date, Gritstone shall make a one-time fully-earned, nonrefundable and noncreditable payment to Genevant in the amount of ███████████ (the "Upfront Payment").

4.2    Payments for R&D Support Plan, Technology Transfer and Manufacture and Supply.

(a)    Gritstone shall: (i) reimburse Genevant for: (A) materials utilized by Genevant or its Affiliates in the performance of any R&D Support Plan  in an amount equal to Genevant's reasonable out-of-pocket costs therefor plus eleven percent ███████ but in no event to exceed one hundred fifteen percent (115%) of the R&D Budget under such R&D Support Plan; (B) materials utilized by Genevant or its Affiliates in the performance of a technology transfer

24

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022713

pursuant to Section 3.4 in an amount equal to Genevant's reasonable out-of-pocket costs therefor plus eleven percent ███████ and (C) all other reasonable out-of-pocket expenses incurred by Genevant or its Affiliates in the performance of an R&D Support Plan, a technology transfer pursuant to Section 3.4 ; and (ii) pay to Genevant for time spent by employees or consultants of Genevant or its Affiliates working on an R&D Support Plan (not to exceed one hundred fifteen percent (115%) of the Genevant time included in the R&D Budget under such R&D Support Plan) or a technology transfer pursuant to Section 3.4, an amount calculated based on the FTE Rate.

   (b) Within thirty (30) days after each Calendar Quarter, Genevant shall provide Gritstone with an invoice of reimbursable costs incurred in performance of any R&D Support Plan or a technology transfer pursuant to Section 3.4 (in each case as set forth in Section 4.2(a)), and Gritstone shall pay to Genevant any undisputed invoices within thirty (30) days of receipt thereof.

   4.3 <u>Development Milestone Payments</u>. Subject to the terms and conditions of this Agreement (including clauses (a)-(c) of this Section 4.3), Gritstone shall pay to Genevant each of the nonrefundable, noncreditable payments set forth in the table below (each a "<u>Development Milestone Payment</u>") upon the first achievement of the corresponding development milestone (as set forth in the table in this Section 4.3, each a "<u>Development Milestone</u>" and such table, the "<u>Development Milestone Table</u>") by Gritstone, its Affiliates or Sublicensees.

| Development Milestone | Development Milestone Payment |
|---|---|
| ███████████████ | ███████ |
| ███████████████ | ███████ |
| ███████████████ | ███████ |
| ███████████████ | ███████ |
| ███████████████ | ███████ |
| ███████████████ | ███████ |
|  |  |
|  | ███████████████ |

25

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022714



|  | 0 | 1 | 2 or 3 | 4 or more |
|---|---|---|---|---|
| ████████████████ | ████████ | ████████ | ████████ | ████████ |

For clarity: (x) each Development Milestone Payment shall be paid one time per Product; and (y) no Development Milestone for which a Development Milestone Payment has been paid for a Product shall give rise to that same Development Milestone Payment for an Improved Product with respect to that Product if such Improved Product is not administered in a human clinical trial, whether alone or with any other product, prior to the achievement of the applicable Development Milestone for such Improved Product; provided that, notwithstanding this clause (y), with respect to an Improved Product, the Development Milestone "Initiation of dosing of First Phase I Study of a Product for the Field" shall give rise to the corresponding Development Milestone Payment set forth in the Development Milestone Table (subject, for clarity, to the sentence referenced therein and identified by *). Gritstone shall provide written notice to Genevant of the occurrence of each Development Milestone within ten (10) Business Days of its occurrence and pay the corresponding Development Milestone Payment to Genevant within thirty (30) days after delivery of an invoice from Genevant therefor.

Notwithstanding the foregoing:

(a)    with respect to each Development Milestone (except as set forth in clause (b) and, if applicable, clause (c) below), if, on the date such Development Milestone is achieved, the applicable Sublicense Event has occurred and the Sublicense giving rise to such Sublicense Event is in effect, then the corresponding Development Milestone Payment amount shown in the Development Milestone Table shall not be due or payable to Genevant; provided, however, that, for clarity, any and all amounts to be paid by Gritstone pursuant to Section 4.8 (including amounts in respect of Sublicense Revenue in connection with the achievement of such Development Milestone) shall be and remain due and payable to Genevant; and

(b)    solely with respect to the Development Milestone titled "First U.S. MAA for a Product for the Field" (and subject to clause (c) below, if applicable), if, on the date such Development Milestone is achieved, the Sublicense Event has occurred and the Sublicense giving rise to such Sublicense Event is in effect, then:

(i)    if, as of the day immediately preceding the date such Development Milestone is achieved, the number of FDA-Approved COVID mRNA Vaccines is zero (0) or one (1), then the corresponding Development Milestone Payment amount shown in the Development Milestone Table shall be due and payable to Genevant notwithstanding clause (a) above (and, for clarity, no payment under Section 4.8 in respect of Sublicense Revenue in connection with the achievement of such Development Milestone shall be due or payable to Genevant); or

(ii)    if, as of the day immediately preceding the date such Development Milestone is achieved, the number of FDA-Approved COVID mRNA Vaccines is two (2) or three (3), then Gritstone shall owe Genevant the greater of (A) the amount payable by Gritstone to Genevant pursuant to Section 4.8 in respect of Sublicense Revenue in

26

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022715

connection with the achievement of such Development Milestone (such amount to be payable in accordance with Section 4.8) and (B) ███████ (such amount to be payable in accordance with the payment terms set forth above in this Section 4.3); or

(iii) if, as of the day immediately preceding the date such Development Milestone is achieved, the number of FDA-Approved COVID mRNA Vaccines is four (4) or more, then Gritstone shall pay to Genevant the amount payable pursuant to Section 4.8 in respect of Sublicense Revenue in connection with the achievement of such Development Milestone (such amount to be payable in accordance with Section 4.8).

For clarity, if for a particular Product there is not a Phase II Study conducted but there is a Phase III Study conducted, each of the ███████ and the ███████ Development Milestone Payments would be triggered upon Initiation of dosing of the first Phase III Study for such Product.

*the first Product to achieve this Development Milestone shall trigger a ███████ Development Milestone Payment in any case, but no payment shall be due for the second and subsequent Products to achieve such Development Milestone if and to the extent such achievement occurs prior to the first achievement of the Development Milestone "Initiation of dosing of First Phase II Study of a Product for the Field."

(c) In the event of EUA Achievement for a Product, Gritstone shall provide written notice to Genevant of such EUA Achievement within ten (10) Business Days of its occurrence and (x) one (but not more than one) of the following clauses (i) and (ii), whichever one is applicable, and (y) one (but not more than one) of the following clauses (iii), (iv), (v) and (vi), whichever one is applicable, shall apply, in each case solely with respect to the Development Milestone titled "First U.S. MAA for a Product for the Field":

(i) if the Sublicense Event has not occurred on or prior to, or if the Sublicense giving rise to such Sublicense Event is not in effect on, the date of EUA Achievement, then Gritstone shall pay to Genevant ███████ in accordance with the payment terms set forth above in this Section 4.3;

(ii) if the Sublicense Event has occurred on or prior to, and is effect on, the date of EUA Achievement, then Gritstone shall pay to Genevant ███████ ███████ of any Sublicense Revenue received by Gritstone in connection with EUA Achievement ("EUA Sublicense Payment") in accordance with the payment terms set forth in Section 4.8;

(iii) upon subsequent U.S. MAA for such Product for the Field, if the Sublicense Event had not occurred on or prior to EUA Achievement for such Product and either (x) has not occurred on or prior to the U.S. Approval Date for such Product or (y) has occurred prior to the U.S. Approval Date for such Product but the Sublicense giving rise to such Sublicense Event is not in effect on the U.S. Approval Date for such Product, then Gritstone shall pay to Genevant the applicable amount set forth below (for clarity in

27

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022716

lieu of the otherwise applicable amount set forth in the Development Milestone Table) in accordance with the notice and payment terms set forth above in this Section 4.3:



(iv)    upon subsequent U.S. MAA for such Product for the Field, if the Sublicense Event had occurred on or prior to EUA Achievement for such Product, and if the Sublicense giving rise to such Sublicense Event is in effect on the U.S. Approval Date for such Product, then Gritstone shall pay to Genevant the applicable amount set forth below (for clarity in lieu of the otherwise applicable amount set forth in the Development Milestone Table), in each case in accordance with the notice terms set forth above in this Section 4.3 and the payment terms set forth above in this Section 4.3 or in Section 4.8, whichever is applicable:



28

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022717



(v)　upon subsequent U.S. MAA for such Product for the Field, if the Sublicense Event had occurred on or prior to the EUA Achievement for such Product, but the Sublicense giving rise to such Sublicense Event is not in effect on the U.S. Approval Date for such Product, then Gritstone shall pay to Genevant the applicable amount set forth below (for clarity in lieu of the otherwise applicable amount set forth in the Development Milestone Table), in each case in accordance with the notice and payment terms set forth above in this Section 4.3:

(A)



(vi)　upon subsequent U.S. MAA for such Product for the Field, if the Sublicense Event had not occurred on or prior to EUA Achievement for such Product, but has occurred on or prior to the U.S. Approval Date for such Product and the Sublicense giving rise to such Sublicense Event is in effect on the U.S. Approval Date for such Product, then Gritstone shall pay to Genevant the applicable amount set forth below (for

29

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022718

clarity in lieu of the otherwise applicable amount set forth in the Development Milestone Table), in each case in accordance with the notice and payment terms set forth above in this Section 4.3:

(A)

4.4    Commercial Milestone Payments.

(a)    Subject to the terms and conditions of this Agreement, Gritstone shall pay to Genevant for each Product each of the nonrefundable and noncreditable payments set forth in the table below (each, a "Commercial Milestone Payment") upon the first achievement of the corresponding sales milestone for such Product (each, a "Commercial Milestone") by Gritstone, its Affiliates or Sublicensees; provided that, if, with respect to each Commercial Milestone, on the first day of the Calendar Year with respect to which such Commercial Milestone is achieved, the Sublicense Event has occurred and the Sublicense giving rise to such Sublicense Event is in effect as of the last day of the Calendar Year with respect to which such Commercial Milestone is achieved, then: (i) the corresponding Commercial Milestone Payment amount shown below shall not be due or payable to Genevant; provided, however, that, for clarity, any and all amounts to be paid by Gritstone pursuant to Section 4.8 (including amounts in respect of Sublicense Revenue in connection with the achievement of such Commercial Milestone) shall be and remain due and payable to Genevant; and (ii) notwithstanding clause (i) above, if, as of the day immediately preceding the U.S. Approval Date (or, if applicable, EUA Achievement) for such Product, the number of FDA-Approved COVID mRNA Vaccines is zero (0) or one (1), then Gritstone shall owe Genevant the greater of (A) the amount payable by Gritstone to Genevant pursuant to Section 4.8 in respect of Sublicense Revenue in connection with the achievement of such Commercial Milestone (such amount to be payable in accordance with Section 4.8) and (B) the Commercial Milestone Payment shown below corresponding to such Commercial Milestone (such amount to be payable in accordance with Section 4.10(b)).

| Commercial Milestone | Commercial Milestone Payment |
|---|---|
| ███████████████████ | ██████ |

30

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY



(b)    For each Product, each Commercial Milestone Payment shall be due to Genevant solely as of the first achievement by Gritstone, its Affiliates or Sublicensees of the corresponding Commercial Milestone. For the avoidance of doubt, for each Product: (i) each Commercial Milestone Payment shall be payable only on the first occurrence of the Commercial Milestone; (ii) none of the Commercial Milestone Payments shall be payable more than once regardless of how many times such Commercial Milestone is achieved; and (iii) if for any Calendar Year more than one Commercial Milestone is achieved, the Commercial Milestone Payments in respect of all such achieved Commercial Milestones shall be due and payable.

4.5    Royalty Payments. Gritstone shall pay to Genevant the royalty on Net Sales set forth below on a Product-by-Product and country-by-country basis during the Royalty Payment Term for such Product in such country (the "Royalty"):



provided that, notwithstanding the foregoing, with respect to any Product:

(a)    if both: (i) as of the day immediately preceding the U.S. Approval Date for such Product, the number of FDA-Approved COVID mRNA Vaccines is at least two (2); and (ii) as of the first day of any Calendar Quarter, the Sublicense Event has occurred and the Sublicense giving rise to such Sublicense Event is in effect as of the last day of such Calendar Quarter, then the Royalty shown above shall not be due or payable to Genevant for such Calendar Quarter and, in lieu of such Royalty (and without limiting or otherwise affecting amounts that may be payable to Genevant as provided in Section 4.4), Gritstone shall pay to Genevant ▇▇▇▇▇▇▇▇ of the Sublicense Revenue received by Gritstone in connection with the sales of such Product for such Calendar Quarter as set forth in Section 4.8; and

31

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022720

(b)    in the event that, prior to receipt of U.S. MAA for such Product for the Field, Gritstone or any of its Affiliates receives EUA Achievement for such Product, then the following clauses (i) and (ii) shall apply solely with respect to sales of such Product invoiced prior to the U.S. Approval Date for such Product:

(i)    if there is no Sublicense Event, or if the Sublicense Event occurs but the Sublicense giving rise to such Sublicense Event is not in effect as of the last day of a Calendar Quarter, the royalty rate applicable to sales of such Product for such Calendar Quarter shall be ███████████████████████████████ and

(ii)    from and after the Sublicense Event and for as long as the Sublicense giving rise to such Sublicense Event is in effect: (A) no Royalty shall be due or payable to Genevant with respect to sales of such Product in the United States or, to the extent within the territorial scope of the Sublicense giving rise to the Sublicense Event, otherwise in the Territory and, in lieu of such Royalty, Gritstone shall pay to Genevant ███████████ ████ of the Sublicense Revenue received by Gritstone in connection with such sales as set forth in Section 4.8; and (B) the royalty rate applicable to sales of such Product in the Territory but outside of territorial scope of the Sublicense giving rise to such Sublicense Event shall be as provided in clause (i) above.

Following expiry of the Royalty Payment Term in respect of any Product or country (x) the licenses granted by Genevant to Gritstone with respect to such Product and country become fully paid-up, sublicensable (subject to Section 2.2), royalty-free, exclusive, transferable, perpetual and irrevocable licenses, and (y) the obligation of Gritstone to pay any Royalty or Commercial Milestones with respect to sales of such Product in such country shall terminate.

4.6    Royalty Reductions.

(a)    (i) The Royalty due and payable under Section 4.5 for a Calendar Quarter with respect to a Product shall be reduced, on a country-by-country basis, by an amount equal to ███████████████ of any payments (including upfront payments, royalties, milestones, amounts paid in settlement) made by Gritstone, its Affiliates or Sublicensees to Third Parties in such Calendar Quarter specifically in consideration for a license or other right to exploit such Necessary Third-Party IP with respect to such Product; and (ii) if during the Royalty Payment Term for a Product and country, the manufacture, use and sale of such Product becomes no longer Covered by at least one Valid Claim in such country, the Royalty due and payable under Section 4.5 in respect of such Product and country shall thereafter be reduced by ██████████ during the remainder of the Royalty Payment Term for such Product and country; provided that, notwithstanding clauses (i) and (ii) above, in no event will the Royalty payable by Gritstone to Genevant for any Calendar Quarter be less than ██████████ of the Royalty otherwise due under Section 4.5. For clarity, the foregoing reduction shall only be made to the Royalty payable by Gritstone to Genevant with respect to such Product and, without limiting the generality of the foregoing, shall not be deducted or refundable from any Upfront Payment, Development Milestone Payment, Commercial Milestone Payment or other amount paid or payable by Gritstone to Genevant under this Agreement.

32

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022721

(b)    Upon commencement of Generic Competition with respect to a Product in a country, the Royalty due and payable under Section 4.5 in respect of such Product and country shall be reduced by ▐▐▐▐▐▐▐▐▐▐ during the remainder of the Royalty Payment Term for such Product and country.

4.7    Royalty Reports; Expense Reports; Records and Audits.

(a)    Within seventy-five (75) days after the end of each Calendar Quarter during which at least one (1) Royalty Payment Term is in effect, Gritstone shall provide to Genevant a written report on a Product-by-Product and country-by-country basis (in electronic form) that includes, for each Calendar Quarter, (i) the gross invoiced sales and the Net Sales of all Products, and (ii) the calculated amount of the Royalty owed by Gritstone to Genevant in respect of the sale of such Products.

(b)    Until the third (3rd) anniversary of the date any book or record is created or such longer period required by Applicable Laws (the "Record Retention Period"), Gritstone shall maintain and retain complete and accurate books of account and records covering all transactions relating to payment of amounts that may be due under this Article IV.  Upon the reasonable advance notice of Genevant (of at least thirty (30) days), Gritstone shall make such books and records available for inspection and audit by Genevant's authorized representative (which shall be a national certified public accounting firm designated by Genevant and reasonably acceptable to Gritstone), subject to reasonable precautions to protect the Confidential Information of Gritstone. Such examinations may not be conducted more than once in any twelve (12) month period and going back only during the Record Retention Period after receipt of the respective invoice and report. All audits must be conducted during normal business hours of Gritstone and conducted in a manner so as to minimize the impact on the normal operations of Gritstone. The accounting firm conducting any such audit must provide a report of its findings of any such audit to both Parties, may only identify in such report whether the amount of Royalty paid was correct and the actual amount of Royalty payable and may not disclose any other Confidential Information of Gritstone. The auditor's report and all other information disclosed to the auditor or generated by the auditor in such audit shall be the Confidential Information of Gritstone.  Genevant shall pay the cost of such audits unless it discovers that Gritstone has underreported aggregate Royalty during the applicable examination period by an amount equal to or greater than five percent (5%), in which case the costs of such audit shall be borne by Gritstone. If an audit reveals an underpayment or overpayment, the Party responsible for making payment shall promptly pay to the other Party the amount of the underpayment or overpayment discovered unpaid under this Section 4.7(b), subject to Section 4.10(d).

4.8    Sublicense Revenue.  Unless and to the extent otherwise provided in Sections 4.3(b)(i), 4.3(b)(ii), 4.3(c), 4.4(a)(ii), or 4.5, upon each occurrence of receipt of Sublicense Revenue by Gritstone or any of its Affiliates, Gritstone shall within twenty (20) Business Days after such receipt make a nonrefundable and noncreditable payment to Genevant in an amount

33

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY

GENV-00022722