IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MODERNA, INC. and MODERNATX, INC. | ) ) ) ) | C.A. No. 22-252 (JDW) |
| Defendants. | ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**MODERNA'S _DAUBERT_ REPLY**

## TABLE OF CONTENTS

I.   **Plaintiffs Identify No Reason to Admit Ms. Lawton's Opinions** ................................... 1

    A.   Ms. Lawton's Analytical Method Should Be Excluded ......................................... 1

    B.   Ms. Lawton's Hypothetical Negotiation Approach Fails *Daubert* Scrutiny ......... 2

    C.   Ms. Lawton Has No Basis to Offer Willfulness or Other Opinions ...................... 5

II.  **Dr. Schuster's Testing Remains Unreliable and Should Be Excluded** ........................ 6

III. **Dr. Mitchell's Intent and State of Mind Opinions Should Be Excluded** .................... 9

IV.  **Messrs. Pitts' and Brill's Policy Opinions on § 1498 Are Improper** ......................... 10

# TABLE OF AUTHORITIES[1]

**Cases**                                                                                  **Page(s)**

*Actuate Corp. v. Aon Corp.*,
   Civ. No. C 10-05750 WHA, 2012 WL 2285187 (N.D. Cal. June 18, 2012).....................6

*Aqua Shield v. Inter Pool Cover Team*,
   774 F.3d 766 (Fed. Cir. 2014)..........................................................................5

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015)........................................................................5

*Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*,
   Civ. No. CV 12-2706 (JRT/LIB), 2017 WL 758335 (D. Minn. Feb. 24, 2017)...............10

*Centripetal Networks, LLC v. Palo Alto Networks, Inc.*,
   Civ. No. 2:21cv137, 2024 WL 380972 (E.D. Va. Jan. 30, 2024).........................................3

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
   350 F. Supp. 2d 582 (D. Del. 2004)...................................................................10

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004) ...................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)........................................................................................8

*Del. State Univ. v. Thomas Co., Inc.*,
   Civ. No. CV 155-1144-LPS-MPT, 2020 WL 6799605 (D. Del. Nov. 19, 2020)...............7

*DSM IP Assets v. Lallemand Specs.*,
   Civ. No. 16-CV-497-WMC, 2018 WL 1950413 (W.D. Wis. Apr. 25, 2018) ....................4

*Genuine Enabling Tech. v. Sony Corp.*,
   Civ. No. 17-135, Dkt. 282 (D. Del. Nov. 1, 2021) ............................................4

*GREE, Inc. v. Supercell Oy*,
   No. 2:19-CV-00070-JRG-RSP, 2020 WL 4288350 (E.D. Tex. July 27, 2020) .................9

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983)........................................................................5

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)........................................................................5

---

[1] Unless otherwise indicated, all emphasis has been added, and internal quotation marks, brackets, and citations have been omitted and otherwise cleaned up from quoted material.

*I-Mab Biopharma v. Inhibrx, Inc.*,
  Civ. No. CV 22-276-CJB, 2024 WL 4581539 (D. Del. Oct. 21, 2024) ............................5

*In re Zantac (Ranitidine) Litig.*,
  644 F.Supp.3d 1075 (S.D. Fla. 2022) ..................................................................8

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II) MDL 2502*,
  892 F.3d 624 (4th Cir. 2018) ............................................................................9

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  Civ. No. 2:06-CV-1797, 2015 WL 6750899 (E.D. Pa. Nov. 5, 2015) ..............................9

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..............................................................................3

*LKQ Corp. v. Gen. Motors Co.*,
  Civ. No. 20 CV 2753, 2024 WL 4093240 (N.D. Ill. May 17, 2024)..................................2

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)..........................................................................1

*Metaswitch Networks Ltd. v. Genband US LLC*,
  Civ. No. 2:14-CV-744-JRG-RSP, 2016 WL 874737 (E.D. Tex. Mar. 5, 2016).................2

*MHL Custom, Inc. v. Waydoo USA, Inc.*,
  Civ. No. CV 21-0091-RGA, 2023 WL 5748755 (D. Del. Sept. 6, 2023)..........................3

*Novozymes A/S v. Genencor Int'l, Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007)..................................................................1

*Omega Pats., LLC v. Calamp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ........................................................................4

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
  106 F. Supp. 3d 369 (S.D.N.Y. 2015)..............................................................5

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  Civ. No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019)..........10

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  655 F. Supp. 3d 1002 (S.D. Cal. 2023)............................................................10

*Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*,
  387 F. Supp. 3d 404 (D. Del. 2018)..................................................................4

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
  Civ. No. CV 19-1515-RGA, 2022 WL 17084156 (D. Del. Nov. 18, 2022)......................3

*TWM Mfg. Co. v. Dura Corp.*,
  789 F.2d 895 (Fed. Cir. 1986)..............................................................................................1

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011).............................................................................................4

*Victaulic Co. v. ASC Engineered Sols., LLC*,
  Civ. No. CV 20-887-GBW, 2022 WL 17250376 (D. Del. Nov. 28, 2022).......................6

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
  Civ. No. 1:17-cv-00770-JDW-MPT, 2024 WL 166833 (D. Del. Jan. 16, 2024) ...............9

iv

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Description |
|---|---|
| § 1498 | 28 U.S.C. §1498(a) |
| '435 Patent | U.S. Patent No. 9,364,435 |
| '651 Patent | U.S. Patent No. 9,504,651 |
| Arbutus | Arbutus Biopharma Corp. |
| Br. | Moderna's *Daubert* Motion |
| Chula | Chulalongkorn University |
| *G-P* | *Georgia-Pacific* |
| Genevant | Genevant Sciences GmbH |
| LNP | Lipid nanoparticle |
| Moderna | Moderna, Inc. and ModernaTX, Inc. collectively |
| mol% | Molar amount of a substance is the amount of that substance measured in moles. A mole is a unit of measurement to express amounts of a chemical substance. Molar percentage of a lipid in a mixture refers to the proportion of moles of a specific lipid relative to the total moles of all lipids. |
| Patents-in-Suit | U.S. Patent Nos. 9,504,651; 9,364,435; 8,492,359; and 11,141,378 |
| Plaintiffs | Arbutus and Genevant collectively |
| Ratio Patents | U.S. Patent Nos. 9,364,435; 8,492,359; and 11,141,378 |
| Opp. | Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion |
| UC | Ultracentrifugation |
| USG | U.S. Government |

**TABLE OF EXHIBITS**

| Exhibit # | Exhibit Description |
|---|---|
| A | Excerpts from the November 25, 2024 Expert Report of Catharine M. Lawton |
| B | Excerpts from the February 14, 2025 Rebuttal Expert Report of Catharine M. Lawton (dated February 14, 2025) |
| C | Excerpts from the March 21, 2025 Reply Expert Report of Catharine M. Lawton |
| D | Excerpts from the Deposition Transcript of Catharine M. Lawton (April 30, 2025) |
| E | Excerpts from the November 25, 2024 Opening Expert Report of Dr. Michael Mitchell |
| F | Excerpts from the Reply Expert Report of Dr. Michael Mitchell |
| G | Excerpts from the November 24, 2024 Opening Expert Report of Dr. Georg Schuster of Coriolis Pharma |
| H | Excerpts from the Deposition Transcript Dr. Georg Schuster (April 11, 2025) |
| I | Excerpts from the February 11, 2025 Rebuttal Expert Report of Owen Shea Fenton, Ph.D. |
| J | Excerpts from the February 14, 2025 Rebuttal Expert Report of Robert Prud'homme, Ph.D. |
| K | Excerpts from the August 4, 2025 Third Sur-Reply Expert Report of Robert Prud'homme, Ph.D. |
| L | Excerpts from the Deposition Transcript of Dr. Georg Schuster (August 6, 2025) |
| M | Excerpts from the February 14, 2025 Rebuttal Expert Report of Peter J. Pitts |
| N | Excerpts from the February 14, 2024 [sic] Responsive Expert Report of Alex M. Brill |
| O | Excerpts from the Deposition Transcript of J. Schariter (May 8, 2024) |
| P | Excerpts from the Deposition Transcript of D. Parsons (June 7, 2024) |
| Q | G. Schuster Presentation to Plaintiffs' Counsel (dated September 18, 2024) (GENV-01102754) |
| R | Genevant Sciences GMBH License (GENV-00023616) |
| S | Genevant Sciences GMBH License (GENV-00022307) |

| Exhibit # | Exhibit Description |
|---|---|
| T | Excerpts from the Deposition Transcript of Dr. Michael Mitchell (April 30, 2025) |
| U | Excerpts from the Reply Expert Report of Dr. Georg Schuster (March 19, 2025) |
| V | Excerpts from the January 28, 2025 First Supplemental Expert Report of Catharine M. Lawton |
| W | Moderna PowerPoint Presentation (MRNA-GEN-02645690) |
| X | Excerpts of Moderna's Volume II: Cost Proposal (MRNA-GEN-01122003) |
| Y | Letter dated May 31, 2020 (HHS-0000829) |
| Z | Moderna's PowerPoint Presentation (MRNA-GEN-02645641) |
| AA | November 25, 2024 Opening Report of Dr. Frederick W. Porter, Ph.D. |
| BB | Email dated March 23, 2021 (MRNA-GEN-01742359) |
| CC | Excerpts from the February 23, 2024 Expert Report of James E. Malackowski in *ModernaTX, Inc. v. Pfizer Inc.*, Civil No. 1:22-cv-11378 (D. Mass) (MRNA-GEN-01742359) |
| DD | Moderna's PowerPoint Presentation (MRNA-GEN-02645641) |
| EE | Schuster Testing Data spreadsheet (GENV-01102696) |
| FF | Moderna's PowerPoint Presentation (MRNA-GEN-02644934) |
| GG | Coriolis Pharma Qualification Report on Lipid composition analysis of fractionated LNP samples (November 24, 2024) |
| HH | Moderna's PowerPoint Presentation (MRNA-GEN-00949251) |
| II | P. Wang, et al, 2019 Q4 Process and Product Consistency Whitepaper: Drug Product Heterogeneity Update (MRNA-GEN-00896095) |
| JJ | Moderna's Report (MRNA-GEN-00736476) |
| KK | Email dated October 4, 2020 (MRNA-GEN-01274243) |
| LL | *Esco Group LLC v. Deere & Company*, Civil No. 20-cv-1679-WCB, Dkt. No. 283, Memorandum Opinion and Order (D. Del. June 22, 2023) |
| MM | Moderna's PowerPoint Presentation (MRNA-GEN-01062619) |
| NN | Excerpts from the deposition transcript of Kerry Benenato, Ph. D. (May 17, 2024) |
| OO | Moderna's PowerPoint Presentation (MRNA-GEN-01747429) |
| PP | Excerpts from the deposition transcript of Said E. Francis (May 22, 2024) |

| Exhibit # | Exhibit Description |
|---|---|
| QQ | Excerpts from the April 9, 2025 Sur-Reply Expert Report of Owen Shea Fenton, Ph.D. |
| RR | Excerpts from the April 9, 2025 Sur-Reply Report of Robert Prud'homme, Ph.D. |

## I.    PLAINTIFFS IDENTIFY NO REASON TO ADMIT MS. LAWTON'S OPINIONS

### A.    Ms. Lawton's Analytical Method Should Be Excluded

Plaintiffs do not identify a ***single*** case endorsing Ms. Lawton's version of the analytical method (subtracting two different estimated profits for the ***same*** accused product), and Plaintiffs cannot meet their burden to establish her opinion is admissible. Opp. 1, 3-5. *First*, Plaintiffs claim that Ms. Lawton's opinion "fits" the facts because she relied on "acceptable" profit as one of her inputs. *Id.* 1, 4. But Ms. Lawton did not label anything as Moderna's "acceptable" profit (or "usual" profit, for that matter). Ex-A ¶¶1212-90, Sched. 3.1; Ex-C ¶¶410-59. Plaintiffs' attorney-crafted defense does not change the fact that her so-called "acceptable" profit is for the ***same accused product*** for which she also calculated "anticipated [net] profit." Using two profit figures for the same product defeats the analytical method's entire purpose. Br. 6-7. Plaintiffs identify no economic principle or authority that supports her approach, and the cases they cite confirm the opposite: "anticipated" and "acceptable" profits ***cannot*** be calculated using the ***same*** product. Opp. 4 (citing cases where "normal industry net profit," which by definition is ***not*** based on the accused product, may be used as "usual *or* acceptable" profit); *Novozymes*, 474 F. Supp. 2d at 606 (comparing accused product to separate *non-infringing* product). *Lucent* does not involve the analytical method at all; the quoted portion merely notes that ***one*** of the two inputs "focuses on the infringer's projections of profit for the infringing product." 580 F.3d at 1324. Likewise, in *TWM*, industry standard profits for truck parts were subtracted from anticipated profits for the accused parts. 789 F.2d at 899. Plaintiffs are left pointing to a single place where Moderna misquoted the analytical method as requiring "usual *and* acceptable" profit. Br. 6. But Moderna correctly applied the disjunctive standard. *Id*. 5-7. Ms. Lawton did not.

*Second*, Plaintiffs suggest that Ms. Lawton's own testimony that one of her inputs ($6.10) was ***both*** Moderna's "anticipated" profit and Moderna's "usual or acceptable" profit (and the

resulting $0 in damages) is a matter for cross. Opp 5. It is not. Her reports do not identify what she purports to be her two analytical method inputs for "anticipated" profit and "acceptable" profit, and her testimony demonstrated that she believed $6.10 served as **both**. Br. 7; *compare* Ex-D 132:21-133:9, 263:7-10 ($6.10 is Moderna's usual or acceptable net profit) *with* 134:2-135:18 ("anticipated profit [] used in the analytical approach analysis is the $6.10"). While Plaintiffs claim that Ms. Lawton clarified this "elsewhere" (Opp. 5), they cite nothing in support. Unlike *LKQ*, 2024 WL 4093240, at *5, where the expert correctly stated the legal standards in his report, but not at deposition, Ms. Lawton admitted her analysis was unreliable. Br. 7. Exclusion is required.

*Finally*, Plaintiffs claim that separate from her unreliable subtraction, Ms. Lawton does some apportionment. Opp. 3. That does not salvage her opinion. In *Metaswitch*, Plaintiffs' sole authority, the expert **correctly** performed the analytical method—comparing profits from products **not** accused (G2/G6) with profits from the accused product (G9). 2016 WL 874737, at *4-5. Ms. Lawton did nothing of the sort. Invoking "apportionment" cannot cure an analytical method opinion that fails as a threshold because it lacks fit and reliability.

## B.    Ms. Lawton's Hypothetical Negotiation Approach Fails *Daubert* Scrutiny

None of Plaintiff's arguments regarding Ms. Lawton's hypothetical negotiation approach has merit. *First*, Plaintiffs claim her analysis started with a 50/50 split based on Plaintiffs' technical experts rather than non-comparable licenses. Opp. 6-7 (citing Ex. A ¶¶ 1389-1392). That is false: Plaintiffs cite *the end* of Ms. Lawton's hypothetical negotiation section, and in the cited paragraphs, she explicitly states her reliance on technical experts was "independent of" her *preceding* "profit split apportionment analysis" based on non-comparable licenses. *See also* Opp. 7 (citing Ex-A ¶1264 in *analytical method* opinion). Moreover, these paragraphs simply confirm her lack of apportionment. Plaintiffs' experts opined that at least 50% should be attributed **to LNP**, Opp. 6—**not** the specific LNP technology allegedly claimed in the Patents-in-Suit. And even if the

patents were "enabling," that does not excuse the requirement to apportion. *LaserDynamics*, 694 F.3d at 68 (apportionment required even if patents are "valuable, important, or even essential"); Br. 8-9, 12-13. The "detailed apportionment" (Opp. 8) Plaintiffs reference is nowhere to be found.

*Second*, Plaintiffs claim that Ms. Lawton appropriately created a 20-50% bargaining range based on the above 50%/50% split. Opp. 7-8, 11-12; Ex-A ¶1531. Yet Plaintiffs acknowledge that was **not** her analysis, as they defend her use of a 2013 unaccepted offer, which Ms. Lawton opines puts the floor at a **11%**/89% split. Opp. 11. Moreover, as her report makes clear, she used four non-comparable datapoints (Br. 7-12), which she dubs "markers of value for licensing rights" to create her "negotiation range" of 11%/89% to 50%/50%. Ex-A ¶¶1532, 1373-74. Plaintiffs do not defend Ms. Lawton's actual analysis, and their attorney argument fares no better. For example, Plaintiffs claim that Ms. Lawton arrived at her 20-50% bargaining range based on the "comparability" of certain agreements. Opp. 7 (citing Ex-A ¶¶906, 1377). But in those paragraphs, Ms. Lawton concludes that there are 6 "cardinal differences," and **no** similarities, between Plaintiffs' own licenses and the hypothetical negotiation. Plaintiffs also point to Mr. Zorn's testimony, Opp. 9-10, but Mr. Zorn testified the Patents-in-Suit did not drive those agreements, which means a license for the Patents-in-Suit alone should be **less**, not more. Plaintiffs' cases (which *did* involve an apportionment analysis) do not excuse Ms. Lawton's failure to apportion. *Centripetal*, 2024 WL 380972, at *5 (non-asserted patents *were* considered and deemed "not a factor" in the value of the comparable agreement); *MHL Custom*, 2023 WL 5748755, at *11 (similar); *RSB Spine*, 2022 WL 17084156, at *2 (similar).

Plaintiffs also contend that Ms. Lawton considered "distinguishing" facts for Moderna's collaboration agreements. Opp. 10. But in the cited portions of her reports, Ms. Lawton claims the parties would agree to a similar ▮▮▮▮ structure ▮▮▮▮▮▮ as Moderna's agreements, and

would "adjust[]" ██████████████ to account for the value of the technology and the absence of ongoing development work. *Id*. Nowhere does Ms. Lawton explain **how** she accounts for those differences (*e.g.*, ███████████████████████████████████████████████████████ ███s). The law requires her to do so. *Omega Pats.*, 13 F.4th at 1380 (expert excluded for "fail[ure] to adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation over a [naked]-patent license"). Plaintiffs are thus left to try to justify Ms. Lawton's opinion based on analysis done by a Moderna expert in a *different* case, with *different* parties, and *different* patents. Opp. 10. "Someone else once said" is not reliable expert analysis.

    *Third*, Plaintiffs claim Ms. Lawton's final 25%/75% split is reliable because it is on the low-end of her unreliable range, which is not a justification, *Uniloc*, 632 F.3d at 1319-20; and ██ ████████████████████████████████████████████████ which she deemed to have "minimal" comparability and refused to confirm whether that split was apportioned. Br. 11. Simply put, there is nothing in Ms. Lawton's *Georgia-Pacific* analysis (despite its many pages) that provides a reliable explanation for her "final" profit split. None of Plaintiffs' cases endorse such an approach. *DSM*, 2018 WL 1950413, at *5, *7 (expert adjusted 50% split to 40-50% split based on two *G-P* factors); *Genuine Enabling Tech. v. Sony Corp.*, No. 17-135 (D. Del. Nov. 1, 2021), Dkt. 282 at 16 (expert arrived at 50/50 split of actual profits based on *G-P* analysis and Sony's willingness to give up profits to third-party manufacturer of accused product); *Plastic Omnium*, 387 F. Supp. 3d at 411-12 (expert must provide an explanation of both **why and how** certain *G-P* factors lead to the proposed royalty rate). Moderna is not, as Plaintiffs suggest, demanding too much precision. Opp. 12-13. Moderna is simply noting that a party seeking over $5 billion in damages must offer **some** reliable methodology. Ms. Lawton has offered none.

    *Finally*, Plaintiffs cannot justify Ms. Lawton's reliance on projections from May 2020, to

the exclusion of real-world financial data. Opp. 13-14. In *Aqua Shield* and *Hanson*, 718 F.2d at 1081, the issue was whether the royalty needed to leave the infringer with "profits" (not Moderna's argument)—not whether the damages expert could put on blinders to what happened in the real world (Moderna's argument). Indeed, while Plaintiffs claim *Aqua Shield* "obviates the need to rely on actual profits," Opp. 14, it says the opposite: "[e]vidence of the infringer's actual profits generally is admissible as probative of his anticipated profits." *Aqua Shield*, 774 F.3d at 772. Moreover, Plaintiffs defend Ms. Lawton profit split based on an Oct. 2020 agreement, yet claim she reliably ignores that, as of Aug. 2020, Moderna's government contract set pricing at about 50% of what had estimated in May. *Interactive Pictures* made clear that its holding is limited to lump sum damages theories (Ms. Lawton's is a running royalty). 274 F.3d at 1384. In *On Track*, the issue was the use of market data to substantiate high and low projections (not what Ms. Lawton does). 106 F. Supp. at 408-410. Simply put, Plaintiffs cite no case where an expert "split" profits that no party actually earned, which is what Ms. Lawton does.

### C.    Ms. Lawton Has No Basis to Offer Willfulness or Other Opinions

Plaintiffs confirm they plan to leverage Ms. Lawton to introduce highly prejudicial evidence, and they cite no supporting case. *AstraZeneca*, 782 F.3d at 1334-35 (damages expert opined on damages issues, not intent); *I-Mab Biopharma*, 2024 WL 4581539, at *2-3 (excluding expert for "clearly opining" about state of mind). Plaintiffs claim Ms. Lawton will not testify about her report section headers, but they plainly intend for her to testify about how Moderna's alleged "false claims regarding its continued use" of the Patents-in-Suit impacted Plaintiffs' other offers (Ex-C ¶334), and how Plaintiffs would seek a payment structure such that Moderna could not "cheat" on its royalty obligations given "Moderna's long history of 'misrepresentations'" (*id.* ¶512). Plaintiffs claim this is relevant to non-infringing alternatives (Opp. 15), which is a technical analysis Ms. Lawton cannot do. Plaintiffs also contend Ms. Lawton's discussion about Moderna's

"motivations" to transition from MC3 to SM-102 rebuts the "value of SM-102 and its effect on apportionment." Opp. 16. But her non-existent apportionment analysis did no such thing. Ex-A ¶¶499-501, 1230, 1260-76, 1362-69, 1389-92, Sched. 3.3. Plaintiffs further claim that Moderna's alleged stock manipulation "forms one 'subtraction'" for her analytical method, Opp. 16, yet Ms. Lawton testified "I don't think that my opinion would change" if she could not reference Moderna's stock sales. Ex-D 65:22-70:20. Plaintiffs also want Ms. Lawton to recite for the jury the content of various publications. Opp. 15-16; Ex-A ¶¶117-20 (quoting excerpts impugning Moderna's "paranoid" CEO). They make no effort to tie this to damages, nor does Ms. Lawton have "specialized" knowledge on these "facts." *Victaulic Co. v. ASC Engineered Sols., LLC*, 2022 WL 17250376, at *7 (D. Del. Nov. 28, 2022) (excluding opinion regarding witness's "evasiveness" because expert lacked specialized knowledge and opinion was "not of a technical or scientific nature"). While "Moderna's sales, costs, and estimated value of its vaccine" may be relevant to damages, it requires no testimony on Moderna's intent. Ms. Lawton is not qualified to determine whether certain statements are "false," nor is that permissible expert testimony. *Actuate Corp. v. Aon Corp.*, 2012 WL 2285187, at *1 (N.D. Cal. June 18, 2012) ("expert cannot tell the jury whose version of events is truthful").

## II.    DR. SCHUSTER'S TESTING REMAINS UNRELIABLE AND SHOULD BE EXCLUDED

Plaintiffs downplay—but do not dispute—that Dr. Schuster's methodology produces unexplained variations, and they provide no justification for Dr. Schuster's "optimization" in favor of infringement. Dr. Schuster's opinions fail Rule 702 and *Daubert* and should be excluded.

**Plaintiffs fail to address the fundamental unreliability of UC to quantify lipid mol%:** Plaintiffs tout "extensive" and "meticulous[]" validation testing by Dr. Schuster but fail to point to any validation of the ***UC*** method related to mol%. Opp. 17, 19. Plaintiffs misleadingly point to "system suitability" and "sample acceptance" testing, *id.* 19, but that relates to **LC-CAD** and ***not***

*UC*, the method at issue in Moderna's motion. Ex-G ¶¶54-62, 63 (claiming system suitability testing "confirm[s] that the *LC-CAD* method" is reliable), ¶86 (also referring to LC-CAD and system suitability testing), 117 (also referring to LC-CAD and system suitability testing). Plaintiffs also point to Dr. Schuster's testing on particle size, count, and polydispersity, Opp. 17, 19, but *none of that testing measures* mol%—the only property relevant to infringement. Ex-QQ ¶11; Ex-RR ¶¶13-17. Nor do any of these studies show that Dr. Schuster used a control to confirm the UC method itself is not changing the mol% of the particles.

This leaves Plaintiffs to rely on attorney argument that meaningfully different results from testing of the *same sample* should be ignored. Plaintiffs misleadingly state that the undisclosed testing "used parameters that *differed* from the final, validated method," Opp. 21, even though the unexplained and infringement-favoring variation occurred in samples subjected to *UC* parameters identical to those disclosed in Dr. Schuster's report. Ex-L 26:6-10 (rotor four parameters used in final); Ex-G ¶43; Ex-Q at 760. Because the UC parameters are *identical*, Plaintiffs can point only to differences in *LC-CAD* parameters to support their claim, Opp. 21 n.5. Moreover, this response does not address the issue of Dr. Schuster failing to show that his final parameters (or any set of parameters) produced reliable results. Br. 18-19.

Plaintiffs attempt to put the onus on Moderna to run fractionation tests with the right parameters. Opp. 20. But it is Plaintiffs' burden to demonstrate the reliability of their expert's methodology, and Dr. Schuster's testing materials demonstrated the opposite. Br. 18-19; *Del. State Univ. v. Thomas Co., Inc.*, 2020 WL 6799605, at *14 (D. Del. Nov. 19, 2020). Though Plaintiffs point to Moderna's research studies that used fractionated samples, Opp. 20-21, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Ex-HH at 418-420; Ex-DD 343, 349, 351-

7

351.06. As Moderna's scientists and expert explained, UC fractionation is not a reliable way to measure lipid mol%, thus conducting further UC tests would be futile. Br. 19.

**Plaintiffs fail to justify Dr. Schuster's undisclosed "optimization" of UC parameters**: Despite Plaintiffs' revisionist history and baseless allegations about Moderna wanting to "delay," Opp. 18-19, it is clear why Plaintiffs fought to prevent disclosure of Dr. Schuster's test materials for months: they demonstrate that Dr. Schuster customized parameters of an already unreliable method to favor infringement. Br. 18-20. That he claimed not to know the patents is no answer, Opp. 22, as he presented the results to Plaintiffs' counsel—no doubt intimately familiar with the Ratio Patents—when deciding on his final UC method. Ex-Q at 754; Ex-L 9:25-11:1.

Plaintiffs try to sidestep criticism of the methodology by claiming the mol% variations are mere "analytical variability." Opp. 22 (citing *Takeda*). But Dr. Schuster admitted he did ***not*** determine the cause of the variation. Ex-L 34:8-38:17, 39:23-40:23; Br. 21. Plaintiffs claim, without explanation, that the data is reliable because it "exhibited the same mol% ***trends*** across UC parameters." Opp. 23. Dr. Schuster made a similarly vague claim during his deposition, and admitted his analysis went no further than checking the graphs ***by* "*eye*" *alone*** to conclude that the mol% results "basically all follow the same trend," Ex-L 28:25-31:25, 53:21-55:10, because, for example, "the overall picture [of] the cholesterol ***looks* . . . *like a smiley***," *id.* 39:23-42:12 (referring to Ex-Q at 778). Needless to say, eyeballing graphs for a smiley-faced "trend" is neither scientific nor reliable and cannot explain away data showing different parameters led to different mol%. *Daubert*, 509 U.S. at 580 (reliability dependent on "maintenance of standards controlling [method's] operation"). Dr. Schuster failed to establish his UC method reliably measured lipid mol%, just like the expert in *In re Zantac* who offered nothing "other than his *ipse dixit*" that the method did not affect the test material. 644 F.Supp.3d at 1121-23. Though Plaintiffs dismiss the

8

variation as "normal," the variation of the same fractions from infringing to noninfringing is grounds for exclusion here, just as in *King Drug*. 2015 WL 6750899, at *11, *13; Opp. 22.

Dr. Schuster's infringement-favoring manipulation is only further evidenced by Plaintiffs' attorney argument that a difference in LC-CAD injection volume accounts for the fact that the ***same fraction*** under the ***same*** UC parameters produced both infringing and noninfringing results when tested twice. Opp. 21; Br. 18. Even if true, this is an admission that Dr. Schuster's parameters for LC-CAD, like UC, do affect the lipid mol% results. Indeed, the data demonstrates that, for fractions 6-8, use of a 10µl injection consistently put the PEG mol% below 2.499 mol%, while 15 µl resulted in a mol% in or close to a noninfringing range (2.5 mol% and higher). Ex-Q at 781 (Rotor 4, fractions F06 to F08). Unsurprisingly, Dr. Schuster changed the injection volume for those fractions—and only those—from 15 µl to the infringement-favoring 10 µl. Ex-G ¶49. Although Plaintiffs vaguely assert his choice was made based on "reliability," Opp. 21, it is yet another infringement-favoring parameter selected by Dr. Schuster after he presented his options to Plaintiffs' counsel. Br. 20; *In re Lipitor*, 892 F.3d 624, 633-35.

Plaintiffs' repeated assertion that all samples allegedly had some infringing fractions does not make Dr. Schuster's methods reliable, particularly because it is undisputed that his "optimized" UC method increased the number of "infringing" fractions. Opp. 17-18, 22; Br. 19-20. Plaintiffs do not dispute that the ***results*** from the late-disclosed materials demonstrate that when UC parameters change, so too do the mol% results. Br. 18-19. Dr. Schuster failed to show that his selected parameters (or any others) produce reliable results. Ex-L 25:20-26:8; Br. 18-19.

## III.    DR. MITCHELL'S INTENT AND STATE OF MIND OPINIONS SHOULD BE EXCLUDED

The law is clear—experts may not opine on state of mind or intent. *Wirtgen*, 2024 WL 166833, at *2); *GREE*, 2020 WL 4288350, at *2-3. Plaintiffs do not deny that Dr. Mitchell's opinions are directed to these prohibited topics, and they cannot skirt this legal prohibition by

9

claiming Dr. Mitchell was simply quoting Moderna documents (he is not in any event). Br. 21-22; *Crowley*, 322 F. Supp. 2d at 553. Plaintiffs' first cherry-picked example shows how Dr. Mitchell swaps words such as "replace" with "abandon," which carry different connotations. Opp. 24. Plaintiffs' other examples show Dr. Mitchell injecting his own gloss on how Moderna's documents should be interpreted—a role for the jury. *Compare* Opp. 24 *with* Br. 22-23. Indeed, these opinions directly contradict Plaintiffs' assertion that Dr. Mitchell does not intend to introduce ultimate opinions that Moderna willfully infringed. Opp. 25, n.6. Separately, Dr. Mitchell may have technical knowledge such that he can address the science behind replacing MC3 and benefits of SM-102, but he admittedly is "***not aware of any*** scientific rationale that would justify Moderna's decision not to perform such studies," Ex-E ¶463. That makes *Bombardier*, 2017 WL 758335, at *4, and *Pelican*, 655 F. Supp. 3d at 1029, inapposite. Dr. Mitchell plainly has ***no*** "specialized knowledge" about to opine that "Moderna did not run [testing] ***for fear*** of 'uncomfortable questions,'" and "what those tests ***might have*** shown." Opp. 24. Like *Pavo Sols.*, 2019 WL 8138163, at *13, these speculative opinions are the kind that "provide conclusions as to the alleged degree of willfulness" and should be excluded. *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004).

## IV.    MESSRS. PITTS' AND BRILL'S POLICY OPINIONS ON § 1498 ARE IMPROPER

Plaintiffs do not dispute Messrs. Pitts and Brill offer only untestable policy goals and legal conclusions, Opp. 25, which alone warrants exclusion. Plaintiffs' only response is if Moderna has § 1498 experts, so should they. But unlike their experts, Moderna's experts disclosed opinions addressing specific ***public health*** and ***economic*** benefits that the C-100 doses provided to USG in furtherance of USG's stated policy goals. D.I. 511, D.I. 596; Ex-30; Ex-31. Plaintiffs' experts, however, opine on what ***should*** constitute a benefit to USG ***despite*** policy goals. Those admittedly improper opinions should be excluded.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Noah Frank
Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Yan-Xin Li
Hannah Suh
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400

December 5, 2025

*/s/ Travis J. Murray*

Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Leslie M. Schmidt, P.C.
Mark C. McLennan
N. Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Andrew Lee
Brad Deem
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 16, 2025, upon the following in the manner indicated:

John W. Shaw, Esquire                                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs Arbutus Biopharma*
*Corporation and Genevant Sciences GmbH*

Daralyn J. Durie, Esquire                                *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
Eric C. Wiener, Esquire
Annie A. Lee, Esquire
Shaelyn K. Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

Kira A. Davis, Esquire                                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David N. Tan, Esquire                                           *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David I. Berl, Esquire                                          *VIA ELECTRONIC MAIL*
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

Andrei Iancu, Esquire                                           *VIA ELECTRONIC MAIL*
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006
*Attorneys for Plaintiff Genevant Sciences GmbH*


                                        */s/ Travis J. Murray*
                                        _____
                                        Travis J. Murray (#6882)

2