# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARBUTUS BIOPHARMA CORPORATION
and GENEVANT SCIENCES GmbH,

      Plaintiffs,

      v.

MODERNA, INC. and MODERNATX, INC.

      Defendants.

MODERNA, INC. and MODERNATX, INC.,

      Counterclaim-Plaintiffs,

      v.

ARBUTUS BIOPHARMA CORPORATION
and GENEVANT SCIENCES GmbH,

      Counterclaim-Defendants.

C.A. No. 22-252 (JDW)

**DECLARATION OF BRIAN DOYLE
IN SUPPORT OF DEFENDANTS' MOTION TO SEAL**

I, Brian Doyle, hereby declare as follows:

1.      I am a Senior Director of Process Development at ModernaTX, Inc. (hereinafter, "Moderna"). I have been at Moderna since March 2019. In my role I am part of the Technical Development group, which is a team of scientists, engineers, and problem solvers that are responsible for the development and commercialization of Moderna's drug substances and drug products, including vaccines. This work comprises, for example, creating, optimizing, and controlling manufacturing processes, including formulation development work, as well as defining product testing and characterization of our product, capabilities, and processes. In my role, therefore, I am familiar with Moderna's product development, including research and development into lipid nanoparticle (LNP) products, which encompasses development of manufacturing processes, formulations, and analytical techniques. In my role I am familiar with the fact that Moderna maintains this information as confidential,[1] and I am also familiar with the extensive efforts Moderna takes to protect its confidential information. I have personal knowledge of the facts stated in this declaration or have become aware of such facts through my role at Moderna. If called upon to testify, I could and would competently testify thereto.

2.      This declaration is written in support of a request by Moderna to avoid disclosing sensitive and confidential information on the public record. Below I discuss how and why Moderna keeps confidential certain technical information, and the serious harm that would result to Moderna from disclosure of this information to Moderna's competitors.

---

[1]    I understand that the Protective Order in this case (D.I. 91) includes two categories of Protected Material: "Confidential" and "Highly Confidential – Outside Counsel's Eyes Only." I also understand that the materials discussed in the declaration include "Highly Confidential – Outside Counsel's Eyes Only" information. For the purposes of this declaration, I have used the term "confidential" to cover this category, which should not be disclosed to the public for the reasons explained herein.

3.      I understand this case relates to Moderna's COVID-19 Vaccine, known as mRNA-1273 or "SpikeVax." SpikeVax is comprised of messenger RNA (mRNA) which is encased in lipid nanoparticles (LNPs). Moderna's proprietary LNP is comprised of four lipid components including SM-102, cholesterol, phospholipid, and PEGDMG-2000.

4.      I have been provided and have reviewed the information that Moderna proposes to maintain under seal information in the following documents filed in connection with (1) Moderna's Motion to Exclude the Expert Opinions of Catharine Lawton, Georg Schuster, Ph.D., Michael Mitchell, Ph.D., Peter J. Pitts, and Alex M. Brill and (2) Plaintiffs' Motion to Exclude Expert Testimony.

(a)      Exhibit 2 (2017 Hoge Email)

(b)      Exhibit 20 (Excerpt of April 16, 2025 Deposition Transcript of Dr. Robert Prud'homme)

(c)      Exhibit 21 (Excerpt of Rebuttal Expert Report of Dr. Prud'homme)

(d)      Exhibit 22 (Excerpt of Opening Expert Report of Dr. Michael Mitchell)

(e)      Exhibit 24 (Moderna Comparability Report)

(f)      Exhibit 25 (Impact of PEG Content on mRNA-1273 Drug Product Stability)

(g)      Exhibit 26 (mRNA-1647 Process Parameter Study)

(h)      Exhibit 30 (Excerpt of Reply Invalidity Expert Report of Dr. Prud'homme)

(i)      Exhibit 38 (Excerpt of Expert Report of Catharine Lawton)

(j)      Exhibit 42 (Excerpt of Reply Expert Report of Dr. Mitchell)

(k)      Exhibit A (Excerpt of Expert Report of Catharine Lawton)

(l)      Exhibit B (Excerpt of Rebuttal Expert Report of Catharine Lawton)

(m)      Exhibit C (Excerpt of Reply Expert Report of Catharine Lawton)

(n)      Exhibit E (Excerpt of Opening Report of Dr. Mitchell)

(o)      Exhibit F (Excerpt of Reply Report of Dr. Mitchell)

(p)    Exhibit I (Excerpt of Rebuttal Expert Report of Dr. Fenton)

(q)    Exhibit J (Excerpt of Rebuttal Expert Report of Dr. Prud'homme)

(r)    Exhibit O (Excerpt of May 8, 2024 30(b)(6) Deposition of Joseph Alan Schariter II)

(s)    Exhibit P (Excerpt of June 7, 2024 Deposition of Donald Parsons)

(t)    Exhibit U (Excerpt of Reply Report of Dr. Schuster)

(u)    Exhibit DD (Moderna 2019 Presentation)

(v)    Exhibit FF (Moderna March 16, 2016 Presentation)

(w)    Exhibit HH (Excerpt of Moderna December 6, 2017 Presentation)

(x)    Exhibit II (Excerpt of 2019 Q4 Process and Product Consistency Whitepaper)

(y)    Exhibit JJ (Excerpt of Moderna Report on mRNA-1273 LNP Process Development)

(z)    Exhibit MM (Excerpt of Moderna October 30, 2015 Presentation)

(aa)    Exhibit RR (Excerpt of Sur-Reply Report of Dr. Prud'homme)

(bb)    Plaintiff's Opening Brief in Support of Motion to Exclude Expert Testimony

(cc)    Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion

(dd)    Moderna's Opposition to Plaintiffs' Motion to Exclude Expert Testimony

(ee)    Moderna's *Daubert* Reply

(collectively, the "Redacted Technical Information Filings").

5.    As explained in more detail below, the information proposed for sealing in the Redacted Technical Information Filings reflects non-public and highly sensitive details about Moderna's proprietary LNP formulations—including development of manufacturing processes, formulations, and analytical techniques—that Moderna maintains as trade secrets, is not publicly known, and has taken years and extensive time and resources to develop, test, and manufacture. I understand that courts, including the Third Circuit, protect trade secrets and confidential business

3

or technical information where disclosure would cause clearly defined and serious harm. The information I describe below—including specific proprietary encapsulation processes and assay methods—fits this category. The development of these processes and techniques required years of research, testing, and optimization by multi-disciplinary teams at Moderna. Disclosure of this information would not only reveal the "successful" processes Moderna relies upon today, but also enable competitors to avoid failed or abandoned approaches that Moderna already tested at significant cost. In effect, disclosure would allow competitors to "leapfrog" years of scientific trial-and-error.

6.      It is critical to Moderna that the Court maintain under seal Moderna's confidential information. Moderna has always taken extensive measures to maintain the confidentiality of its technical information and product development, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information. Internal to Moderna, employee access to commercially sensitive information relating to Moderna's propriety research and products is often restricted on a need-to-know basis, as determined by a person's group or role on a project. Moderna has been extremely concerned about the protection of its confidential information during this litigation and has been very careful to always protect this information.

7.      Exhibit 2 is an internal email between Moderna personnel discussing lipid molar ratio testing. The experimentation and trial-and-error that Moderna undertook to develop its

4

clinical and commercial formulations is extensive and non-public. Revealing formulation properties and parameters that Moderna tested but ultimately did not select would eliminate the need for competitors to experiment across these parameters, potentially saving them years of development. The proposed redactions to Exhibit 2 are identical to the redactions at D.I. 579-56.

8.     Exhibit 20 is an excerpt of the April 16, 2025 Deposition Transcript of Dr. Robert Prud'homme. Portions of pages 393, 394, 397 and 398 contain highly confidential and trade secret information concerning concentrations and testing ranges of specific components of Moderna's products. Like Exhibit 2, this information reflects sensitive experimentation and trial-and-error undertaken by Moderna to develop its proprietary formulations, as well as certain stability properties investigated by Moderna. Moderna has taken extensive measures to maintain the confidentiality of this information and prevent disclosure to competitors. If competitors had access to concentrations of these components and their stability properties, it would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development.

9.     Exhibit 21 is an excerpt of the Rebuttal Expert Report of Dr. Prud'homme. Paragraphs 459, 462, 464–468, 866, and 935–937 contain highly confidential and proprietary information regarding Moderna's manufacturing process for its LNP product. These paragraphs reflect information that is closely guarded and was developed through extensive research and development efforts by Moderna scientists. This Court has previously granted motions to seal this type of information. *See* September 26, 2025 Order (D.I. 622). This information is only known within a limited number of personnel at Moderna, and exposure to competitors after years of research and development could cause substantial harm to Moderna. Paragraphs 234–239, 241, 457, 471, 478, 479, 481, 484, 486, 493, 494, 496, 501, 535, 536, 547, 548, 555, 562, 563, 565, 568, 570, 598, 600, 603, 609, 618, 621, 622, 626, 627, 628, 676, 682, 688–690, 692, 694 either

5

also contain highly confidential and proprietary information regarding Moderna's manufacturing process for its LNP products or contain confidential testing results regarding stability, immunogenicity, reactivity, and other clinical properties of Moderna's LNP formulations. The testing--and conclusions derived from this testing—is highly confidential and non-public disclosed. Disclosure of this sensitive information would prove competitively advantageous to Moderna's competitors, who could bypass years of costly research and development to test and develop their own products, seriously harming Moderna. Paragraphs 610, 612, 614–618, 691, 717, 720–727, 731–749, and 867 contain trade secret information concerning Moderna's proprietary manufacturing process. These paragraphs include information that would reveal specific manufacturing steps of Moderna's mRNA-LNP products, and there are no less restrictive means to redact this information besides sealing it completely. The information in these paragraphs reflects the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Paragraph 680 contains confidential regulatory and business considerations that Moderna considered when formulating and testing its product that are not publicly known and

6

could be competitively advantageous information for Moderna's competitors to know when navigating and developing their own products for regulatory approval. Paragraph 680 also contains highly confidential information about the lipid concentrations of Moderna's LNP products. Paragraphs 681 contains confidential information surrounding the variability of a certain component within lots of Moderna's COVID-19 vaccine that is not publicly disclosed. Paragraphs 538, 925–927 and 930–933 contain highly confidential information surrounding changing components of Moderna's formulation that could reveal the non-public, proprietary formation of Moderna's LNP products. These paragraphs also reveal Moderna's considerations in selecting certain concentrations and components of its LNP products. Revealing this information to Moderna's competitors could provide competitively advantageous and save years or research and development.

10.    Exhibit 22 is an excerpt of the Opening Expert Report of Dr. Michael Mitchell. Like Exhibit 21, Exhibit 22 contains highly confidential information surrounding stability properties and clinical and safety attributes associated with specific concentrations of components of Moderna's LNP products. *See, e.g.*, Paragraphs 339–441, 563, 614, 657, 660, 662–668, 670, 679, 683, 685, 691–695, 698, 699, 713, 715, 717–729, 731, 733, 737, and 740. Additionally, paragraphs 615–617, 659, 676-678, 680, and 704–708 reveal specific manufacturing steps of Moderna's mRNA-LNP products, and there are no less restrictive means to redact this information besides sealing it completely. The information in these paragraphs reflects the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and

7

exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Paragraphs 672 and 700 reveal confidential information surrounding either the variability of a certain component within lots of Moderna's COVID-19 vaccine that is not publicly disclosed, or the proprietary formulation of its Moderna's LNP products, including its COVID-19 vaccine, which could be competitively advantageous for Moderna's competitors to know in performing quality control on their own products.

11.     Exhibit 24 is an excerpt of a Moderna Comparability Report showing the impact of PEG content on mRNA-1273 Drug Product Stability. This report contains proprietary research, test results, and analysis of Moderna's mRNA-LNPs, including highly sensitive information such as mRNA concentration and purity, lipid contents, and particle size. This information would prove highly valuable to Moderna's competitors who could sidestep the costly research and development that Moderna incurred to develop stable and clinically effective LNP products. This information is only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna.

12.     Exhibit 25 is an excerpt of a Moderna Report on the impact of PEG Content on mRNA-1273 Drug Product Stability. This report contains highly confidential information revealing concentrations and molar ratios of lipid components used in Moderna's product candidates. Moderna maintains that the concentrations and lipid components of non-public

8

mRNA-LNP formulations are proprietary. This information is only known within a limited number of personnel at Moderna, and exposure to competitors after years of research and development could cause substantial harm to Moderna. In addition, the report summarizes the properties that were observed by Moderna for certain non-public formulations and concentrations. This information would prove competitively advantageous to Moderna's competitors when evaluating different formulations and developing their own products.

13.     Exhibit 26 is an excerpt of a Moderna mRNA-1647 Process Parameter Study. Like Exhibits 24 and 25, Exhibit 26 contains proprietary research and development information regarding batches of LNPs, as well as Moderna's efforts to optimize certain favorable pharmacokinetic factors. This information would prove highly valuable to Moderna's competitors who could sidestep the costly research and development that Moderna incurred to develop stable and clinically effective LNP products. This information is only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna.

14.     Exhibit 30 is an excerpt of the Reply Invalidity Expert Report of Dr. Prud'homme. Paragraph 52 contains highly confidential information surrounding the encapsulation of mRNA in Moderna's LNP products as determined by Moderna's proprietary assay testing. The paragraph also contains trade secret information surrounding a manufacturing step for Moderna's LNP. Moderna's proprietary and trade secret information for manufacturing its LNP products would be highly valuable information for Moderna's competitors, and disclosing it would cause Moderna competitive harm. Moderna has spent significant resources to develop this technology and this trade secret.

15.     Exhibit 38 is an excerpt of the Expert Report of Catharine Lawton. Paragraph 1491 contains highly confidential information concerning Moderna's testing of a LNP formulation. Paragraph 1690 and Footnote 3889 in Paragraph 1689 contain highly confidential parameters for relating to a formulation prototype. The experimentation and trial-and-error undertaken by Moderna to develop its proprietary formulations has required extensive resources and has involved non-public and trade secret testing. The public disclosure of this sensitive information to Moderna's competitors would cause substantial harm to Moderna. The Table of Contents also references a specific title given to an LNP formulation that is not publicly known.

16.     Exhibit 42 is an excerpt of the Reply Expert Report of Dr. Mitchell. The Table of Contents references two key steps in Moderna's manufacturing process that are trade secrets. The headings in the Table of Contends include information that would reveal specific manufacturing steps of Moderna's mRNA-LNP products, and there are no less restrictive means to redact this information besides sealing it completely. These steps reflect the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development.

17.     Exhibit A is an excerpt of the Expert Report of Catharine Lawton. Footnote 490 in paragraph 177, paragraph 206, footnote 1533 in paragraph 571, paragraphs 600–602, footnote 1602 in paragraph 602, footnotes 1611 and 1612 in paragraph 607, footnote 1643 in paragraph 615, paragraph 675, 680, and 691, footnote 1854 in paragraph 691, paragraph 727, footnote 1927 in paragraph 727, and paragraph 1690 include highly confidential information concerning the testing and selection of certain formulation components and concentrations based on desired pharmacokinetic and clinical results. This formulation testing information and analysis is proprietary information that Moderna has spent significant resources to develop and maintain as confidential. The public exposure of this information could enable competitors to avoid failed or abandoned approaches that Moderna already tested at significant cost. In effect, disclosure would allow competitors to "leapfrog" years of scientific trial-and-error. Paragraphs 1557 and 1558, and footnote 3718 in paragraph 1564 refer to LNP Products that may be publicly known, but how they are discussed in these paragraphs highlights key manufacturing steps and the order of those steps, which are trade secrets. Paragraphs 1565, 1568, 1569, footnote 3725 in paragraph 1569, paragraph 1575, footnote 3728 in paragraph 1575, paragraph 1580, footnotes 3738 and 3739 in paragraph 1580, and footnote 3741 in paragraph 1586 refer to manufacturing processes and analyses not publicly known or disclosed by Moderna. They also reflect a step in the manufacturing process that is part of Moderna's proprietary manufacturing process. Paragraphs 1589 and 1598 contain highly confidential third-party information concerning the location of manufacture of Moderna's drug product, the associated part and process numbers, and nominal batch scales. This information is subject to third-party confidentiality agreements.

18.     Exhibit B is an excerpt of the Rebuttal Expert Report of Catharine Lawton. Paragraph 161 and footnotes 451 and 452 in paragraph 161, footnote 454 in paragraph 162,

11

footnote 488 in paragraph 180, paragraph 184, footnote 545 in paragraph 202, and footnote 552 in paragraph 204 contain highly confidential information concerning the testing and selection of certain formulation components and concentrations based on desired pharmacokinetic and clinical results. This formulation testing information and analysis is proprietary information that Moderna has spent significant resources to develop and maintain as confidential. The public exposure of this information could enable competitors to avoid failed or abandoned approaches that Moderna already tested at significant cost. In effect, disclosure would allow competitors to "leapfrog" years of scientific trial-and-error.

19.    Exhibit C is an excerpt of the Reply Expert Report of Catharine Lawton. Paragraph 535 and footnote 1364 in paragraph 535 include a parameter used by Moderna for developing a formulation prototype. The experimentation and trial-and-error to develop Moderna's proprietary formulations with desired stability properties required extensive resources on behalf of Moderna, including non-public and trade secret testing. Exhibit C also contains concentrations and molar ratios of lipid components used in Moderna's product candidates. Moderna maintains that the concentrations of its lipid components in non-public products or formulations, and the resulting molar ratios of these lipid components, are proprietary. This information is only known within a limited number of personnel at Moderna, and exposure to competitors after years of research and development could cause substantial harm to Moderna.

20.    Exhibit E is an excerpt of the Opening Report of Dr. Mitchell. Paragraphs 221, 222, 231, 234, 275, and 293 contain highly confidential information concerning a third-party agreement, sourcing, and collaborations that are not publicly known and if known could affect Moderna's ability to partner with this third party in the future. Paragraph 226 contains highly confidential information about the name of a study protocol that is not publicly known and is only

known to a select number of individuals associated with the study. Conducting such studies is integral to Moderna's research and development, and the public exposure of this information could harm Moderna's ability to study products in development and to review studies and products used by its competitors. Likewise, the findings in that study are proprietary and considered trade secrets as they have not been publicly disclosed and are subject to third-party confidentiality agreements under which they have been shared. *See, e.g.*, Paragraphs 227, 229; *see also* Paragraph 275–277 (same); Footnote 80 in Paragraph 286 (same); Paragraphs 778, 779 (same). Paragraphs 233 and 237 contain information regarding other mRNA delivery systems considered but not used by Moderna. If competitors had access to this information, they could be able to bypass years of research and analysis done by Moderna to avoid formulations that Moderna has already incurred the cost and labor to determine are not viable products. Paragraphs 242, 243, 244, 246, 251, 266, 289, 293, 407, 408, 423, 427, 429–434, 439–443, 445–447, 450–452, 477, 491–493, 604, 614, 622, 663–668, 670, 671, 694, 695, 698, 700, 718–727, 729, 731, 733, 757, 773, 775, 777, 778, 798, 801, 803, 806,  823, 824, and 825 also contain highly confidential information pertaining to LNP formulations and processes considered by Moderna when testing other potential vaccine products, as well as internal names. The information in these paragraphs reflects formulation changes, component changes, and comparisons to other potential LNP candidates, as well as the clinical, pharmacokinetic, and safety considerations that are highly confidential and would be competitively advantageous for Moderna's competitors to use to develop their own LNP products. Paragraph 252 contains highly confidential information surrounding Moderna's decisions not to pursue certain product candidates, the details of which are not publicly known. Paragraphs 254, 257, 314–318, 320, 323–328, 354–355, 383–397, 604, 615, 790, 808, 812, 814, and 816–818 contain highly confidential information that would reveal specific manufacturing steps of

13

Moderna's mRNA-LNP products, and there are no less restrictive means to redact this information besides sealing it completely. The information in these paragraphs reflects the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Paragraphs 280, 281, 283, 284, 294, 301–313, 354–356, 400, 403, and 404 contain highly confidential information about the physical and clinical properties associated with certain lipid formulations and comparisons with other potential formulations. This research is proprietary and not publicly known. Moderna's decision to use, reject, reformulate, and test certain formulations was costly and the culmination of years of research. Moderna would be seriously harmed if this information became publicly available to its competitors. Paragraphs 329–334, 461–476, 614, 620, 622, 672, and 700 contain highly confidential information that would reveal Moderna's proprietary lipid fractions in its LNP products as well as the non-public testing that was conducted in proposed LNP products. This information would be highly valuable to Moderna's competitors who could use this testing to prepare their own suitable LNP products. Paragraph 644 contains highly confidential information about stability testing that is not publicly known.

14

21. Exhibit F is an excerpt of the Reply Report of Dr. Mitchell. Paragraphs 20, 714, footnote 45 in paragraph 714, paragraphs 770, 783, 786, 794, 795, 807, 820, 821, 871, and 897 contain highly confidential parameters for developing a formulation prototype. The experimentation and trial-and-error to develop Moderna's proprietary formulations and the stability properties that they have required extensive resources on behalf of Moderna, including non-public and trade secret testing. The public disclosure of this sensitive information to Moderna's competitors would cause substantial harm to Moderna. Paragraphs 40, 62, 126, 127, 130, 133, 134, 135, 136, 137, 152, 154, footnote 7 in paragraph 161, paragraphs 169, 170, 171, 174, 183, 198, 199, 245, 341, 376, 379, 476, 479, 482, 483, 484, and 731 reflect confidential tests, testing results, and stability, immunogenicity, reactivity, and other clinical properties observed from when adjusting parameters to develop Moderna's LNP formulations. The testing and conclusions derived from this testing are highly confidential and are not publicly disclosed. Disclosing this sensitive information and the properties that were observed by Moderna would prove competitively advantageous to Moderna's competitors, who could bypass years of costly research and development to test and develop their own products, seriously harming Moderna. Paragraphs 52, 55, 64, 72–75, 79–82, 92, 93, 105, 119, 331, 402, 404, 405, 424, 440, 523, 524, 526, 618, 619, 620, 625, 731, 747, 753, and 782 include confidential information describing the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of

Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Paragraphs 105, 114, 116–118, 124, 126, 380, 381, 383, 384, 386, 387, 388, 391–395, 398–401, 402, 406, 410, 411, 413, 414, 417, 426, 428, 429, 433, 448, 452, 468, 470, 471, 474, 475, 477, 478, 482–487, 493, 504, 526, 529, 532, 736–738, 743, 755–757, 826, and 831 contain highly confidential information pertaining to LNP formulations and processes considered by Moderna when testing potential vaccine products. The information in these paragraphs reflect formulation changes, component changes, and comparisons to other potential LNP candidates, as well as the clinical, pharmacokinetic, and safety considerations, and the tests and equipment that were used to investigate all of these parameters. This information is highly confidential and would be competitively advantageous for Moderna's competitors to use to develop their own LNP products.

22. Exhibit I is an excerpt of the Rebuttal Expert Report of Dr. Fenton. Paragraphs 56, 57, 58, 62, 67, 68, 72, 73, 103, 116, and 117 contain highly confidential information regarding testing of Moderna's products. The tests used by Moderna, as well as Moderna's analyses of why certain tests and substrates are and are not appropriate, reflect confidential research and development information. Competitors could use this information to test and develop their own LNP products and testing standards based on Moderna's non-public standards. These paragraphs also contain Moderna's rationale and observations for using and not using certain tests, which are not publicly known. Moderna has always taken extensive measures to maintain the confidentiality of its technical information and product development, including by implementing procedures that

16

restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information.

23.    Exhibit J is an excerpt of the Rebuttal Expert Report of Dr. Prud'homme. Paragraphs 358, 359, 362, 367, 368, 369, 374–381, and 418 contain highly confidential information regarding testing of Moderna's products. The tests used by Moderna, as well as Moderna's analyses of why certain tests and substrates are and are not appropriate, reflect confidential research and development information. Competitors could use this information to test and develop their own LNP products and testing standards based on Moderna's non-public standards. These paragraphs also contain Moderna's rationale and observations for using and not using certain tests, which are not publicly known. Moderna has always taken extensive measures to maintain the confidentiality of its technical information and product development, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information.

24.    Exhibit O is an excerpt of the May 8, 2024 30(b)(6) Deposition of Joseph Alan Schariter II. Portions of Exhibit O contain confidential information about tests and assays used by

Moderna to determine characterize its LNPs. The specific assays and tests used by Moderna to characterize its products and product candidates are not publicly known, and the exposure of this sensitive information to Moderna's competitors would cause substantial harm to Moderna. Disclosure would allow competitors to replicate Moderna's product characterization and product-control strategies, causing harm to Moderna.

25.     Exhibit P is an excerpt of the June 7, 2024 Deposition of Donald Parsons. Like Exhibit O, portions of Exhibit P contain confidential information about tests and assays used by Moderna to determine characterize its LNPs. The specific assays and tests used by Moderna to characterize its products and product candidates are not publicly known, and the exposure of this sensitive information to Moderna's competitors would cause substantial harm to Moderna. Disclosure would allow competitors to replicate Moderna's product characterization and product-control strategies, causing harm to Moderna.

26.     Exhibit U is an excerpt of the Reply Report of Dr. Schuster. Paragraphs 10, 26–32, 33–39, 42–44, footnote 38 in paragraph 44, paragraphs 46, 52, 54, 29, 68, 70, 76, 77, and 104 contain highly confidential information regarding testing of Moderna's products. The tests used by Moderna, as well as Moderna's analyses of why certain tests and substrates are and are not appropriate, reflect confidential research and development information. Competitors could use this information to test and develop their own LNP products and testing standards based on Moderna's non-public standards. These paragraphs also contain Moderna's rationale and observations for using and not using certain tests, which are not publicly known. Moderna has always taken extensive measures to maintain the confidentiality of its technical information and product development, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and

are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information.

27.     Exhibit DD is a Moderna 2019 Presentation that contains highly confidential information describing the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Judge Goldberg previously granted a motion to seal this document in its entirety. *See* D.I. 460.

28.     Exhibit FF is a March 16, 2016 Moderna presentation. This presentation contains highly confidential information surrounding tests used on Moderna's products. The tests used by Moderna, as well as Moderna's analyses on why certain tests and parameters are and are not appropriate, reflect confidential research and development information. Competitors could use this information to test and develop their own LNP products and develop their own standards based on Moderna's standards which are not publicly known. These paragraphs also contain Moderna's

19

rationale and observations for using and not using certain tests, which are not publicly known. Moderna has always taken extensive measures to maintain the confidentiality of its technical information and product development, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information.

29.    Exhibit HH is an excerpt of a December 6, 2017 Moderna Presentation. This presentation contains confidential tests and testing results and stability, immunogenicity, reactivity, particle size and other clinical properties observed from variations and selection of Moderna's LNP formulations. The testing and conclusions derived from this testing is highly confidential and is not publicly disclosed. Disclosing this sensitive information and the properties that were observed and hypothesized by Moderna would prove competitively advantageous to Moderna's competitors who could bypass years of costly research and development to test and develop their own products, seriously harming Moderna.

30.    Exhibit II is an excerpt of a 2019 Q4 Process and Product Consistency Whitepaper. This report contains highly confidential information regarding assays and tests that Moderna uses to evaluate components of its mRNA-LNP products and product candidates, as well as the assessment of heterogeneity across Moderna's LNPs with different lipids. The report contains specific parameters for methods Moderna uses to characterize its LNPs, as well as the process by which Moderna assesses the heterogeneity of its LNPs, all of which are non-public. Disclosing this sensitive information, including the data Moderna observed when it ran these tests, would

20

prove competitively advantageous to Moderna's competitors, who could bypass years of costly research and development to test and develop their own products, seriously harming Moderna.

31.    Exhibit JJ is an excerpt of a Moderna Report on mRNA-1273 LNP Process Development. This report contains highly confidential information describing the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components, intermediaries, and parameters that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. The report also contains testing results, parameters, and analyses that are not publicly known.

32.    Exhibit MM is an excerpt of an October 30, 2015 Moderna Presentation. The presentation contains highly confidential information about the physical and clinical properties associated with certain lipid formulations and comparisons with other potential formulations. This research is proprietary and not publicly known. Moderna's decision to use, reject, reformulate, and test certain formulations was costly and culminated years of research. Moderna would be seriously harmed if this information became publicly available to its competitors. The experimentation and trial-and-error to develop Moderna's proprietary formulations and the stability properties that they

21

have required extensive resources on behalf of Moderna, including non-public and trade secret testing. Even though this presentation is from 2015, knowing formulation properties and parameters that Moderna selected and tested for its prototypes—which are still non-public—would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development.

33.    Exhibit RR is an excerpt of the Sur-Reply Report of Dr. Prud'homme. Paragraph 12 contains highly confidential information that would reveal specific manufacturing steps of Moderna's mRNA-LNP products, and there are no less restrictive means to redact this information besides sealing it completely. These steps reflect the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, including specific concentrations of components and intermediaries that are not publicly known. Moderna maintains that the specific manufacturing steps and order for adding LNP components are proprietary and a trade secret, only known to a limited number of personnel at Moderna, and exposure of this information to competitors after years of research and development could cause substantial harm to Moderna. For example, the manufacturing steps of Moderna's mRNA-LNP products are non-public and reflect extensive research and development by Moderna scientists. Even a small change in the steps or order of the steps can dramatically alter product-quality attributes. Knowing such manufacturing process specifics would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. Paragraph 16 contains confidential tests and testing results relating to particle size and other clinical properties observed from variations and selection of Moderna's LNP formulations. The testing and conclusions derived from this testing is highly confidential and is not publicly disclosed. Disclosing this sensitive information and the properties that were observed and hypothesized by Moderna would prove

22

competitively advantageous to Moderna's competitors who could bypass years of costly research and development to test and develop their own products, seriously harming Moderna.

34.    Plaintiff's Opening Brief in Support of Motion to Exclude Expert Testimony contains certain confidential information that I described above and should be redacted to prevent public disclosure of Moderna's highly confidential technical information, including page 12 (citing Ex. 20), pages 16 and 20 (citing Ex. 21), and page 18 (citing Ex. 24).

35.    Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion should be contains certain confidential information that I described above and should be redacted to prevent public disclosure of Moderna's highly confidential technical information, including page 20 (citing Ex. F).

36.    Moderna's Opposition to Plaintiffs' Motion to Exclude Expert Testimony contains certain confidential information that I described above and should be redacted to prevent public disclosure of Moderna's highly confidential technical information, including pages 16 and 20 (citing Ex. 21).

37.    Moderna's Daubert Reply contains certain confidential information that I described above and should be redacted to prevent public disclosure of Moderna's highly confidential technical information, including page 7 (citing Ex. HH).

38.    There is significant competition between biopharmaceutical companies researching, testing, and developing LNPs for mRNA-based products. Additionally, there are companies considering entering the vaccine market and companies developing mRNA-based vaccines and therapeutics for other diseases or developing LNPs for mRNA-based products that would be at a strategic advantage if Moderna's proprietary technical information became public. Because there are so few competitors in these markets, the markets are highly competitive, and

any information about one of the competitors, even seemingly minor information, may prove competitively advantageous. A competitor with access to Moderna's confidential research information could redirect its research budget away from basic formulation discovery and toward incremental improvements or differentiation strategies, giving it a material head start. Moderna has spent significant resources to develop its proprietary formulations, methods, and techniques, and the release of such information to the public, including Moderna's competitors, would significantly harm Moderna.

39.     Moderna would suffer substantial harm if competitors were provided access to the above discussed confidential information concerning formulations, manufacturing processes, and analytical techniques that Moderna had to spend significant time and resources developing. Moderna has invested countless resources to develop fundamental scientific, technical, and engineering knowledge to successfully scale LNP production to quantities relevant for clinical or commercial manufacturing and to a degree of sophistication, control, and consistency mandatory for use in human clinical studies or in licensed commercial products. If competitors had access to Moderna's confidential information, it would save them significant time, in some cases potentially months or years, of testing and at significantly lower risk of technical failure. Disclosure would also result in substantial competitive harm where competitors would be able to replicate Moderna's proprietary formulations, analytical processes, and manufacturing processes. The harm from disclosure would be immediate and substantial. For example, a competitor developing a vaccine or therapeutic in the same class could use Moderna's confidential data to quickly identify which specific formulations, manufacturing processes, and analytical tests are most effective, allowing them to shorten their development timelines by months or years and simultaneously increase the likelihood of technical success. This would not only erase Moderna's competitive advantage but

24

could also jeopardize Moderna's ability to negotiate favorable business partnerships, as collaborators and licensees would perceive Moderna's proprietary information as less secure.

40.    Likewise, Moderna spent significant time and resources to develop the method and materials for its proprietary and non-public assay for measuring mRNA encapsulation. Moderna would be severely disadvantaged if its competitors had access to non-public testing, methods, and development. I emphasize that Moderna does not seek to seal information already in the public domain. For example, the identities of the lipid components (SM-102, cholesterol, phospholipid, and PEG2000-DMG) have been disclosed publicly, and certain ratios used in early preclinical studies have also been reported. Moderna's request is narrowly tailored to protect only those non-public details that remain proprietary, including precise concentrations, molar ratios across certain of its products, specific assay designs, and the sequencing of manufacturing steps.

41.    Based on my personal knowledge and experience in the pharmaceutical business, as well as Moderna's scientific development efforts and the competitive landscape, I believe that disclosure of this information would significantly harm Moderna by revealing confidential data to its direct competitors and the public generally. Competitors would gain a roadmap to replicate Moderna's successes and avoid its failures, severely disadvantaging Moderna in an area where exclusivity is essential to sustaining innovation. If the confidential information were made public, Moderna's competitors would gain a significant advantage in creating their own technical and business strategies, which would put Moderna at a significant competitive disadvantage, causing it real and serious harm.

*        *        *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

25

Executed on this December 16, 2025          Respectfully submitted,

                                            /s/ Brian Doyle
                                            Brian Doyle

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 16, 2025, upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>Nathan R. Hoeschen, Esquire<br>Emily S. DiBenedetto, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs Arbutus Biopharma Corporation and Genevant Sciences GmbH* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>Adam R. Brausa, Esquire<br>Eric C. Wiener, Esquire<br>Annie A. Lee, Esquire<br>Shaelyn K. Dawson, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105-2482<br>*Attorneys for Plaintiff Arbutus Biopharma Corporation* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017-3543<br>*Attorneys for Plaintiff Arbutus Biopharma Corporation* | *VIA ELECTRONIC MAIL* |

David N. Tan, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma Corporation*

*VIA ELECTRONIC MAIL*

David I. Berl, Esquire
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

*VIA ELECTRONIC MAIL*

Andrei Iancu, Esquire
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006
*Attorneys for Plaintiff Genevant Sciences GmbH*

*VIA ELECTRONIC MAIL*

*/s/ Travis J. Murray*

Travis J. Murray (#6882)

2