# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 22-252 (JDW) |
| v. | ) ) | |
| MODERNA, INC. and MODERNATX, INC. | ) ) | |
| Defendants. | ) ) ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**DECLARATION OF ALBERT THOMAS**
**IN SUPPORT OF DEFENDANTS' MOTION TO SEAL**

I, Albert Thomas, hereby declare as follows:

1.     I am employed by ModernaTX, Inc. (hereinafter, "**Moderna**") as Head of Trade and Fulfillment for the United States, and have been employed in this role since January 2024. From January 2023 to January 2024, I held the role of Executive Director, US Commercial Strategy.  From August 2020 through January 2023, I held the role of Senior Director, Key Account Management at Moderna. Through my roles as Executive Director, US Commercial Strategy and Senior Director, Key Account Management, I am familiar with Moderna's sensitive commercial practices and business strategies and operations. I am familiar with the fact that Moderna maintains this information as confidential,[1] and I am familiar with the extensive efforts Moderna takes to protect its confidential information. I have personal knowledge of the facts stated in this declaration or have become aware of such facts through my role at Moderna. If called upon to testify, I could and would competently testify thereto.

2.     I write this declaration in support of Moderna's request to avoid disclosure of sensitive and confidential information on the public record. I discuss below how and why Moderna keeps confidential certain business and licensing information that contains commercial information, and the serious harm that would result to Moderna from disclosure of this information to Moderna's competitors.

---

[1]   I understand that the Protective Order in this case (D.I. 91) includes two categories of Protected Material: "Confidential" and "Highly Confidential – Outside Counsel's Eyes Only." I understand that the parties' *Daubert* briefs and the exhibits thereto include "Highly Confidential – Outside Counsel's Eyes Only" information. For the purposes of this declaration, I have used the term "confidential" to cover this category, which should not be disclosed to the public for the reasons explained herein.

3.    I understand this case relates to Moderna's COVID-19 Vaccine, known as mRNA-1273 or "SpikeVax." SpikeVax is comprised of messenger RNA (mRNA) which is encased in lipid nanoparticles (LNPs).

4.    I have been provided and have reviewed the information that Moderna proposes to maintain under seal in connection with the parties' *Daubert* briefing.  As explained below, Moderna would suffer competitive and economic harm concerning its ability to price its products, enter into contracts with vendors, and customers, as well as with other third parties, that would adversely impact its clinical development, regulatory approvals, and ability to generate revenue.

5.    The documents Moderna proposes to maintain under seal information in connection with (1) Moderna's Motion to Exclude the Expert Opinions of Catharine Lawton, Georg Schuster, Ph.D., Michael Mitchell, Ph.D., Peter J. Pitts, and Alex M. Brill and (2) Plaintiffs' Motion to Exclude Expert Testimony are summarized as follows:

(a)    Exhibit A (Excerpt of the Expert Report of Catharine Lawton)

(b)    Exhibit C (Excerpt of the Reply Expert Report of Catharine Lawton)

(c)    Exhibit D (Excerpt of Deposition Transcript of Catharine Lawton)

(d)    Exhibit 1 (Excerpt of Rebuttal Expert Report of Christopher Vellturo)

(e)    Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion

I will address the confidential information and the harm to Moderna if this information became publicly below generally as well as on a document-by-document basis.

6.    I have also been provided and have reviewed the information that Moderna proposes to maintain under seal in Exhibits A, C, and D to Moderna's *Daubert* briefing and Exhibit 1 to Plaintiffs' *Daubert* briefing. The information to be maintained under seal in Moderna's Exhibits A, C, and D relate to confidential commercial and business information. Not only does Moderna routinely maintain the confidentiality of these categories of financial information, but

Moderna would also sustain harm to its competitive standing in the pharmaceutical industry if such information were disclosed to the public. Public access to Moderna's confidential financial modeling, business plans, commercial practices and other sensitive operations and goals could enable competitors to have a competitive advantage in this highly competitive industry. Thus, in an increasingly competitive market with various biopharmaceutical companies seeking to develop and sell mRNA-based products, including COVID-19 vaccines, disclosure of Moderna's confidential commercial and business information would provide competitors with valuable insight into the analyses and business considerations that Moderna has developed and considers when pricing its products.

7.    I will now address the exhibits individually, beginning with Exhibit 1, an excerpt of the Rebuttal Expert Report of Christopher Vellturo. Paragraphs 312, 602–604, 612, as well as footnotes 1498, 1502, 1505, 1539, and 1704 contain highly confidential commercial information, including pricing per dose and profit margins. This information, including the underlying considerations that went into it, is a culmination of extensive analysis and planning and is highly confidential. If Moderna's competitors had access to this information, they could be able to develop their own pricing calculations, make similar commercial plans, and compete against Moderna using Moderna's own strategies. Public disclosure would arm payers, governmental purchasers, and international health systems with data that lets them back-solve Moderna's floor pricing, demand deeper discounting, and resist price adjustments for future products. This erodes Moderna's revenue potential for upcoming product cycles, especially as new markets open for future Moderna products.

8.    Exhibit A is an excerpt of the Expert Report of Catharine Lawton. Pages 299, 361–81, 385–389, 535, 839–845, 850, 852, 853–855, 858, 862, 863, 867, 868, 877–881, 883, 884, 914,

3

915, 917–933, 1036, 1041–1042, 1045–1060, 1066–1068, 1076, 1077, and the Schedules at end contain highly confidential information pertaining to Moderna's cost of goods as well as non-public commercial information, including pricing, commercial goals and projections for its COVID-19 vaccine, commercial partnerships, financial reports and analysis provided to Moderna leadership, and other highly sensitive business information that is not publicly known. This analysis and advice to Moderna's executives and the calculations that were performed are sensitive business and financial information that could be analyzed and projected to gain valuable insight into Moderna's current and future financial positions. This information would be valuable to Moderna's competitors to gain favorable negotiation positions based on Moderna's confidential information and to compete against Moderna. Even if information about cost of goods and margin data is a few years old, its disclosure provides a baseline to reverse engineer Moderna's long-term pricing elasticity and cost-structure assumptions, especially as Moderna expands into other products and therapeutic markets.  Competitors and negotiating partners could use these inferred cost curves to anticipate Moderna's pricing strategy in adjacent markets, enabling them to undercut future launches or anticipate Moderna's willingness to discount.  Similarly, costs of goods and margin information, even from prior years, would reveal Moderna's target margins, expected supplier cost reductions, and the economic pressure points in its manufacturing network. This harms Moderna because current suppliers could demand higher prices or resist price concessions if they can determine the ranges Moderna considers commercially viable, new suppliers assessing bids for next-generation platform materials or large-scale mRNA manufacturing could raise prices strategically, and contract manufacturing partners (CMOs) could adjust negotiation posture by knowing Moderna's cost tolerance.  This could, in turn, diminish Moderna's competitiveness for multiple years because supply agreements in pharma often lock pricing for long durations.

4

9.      Exhibit C is an excerpt of the Reply Expert Report of Ms. Lawton. Pages 299, 309-310, 319–320, 326, and 336 contain highly confidential financial position, expected profits, and revenue projects based on internal board meeting and executive presentations and non-public evaluations. This information, if known to Moderna's competitors, would provide valuable insight into Moderna's market position, revenue streams, projections, and overall financial position and harm Moderna's ability to sell, license, and collaborate in this highly competitive industry. Additionally, if this information became public, competitors and investors could infer portfolio vulnerabilities, anticipate shifts in capital allocation, and act on speculative strategies based on perceived weaknesses. This could impair Moderna's ability to raise capital for future platform development or execute strategic transactions. These pages also include detailed financial figures, risk analysis, and other sensitive commercial information that was presented to Moderna's executives and directors and is only known within a select group of Moderna employees entrusted to keep this information confidential. Public disclosure of this information would be competitive intelligence on Moderna's appetite for risk and investment as the profitability margins reveal Moderna's internal cost-recovery thresholds, investment tolerance for its programs, and overall risk profiles. Moderna would be harmed because competitors could anticipate which programs Moderna is likely to prioritize or abandon, allowing them to strategically fill gaps in markets Moderna may exit or delay.

10.     Exhibit D is an excerpt of a deposition transcript of Ms. Lawton. Portions of testimony on Pages 94–125, 131–134, 198, 256–259, and 263–267 contain testimony relating to highly confidential commercial information such as profit margins, profit rates, and unit prices for the COVID-19 vaccine that are not publicly known.  If Moderna's competitors had access to this information, they could use this information to Moderna's disadvantage in negotiating purchase

agreements and collaboration agreements. This information is also derived from research and analysis at Moderna and could be used by Moderna's competitors to use for their own pricing structures.

11.    Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion cites this information on pages 2, 14 and 15. This information should be redacted to protect Moderna's most sensitive financial information and the redactions are narrowly tailored such that the public's ability to understand the underlying motion is not inhibited any more than absolutely necessary.

12.    The fact that the underlying confidential information to be maintained under seal in some of Moderna's exhibits date back a few years does not undermine the risk of concrete harm to Moderna that would result from its disclosure. Especially in the financial projections, revenues, profit margins, and overall financial position at Moderna. Moderna's competitive position in this highly competitive industry and its ability to develop pricing strategies, commercial strategies, and future projections is essential for Moderna to be able to maximize its position in the market and negotiate favorable terms in commercial agreements with customers, vendors, and others in the industry. As discussed above, for example, disclosure of costs and margin information could affect Moderna's competitiveness for multiple years because supply agreements in pharma often lock pricing for long durations.

13.    It is critical to Moderna that the Court maintain under seal Moderna's confidential information. Moderna has always taken extensive measures to maintain the confidentiality of its technical and business information, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except

under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information. Internal to Moderna, employee access to commercially sensitive information relating to Moderna's pricing strategies, costs of goods, and financial positions, especially when presented to executives and directors at Moderna, are often restricted on a need-to-know basis, as determined by a person's group or role on a project. Moderna has been extremely concerned about the protection of its confidential information during this litigation and has been very careful to always protect this information.

14.     Based on my personal knowledge and experience in the pharmaceutical business and in business finances, I believe that disclosure of this information would significantly harm Moderna by revealing confidential data to its direct competitors and the public generally. If the confidential information and the terms of the agreement were made public, Moderna's competitors would gain a significant advantage in creating their own business strategies, and potential future negotiations involving Moderna, which would put Moderna at a significant competitive disadvantage, causing it real and serious harm.

*        *        *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this December 16, 2025              Respectfully submitted,

                                               /s/ Albert Thomas
                                               Albert Thomas

7

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 16, 2025, upon the following in the manner indicated:

John W. Shaw, Esquire                                     *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs Arbutus Biopharma*
*Corporation and Genevant Sciences GmbH*

Daralyn J. Durie, Esquire                                 *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
Eric C. Wiener, Esquire
Annie A. Lee, Esquire
Shaelyn K. Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

Kira A. Davis, Esquire                                    *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David N. Tan, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma Corporation*

*VIA ELECTRONIC MAIL*

David I. Berl, Esquire
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

*VIA ELECTRONIC MAIL*

Andrei Iancu, Esquire
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006
*Attorneys for Plaintiff Genevant Sciences GmbH*

*VIA ELECTRONIC MAIL*

*/s/ Travis J. Murray*

Travis J. Murray (#6882)

2