# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 22-252 (JDW) |
| v. | ) ) | |
| MODERNA, INC. and MODERNATX, INC. | ) ) | |
| Defendants. | ) ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**DECLARATION OF HENRY HAGEN
IN SUPPORT OF DEFENDANTS' MOTION TO SEAL**

I, Henry Hagen, hereby declare as follows:

1.      I am Associate Counsel, Business Development, Licensing, and Research at ModernaTX, Inc. (hereinafter, "Moderna"). In this role, I am familiar with Moderna's products (including clinical development), as well as related business contracts relating to the same. I am familiar with the fact that Moderna maintains this information as confidential,[1] and I am familiar with the extensive efforts Moderna takes to protect its confidential information. I have personal knowledge of the facts stated in this declaration or have become aware of such facts through my role at Moderna. If called upon to testify, I could and would competently testify thereto.

2.      I write this declaration in support of Moderna's request to avoid disclosure of sensitive and confidential information on the public record. I discuss below how and why Moderna keeps confidential certain business and licensing information that contains commercial information, and the serious harm that would result to Moderna from disclosure of this information to Moderna's competitors.

3.      I understand this case relates to Moderna's COVID-19 Vaccine, known as mRNA-1273 or "SpikeVax." SpikeVax is comprised of messenger RNA (mRNA) which is encased in lipid nanoparticles (LNPs). Moderna's proprietary LNP is comprised of four lipid components including SM-102, cholesterol, phospholipid, and PEGDMG-2000.

4.      I have been provided and have reviewed the information that Moderna proposes to maintain under seal in Exhibits 1, 38, A, C, D, E, AA, CC to Moderna and Plaintiffs' *Daubert*

---

[1]    I understand that the Protective Order in this case (D.I. 91) includes two categories of Protected Material: "Confidential" and "Highly Confidential – Outside Counsel's Eyes Only." I understand that the parties' *Daubert* briefs and the exhibits thereto include "Highly Confidential – Outside Counsel's Eyes Only" information. For the purposes of this declaration, I have used the term "confidential" to cover this category, which should not be disclosed to the public for the reasons explained herein.

briefing as well as the briefs themselves. These documents include details concerning license agreements, sublicence agreements, strategic drug development collaborations, and development and option agreements between third parties and Moderna. The terms of the licenses reflect Moderna and third parties' highly confidential business information, including sensitive commercial terms that the third parties and Moderna agreed to and confidential information regarding Moderna's product development efforts. Moderna has contractual obligations to keep the documents listed above as confidential. As explained below, Moderna would suffer competitive and economic harm concerning its ability to negotiate and enter into agreements with other third parties that would adversely impact its clinical development, regulatory approvals, and ability to generate revenue.

5.      The documents Moderna proposes to maintain under seal information in connection with (1) Moderna's Motion to Exclude the Expert Opinions of Catharine Lawton, Georg Schuster, Ph.D., Michael Mitchell, Ph.D., Peter J. Pitts, and Alex M. Brill and (2) Plaintiffs' Motion to Exclude Expert Testimony are summarized as follows:

(a)      Exhibit 1 is an excerpt of the Rebuttal Expert Report of Dr. Christopher Vellturo

(b)      Exhibit 38 is an excerpt of the Expert Report of Catharine Lawton

(c)      Exhibit A is an excerpt of the Expert Report of Catharine Lawton

(d)      Exhibit C is an excerpt of the Reply Expert Report of Catharine Lawton

(e)      Exhibit D is an excerpt of the April 30, 2025 deposition transcript of Catharine Lawton

(f)      Exhibit E is an excerpt of the Opening Expert Report of Dr. Michael Mitchell

(g)      Exhibit AA is an excerpt of the Opening Expert Report of Dr. Frederick Porter

(h)      Exhibit CC is the Expert Report of James Malackowski from *ModernaTx, Inc. v. Pfizer Inc.*, Case 1:22-cv-11378 (D. Mass)

(i)      Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion

2

(j)    Moderna's *Daubert* Motion

(k)    Moderna's *Daubert* Reply

I will address the confidential information and the harm to Moderna and third parties if this information became publicly below generally as well as on a document-by-document basis.

6.    I have also been provided and have reviewed the information that Moderna proposes to maintain under seal in Exhibits A, C, D, E, AA, and CC to Moderna's *Daubert* briefing. The information to be maintained under seal in Moderna's Exhibits A, C, D, E, AA, and CC relates to confidential financial information such as the methods for calculating relevant sales of the licensed product(s), structure and amount of compensation exchanged between the parties for the licensed rights (e.g., up-front payments, milestone payments, and/or escalating payment obligations based on sales volume), as well as the identity of certain targets, scope of rights under the agreements, and decision making authority between the parties. Not only does Moderna routinely maintain the confidentiality of these categories of financial information, but Moderna would also sustain harm and prejudice to its competitive standing in the pharmaceutical industry if such information were disclosed to the public. Public access to the specific payment structures and amounts contemplated in, e.g., Exhibit CC (such as royalty rates, upfront fees, and milestones, which reflect Moderna's confidential financial modeling, market forecasting, sensitivity analyses, and risk tolerance, could enable competitors to reverse-engineer Moderna's internal pricing assumptions, cost-of-goods projections, and risk tolerances, and profit margins. Thus, in an increasingly competitive market with various biopharmaceutical companies seeking to develop and sell mRNA-based products, including COVID-19 vaccines, disclosure of Moderna's confidential financial terms would provide competitors with an unwarranted roadmap for structuring rival licensing proposals and undercut Moderna in its future licensing negotiations, forcing Moderna to serve as a stalking horse for competitors by allowing them to see where

3

Moderna sees market opportunities for mRNA products. In addition, the disclosure of Moderna's confidential financial information would provide licensing counterparties with unfair negotiating leverage—given their insight into Moderna's financial position and licensing strategies—to exert pressure on Moderna to match or exceed its prior license terms in future deals. This is particularly salient in Moderna's negotiations with governmental and quasi-governmental counterparties, many of which possess statutory authority to impose price caps pegged to published or otherwise known payment terms. The resulting compression in net margins would materially undermine Moderna's ability to generate revenue to reinvest in next-generation vaccine research. Additionally, if third parties become aware that licenses with Moderna have become public, they will be less willing to offer favorable terms such as license rates, for fear that those rates would become public and become the new "floor" for future negotiations with others. If Moderna's competitors knew the identity of certain targets, scope of rights under the agreements, and decision making authority between the parties, it would prejudice both Moderna's negotiating posture in future negotiations, but also could also be sign-post to Moderna's competitors where we it sees areas of opportunity both on biology and technology, which is very commercially sensitive.

7.      The information to be maintained under seal in Moderna's Exhibit A, for example, detailing the scope of the agreement (including the target, product definition, territory) are sensitive in nature and reflect carefully crafted negotiations between parties that go directly to the value of the licensed rights, which can be imputed based on factors such as (i) the volume and nature and any development efforts borne by Moderna; (ii) limitations on potential commercial value based on restrictions to licensed fields; and (iii) the specific group of licensed patents. Moderna and its license partners negotiated and entered their licenses with the understanding that such information would remain confidential, and disclosure of information revealing the scope of

4

the license would impede Moderna's ability to negotiate and enter into future agreements. By disclosing information revealing the scope of the license, Moderna's competitors and prospective business partners would gain unfair negotiating leverage and insight into Moderna's licensing strategies and willingness to accept or reject certain license terms. This would likely lead to a downward trajectory in the favorability of future license terms for Moderna in an increasingly competitive biopharmaceutical market. Additionally, the definition of the scope such as product, targets, territories, reveals non-public plans about what related products Moderna is considering marketing and/or has the right to market in the future, and would unfairly disclose Moderna's non-public future product strategy to competitors in the industry.

8.      The confidential information to be maintained under seal in Moderna's Exhibits 1, 38, A, E, and CC are also subject to provisions requiring Moderna to protect the confidentiality of all "Confidential Information." Immediate public disclosure would place Moderna in breach of that covenant, exposing the company to potential contract liability. Beyond direct liability to Moderna's license counterparties, any perception that Moderna fails to honor confidentiality obligations would chill future partnering opportunities. This is especially true with Moderna's typical licensing counterparties—academic institutions and biotech innovators—that are acutely sensitive to a licensee's reputation for safeguarding proprietary information.

9.      I will now address the exhibits individually, beginning with Exhibit 1, an excerpt of the Rebuttal Expert Report of Dr. Christopher Vellturo. Paragraphs 86 and 87 contain highly confidential information relating to the license agreement between Acuitas and Moderna. Namely, the specific types of rights that were acquired, the options, fees and other rights were carefully negotiated and are not publicly known. Even though this agreement is from 2014, the sophisticated structure of this agreement would provide valuable insight to Moderna's competitors and potential

5

collaborators and licensees and licensors into Moderna's payment, rights, and responsibilities that Moderna is willing to enter into. Exposing Moderna's business and financial positions weakens Moderna's bargaining abilities and its abilities to enter into future licensing and collaboration agreements. Paragraphs 162–163 similarly contain highly confidentiality licensing information relating to a 2017 agreement between Moderna and Cellscript. These paragraphs include highly confidential information about specific payment numbers and structures that are not publicly known that were carefully negotiated and are not publicly known. Even though this agreement is from 2017, the sophisticated structure of this agreement would provide valuable insight to Moderna's competitors and potential collaborators and licensees and licensors into Moderna's payment, rights, and responsibilities that Moderna is willing to enter into. Exposing Moderna's business and financial positions weakens Moderna's bargaining abilities and its abilities to enter into future licensing and collaboration agreements. Paragraphs 164 and 165 contain highly confidential information licensing information relating to a 2022 agreement between Moderna and NIAID. These paragraphs include highly confidential information about specific payment numbers and structures that are not publicly known that were carefully negotiated and are not publicly known. Paragraphs 167–171 contain highly confidential information pertaining to a 2018 collaboration and license agreement between Moderna and Merck. These paragraphs contain highly confidential information relating to the responsibilities of each of the parties, the specific cost-sharing and profit-sharing terms, and other payment structures that were carefully negotiated and are considered confidential between the parties. Even though this agreement is from 2018, the sophisticated structure of this agreement would provide valuable insight to Moderna's competitors and potential collaborators and licensees and licensors into Moderna's payment, rights, and responsibilities that Moderna is willing to enter into. Exposing Moderna's business and financial

positions weakens Moderna's bargaining abilities and its abilities to enter into future licensing and collaboration agreements. Paragraphs 172–181 contain highly confidential information pertaining to a 2016 and a 2017 collaboration and license agreement between Moderna and AstraZeneca. Like the 2018 agreement with Merck, these paragraphs contain highly confidential information relating to the responsibilities of each of the parties, the specific cost-sharing and profit-sharing terms, and other payment structures that were carefully negotiated and are considered confidential between the parties. Even though these agreements are from 2016 and 2017, the sophisticated structure of these agreements would provide valuable insight to Moderna's competitors and potential collaborators and licensees and licensors into Moderna's payment, rights, and responsibilities that Moderna is willing to enter into. Exposing Moderna's business and financial positions weakens Moderna's bargaining abilities and its abilities to enter into future licensing and collaboration agreements. Paragraphs 201–203, 205–213 contain analysis of the confidential information from the previously discussed paragraphs. Paragraphs 362–365, and 368 contain highly confidential information from 2016 and 2020 agreements between Moderna and Vertex. These agreements discuss the confidential research subject matter between these companies, as well as the payment, licensing, and cost-sharing arrangements that were carefully negotiated and are not publicly known. Paragraph 595, 600, 602, 604, and 612, and footnotes 1484 and 1539 contain highly confidential and specific pricing information between Moderna, the U.S. government, and other governments. This information is subject to confidentiality agreements and reflects careful negotiations that Moderna structured. Public disclosure of this information could inhibit Moderna's future ability to engage in contracts with governments and third parties and provide valuable insight to Moderna's competitors seeking to negotiate their own contracts. Footnote 1704 in Paragraph 664 incorporates this confidential pricing information into the

7

calculations that Ms. Lawton uses. Paragraph 799 contains highly confidential terms detailing Moderna's "elements of value" that it considers to be its assets when negotiating collaborations with third parties. Public disclosure of this information would provide key insight into Moderna's negotiating position and would be valuable information for its competitors to use when structuring and negotiating agreements with Moderna.

10.    Exhibit 38 is an excerpt of the Expert Report of Catharine Lawton. Paragraphs 1378–1381, 1529, 1531 and 1532 contain confidential information containing either the actual payment terms in Moderna's confidential license and collaboration agreements or contain application of those terms to the proposed deal structures that Genevant would seek in this litigation. As discussed previously, this information is highly confidential and would seriously harm Moderna's negotiation positions in future agreements if this information became publicly available. Paragraph 1444 contains highly confidential information relating to Moderna's financial position that is not part of public filings. This information could be used by Moderna's competitors, to Moderna's detriment, to negotiate agreements.

11.    Exhibit A is an excerpt of the Expert Report of Catharine Lawton. Paragraphs 279, 280, 294, 498, 499, 1141, 1151, 1229, 1230, 1232, 1234, 1235, 1236, 1240–1243, 1246–1252, 1254–1256, 1259, 1262, 1275–1280, 1282–1285, 1288, 1290, 1291, 1322, 1323–1325, 1327, 1328, 1332, 1333–1339, 1344, 1349–1353, 1483, 1488, 1494, 1516, 1525, 1535, 1537 contains highly confidential information pertaining to Moderna's cost of goods as well as non-public financial position of Moderna based on internal board presentations based on future projections and projects, payment terms, and other pricing analysis performed by Moderna that factored into the cost of the vaccine and Moderna's overall financial position. This analysis and advice to Moderna's executives and the calculations that were performed are sensitive business and financial

8

information that could be analyzed and projected to gain valuable insight into Moderna's current and future financial positions. This information would be valuable to Moderna's competitors to gain favorable negotiation positions based on Moderna's confidential information. Paragraphs 367, 441, 442, 454, 459 contains key licensing negotiation information and strategies that Moderna considers when entering into licensing agreements, including the potential financial implications of entering into agreements and developing its products.  This information is not public and would be valuable to Moderna's competitors to gain favorable negotiation positions.  Paragraphs 393, 394–400, 421, 425, 426, 427, 428, 434, 469 contain highly confidential information about Moderna's considerations and goals, as well as Moderna's own internal licensing policies or factors that it considers, that is applies when entering into a potential licensing agreement. This information is not publicly known and reflect positions and strategies employed by Moderna when considering entering current agreements. This information would be valuable to Moderna's competitors to gain favorable negotiation positions based on Moderna's confidential information. Footnotes 1099–1101 in Paragraph 402, Paragraph 439, and Paragraph 729, 1076, 1257, 1258 contain highly confidential information about the Cellscript and NIAID agreements previously discussed. Footnote 2211 in Paragraph 835 contains highly confidential information about the Vertex agreement as previously discussed. Paragraphs 1380–1383, 1385, 1386 contains other highly confidential licensing terms and structures that Moderna employs when evaluating and negotiating licensing agreements and collaborations.  Paragraphs 404 contains highly confidential information about Moderna's licenses to certain technologies used for other product development. This product development, and why the licenses were acquired to facilitate this development, are not publicly known. Paragraphs 406, 411, 412, 413, 417, 1372, 1378, 1379 contains highly confidential information relating to Moderna's views of its own and others' licensing practices,

including prior licensing agreement terms that Moderna has entered into. This information is highly confidential and could be used by its competitors and potential licensors and licensees to gain valuable insight into Moderna's negotiating practices and prior non-public agreement terms. Paragraph 472 includes highly confidential information pertaining to Moderna's manufacturing capacity as it relates to Moderna's expectations for calculating volume, price, costs, and overall profits. This factor in evaluating Moderna's value is highly confidential and could be used by its competitors to model and value their own products. Paragraph 482, 496 includes highly confidential information pertaining to potential changes to pricing, as discussed during a Moderna executive meeting and other high-level confidential presentations and reports. This information has not been made public and could be used by others to evaluate and price their own products using confidential strategies explored by Moderna. Paragraphs 487, 495, 497, 498, 1625 contain highly confidential and specific pricing information between Moderna, the U.S. government, and other governments. This information is subject to confidentiality agreements and reflects careful negotiations that Moderna structured. It also contains highly sensitive commercial information about Moderna's evaluation of the vaccine market and factors it considers when pricing its products. Public disclosure of this information could inhibit Moderna's future ability to engage in contracts with governments and third parties and provide valuable insight to Moderna's competitors seeking to negotiate their own contracts. Paragraphs 500, 507–512 contain highly confidential information surrounding the gross margin for mRNA-1273, which is based on highly confidential internal information on the cost of goods and analysis. This information would be highly valuable to Moderna's customers structuring purchase and licensing agreements with Moderna. Paragraph 703 contains highly confidential information relating to Moderna's financial position that is not part of public filings. This information could be used by Moderna's

10

competitors, to Moderna's detriment, to negotiate agreements. Paragraphs 1049, 1054, 1057, and 1058 contain highly confidential information pertaining to the pricing structure and the rights in the 2018 agreement with Merck discussed previously. Paragraphs 1059–1062, 1066–1070, 1074, and 1075 contain highly confidential information pertaining to the pricing structure and the rights in the agreements with AstraZeneca discussed previously. Paragraphs 1355 and 1357 contain highly confidential about a proposed licensing agreement that contains terms and Moderna's licensing positions that it considers when negotiating with third parties. The terms, values, and strategies are highly confidential and public disclosure would harm Moderna's ability to license and negotiate other commercial agreements. Paragraphs 1546–1549, 1563, 1566, 1570–1574, 1577, 1579, 1581–1584, 1587, 1591–1594, 1596, 1598, 1600–1602, 1604–1608, 1622, 1645, 1647 contain highly confidential information surrounding the genealogical data behind mRNA-1273 and the manufacturing process, including Moderna's affiliates in the process, that is not publicly known and is proprietary. Revealing this information could allow its competitors to understand Moderna's trade secret process. Schedules 1.1, 1.2, 3.1, 3.2, 3.3, and 7.3 contain calculations based on highly confidential financial information not publicly known, including Moderna's sources of revenue, Moderna's costs of goods, and pricing structures. Revealing this information could be used by Moderna's competitors to evaluate Moderna's highly confidential pricing and financial position as it relates to the COVID-19 vaccine as well as to company overall.

12. Exhibit C is an excerpt of the Reply Expert Report of Ms. Lawton. The reply report includes several of the same types of highly confidential information in Ms. Lawton's opening report, including the value of Moderna and its overall financial position and product pricing calculations based on internal board meeting and executive presentations and non-public evaluations (Paragraphs 159, 161, 453–457, 469, 472, 492, 495); terms and strategies used by

11

Moderna in licensing negotiations and actual licensing terms and structures (Paragraphs 331, 332, 387, 396, 399, 467, 493, 499); terms and pricing with governments (Paragraphs 434, 435, 477).

13.     Exhibit D is an excerpt of the April 30, 2025 deposition transcript of Ms. Lawton. Page 46 discusses a confidential gross margin projections and operating profits that Moderna has not publicly disclosed and would be highly valuable to its competitors. Pages 126, 214, 218, 219, 220, and 248 discuss Ms. Lawton's opinion on the value of the product based on highly confidential licensing agreement terms that Moderna has entered into with third parties. As discussed previously, this information is highly confidential to Moderna and to third parties and Modern's negotiating position would be harmed if its competitors, licensors, and licensees became aware of this information. These redactions are limited to no more than necessary to prevent the public disclosure of Modern's most confidential financial, commercial, and licensing information.

14.     Exhibit E is an excerpt of the Opening Expert Report of Dr. Michael Mitchell. Paragraphs 832–838 contain highly confidential rights and terms of the collaboration agreement with Merck and the licensing agreements with AstraZeneca. As discussed previously, this information is highly confidential and Moderna would be harmed if this information became known to competitors in the market.

15.     Exhibit AA is an excerpt of the Opening Expert Report of Dr. Frederick Porter. Paragraphs 43–45 and contain highly confidential terms of the Cellscript agreement and Paragraphs 54–58 contain highly confidential terms of the NIAID agreement. As discussed previously, this information is highly confidential and Moderna would be harmed if this information became known to competitors in the market.

16.     Exhibit CC is the Expert Report of James Malackowski from *ModernaTx, Inc. v. Pfizer Inc.*, Case 1:22-cv-11378 (D. Mass).  Pages identified as 162 and 163 contain highly

confidential information relating to the terms that Moderna has entered into with Merck, AstraZeneca, Vertex, and Chiesi. As previously discussed, this information is highly confidential and Moderna would be harmed if this information became known to competitors in the market.

17.     Plaintiffs' Responsive Brief in Opposition to Moderna's *Daubert* Motion at pages 10–11, Moderna's *Daubert* Motion, and Moderna's *Daubert* Reply references the highly confidential information identified above and should be redacted to prevent the public disclosure of Moderna or third party confidential information. The redactions are narrowly tailored such that the public's ability to understand the briefing is not inhibited any more than necessary.

18.     The fact that confidential information to be maintained under seal in some of Moderna's exhibits dates back many years (including periods pre-dating the COVID-19 pandemic) does not undermine the risk of concrete harm to Moderna that would result from its disclosure. Especially in the context of licenses involving the exchange of intellectual property rights (which generally have a 20-year term), confidential financial information retains relevance for the entirety of the license period—generally expressed in terms of the expiration date of the last-to-expire licensed patent on a country-by-country basis. The amount of financial compensation is intrinsically tied to the scope of licensed intellectual property rights. Thus, Moderna's competitive position and ability to negotiate favorable terms in subsequent negotiations relating to the same intellectual property implicated by "older" licenses will be undermined so long as the intellectual property has not expired—a scenario that is applicable to most, if not all, of Moderna's "older" licenses given the twenty-year patent term. As an example, public disclosure of license terms Moderna negotiated years ago as a pre-commercial stage company, before launch of Moderna's first commercial product, SpikeVax, could incentivize counterparts in future negotiations with Moderna to seek higher payment terms and more aggressive fee structures under the guise that

13

Moderna is now a commercial stage company. In addition, because Moderna's key patent rights pre-date the COVID-19 pandemic, terms relating to the valuation and licensing of these rights retain value to Moderna's present financial position and ability to engage in current negotiation, particularly for royalty rates.

19.    It is critical to Moderna that the Court maintain under seal Moderna's confidential information. Moderna has always taken extensive measures to maintain the confidentiality of its technical and business information, including by implementing procedures that restrict access to sensitive information even within Moderna. Employees have confidentiality obligations as part of their employment and are provided guidance regarding how to treat sensitive information. Specifically, confidential Moderna information is not to be disclosed outside of Moderna except under confidentiality agreement and when necessary. Documents containing such information may be marked as confidential or otherwise indicate they contain restricted or sensitive information. Internal to Moderna, employee access to commercially sensitive information relating to Moderna's propriety research and products is often restricted on a need-to-know basis, as determined by a person's group or role on a project. Moderna has been extremely concerned about the protection of its confidential information during this litigation and has been very careful to always protect this information.

20.    Based on my personal knowledge and experience in the pharmaceutical business, I believe that disclosure of this information would significantly harm Moderna by revealing confidential data to its direct competitors and the public generally. If the confidential information and the terms of the agreement were made public, Moderna's competitors would gain a significant advantage in creating their own business strategies, and potential future negotiations involving

14

Moderna, which would put Moderna at a significant competitive disadvantage, causing it real and serious harm.

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this December 16, 2025                Respectfully submitted,

                                               */s/ Henry Hagen*
                                               Henry Hagen

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 16, 2025, upon the following in the manner indicated:

John W. Shaw, Esquire                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs Arbutus Biopharma*
*Corporation and Genevant Sciences GmbH*

Daralyn J. Durie, Esquire                *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
Eric C. Wiener, Esquire
Annie A. Lee, Esquire
Shaelyn K. Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

Kira A. Davis, Esquire                   *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David N. Tan, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David I. Berl, Esquire                                       *VIA ELECTRONIC MAIL*
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

Andrei Iancu, Esquire                                        *VIA ELECTRONIC MAIL*
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006
*Attorneys for Plaintiff Genevant Sciences GmbH*

*/s/ Travis J. Murray*

Travis J. Murray (#6882)

2