# ATTACHMENT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

<table>
<tr><td>

**SMARTSKY NETWORKS, LLC,**

*Plaintiff,*

v.

**GOGO BUSINESS AVIATION, LLC and GOGO INC.,**

*Defendants.*

</td><td>

**Case No. 1:22-cv-00266-JDW**

</td></tr>
</table>

## ORDER

**AND NOW**, this 26th day of September, 2025, upon consideration of the Defendants Gogo Business Aviation, LLC and Gogo Inc.'s Unopposed Motion to Seal (D.I. 526) and Plaintiff SmartSky Networks, LLC Unopposed Motion to Seal (D.I. 542) ("SmartSky"), I note as follows.

1.      The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.,* 265 F.3d 1268, 1272 (Fed. Cir. 2001).  Thus, Third Circuit law governs the motions to seal

in this patent case.  *See, e.g.*, *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020).

2.      In the Third Circuit, there is a presumption at common law that the public has a right to access judicial records.  *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 672 (3d Cir. 2019).  While that common law right of access is "a recognized and venerated principle, . . . the right is not absolute." *In re Cendant Corp. v. Forbes*, 260 F.3d 183, 194 (3d Cir. 2001) (internal quotation marks omitted).  In other words, the presumption can be rebutted.  *See id.*

3.      The party seeking to file material under seal can rebut the presumption by showing that "the interest in secrecy outweighs the presumption" of access. *Avandia*, 924 F.3d at 672 (internal quotation marks omitted).  To do this, the party must demonstrate that "the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quotation omitted) (emphasis added).  With respect to the serious-injury prong, the party "must make a specific showing." *Avco Corp. v. Turner*, No. 20-cv-4073, 2021 WL 3487321, at *1 (E.D. Pa. Aug. 9, 2021).  "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Avandia*, 924 F.3d at 673 (internal quotation marks omitted).

4.      The court must then engage in "[c]areful" factfinding and balance the public's right of access against the party's secrecy interests. *Id.* (internal quotation marks

omitted).  This means that courts need to "conduct a document-by-document review of the documents the party wishes to seal."  *Avco Corp.*, 2021 WL 3487321, at *1 (internal quotation marks omitted).

### Gogo's Motion To Seal

5.      Gogo moves to seal the entirety of Exhibits 2 and 3 to its brief in support of its motions *in limine* (and portions of Exhibits 1 and 2 to SmartSky's Motion *In Limine* No. 2  Gogo asserts that the information it designated across these four exhibits constitutes "highly confidential technical information and specifications for Gogo's air-to-ground network, proprietary business forecasting information, and third-party customer identifiers."  (ECF No. 527 at 6; *see also* ECF No. 527-1 at 3–4.)  Put another way, the information that Gogo seeks to seal either relates to Gogo's business strategy or the technical aspects of its air-to-ground network.

6.      According to Gogo, if this information were disclosed to the public, that disclosure would put it at a competitive disadvantage "in the business aviation air-to-ground connectivity market" as it would provide Gogo's "competitors, customers, and potential licensors or licensees with otherwise confidential information regarding Gogo's network that Gogo does not otherwise make public."  (D.I. 527 at 7.)  It offers a declaration that explains that disclosure would "reveal proprietary insights into Gogo's decision-making processes, technical evaluations, and business rationale," thereby causing "substantial economic harm" and "confer[ring] a significant competitive disadvantage to

Gogo." (D.I. 527-1 at 3.) The Declaration also explains that the information in SmartSky's exhibits is "product development information and internal engineering documents[] regarding Gogo's products and air-to-ground network" and that the disclosure of such information would cause Gogo "economic harm" and put Gogo at a "significant competitive disadvantage." (D.I. 527-1 at 4.)

7. Having conducted a document-by-document review and considered Gogo's arguments, I am persuaded that Gogo has rebutted the presumption of access. The information that Gogo seeks to seal is clearly of the kind that courts will protect. *See Avandia*, 924 F.3d at 679. Gogo has made specific showings that it would experience clearly defined and serious injury if this information were public. I will therefore grant Gogo's motion to seal.

**SmartSky's Motion To Seal**

8. SmartSky moves to seal select portions of Exhibit C to Gogo's Opposition Brief To SmartSky's Motion *In Limine* No. 2, SmartSky's Opposition Brief To Gogo's Motions *In Limine*, and Exhibit C to that Opposition Brief. SmartSky alleges that the information it designated across these three documents constitutes confidential financial information or technical details for its air-to-ground radios, beamforming technology, and overall schematics for its air-to-ground network. (D.I. 543 at 1.)

9. SmartSky insists that if these materials were disclosed to the public, then SmartSky would suffer a clearly defined and serious injury. In particular, SmartSky argues

4

that the disclosure of its product-development information "would provide SmartSky's competitors, customers, and potential licensees with otherwise confidential information … as well as a competitive advantage in … the business aviation air-to-ground connectivity market." (D.I. 543 at 8.) SmartSky also alleges that if the confidential financial information located in SmartSky's Opposition Brief and Exhibit C was disclosed to the public, SmartSky's competitors and investors would be able to "assess" and "determine" SmartSky's financial position, thus "inhibit[ing]" SmartSky's ability to sell and license its technology. (*Id.* at 9.) SmartSky supports its argument with a Declaration that explains, with specificity, the harm that SmartSky would suffer from disclosure of the information at issue.

10. I am persuaded that SmartSky has rebutted the presumption of access. Like Gogo, SmartSky only seeks to seal information that courts will protect, namely confidential financial information and technical information related to its products. *See, e.g.*, *Boehringer Ingelheim Pharma GMBH & Co. KG v. Mylan Pharms., Inc.*, No. 14-4727, 2015 WL 1816473, at *2 (D.N.J. 2015). SmartSky has identified the type of serious harm it would experience in the event the information it wishes to seal was made public. I will therefore grant its motion.

Therefore, it is **ORDERED** as follows:

1. Gogo's Motion to Seal (D.I. 526) is **GRANTED**; and

2. SmartSky's Motion To Seal (D.I. 542) is **GRANTED**.

**BY THE COURT:**


*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.