**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**MODERNA, INC. and MODERNATX, INC.,**<br><br>*Defendants*. | **Case No. 1:22-cv-00252-JDW** |

## <u>ORDER</u>

**AND NOW**, this 16th day of January, 2026, upon consideration of Plaintiffs Arbutus Biopharma Corp. And Genevant Sciences Gmbh's Unopposed Motion To Seal Portions Of *Daubert* Briefing (D.I. 653) and Defendants Moderna, Inc. And ModernaTX, Inc.'s Unopposed Motion To Seal (D.I. 682), I note as follows.

1.     The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Thus, Third Circuit law governs motions to seal in this patent case. *See, e.g., Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020).

2.      The common law presumes that the public has a right of access to judicial records. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "In the Third Circuit, the right is particularly robust." *In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding*, No. 19-cv-209, 2020 WL 2949742, at *7 (D. Del. Mar. 25, 2020), *report and recommendation adopted in part*, 2020 WL 2915781 (D. Del. June 3, 2020). To overcome the strong presumption of access that attaches to judicial records, a movant must show that the interest in secrecy outweighs the presumption by demonstrating that "the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (quotation omitted) (emphasis added). A party seeking to file material under seal must make a specific showing; "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quotation omitted). A court "must 'conduct[ ] a document-by-document review'" to determine whether sealing is warranted. *Id.* (same). That standard does not vary depending on the level of public interest in a case or which members of the public might be interested in it.

**Plaintiffs' Motion To Seal**

3.      I will grant the Plaintiffs' Unopposed Motion To Seal (D.I. 653) because, in my view, they have met their burden to justify the redaction of information related to

Genevant's (1) license agreements, (2) licensee's manufacturing and budgeting plans, (3) internal valuation, and (4) settlement offers made in connection with this litigation.

**License Agreements**

4.       Plaintiffs seek to redact portions of the Parties' briefing related Plaintiffs' Motion To Exclude Expert Testimony and Exhibits 1, 3, 13, 14, 31, 33, 36, 37, and 38. They also seek to seal portions of the Parties' briefing related to Defendants' *Daubert* Motion along with Exhibits A, C, D, R, S, and V. This information relates to the financial terms of Genevant's license agreements with third parties, such as the lump sum amount, royalty amounts, royalty reduction terms, milestone amounts, and milestone triggers. It also includes transcript excerpts from the deposition of Genevant's President and Chief Legal Officer, Pete Zorn, covering information related to Genevant's licensing practices.

5.       Having reviewed this information, I agree with Plaintiffs "that th[is] material is the kind of information that courts will protect." *Avandia*, 924 F.3d at 672 (quotation omitted). Indeed, "courts may permissibly seal judicial records 'where they are sources of business information that might harm a litigant's competitive standing.'" *Id.* at 679. And the information at issue here concerns the terms of Plaintiffs' license agreements with third parties and Plaintiffs' licensing strategies more broadly. In fact, courts in this district have sealed this sort of information before. *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012). Therefore, I find the first prong of *Avandia* to have been met. *See Avandia*, 924 F.3d at 672.

6.      I am also persuaded that the public disclosure of this information will work a clearly defined and serious injury on Plaintiffs. *See id.* This information provides negotiating leverage to Plaintiffs' potential licensees and could result in less favorable terms for Genevant in future license agreements. Genevant has active and ongoing discussions and negotiations with potential licensees. Disclosure would therefore cause a concrete harm.

**Licensee's Manufacturing and Budgeting Plans**

7.      Plaintiffs also seek to seal Exhibit 12 in its entirety along with portions of Exhibit 5 to the Parties' briefing regarding Plaintiffs' Motion To Exclude Expert Testimony. The information designated to be sealed relates to a confidential presentation and includes the licensee's clinical trial and manufacturing timelines along with its budget projections, costs of manufacturing, and costs of conducting its clinical trials.

8.      The confidential information Plaintiffs seek to seal covers financial forecasts and various costs associated with the development of a licensee's COVID-19 vaccine, so I am persuaded that this "is the kind of information that courts will protect." *Avandia*, 924 F.3d at 672 (quotation omitted).

9.      I am not convinced that the indirect harm that Plaintiffs would experience from the disclosure of its licensee's confidential information is enough to satisfy the demands of *Avandia*, but I find that the harm to Genevant's licensee is sufficient. And even though Genevant's licensee is not the party seeking sealing, I do not think it necessary for

4

it to file a corresponding motion to seal given that judges in this district have sealed information similar to that at issue here. *See, e.g.*, *MED-EL*, C.A. No. 18-1530-JDW, D.I. 274.

### Genevant's Valuation

10.    Plaintiffs also seek to redact portions of Exhibit A to the Parties' briefing regarding Defendants' *Daubert* Motion. The particular information sought to be sealed relates to Genevant's internal valuation of its lipid nanoparticle technology and to third-party offers to acquire Genevant and/or its lipid nanoparticle portfolio.

11.    Judges in this district have sealed similar information before. *See, e.g.*, *Mosaid Techs. Inc.*, 878 F. Supp. 2d 502, 510 (D. Del. 2012) (sealing "pricing, finances, and patent valuation"). Given the nature of this information along with the fact that it largely resembles information that other jduges have sealed, I find the first prong of *Avandia* to be satisfied. *See Avandia*, 924 F.3d at 672.

12.    In addition, "the disclosure of the dollar amounts of these confidential transactions that did not proceed to execution would affect Plaintiffs' competitive standing" in the pharmaceutical industry and could be used by "competitors and others in the industry" during future acquisition negotiations. (D.I. 654-1 at 10.) In my view, that competitive harm is enough to satisfy *Avandia*.

### Settlement Offers

13.    Plaintiffs also seek to seal specific portions of Exhibit A to the Parties' briefing related to Defendants' *Daubert* Motion along with specific portions of Exhibit 3

5

to the Parties' briefing related to Plaintiffs' Motion To Exclude Expert Testimony. The information concerns Plaintiffs' confidential settlement offers made to Defendants in order to resolve ongoing and anticipated litigation.

14.    In certain instances, courts will protect information related to settlement agreements. *See, e.g., LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011). Because confidential settlement offers are part and parcel of settlement agreements, I find this information to be the kind that courts will protect. *See Avandia*, 924 F.3d at 672.

15.    I likewise find that the public disclosure of this information would "work a clearly defined and serious injury to [Plaintiffs]." *Id.* (quotation omitted).  The disclosure of confidential settlement discussions could affect Plaintiffs' position with respect to ongoing litigation that it has with other third parties. That harm is clearly defined and serious enough under *Avandia*.

**Defendants' Motion To Seal**

16.    I will also grant the Defendants' Unopposed Motion To Seal (D.I. 682) because, in my view, they have met their burden to justify sealing certain (1) technical information, (2) commercial information, (3) financial information, and (4) licensing information.

**Technical Information**

17.    Defendants seek to seal portions of Exhibits A, B, C, E, F, I, J, O, P, U, DD, FF, HH, II, JJ, MM, RR, 2, 20, 21, 22, 24, 25, 26, 30, 38, and 42, as well as Plaintiffs' Opening

Brief In Support Of Motion To Exclude Expert Testimony, Plaintiffs' Responsive Brief In Opposition To Defendants' *Daubert* Motion, Defendants' Opposition To Plaintiffs' Motion To Exclude Expert Testimony, and Defendants' *Daubert* Reply. The information within these documents constitutes highly sensitive, confidential technical information regarding Defendants' proprietary and trade secret formulation, manufacturing, methods, development, and testing of its COVID-19 vaccine.

18.    Courts have sealed confidential proprietary technical information before. *See, e.g.*, *Aptiv Techs AG v. Microchip Tech. Inc.*, C.A. No. 23-307-JDW, D.I. 163, at *2–3 (D. Del. Apr. 1, 2024) Indeed, Judge Goldberg sealed similar information in this case. ((*See* D.I. 178.) I therefore agree with Defendants that this information is of the type that courts will protect.

19.    If this confidential technical information were released to the public, competitors would gain the ability to leapfrog years of scientific trial-and-error. It follows that a competitor with this information could then redirect funds in its research budget away from basic formulation and discovery and toward incremental improvements and other strategies, effectively putting Defendants at a competitive disadvantage. Such competitive harm is sufficient to satisfy the second prong of *Avandia*. *See* 924 F.3d at 672.

**Commercial Information**

20.    Defendants also seek to seal *Daubert* Exhibits A, C, D, and 1, as well as Plaintiffs' Responsive Brief In Opposition To Defendants' *Daubert* Motion. These exhibits

7

contain confidential commercial information related to Defendants' pricing, profit margins, financial projections, risk analysis, and costs of goods.

21.    Judges in this district have granted motions to seal confidential commercial information. Because defendants seek to seal similar commercial information, I find that Defendants have met their burden of showing that this information is of the kind courts will protect.

22.    In addition, competitors could use this information to develop commercial plans and prices to compete against Defendants in offering similar products. Third-party purchasers could use the information to negotiate lower prices or resist price adjustments for Defendants' products, which would erode Defendants' revenue potential and ability to develop future products. These harms are sufficient to meet the demands of the second prong of *Avandia*. *See* 924 F.3d at 672.

**Financial Information**

23.    Defendants seek to seal portions of Exhibits 5, 15, 17, 38, A, C, W, X, and Z. The portions of these exhibits which are sought to be sealed contain confidential information about Defendants' financial modeling, projected valuation, investment opportunities, pricing strategies, and financial position.

24.    Judges in this district have sealed financial information of this sort, and I am persuaded that it is the type of information that courts will seal.

25.     In addition, competitors and third-party contractors could use this information to Defendants' detriment. For instance, third-party contractors could use Defendants' pricing strategies and financial projections to determine Defendants' financial position and ultimately prevent Defendants from negotiating favorable terms in commercial agreements. Competitors could also use the information about Defendants' pricing strategies, financial projections, and investment opportunities to compare and prepare their own business models, thus improving their ability to compete against Defendants. (D.I. 683-3 at 3.) Such competitive disadvantages, in my view, are enough to constitute clearly defined and serious injuries under *Avandia*. *See* 924 F.3d at 672.

**Licensing Information**

26.     Defendants seek to seal *Daubert* Exhibits 1, 38, A, C, D, E, AA, CC, and Plaintiffs' Responsive Brief In Opposition To Defendants' *Daubert* Motion, Defendants' *Daubert* Motion, and Defendants' *Daubert* Reply. The information at issue concerns confidential details related to Defendants' license agreements, strategic drug development collaborations, and other agreements between Defendants and third parties. In addition to the actual terms of these licenses, this information includes Defendants' financial position, license negotiation strategies, and internal licensing policies.

27.     As I've noted, information related to license agreements has been sealed by courts in this district. *See, e.g., EIS Inc. v. IntiHealth Ger GmbH*, C.A. No. 19-1227-GBW, D.I.

696 (D. Del. Feb. 25, 2025); *Mosaid Techs. Inc.*, 878 F. Supp. 2d at 510; *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 578 at 4–6 (D. Del. Nov. 5, 2025).

28.    Competitors and third-party contractors could use this information to create rival licensing agreements or obtain more favorable terms in license negotiations with Defendants. This is true notwithstanding the fact that some of the information Defendants seek to seal comes from agreements that are approximately 10 years old because this information still has value to Defendants' ability to engage in negotiations for agreements related to the intellectual property covered in these licenses. The competitive harm that Defendants would experience in the event this information was disclosed to the public is sufficient to satisfy the demands of *Avandia*'s second prong. *See* 924 F.3d at 672.

Therefore, it is **ORDERED** as follows.

1.    Plaintiffs Unopposed Motion To Seal (D.I. 653) is **GRANTED**.

2.    Defendants' Unopposed Motion To Seal (D.I. 682) is **GRANTED**.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

10