## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Plaintiffs*,<br><br>v.<br><br>MODERNA, INC. and MODERNATX, INC.,<br><br>*Defendants*. | C.A. No. 22-252-JDW |
| MODERNA, INC. and MODERNATX, INC.,<br><br>*Counterclaim-Plaintiffs*,<br><br>v.<br><br>ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Counterclaim-Defendants*. | |

## [PROPOSED] JOINT PRETRIAL ORDER

## TABLE OF CONTENTS

I.       NATURE OF THE ACTION ................................................................. 3

II.      JURISDICTION ................................................................................... 4

III.     PLEADINGS ......................................................................................... 5

IV.     UNCONTESTED FACTS .................................................................... 5

V.      CONTESTED FACTS & Intended Proof ........................................... 6

VI.     ISSUES OF LAW ................................................................................ 6

VII.    EXHIBITS AND DEMONSTRATIVES ........................................... 6

       A.    Trial Exhibits ........................................................................... 6

       B.    Demonstratives to be Used During Opening Statements and Direct Examination ............................................................................. 9

VIII.   WITNESSES ..................................................................................... 11

       A.    List of Witnesses Who May or Will Be Called ..................... 14

       B.    Testimony by Deposition ....................................................... 14

IX.     MOTIONS IN LIMINE .................................................................... 16

X.      AMENDMENT OF THE PLEADINGS ......................................... 19

XI.     LENGTH OF TRIAL ...................................................................... 19

       A.    Jury Trial ................................................................................ 19

       B.    Issues for Resolution by the Court ........................................ 20

XII.    MISCELLANEOUS ISSUES ........................................................... 23

       A.    Case Narrowing: .................................................................... 23

       B.    Judgment as a Matter of Law ................................................. 24

       C.    Number of Jurors ................................................................... 24

       D.    Juror Notetaking .................................................................... 24

i

E.     Federal Judicial Center's Patent Video ................................................................. 25

F.     Set-Up of Electronic Equipment ........................................................................... 25

**XIII.   SETTLEMENT** ................................................................................................................ **25**

Plaintiffs Arbutus Biopharma Corporation ("Arbutus") and Genevant Sciences GmbH ("Genevant") and Defendants Moderna, Inc. and ModernaTx, Inc. (collectively "Moderna"), by their undersigned counsel, submit for the Court's approval this Proposed Pretrial Order pursuant to Local Rule 16.3 and the Court's Policies and Procedures. A Pretrial Conference in this matter is scheduled for **March 3, 2026**. Trial in this matter is scheduled to begin on **March 9, 2026**.

**Arbutus's Counsel:** Arbutus is represented by John W. Shaw (jshaw@shawkeller.com) (#3362), Karen E. Keller (kkeller@shawkeller.com) (#4489), Nathan R. Hoeschen (#6232) (nhoeschen@shawkeller.com), and Emily S. DiBenedetto (#6779) (edibenedetto@shawkeller.com), of Shaw Keller LLP, 1105 North Market Street, 12th Floor, Wilmington DE 19801; Daralyn J. Durie (ddurie@mofo.com), Adam R. Brausa (abrausa@mofo.com), Eric C. Wiener (ewiener@mofo.com), and Shaelyn K. Dawson (shaelyndawson@mofo.com) of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105-2482; Kira A. Davis (kiradavis@mofo.com), of Morrison & Foerster LLP, 707 Wilshire Boulevard, Los Angeles, CA 90017-3543; and David N. Tan (ntan@mofo.com) of Morrison & Foerster LLP, 2100 L Street, NW, Suite 900, Washington, DC 20037.

**Genevant's Counsel:** Genevant is represented by John W. Shaw (jshaw@shawkeller.com) (#3362), Karen E. Keller (kkeller@shawkeller.com) (#4489), Nathan R. Hoeschen (#6232) (nhoeschen@shawkeller.com), and Emily S. DiBenedetto (#6779) (edibenedetto@shawkeller.com) of Shaw Keller LLP, 1105 North Market Street, 12th Floor, Wilmington DE 19801; and David I. Berl (dberl@wc.com), Adam D. Harber (aharber@wc.com), Shaun P. Mahaffy (smahaffy@wc.com), Andrew L. Hoffman (ahoffman@wc.com), Matthew W. Lachman (mlachman@wc.com), Arthur J. Argall III (aargall@wc.com), Falicia Elenberg (felenberg@wc.com), and Kathryn Larkin (klarkin@wc.com) of Williams & Connolly LLP, 680

Maine Avenue S.W., Washington, DC 20024; and Andrei Iancu (iancua@sc.com) and Jeffrey B. Wall (wallj@wc.com) of Sullivan & Cromwell, 1700 New York Avenue, N.W. Suite 700, Washington, DC 20006.

**Moderna's Counsel:** Moderna is represented by Brian P. Egan (began@morrisnichols.com) and Travis J. Murray (tmurray@morrisnichols.com) of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington DE 19899; and James F. Hurst (james.hurst@kirkland.com) of Kirkland & Ellis LLP, 333 W Wolf Point Plaza, Chicago, IL 60654; Patricia A. Carson, Ph.D. (patricia.carson@kirkland.com), Jeanna M. Wacker (jeanna.wacker@kirkland.com), Mark C. McLennan (mark.mclennan@kirkland.com), Nancy Kaye Horstman (kaye.horstman@kirkland.com), Shaoyao Yu (shaoyao.yu@kirkland.com), Mara L. Greenberg (mara.greenberg@kirkland.com), Leslie M. Schmidt, P.C. (leslie.schmidt@kirkland.com), Andrew Lee (andrew.lee@kirkland.com), and Brad Deem (brad.deem@kirkland.com) of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022; and Noah Frank (noah.frank@kirkland.com) of Kirkland & Ellis LLP, 200 Clarendon Street, Boston, MA 02116; Yan-Xin Li (yanxin.li@kirkland.com), and Laura Ashley Harris (lauraashley.harris@kirkland.com) of Kirkland & Ellis LLP, 555 California Street, 27th Floor, San Francisco, CA 94104; and Jason M. Wilcox, P.C. (jason.wilcox@kirkland.com) of Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W. Washington, D.C. 20004; and Jaime A. Santos (jsantos@goodwinlaw.com) and William M. Jay (wjay@goodwinlaw.com), of Goodwin Procter LLP, 1900 N. Street NW, Washington, DC 20036; Jordan Bock (jbock@goodwinlaw.com) of Goodwin Procter LLP, 100 Northern Avenue Boston MA 02210; and Gabriel Ferrante (gferrante@goodwinlaw.com), of Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018.

## I.    NATURE OF THE ACTION

1.    This is an action for patent infringement and patent validity under the patent laws of the United States, Title 35, United States Code.  This action is brought by Plaintiffs, Arbutus Biopharma Corporation and Genevant Sciences GmbH against Defendants Moderna, Inc. and ModernaTx, Inc.

2.    Plaintiffs filed a complaint alleging that Moderna's mRNA-1273 COVID-19 mRNA LNP vaccine product and its supplemental and booster mRNA-1273 COVID-19 mRNA LNP vaccine products ("Moderna's COVID-19 vaccine") infringe upon U.S. Patent No. 8,058,069; U.S. Patent No. 8,492,359; U.S. Patent No. 8,822,668; U.S. Patent No. 9,364,435; U.S. Patent No. 9,504,651; and U.S. Patent No. 11,141,378.  Following the Court's case narrowing order which required Plaintiffs to narrow the number of patents and patent claims and Moderna to narrow the number of § 112 and §§ 102/103 defenses, D.I. 475, Plaintiffs narrowed[1] the asserted patents and asserted claims to U.S. Patent No. 9,504,651 claims 7, 9, 11, 13, 14 ("'651 Asserted Claims"); U.S. Patent No. 9,364,435 claims 7, 8, 16; U.S. Patent No. 8,492,359 claims 7, 12; and U.S. Patent No. 11,141,378 claims 2, 7, 13, 18, 19 (collectively with regard to the '435, '359, and '378 patents, the "Lipid Composition Asserted Claims" or "Ratio Asserted Claims"). The '651

---

[1]    Plaintiffs:  Judge Goldberg explained that his narrowing order was only addressing claims for this upcoming trial and was not a waiver by Plaintiffs of the remaining claims and patents.  *See* D.I. 474 at 3:2-23; 4:24-5:1.

Moderna: Moderna disagrees with Plaintiffs' insinuation that the claims/patents/defenses dropped in the Court-ordered narrowing process were merely narrowed "for trial" and may be reasserted after the upcoming trial. Judge Goldberg's order does not state that claims were narrowed "for trial" or that they may be reasserted following trial. D.I. 475 at 3; *see also* D.I. 469 (Plaintiffs' reconsideration request repeatedly acknowledging the prior narrowing order required Plaintiffs to "***drop***" patents/claims, not hold them in abeyance).

Patent, '435 Patent, '378 Patent, and '359 Patent are collectively referred to as the "Asserted Patents."

3.      Plaintiffs allege that Moderna has infringed the Asserted Patents directly and indirectly, and continues to do so, by manufacturing, offering to sell, selling, or using within the United States, or importing into the United States, the Accused Product, in violation of 35 U.S.C. §§ 271(a)–(c). Plaintiffs also allege that Moderna has infringed, and continues to infringe, the Asserted Patents by intentionally supplying or causing to be supplied in or from the United States components of the Accused Product to be combined in such a manner that they would infringe the Asserted Patents if combined in the United States, in violation of 35 U.S.C. §§ 271(f)(1)–(2).

4.      Moderna disputes infringement and contends that all claims of the Asserted Patents are invalid and unenforceable. Moderna has narrowed its invalidity defenses in this case in accordance with the Court's case narrowing order. D.I. 475.

## II.    JURISDICTION

5.      This is an action for patent infringement under 35 U.S.C. § 271 and for declaratory relief. Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6.      Personal jurisdiction and venue over Moderna are proper in this District because Defendants, both Delaware corporations, reside in this District.

7.      The parties agree that this Court has jurisdiction over the proceedings and that venue is proper.

## III.    PLEADINGS

8.    Plaintiffs filed suit against Moderna on February 28, 2022.  Plaintiffs' Complaint seeks damages for Moderna's manufacture, use, sale, offer for sale, and/or importation of its COVID-19 vaccine.

9.    Moderna filed an Answer to Plaintiffs' Complaint on November 30, 2022. Moderna also filed Counterclaims seeking declaratory judgments of noninfringement and invalidity of each of the Asserted Patents.

10.    Plaintiffs filed an Answer to Moderna's counterclaims on December 21, 2022.

11.    On May 1, 2024, by consent of the parties and with leave of the Court, Plaintiffs filed an Amended Complaint, alleging that Moderna had also infringed, and continues to infringe, the Asserted Patents by operation of 35 U.S.C. §§ 271(f)(1)–(2).

12.    Moderna filed an Answer and Counterclaims to Plaintiffs' Amended Complaint on May 15, 2024.

13.    Plaintiffs filed an Answer to Moderna's Counterclaims on June 5, 2024.

## IV.    UNCONTESTED FACTS

14.    The parties' Joint Statement of Uncontested Facts is attached as **Exhibit 1**.  These facts are not disputed or have been agreed to or stipulated by the parties.  These facts do not require proof at trial and will become part of the evidentiary record in this case, provided that these facts are read to the jury.

15.    Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury, and will be charged for the time used to do so.

## V.    CONTESTED FACTS & INTENDED PROOF

16.    Plaintiffs' Statement of Issues of Fact that Remain to be Litigated and Statement of Intended Proof is attached as **Exhibit 2P**.

17.    Defendants' Statement of Issues of Fact that Remain to be Litigated and Statement of Intended Proof is attached as **Exhibit 2D**.

## VI.    ISSUES OF LAW

18.    Plaintiffs' Statement of Issues of Law that Remain to be Litigated is attached as **Exhibit 3P**.

19.    Defendant's Statement of Issues of Law that Remain to be Litigated is attached as **Exhibit 3D.**

## VII.    EXHIBITS AND DEMONSTRATIVES

### A.    Trial Exhibits

20.    The parties' list of exhibits that they may offer at trial, except demonstrative exhibits and exhibits to be used solely for impeachment, and citations to the Federal Rules of Evidence to note any outstanding objections thereto, will be filed as **Exhibit 4,** on February 23, 2026, in accordance with the Court's Order regarding pretrial deadlines, D.I. 646.

21.    This list includes the exhibit numbers to be used at trial and a description sufficient to identify the exhibits as well any objections to the exhibits.  This exhibit list may include exhibits that may not necessarily be offered or introduced into evidence.  The parties reserve the right to supplement this exhibit list through **February 20, 2026** without the need to obtain leave of court or the consent of all parties.  After that date, the parties may only supplement this exhibit list by leave of court or by agreement between the parties.

22.    Absent agreement between the parties and approval by the Court, and subject to paragraph 26 below, no exhibit will be admitted unless presented to a witness through designated

6

or live testimony, including through expert testimony.  For clarity, the parties agree that exhibits listed in Exhibit 4 may be admitted for the first time through an expert witness who properly relied upon that exhibit in his or her expert report (and not solely in the materials considered) such that it was timely disclosed, subject to the Court resolving any objections raised by the opposing party. If properly relied on by the expert, the parties agree not to make any lack of foundation objections to the admission of said exhibit through an expert. For the avoidance of doubt, this provision does not limit any party's ability to object to any expert testimony relating to said exhibits.  Where there are no objections to an exhibit or set of exhibits, those exhibits may be introduced into evidence after a witness is examined, provided each of the exhibits is presented to the witness during the examination. For all exhibits, at some point before the close of a phase of the case, any party that has used an exhibit with a witness, did not pre-admit the exhibit prior to the witness' testimony, and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.

23.    For each exhibit that a party intends to use in connection with the direct examination, a party will provide a list of exhibits with an indication of which witness(es) that exhibit may be shown to by 6:00 p.m. ET two calendar days before the expected direct examination. Objections will be provided no later than 6:00 p.m. ET the following day.  The parties will, that same day, meet-and-confer at 7:30 p.m. ET to resolve such objections.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention via a joint email to Chambers (Chambers_of_Judge_Wolson@paed.uscourts.gov) by 9:00 p.m. ET the night before their intended use for resolution the next morning.  Any disputes are to be identified by exhibit number and a single bullet point statement of the basis for the objection, and the joint email will not contain

argument.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

24.     Paragraph 22 does not apply to certified copies of the Asserted Patents (Trial Exs. 1–4), the file histories for the Asserted Patents (Trial Exs. 7-10), and certified copies of the provisional applications for the two Asserted Patent Families, which are received into evidence without presentation to the witness.  The parties agree that they will not dispute the authenticity of (i) any document that was produced during discovery, which on its face appears to have been authored or received by an employee or officer of a party, or by a third-party engaged by a party in the ordinary course of business,  (ii) submissions to the United States Food and Drug Administration, and (iii) patents, patent publications, and journal articles, and that such documents shall be deemed prima facie authentic, subject to the right of the party against whom such document is offered to adduce evidence to the contrary and subject to any contrary determination or ruling by the Court.  Other than those documents for which an authenticity objection is listed in **Exhibit 4**, the parties stipulate to the authenticity of all exhibits listed on the parties' exhibit lists.

25.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy the completed exhibit list.

26.     The parties agree that exhibits to be used solely for impeachment need not be included on the list of trial exhibits or disclosed in advance of being used at trial, but such exhibits that were not previously disclosed may not be admitted into evidence.  For any exhibits that a party seeks to introduce through cross-examination, the introducing party shall follow the same procedure as set out in paragraph 22 above for moving such exhibits into evidence.  The parties reserve the right to object on evidentiary or discovery grounds to any such exhibit if used at trial.

27.    Legible copies of documents may be offered and received into evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original, subject to all other objections which might be made to admissibility in **Exhibit 4**.  For those documents in **Exhibit 4** that were originally produced in black and white, the parties may reach agreement to reproduce the document in color, if a color copy is available.

28.    Legible copies of United States patents, and the contents of associated file histories, may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to admissibility of certified copies in **Exhibit 4**.

29.    The parties shall make available for inspection any physical exhibits to be used at trial, labeled with the exhibit number.  Access to the opposing side's physical exhibits shall be at such time and place and under such circumstances as are reasonable and mutually agreed to.

**B.    Demonstratives to be Used During Opening Statements and Direct Examination**

30.    The parties will exchange demonstrative exhibits to be used in opening statements by 4:00 p.m. ET one day before opening statements.  Lead counsel shall meet and confer in an attempt to resolve those objections by 6:00 p.m. ET the day before opening statements.  If good faith efforts to resolve objections to the opening demonstrative exhibits fail, the objecting party shall bring the objections to the Court's attention via a joint email to Chambers (Chambers_of_Judge_Wolson@paed.uscourts.gov) by 9:00 p.m. the night before the first day of trial for resolution the next morning.  Any disputes are to be identified by demonstrative page number and a single bullet point statement of the basis for the objection and that the joint email will not contain argument.  The parties shall attach copies of any objected to demonstrative exhibit to the joint email.

9

31.    For each direct examination, a party shall provide demonstrative exhibits (in color, and on 8.5 x 11-inch paper or larger, or in electronic PDF form) with an indication of the witness(es) with whom the subject demonstrative exhibit may be used to opposing counsel by 6:00 p.m. two days before the witness will testify.  The parties may make changes to demonstrative based on intervening events during the trial after the initial exchange, and submit revised demonstratives by 6:00 p.m ET the day before the witness will testify.  Objections to be provided no later than 7:00 p.m. ET on the day of the disclosure.  The parties will meet and confer at 8:00 p.m. ET that night to resolve any objections.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention via a joint email to Chambers (Chambers_of_Judge_Wolson@paed.uscourts.gov) by 9:00 p.m. that night for resolution the next morning.  The parties shall attach copies of any objected to demonstrative exhibits to the joint email.  Any disputes are to be identified by demonstrative page number, or range of page numbers, and a single bullet point statement of the basis for the objection and the joint email will not contain argument.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of objection to the demonstrative exhibit. This provision does not apply to demonstratives or portions thereof created during testimony, which need not be provided to the other side in advance of their use.  For the avoidance of doubt, to the extent any demonstrative created during testimony had any underlying parts created prior to the beginning of said testimony (e.g., a partially filled chart that the expert completes during his or her testimony), said underlying material must be disclosed in accordance with the procedure outlined in this paragraph.

32.    For each demonstrative exhibit that includes an excerpt from a document, the party shall cite the document by trial exhibit number on the face of the demonstrative.

33.    The provisions in this section (paragraphs 30-32) do not apply to highlighting, ballooning, arrowing, call-outs, etc. of exhibits or testimony, which are not required to be provided to the other side in advance of their use.

34.    [Moderna's Proposal: **For the avoidance of doubt, the parties will not be required to disclose any demonstratives to be used on cross examination with any witness.**][2]

## VIII.    WITNESSES

35.    The parties agree that fact witnesses will be sequestered, including for opening statements.  However, each party may designate one corporate representative who may remain in the courtroom throughout the entirety of trial. The parties agree that expert witnesses need not be sequestered.  [Plaintiffs' Proposal: *This sequestration provision shall not apply to Pete Zorn, Genevant's designated in-house counsel pursuant to the Stipulated Protective Order, D.I. 91.*][3]

---

[2]    <u>Plaintiffs</u>: Plaintiffs object to Moderna's proposal because improper or objectionable demonstratives should not be used in front of the jury whether on direct or cross, and Moderna's proposal would not provide an opportunity for the parties to confer about objections and raise them with the Court prior to the use of the demonstratives.  Advanced disclosure is the fair and efficient approach.

<u>Moderna</u>: Given the restrictions on the trial exhibits that may be used with witnesses, including on cross, there is no genuine risk of prejudicial "surprise" with demonstrative exhibits. Plaintiffs' suggestion that the parties must disclose cross demonstratives would provide a party with a preview of the cross-examination that it would otherwise not be entitled to if an exhibit was to be used instead of a demonstrative. Moreover, although Plaintiffs point to his designation under the protective order, he is not entitled to see Highly Confidential materials, and the protective order does not relate to sequestration.

[3]    <u>Plaintiffs</u>:  Moderna has not identified any prejudice from allowing Mr. Zorn—who has had responsibility for overseeing the litigation for Genevant—to observe the proceedings.  Because his testimony generally relates to licensing, the typical concerns underling the sequestration of

36.    [Moderna's Proposal: **Cross examination of witnesses is not limited to matters raised during direct examination. Re-cross examination of witnesses will be permitted following redirect examination.**][4]

37.    The parties agree that any witness a party calls to present live testimony will testify in person as opposed to remotely, absent a showing of compelling circumstances and approval of the Court. For the avoidance of doubt, this provision does not alter the limits of Rule 45 or the parties' ability to object to calling said witnesses.

38.    The parties will give each other advance notice of the witnesses they intend to call, including the order in which the party intends to call the witness, by 6:00 p.m. ET two calendar days before the witness will testify, and each party shall update its list of expected witnesses at the end of each trial day.  The parties will further give each other advance notice of the witnesses they intend to call, including a good faith estimate of the order in which the party intends to call the witness, throughout the duration of the upcoming week each Saturday at 2 p.m. ET. This paragraph

---

witnesses do not apply with the same force.  By contrast, Genevant would be significantly prejudiced by not being able to properly coordinate with the lead in-house lawyer on the matter.

Moderna: Moderna objects to Plaintiffs' proposal because it makes a separate and unique rule that only applies to one witness, while the risk associated with not sequestering a witness applies to all witnesses. The purpose of sequestration is to prevent the witness from benefitting from prior testimony and/or tailoring testimony to conform with prior testimony. As such, even if Mr. Zorn has dual roles as witness and litigation coordinator, that does not obviate the risk and concerns with which sequestration rules are generally put in place. The rules should apply to all trial witnesses equally.

[4]    Plaintiffs:  The parties may reach agreements on scope as to particular witnesses but the general rules concerning the scope of cross prevent unfair surprise and should be enforced.  In addition, there is no need to allow four rounds of questioning for witnesses, as Moderna's proposal to allow re-cross as a matter of course would allow.

Moderna: If cross examination of a witness is limited to matters raised during direct examination, recall of multiple witnesses may result unnecessarily, thereby wasting the Court's and jury's time and resources.

applies to all witnesses, including those testifying live and those whose testimony will be played from a deposition. Disclosures relating to witnesses whose testimony will be played from a deposition must also follow the schedule set forth below in Section VIII.B.

39.    The parties submit the following proposals relating to the order of the presentation of evidence:

Plaintiffs' Proposal:[5]

| Phase I | Plaintiffs' case-in-chief on infringement and damages |
| Phase II | Defendants' response on infringement and damages and case-in-chief on invalidity |
| Phase III | Plaintiffs' response on invalidity and rebuttal on infringement and damages, including any presentation on objective indicia of non-obviousness |

Moderna's Proposal:[6]

| Phase I | Plaintiffs' case-in-chief on infringement and damages |
| Phase II | Defendants' rebuttal on infringement and damages and case-in-chief on invalidity |
| Phase III | Plaintiffs' rebuttal on invalidity, including any presentation on objective indicia of non-obviousness |
| Phase IV | Defendant's rebuttal on objective indicia of non-obviousness |

---

5    Moderna: Moderna objects to Plaintiffs' proposal because it does not limit Plaintiffs' response/rebuttal (Phase III) to issues for which it has rebuttal as is proper. Instead, Plaintiffs' Phase III ask this Court to allow them to retry their affirmative case. By contrast, Moderna's Phase III limits Plaintiffs to a proper rebuttal case related to invalidity. Moderna's proposal also includes Phase IV, which permits Moderna to rebut Plaintiffs' arguments related to objective indicia of non-obviousness for which Plaintiffs have the initial burden.

6    Plaintiffs: Plaintiffs object to Moderna's proposal because it would force Plaintiffs' affirmative experts to explain Moderna's expert opinions, so that they could rebut them during the first phase.  For example, Plaintiffs' damages expert would not only present her damages model,

A. **List of Witnesses Who May or Will Be Called**

40.    Plaintiffs' List of Witnesses Who May be Called Live or by Deposition is attached as **Exhibit 5P**. Moderna's objections to Plaintiffs' List of Witness is attached as **Exhibit 5P-A**.

41.    Defendants' List of Witnesses Who May be Called Live or by Deposition is attached as **Exhibit 5D**.

42.    Any witness not listed in the above exhibits will be precluded from testifying, absent good cause shown.

B. **Testimony by Deposition**

43.    The deposition testimony that Plaintiffs may offer into evidence, along with Defendants' objections and counter-designations, Plaintiffs' objections to Defendants' counter-designations, Plaintiffs' counter-counter designations, and Defendants' objections to Plaintiffs' counter-counter designations will be identified in **Exhibit 6P**, to be filed on February 23, 2026, in accordance with the Court's Order regarding pretrial deadlines, D.I. 646.

44.    The deposition testimony that Defendants may offer into evidence, along with Plaintiffs' objections and counter-designations, Defendants' objections to Plaintiffs' counter-designations, Defendants' counter-counter designations, and Plaintiffs' objections to Defendants' counter-counter designations will be identified in **Exhibit 6D**, to be filed on February 23, 2026, in accordance with the Court's Order regarding pretrial deadlines, D.I. 646.

45.    The party offering deposition testimony (other than for the purpose of impeachment) shall identify the deposition testimony to be offered from previously exchanged

---

but would also have to present *Moderna's* damages model as well, so that she could respond to it.  That arrangement is inefficient and prejudicial.  It is also inconsistent with the approach the parties agreed to in expert discovery, which provided for reply expert reports.

depositions by 6:00 p.m. ET three calendar days before the deposition testimony is to be played at trial. The opposing party shall provide the designating party with any objections or counter-designations to the affirmative designations by 10:00 a.m. ET the day following receipt of the designating party's affirmative designations (two calendar days before the deposition testimony is to be played at trial). To the extent necessary, the designating party will provide the opposing party with any objections to the opposing party's counter-designations together with any counter-counter designations by 6:00 p.m. ET the same day as receipt of the designating party's counter-designations (two calendar days before the deposition testimony is to be played at trial). The party offering the deposition testimony shall provide a proposed video at 12:00 p.m. ET one calendar day before the designations are to be played. The proposed video shall include all designations and embedded exhibits as they will be shown to the jury. Objections to the video (if any) shall be provided by 5:00 p.m. ET one calendar day before the designations are to be played. The parties will that same day meet-and-confer at 8:00 p.m. ET to resolve such objections. If good faith efforts to resolve any objections fail, the party objecting shall bring the objections to the Court's attention via a joint email to Chambers (Chambers_of_Judge_Wolson@paed.uscourts.gov) by 9:00 p.m. that evening for resolution the next morning. The joint submission shall include: (i) a copy of the entire proposed testimony of the witness at issue, clearly highlighting the designations; and (ii) a cover letter identifying the pending objections, as well as a brief indication (no more than one sentence per objection) of the basis for objection and the offering side's response to the objection.

46.     The parties reserve the right to further reduce deposition designations, prior to playing the designations in Court, [Plaintiffs' Proposal: *as well as to add testimony (so long as it*

*was originally designated) as a result of subsequent developments during the trial*,][7] provided that its designations exchanged pursuant to this procedure are made in good faith, and any party that changes its designations shall promptly notify the other side of any such reductions and provide replacement videos in sufficient time to allow review and changes by the opposing party.

47.    Colloquy between counsel and objections should be eliminated when the deposition is played at trial, and any other parts of the video may be removed by agreement of the parties.

48.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter designations that will be played.  The parties will be charged for time according to the following proportions: each side shall be charged only with the time needed to play its own designations, counter-designations, and counter-counter designations and will not be charged with the time necessary to play the other side's designations, counter-designations, and counter-counter designations.

49.    The parties agree that deposition testimony will be played by video.

## IX.    MOTIONS IN LIMINE

50.    The parties will file motions *in limine*, if any, in accordance with the Stipulation and Order, D.I. 646, and the Court's Policies and Procedures, § V.A.

---

[7]    <u>Plaintiffs</u>:  This approach fairly balances the goal of advanced disclosure and the ability to respond to unexpected testimony.  The designations are still limited to those disclosed pre-trial and the revised set must be provided "in sufficient time to allow review and changes by the opposing party."

<u>Moderna</u>: Moderna objects to Plaintiffs' proposal. At this stage of the case, and particularly during trial, the parties should be narrowing the issues in dispute—not adding to deposition testimony whether originally designated or not.

51.     However, the parties have reached several agreements on the scope of admissible evidence as part of their meet and confer process relating to the *in limine* motions.

Plaintiffs and Counterclaim Defendants Arbutus BioPharma Corp. and Genevant Sciences GmbH ("Plaintiffs") and Defendant and Counterclaim Plaintiff Moderna, Inc. and ModernaTx, Inc. ("Moderna") (together the "Parties"), by and through their counsel, hereby stipulate and agree to the following motions *in limine*, subject to approval by the Court:

1.  The Parties agree they will not introduce argument, testimony, or evidence referencing lawsuits, threatened litigation, or purported disputes involving Moderna. Notwithstanding that agreement, the Parties acknowledge they have a dispute as to the following lawsuits which will be raised in motions *in limine*:

    - *Moderna v. Pfizer* lawsuit and related IPR proceedings by Pfizer/BioNTech

    - Purported dispute with NIH over the inventorship of certain technology in the COVID-19 vaccine

    - IPRs between Moderna and Arbutus

2.  Plaintiffs agree not to introduce argument, evidence, or testimony referring to Moderna's alleged actions as "illegal," "unlawful," "theft," "stealing," "misappropriation," and "stock price manipulation."

3.  Plaintiffs agree not to introduce argument, evidence, or testimony referring to a witness's personal wealth or financial status. While the Parties may reference the fact and magnitude of a testifying witness's stock holdings or other financial interest with his or her employer to establish bias, any such reference will not be used in connection with the parties' damages theories.

17

4.  Plaintiffs agree not to introduce argument, evidence, or testimony referring to the total amount Moderna paid to licensees, such as NIH and Penn, under their license agreements which are not tied to the sales within the scope of this case.

5.  The Parties agree not to introduce argument, evidence, or testimony designed to inflame the jury by amplifying vaccine or mRNA misconceptions or misinformation. For clarity, this would not preclude argument or evidence about how design and formulation decisions affected the safety or efficacy of the Accused Product, or comparisons of the safety or efficacy of the Accused Product to other products or development work.

6.  Plaintiffs agree not to introduce argument, evidence, or testimony referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

7.  The Parties agree not to raise argument, testimony, or reference that the other party had an affirmative duty to seek opinion of counsel, and/or any inference that may be drawn as to what the contents of such an opinion would have been. The Parties also agree not to draw attention to redactions in any exhibits, consistent with the Parties' jointly proposed jury instructions.

8.  The Parties agree not to raise argument, testimony, or reference that raises religious or political beliefs, race, ethnicity, gender, national origin, or sexual orientation a party, witness, attorney, or law firm.

9.  Moderna agrees not to introduce argument, evidence, or testimony referring to Plaintiffs (Genevant and/or Arbutus) as a "shell company," "shakedown

artists," "pirate," or "extortionist."  References to Plaintiffs (Genevant and/or Arbutus) as "non-practicing entities," while disputed factually, are not prohibited by this agreement.

10. Moderna agrees not to gratuitously refer to the foreign countries where Genevant and Arbutus are based, but may refer to the location of relevant activities of either company as long as it is not raised in a fashion that draws significant attention to the foreign location.

11. The Parties agree not to introduce evidence, testimony, or argument regarding the fact that testimony or opinions offered by any expert may have been criticized, excluded, or found to be unreliable by any judicial or adjudicative body, or that any party or law firm previously retained the expert. For clarity, this would not exclude reference to an expert having previously been retained by an opposing firm.

## X.    AMENDMENT OF THE PLEADINGS

52.    The parties do not seek to amend the pleadings.

## XI.    LENGTH OF TRIAL

### A.    Jury Trial

53.    This case is currently scheduled for a jury trial beginning on **March 9, 2026**.  The parties request 8 to 10 jury trial days; the time needed for the jury trial may be impacted by the pending summary judgment and *Daubert* motions.  The trial will be timed.  Each party will have equal time per side for presentation of evidence, up to 1.25 hours (75 mins) per side for opening statements, and up to 2 hours per side for closing arguments.  Time for jury selection will not count against this time limit.  Unless otherwise ordered, time will be charged to a party for its own

19

presentations or examinations, including a party's opening statement, direct and redirect examinations of witnesses it calls (including by designation), cross-examination of witnesses called by any other party (including by designation), closing argument, and its argument on any motions for judgment as a matter of law.

54.     Each morning, up to 30 minutes will be available, if needed, to address the parties' objections submitted the night before, or other housekeeping matters.  Time spent arguing any objections will not count against either party's trial time, provided it does not exceed 30 minutes. Argument regarding objections that exceeds this 30 minutes will be deducted from the parties' trial time allocated based on a "loser pays" method, subject to the Court's discretion.  If a party raises undue or dilatory objections, the Court may charge that party with the entire time spent resolving those objections.

55.     The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

**B.     Issues for Resolution by the Court**

56.     The parties anticipate that certain issues will need to be resolved by the Court, but disagree on the procedure and timing for doing so.

*57.     [Plaintiffs' Proposal: Plaintiffs agree that prosecution history estoppel, ensnarement, and indefiniteness—to the extent those issues are still relevant following summary judgment and trial—are matters for the Court to decide.  In addition, the Court will need to decide several issues relating to damages: (1) whether Plaintiffs are entitled to enhanced damages, (2) supplemental damages from the date of Moderna's last production of royalty base information through trial, and (3) Plaintiffs' entitlement to ongoing damages.*

58. *Plaintiffs propose deferring the Court's consideration of these issues, and any evidentiary hearing that may be necessary, until after the jury trial.*][8]

**59.** [Moderna's Proposal: **Moderna respectfully requests that the following issues be presented to the Court in one or more bench trials at a date and time to be scheduled after the Court issues a decision on the parties' respective motions for summary judgment:**

**(a) to the extent the Court does not grant Moderna's summary judgment on accused sales to the U.S. Government under the C-100 contract pursuant to 28 U.S.C. § 1498, that issue may be decided by the Court (*see* D.I. 508);[9]**

**(b) to the extent the Court does not grant Moderna's motion for summary judgment of prosecution history estoppel, that issue must be decided by the Court (*see* D.I. 599 at ¶ 110, the parties agreeing prosecution history estoppel is a question of law);**

---

[8]  Plaintiffs: Plaintiffs object to Moderna's proposal to hold an evidentiary hearing prior to the jury trial. Defenses like ensnarement and prosecution history estoppel, are "to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009) (citation omitted); *see also ViaTech Techs. v. Adobe*, 2023 WL 5975219 at *11 (D. Del. 2023) ("reserv[ing] judgment" on prosecution history estoppel until "after the jury verdict"). Moderna's attempt to shoehorn a bench trial into an existing schedule weeks before trial would result in significant prejudice to Plaintiffs and would waste a tremendous amount of time and the Court's resources on matters that may never be relevant for the Court to decide.

[9]  Plaintiffs:  Depending on the Court's summary judgment ruling, there may be issues of fact relating to Moderna's fraudulent inducement of the authorization and consent clause in the C-100 contract.  *See* D.I. 564.  Such factual issues should be resolved by the jury.

Moderna: As explained in Moderna's motion for summary judgment, Moderna maintains that this dispute remains an issue of law. *See* D.I. 508.

(c) to the extent the Court does not grant Moderna's motion for summary judgment of prosecution history estoppel foreclosing Plaintiffs' doctrine of equivalents theories (D.I. 508), there may be a need to present further evidence relating to the issue of ensnarement,[10] which is another of Moderna's defenses to infringement under the doctrine of equivalents;

(d) indefiniteness of the '651 patent, depending on the Court's ruling on the parties' cross-motions for summary judgment (D.I. 508, 519).

60.    Moderna also respectfully requests that the Court schedule a bench trial to decide the issue of obviousness-type double patenting for the '651 patent, and proposes that the parties submit proposals on the timing of that bench trial vis-à-vis the jury trial once the Court has ruled on summary judgment motions and after the parties have submitted proposals for narrowing the asserted patents, claims, and defenses.

61.    Moderna proposes that the prosecution history estoppel issue be determined in advance of the jury trial, rather than after. The other bench trial issues can be heard after the jury trial. The scope of such presentations will likely be determined by the Court's summary judgement decisions.

---

[10]  Moderna: Depending on the resolution of Plaintiffs' summary judgment motion on obviousness, Moderna anticipates it may be more efficient for the evidence of ensnarement to be heard during the jury trial, subject to approval of the Court, depending on the overlap of evidence.

Plaintiffs:  Moderna's ensnarement arguments involve different evidence and legal theories than its argument concerning obviousness.  It would be unfairly prejudicial to permit Moderna to present its ensnarement evidence to the jury, which might confuse that evidence with evidence of obviousness.

62.     **Moderna proposes that the length of such bench trials be determined after the Court issues all summary judgment decisions.**]

## XII.    MISCELLANEOUS ISSUES

### A.    Case Narrowing:

63.     The Court's November 6, 2025 Order (D.I. 646) provided the following deadlines for further narrowing the case after resolution of *Daubert* and Summary Judgment Motions, as contemplated by Judge Goldberg (D.I. 475)

- Parties to meet and confer to discuss further narrowing (i.e., reduce asserted claims/patents, reduce prior art references/defenses) following resolution of summary judgment and Daubert motions 4 business days after resolution of summary judgment and Daubert motions (D.I. 475)

- Parties to submit a joint letter outlining proposals for further narrowing (i.e., reduce asserted claims/patents, reduce prior art references/defenses) following resolution of summary judgment and Daubert motions 8 business days after resolution of summary judgment and Daubert motions (D.I. 475).

64.     **Plaintiffs position:**  Plaintiffs made a good-faith proposal that the parties each engage in a round of narrowing now, prior to summary judgment rulings, with Plaintiffs cutting their claims by one-third and Moderna likewise cutting their defenses by one-third.  Moderna maintained that it cannot narrow its defenses prior to summary judgment rulings.  Plaintiffs propose that the parties meet and confer on narrowing again following the Court's summary judgment order, but given the specific circumstances of the remaining patents, continue to object to any requirement to narrow patents as opposed to the number of asserted claims.

65.     **Moderna position:** Plaintiffs continue to assert 15 claims across 4 asserted patents, with four different statutory bases of infringement (35 U.S.C. 271(a), (b), (c), (f)), distinct infringement theories (literal and doctrine of equivalents), accusing at least 4 different compositions (the drug product, a transitory composition during the manufacturing process, and

23

two different components that are made earlier in the manufacturing process). While the parties made an initial round of narrowing before summary judgment (*see* D.I. 467 at 3–4), Moderna respectfully submits that the parties still need to engage in significant efforts to narrow the issues in this case for trial, including Plaintiffs' narrowing the numbers of asserted patents, claims, infringement theories, and accused compositions, along with comparable narrowing of Moderna's invalidity defenses.   While Moderna plans to continue to discuss narrowing with Plaintiffs, Plaintiffs' proposal to reduce the asserted claims by one third does not meaningfully narrow the issues; Moderna continues to believe that more significant narrowing of both patents and claims is required to meaningfully narrow the issues for trial.

### B.    Judgment as a Matter of Law

66.    Motions for judgment as a matter of law may only be made orally, subject to the discretion of the Court.   Any motion for judgment as a matter of law made orally shall be considered preserved by the parties as to the same extent as if the motion had been made in writing.

### C.    Number of Jurors

67.    There shall be eight jurors.   The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually and addressing any challenges for cause, and concluding with peremptory strikes.

### D.    Juror Notetaking

68.    The parties agree that the jurors will be permitted to take handwritten notes during the presentations of the parties and that jurors will be permitted to bring these notebooks and handwritten notes into the deliberation room.   The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their

24

notes) and that the notebooks be collected and destroyed after the verdict without review. No later than 4 p.m. on the Friday before trial commences, the parties shall submit to the Court copies of a proposed juror notebook, which shall contain a copy of all the Patents-in-Suit, a tab for the preliminary jury instructions, a section for juror notes, a chart containing claim constructions from the Court's *Markman* order, and any other materials that the parties can jointly agree should be included.

### E.    Federal Judicial Center's Patent Video

69.    The parties request that the Federal Judicial Center's video, "The Patent Process: An Overview for Jurors," be played to jurors during the Preliminary Jury Instructions and that jurors be provided with a copy of the sample patent referenced in the video, while the video is playing. *See* https://www.fjc.gov/publications/patent-process-overview-jurors. Time to play the video will not be charged to any party.

### F.    Set-Up of Electronic Equipment

70.    The parties request that the Court grant access to the courtroom on Friday, March 6, 2026, to allow the parties to set up electronic equipment to be used during trial.

## XIII.  SETTLEMENT

71.    The parties hereby certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement.

SHAW KELLER LLP

/s/ Nathan R. Hoeschen

_____
John W. Shaw (#3362)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com

*Attorney for Plaintiffs*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Travis J. Murray

_____
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*


**IT IS HEREBY ORDERED** this ___ day of February, 2026, that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.


_____
UNITED STATES DISTRICT JUDGE