# EXHIBIT 3P

## <u>EXHIBIT 3P</u>

**PLAINTIFFS' STATEMENT OF
ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

Pursuant to D. Del. L.R. 16.3(c)(5), Plaintiffs hereby submit the following Statement of Issues of Law that Remain to be Litigated ("Statement"). Plaintiffs incorporate by reference any issue of law set forth in its responsive papers to any comparable material filed by Moderna.

By including an issue of law in this Statement, Plaintiffs do not assume the burdens of proof that govern that issue. For example, with respect to Defendants' invalidity allegations, Moderna alone bears the burdens of production and persuasion. Only if Moderna proves *prima facie* invalidity would Plaintiffs be required to present rebuttal evidence. And at all times, Moderna retains the burden to prove invalidity by clear and convincing evidence.

Plaintiffs reserve the right to modify or supplement this Statement to the extent necessary to reflect any future rulings by the Court, or to fairly respond to any new issues that Moderna may raise. By submitting this Statement, Plaintiffs do not waive their right to amend or supplement this submission after it considers Moderna's submissions, whether made part of this Pretrial Order or otherwise made apparent in pretrial proceedings, trial, or post-trial briefing.

If any of these issues are deemed to be an issue of fact rather than an issue of law, Plaintiffs incorporate the issues by reference into Plaintiffs' Statement of Issues of Fact that Remain to be Litigated (Exhibit 2P). Conversely if any issue in Plaintiffs' Statement of Issues of Fact that Remain to be Litigated is deemed to be an issue of law, Plaintiffs incorporate the issues by reference into this Statement.

By providing this Statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial.

# I.  Standing

## A.  Whether Plaintiffs have standing to bring this Action.

1.      Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent."  "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).  "It is well established that the holder of all substantial patent rights, by assignment or by exclusive license, has standing to sue for infringement in its own name." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1343 (Fed. Cir. 2000). "If a party (exclusive licensee) has 'all substantial rights' to a patent, it 'may be deemed the effective "patentee" under 35 U.S.C. § 281,' and thus may maintain an infringement suit in its own name, without joining the patentee." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1349–50 (Fed. Cir. 2016) (quoting *Prima Tek II, LLC v. A–Roo Co.,* 222 F.3d 1372, 1377 (Fed. Cir. 2000)).  "If not, however, an exclusive licensee must join the patentee to bring suit," and such joinder provides the patentee and licensee standing to sue together. *Id.*

# II.  Infringement

## A.  Whether Moderna literally infringes the Asserted Patents.

2.      "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  Patent infringement is a strict liability offense and a direct infringer's knowledge or intent is irrelevant.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011).  "An infringement analysis entails two steps.  The first step is determining the meaning and scope of the patent claim asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd,*

517 U.S. 370 (1996).  Infringement is a question of fact.  *Vulcan Eng'g Co. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1374 (Fed. Cir. 2002).

3.    With regards to step one, determining the meaning and scope of the patent claims, the Federal Circuit has explained that "one of the cardinal sins of patent law" is "reading a limitation from the written description into the claims" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).  Claims need not include all "advantages or features described as significant or important," to the invention.  *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("not every benefit flowing from an invention is a claim limitation").

4.    The patentee bears the burden of proving infringement by a preponderance of the evidence—*i.e.*, that it is more likely than not that the infringement occurred.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317–18 (Fed. Cir. 2009).  Such proof must show that every limitation of the patent claims asserted to be infringed is found in the accused device, either literally or by an equivalent.  *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 881 (Fed. Cir. 1988).

5.    "A patentee may rely on either direct or circumstantial evidence to prove infringement."  *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir. 2008); *Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("It is hornbook law that direct evidence of a fact is not necessary.").  "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  *Moleculon*, 793 F.2d at 1272 (quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884–85 (Fed. Cir. 2001).  "A

patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement.'"  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (quoting *Forest Lab'ys., Inc. v. Abbott Lab'ys.*, 239 F.3d 1305, 1312 (Fed. Cir. 2001)).

**B.    Whether Moderna indirectly infringes the Asserted Patents.**

6.    "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  To prove inducement of infringement, the patentee must []show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).  This requires showing (1) a third party directly infringed the asserted patents; (2) the defendant induced those infringing acts; and (3) the defendant knew the acts it induced constituted infringement.  *Id.*

7.    "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine . . . or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).  This requires a showing "1) that there is direct infringement; 2) that the accused infringer had knowledge of the patent; 3) that the component has no substantial noninfringing uses; and 4) that the component is a material part of the invention."  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

**C.    Whether Moderna infringes the Lipid Composition Patents under the Doctrine of Equivalents.**

8.    The doctrine of equivalents ("DOE") is intended to prevent "the unscrupulous copyist [from] mak[ing] unimportant and insubstantial changes and substitutions in the patent

4

which, though adding nothing, would be enough to take the copied matter outside the claim." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). "The essence of the doctrine is that one may not practice a fraud on a patent." *Id.* at 608. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

9.       "The proper [DOE] inquiry is whether the accused value is insubstantially different from the claimed value." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1293 (Fed. Cir. 2010). DOE infringement is established where the accused product is equivalent to *any* part of the claim. *Id.* As such, infringement by DOE is established where the accused product is insubstantially different from an end point of the claimed range. *Id.*; *Par Pharm., Inc. v. Hospira, Inc.*, 420 F. Supp. 3d 256, 278 (D. Del. 2019), *aff'd*, 835 F. App'x 578 (Fed. Cir. 2020); *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 114 F.3d 1161, 1164 (Fed. Cir. 1997). Equivalence between a product that the defendant "does not dispute . . . literally meets all of the claim limitations" and the defendant's accused product is "sufficient to establish infringement under the doctrine of equivalents." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 968-69 (Fed. Cir. 2018). However, the reverse is not true: lack of equivalence between a commercial or specification embodiment and the claims cannot establish *non-infringement* under DOE, because these embodiments do not "ordinarily . . . represent[] the entire scope of the claimed invention." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002); *see also Supernus Pharms. Inc. v. Actavis Inc.*, No. CV 13-4740 (RMB/JS), 2016 WL 527838 (D.N.J. Feb. 5, 2016),

*aff'd*, 665 F. App'x 901 (Fed. Cir. 2016) ("Federal Circuit precedent [] makes clear that a defendant may not prove *non-infringement* merely by comparing its accused product to a commercial embodiment of the patentee's invention") (emphasis in original); *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1350 n.2 (Fed. Cir. 2025) (expert "improperly compared the accused products to the figures in the specification").

10.    Infringement, including under DOE, is assessed on a "limitation-by-limitation" basis, and the parties need only present evidence about disputed claim limitations. *WCM Indus.*, 721 F. App'x 959 at 966 n.2.  Non-infringement analyses, including DOE analyses, cannot rely on limitations "not recited in the claims." *Minerva Surgical, Inc. v. Hologic, Inc.*, No. CV 18-00217-JFB-SRF, 2021 WL 3048447, at *8 (D. Del. July 20, 2021); *Trudell Med.*, 127 F.4th at 1350 (expert's non-infringement opinion relied on requirement of "more than one vane" not found in the claims); *AquaTex*, 479 F.3d at 1326 (district court improperly imported features such as "promot[ing] evaporation" into the invention).

11.    Affirmative defenses to DOE, including ensnarement, prosecution history estoppel, vitiation, and disclosure-dedication, are "legal limitation[s] on the doctrine of equivalents to be decided by the court, not a jury." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009); *see Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1334-35 (Fed. Cir. 2019).  These defenses, to the extent that they are properly raised by an accused infringer, "are to be determined by the court either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict," and are "to be decided by the court, not a jury." *DePuy Spine*, 567 F.3d at 1322-23 (citations omitted).

12.    A defense that an accused infringer may raise to DOE is prosecution history estoppel.  "[A] narrowing amendment made to comply with any provision of the Patent Act,

including § 112, may invoke an estoppel," but the patentee may show that the narrowing amendment did not surrender a particular equivalent by demonstrating that "'the rationale underlying the narrowing amendment [bore] no more than a tangential relation to the equivalent in question.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-69 (Fed. Cir. 2003) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).  "In other words, this criterion asks whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Festo*, 344 F.3d at 1369.  There is no "bright-line rule" that the tangential exception applies "where the reason for the amendment and the equivalent in question both relate to the same claim element." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1333 (Fed. Cir. 2019). "[T]he reason for an amendment . . . cannot be determined without reference to the context in which it was made, including the prior art that might have given rise to the amendment in the first place." *Id.* at 1332.  When the prior art does not "teach the use" of the asserted equivalent, a "narrowing amendment can only be said to have a tangential relation to the equivalent." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366 (Fed. Cir. 2020).  In addition to amendment-based estoppel, a defendant may try "[t]o invoke argument-based estoppel" for prosecution history estoppel, but in order to do so, "the prosecution history must evince a clear and unmistakable surrender of subject matter." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).  Arguments "proposed during claim construction, and which were previously rejected by the Court" cannot establish prosecution history estoppel. *Bausch & Lomb Inc. v. SBH Holdings LLC*, 2025 WL 1005815, at *8-9 (D. Del. Apr. 3, 2025).

13.    An additional defense that an accused infringer may raise to DOE is "vitiation," which stands for the proposition that theories of equivalence cannot "entirely vitiate a particular

claim element." *DePuy Spine*, 567 F.3d at 1323.  However, a showing of equivalence that "expands the upper [or lower] limit beyond the range literally recited by the claim," but that "does not eliminate the upper [or lower] limit altogether" does not vitiate the claim limitation.  *Adams*, 616 F.3d at 1292; *Hilton Davis Chem.*, 114 F.3d at 1164.

14.    An additional defense that an accused infringer may raise to DOE is the "disclosure-dedication" rule, which requires a "disclosure" in the patent specification of the equivalent "of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed." *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004).  A "generic reference in a written specification" does not automatically "dedicate[] all members of that particular genus to the public." *Id*.  The disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.  In order to trigger dedication-disclosure, the specification must contain the "requisite disclosure of an identifiable alternative" to the claimed composition.  *Eli Lilly & Co. v. Hospira, Inc*., 933 F.3d 1320, 1327 (Fed. Cir. 2019); *Sun Pharm. Indus. Ltd. v. Saptalis Pharms*., 2019 WL 13153693, at *10 (D. Del. Aug. 26, 2019) (no dedication-disclosure because "no representation [in the patent] that all of the combinations will produce the same results as the claimed multi-component formulation.").  "Whether a person of ordinary skill ultimately could employ the disclosures of the patent to implement a purported equivalent does not amount to actually disclosing to one of ordinary skill that equivalent 'as an alternative to a claim limitation.'" *SanDisk Corp. v. Kingston Technology Co., Inc.*, 695 F.3d 1348, 1364 (Fed. Cir. 2012).

15.    An additional DOE defense that may be raised by an accused infringer is the ensnarement defense.  "The ensnarement inquiry is separate and distinct from the jury's element-by-element equivalence analysis, and it has no bearing on the validity of the actual claims." *DePuy*

*Spine*, 567 F.3d at 1323. "A helpful first step in an ensnarement analysis is to construct a hypothetical claim that literally covers the accused device." *Id*. at 1324. The burden of producing prior art to challenge a hypothetical claim rests with the accused infringer. *Ulta-Tex Surfaces, Inc. v. Hill Bros. Chemical Co.*, 204 F.3d 13460, 1365 (Fed. Cir. 2000). The court then "must assess the prior art introduced by the accused infringer and determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *DePuy Spine*, 567 F.3d at 1325. When assessing ensnarement, the "court [] must apply standards of patentability consistent with [] jurisprudence regarding anticipation and obviousness," such that the prior art introduced by the accused infringer must be applied to claim as a whole, not just an individual element. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1577 (Fed. Cir. 1994) (reversing summary judgment of non-infringement); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("That an element of an accused device already existed does not bar equivalency as to that element.").

### D. Whether the Reverse Doctrine of Equivalents applies.

16. Reverse DOE (RDOE) is a non-infringement defense that may apply "where a device is so far changed in principle from a patented article that it performs the same or similar function in a substantially different way, but nevertheless falls within the literal words of the claim." *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 356 (Fed. Cir. 2025). RDOE is "an anachronistic exception, long mentioned but rarely applied." *Id.* The Federal Circuit has expressed doubt "that RDOE survived the 1952 Patent Act," and it "ha[s] never affirmed a decision finding noninfringement based on the reverse doctrine of equivalents." *Id.* at 357. As with DOE, the RDOE inquiry "does not permit [experts] to import limitations from the specification into the claims." *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017) (excluding reverse DOE testimony); *SRI Int'l v. Matsushita Elec. Corp.*

*of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985) (one who "merely uses [a claimed structure] in a way that differs from that in which a specification-described embodiment uses it, does not [] escape infringement").

  **E. Whether Moderna has infringed the Asserted Patents pursuant to § 271(f).**

  17. Under 35 U.S.C. § 271(f), "a company can be liable for patent infringement if it ships components of a patented invention overseas to be assembled there." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 409 (2018). Section 271(f)(1) provides that "[w]hoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." A "component" is a "constituent part," "element," or "ingredient," and must be supplied as a "usable, combinable part" for actual overseas assembly. *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 449 (2007) "[T]he phrase 'substantial portion' in 35 U.S.C. § 271(f)(1) has a quantitative, not a qualitative, meaning," and thus "§ 271(f)(1) does not cover the supply of a single component of a multicomponent invention." *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017). Even products that may be staple articles of commerce with substantial non-infringing uses can give rise to infringement liability under § 271(f)(1) if the products were exported in such a manner as to induce an infringing combination. *Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1354-56 (Fed. Cir. 2014), *rev'd on other grounds* 580 U.S. 140 (2017).

  18. Under 35 U.S.C. § 271(f)(2), "[w]hoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of

commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." Thus, § 271(f)(2) provides liability when even a single non-staple component of a multicomponent product is supplied abroad from the United States. *See Life Techs.*, 580 U.S. at 150. The component made in the United States must be "especially made" for use in the invention and not a staple article "suitable for noninfringing use." Section 271(f)(2) "does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined." *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1367–69 (Fed. Cir. 2001). The infringer must possess knowledge of the patent and knowledge of infringement, and the specific intent to form an infringing combination "outside of the United States." *See Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 5054711, at *22 (E.D.N.Y. Nov. 2, 2017), *dismissed,* No. 18-1162, 2018 WL 2144130 (Fed. Cir. Feb. 8, 2018).

### F.    Whether Moderna has willfully infringed the Asserted Patents.

19.    An accused infringer is liable for willful infringement of a patent if the accused infringer knew or should have known of the patent and nevertheless engaged in conduct that infringed the patent without regard for the consequences. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 101–08 (2016). In other words, "the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)); *see also Halo*, 579 U.S. at 105–06. While "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite" to a finding of willfulness, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), "proof that [an accused infringer]

acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer'" is sufficient to establish willful infringement, *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 579 U.S. at 100–01), *rev'd on other grounds*, 585 U.S. 407 (2018), and *op. reinstated in part,* 913 F.3d 1067 (Fed. Cir. 2019).

20.    Willful infringement is a fact question that a plaintiff must prove by the "preponderance of the evidence." *Halo*, 579 U.S. at 107; *WBIP*, 829 F.3d at 1341. "Willfulness of behavior is a classical jury question of intent." *WBIP*, 829 F.3d at 1339 (quoting *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989)).

21.    In general, the accused infringer's state of mind is to be evaluated at the time of the accused infringer's challenged conduct. *See, e.g.*, *Halo*, 579 U.S. at 105–06. Accordingly, pre-suit or post-suit conduct can independently serve as a basis for willful infringement. *See*, *e.g.*, *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1315–16 (Fed. Cir. 2020); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, No. CV 16-679-RGA-MPT, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017) ("[A]llegations of post-filing conduct can support a finding of willfulness."). A defendant "cannot insulate itself from liability for enhanced damages by creating an (ultimately unsuccessful) invalidity defense for trial after engaging in the culpable conduct of copying, or 'plundering,' . . . patented technology prior to litigation." *WBIP*, 829 F.3d at 1340–41. In other words, "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *Id.* at 1341.

22.    "A finding of willful infringement is made after considering the totality of the circumstances." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006);

*Eko Brands*, 946 F.3d at 1377 (willful infringement requires consideration of all the facts). The infringer's knowledge of the patents and intent to infringe them can be established either by direct or circumstantial evidence. *WBIP*, 829 F.3d at 1341-42; *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245–46 (Fed. Cir. 2017); *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 411–13 (D. Del. 2004). Evidence of a defendant copying another's technology may support a jury's finding of willful infringement. *See C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020) (evidence of patent knowledge and copying was "sufficient evidence to support a jury verdict of willfulness"); *Eko Brands*, 946 F.3d at 1377. Efforts to conceal evidence of infringement are also relevant. *Eko Brands*, 946 F.3d at 1377. A finding of willfulness can be supported by "evidence of the parties' prior business dealings" which may show an infringer's "belie[f] that it needed to acquire or license [the patented technology] to avoid infringement." *Georgetown Rail*, 867 F.3d at 1245. And a failure to invalidate a patent through a petition for Inter Partes Review can be "probative as to willfulness." *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 526 (D.N.J. 2020); *cf. Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1366 (Fed. Cir. 2006) (holding prior litigation that found patents not invalid "was relevant to the jury's willfulness determination"). Finally, evidence that an effort to design around the patents was not implemented or completed also supports a finding of willful infringement. *Applied Med*, 435 F.3d at 1365.

## III.    Validity

23.    The Asserted Patents are presumed valid unless shown to be invalid by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "[T]he presumption of validity goes to validity of the patent in relation to the patent statute as a whole." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987) ("The presumption

mandated by § 282 is applicable to all of the many bases for challenging a patent's validity."). Under this standard, a party alleging invalidity must create "in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993). The Federal Circuit has likened the standard to "well-nigh irrefragable proof," which "refers to evidence that cannot be refuted or disproved; inconvertible, incontestable, indisputable, irrefutable, undeniable." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002). The burden of persuasion at all times and for all issues with respect to validity remains with Moderna. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001); *Motorola Mobility, LLC v. ITC*, 737 F.3d 1345, 1350 (Fed. Cir. 2013).

### A.    Whether Moderna has proven anticipation of the '651 Patent.

24.    Anticipation is a question of fact. *See, e.g.*, *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1068 (Fed. Cir. 2017). A defendant asserting anticipation must show not only that a "a single prior art reference [] expressly or inherently disclose[s] each claim limitation," but that "those elements [are] 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Id.* at 1371. An anticipatory reference must "clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without *any* need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083 (Fed. Cir. 2008) (citations omitted). "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present,

in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295-97 (Fed. Cir. 2002).

25.    An anticipatory reference must also "enable one of ordinary skill in the art to make the invention without undue experimentation." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (quoting *Impax Lab'ys., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008)).  Thus, anticipation requires "the specific description as well as enablement of the subject matter at issue." *Sanofi-Synthelabo*, 550 F.3d at 1083.  "A reference that is not enabling is not anticipating." *Forest Lab'ys., Inc. v. Ivax Pharms., Inc.*, 501 F.3d 1263, 1268 (Fed. Cir. 2007).  To the extent the patentee bears the burden of proving that a reference is not enabling, that burden "is not as high as the clear and convincing standard needed to demonstrate invalidity," *Forest Lab'ys, Inc. v. Ivax Pharms., Inc.*, 438 F. Supp. 2d 479, 487 n.3 (D. Del. 2006), and thus shifts back to the patent challenger when the patentee "presents some evidence of non-enablement," *MHL Custom, Inc. v. Waydoo USA, Inc.*, No. CV 21-0091-RGA, 2023 WL 5748755, at *5 (D. Del. Sept. 6, 2023).  Ultimately, "the burden still rests on the party asserting invalidity to . . . demonstrate by clear and convincing evidence that the prior art is enabled." *Forest Lab'ys*, 438 F. Supp. 2d at 487 n.3.

### B.    Whether Moderna has proven obviousness of the Asserted Patents.

26.    A claimed invention is obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (pre-AIA).  "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 706 (Fed. Cir. 2012) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)); *see also KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406-07 (2007) ("[T]he [*Graham*] factors continue to

define the inquiry that controls.").

27.     "Patentability shall not be negated by the manner in which the invention was made."  35 U.S.C. § 103.  "The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art."  *Otsuka Pharm. Co. v. Sandoz, Inc.*, No. CIV.A. 10-1625 SRC, 678 F. 3d 1280, 1296 (Fed. Cir. 2012).

28.     The use of hindsight is prohibited in the obviousness analysis. *KSR*, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.").  This is because the obviousness inquiry is conducted from the perspective of the POSA at the time of the claimed invention.  Courts must be careful to avoid "slipping into use of hindsight."  *Graham*, 383 U.S. at 36 (quoting *Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 412 (6th Cir. 1964)); *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) ("[W]e cannot allow hindsight bias to be the thread that stitches together prior art patches into something that is the claimed invention.").  "[T]he proper analysis requires a form of amnesia that 'forgets' the invention and analyzes the prior art and understanding of the problem at the date of the invention."  *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012); *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1310 (Fed. Cir. 2015) (obviousness analysis proceeds by asking "whether the claimed invention would have been obvious in view of the prior art").

29.     Obviousness cannot be proved by starting from the claimed invention and working backward to identify each limitation in the prior art.  *See, e.g.*, *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (defendant did not prove obviousness where its expert "simply retraced the path of the inventor with hindsight"); *Otsuka*, 678 F.3d at 1296.

Obviousness cannot "be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) (quoting *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998)). "[T]he path that leads an inventor to the invention is expressly made irrelevant to patentability by statute." *Life Techs., Inc. v. Clontech Lab'ys., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000). Thus, "[i]t is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Monday morning quarterbacking is quite improper when resolving the question of nonobviousness in a court of law." *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1012 (Fed. Cir. 1983); *see InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) (explaining it is improper to use the challenged patent as a "roadmap for putting . . . pieces of a 'jigsaw puzzle' together").

30.     The scope and content of the prior art must be considered as a whole. "It is impermissible within the framework of section 103 to pick and choose from any one reference only so much of it as will support a given position to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one skilled in the art." *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 448 (Fed. Cir. 1986) (quoting *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965)). "Hindsight reconstruction . . . may not be used to 'to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention.'" *Discovision Assocs. v. Disc Mfg., Inc.*, 25 F. Supp. 2d 301 (D. Del. 1998) (quoting *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988)). "The real question is whether that skilled artisan would have plucked one reference out of the sea of prior art . . . and combined it with [any other relevant references] to address some need present in the field . . . ." *WBIP*, 829 F.3d at 1337.

31.    "[A] reference 'must [be] considered for all it taught, disclosures that diverged and taught away from the invention at hand as well as disclosures that pointed towards and taught the invention at hand.'" *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018) (quoting *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281 (Fed. Cir. 1985)); *see also Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1363 (Fed. Cir. 2017) ("Evidence suggesting reasons to combine cannot be viewed in a vacuum apart from evidence suggesting reasons not to combine."). In particular, "statements regarding preferences are relevant to a finding regarding whether a skilled artisan would be motivated to combine that reference with another reference." *Polaris*, 882 F.3d at 1069. Failure to consider the prior art as a whole compels rejection of an obviousness contention. *See Ortho-McNeil*, 520 F.3d at 1364 (rejecting challenge on the basis that challenger's expert "discounted the number and complexity of the alternatives.").

32.    References that "teach away" from the invention—in other words, references that would lead the POSA in a different direction from that taken by the patentee and that would lead the POSA to believe that the direction taken by the patentee was unsuitable—must be considered. *See DePuy Spine*, 567 F.3d at 1326–27 ("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements."). The reference need not address an aspect of the invention recited specifically in the claim to teach away. *Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1345–46 (Fed. Cir. 2013) (prior art suggestion that reference would cause cellular toxicity precluded conclusion of obviousness irrespective of whether claims recited lack of toxicity); *Chemours Co. FC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1377 (Fed. Cir. 2021) (prior art's teachings to a POSA regarding "unclaimed feature"

of "molecular weight distribution" precluded motivation to combine); *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1337 (Fed. Cir. 2021) (similar). A reference teaches away from the claimed invention if the POSA, "upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1366 (Fed. Cir. 2017) (quoting *In re Urbanski*, 809 F.3d 1237, 1244 (Fed. Cir. 2016)); *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) ("[I]n general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant."); *see also, e.g.*, *Tec Air, Inc. v. Denso Mfg. Michigan, Inc.*, 192 F.3d 1353, 1360) (Fed. Cir. 1999). A prior art reference that teaches away "alone can defeat [an] obviousness claim," by defeating the motivation required to establish a prima facie case of obviousness. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349–50 (Fed. Cir. 2000). Prior art references cannot be combined if one of the references teaches away from its combination with another. *See Tec Air*, 192 F.3d at 1360 ("There is no suggestion to combine [references] . . . if a reference teaches away from its combination with another source."). Whether the prior art teaches away may properly be considered in weighing the challenger's *prima facie* case. *See, e.g.*, *Millennium Pharms.*, 862 F.3d at 1366–67 (addressing "teaching away" in connection with *prima facie* obviousness and separately from objective indicia); *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1198–99 (Fed. Cir. 1994) (same); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1361–65, 1367 (Fed. Cir. 2012) (same); *Winner*, 202 F.3d at 1349.

33.     A teaching away in the prior art is not the only means by which a patentee may negate a *prima face* case of obviousness. Indeed, prior art teachings that do not rise to the level of "teaching away," including preferences, can also demonstrate the absence of a motivation to

combine references or otherwise pursue a particular path. *See Polaris*, 882 F.3d at 1069; *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 n.15 (Fed. Cir. 2016) (en banc) ("[E]ven if [the reference] does not teach away, its statements regarding users preferring other forms of switches are relevant to a finding regarding whether a skilled artisan would be motivated to combine [the references]."). And whether or not a reference teaches away, the burden remains on the challenger to identify a motivation to combine that reference with other references. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1379–80 (Fed. Cir. 2017) ("[T]he absence of a formal teaching away in one reference does not automatically establish a motivation to combine it with another reference in the same field.").

34.    Because obviousness is assessed "at the time the invention was made," a party alleging obviousness "cannot establish obviousness through non-prior art experiments," which had not been conducted as the priority date. *In re Armodafinil Pat. Litig.*, 939 F. Supp. 2d 456, 502 (D. Del. 2013) (quoting 35 U.S.C. § 103(a); *KSR*, 550 U.S. at 421). For this reason, an invention would not have been "obvious simply because it was obvious to conduct experiments to try to solve the problem." *Vanda Pharms. Inc. v. Roxane Lab'ys., Inc.*, 203 F. Supp. 3d 412, 427 (D. Del. 2016), *aff'd sub nom.*, *Vanda Pharms. Inc. v. West-Ward Pharms., Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018).

35.    Courts commonly refer to the first three factors of the obviousness inquiry—*i.e.*, the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art—as the "*prima facie* case." *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1076 & n.3 (Fed. Cir. 2012). A party alleging obviousness must prove by clear and convincing evidence that "all claimed limitations are disclosed in the prior art." *Par Pharm.*, 773 F.3d at 1194. If the party

succeeds in doing so, the party must generally also prove "'by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *In re Cyclobenzaprine Pat. Litig.*, 676 F.3d at 1068–69 (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)).

36.     An invention is not obvious simply because the prior art disclosed all of the claimed elements separately.  Rather, the POSA must have had a motivation or "reason" to combine those elements to make or use the claimed invention.  *See KSR*, 550 U.S. at 421; *Orexo AB v. Actavis Elizabeth LLC*, 903 F.3d 1265, 1271 (Fed. Cir. 2018); *In re Cyclobenzaprine Pat. Litig.*, 676 F.3d at 1078–69.  In other words, the party alleging obviousness must prove that the POSA would have had an affirmative reason to both select particular features of the prior art and to modify or combine those features to achieve those inventions.  *See e.g., Endo Pharms. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1380 (Fed. Cir. 2018) ("To meet its burden, Custopharm needed to do more than merely show that the prior art does not preclude lowering the dose of TU. Custopharm needed to affirmatively demonstrate that a skilled artisan would have been motivated to lower the dose of TU despite no clear evidence of overdosing under the FDA Guidelines."); *Unigene Lab'ys., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) ("In this case, the patent claims a new composition or formulation to deliver an FDA-approved active ingredient.  Thus, the claimed invention is not obvious if a person of ordinary skill would not select and combine the prior art references to reach the claimed composition or formulation." (citing *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006)).

37.     "A reason for combining disparate prior art references is a critical component of an obviousness analysis; 'this analysis should be made explicit.'" *InTouch*, 751 F.3d at 1351 (quoting

*KSR*, 550 U.S. at 418).  It is "important to identify a reason that would have prompted a [POSA] in the relevant field to combine the elements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."  *KSR*, 550 U.S. at 418–19.  If patents were invalid because every element of a claimed invention appeared in the prior art, "very few patents would ever issue."  *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000).

38.    To determine whether the POSA would have been motivated or had a rationale to make or use the claimed invention, the factfinder must consider the prior art as a whole.  Thus, evidence showing that the POSA would not have been motivated or had reason to make or use the claimed invention must be considered.  *See e.g.*, *Impax Lab'ys. Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1380–81 (Fed. Cir. 2018); *Star Sci.*, 655 F.3d at 1375 (citing *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)); *Nevro Corp. v. Stimwave Techs., Inc.*, No. CV 19-325-CFC, 2019 WL 3322368, at *13 (D. Del. July 24, 2019).

39.    Furthermore, although a POSA need not have believed that an invention would have been the "best option," *Par Pharm.*, 773 F.3d at 1198, it is not enough for the POSA to have believed that the invention would have been possible.  Rather, the POSA must have believed that the invention actually would have been a desirable endeavor to pursue.  *See, e.g.*, *Winner*, 202 F.3d at 1349 ("Trade-offs often concern what is feasible, not what is, on balance, desirable. Motivation to combine requires the latter."); *Rolls-Royce, PLC v. United Techs. Corp.*, 603 F.3d 1325, 1339 (Fed. Cir. 2010) ("A particular course or selection is not obvious to try unless some design need or market pressure or other motivation would suggest to one of the ordinary skill to pursue the

claimed course or selection.") (citing *KSR*, 550 U.S. at 421)).

40.    If a prior art reference discloses the same variables recited in the claims, but as ranges of values, "and the claimed invention falls within that range, a relevant inquiry is whether there would have been a motivation to select the claimed composition from the prior art ranges." *Allergan*, 796 F.3d at 1304–05.  The prior art reference must "teach or suggest a range for the [claimed] component that overlaps with the claimed range."  *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1374 (Fed. Cir. 2021).  Although "the typical desire of scientists to find an optimum value within a narrow disclosed range" may suffice to lead the POSA to a particular claimed value from within a disclosed range, the POSA must have had some motivation to carry out that optimization.  *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1306 (Fed. Cir. 2011).  Moreover, the disclosure of a range can only suffice to render a particular value obvious where (1) "the optimized variable is a result- effective variable," *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012) (internal quotation marks omitted); *see also In re Haase*, 542 F. App'x 962, 967 (Fed. Cir. 2013), and (2) the disclosed ranges are not "'so broad as to encompass a very large number of possible distinct compositions,' such that they do not teach any specific amounts or combinations," *Allergan*, 796 F.3d at 1305 (quoting *In re Peterson*, 315 F.3d 1325, 1330 n.l (Fed. Cir. 2003)); *E.I. DuPont de Nemours & Co. v. Synvina, C.V.*, 904 F.3d 996, 1006 (Fed. Cir. 2018) ("[D]isclosure of very broad ranges may not invite routine optimization.").

41.    To satisfy the first condition, the challenger has the burden of establishing that the prior art disclosed that the specific variable would "have been recognized by one of ordinary skill to affect a particular result."  *Applied Materials*, 692 F.3d at 1296.  To satisfy the second condition, the challenger has the burden of establishing that the prior art range is not "so broad as to

encompass a very large number of possible distinct compositions," in which case the range would not motivate a person of ordinary skill to select any particular subset of the range. *See Genetics Inst.*, 655 F.3d at 1306 (quoting *Peterson*, 315 F.3d at 1330 n. l).

42.    Even if these requirements are satisfied, "evidence of teaching away, unexpected results, and other pertinent secondary considerations" can rebut an initial showing of obviousness. *Allergan*, 796 F.3d at 1305; *Synvina*, 904 F.3d at 1006–07. A claimed range encompassed in a prior art range is patentable (1) "if it produce[s] a new and unexpected result," (2) if the prior art range is broad, (3) if the variable is not result-effective, or (4) if "the prior art taught away from the claimed range," *Synvina*, 904 F.3d at 1006 (internal quotations and citations omitted); *Allergan*, 796 F.3d at 1306–07 (affirming nonobviousness because the POSA "would not have had a reason to select the claimed formulation from the prior art ranges or to modify" the prior art "to arrive at the claimed formulation").

43.    Finally, "[e]ven in cases with overlapping ranges involving multiple components, [the Federal Circuit has] held that evidence that the components 'interacted in an unpredictable or unexpected way could render the combination nonobvious.'" *ModernaTx*, 18 F.4th at 1375 (quoting *Applied Materials*, 692 F.3d at 1298); *Horizon Pharma Ireland Ltd. v. Actavis Lab'ys., UT, Inc.*, No. CV 14-7992 (NLH/AMD), 2017 WL 2703785, at *12 (D.N.J. May 12, 2017) (similar), *aff'd sub nom.*, *HZNP Medicines LLC v. Actavis Lab'ys. UT, Inc.*, 940 F.3d 680, 703 (Fed. Cir. 2019). Here, "optimizing the four interdependent lipid components in the prior art nucleic acid-lipid particles would not have been routine," including because of "the interdependence of the claimed lipid components and how adjustments would affect the nucleic acid-lipid particle as a whole." *ModernaTx*, 18 F.4th at 1376-77.

44.    Proving obviousness also requires clear and convincing evidence that the POSA

would have had a reasonable expectation of success in achieving the claimed invention. *See, e.g.*, *In re Cyclobenzaprine Pat. Litig.*, 676 F.3d at 1068–69. To have such an expectation, the POSA must have been "motivated to do more than merely to 'vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful.'" *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (quoting *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988)). Similarly, the POSA must have been motivated to do more than "to pursue a 'general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it.'" *Id.*

45.    As with the POSA's reason for modifying or combining the prior art, the POSA's expectation of success must be assessed with respect to the actual needs in the pertinent art. *See Institut Pasteur*, 738 F.3d at 1345–46. In assessing whether the POSA would have had a reasonable expectation of success, a factfinder must determine whether the POSA would have believed that the invention would succeed based on the goals that the POSA would have had, regardless of whether those goals are reflected in particular claim limitations. *See, e.g.*, *id.* (POSA would not have had a reasonable expectation of practicing a method of manipulating a living cell based on prior art references stating that such a method would be toxic to the cell, even though the claims did not expressly require that the cell remains viable). Furthermore, "[t]o render a claim obvious, the prior art, taken as a whole, must enable a skilled artisan to make and use the claimed invention." *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021). And "a standalone § 103 reference must enable the portions of its disclosure being relied upon." *Id.* at 1381.

46.    A reasonable expectation of success cannot be based on hindsight.  In *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 165 (Fed. Cir. 2021), the Court reversed an obviousness judgment where the challenger relied on the "patent itself" for expectation of success, arguing that the "patentee obtained th[e] very result" claimed.  That was error:  The "inventor's own path itself never leads" to obviousness, *id.* (quoting *Otsuka*, 678 F.3d at 1296), and obviousness could not be upheld where "only with the benefit of hindsight would [the POSA] have had a reasonable expectation of success," *id.*

47.    A combination of elements may be "obvious to try" when there is a "design need or market pressure to solve a problem," "there are a finite number of identified, predictable solutions," and the POSA "has good reason to pursue the known options within her or his technical grasp."  *KSR*, 550 U.S. at 421.  Conversely, "the Federal Circuit has clarified that 'obvious to try' is also not obvious when a skilled artisan would have to: (1) 'vary all parameters or try each of numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful'; or (2) 'explore new technology or general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it.'"  *In re Armodafinil Pat. Litig.*, 939 F. Supp. 2d at 502 (quoting *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988)).  "'Obvious to try' is not equivalent to obviousness in every case, particularly where, as here, the prior art provided at most general motivation to conduct trial and error experimentation in a decidedly unpredictable field."  *Id.* at 501.

48.    "A general incentive does not make obvious a particular result, nor does the existence of techniques by which those efforts can be carried out."  *In re Deuel*, 51 F.3d 1552,

1559 (Fed. Cir. 1995).  Thus, a party cannot establish that an invention would have been obvious by "[m]erely asserting" that the POSA "would have arrived at the claimed invention through routine experimentation."  *Alcon Rsch., Ltd. v. Watson Labs., Inc.*, No. CV 15-1159-GMS, 2018 WL 1115090, at *23 (D. Del. Mar. 1, 2018) (quoting *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017)).  "That an invention would have been obvious as a 'result of routine pharmaceutical development, not invention'—as the defendants generally assert here—has been rejected where the experiments were unpredictable."  *In re Armodafinil Pat. Litig*, 939 F. Supp. 2d at 502; *see ModernaTx*, 18 F.4th at 1377; *Eisai Co. v. Dr. Reddy's Lab'ys., Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008) ("To the extent an art is unpredictable, as the chemical arts often are, *KSR*'s focus on these 'identified, predictable solutions' may present a difficult hurdle because potential solutions are less likely to be genuinely predictable.").

49.     Courts regularly reject simplistic allegations that pharmaceutical inventions would have been obvious to try based on the results of routine pharmaceutical development given the unpredictability of the field.  *See Allergan*, 796 F.3d at 1301 (affirming finding that ophthalmic formulation was "unpredictable, and it was not a field with a finite number of identified and predictable solutions"); *see also, e.g.*, *Alcon Rsch.*, 2018 WL 1115090, at *23 ("[W]hen dealing with complex and unpredictable fields like ophthalmic formulation, courts are quick to reject the simplistic assertion that the invention is the obvious result of 'routine' pharmaceutical development."); *Merck & Co., Inc. v. Sandoz Inc.*, 2012 WL 266412, at *2 (D.N.J. Jan. 30, 2012) (granting summary judgment of nonobviousness where the evidence established that the POSA "would have been unable to predict the outcome of the experiments necessary to develop the formulation").

50.     If present, "[o]bjective indicia of nonobviousness must be considered."  *Apple Inc.*,

839 F.3d at 1048.  A court's reliance on objective indicia of nonobviousness helps to "guard against slipping into use of hindsight."  *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966) (internal quotation marks omitted).  In other words, evaluating objective indicia "is not just a cumulative or confirmatory part of the obviousness calculus."  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008).  Rather, objective indicia are "independent evidence of nonobviousness."  *Id.*  Indeed, objective indicia "may often establish that an invention appearing to have been obvious in light of the prior art was not."  *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed. Cir. 1983).

51.    Relevant objective evidence of nonobviousness need not be described in the specification and may arise after the priority date.  *See Genetics Inst.*, 655 F.3d at 1307–08 ("[I]t would be error to prohibit a patent applicant or patentee from presenting relevant indicia of nonobviousness, whether or not this evidence was available or expressly contemplated at the filing of the patent application.").  For example, unexpected properties need not be appreciated at the time of the invention.  *Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1384-85 (Fed. Cir. 2004).

52.    A patentee can make a showing of unexpected properties by demonstrating "that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected."  *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995); *see also Procter & Gamble Co. v. Teva Pharms. USA, Inc*., 566 F.3d 989, 997–98 (Fed. Cir. 2009) (holding that test data showing that the claimed composition possessed "unexpectedly improved properties or properties that the prior art does not have" supported finding of nonobviousness) (internal quotation marks omitted).  Almost by definition, "that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious."

*In re Soni*, 54 F.3d at 750.  Thus, unexpected properties alone can rebut a prima facie case of obviousness.  *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) (citing *In re De Blauwe*, 736 F.2d 699, 706 n.8 (Fed. Cir. 1984)).  Whether properties of an invention are unexpected is evaluated by comparing the invention to the closest prior art. *Millennium*, 862 F.3d at 1367.

53.     Objective evidence may further include:  evidence of copying; long-felt but unmet need; failure of others; industry skepticism; commercial success; licensing; and industry praise, among others.  *Apple*, 839 F.3d at 1052; *Cyclobenzaprine*, 676 F.3d at 1075; *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1377-78 (Fed. Cir. 2019).  "[C]opying by a competitor is a relevant consideration in the objective indicia analysis and therefore may be evidence that the patented invention is nonobvious," and may be shown through, for example, "access and substantial similarity" to the claimed invention.  *Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1339 (Fed. Cir. 2023).  "Evidence of a long-felt but unresolved need can weigh in favor of the non-obviousness of an invention because it is reasonable to infer the need would not have persisted had the solution been obvious." *Apple*, 839 F.3d at 1056.  Failure of others shows "indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan." *Cyclobenzaprine*, 676 F.3d at 1082.  With respect to industry skepticism, "[i]f industry participants or skilled artisans are skeptical about whether or how a problem could be solved or the workability of the claimed solution, it favors non-obviousness." *WBIP*, 829 F.3d at 1335.  Commercial success and licensing of the claimed inventions may also serve as objective evidence supporting nonobviousness.  *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1325 (Fed. Cir. 1999); *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1374 (Fed. Cir. 2010).  Finally, "[e]vidence that the industry praised a

claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious. Industry participants, especially competitors, are not likely to praise an obvious advance over the known art." *Apple*, 839 F.3d at 1053.

54.    "In some rare instances, the secondary consideration of simultaneous invention might . . . supply 'indicia of obviousness.'" *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) (citation omitted). To be relevant, the simultaneous invention must be "[i]ndependently made . . . 'within a comparatively short space of time.'" *Id.* at 1305 (citation omitted). "[A] single instance of simultaneous invention cannot alone support a finding of obviousness." *Immunex Corp. v. Sandoz Inc.*, 395 F. Supp. 3d 366, 408 (D.N.J. 2019).

55.    For evidence of objective indicia to be given substantial weight, there must be a nexus between the claimed invention and the objective indicia of nonobviousness. *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008) (quotation marks and citation omitted), *overruled in part on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015). To determine whether the patentee has met its burden to show that a nexus exists, the Federal Circuit "consider[s] the correspondence between the objective evidence and the claim scope. If the asserted objective evidence is tied to a specific product and that product 'embodies the claimed features, and is co-extensive with them, then the objective evidence is entitled to a rebuttable presumption of nexus." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (cleaned up). Although "the identified objective indicia must be directed to what was not known in the prior art . . . what was not known in the prior art . . . may well be the novel combination or arrangement of known individual elements." *Id.* at 1333 (cleaned up). Objective evidence need not be "precisely limited to the point of novelty of

the claimed combination." *Id.* at 1334.

**C.    Whether Moderna has proven obviousness-type double patenting of the Asserted Patents.**

56.    Obviousness-type double patenting ("OTDP") is a judicially created doctrine that prohibits an inventor from obtaining a later patent for claims that are "not patentably distinct from an earlier claim in a commonly owned patent." *Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001).  The doctrine is "grounded in public policy that 'prevent[s] the extension of the term of a patent, even where an express statutory basis for the rejection is missing, by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent.'" *Otsuka*, 678 F.3d at 1297.  As such, the central focus in OTDP involves comparison between the scope of an earlier reference claim to the scope of the claim at issue.  *See, e.g.*, *Sun Pharm Indus. Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384–85 (Fed. Cir. 2010).  "It is well-settled that a narrow species can be non-obvious and patent eligible despite a patent on its genus." *AbbVie Inc. v. Mathilda and Terence Kennedy Institute of Rheumatology Trust*, 764 F.3d 1366, 1380 (Fed. Cir. 2014); *see also, e.g.*, *Eli Lilly & Co. v. Bd. Of Regents of Univ. of Wash.*, 334 F.3d 1264, 1270 (Fed. Cir. 2003) ("[E]arlier disclosure of a genus does not necessarily prevent patenting a species member of the genus."); *In re Kaplan*, 789 F.2d 1574, 1577–78 (Fed. Cir. 1986) ("This commonplace situation is not, per se, double patenting.").

57.    The OTDP analysis generally involves two steps:

First, as a matter of law, a court construes the claim in the earlier patent and the claim in the later patent and determines the differences. Second, the court determines whether the differences in subject matter between the two claims render the claims patentably distinct. A later claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.

*Eli Lilly v. Barr*, 251 F.3d at 968 (citations omitted).

58.     The legal standard for OTDP thus invokes "analogous" concepts with respect to anticipation and obviousness under 35 U.S.C. §§ 102 and 103. *See UCB, Inc. v. Accord Healthcare, Inc.*, 890 F.3d 1313, 1323 (Fed. Cir. 2018) ("[I]f an earlier claim renders obvious or anticipates a later claim, the later claim is not patentably distinct[.]"); *Otsuka*, 678 F.3d at 1297 ("Unless the earlier claim anticipates the later claim under § 102, the question whether the two claimed compounds are 'patentably distinct' implicates the question of obviousness under § 103[.]"). "And just as § 103(a) requires asking whether the claimed subject matter 'as a whole'. would have been obvious to one of skill in the art, so too must the subject matter of the [claims at issue] be considered 'as a whole' to determine whether the [reference claims] would have made those claims obvious for purposes of obviousness-type double patenting." *Eli Lilly & Co v. Teva Parental Meds., Inc.*, 689 F.3d 1368, 1377 (Fed. Cir. 2012) (citing *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1278 (Fed. Cir. 1992)).

59.     As such, where a challenger raises substantively the same anticipation or obviousness invalidity arguments in the guise of OTDP and fails to establish either by clear and convincing evidence, the OTDP inquiry may be "subsumed by the broader statutory inquir[ies] pursuant to 35 U.S.C. §[§ 102 and] 103." *Sanofi-Synthelabo v. Apotex Inc.*, 492 F. Supp. 2d 353, 393 (S.D.N.Y. 2007) ("Because Apotex has failed to prove at trial that the '265 patent was obvious in light of the '596 patent as a whole, it has also necessarily failed to prove that the '265 patent was obvious in light of the specific claims of the '596 patent.").

60.     A principal difference between the traditional § 103 obviousness and the obviousness-type double patenting analyses is the object of comparison. Double patenting analyzes the claims of the earlier and later patents; the issue is whether the claim of the later patent is patentably distinct from the claim of the earlier patent. *See, e.g.*, *In re Bartfeld*, 925 F.2d 1450,

1453 (Fed. Cir. 1991) (obviousness-type double patenting "depends entirely on what is claimed in an [earlier-]issued patent"); *In re Vogel*, 422 F.2d 438, 442 (C.C.P.A. 1970); *see also Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942–43 (Fed. Cir. 1992); *In re Longi*, 759 F.2d 887, 892 & n.5 (Fed. Cir. 1985); *In re Baird*, 348 F.2d 974, 979 (C.C.P.A. 1965); *In re Zickendraht*, 319 F.2d 225, 232–33 (C.C.P.A. 1963) (Rich, J., concurring).

61.     Thus, in a double patenting analysis, the specifications of the earlier patents that form the basis for the double patenting challenge may not be used as prior art and cannot be looked at for what they teach to the person of ordinary skill.  *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, 127 F.4th 896, 911 (Fed. Cir. 2025); *In re Kaplan*, 789 F.2d 1574, 1579–80 (Fed. Cir. 1986); *In re Baird*, 348 F.2d 974, 979–80 (C.C.P.A. 1965) ("the [earlier] patent disclosure is not 'prior art' and cannot be looked at for what it teaches"); *see also Longi*, 759 F.2d at 892–93; *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1281 (Fed. Cir. 1992) (citing, *inter alia*, *In re Braat*, 937 F.2d 589, 594 n.5 (Fed. Cir. 1991) ("The patent disclosure must not be used as prior art." (internal quotation marks omitted))); *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970) (in considering obviousness-type double patenting, "the patent disclosure may not be used as prior art"); *In re Plank*, 399 F.2d 241, 242 (C.C.P.A. 1968) ("Its claims [Plank *et al.* patent] are used as the basis for a double patenting rejection. It is not a prior art reference."); *In re Aldrich*, 398 F.2d 855, 859 (C.C.P.A. 1968) ("[D]ouble patenting rejection[s] cannot be based on section 103, . . . or on the disclosures of the patents whose claims are relied on to demonstrate double patenting or on the 'disclosures' of their claims      [P]atent claims are looked to only to see what has been patented, the subject matter which has been protected, not for something one may find to be disclosed by reading them." (citation and emphasis omitted)); *In re Boylan*, 392 F.2d 1017, 1018 n.1 (C.C.P.A. 1968) ("[I]n analyzing cases of these types, it must always be carefully observed

that the appellant's patent is not 'prior art' under either section 102 or section 103 of the 1952 Patent Act.").

62.     As with obviousness under § 103, evidence of objective indicia of nonobviousness "[w]hen offered" in the context of obviousness-type double patenting, "should be considered" and the "fact-finder 'must withhold judgement on an obviousness challenge until it has considered all relevant evidence, including that relating to the objective considerations.'" *Eli Lilly v. Teva*, 689 F.3d at 1381 (quoting *In re Cyclobenzaprine Pat. Litig.*, 676 F.3d at 1079); *see also Otsuka*, 678 F.3d at 1297–98.

**D.    Whether Moderna has proven indefiniteness of the Asserted Patents.**

63.     Patent claims are presumed to be valid, and a party challenging validity bears the burden of proving invalidity—including for indefiniteness, non-enablement, or lack of written description under 35 U.S.C. § 112—by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp.*, 564 U.S. at 95. "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims," and dependent claims "shall be presumed valid even [if] dependent upon an invalid claim." 35 U.S.C. § 282.

64.     The definiteness requirement is met if the claims, when read in light of the specification and the prosecution history "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Reasonable certainty" does not require "absolute or mathematical precision." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) (citation omitted); *see also Source Search Technologies, LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) (definiteness does not require "[a]bsolute certainty"). "[S]ound claim construction need not always purge every shred of ambiguity," and "some line-drawing problems" are "properly left to

the trier of fact." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

65.     A challenger does not establish indefiniteness simply by arguing that the precise bounds of a claim term are difficult to determine. *Source Search*, 588 F.3d at 1076.  Instead, "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, [the Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Id*. (citation omitted).  This is because the Federal Circuit has recognized that "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id*. at 1077 (citing *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)).

66.     A patentee "need not explain every detail because a patent is read by those of skill in the art." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1367 (Fed. Cir. 2011) (citing *Koito Mfg. Co. v. Turn–Key–Tech, LLC*, 381 F.3d 1142, 1156 (Fed.Cir.2004)).  As such, "[t]he mere observation of information not 'recited' does not answer the question whether a person of ordinary skill in the art would *need* [the omitted information] to understand, with reasonable certainty," whether a composition meets the claim limitation. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366, 1368 (Fed. Cir. 2017).  "[T]he inference of indefiniteness simply from [a] scope finding is legally incorrect." *Id*. at 1367 (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

67.     Indefiniteness is decided from the viewpoint of persons skilled in the field of the invention. *Nautilus*, 572 U.S. at 899.  The mere possibility of "unanswered questions" does not establish indefiniteness. *Nature Simulation Sys. v. Autodesk, Inc.*, 23 F.4th 1334, 1339–40 (Fed Cir. 2022).  An expert's description of his own work using the term or concept at issue "implicitly confirms that the terms at issue are ones whose scope is understood with reasonable certainty by

relevant skilled artisans." *BASF*, 875 F.3d at 1368. On the other hand, it is erroneous to use "inventor testimony, obtained in the context of litigation . . . to invalidate issued claims" on the basis of indefiniteness. *Solomon v. Kimberly-Clark Corp*., 216 F.3d 1372, 1380 (Fed. Cir. 2000). "[A]n inventor's subjective belief cannot be used to invalidate a patent under § 112(b)." *10X Genomics, Inc. v. Parse Biosciences, Inc*., 2025 WL 470468 at *11 (D. Del. 2025).

68.     When a "court construe[s] the phrase" at issue "such that one skilled in the art would understand the bounds of the claim," then there is no indefiniteness. *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1383 (Fed. Cir. 2005). "[A] court's construction[] of the claim [can] show[] that it contain[s] no material ambiguities, and therefore [is] not invalid for indefiniteness." *Id*. at 1384; *see also Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1289 n.3, 1290 (Fed. Cir. 2023) (holding that "[f]urther support for our conclusion" that the claims are not indefinite "is found in the fact that the PTAB was able to construe the claim term without any indication the parties (or their experts) had any difficulty discerning the meaning of the term.").

69.     Evidence of different conclusions about whether any particular composition is within the scope of a claim is not sufficient to prove indefiniteness. *See Presidio*, 875 F.3d at 1377 ("[E]ven where the claims require a particular test result, there may be (and often are) disputes between the parties as to the proper application of the test methodology in the circumstances of an individual case. But those disputes are disputes about whether there is infringement, not disputes about whether the patent claims are indefinite.").

70.     "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline*, 403 F.3d at 1340-41. "Even if a claim is broad enough to embrace undetectable trace amounts of the claimed

invention," it is not indefinite, as "'[b]readth is not indefiniteness.'" *Id*. at 1341 (citations omitted). The concern "that potential infringers would not be able to determine (and avoid) infringement if they cannot detect [a] claimed compound," is irrelevant to, and "misses the proper purpose of[,] the definiteness requirement." *Id*. at 1340.

71.    Definiteness will be found if "[t]he scope of this claim is clear" even if "the infringement of the [] product is not." *SmithKline*, 403 F.3d at 1341. "[R]easonable disputes over infringement do not make a patent claim indefinite." *Ironburg*, 64 F.4th at 1290 (holding that the fact that the jury could have credited either expert's testimony regarding measurement locations and what measurement value satisfies the claim term "does not render the claim indefinite[,] . . . [i]nstead, it simply means the parties [] had a genuine dispute on . . . infringement"); *see also Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1346 (Fed. Cir. 2010) ("The difficulty or complexity of the infringement analysis does not necessarily speak to whether a claim is definite or not."); *Invitrogen*, 424 F.3d at 1384 ("[The challenger] is really talking about the difficulty of avoiding infringement, not indefiniteness of the claim."); *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 510 F. Supp. 2d 356, 362-363 (D. Del. 2007) (whether claims "are indefinite ultimately amounted to the question of whether [POSA] would know what it means—not when or how it is determined"); *Confluent Surgical, Inc. v. HyperBranch Med. Tech., Inc*., 2019 WL 2897701 at *8 n. 10 (D. Del. July 5, 2019) (argument that "patents provide no principled way to conclude whether" device infringes is irrelevant to definiteness).

72.    "[T]here is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015). A "claim is not indefinite if a [POSA] would know how to utilize a standard measurement method . . . to make the necessary measurement." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,

875 F.3d 1369, 1376 (Fed. Cir. 2017).

73.    Unless there is a "definitional problem"—i.e., "a [claim] term [is] capable of multiple correct meanings and those meanings [are] tied up with methods of measurement"—" [t]he problem of inconsistency in test results is entirely different from the problem of indefiniteness." *Kaneka Corp. v. Designs for Health, Inc.*, 2025 WL 1684677, at *5 (D. Del. June 16, 2025). Where claims "have a fixed and singular meaning," e.g., "names and ratios of chemical compounds," "the existence of different [measurement] methods . . . does not introduce any ambiguity about the scope of the [] claim limitation that would render the asserted claims indefinite." *Id.*; *see also Fieldturf USA v. Astroturf LLC*, 2015 WL 13047923at *2 (E.D. Mich. Oct. 1, 2015) ("There are multiple ways to measure [] depth, (toothpick, ruler, or proportion of infill to size of the field) which may be more or less accurate. But the existence of multiple tools to measure the depth does not present the definitional problem that rendered the patents in *Teva* and *Dow Chemical* indefinite.").

74.    Even if measurement results are relevant to indefiniteness, *i.e.*, by invoking a definitional dispute, "[t]he mere possibility of different results from different measurement techniques" does not render a claim indefinite. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366–67 (Fed. Cir. 2014). It is insufficient to "speak[] only in generalities," instead, the challenger must "provide evidence that [] different methods . . . would, in fact, produce different results." *Vifor Fresenius Med. Care Renal Pharma Ltd. v. Lupin Atlantis Holdings SA*, 2019 WL 4222673, at *4-5 (D. Del. Sept. 5, 2019).

75.    "[M]inor differences between [] two techniques are [] insufficient to render the patent invalid." *Takeda*, 743 F.3d at 1367 n. 3 ("there is the potential for inconsistent results even within the same method of measurement, but that surely does not render a claim indefinite"). The

"method of measurement" must "in fact [be] outcome-determinative in the infringement analysis" to be relevant to indefiniteness. *Id*. at 1367 n.4. In addition, the challenger must show that different methods "typically yield different [] measurements"—*i.e.*, that the evidence is not based on an "outlier measurement" or was obtained using a "defective device"—to be relevant to the definiteness inquiry. *Janssen Pharm., Inc. v. Teva Pharm. USA, Inc*., 97 F.4th 915, 937 (Fed. Cir. 2024) (the court "need not reach the parties' arguments" about different measurements due to use of a defective device).

### E.    Whether Moderna has proven nonenablement of the Asserted Patents.

76.    The enablement "requirement is met when at the time of filing the application one skilled in the art, having read the specification, could practice the invention without 'undue experimentation.'" *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013). "Because [courts] must presume a patent enabled, the challenger bears the burden, throughout the litigation, of proving lack of enablement by clear and convincing evidence." *Id.* at 1337.

77.    The undue experimentation test "is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine." *Johns Hopkins Univ. v. CellPro*, 152 F.3d 1342, 1360 (Fed. Cir. 1998). A specification is not "inadequate just because it leaves the skilled artist to engage in some measure of adaptation or testing." *Amgen Inc. v. Sanofi*, 598 U.S. 594, 611 (2023). "[A] specification may call for a reasonable amount of experimentation to make and use a patented invention" and still satisfy enablement. *Id.* at 612. "[E]xtensive experimentation" is permissible "where the experiments involve repetition of known or commonly used techniques." *Cephalon*, 707 F.3d at 1338. And "trial and error" can be required to practice an enabled claim, if it would not be "unduly laborious or beyond the reach of one of ordinary skill." *Koito Mfg.*, 381 F.3d at 1155 (affirming enablement JMOL). Difficulty in practicing the claimed invention must be "attributable to a failure of disclosure in the [] patent," in order to

demonstrate undue experimentation. *Johns Hopkins*, 152 F.3d at 1360.

78.     Because experimentation is permissible, the challenger must "show by way of testimony or documentary evidence the amount of experimentation needed." *Cephalon*, 707 F.3d at 1339; *see also Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337-38 (Fed. Cir. 2006) (the challenger must provide sufficient "evidence to demonstrate that others would have been unable to practice the claimed invention without undue experimentation."). There must be "evidence on the record of undue experimentation." *Cephalon*, 707 F.3d at 1339 ("Unsubstantiated statement indicating that experimentation would be 'difficult' and 'complicated'" does not create such a record). "*[I]pse dixit* statements . . . cannot be enough to constitute clear and convincing evidence" of non-enablement. *Id*. at 1338. Nor are "unsubstantiated conclusory statement[s]" about high levels of experimentation. *Alcon Rsch*., 745 F.3d at 1189; *Johns Hopkins*, 152 F.3d at 1360 (affirming summary judgment because statements that a method is "difficult" are insufficient to establish non-enablement).

79.     "*After* the challenger has put forward evidence that some experimentation is needed to practice the patented claim, the factors set forth in *Wands* then provide the factual considerations that a court *may* consider when determining whether the amount of that experimentation is either 'undue' or sufficiently routine such that an ordinarily skilled artisan would reasonably be expected to carry it out." *Alcon*, 745 F.3d at 1188 (citing *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988)) (emphases added). An analysis of the *Wands* factors cannot supplant the required showing of undue experimentation. *Id*. In addition, the "*Wands* factors" are not a "generalized test for deciding whether a patent disclosure is sufficiently detailed to support a broad claim." *Id.* at 1189.

80.     "[A]n abstract assertion of breadth, without concrete identification of matter that is not enabled but is or may be within the claim scope," is insufficient. *Id.* Thus, a challenger must

"specific[ally] identif[y] products . . . that were or may be within the scope of the claims and were allegedly not enabled." *McRO, Inc. v. Bandai Namco Games Am.*, 959 F.3d 1091, 1100–01 (Fed. Cir. 2020). A patent need not teach the POSA how to make every composition comprising the invention. *McRO*, 959 F.3d at 1100; *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991) (all that must be enabled is "the claimed invention"); *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. App'x 961, 967 (Fed. Cir. 2014) (enablement does not require "a detailed recipe for preparing every conceivable permutation of the compound . . . [A] specification is not deficient merely because it does not disclose how to prepare a particular form or mixture—among hundreds of possible permutations[.]").

81. "It is not a function of the claims to specifically exclude . . . possible inoperative substances." *Atlas Powder Co. v. E.I. du Pont De Nemours & Co*., 750 F.2d 1569, 1576 (Fed. Cir. 1984). Instead, to be evidence of non-enablement, "the number of inoperative combinations" must be "significant, and in effect force[] one of ordinary skill in the art to experiment unduly." *Id.* at 1576-77.

82. A "patent need not teach, and preferably omits, what is well known in the art." *McRO*, 959 F.3d at 1102 (quoting *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987)). Therefore, challengers must "put forth clear and convincing evidence at trial that knowledge of" details purportedly omitted from the specification "w[ere] necessary to practice the claimed invention without undue experimentation." *Koito Mfg*., 381 F.3d at 1155 (affirming JMOL of enablement); *McRO*, 959 F.3d at 1102. The challenger must provide "evidence concerning the amount of experimentation needed to overcome th[e] omission" in the patent's specification. *InterDigital Commc'ns, Inc. v. ZTE Corp.*, 2014 WL 4272726, at *3 (D. Del. Aug. 28, 2014) (summary judgment of enablement because defendant failed to present such evidence).

Use of "proprietary [information or parameters] for achieving the claimed [invention]" does not demonstrate that the proprietary information or parameter "was required for [the POSA] to practice the claimed invention" absent undue experimentation. *Koito Mfg.*, 381 F.3d at 1155.

83.    Affirmative evidence of the ability to practice the claimed invention without undue experimentation is sufficient to establish enablement over that scope of the invention, even if there is evidence of failure of others to practice that same scope. *E.g.*, *Johns Hopkins*, 152 F.3d at 1361 (holding successful production of some claimed antibodies "suggests that the disclosure . . . in the patent was sufficient to enable those of ordinary skill to produce a host of [the claimed] antibodies"). "[W]hen the question is whether a thing can be done or not, it is always easy to find persons ready to show how not to do it. If one succeeds, that is enough, no matter how many others fail." *Telephone Cases*, 126 U.S. 1, 536 (1888).

84.    A party who wishes to prove that the claims of a patent are not enabled by means of a failed attempt to make the disclosed invention must show that the patent's disclosure was followed. *Johns Hopkins*, 152 F.3d at 1360 ("Because [the expert] deviated from the teachings of the patent in his failed attempts to make the claimed [invention], his testimony is insufficient to disprove enablement as a matter of law."). "Evidence of unsuccessful experimentation without any link to the claims at issue is not evidence of a lack of enablement." *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1186 n.9 (Fed Cir. 2002).

85.    "Section 112 requires enablement of 'only the claimed invention,' not matter outside the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (quoting *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1186 (Fed. Cir. 2002)).  Enablement turns on the experimentation required to make the invention "as claimed." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956-57 (Fed. Cir. 1983)

(holding that limitations "impermissibly read" into a claim cannot support a finding of invalidity). Unclaimed limitations or features "have no bearing on a person's ability to practice the claims and therefore have no bearing on enablement." *Janssen Pharm., Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394, 417 (D. Del. 2024) (claims "say nothing about drug concentrations or a therapeutic window"); *see also United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1370-71 (Fed. Cir. 2023) ("[B]ecause safety and efficacy are not recited in the claims, we need not deal with" the challenger's 35 U.S.C. § 112 arguments about safety and efficacy.); *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1188-89 (Fed. Cir. 2014) (the "district court erred in its enablement analysis," because the claims "do not require a particular level of stability"); *Inline Connection Corp. v. AOL Time Warner Inc.*, 2007 WL 275928 at *4-5 (D. Del. Jan. 29, 2007) ("[D]efendants ignore the rule that the specification 'need not enable anything broader than the scope of the claims'" and as such, "[b]ecause [the expert] did not conduct a proper enablement analysis, his opinion is not reliable and is not admissible on enablement." (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994))).  Arguments of unexpected properties do not get grafted onto claims, for purposes of enablement or otherwise.  *In re Merch.*, 575 F.2d 865, 868 (C.C.P.A. 1978) ("We are aware of no law requiring that unexpected results relied upon for patentability be recited in the claims."); *Invista N. Am. S.A.R.L. v. M & G USA Corp.*, 35 F. Supp. 3d 583, 599 n.12 (D. Del. 2014) (criticizing expert who "conflated the 'unexpected results,' . . . and 'undue experimentation' as it applies to enablement, which is based on the invention as claimed").

86.    Evidence about experimentation required to optimize the invention, rather than what is required to practice it, is irrelevant to enablement.  *Alcon Rsch.*, 745 F.3d at 1189 ("Adjusting variables may be relevant to *optimizing* the [invention]," but the challenger must proffer evidence that "undue experimentation[] with those variables would be necessary in order

to *practice* the claimed invention." (emphasis in original)).  In addition, "a patent does not need to guarantee that the invention works for a claim to be enabled."  *Id.*

87.    "[T]he enablement requirement is met if the description enables any mode of making and using the invention."  *Johns Hopkins*, 152 F.3d at 1361 (affirming summary judgment of enablement).  Where claims are directed to a composition rather than a method of making a composition, evidence of non-enablement of alternative modes of making and using the claimed invention is "legally irrelevant."  *Id.*; *see also Invitrogen Corp. v. Clontech Lab'ys, Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005) (affirming summary judgment of enablement because patent teaching one mode to practice the invention "is sufficient" where "the claims are not limited by the method of achieving the [invention].").  Relatedly, "enablement does not turn on whether the accused product is enabled."  *Pfizer Inc. v. Teva Pharms. U.S.A., Inc.*, 882 F. Supp. 2d 643, 682 (D. Del. 2012), *aff'd sub nom*. *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 555 F. App'x 961 (Fed. Cir. 2014); *Inline Connection Corp. v. EarthLink, Inc.*, 684 F. Supp. 2d 496, 526 (D. Del. 2010) ("[Defendant's] assertion that the patents must enable a system that can transmit up to . . . the distance over which the accused system operates is flatly contrary to a proper enablement analysis.").

88.    Evidence of experimentation required to measure the claimed features, in order to assess infringement, is irrelevant to enablement.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 560 F. Supp. 2d 835, 879 (N.D. Cal. 2008) ("[T]he test for enablement is . . . not whether one of ordinary skill of the art could easily assess whether" the device infringes.); *see also Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, 477 F. Supp. 3d 306, 353-354 (D. Del. 2020) (rejecting written description challenge where "particle size limitation" was "feature of the claimed invention, not a measurement requirement," as "Defendants do not point to anything in [the]

patent that makes such a [particle size] determination . . . a *requirement* for practicing the particle size limitation."), *aff'd sub nom. Bristol-Myers Squibb Co. v. Sigmapharm Lab'ys, LLC*, 858 F. App'x 359 (Fed. Cir. 2021). 35 U.S.C § 112 "requires nothing more than objective enablement." *Eli Lilly & Co. v. Actavis*, 435 F. Appx. 917, 925 (Fed. Cir. 2011).

F.    **Whether Moderna has proven that the Asserted Patents lack written description.**

89.    The written description requirement under 35 U.S.C. § 112 provides that a patent specification must "contain a written description of the invention, and of the manner and process of making and using it." 35 U.S.C. § 112 ¶ 1. "The written description requirement is met when 'the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 937 (Fed. Cir. 2019) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).

90.    The written description "test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad Pharm.*, 598 F.3d at 1351. The issue of whether a claimed invention satisfies the written description requirement is a question of fact. *Id*.

91.    The patent's specification does not have to provide word-for-word support for the claimed subject matter at issue, but must sufficiently describe the claimed invention such that the POSA would have recognized that, as of the filing date of the patent application, the patentee was in possession of the claimed invention. *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012) (the written description requirement is satisfied when "the specification describes the

invention in such a way that it is understandable to a person of ordinary skill in the art."). The written "description requirement does not demand any particular form of disclosure." *Ariad*, 598 F.3d at 1352 (patent specification is not required to "recite the claimed invention *in hac verba*") (citing *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008)). The level of required disclosure "depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, the predictability of the aspect at issue, and other considerations appropriate to the subject matter." *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005).

92.    The written description requirement does not require that the specification "describe in the specification every conceivable and possible future embodiment of [the] invention." *Cordis Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352, 1365 (Fed. Cir. 2003) (internal quotation omitted). A sufficient written description of a genus requires a definition, "such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials." *Ariad*, 598 F.3d at 1350.

93.    Where a patent claims a genus of inventions, "every species in a genus need not be described." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997) (citing *Utter v. Hiraga*, 845 F.2d 993, 998–99 (Fed. Cir. 1988)). In such circumstances, a patent need only describe "a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad*, 598 F.3d at 1350 (quoting *Regents*, 119 F.3d at 1568–69). Thus, even a single representative embodiment can provide written description support for a genus. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1073 (Fed. Cir. 2005); *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124–25 (Fed. Cir. 2004) ("[D]isclosure of a single species

46

within a genus may be enough support for a claim directed to the genus.").

94.     A patent does not need to contain specific examples to satisfy the written description requirement. *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language."). If it does contain examples, a patent does not need a specific example for every possible embodiment of the invention, so long as the POSA would have recognized the identity of the members of the claimed genus. *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009) ("[A] patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed."); *see also Pfizer Inc. v. Teva Pharms. USA, Inc.*, 555 F. App'x 961, 968 (Fed. Cir. 2014) ("[W]ritten description does not require inventors, at the time of their application for a patent, to reduce to practice and be in physical possession of every species . . . For claims to a chemical compound, an application satisfies the written description requirement when it details 'relevant identifying characteristics' such that the compound can be distinguished from other compounds."); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 653 (E.D. Tex. 2017), *aff'd*, 739 F. App'x 643 (Fed. Cir. 2018) ("[A] patent's specification might identify three different structural features each found in one of three subgenera.").

95.     Nor must the inventor have actually reduced the invention to practice, or be in physical possession of the invention, to satisfy the written description requirement. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366–67 (Fed. Cir. 2006). "The standard for satisfying the written description requirement is whether the disclosure allows one skilled in the art to visualize or recognize the identity of the subject matter purportedly described. There is no requirement that

the disclosure contain either examples or an actual reduction to practice; rather, the critical inquiry is whether the patentee has provided a description that in a definite way identifies the claimed invention in sufficient detail that a person of ordinary skill would understand that the inventor was in possession of it at the time of filing." *Alcon Rsch. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190–91 (Fed. Cir. 2014) (quotations and citations omitted); *Allergan*, 796 F.3d at 1308.

96.     Written description does not need to be provided for unclaimed features. *United Therapeutics Corporation v. Liquidia Technologies, Inc.*, 74 F.4th 1360, 1370–71 (Fed. Cir. 2023) (rejecting Defendant's argument that the specification had to describe a safe version of the drug product as no safety requirement had been claimed); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1333 (Fed. Cir. 2003) ("[U]nder our precedent the patentee need only describe the invention as claimed."). A patent with claim limitations based on numerical measurements does not need to provide written description of how to measure the limitation to determine whether the limitation has been met. *Bristol-Myers Squibb*, 477 F. Supp. 3d 306 at 353-354 ("Defendants' contention is unavailing as it is based on the inaccurate premise that the claims' scope 'includes determining the apixaban D90 value before or after tableting.' . . . [T]he Court understands the particle size limitation to describe a feature of the claimed invention, not a measurement requirement.").

97.     As with other validity issues, a party alleging insufficient written description must provide factual support for its legal allegations. Thus, general or conclusory expert testimony is not enough to support a finding of insufficient written description. *See, e.g., WBIP*, 829 F.3d at 1339 (citing *Koito Mfg.*, 381 F.3d at 1152); *M2M Solutions LLC v. Sierra Wireless Am., Inc.*, 2016 WL 1298961, at *3 (D. Del. Mar. 31, 2016) ("[C]onclusory arguments, unsupported by expert opinion about what a person of skill in the art would understand and directly contradicted by

considerable expert testimony, do not meet Defendants' considerable burden of establishing invalidity for lack of written description by clear and convincing evidence."); *AAT Bioquest, Inc. v. Tex. Fluorescence Labs., Inc.*, 2015 WL 1738402, at *5 (N.D. Cal. Apr. 13, 2015).

### G. Whether Moderna has proven that Asserted Patents are invalid for derivation.

98.     Derivation is a defense available under pre-AIA law.  Pre-AIA 35 U.S.C. § 102(f) provides that a person shall be entitled to a patent unless "he did not himself invent the subject matter sought to be patented."  "To prove derivation under § 102(f), 'the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee' by clear and convincing evidence."  *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (quoting *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997)).  "[T]he ultimate question of whether a patentee derived an invention from another is one of fact," but within the prior conception prong "the determination of whether there was a prior conception is a question of law."  *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993) (citations omitted).

99.     "The conception requirement of derivation borrows from the conception standard for prior invention."  *Cumberland Pharmaceuticals Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017) (citing *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011)).  Conception occurs when the "mental part of the inventive process" is complete.  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1231 (Fed. Cir. 1994).  In other words, conception occurs when the idea is "so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation."  *Id.* at 1228.

100.     Derivation requires evidence of "someone else whose possession of the subject

matter is inherently 'prior.'" *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997). Therefore, "prior possession by [the patentee] vitiates argument that the invention was derived from [another]." *Denen v. Buss*, 801 F.2d 385, 386 (Fed. Cir. 1986); *see also Cumberland Pharms.*, 846 F.3d at 1218-1219 ("The court thus found that Mylan did not prove that an FDA person conceived of that formulation, or communicated it to Cumberland, before Mr. Pavliv thought of it."); *Eli Lilly & Co. v. Sicor Pharm., Inc.*, 705 F. Supp. 2d 971, 993 (S.D. Ind. 2010) (no derivation where "it is abundantly clear that [the alleged prior inventor] did not conceive of [the claimed invention] and its utility prior to [the patentee's] having done so"), *aff'd*, 426 F. App'x 892 (Fed Cir. 2011).

101.    At the latest, "[t]he filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application." *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998). So long as the application meets the written description and enablement requirements, "the inventor need not provide evidence of either conception or actual reduction to practice when relying on the content of the patent application." *Id.*; *see also Frazer v. Schlegel*, 498 F.3d 1283, 1287 (Fed. Cir. 2007) (explaining that it is incorrect to analyze a claim of priority based on a patent application "in terms of 'conception'": "when reliance is on a patent document already filed, the question is whether the document discloses the invention [at issue] by meeting the written description and enablement requirements of 35 U.S.C. § 112 ¶ 1").

102.    Communication "must be sufficient to enable one of ordinary skill in the art to make the patented invention" in order to support derivation. *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003). Such communication also must encompass all limitations of the claimed invention. *See Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218

(Fed. Cir. 2017). Derivation is not proved by showing conception and communication of an idea that would make the claimed idea obvious. *Cumberland Pharms.*, 846 F.3d at 1219; *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 444-445 (D. Del. 2021).

## IV. Remedies

### A. Whether Plaintiffs are entitled to damages in the form of a reasonable royalty under 35 U.S.C. § 284 and the amount of those damages.

103. Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The requirement to determine actual damages is not diminished by difficulty of determination."). "[T]he Supreme Court has interpreted [§ 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983)).

104. "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). Even if evidence presented at trial falls short of supporting a party's specific royalty estimate, "the fact finder is still required to determine what royalty is supported by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–28 (Fed. Cir. 2014), *overruled in part on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (citing cases). A patentee need not prove its damages with absolute

certainty.  *See W.R. Grace & Co.-Conn. v. Intercat, Inc.,* 60 F. Supp. 2d 316, 321 (D. Del. 1999)

(citing *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)).  "[I]t will be

enough if the evidence show[s] the extent of the damages as a matter of just and reasonable

inference, although the result be only approximate."  *Story Parchment Co. v. Paterson Parchment

Paper Co.*, 282 U.S. 555, 563 (1931).  Moreover, "[a]ny doubt about the correctness [of damages]

is resolved against the infringer."  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577

(Fed. Cir. 1989); *Lam, Inc.*, 718 F.2d at 1064; *W.R. Grace,* 60 F. Supp. 2d at 321.  "[F]undamental

principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of

upon the injured party."  *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22

(Fed. Cir. 1984).

105.    "The court may receive expert testimony as an aid to the determination of damages

or of what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.  "[I]n patent

cases, damages experts routinely rely on facts and opinions provided by technical experts when

rendering their damages analysis."  *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. CV 11-515-

LPS-CJB, 2015 WL 12731924, at *6 (D. Del. Nov. 4, 2015); *see also Apple Inc.*, 757 F.3d at 1321.

106.    "[E]stimating a reasonable royalty is not an exact science.  The record may support

a range of reasonable royalties, rather than a single value.  Likewise, there may be more than one

reliable method for estimating a reasonable royalty."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802

F.3d 1283, 1296 (Fed. Cir. 2015).  Thus, "[t]he methodology of assessing and computing damages

under 35 U.S.C. § 284 is within the sound discretion of the district court."  *TWM Mfg. Co. v. Dura

Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986).  Among these methods for calculating a reasonable

royalty are the analytical approach, which "focuses on the infringer's projections of profit for the

infringing product," and "the hypothetical negotiation or the 'willing licensor-willing licensee'

approach, [which] attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent*, 580 F.3d at 1324; *see also Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) (declining to "endorse *Georgia–Pacific* as setting forth a test for royalty calculations," but describing it "as a list of admissible factors informing a reliable economic analysis," and characterizing the analytical approach as "an entirely separate analysis of a reasonable royalty"). However, damages may ultimately be assessed by any "methodology [that] is reasonable and its data or evidence are sufficiently tied to the facts of the case." *Summit 6, LLC*, 802 F.3d at 1296.

107.    The analytical approach involves "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices." *TWM Mfg. Co.*, 789 F.2d at 899. When conducting this analysis, "evidence of actual profits is generally admissible," however the focus is on the infringer's projections "on the date when the infringement began." *Id.* The analysis does not factor in the infringer's efficiency or otherwise cap damages based on what "the particular infringer could profitably pay." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771 (Fed. Cir. 2014). Many types of evidence can be relevant to the analytical approach of determining a reasonable royalty, including "licenses, business prognostications, and information about cost savings or value enhancements compared to alternatives." *Id*. at 772; *see also 10x Genomics, Inc. v. NanoString Techs., Inc.*, 690 F. Supp. 3d 449, 464 (D. Del. 2023) (holding that using gross profits for analytical approach was not grounds to exclude expert's opinion).

108.    As another acceptable method, the reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean*

*Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012).  In such a case, the reasonable royalty is based upon the "hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee.'"  *St. Clair Intell. Prop. Consultants, Inc. v. Canon, Inc.*, No. CIV.A. 03-241 JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004) (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)).  "In general, the date of the hypothetical negotiation is the date that the infringement began," not an "an after-the-fact assessment." *LaserDynamics*, 694 F.3d at 75.  "Thus, the reasonable royalty must be based on facts that existed at the time of the hypothetical infringement." *St. Clair*, 2004 WL 2213562, at *2.  However, "in conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994).  "Consideration of evidence of usage after infringement started can, under appropriate circumstances, be helpful to the jury and the court in assessing whether a royalty is reasonable.  Usage (or similar) data may provide information that the parties would frequently have estimated during the negotiation." *Lucent*, 580 F.3d at 1333–34.  "This quantitative information, assuming it meets admissibility requirements, ought to be given its proper weight, as determined by the circumstances of each case." *Id.* at 1334.

109.    The hypothetical negotiation seeks to determine "what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015).  It thus seeks to "accurately reflect[] the real-world bargaining" dynamics of the parties. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349

(Fed. Cir. 2018); *Lucent*, 580 F.3d at 1325.

110.    "A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *ResQNet.com, Inc.*, 594 F.3d at 869; *see St. Clair*, 2004 WL 2213562, at *2. "In considering the fifteen *Georgia-Pacific* factors, it is presumed that the parties had full knowledge of the facts and circumstances surrounding the infringement at that time.   Indeed, the basic question posed in a hypothetical negotiation is: if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?" *LaserDynamics*, 694 F.3d at 76.  The *Georgia-Pacific* factors are nonexclusive.  *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, No. CA 05-422 GMS, 2011 WL 2222066, at *21 (D. Del. June 7, 2011), *aff'd*, 697 F.3d 1342.

111.    When a party relies upon licenses to establish a reasonable royalty, those licenses must be sufficiently comparable to the hypothetical license at issue in suit.  *See Virnetx, Inc.*, 767 F.3d at 1330.  Courts must account for differences in technologies and the economic circumstances of the contracting parties to other licenses used in the reasonable royalty analysis.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).  The consideration of a prior license requires "careful account of any economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation."  *Carnegie Mellon*, 807 F.3d at 1304.

112.    The presence or absence of "non-infringing alternatives" is a "core economic question" in the hypothetical negotiation.  *See Aqua Shield*, 774 F.3d at 770 ("In hypothetical-negotiation terms, the core economic question is what the infringer, in a hypothetical pre-

infringement negotiation under hypothetical conditions, would have anticipated the profit-making potential of use of the patented technology to be, compared to using noninfringing alternatives."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334–35 (Fed. Cir. 2015) ("[I]f avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater"). "[T]he absence of non-infringing alternatives would strengthen the patentee's hand in [the hypothetical] negotiation." *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 984 (Fed. Cir. 2019). A non-infringing alternative is not "available" if it is protected by patents, *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995), including if it is subject to litigation alleging infringement, *AstraZeneca*, 782 F.3d at 1340. Nor is a non-infringing alternative "acceptable" if it would "possess characteristics significantly different from the patented product." *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991). "[P]roposed alternatives [must] be specifically noted, [and] their availability and acceptability must also be substantiated with record evidence." *WhereverTV, Inc. v. Comcast Cable Commc'ns*, 2022 WL 2751752, at *7 (M.D. Fla. July 14, 2022); *SynQor, Inc. v. Artesyn Techs.,* 709 F.3d 1365, 1382 (Fed. Cir. 2013). It is not enough to "speculat[e] that it might have been theoretically possible . . . to produce . . . non-infringing alternatives." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011). Estimating a reasonable royalty requires consideration of the time that it would take to develop an alternative, and so "if avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater." *AstraZeneca*, 782 F.3d at 1335.

113. "A reasonable royalty may be . . . , and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a

royalty rate." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). The "ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

114.    35 U.S.C. § 271(a) "states a clear definition of what conduct Congress intended to reach—making *or* using *or* selling in the United States *or* importing into the United States, even if one or more of those activities also occur abroad." *Carnegie Mellon*, 807 F.3d at 1306; *see also WesternGeco*, 585 U.S. 407 (in context of § 271(f), holding that Patent Act allows for an award of damages in the form of lost foreign profits). Goods made in the United States and sold abroad are properly included in the royalty base. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984); *see GE Healthcare Bio-Scis. AB v. Bio-Rad Lab'ys, Inc.*, No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967, at *1 (S.D.N.Y. Nov. 25, 2015) ("Long-established Federal Circuit precedent recognizes that, when an allegedly infringing product is produced in the United States and subsequently sold by the manufacturer to foreign buyers, the foreign sales are relevant to the determination of damages suffered as a result of the domestic act of infringement.").

115.    A patentee should also be entitled to an accounting of damages for post-verdict sales of products found to infringe the patents-in-suit, which is standard practice in patent cases. *See, e.g., Edwards Lifesciences AG v. CoreValve, Inc.*, No. C.A. 08-91-GMS, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . an accounting of the number of [infringing] devices made, used, sold . . . through the date of the order accompanying this memorandum."). Courts in this District have permitted additional discovery to properly complete a post-trial accounting of damages. *TruePosition Inc. v. Andrew Corp.*, No. CIV. 05-747-SLR, 2009 WL 1651042, at *1 (D. Del. June

10, 2009), *aff'd,* 389 F. App'x 1000 (Fed. Cir. 2010).

**B.    Whether Plaintiffs are entitled to enhanced damages under 35 U.S.C. § 284.**

116.    Section 284 provides for enhanced "damages up to three times the amount found or assessed." 35 U.S.C. § 284.  "District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo,* 579 U.S. at 104.  "[A]lthough there is 'no precise rule or formula' for awarding damages under § 284, a district court's 'discretion should be exercised in light of the considerations' underlying the grant of that discretion." *Id.* at 103 (internal citation omitted).  Enhanced damages can be awarded in cases of "culpable behavior," including those in which the defendant's conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103–04.  The fact issues underlying enhanced damages are "governed by a preponderance of the evidence standard." *Id.* at 107.  "[T]he issue of punishment by enhancement is for the court and not the jury." *Eko Brands*, 946 F.3d at 1378.

117.    In deciding "whether to award [enhanced] damages, and in what amount," courts should "take into account the particular circumstances of each case." *Halo,* 579 U.S. at 106.  The Federal Circuit has identified several "nonexclusive" factors that may be helpful

> to guide the enhancement analysis: (1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the defendant's size and financial condition, (5) the closeness of the case, (6) the duration of defendant's misconduct, (7) remedial action by the defendant, (8) the defendant's motivation for harm, and (9) whether the defendant attempted to conceal its misconduct.

*Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1177–78 (Fed. Cir. 2022).  Courts "are not required to discuss" all those factors. *Id.* at 1178 (citing *Presidio*, 875 F.3d at 1382–83).

**C.    Whether Plaintiffs are entitled to an award of pre-judgment interest and post-judgment interest.**

118.    The patent statute authorizes awards of pre-judgment interest.  35 U.S.C. § 284.  28 U.S.C. § 1961(a) also states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  "[P]rejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983).  "An award of prejudgment interest serves to make the patentee whole because the patentee also lost the use of its money due to infringement."  *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001).  Accordingly, awarding "prejudgment interest is the rule, not the exception."  *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

119.    "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment."  *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988).  "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court.  In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement."  *Bio-Rad Lab'ys, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (internal citations and quotations omitted).

120.    "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).  Post-judgment interest is governed by regional circuit law.  *Id.* at 1348.  Under Third Circuit precedent, interest begins to accrue on the date of the entry of judgment.  *See Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).  Courts in this

district routinely award post-judgment interest in patent infringement cases.  *See, e.g.*, *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 15-CV-152-RGA, 2019 WL 9089597, at *1 (D. Del. Aug. 12, 2019); *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010); *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018), *aff'd,* 944 F.3d 1327 (Fed. Cir. 2019).

### D.    Whether Plaintiffs are entitled to attorneys' fees pursuant to 35 U.S.C. § 285 or other applicable law.

121.    "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[T]he "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."  *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (internal citations and quotations omitted).  "An 'exceptional' case, . . . is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion."  *Id*.; *see also id.* ("'[T]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised in light of the considerations we have identified.").  An entitlement to attorney fees under § 285 must only be shown by only a preponderance of the evidence.  *Id*. at 557; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CV 11-1175-RGA, 2014 WL 4675002, at *1 (D. Del. Sept. 12, 2014).  "[C]ases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner."  *Golight, Inc. v. Wal-Mart*

*Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) (internal citation omitted).

      **E.**    **Whether Plaintiffs are entitled to costs.**

      122.    Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." 28 U.S.C. § 1920 allows for the prevailing party to recover: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. L.R. 54.1.

**V.**    **Whether Moderna has established that the Government has granted its "authorization and consent" pursuant to 28 U.S.C. § 1498(a) and whether Moderna's infringement was "for the government.**

      123.    28 U.S.C. § 1498(a) waives sovereign immunity and imposes Government liability for a contractor's patent infringement that is (1) "for the Government" and (2) occurs "with the authorization or consent of the Government." *See IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014); *Advanced Software Design Corp. v. Fed. Rsrv. Bank of St. Louis*, 583 F.3d 1371, 1376 (Fed. Cir. 2009). "[A] governmental grant of authorization or consent does not mean that the alleged use or manufacture is done 'for the United States' under § 1498(a). To qualify, the alleged use or manufacture must also be done 'for the benefit of the government.'" *IRIS*, 769 F.3d at 1362. Section 1498 is an affirmative defense, and thus the party asserting it bears the burden as to both prongs. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002).

      124.    Under § 1498(a), a "use is 'for the Government' if it is 'in furtherance and fulfillment of a stated Government policy' which serves the Government's interests and which is

'for the Government's benefit.'"  *IRIS*, 769 F.3d at 1362 (quoting *Madey v. Duke Univ.,* 413 F.Supp.2d 601, 607 (M.D.N.C. 2006)); *see also* D.I. 31 at 9 (quoting *Japan Airlines*, 769 F.3d at 1362); D.I. 64 at 3.  To qualify, the government benefit must be direct.  *IRIS*, 769 F.3d at 1362 ("[I]ncidental benefit to the government is insufficient . . . .").  Thus, "[w]hen the Government authorizes an 'action' by a third party, it is not therefore liable for *any* infringement the third party may choose to undertake within the sphere of the authorized activity," but rather only for infringement "actually done for the United States Government."  *Riles v. Amanda Hess Corp.*, 999 F. Supp. 938, 941 (S.D. Tex. 1998).  An indirect benefit to the government is insufficient to establish that the infringement was done for the government.  *See Sheridan v. United States*, 120 Fed. Cl. 127, 131, *aff'd,* 629 F. App'x 948 (Fed. Cir. 2015) ("Where benefits to the Government are merely an incidental effect of private conduct, they do not constitute 'use or manufacture for the Government' within the meaning of § 1498." (citing *Advanced Software Design Corp. v. Fed. Rsrv. Bank of St. Louis*, 583 F.3d 1371, 1379 (Fed. Cir. 2009))); *Riles*, 999 F. Supp. at 940; *Windsurfing Int'l, Inc. v. Ostermann*, 534 F. Supp. 581, 588 (S.D.N.Y. 1982); *Carrier Corp. v. United States*, 534 F.2d 244, 247 (Ct. Cl. 1976).  Courts have held that "[m]edical care" that is subsidized or paid for by the federal government "is provided for the benefit of the patient, not the government," and the use of medical products is "for the benefit and convenience of the patient and provider, with no benefit to the government."  *Larson v. United States*, 26 Cl. Ct. 365, 369 (1992) (emphasis added).

125.    The party asserting the applicability of § 1498(a) bears the burden of establishing that the government has granted its authorization and consent to patent infringement.  *Toxgon Corp.*, 312 F.3d at 1381.  Where a party relies on a government contract to establish the government's authorization and consent, that contract must be valid.  *See SmartSignal Corp. v.*

*Expert Microsystems, Inc.*, 2006 WL 1343645, at *2 (N.D. Ill. May 12, 2006). "[A] government contract is 'tainted from its inception by fraud' and is thus 'void ab initio,'" where "the contractor (a) obtained the contract by (b) knowingly (c) making a false statement." *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1246 (Fed. Cir. 2007).