# EXHIBIT 3D

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION And GENEVANT SCIENCES GmbH,<br><br>          Plaintiffs,<br><br>v.<br><br>MODERNA, INC. and MODERNATX, INC.,<br><br>          Defendants.<br>────────────────────────────<br>MODERNA, INC., and MODERNATX, INC.,<br><br>          Counterclaim-Plaintiffs,<br><br>v.<br><br>ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH,<br><br>          Counterclaim-Defendants. | C.A. NO. 22-252-JDW |

**Exhibit 3D**

**MODERNA'S STATEMENT OF ISSUES OF LAW**

**EXHIBIT 3D**

Pursuant to Local Rule 16.3(c)(5), Defendants Moderna, Inc. and ModernaTX, Inc. (collectively, "Moderna") respectfully submit this statement of issues of law that remain to be litigated and a citation of representative authorities relied upon. Moderna submits this Statement based in part on its understanding of Plaintiffs Arbutus Biopharma Corporation and Genevant Sciences GmbH's (collectively, "Plaintiffs") positions.

Moderna reserves the right to modify or amend this Statement to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this Statement to fairly respond to any new issues that Plaintiffs may raise. Moderna further reserves the right to amend or supplement this statement after considering Plaintiffs' submissions, including amendments or supplementation in response to submissions or events in pretrial proceedings, the trial itself, post-trial proceedings, or otherwise. Moderna reserves the right to prove any matters of law not discussed here that are identified in its pleadings, interrogatory responses, and/or expert reports.

By listing these issues, Moderna does not concede that all these issues are appropriate for trial. Should the Court determine that any issue identified below as an issue of law is more properly considered an issue of fact, Moderna respectfully requests it be so considered. To the extent that an issue of law in one section applies to another section and claim or theory, it should be incorporated therein as well without separate repetition.

## I.      STANDING

### A.      Issues of Law

1.      Whether Plaintiffs have standing to bring this action.

### B.      Statement of Authorities

Section 281 of the Patent Act provides the right to sue for patent infringement. 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."); 35 U.S.C. § 100(d) ("The word 'patentee' includes not only the patentee to whom the patent was issued but

also the successors in title to the patentee."). Plaintiffs have "the burden to show necessary ownership rights." *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012). In the case of a licensee, "the relevant question here is whether [licensor's] rights, however retained or reacquired, include any substantial rights." *Lone Star Silicon Innovs. LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1231 (Fed. Cir. 2019).

## II.    CLAIM CONSTRUCTION

### A.    Issues of Law

During the claim construction process in this case, the parties identified which claims they believed needed to be construed by the Court (D.I. 129, 170), and the Court issued its construction accordingly (D.I. 267). The Court has ruled that the following claim constructions apply to the asserted claims in this case:

| Claim Term | Court's Construction |
|---|---|
| "__ mol % of the total lipid present in the particle" | "__ mol % of the total lipid present in the particle"<br><br>The recited "mol %" ranges are understood to encompass their standard variation based on the number of significant figures recited in the claim. |
| "a cationic lipid having a protonatable tertiary amine" | Plain and ordinary meaning, *i.e.*, a "cationic lipid having a protonatable tertiary amine" |
| "wherein at least 70% / at least 80 % / about 90% of the mRNA in the formulation is fully encapsulated in the lipid vesicles" | "wherein at least 70% / at least 80 % / about 90% of the mRNA in the formulation is fully, as distinct from partially, contained inside the lipid vesicles" |

Moderna respectfully disagrees with the Court's construction of certain terms that differ from Moderna's proposed constructions and expressly reserves the right to appeal all such constructions.

## B.    Statement of Authorities

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), *quoting, Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Claims must be construed the same way for determining validity and infringement. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 996 n. 7 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). The words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. "We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. ." *Id.* at 13. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* "[C]laims must be read in view of the specification, of which they are a part." *Id.* at 1315 (cleaned up). "The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998):

The court must "construe the claim as written, not as the patentees wish they had written it." *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *see also Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1332 (Fed. Cir. 2013) ("[I]t is hardly unknown for a patentee with an invention that could be protected to fail in securing such protection by bad choices in claim drafting). The scope of a claim term is limited to what was known at the time of filing. *Kopykake Enterprises, Inc. v. Lucks Co.*, 264 F.3d 1377, 1383 (Fed. Cir. 2001)

("[W]hen a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing"); *Massachusetts Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (collecting cases and similarly holding that the claim term "should be defined by what was known in the art at the time [of filing]").

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Interactive Gift Express*, at 1331 (*quoting Vitronics Corp. v. Conceptronic*, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id*. "Claim language must be viewed in light of the specification, which is the single best guide to the meaning of a disputed term." *Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005)).

## III.    ALLEGED INFRINGEMENT

For the Court's convenience, the following table lists the claims that Plaintiffs currently intend to assert at trial ("the Asserted Claims"), subject to any further narrowing prior to trial:

| Patent | Asserted Claim(s) |
|---|---|
| '359 Patent | Claims 7 and 12 |
| '435 Patent | Claims 7, 8, and 16 |
| '378 Patent | Claims 2, 7, 13, 18, and 19 |
| '651 Patent | Claims 7, 9, 11, 13, and 14 |

Moderna maintains that Plaintiffs' infringement claims for the other previously asserted claims of the above patents, and for U.S. Patent Nos. 8,058,069 and 8,822,668 that Plaintiffs

dropped as part of the Court-ordered, bilateral narrowing process, should be dismissed with prejudice from the case, and should not be presented at trial.

### A.    Issues of Law[1]

2.    Whether Plaintiffs have proven by a preponderance of the evidence that Moderna directly infringed one or more of the Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 271(a).

3.    Whether Plaintiffs have proven by a preponderance of the evidence that Moderna infringes one or more of the Asserted Claims of the Ratio Patents in violation of 35 U.S.C. § 271(a) under the doctrine of equivalents.

4.    Whether Moderna has demonstrated that the doctrine of equivalents is barred by prosecution history estoppel.

5.    Whether Moderna has demonstrated that the doctrine of equivalents is barred by claim vitiation.

6.    Whether Moderna has demonstrated that the doctrine of equivalents is barred by the disclosure-dedication doctrine.

7.    Whether Moderna has demonstrated that the doctrine of equivalents is barred by the doctrine of ensnarement.

8.    Whether Plaintiffs have proven by a preponderance of the evidence that Moderna has induced the direct infringement by another of the Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 271(b).

---

[1]    Moderna's position is that it has not willfully infringed any of the Asserted Patents. This is a question of fact and as such, it is not listed under Section III.A. However, the relevant standard for willful infringement is provided under Section III.B.6.

9.      Whether Plaintiffs have proven by a preponderance of the evidence that Moderna has contributed to the direct infringement by another of the Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 271(c).

10.     Whether Plaintiffs have proven by a preponderance of the evidence that Moderna has supplied or caused to be supplied in or from the United States all or a substantial portion of the components of a patented invention, such that it constitutes infringement of the Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 271(f)(1).

11.     Whether Plaintiffs have proven by a preponderance of the evidence that Moderna has supplied or caused to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention, such that it constitutes infringement of the Asserted Claims of the Asserted Patents in violation of 35 U.S.C. § 271(f)(2).

12.     If Moderna is found to have literally infringed at least one or more of the Asserted Claims of the Asserted Patents, whether Moderna set forth a prima facie case of non-infringement under the reverse doctrine of equivalents.

## B.      Statement of Authorities

### 1.      Direct Infringement

Direct infringement is defined as the making, using, selling, offering to sell, or importing a patented invention in the United States without authorization from the patent owner. 35 U.S.C. § 271(a). To prove direct infringement, Plaintiffs "must point to specific instances of direct infringement or show that the accused device necessarily infringes the patent." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "[F]ailure to meet a single limitation is

sufficient to negate infringement of the claim." *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, No. CV 19-97-CFC, 2024 WL 2153134, at *6 (D. Del. May 14, 2024) (*quoting Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)); *NOMOS Corp. v. BrainLAB USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004). The absence of even one claim element of an asserted claim precludes literal infringement of that claim. *See Kahn v. GMC*, 135 F.3d 1472, 1477 (Fed. Cir. 1998).

If an accused product does not infringe an independent claim, it also does not infringe any claim depending therefrom. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."). For there to be literal infringement of a device or system claim, every limitation of the claim must be present in an accused device or system exactly as recited in the claim. *See*, e.g., *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

### 2.    Doctrine of Equivalents

"[T]he doctrine of equivalents provides a limited exception to the principle that claim meaning defines the scope of the exclusivity right in our patent system." *NextStep, Inc. v. Comcast Cable Communications, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024). "A finding of infringement under the doctrine of equivalents is exceptional." *Id*. (*quoting Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1313 (Fed. Cir. 2008)). Stated differently, the doctrine of equivalents is the exception, not the rule. *Id*. (*citing Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019)). Under the doctrine, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Id*.

"[C]ourts must employ "special vigilance" to avoid overbroad applications of the doctrine of equivalents." *Id*. (*citing Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*., 520 U.S. 17, 40 (1997)). "There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Id*. (*citing Warner-Jenkinson*, 520 U.S. at 29). Therefore, there are "specific evidentiary requirements necessary to prove infringement under the doctrine of equivalents." *Id*. (*quoting Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996)).

"First, proof under the doctrine of equivalents must be on a limitation-by-limitation basis: "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id*. (*citing Warner-Jenkinson*, 520 U.S. at 29). "This requirement means that equivalency is determined by comparing "the elements of the accused product or process and the claimed elements of the patented invention." *Id*. (*citing Warner-Jenkinson*, 520 U.S. at 21).

"Second, 'both the Supreme Court and [the Federal Circuit Court] have made clear that the evidence of equivalents must be from the perspective of someone skilled in the art, for example through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art." *Id*. (*quoting AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)).

Third, the Federal Circuit Court has "long demanded specificity and completeness of proof as crucial to enforcing the limits on the doctrine: The patentee must provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device." *Id*. (*quoting VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1343 (Fed. Cir. 2023)). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." (*quoting Tex. Instruments, Inc. v. Cypress*

*Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)). "Rather, the patentee must provide a "meaningful explanation of why" the element or elements from the accused product or process are equivalent to the claimed limitation." *Id.* (*citing VLSI*, 87 F.4th at 1344).

Additionally, "if a claim limitation must play a role in the context of the specific claim language, then an accused device which cannot play that role, or which plays a substantially different role, cannot infringe under the doctrine of equivalents." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1090 (1998). "The question of whether an explicit function has been identified with a claim limitation entails an examination of the claim and the explanation of it found in the written description of the patent." *Id.*

### 3.      Limitations on Doctrine of Equivalents

The broad application of the doctrine of equivalents "'conflicts with the definitional and public-notice functions of the statutory claiming requirement.'" *MED-El Elektromedizinische Gerate GmbH v. Advanced Bionics, LLC*, 657 F. Supp. 3d 604, 615 (D. Del. 2025) (quoting Eli Lilly & Co. v. Hospira, Inc., 933 F.3d 1320, 1330 (Fed. Cir. 2019)). "Unchecked, the doctrine may take on a life of its own, unbounded by the patent claims. Therefore, courts developed doctrines to limit a patentee's ability to assert infringement under the doctrine of equivalents." *Id.* (cleaned up).

### a.      Prosecution History Estoppel

One such doctrine is prosecution history estoppel, which "can occur in two ways: either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019). "Whether prosecution history estoppel applies . . . is a question of law . . . ." *Id.*; *see also Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1288 (Fed. Cir. 2017). Prosecution history estoppel serves the important purpose of ensuring the inventor does not "avoid the PTO's gatekeeping role and seek to recapture

in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).

"When the patentee responds to [a PTO] rejection by narrowing his claims, . . . prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent. Competitors may rely on the estoppel to ensure that their own devices will not be found to infringe by equivalence." *Festo*, 535 U.S. at 727. "[T]he . . . rule is to place the burden on the patent holder to establish the reason for an amendment required during patent prosecution." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997). "Where no explanation is established, however, the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by amendment. In those circumstances, prosecution history estoppel would bar the application of the doctrine of equivalents as to that element." *Id*.

"A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo*, 535 U.S. 722, 740 (2002). "When the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed." *Id*. at 741. "Clear assertions . . . whether or not actually required to secure allowance of the claim, may also create an estoppel." *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1161 (Fed. Cir. 2019). "Only the public record of the patent prosecution, the prosecution history, can be a basis for [determining the reason for amending]." *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003)

"[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co., Ltd.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003); *see also Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed. Cir. 2005) ("Because both the reason for the amendment and the asserted equivalent relate to the [amended limitation], we affirm the trial court's conclusion that [Plaintiff] has not shown that the rationale underlying the amendment was merely tangential to the accused equivalent."). If patentee "ceded more claim scope than necessary to overcome []prior art[, that] does not mean that the tangential" exception applies. *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1382 (Fed. Cir. 2019). "To invoke argument-based estoppel, the prosecution history must evince a 'clear and unmistakable surrender of subject matter.'" *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003). "[T]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter," when assessing whether there were "clear assertions." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007).

b.    **Claim Vitiation**

"Claim vitiation presents another bar to a finding of infringement under the doctrine of equivalents. "[S]aying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366 (Fed. Cir. 2020) (*quoting Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013)). "The vitiation doctrine ensures the application of the doctrine of equivalents does not 'effectively eliminate [a claim] element in its entirety.'" *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 923 (2021) (*citing Warner-Jenkinson*, 520 U.S. at 29 (alteration in original)). Claim vitiation is a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* (*citing Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356–57 (Fed. Cir. 2012)); *see also UCB, Inc. v. Watson*

*Labs. Inc.*, 927 F.3d 1272, 1283 (Fed. Cir. 2019) (Vitiation "is not an exception or threshold determination that forecloses resort to the doctrine of equivalents but is instead a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted."). "[A] claim limitation can be said to be vitiated—if the theory or evidence of equivalence is legally incapable of establishing that the differences between the limitation in the claim and the accused device are insubstantial. *Id.* (*quoting Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006)).

### c.    Dedication to the Public (Disclosure-dedication)

The disclosure-dedication doctrine bars application of the doctrine of equivalents. *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020) (*citing Johnson & Johnston Assoc. v. R.E. Servs.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc)). It states that "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates the unclaimed subject matter to the public." *Id.* By preventing a patentee from recapturing unclaimed subject matter, the disclosure-dedication doctrine reinforces "the primacy of the claims in defining the scope of the patentee's exclusive right." *Id.* "To determine whether the disclosure-dedication doctrine applies in a given case, [the question is] whether the specification discloses unclaimed subject matter with 'such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.'" *Id.* (*quoting PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)). If the court concludes that the inventor dedicated an alleged equivalent to the public, the patent owner cannot prevail on its doctrine of equivalents infringement claim based on that equivalent. *Id.* (*citing Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108 (Fed. Cir. 1996)). The disclosure-dedication doctrine does not require the specification to disclose the allegedly dedicated subject matter in an embodiment that exactly matches the claimed embodiment. *Id.* at 1176 (*citing Johnson*, 285 F.3d at 1052). The application

of the disclosure-dedication doctrine is a question of law. *Id*. at 1177 (*citing Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005)).

### d.    **Ensnarement**

Like prosecution history estoppel, ensnarement is one of the various legal limitations on the application of the doctrine of equivalents. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009). Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or "ensnare," the prior art. *Id*. at 1322 (*citing Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed.Cir.1990), *overruled in part on other grounds, Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 92 (1993)*.*"This limitation is imposed even if a jury has found equivalence as to each claim element." *Id*. at 1323 (*citing Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683, 687 (Fed. Cir. 1990), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 92 n.12, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)). A "[h]ypothetical claim analysis is a practical method to determine whether an equivalent would impermissibly ensnare the prior art." *Intendis GmbH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363–64 (Fed. Cir. 2016) (c*iting Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000)). "Hypothetical claim analysis is a two-step process." *Id*. at 1363. "The first step is to construct a hypothetical claim that literally covers the accused device." *Id.* (*quoting DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed.Cir.2009). *"*Next, prior art introduced by the accused infringer is assessed to "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Id*. "In short, [the court] ask[s] if a hypothetical claim can be crafted, which contains both the literal claim scope and the accused device, without ensnaring the prior art." *Id*; *see also Ultra–Tex Surfaces*, 204 F.3d at 1364-65 ("Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in

scope to literally encompass the accused product or process. If that claim would have been allowed by the PTO over the prior art, then the prior art does not bar the application of the doctrine of equivalents." (citations omitted)). "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests with the patentee." *Id*. (*citing Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001)).

"[I]n the ensnarement context, a district court may hear expert testimony and consider other extrinsic evidence regarding: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations. *Id.* at 1324 (*citing Graham v. John Deere Co.*, 383 U.S. 1, 17-18, (1966). "Ultimately, however, ensnarement is a question of law for the court, not the jury, to decide." *Id.*

### 4.    Indirect Infringement

To establish liability for indirect infringement, Plaintiffs must first prove direct infringement by a third party. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement."). "Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands*, 501 F.3d at 1313.

"Both induced infringement and contributory infringement require the defendant to . . . know that the defendant's actions are either inducing or contributing to another's direct infringement." *Chalumeau*, 2012 WL 6968938, at *1 (*citing Global-Tech*, 563 U.S. at 763-64); *Monec*, 897 F. Supp. 2d at 229 ("To prevail on a claim for indirect infringement, a plaintiff must

first demonstrate direct infringement, and then establish that the 'defendant possessed the requisite knowledge or intent to be held vicariously liable.'" (citations omitted)). "Knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); "The Supreme Court has explained that if an accused infringer 'reads the patent's claims differently from the plaintiff,' and if 'that reading is reasonable'" and yields a good faith belief in noninfringement, "then the accused infringer should not be liable for indirect infringement." *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523 (Fed. Cir. 2016) (*quoting Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015)).

a.   **Contributory Infringement**

To prove contributory infringement, a patentee must show by a preponderance of the evidence that (1) an accused infringer sold, offered to sell, or imported in the United States a material component of an infringing product that is neither a staple article nor a commodity of commerce suitable for substantial non-infringing use, (2) a third party used the component in an infringing manner, and (3) the accused infringer knew that the component was especially made or adapted for use in the infringing manner or was at least willfully blind to this fact. 35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); *Philips Elecs. N.A. Corp. v. Remote So. Co.*, 411 F. Supp. 2d 479, 482, 83 (D. Del. 2006).

Contributory infringement requires proof of direct infringement and also requires that the accused product has "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes

contributory infringement." (citation and internal quotation marks omitted)). "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech*, 563 U.S. at 763 (*quoting Aro Mfg. Co. v. Covertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

### b.    **Induced Infringement**

To succeed on a claim of induced infringement, Plaintiffs must also prove that Moderna knew "that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). This requires more than just knowledge of the patent and of the relevant acts; it requires a showing of knowledge that the acts constituted infringement. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) ("[W]e disagree with Philips' claim that it need only show that Netgear knew of the patent and of the relevant acts, not whether these acts constituted infringement."). Liability for induced infringement cannot be premised on acts preceding notice of the patent at issue. *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998) (vacating finding of induced infringement where allegedly inducing acts occurred before party had notice of the asserted patent).

Plaintiffs must also prove that an accused infringer had specific intent to induce infringement. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) ("In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (internal citations omitted); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003). "[A]ctual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active

inducement." *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990). "Knowledge of the acts alleged to constitute infringement' is not enough." *DSU Med. Corp.*, 471 F.3d at 1305 (*quoting Warner-Lambert*, 316 F.3d at 1363). Establishing "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id*. at 1306.

"Specific intent" requires proof that the infringer purposefully intended to infringe a patent and took affirmative steps to foster infringement. *Id*. at 1305-06 ("If an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties. The inducement rule premises liability on purposeful, culpable expression and conduct. . . . [T]he inducer must have an affirmative intent to cause direct infringement." (citations and original alterations omitted)).

### 5.    Extraterritorial Infringement

A party that "without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." 35 U.S.C. § 271(f)(1). "[S]ubstantial portion in 35 U.S.C. § 271(f)(1) has a quantitative, not a qualitative, meaning." *Life Technologies Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017). Additionally, "§ 271(f)(1) does not cover the supply of a single component of a multicomponent invention," *Id*; as "a single component does not constitute a substantial portion of the components that can give rise to liability under § 271(f)(1)." *Id*. at 142. Also, 271(f) "applies only where components of a patent invention are physically present in the United States and then either sold

or exported"). *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004). This is because "the language of § 271(f) clearly contemplates that there must be an intervening sale or exportation; there can be no liability under § 271(f)(1) unless components are shipped from the United States for assembly." *Id*.

"[W]hereas § 271(f)(1) speaks to whether the components supplied by a party constitute a substantial portion of the components, § 271(f)(2) speaks to whether a party has supplied "any" noncommodity component "especially made or especially adapted for use in the invention." *Life Techs.*, 580 U.S. at 150.

### 6.    Willful Infringement

Enhanced damages may be awarded when an infringer's conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs.*, Inc., 579 U.S. 93, 103-04 (2016). Enhanced damages are only appropriate in egregious cases and need not follow a finding of egregious misconduct. *Id.* at 106. Mere knowledge of the patent, without more, is not sufficient for a willfulness finding. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987-88 (Fed. Cir. 2021) (holding "awareness of the patent" was "insufficient to establish that [defendant's] 'conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement'") (internal citations omitted); *see also Pact XXP Scheiz AG v. Intel Corp.*, 2023 WL 2631503, at *5 (D. Del. Mar. 24, 2023) (holding, in the context of willfulness, that knowledge cannot be "based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit").

If willfulness is established, the question of enhanced damages is left to the district court's discretion. *See WesternGeco, L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *overruled on other grounds*, *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407

(2018); 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (0216) ("limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement").

### 7.    Reverse Doctrine of Equivalents

The reverse doctrine of equivalents is an equitable doctrine designed "to prevent unwarranted extension of the claims beyond a fair scope of the patentee's invention." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (2008) (*citing* S*cripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1581 (Fed. Cir. 1991)). "[W]here a device is so far changed in principle from a patented article that it performs the same or similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the [reverse] doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement." *Id*. (*quoting Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608–609 (1950). "While the patentee bears the burden of proving infringement, if the patentee establishes literal infringement, the burden shifts to the accused infringer to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents." *Id*. at 1377-78 (*citing SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123-24 (Fed. Cir. 1985)).

The reverse doctrine of equivalents, like the doctrine of equivalents, is applied to individual limitations of a claim. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314; *See Warner–Jenkinson*, 520 U.S. at 29 ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

## IV.    INVALIDITY

### A.    Issues of Law[2]

---

[2]    Moderna's position is that the Asserted Claims of the '651 patent are invalid under 35 U.S.C. 35 U.S.C. § 102(a) as anticipated by the prior art and that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 112 because they are not supported by sufficient written

13.     Whether Moderna has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 103 because they would have been obvious in view of the prior art.

14.     Whether Moderna has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under the doctrine of obviousness-type double patenting.

15.     Whether Moderna has proven by clear and convincing evidence that the Asserted Claims of the '651 Patent are invalid because the claimed subject matter was derived from Moderna.[3] Whether Moderna conceived of the subject matter of the Asserted Claims of the '651 Patent prior to any conception by the named inventors of the '651 Patent.

16.     Whether the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 112 because they are indefinite.

17.     Whether Moderna has proven by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. § 112 because they are not enabled.

**B.     Statement of Authorities**

**1.     Person of Ordinary Skill in the Art**

"[T]he 'person of ordinary skill in the art' is a theoretical construct." *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 404 F. Supp. 2d 575, 579 (D. Del. 2005) (*quoting Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997)). The level of ordinary skill in the art is that of a hypothetical person presumed to have known the relevant art at the time

---

description. These are questions of fact and are not listed under Section IV.A for this reason. However, the relevant standards for anticipation and the written description requirement are provided under Section IV.B.3 and IV.B.4, respectively.

[3]     To the extent  the '651 patent is only entitled to a priority date in 2014, the America Invents Act provisions of 35 U.S.C. may apply, which provide that patents can be granted only to "[w]however invents or discovers any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The '651 patents are similarly invalid under AIA § 101 and 115 for failure to name all inventors.

of the invention. Factors that may be considered are: (1) "type of problems encountered in the art," (2) "prior art solutions to those problems," (3) "rapidity with which innovations are made," (4) "sophistication of the technology," and (5) "educational level of active workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). "In a given case, every factor may not be present, and one or more factors may predominate." *Id*. The hypothetical person of ordinary skill in the art is presumed to know all of the teachings of the prior art references in the field of the invention at the time the invention was made. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984).

### 2.    Prior Art

A patent claim is invalid if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent." 35 U.S.C. § 102(a) (Pre-AIA). A patent claim is also invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (Pre-AIA).

### 3.    Anticipation

Patent claims may be anticipated by a prior art reference if the party challenging validity demonstrates by clear and convincing evidence that "each and every element is found within a single prior art reference, arranged as claimed." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015). In other words, "[a] patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *see also Upsher-Smith Labs., Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (It is "[a] century old axiom of patent law . . . that a product 'which would literally infringe if later in time anticipates if earlier'" (*quoting*

*Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003)). "[T]he dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim element was disclosed in that single reference." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003).

"If a device was 'known or used by others' in this country before the date of invention or if it was 'in public use' in this country more than one year before the date of application, it qualifies as prior art." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (quoting 35 U.S.C. § 102(a) and (b)). Only the features of the prior art device corresponding to the claimed features need be disclosed, and only at the level of detail disclosed in the patent. *See id.* at 1572.

Anticipation is not limited to what the prior art expressly discloses. "[A] prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005). "[I]nherent anticipation does not require a person of ordinary skill in the art to recognize the inherent disclosure in the prior art at the time the prior art is created." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005); *see also Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999) ("[T]he discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning, does not render the old composition patentably new to the discoverer."). "A reference includes an inherent characteristic if that characteristic is the 'natural result' flowing from the reference's explicitly explicated limitations." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 970 (Fed. Cir. 2001).

If a prior art reference contains a similar level of disclosure to the asserted patent, that is sufficient to meet the prior art standard of enablement. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1193–94 (Fed. Cir. 2008) ("This court discerns that the district court correctly

determined that the EMERALD 1997 paper enabled one of ordinary skill in the art to practice the claimed invention. Based on the '212 patent specification, the EMERALD 1997 paper, and the record before the district court, no reasonable jury could conclude that the EMERALD 1997 paper did not enable statistical profiling of network traffic. . . . With the 1997 paper providing similar, or even a partially identical, disclosure to the '212 patent specification, the record meets the lower enablement standard for prior art under 35 U.S.C. § 102(b). Thus, the 1997 publication with its similarities in technical scope and description to the specification of the '212 patent meets the enabling hurdle for a prior art reference.").

### 4.    Obviousness

#### i.    Prima Facie Case

Patent claims would have been obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (pre-AIA); *see KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."). A party asserting obviousness claims must demonstrate "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

"[W]here the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Aller*, 220 F.2d 454, 456 (CCPA 1955). "Routine optimization" analysis "is rooted in the decades old legal principle that where the general conditions of a claim are disclosed in the prior art . . . ." *Pfizer*

*Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341, 1347 (Fed. Cir. 2024). Under such analysis, "an overlap between a claimed range and a prior art range creates a presumption of obviousness that can be rebutted with evidence that the given parameter was not recognized as result-effective." *Id.* (emphasis omitted). "A routine optimization analysis generally requires consideration whether a [POSA] would . . . bridge any gaps in the prior art to arrive at a claimed invention." *Id.* at 1348.

"When an applicant seeks to overcome a prima facie case of obviousness by showing improved performance in a range that is within or overlaps with a range disclosed in the prior art, the applicant must show that the [claimed] range is critical, generally by showing that the claimed range achieves unexpected results relative to the prior art range." *In re Patel*, 566 F. App'x 1005, 1011 (Fed. Cir. 2014).

In assessing obviousness, the trier of fact must consider: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) evidence of relevant secondary considerations of non-obviousness. *W. Union Co. v. MoneyGram Payment Sys. Inc.*, 626 F.3d 1361, 1369 (Fed. Cir. 2010) (*citing Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

ii.    **Secondary Considerations**

Secondary considerations of non-obviousness "do not necessarily control the obviousness conclusion." *Pfizer*, 480 F.3d at 1372; *see also Graham*, 383 U.S. at 17, 36; *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997). Where there is a strong case of obviousness, it cannot be overcome by secondary considerations. *See*, *e.g., Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008). For secondary considerations of non-obviousness to be accorded substantial weight, "a nexus must exist 'between the evidence and the merits of the claimed invention.'" *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1330 (Fed. Cir. 2017) (*quoting*

*Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)); *see also Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1126 (Fed. Cir. 2015) (holding secondary considerations not commensurate in scope with the claimed invention could not overcome strong prima facie case of obviousness). "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *Novartis AG*, 853 F.3d at 1330 (emphasis omitted) (*quoting In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011)).

Secondary considerations of nonobviousness include commercial success, long felt but unsolved needs, failure of others, copying, unexpected results, industry acclaim, and skepticism of others. *Aventis Pharm. S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 344 (D. Del. 2010).

### (A)    Commercial success

Commercial success alone is insufficient to demonstrate nonobvious; the patentee must demonstrate nexus between commercial success and the claimed invention. As the Federal Circuit has noted, its "case law clearly establishes that the patentee must establish a nexus between the evidence of commercial success and the patented invention." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary is only significant if there is a nexus between the claimed invention and the commercial success."); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (holding that the proponent must offer proof "that the sales were a direct result of the unique characteristics of the claimed invention") (emphasis added); *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("For objective [evidence of secondary considerations] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." (emphasis added)).

"The commercial success of a product is relevant to the non-obviousness of a claim only insofar as the success of the product is due to the claimed invention." *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) (emphasis added). As a result, in order to tie the commercial success of a product to the claimed invention, the patentee must show that "[its] marketed product embodies the claimed features, and is coextensive with them." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006) (citation omitted).

"[I]f the commercial success is due to an unclaimed feature of the [product], the commercial success is irrelevant." *Ormco Corp.*, 463 F.3d at 1312. Likewise, "if the feature that creates the commercial success was known in the prior art, the [commercial] success is not pertinent." *Id.*; *see also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) ("If commercial success is due to an element in the prior art, no nexus exists.").

To establish commercial success, the patentee must show "that the driving force behind the product sales was a direct result of the unique characteristics of the claimed inventions," as opposed to other market forces, the patentee's market share, patentee's wrongful or improper conduct, or the patentee's marketing efforts. *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1331 (Fed. Cir. 2018); *see also Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) (evidence of commercial success carried little weight where "much of [patentee's] commercial success was due to [its] pre-existing market share in the stacker market, which . . . gave it a 'huge advantage' in selling other products"); *In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008) (finding no nexus between alleged commercial success and claimed invention where patentee presented no evidence that "the driving force behind th[e] sales was the claimed combination," and not "the increasing popularity" of ingredient "or the effectiveness of the marketing efforts employed").

27

Establishing commercial success requires more than just sales data. The Federal Circuit has affirmed a finding of obviousness, notwithstanding the district court's acknowledgement that the invention was "met with overwhelming commercial success," where (1) evidence of that commercial success consists solely of the number of units sold, and (2) there is no evidence of market share, of growth in market share, of replacing earlier units sold by others or of dollar amounts, or evidence of a nexus between sales and the merits of the invention. *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150 (Fed. Cir. 1983).

Likewise, "an inference of nonobviousness is weakened" where "an earlier patent precludes the market entry of generic products and the patentee attributes commercial success to a later patent on the product." *Senju Pharm. Co. v. Apotex Inc.*, 717 F. Supp. 2d 404, 426 (D. Del. 2010), aff'd, 485 F. App'x 433 (Fed. Cir. 2012); *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1377 (Fed. Cir. 2005) (finding that "the inference of non-obviousness of weekly-dosing, from evidence of commercial success, is weak" where "market entry by others was precluded" by (1) the existence of another patent covering administration of alendronate and (2) patentee's exclusive statutory right, in conjunction with FDA marketing approvals, to offer patented drug at any dosage for the next five years).

### (B)    Long felt but unsolved need

The alleged long-felt need must be recognized in the art. The patentee bears burden to come forward with evidence demonstrating an "articulated identified problem and evidence of efforts to solve that problem." *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993) (emphasis added). Patentee cannot merely point to drawbacks in the art; it must "show that these drawbacks constituted a long-felt, unmet need." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009); *see also Santarus, Inc. v. Par Pharm., Inc.*, 720 F. Supp. 2d 427, 455 (D. Del 2010) (evidence of long-felt need "not persuasive" where patentee "cites

no evidence indicating that these needs were 'long-felt' or considered particularly significant among skilled artisans at the time of invention in light of then-existing prior art," and makes no assertion "that others had tried and failed to come up with formulations that addressed these needs"), *rev'd in part on other grounds*, 694 F.3d 1344 (Fed. Cir. 2012).

Passage of time is generally insufficient to show existence of a long-felt need. *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("Absent a showing of long-felt need or the failure of others, the mere passage of time without the claimed invention is not evidence of nonobviousness.").

Further, for the alleged long-felt need to serve as a secondary consideration of nonobviousness, the alleged long-felt need must be met by the patented invention. *See Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) (no long-felt need demonstrating nonobviousness where patentee "fails to show that these drawbacks constituted a long-felt, unmet need alleviated by the patent") (emphasis added). In other words, satisfaction of the long-felt need must result from the claimed invention. *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) ("It may well be that the lattice board solved all these problems and satisfied a long felt need. . . . But we are constrained, as was the jury, to consider whether the claimed invention satisfied a long felt need, or solved problems where others had failed. Because the lattice construction of Sjolund's tanner board is not part of his claimed invention, the advantages ascribed to the lattice construction are irrelevant in terms of the obviousness analysis.") (emphasis in original); *see also Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) ("While the evidence shows that the overall system drew praise as a solution to a felt need, there was no evidence that the success . . . was attributable to the substitution of a multiplexer for a bus, which was the only material difference between Hesser and the patented invention."). In other words,

where the patentee points to disadvantages or problems that the prior art overcame, the patentee's invention cannot be said to have met the long-felt need. *See Asyst Techs.*, 544 F.3d at 1316 ("[T]he evidence to which Asyst points relates only to the disadvantages of using static identification systems, such as bar codes, to identify workpieces in the process of fabrication, a problem that was overcome by Hesser's disclosure. . . .").

"Bare assertion" that a patented invention meets a long-felt need is insufficient to support a finding that the challenged patent met a long-felt need. *Perfect Web*, 587 F.3d at 1333 ("[Patentee's expert] made the bare assertion that the patent provided 'improved efficiency,' [ ] but cited no supporting data to show, for example, that the invention actually reduced marketing costs, time, or the number of consumers who opt out.").

As with the other secondary considerations, patentee must show nexus "between the merits of the claimed invention and evidence of [long-felt need] . . . in order for the evidence to be given substantial weight in an obviousness decision." *Cubist Pharm., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 672 (D. Del. 2014), aff'd, 805 F.3d 1112 (Fed. Cir. 2015) (citation omitted). "In other words, the secondary considerations must be commensurate in scope—'coextensive' with the claimed features of the invention." *Id*. at 666 (citation omitted). Thus, failure to demonstrate the existence of the alleged long-felt need or that the scope of the claims are commensurate with that alleged need necessarily precludes a finding of nexus. *Cubist Pharm.*, 75 F. Supp. 3d at 672 (finding no nexus between alleged long-felt need and novel features of the claimed invention where "the claims are not truly commensurate with [the] need cited" and where patentee "appears to take as an established fact that a commercially viable method of producing daptomycin was long sought in the industry").

Minimal differences between the claimed invention and the prior art weighs against finding that the alleged long-felt need was unsolved as of the filing date of the asserted patent. *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304–05 (Fed. Cir. 2010) ("Where the differences between the prior art and the claimed invention are as minimal as they are here, however, it cannot be said that any long-felt need was unsolved.").

"If prior art products were effective for the purpose of the claimed invention, there is no long-felt need." *AstraZeneca LP v. Breath Ltd.*, 88 F. Supp. 3d 326, 387 (D.N.J.), aff'd, 603 F. App'x 999 (Fed. Cir. 2015); *see also Aventis Pharma SA v. Hospira, Inc.*, 743 F. Supp. 2d 305, 344–45 (D. Del. 2010) (discounting evidence of long-felt need where "at least two prior art references disclose Cremophor-free taxane formulations"); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996) (holding district court did not err in discounting "[t]he assertion of 'long-felt need' . . . because the [patented] invention was similar to the teachings of [the primary prior art reference]").

Prior art patents can be used to show that any alleged long-felt need had already been met prior to the asserted patent's filing date. *See, e.g., Southwire Co. v. Cerro Wire LLC*, 870 F.3d 1306, 1310 (Fed. Cir. 2017) (affirming PTAB finding that any long-felt need had already been met by prior art patent); *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 838 (Fed. Cir. 2015) (affirming PTAB finding that any long felt need had already been met by prior art patent and prior art publication).

The relevant date is the filing date of the patent covering the invention alleged to have met the long-felt need. *Perfect Web Techs., Inc. v. Infousa, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) ("Evidence that an invention satisfied a long-felt and unmet need that existed on the patent's filing date is a secondary consideration of nonobviousness."); *Procter & Gamble Co. v. Teva Pharm.*

31

*USA, Inc.*, 566 F.3d 989, 998 (Fed. Cir. 2009) ("[W]e look to the filing date of the challenged invention to assess the presence of a long-felt and unmet need.").

A commercial product is not necessary to show that the prior art met any alleged long-felt need. *See, e.g., Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1330–31 (Fed. Cir. 2017) (finding that patentee's multiple sclerosis treatment did not satisfy long-felt need where there were treatments "disclosed in the prior art literature before the '283 patent's priority date," even though "none of those drugs were available to the market until after the '283 patent was filed" (emphasis added)); *B.F. Goodrich*, 72 F.3d at 1583 (agreeing with district court and discounting patentee's long-felt need argument where patentee's invention "was similar to the teachings of" a prior art publication); *Copaxone Consol*. Cases, 2017 WL 401943, at *23 (citing two scientific prior art publications as evidence that "there were solutions in the prior art" as of the priority date of the challenged patents); *see also Perfect Web Techs., Inc. v. Infousa, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) ("Evidence that an invention satisfied a long-felt and unmet need that existed on the patent's filing date is a secondary consideration of nonobviousness.").

There is no nexus supporting secondary considerations of non-obviousness where the prior art discloses drug formulations meeting the long-felt need, even though none of those formulations were available to the market until after the asserted patent was filed. *See, e.g., Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1330–31 (Fed. Cir. 2017) ("The fact that [patentee's drug] was the first to receive FDA approval for commercial marketing does not overcome the fact that solid multiple sclerosis compositions were already known," even where "none of those drugs were available to the market until after the [asserted] patent was filed.").

## (C)     Failure of others

"Objective considerations such as failure by others to solve the problem . . . may often be the most probative and cogent evidence of nonobviousness." *Advanced Display Sys., Inc. v. Kent*

*State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000). "Litigation argument that an innovation is really quite ordinary carries diminished weight when offered by those who had tried and failed to solve the same problem, and then promptly adopted the solution that they are now denigrating." *Heidelberger Druckmaschinen AG v. Hantscho Commercial Products, Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994). "The purpose of evidence of failure of others is to show 'indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan.'" *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig*, 676 F.3d 1063, 1081-83 (Fed. Cir. 2012) (citation omitted),

### (D)    Copying

Courts have long recognized that where an accused infringer copies the "claimed invention, rather than one in the public domain, [it] is indicative of nonobviousness." *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988) (citation omitted); *see also Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000) ("Another indicia of non-obviousness of a product is the acclamations it receives when it is released, and the copying that occurs."). Where there is an allegation of copying a competitor's product, such "copying requires evidence of efforts to replicate a specific product, and the replicated product must be shown to be an embodiment of the claims." *Alarm.com, Inc. v. SecureNet Techs. LLC*, 2019 WL 133228, at *4 (D. Del. Jan. 8, 2019) (citing *Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) and *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)).

### (E)    Unexpected results

"To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention." *Bristol-Myers Squibb Co. v. Teva Pharm., USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014); *see also*

*Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006) ("This court has held that 'when unexpected results are used as evidence of nonobviousness, the results must be shown to be unexpected compared with the closest prior art.'" (citation omitted)). "A comparison of the claimed invention with the disclosure of each cited reference to determine the number of claim limitations in common with each reference, bearing in mind the relative importance of particular limitations, will usually yield the closest single prior art reference." *In re Merchant*, 575 F.2d 865, 868 (CCPA 1978).

"Unexpected properties, however, do not necessarily guarantee that a new compound is nonobvious." *Bristol-Myers Squibb*, 752 F.3d at 977. "While a "marked superiority" in an expected property may be enough in some circumstances to render a compound patentable, a 'mere difference in degree' is insufficient." *Id*. (citations omitted). Further, "'differences in degree' of a known and expected property are not as persuasive in rebutting obviousness as differences in 'kind'—i.e., a new property dissimilar to the known property." *Id*. "Results which differ by percentages are differences in degree rather than kind, where the modification of the percentage is within the capabilities of one skilled in the art at the time." *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013). "[W]here an unexpected increase in efficacy is measured by a small percentage [] and the evidence indicates that skilled artisans were capable of adjusting the percentage, the result constitutes a difference in degree, not kind." *Id*. "So too, where an increase by a percentage is expected but not found, that result is also likely only a difference in degree." *Id*.

Thus, it is important to "evaluate the significance and 'kind' of expected results along with the unexpected results." *Id*.; s*ee also Hoffmann–La Roche Inc. v. Apotex Inc.*, 748 F.3d 1326, 1333–34 (Fed. Cir. 2014) ("The evidence of superior efficacy does nothing to undercut the showing that there was a reasonable expectation of success with the 150 mg monthly dose, even if

the level of success may have turned out to be somewhat greater than would have been expected."); *In re Eli Lilly & Co.*, 902 F.2d 943, 948 (Fed. Cir. 1990) (finding claims obvious when "[patentee] has not shown that a significant aspect of his claimed invention is unexpected in light of the prior art"). "[I]n order to properly evaluate whether a superior property was unexpected," the Court must consider "what properties were expected." Pfizer, 480 F.3d at 1371; *see also In re Mageli*, 470 F.2d 1380, 1384–85 (C.C.P.A 1973) ("Unobviousness, however, cannot be predicated on superiority alone. Obviousness depends on what those skilled in the art would expect." (emphasis in original)); *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 348 (D. Del. 2010) ("To show unexpected benefits, the patent owner must first show 'what properties were expected.'"(citation omitted)), aff'd, 675 F.3d 1324 (Fed. Cir. 2012).

The critical question is further not only the unexpectedness of the results, but whether those results are unexpectedly superior to the results observed before. *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995) ("One way for a patent applicant to rebut a prima facie case of obviousness is to make a showing of 'unexpected results,' i.e., to show that the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected."); *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 937 (Fed. Cir. 2019) ("In considering unexpected results, courts ask whether 'the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.'") (*quoting In re Soni*, 54 F.3d at 750).

The "unexpected results must be commensurate in scope with the claims." *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1308 (Fed. Cir. 2011). This means that the evidence cannot be "plainly disproportionate to the scope of the claim." *Id.*; *see, e.g., In re Harris*, 409 F.3d 1339, 1344 (Fed. Cir. 2005) (affirming Board's finding that showing of

unexpected results was not commensurate in scope with the claims where "the elemental composition of CMSX®-486 [the applicant's commercial embodiment relied on to show unexpected results] is at or near the midpoint of the claimed range"); *Peterson*, 315 F.3d at 1331 (affirming obviousness finding where patentee claimed an alloy with 1–3% rhenium, but presented unexpected results only for 2% rhenium, and evidence suggested that 3% rhenium possessed inferior properties); *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983) (concluding that unexpected results "limited to sodium only" were not commensurate in scope with claims to a catalyst having "an alkali metal"); *In re Greenfield*, 571 F.2d 1185, 1189 (C.C.P.A. 1978) (affirming obviousness finding for a genus containing "several hundred compounds" where unexpected results were proved for "only one" such compound).

In addition, unexpected results must be achieved by the claimed invention. As with the other secondary indicia of nonobviousness, patentee must demonstrate nexus between the alleged unexpected results and the claimed invention. *See In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) ("For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." (citation omitted)); *see also In re Woodruff*, 919 F.2d 1575, 1578 (Fed. Cir. 1990) ("The law is replete with cases in which the difference between the claimed invention and the prior art is some range or other variable within the claims.... [and] in such a situation, the applicant must show that the particular range is critical, generally by showing that the claimed range achieves unexpected results relative to the prior art range." (citations omitted)). In other words, "[w]here the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *Id*.; *see also Hoffmann–La Roche*, 748 F.3d at 1334 (finding that "improved efficacy does not rebut the

36

strong showing that the prior art disclosed monthly dosing and that there was a reason to set that dose at 150 mg").

"[I]t is well settled that unexpected results must be established by factual evidence. Mere argument or conclusory statements in the specification does not suffice." *In re Soni*, 54 F.3d at 750 (alteration in original) (internal quotation marks and citations omitted); *see also In re Inland Steel Co.*, 265 F.3d 1354, 1366 (Fed. Cir. 2001) ("An examination for unexpected results 'is a factual, evidentiary inquiry'"). Evidence of unexpected results must include a comparison of the invention to the closest prior art. *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984) ("When an article is said to achieve unexpected (i.e. superior) results, those results must logically be shown as superior compared to the results achieved with other articles."). Evidence of unexpected results must be based on the knowledge of one of ordinary skill in the art at the time of the applicant's invention. *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997) ("[T]he fact that one group of inventors 15 years earlier may have made an assumption that was contrary to Geilser's test results does not prove that Geisler's results would be regarded as unexpected by one of ordinary skill in the art at the time of Geisler's application.").

For there to be a showing of "unexpected results," the results must be truly unexpected and not the product of the desire of a person of ordinary skill to achieve the optimum value of performance for a known range. *See In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003) ("The normal desire of scientists or artisans to improve upon what is already generally known provides the motivation to determine where in a disclosed set of percentage ranges is the optimum combination of percentages. We therefore conclude that a prior art reference that discloses a range encompassing a somewhat narrower claimed range is sufficient to establish a prima facie case of obviousness."); *see also In re Boesch*, 617 F.2d 272, 276 ("[D]iscovery of an optimum value of a

result effective variable in a known process is ordinarily within the skill of the art." (citations omitted)).

For unexpected results by a claimed range, the claimed range must "produce a new and unexpected result which is different in kind and not merely in degree from results of the prior art." *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996). "[I]t is not inventive to discover the optimum or workable ranges by routine experimentation." *In re Geisler*, 116 F.3d 1465, 1470 (Fed. Cir. 1997) (citation omitted).

Superior performance resulting from the substitution of a known equivalent is generally insufficient to demonstrate nonobviousness without a showing that the superior performance was unexpected. *See, e.g., Hotchkiss v. Greenwood*, 52 U.S. 248, 266–67 (1850) (rejecting patentee's argument that claimed invention involving clay knob "produced a new and peculiar effect" where "the peculiar effect . . . is not distinguishable from that which would exist in the case of the wood knob, or one of bone or ivory, or of other materials"); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1371 (Fed. Cir. 2007) ("[A]ny superior property must be unexpected to be considered as evidence of non-obviousness." (internal citations omitted)). Further, the superior result must rise to a significant enough level where it can be characterized as being "a new and unexpected result which is different in kind and not merely in degree from the results of the prior art." *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996) (citation omitted).

"[I]n order to properly evaluate whether a superior property was unexpected," courts must "consider[ ] what properties were expected." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1371 (Fed. Cir. 2007). Therefore, there can be no showing of unexpected results where patentee provides no evidence of what a POSA would have expected. *Id.* ("Here, Pfizer's evidence must fail because the record is devoid of any evidence of what the skilled artisan would have expected. We will not

simply presume that the skilled artisan would have expected that amlodipine besylate would have the same characteristics as amlodipine maleate, because as Pfizer asserts, its properties are not absolutely predictable.").

### (F)    Industry acclaim

Acclaim in the industry is another secondary consideration that is relevant to obviousness. *See Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006). "Praise from a competitor tends to indicate that the invention was not obvious." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1370 (Fed. Cir. 2012) (*quoting Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1092 (Fed. Cir. 1987) (alteration in original) (internal quotation omitted)). To support a finding of nonobviousness, "[i]ndustry praise must . . . be linked to the patented invention." *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010). A statement intended to generate interest in a product also is not evidence of industry praise. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484 n.3 (Fed. Cir. 1997).

### (G)    Skepticism of others

Expressions of skepticism by those in the art are "relevant and persuasive" evidence of nonobviousness. *See Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 885 (Fed. Cir. 1998). The secondary consideration of skepticism by others typically refers to situations where the alleged invention has already been conceived, and others are skeptical about whether it will work. *See Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549, 1556 (Fed. Cir. 1987).

Evidence of the inventor's own skepticism may not be sufficient to establish skepticism. *See AstraZeneca LP v. Breath Ltd.*, 542 Fed.Appx. 971, 980 (Fed. Cir. 2013) ("The district court found, and we agree, that this simply is evidence of corporate prudence based on AstraZeneca's own misgivings rather than industry skepticism."). Further, "lack of enthusiasm by a few is not equivalent to skepticism or failure of others such that the combination would not have been

obvious to a PHOSITA." *BTG Int'l Ltd. v. Amneal Pharm. LLC*, 923 F.3d 1063, 1076 (Fed. Cir. 2019).

### (H)    Simultaneous Invention

Evidence of simultaneous invention by another close to the priority date is a recognized secondary indicia in favor of obviousness. See *Ecolochem v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000) (holding that as a secondary consideration, simultaneous invention is relevant when it occurs within a short space of time from the date of invention, and "is strong evidence of what constitutes the level of ordinary skill in the art.").

### 1.    Obviousness-type Double Patenting

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain *a patent*." 35 U.S.C. § 101(emphasis added). "The doctrine of double patenting is intended to prevent a patentee from obtaining a timewise extension of [a] patent for the same invention or an obvious modification thereof." *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384 (Fed. Cir. 2010) (*quoting In re Basell Poliolefine Italia S.P.A.*, 547 F.3d 1371, 1375 (Fed. Cir. 2008)). Said proscription "takes two forms: (1) statutory double patenting, which stems from 35 U.S.C. § 101 and prohibits a later patent from covering the same invention . . . and (2) obviousness-type double patenting, which is a judicially created doctrine that prevents a later patent from covering a slight variation of an earlier patented invention." *Id.* (*citing Perricone v. Medicis Pharm. Corp.*, 432 F.3d, 1368, 1372-73 (Fed. Cir. 2005)).

The doctrine of obviousness-type double patenting is intended to "prevent the extension of the term of a patent . . . by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1376 (Fed. Cir. 2012) (*quoting In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985)). "A

later patent claim is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim." *Id*. (*quoting Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001)).

### 2. Derivation

"A claim that a patentee derived an invention addresses originality." *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). "Derivation involves the claim that the adverse party did not invent the subject matter of the count because that party derived the invention from another." *Cooper v. Goldfarb*, 154 F.3d 1321, 1332 (Fed. Cir. 1998) (*citing Price*, 988 F.2d at 1190 (Fed. Cir. 1993)). "Derivation requires a showing of both (1) prior conception of the invention by another and (2) communication of that conception to the patentee that is sufficient to enable him to construct and successfully operate the invention." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1376 (Fed. Cir. 2004) (internal quotation and citation omitted).

"Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. . . . Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "[T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Id.* "Also relevant is whether an alleged inventor contemplated the use of routine skill or methods at an asserted conception date, or used such routine skill or methods during subsequent, successful experimentation conducted by

the alleged inventor." *Regents of Univ. of Cal. v. Broad Institute, Inc.*, 136 F.4th 1367, 1379 (Fed. Cir. 2025).

### 3. Indefiniteness

Patent claims must "particularly point[] out and distinctly claim[] the subject matter" regarded as the invention. 35 U.S.C. § 112. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). This is because "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Id.* at 909 (*quoting Markman*, 517 U.S. at 373). Consequently, "the claims, when read in light of the specification and the prosecution history, must provide objective boundaries." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

"The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779–80 (Fed. Cir. 2002) (citation omitted). "A claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed Cir. 2015); *Pac. Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.*, 816 F. App'x 454, 459 (Fed. Cir. 2020) (finding claim indefinite where the patent "fail[ed] to provide guidance to a skilled artisan for how to measure the newly coined characteristic . . . with reasonable certainty."). "Even if a claim term's definition can be reduced to words, the claim is still indefinite

if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

"[C]laims [a]re indefinite where there were multiple methods of measuring a claimed parameter 'leading to different results without guidance in the patent or the prosecution history as to which method should be used.'" *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542 (Fed. Cir. 2020) (quoting *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 634 (Fed. Cir. 2015)); *see also Pac. Coast Bldg.*, 816 F. App'x at 459 (affirming indefiniteness where "at least two methods of converting the measurement between board thicknesses that produce significantly differing results"). "Under our case law, then, a claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different outcomes for the claim's scope such that a product or method may infringe the claim under one method but not infringe when employing another method." *Ball Metal*, 838 F. App'x at 542.

## 4.    Lack of Written Description

The written description requirement of 35 U.S.C. § 112 provides that a patent specification shall contain a "written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out the invention." 35 U.S.C. § 112.

The written description requirement is a question of fact. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). It "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" to

43

determine whether the specification "describe[s] an invention understandable to that skilled artisan and show[s] that the inventor actually invented the invention claimed" as of the filing date. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318-19 (Fed. Cir. 2011) (*quoting Ariad Pharms.*, 598 F.3d at 1351). A patent fails the statutory written description requirement when the specification does not disclose what the claims are construed to cover. *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1352-55 (Fed. Cir. 2011). "[T]he written description requirement . . . ensure[s] that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution . . . as described in the patent . . ." *Katz*, 639 F.3d at 1319 (internal quotations omitted); s*ee also Natera, Inc. v. CareDx, Inc.*, No. CV 20-38-CFC-CJB, 2025 WL 592760, at *3 (D. Del. Feb. 24, 2025) ("While the written description requirement does not require that the specification recite the claimed invention in any particular way, pointing to an 'amalgam of disclosures' from which an artisan could have created the claimed invention does not satisfy this requirement. . . . Instead, the specification must present each claim as an 'integrated whole. . . . A patent owner cannot show written description support by picking and choosing claim elements from different embodiments that are never linked together in the specification.") (cleaned up) (*quoting Flash-Control, LLC v. Intel Corp.*, 2021 WL 2944592, at *3-4 (Fed. Cir. July 14, 2021).

### 5.    Lack of Enablement

A patent must describe the alleged invention and "the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112. "Enablement is a question of law based on underlying factual findings." *Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*, 928 F.3d 1340, 1345 (Fed. Cir. 2019). The use of a trade secret is not evidence of enablement. *Union*

*Pacific Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690–91 (Fed. Cir. 2001); *Convolve, Inc. v. Compaq Comput. Corp.*, 2013 WL 3285331, at *18–*19 (Fed. Cir. July 1, 2013).

To satisfy the enablement requirement, a patent's written description must "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (citations omitted); *Amgen Inc. v. Sanofi*, 598 U.S. 594, 610, (2023) ("[T]he specification must enable the full scope of the invention as defined by its claims."); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *see Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008) ("Because the asserted claims are broad enough to cover both movies and video games, the patents must enable both embodiments.").

"'It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement.' Although the knowledge of one skilled in the art is indeed relevant, the novel aspect of an invention must be enabled in the patent.'" *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) (*quoting Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)). "[T]he artisan's knowledge of the prior art and routine experiment can often fill gaps…. But this gap-filling … cannot substitute for a basic enabling disclosure." *Bayer Healthcare LLC v. Baxalta Inc.*, 407 F.Supp.3d 462, 472 (D. Del. 2019) (quoting A*K Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)). Claims are not enabled where skilled artisans would have to "do essentially the same amount of work as the inventors" to practice the full scope of the claims. *MorphoSys AG v. Janssen Biotech, Inc.*, 358 F. Supp. 3d 354, 372 (D. Del. 2019). Courts may apply the *Wands*-factors to determine whether "undue experimentation" would be necessary, namely "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the

presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737.

## V.    DAMAGES

### A.    Issues of Law[4]

18.    Whether Plaintiffs are foreclosed from recovering damages for sales of the Accused Product to the U.S. Government pursuant to Contract No. W911QY20C0100 under 28 U.S.C. § 1498(a).

19.    To the extent Moderna is found to infringe and the Asserted Patents are not found invalid, whether Plaintiffs have proven by a preponderance of the evidence the amount of damages to which they claim to be entitled pursuant to 35 U.S.C. § 284.

20.    To the extent Moderna is found to infringe and the Asserted Patents are not found invalid, whether Plaintiffs have proven by a preponderance of the evidence that this case is exceptional under 35 U.S.C. § 285 in order to recover attorneys' fees and costs.

21.    In the event one or more of the Asserted Patents is found not infringed by Moderna or invalid, whether Moderna has proven by a preponderance of the evidence that this case is exceptional under 35 U.S.C. § 285, such that Moderna is entitled to its attorneys' fees and costs.

22.    To the extent Moderna is found to infringe and the Asserted Patents are not found invalid, whether Plaintiffs can demonstrate that they are entitled to pre-judgement and/or post-judgment interest, and, if so, what amount of prejudgment and/or post-judgement interest Plaintiffs are entitled to recover.

---

[4]    Moderna's position is that it has not willfully infringed any of the Asserted Patents. This is a question of fact as explained above. To the extent Moderna is found to willfully infringe, the court has discretion to award enhanced damages. The relevant standards for awarding enhanced damages is provided in Section V.B.4.

**B.       Statement of Authorities**

**1.       Government Sales under 28 U.S.C. § 1498(a)**

"Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture." 28 U.S.C. § 1498(a). "For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." *Id*. Section 1498 precludes actions against government contractors for patent infringement arising from such authorized or consented use or manufacture, channeling all such claims to the Court of Federal Claims and limiting the remedy to monetary compensation from the United States. *Id*. Interpretation of § 1498 must consider "Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement. The coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement." *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) (footnotes omitted); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1208 (Fed. Cir. 2010) (patentee's damages expert "incorrectly considered sales to the government" because "a patentee can recover damages only from the government for patented 'use or manufacture for the United States.'").

"[S]ection 1498(a) finds it[s] roots in the takings law," *Boeing Co. v. United States*, 86 Fed. Cl. 303, 315 (2009); *see also Tektronix, Inc. v. United States*, 552 F.2d 343, 346 (Ct. Cl.), *opinion modified on denial of reh'g,* 557 F.2d 265 (Ct. Cl. 1977) (similar).  And in the takings context, it

is well established that "[i]t is not fair that the government be required to pay the enhanced price which its demand alone has created. That enhancement reflects elements of the value that was created by the urgency of its need for the article. It does not reflect what 'a willing buyer would pay in cash to a willing seller,' in a fair market. It represents what can be exacted from the government whose demands in the emergency have created a sellers' market. In this situation, as in the case of land included in a proposed project of the government, the enhanced value reflects speculation as to what the government can be compelled to pay. That is a hold-up value, not a fair market value." *United States v. Cors*, 337 U.S. 325, 333–34 (1949) (*quoting United States v. Miller*, 317 U.S. 369, 374 (1943)); *see also Carlstrom v. United States*, 275 F.2d 802, 808 (9th Cir. 1960) (affirming the district court's refusal to permit damages evidence that "arose out of government necessity occasioned by war, and did not reflect the true market value"); *Boeing*, 86 Fed. Cl. at 315 (similar, in § 1498 case). In the context of § 1498, the patentee should be placed in "no better position," for damages purposes, than if sales had been made to a "private buyer." *Tektronix, Inc. v. United States*, 552 F.2d 343, 347 (Ct. Cl.), *opinion modified on denial of reh'g*, 557 F.2d 265 (Ct. Cl. 1977); *see also id.* ("It is equally a fundamental component of fairness to avoid excessive compensation to the condemnee as it is to be sure not to pay him too little.").

## 2.    Safe Harbor under 35 U.S.C. § 271(e)

"It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs. . . ." 35 U.S.C. § 271(e). "Though the contours of this provision are not exact in every respect, the statutory text makes clear that it provides a wide berth for the use of patented drugs in activities related to the federal regulatory process." *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 202 (2005). This "exemption from infringement extends to all

48

uses of patented inventions that are reasonably related to the development and submission of any information under the FDCA." *Id.* (*citing Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 665-69 (1990) (declining to limit § 271(e)(1)'s exemption from infringement to submissions under particular statutory provisions that regulate drugs)).

### 3.    Reasonable Royalty

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Two ways to determine a reasonable royalty are the analytical method and the hypothetical negotiation approach.  However, "[t]he methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." *TWM Mf. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986) (*citing Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed.Cir.1985)). Stated differently, "[s]ection 284 does not mandate how the district court must compute that figure, only that the figure compensate for the infringement." *Id*. at 899 (*citing Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)).

### a.    Hypothetical Negotiation

The hypothetical negotiation approach is the standard for determining a reasonable royalty. *Lucent Techs. Inc. v. Gateway Inc., et al*, 580 F.3d 1301 (Fed. Cir. 2009); *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). Reasonable royalty damages may be calculated by considering the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). One way to calculate a reasonable royalty is by using the fifteen factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 2004 WL 2213562,

at *2 (D. Del. Sept. 28, 2004). The *Georgia-Pacific* factors are not necessary, however, and a reasonable royalty should focus on tying the claimed invention's footprint in the marketplace to the damages calculation. *Energy Transp. Group, Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1357 (Fed. Cir. 2012); *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 31-32 (Fed. Cir. 2012); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1349-50 (Fed. Cir. 2018). "[A] reasonable royalty analysis requires a court to hypothesize, not to speculate." *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010). "At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention. Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the marketplace. Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *Id.* (internal citations omitted). A reasonable royalty must be calculated as of the date infringement began, but the Court may consider events and facts that occurred after the infringement began. *St. Clair*, 2004 WL 2213562, at *2*.

Section 1498 protects government contractors from infringement damages even before the execution of a contract with the government.  *TVI Energy*, 806 F.2d at 1060.  In considering compensation for a patentee whose patent has been used by the United States, "[i]t is equally a fundamental component of fairness to avoid excessive compensation to the condemnee as it is to be sure not to pay him too little." *Tektronix*, 552 F.2d at 347.  Accordingly, "what can be exacted from the government whose demands in the emergency have created a sellers' market" is not fair market compensation, because "the enhanced value reflects speculation as to what the government can be compelled to pay. That is a hold-up value, not a fair market value."  *Cors*, 337 U.S. at 333–34.

### i.    Comparable License Agreements

The Federal Circuit has "approved methodolog[ies] for valuing asserted patents based on comparable licenses." *Intel Corp. v. Future Link Sys.*, LLC, 2017 WL 2482881, at *2 (D. Del. June 1, 2017). "[T]he word 'comparable' means 'similar' rather than 'exactly the same.'" *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1344 (D. Del. 1994). "'Such a model begins with rates from comparable licenses and then accounts for differences in the technologies and economic circumstances of the contracting parties.'" *Intel*, 2017 WL 2482881, at *2 (citing *Commw. Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302-03 (Fed. Cir. 2015)). The degree of comparability between licenses is a factual issue. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *see also Idenix Pharms. LLC v. Gilead Sci., Inc.*, 2018 WL 922125, at *6 (D. Del. Feb. 16, 2018).

### ii.    Apportionment

Damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc*., 773 F.3d 1201, 1226 (Fed. Cir. 2014). "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Thus, damages calculations must be based not on the entire product, but instead on the "smallest salable patent-practicing unit." *Id.* This principle—called apportionment—is "the governing rule" "where multi-component products are involved." *Ericsson*, 773 F.3d at 1226. "Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature," the patentee is required "to estimate what portion of the value of that product is

attributable to the patented technology." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018) (*quoting Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

> b.    **Analytical Method/Approach (Comparable Profit Margin Method)**

A second method of determining reasonable royalty is the analytical approach, also called the analytical method and the comparable profit margin method. This approach "focuses on the infringer's projections of profit for the infringing product." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (2009) (*citing TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed.Cir.1986) (describing the analytical method as "subtract[ing] the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of infringing devices")*; see also* John Skenyon et al., *Patent Damages Law & Practice* § 3:4, at 3–9 to 3–10 (2008) (describing the analytical method as "calculating damages based on the infringer's own internal profit projections for the infringing item at the time the infringement began, and then apportioning the projected profits between the patent owner and the infringer").

> c.    **Non-Infringing Alternatives**

A patentee is not entitled to recover lost profits damages if it fails to establish that there are no acceptable non-infringing substitutes for the patented product. *See SmithKline Diagnostics*, 926 F.2d at 1165. A damages expert's analysis "must consider the impact of such alternate technologies on the market as a whole." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013). Non-infringing substitutes that were available during the infringement period "can preclude or limit lost profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *see also id.* at 1351 ("[A] rational would-be infringer is likely to offer an acceptable

noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether.").

The universe of non-infringing alternatives "is not limited . . . to substitute technologies." *Cardiac Pacemakers, Inc. v. St. Jude Med.*, Inc., 2002 WL 1801525, at *77 (S.D. Ind. July 5, 2002), aff'd in part and rev'd in part on other grounds, 381 F.3d 1371 (Fed. Cir. 2004). The Federal Circuit has held that a damages expert may "reconstruct" the "but for" market based on any theory supported by "reliable economic evidence." *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001). Noninfringing alternatives have been held to include not just alternative commercially acceptable products, but also available alternative technologies and actions, including actions an alleged infringer could have taken to either acquire or maintain a license to the asserted patent. *See, e.g. Cardiac Pacemakers*, 2002 WL 1801525, at *77 ("[T]he reasonable non-infringing alternative was not to close on the merger. . . . [a]ccordingly, the jury reasonably found that no lost profits had been proven."); *Schneider (Europe) AG v. SciMed Life Sys., Inc.*, 852 F. Supp. 813, 858 (D. Minn. 1994) ("A licensed product is an acceptable non-infringing alternative as of the time that it is licensed."), aff'd, 60 F.3d 839 (Fed. Cir. 1995); *Crystal Semiconductor*, 246 F.3d at 1355 ("This court has affirmed . . . a wide variety of reconstruction theories."). In particular, a non-infringing alternative may be a technology not on the market during infringement, so long as it was available to the infringer. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991).

Once a defendant posits a non-infringing alternative, the burden is on the patentee to prove that it is not acceptable. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).

Where there are multiple market players, the patentee may in some circumstances seek lost profits in reliance on an established market share in lieu of the absence of acceptable noninfringing

alternatives and, at the same time, meet the three other Panduit factors. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989). Market-share lost profits are not available, however, where the patentee cannot show its products would have made the infringing sales rather than the non-infringing alternatives on the market. *BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993); *Calico Brand, Inc. v. Ameritek Imports, Inc.*, 527 F. App'x 987, 997 (Fed. Cir. 2013). A patentee may not be able to recover lost profits using a market share approach where there are differences in price, product characteristics, or sales channels, or in an elastic market. *BIC*, 1 F.3d at 1219. "[I]f the realities of the market are that others would likely have captured sales made by the infringer, . . . it follows that the 'but for' test is not met." *SmithKline*, 926 F.2d at 1166.

### 4.    Enhanced Damages

Under certain circumstances where the defendant has engaged in reprehensible behavior or bad faith, a Court is permitted under 35 U.S.C. § 284 to punish the defendants by punitively increasing damages "up to three times the amount found or assessed." In *Halo*, the Supreme Court "held that Section 284 allows district courts to exercise their discretion in deciding whether to award enhanced damages, which 'are generally reserved for egregious cases of culpable behavior' beyond 'typical infringement.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1381 (Fed. Cir. 2016) (*quoting Halo*, 136 S. Ct. at 1932); *see also Halo*, 136 S. Ct. at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284"). "The district court has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted (up to the statutory limit of treble damages)." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016). Even "a finding of willfulness does not require an award of enhanced damages; it merely permits it." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc), *abrogated on other grounds, Halo*

*Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) (*citing* 35 U.S.C. § 284; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999)); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376-77 (Fed. Cir. 2010) (affirming denial of enhanced damages after a jury finding of willfulness); *Greatbatch Ltd. v. AVX Corp.*, No. CV 13-723-LPS, 2016 WL 7217625, at *6 (D. Del. Dec. 13, 2016) ("A finding of willfulness may be a necessary—but is not a sufficient—condition to permit the Court to exercise its discretion."). Enhanced damages represent a "'punitive' or 'vindictive' sanction." *Halo*, 136 S. Ct. at 1932. "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*.

### 5.    Attorneys Fees & Exceptional Cases

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated," to be determined at the district court's discretion under the totality of the circumstances based on a preponderance of the evidence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,134 S. Ct. 1749, 1756, 1758 (2014). "[A] district court may award minimal or no fees after considering the amount of success to the prevailing party." *SSL Servs. LLC v. Citrix Sys. Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014).

### 6.    Interest & Accounting

"Prejudgment interest is awarded to compensate for the delay in payment of the damages, and not to punish the infringer." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983). Although prejudgment interest "should ordinarily be awarded," the Court has discretion to limit, or deny entirely, prejudgment interest where appropriate. *Gen. Motors Corp. v. Devex*

*Corp*., 461 U.S. 648, 655-57 (1983). "For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Id*. at 657; *see also Crystal Semiconductor Corp*., 246 F.3d at 1362 ("[T]he district court acted within its discretion in denying Crystal prejudgment interest."). "[P]rejudgment interest can only be applied to the primary or actual damage portion and not to the punitive or enhanced portion." *Underwater Devices Inc. v. Morrison- Knudsen Co*., 717 F.2d 1380, 1389 (Fed. Cir. 1983), *overruled on other grounds by In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Lam*, 718 F.2d at 1066. The applicable interest rate is left to the discretion of the Court; however, in exercising its discretion, the Court "must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp*., 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *Gen. Motors*, 461 U.S. at 654).

"Postjudgment interest is awarded on monetary judgments recovered in all civil cases." *Transmatic, Inc. v. Gulton Indus., Inc*., 180 F.3d 1343, 1347 (Fed. Cir. 1999). Pursuant to 28 U.S.C. § 1961, interest shall be computed daily to the date of payment and shall be compounded annually.

The court may also order an accounting itemizing post-trial infringing uses.  S*ee Edwards Lifesciences AG v. CoreValve, Inc.*, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . [plaintiff's] request for an accounting of the number of CoreValve Revalving System devices made, used, sold, offered for sale, imported or supplied in or from the United States and corresponding revenue from March 16, 2010 through the date of the order accompanying this memorandum.").