# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Plaintiffs*,<br><br>v.<br><br>MODERNA, INC. and MODERNATX, INC.,<br><br>*Defendants*. | |
| MODERNA, INC. and MODERNATX, INC.,<br><br>*Counterclaim-Plaintiffs*,<br><br>v.<br><br>ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Counterclaim-Defendants*. | C.A. No. 22-252-JDW |

## [PROPOSED] PRELIMINARY AND FINAL JURY INSTRUCTIONS

## **Table of Contents**

I.  PRELIMINARY INSTRUCTIONS ..................................................................................3
    1.  INTRODUCTION; ROLE OF JURY.............................................................3
    2.  OVERVIEW OF THE CASE ........................................................................4
    3.  EVIDENCE....................................................................................................6
    4.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ......................................8
    5.  CREDIBILITY OF WITNESSES .................................................................9
    6.  DEPOSITION TESTIMONY ......................................................................10
    7.  EXPERT WITNESSES ...............................................................................11
    8.  STIPULATED FACTS ................................................................................12
    9.  INTERROGATORIES ................................................................................13
    10.  BURDENS OF PROOF ...............................................................................14
    11.  BIAS ............................................................................................................17
    12.  NOTE-TAKING BY JURORS ....................................................................18
    13.  BENCH CONFERENCES............................................................................20
    14.  UNITED STATES PATENTS; PATENT VIDEO........................................21
    15.  DESCRIPTION OF TRIAL PROCEEDINGS .............................................22
    16.  CONDUCT OF THE JURY .........................................................................24

II.  FINAL INSTRUCTIONS ..............................................................................................27
    1.  GENERAL INSTRUCTIONS .....................................................................27
        1.1  Introduction.....................................................................................27
        1.2  Duties as Jurors ..............................................................................28
        1.3  Evidence Defined ............................................................................29
        1.4  Direct and Circumstantial Evidence ...............................................30
        1.5  Consideration of Evidence ..............................................................31
        1.6  Credibility of Witnesses..................................................................32
        1.7  Number of Witnesses ......................................................................33
        1.8  Expert Witnesses.............................................................................34
        1.9  Prior Sworn Testimony ...................................................................35
        1.10  Exhibits ...........................................................................................36
        1.11  Stipulated Facts...............................................................................37
        1.12  Use of Notes....................................................................................38
        1.13  Burdens of Proof.............................................................................39
    2.  THE PARTIES AND SUMMARY OF PATENT ISSUES .................................42
        2.1  The Parties and their Contentions ...................................................42
        2.2  Summary of Patent Issues ...............................................................44
    3.  PATENT INSTRUCTIONS .........................................................................47
        3.1  Patent Claims Generally .................................................................47
        3.2  Effective Filing Date.......................................................................48
        3.3  Dependent and Independent Claims ................................................49
        3.4  Open Ended "Comprising" or "Consisting essentially of" Claims...........51
        3.5  Claim Construction ........................................................................52
    4.  INFRINGEMENT .........................................................................................54
        4.1  Infringement Generally ...................................................................54
        4.2  Direct Infringement.........................................................................58

|   |     |   |
|---|-----|---|
| 4.3 | Indirect Infringement Through Inducement | 62 |
| 4.4 | Indirect Infringement Through Contributory Infringement | 64 |
| 4.5 | Infringement by Supplying All or a Substantial Portion of the Components of a Patented Invention to Another Country | 66 |
| 4.6 | Infringement by Supplying Components Especially Made or Adapted for Use in the Patented Invention to Another Country | 67 |
| 4.7 | *[Plaintiffs' Proposal: Infringement by Offer for Sale* | 69 |
| 4.8 | Willful Infringement | 70 |

5.    INVALIDITY ............................................................................... 75
| 5.1 | Patent Invalidity Generally | 75 |
| 5.2 | Person of Ordinary Skill in the Art | 78 |
| 5.3 | Priority Date | 79 |
| 5.4 | Prior Art | 88 |
| 5.5 | Anticipation | 92 |
| 5.6 | Obviousness | 96 |
| 5.7 | Indefiniteness | 108 |
| 5.8 | Written Description | 114 |
| 5.9 | Enablement | 120 |

6.    DAMAGES .................................................................................. 126
| 6.1 | Patent Infringement Damages Generally | 126 |
| 6.2 | Reasonable Royalty Generally | 129 |
| 6.3 | *[Plaintiffs' Proposal:* Reasonable Royalty – The Analytical Method | 131 |
| 6.4 | Reasonable Royalty – Hypothetical Negotiation Method | 132 |
| 6.5 | Reasonable Royalty – [*Plaintiffs' Proposal: Hypothetical Negotiation Factors*] [Moderna's Proposal: Relevant Factors] | 135 |
| 6.6 | Reasonable Royalty – Apportionment | 138 |
| 6.7 | *[Plaintiffs' Proposal:* Reasonable Royalty – Non-Infringing Alternatives | 139 |

# I.    PRELIMINARY INSTRUCTIONS

## 1.    INTRODUCTION; ROLE OF JURY[1]

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I say or do during the trial as indicating what I think the facts are or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.[2]

---

[1]    *See* Third Circuit Model Jury Instructions (Sept. 2024) at 1.1; *Nippon Shinyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 682 (D. Del. Dec. 13, 2024).

[2]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (slightly modified).

## 2.    OVERVIEW OF THE CASE[3]

The Plaintiffs in this case are Genevant Sciences GmbH and Arbutus Biopharma Corporation.  I will refer to the Plaintiffs together as "Genevant."  The Defendants are Moderna Inc., and ModernaTx Inc.  I will refer to them together as "Moderna."

Genevant claims that Moderna infringes four United States patents : U.S. Patent No. 9,504,651, U.S. Patent No. 9,364,435, U.S. Patent No. 8,492,359, and U.S. Patent No. 11,141,378. These patents are often referred to by their last three digits.  You may hear the lawyers, witnesses in this case, and me refer to these patents as the '651 patent, the '435 patent, the '359 patent, and the '378 patent.

The lawyers and I may also refer to those patents collectively as the Asserted Patents. During the trial, the parties will offer testimony and evidence to familiarize you with the technology involved in the Asserted Patents.

Genevant claims that Moderna has infringed the following claims of the Asserted Patents: claims 7, 9, 11, 13, and 14 of the '651 Patent, claims 7 and 12 of the '359 Patent, claims 7, 8, and 16 of the '435 Patent, and claims 2, 7, 13, 18 and 19 of the '378 Patent.  The lawyers and I may refer to these patent claims collectively as the Asserted Claims.

You will hear more about what a patent claim is in just a moment.  Genevant accuses Moderna of infringing the Asserted Claims by making, using, selling, and/or offering to sell Moderna's COVID-19 vaccine.

Moderna denies that its accused COVID-19 vaccine infringes any of the Asserted Claims, denies that any infringement was willful, and contends that the Asserted Claims are invalid.  I will

---

[3]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.1 (modified to include parties,patents, claims, and accused product specific to this case); *see also Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

give you detailed instructions on the law at the end of the case and those instructions will control your deliberations and decisions.  But to help you follow the evidence, I will now provide you with instructions as to how to consider the evidence.

3.    **EVISDENCE**[4]

The evidence from which you are to find the facts consists of the following:

1.    The testimony of witnesses;

2.    Documents, charts, and graphics and other things received as exhibits;

3.    Any facts that are stipulated – that is, formally agreed to by the parties.

The following things are not evidence:

1.    Statements, arguments, and questions of the lawyers for the parties in the case;

2.    Charts and graphics not received as exhibits;

3.    Objections by lawyers;

4.    Any testimony I tell you to disregard; and

5.    Anything you may see or hear about this case outside the courtroom.

During this trial, you may be shown charts, animations, videos or other illustrations that Genevant or Moderna created to illustrate the testimony of witnesses. These are called demonstrative exhibits. They are not evidence, which means you will not have access to them when you are deliberating, so pay attention during the course of the trial. If your recollection of the evidence differs from the demonstrative exhibits you saw, rely on your recollection of the evidence.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

---

[4]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.5 (modified to include paragraph on demonstratives); *see also Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection is made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be stricken from the record and you will be instructed to disregard this evidence.  Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

#### 4.    DIRECT AND CIRCUMSTANTIAL EVIDENCE[5]

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched, heard or did.  If a witness testified that he saw it raining outside and you believed him, that would be direct evidence that it was raining.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining even though you didn't see it for yourself and no one told you it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

---

[5]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.6; *see also Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 5.    CREDIBILITY OF WITNESSES[6]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe you may consider a number of factors, including the following:

1.    The opportunity and ability of the witness to see or hear or know the things that the witness testifies to;

2.    The quality of the witness's understanding and memory;

3.    The witness's manner while testifying;

4.    Whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.    Whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.    How reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.    Any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify.  What is more important is how believable the witnesses were and how much weight you think their testimony deserves.

---

[6]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.6 (Unchanged).

6.      **DEPOSITION TESTIMONY**[7]

The parties might present certain prior sworn testimony through either a transcript or a video, including from a deposition.  A deposition is the sworn testimony of a witness taken before trial.  For all these proceedings, the witness was under oath and swore to tell the truth and lawyers for each party could ask questions.  A court reporter was present and recorded the questions and answers.

If played by video, the parties may have agreed to edit or cut the video to exclude irrelevant material.  You should not attribute any significance to the fact that deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

---

[7]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read) (modifications to order and phrasing); *see also MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (as read).

## 7.    EXPERT WITNESSES[8]

You will hear testimony containing opinions from several expert witnesses.In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.   Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.   You are free to accept or reject the testimony of experts, just as with any other witness.

---

[8]    *Nippon Shinyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 682 (D. Del. Dec. 13, 2024); *see also Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read) (similar) and *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (similar).

## 8.    STIPULATED FACTS[9]

The parties have stipulated certain facts are true and those admitted facts may be read to you during trial.  You must treat these admitted facts as having been proven for purposes of this case.

---

[9]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

### 9.    INTERROGATORIES[10]

You may hear answers as part of a response to written questions submitted by the other side called interrogatories.   The answers were given in writing under oath before trial. Interrogatory answers are entitled to the same consideration and to be judged in the same way as other evidence.

---

[10]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

## 10.    BURDENS OF PROOF[11]

In any legal action, facts must be proven by a required standard of evidence known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."  **[Moderna's Position: The standard of proof applies to questions of fact and not to questions of law.]**[12]

As I noted earlier, Genevant asserts that Moderna infringes the Asserted Patents and that it is entitled to damages for that infringement.  Genevant further contends that Moderna's infringement was willful.  The party asserting patent infringement has the burden of proving infringement by a preponderance of the evidence.  A preponderance of the evidence is evidence that, when considered in light of all the facts, leads you to believe that what the party claims is more likely true than not true.  To put it differently, if you were to put the parties' infringement evidence on opposite sides of a balance scale, Genevant's evidence would have to make the scale tip somewhat toward its side.  If the scale should remain equal or tip in favor of Moderna, then

---

[11]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read) (slightly modified); Federal Circuit Bar Association Model Patent Jury Instructions (burden of proof on invalidity); *see also MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (as read); *Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Aug. 16, 2022) (Apr. 6, 2022 Trial Tr.) (preliminary jury instructions slightly modified).

[12]    **Moderna's Position:** Plaintiffs do not dispute this is an accurate statement. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011) (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)); *id.* at 114 (Breyer, J., joined by Scalia and Alito, JJ., concurring) (same). A jury may not understand that their sole role is a fact finding one. Moderna believes this sentence clarifies that.

**Plaintiffs' Position:** Moderna's proposed instruction can only serve to confuse the jury about whether they are deciding legal issues. The jury will have already been told, in the very first instruction given, that the jury is the judge of the facts and the judge is the judge of the law.  That concept is explained again in Section 1.2 of the final instructions.  Moderna's proposal does not clarify that concept and instead risks confusing the jury about the appropriate burden of proof.

you must find for Moderna.  Genevant also contends that Moderna willfully infringes the Asserted Patents.  If you decide that Moderna infringed, then you will address the additional issue of whether any infringement was willful. Genevant bears the burden to prove willful infringement by a preponderance of the evidence.

If Genevant persuades you that Moderna has infringed at least one claim of at least one patent and Moderna has not persuaded you that that claim is invalid, then Genevant [*Plaintiffs' Proposal: is*][**Moderna's Proposal: may be**] entitled to damages in an amount to compensate it for that infringement.[13]  In that case, Genevant must also prove the amount of its damages, if any, by a preponderance of the evidence.  As with infringement, this evidentiary standard requires Genevant to prove that it is more likely true than not true that Genevant is entitled to the damages you award.

As I noted earlier, in addition to denying that it has infringed Genevant's patents, Moderna contends that the Asserted Claims are not valid.  The asserted patents are entitled to a presumption

---

[13]  **Moderna's Position:** Moderna objects to Plaintiffs' inclusion of this instruction, which is contradicted by the law, as "the patent damages statute, 35 U.S.C. § 284, 'does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts.'" *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299 (Fed. Cir. 2025) (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020)); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.").

**Plaintiffs' Position**:  Moderna's objection conflates the legal entitlement to damages with the need to prove the amount of damages.  It is black-letter law that a patent infringement plaintiff is entitled to no less "than a reasonable royalty."  35 U.S.C. § 284; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) ("When a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" (quoting 35 U.S.C. § 284)).  *Rex Medical* is not to the contrary; it confirms that Section 284 "requires the award of a reasonable royalty," but explains that there still must be evidence as to the amount of damages. 156 F.4th at 1299 (citation omitted).  That is precisely what the very next sentence of the instruction explains—that "Genevant must also prove the amount of its damages, if any, by a preponderance of the evidence."  These two sentences together are an accurate and neutral statement of the law.

of validity.  Accordingly, Moderna has the burden of proving invalidity by clear and convincing evidence.[14]  Clear and convincing evidence is evidence that [*Plaintiffs' Proposal*: *produces an abiding conviction that the truth of a factual contention is*] [**Moderna Proposal: makes it**] highly probable [**Moderna Proposal: that a fact is true**].[15]  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.  Some of you may have heard the phrase proof beyond a reasonable doubt, which is a higher burden than clear and convincing evidence.  That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should not consider it in this case.

---

[14]  *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (preliminary jury instructions slightly modified); *Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Aug. 16, 2022) (Apr. 6, 2022 Trial Tr.) (preliminary jury instructions slightly modified); *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (preliminary jury instructions slightly modified).

[15]  **Moderna's Position:** Plaintiffs' proposal of "abiding conviction" will be confusing to a jury, even if it is used in case law by courts and attorneys. The more easily understood term for a lay person is "highly probable" (found in Moderna's proposal) which is equally supported by case law and model jury instructions. *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 1:22-cv-00266-JDW (D. Del.), D.I. 594; *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, 1:19-cv-01515 (D. Del.), D.I. 275; Northern District of California Model Patent Jury Instructions (Oct. 2019) at A.5, 4.1a.

**Plaintiffs' Position**:  The instruction should not diminish Moderna's burden by departing from the "abiding conviction" language, which is a correct statement of law, *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1374 (Fed. Cir. 2025).  The Court has used this exact language to define clear and convincing evidence in multiple prior cases.  *See MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.); *Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Aug. 16, 2022) (Apr. 6, 2022 Trial Tr.)

11.    **BIAS**[16]

Each one of us has biases about certain perceptions or stereotypes of other people.  We may be aware of some of our biases even though we may not share them with others, we may not be fully aware of some of our other ones.  Our biases often affect how we act, favorably or unfavorably, toward someone.  Bias can affect our thoughts, how we remember, what we see and hear, whom we believe or disbelieve, and how we make important decisions.  As jurors, you're being asked to make very important decisions in this case, you must not let bias, prejudice, or public opinion influence your decision.  You must not be biased in favor or against any part of a witness because of his or her disability, gender, race, religion, ethnicity, sexual orientation, nationality, or socio or economic status, your verdict must be based solely on the evidence presented.  You must carefully evaluate the evidence and resist any urge to reach a verdict that is based on bias for or against the parties.

---

[16]  *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (preliminary jury instructions as read).

## 12.    NOTE-TAKING BY JURORS[17]

Only the lawyers and I are allowed to ask questions of the witnesses.  You are not permitted to ask questions of the witnesses.[18]  If you wish, you may take notes of the presentation of the evidence, the presentation of the attorneys at the conclusion of the evidence, and during my instructions to you on the law.[19]  To do this, you have been given a notebook that contains the following: copies of the Asserted Patents; a tab for the preliminary jury instructions, a section for juror notes, and a chart containing my rulings as to the meanings of certain claim terms in the Asserted Patents, which you will hear referred to as "claim constructions."  Remember that your notes are for your own personal use.  They are not to be given or read to anyone else.  As you see, we have a court reporter here who is transcribing the testimony during the course of the trial, but the transcript will not be available for your review during your deliberations, nor should you consider notes that you or fellow jurors may take as a kind of written transcript.  Instead, as you listen to testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberation.[20]  Do not let notetaking distract you to the point that you miss hearing other testimony from the witness.  Your notes are only a tool to aid your own individual memory,

---

[17]    *Nippon Shiyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 682 (D. Del. Dec. 13, 2024); *see also Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 602 (GBW) (conforming edits); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919, D.I. 478 (JLH) (similar).

[18]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.8.

[19]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read)*; Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Aug. 16, 2022) (Apr. 6, 2022 Trial Tr.) (slightly modified)*; and MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (as read).

[20]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read); *Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Aug. 16, 2022) (Apr. 6, 2022 Trial Tr.) (slightly modified); and *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (slightly modified).

and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. During the trial, documents or other physical items may be received into evidence. You will be given a copy of every admitted exhibit to take to the jury room to use during deliberations. However, you will not be supplied beforehand with a list of exhibits that will be received into evidence. Therefore, you may wish to make notes about the exhibits, especially their description and number, so that you can refer to those exhibits while you are deliberating. When we take our recess each day for the lunchtime break and when we take our recess each night, please take your notes to the jury room and leave your notes there. Do not take your notes away from the court at any time. No one will read your notes but you. Your notes will be destroyed after the trial is over. At the end of the trial, you must make your decision based on what you recall of the evidence. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

### 13.    BENCH CONFERENCES[21]

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.  We are not trying to keep important information from you.  These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.  We will, of course, do what we can to keep the number and length of those conferences to a minimum.  I might not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[21]  Third Circuit Model Jury Instructions (Sept. 2024) at 1.4 (Unchanged).

## 14.    UNITED STATES PATENTS; PATENT VIDEO[22]

At this time, we are going to show a video as an introduction to the patent system.  It contains background information to show what patents are, why they are needed, the role of the patent office, and why disputes over patents arise.  This video is by the government, not by the parties.  Therefore, it also addresses issues that do not necessarily relate to the issues that you need to decide in this case.

[PLAY PATENT VIDEO]

---

[22] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

15.    **DESCRIPTION OF TRIAL PROCEEDINGS**[23]

The trial will proceed in the following manner: First, attorneys for Genevant will make an opening statement to you. Next, attorneys for Moderna will make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show when it is presented.[24]

After the attorneys have made their opening statements, each party is given an opportunity to present its evidence.

Genevant goes first on the presentation of evidence because the plaintiff has the burden of proof. Genevant will present witnesses and counsel for Moderna may cross-examine witnesses for Genevant.

Following Genevant's case, Moderna may present evidence and can call witnesses. Counsel for Genevant may cross-examine witnesses for Moderna.

After the parties' main case is presented, one or both of them may be permitted to present what is called rebuttal evidence.

The evidence on all the issues will be presented in a single trial, even though your verdict might mean that you ultimately do not decide some of the issues. For example, the parties will present evidence about damages even though, if you decide that there has been no infringement, there would be no damages. Do not assume just because the parties are presenting evidence on an issue that they are admitting you should get to that issue.

After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way

---

[23]    Third Circuit Model Jury Instructions (Sept. 2024) at 1.12.

[24]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read).

that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. Once the closing arguments are completed, I will give you a few final instructions on the deliberation process. After that you will retire to the jury room to deliberate on your verdict in this case.

### 16.    CONDUCT OF THE JURY[25]

Now a few words about your conduct as jurors.

First, during the trial you are to avoid contact with any witness, the parties, any lawyer, or anyone else who may have an interest in the outcome of this case.  Do not talk to them or have any other communication with them.  Because you may not know whether a particular person in the courthouse falls into one of these categories, during the breaks you should not speak to anyone in the courthouse you do not know.  If anyone tries to talk to you about the case, bring it to my attention promptly.  You can let my courtroom deputy or another court officer know.  If any lawyer, party, or witness passes you in the hall and does not speak to you, remember it is not because they are being rude, it is because they are under the same rules and they are not supposed to talk with you or visit with you.  That is one of the reasons you are asked to wear your juror tags.  It shows you are not someone who is to be approached in any way.

Second, during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  This prohibition includes your family, friends, and coworkers.  Even if you have a friend or family member in attendance at the trial, you may not discuss it with them before the trial ends.  This prohibition also includes any form of communication, whether it be the internet, such as e-mail, instant message, Twitter (or X), Facebook, Instagram, or any other social media post, websites or blogs, or text messaging.  You also may not record or transmit any part of the trial or juror deliberations in any way; that prohibition includes both audio and video recording or transmitting devices.

---

[25]    *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as read); *see MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 437 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (as read).

People who are not in the courtroom and have not heard the evidence might sometimes express opinions about the case.  Your verdict is not to be based on what others say about the case, only on what the evidence is.  So do not post or e-mail or text or message or otherwise communicate anything about this case, and do not read anything else anyone posts, e-mails, texts, messages, or otherwise communicates about this case.  Do not talk about the case and do not listen to anyone else talk about the case.

This prohibition even includes all of you.  You should refrain from case related discussions with one another until all the evidence is received, final instructions are given, and you retire to the jury room to deliberate on your verdict.  One of the main reasons for this is that discussing the case can lead to forming an opinion, and that is not a good idea before you have heard all the evidence.  Even after your deliberations begin, you may talk about the case among your fellow jurors only when all are present.  Do not do so if you take a break or anything like that.

Third, during the trial you are not to gather information, investigate, or do anything else to learn about the case outside of the properly admitted evidence.  For example, do not attempt to investigate the case on the internet or travel to a particular location that may be of interest in the trial.  Do not ask for information or opinions from friends or family members who might have training or knowledge that you think might be relevant.  You should also avoid exposure to media coverage of the case during the trial, if there is any, until after you render your verdict.  Do not read or listen to any news or internet reports about the case if there are any.  That includes newspaper reports, radio or TV shows, or articles on the internet.  Just like tweets and internet posts, things on the internet or media are often inaccurate or incomplete, and they are certainly not made under oath with all the parties present, nor are they subject to cross examination or close scrutiny like the evidence you will hear in the courtroom.  During the trial you will consider all

25

the evidence that may be properly considered in reaching your verdict. I know you may be used to looking things up online, but doing any kind of research is unfair to the parties, may lead to bad decisions, and may cause us to start all over, so it is best not to do.

Finally, do not form any opinion until all the evidence is in. The last witness is just as important as the first witness. Keep an open mind until I instruct you to start deliberations at the end of the case.

I will likely repeat or summarize these instructions for you regularly throughout the trial, not because I think you are not paying attention but in my experience some jurors find these instructions difficult to follow. I know of no other situation in our culture where we ask strangers to sit and listen to something and then go in a little room together and not talk about the one thing they have in common that they just watched together. You are almost all wired into the digital world and used to looking up stuff online and talking or posting about your lives. So, please, remember the reasons I gave you about why there are rules against this in the context of this trial, and let me know if there are any problems with following these instructions, either on your own part or by your fellow jurors. Keep your discussions away from these proceedings.

## II.    FINAL INSTRUCTIONS

### 1.    GENERAL INSTRUCTIONS

#### 1.1    Introduction[26]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Please listen very carefully to everything I say.  In following my instructions, you must follow all of them, including the ones I gave you at the start of the case and any I have given you during trial.  You may not single out some and ignore others.  They are all important.

To help you follow along, each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.  You will have a written copy of these instructions with you in the jury room for your reference during deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.  We will go over that later.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

---

[26]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW); *CAO Lighting, Inc. v. General Electric Company*, C.A. No. 20-681, D.I. 405 (GBW); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919, D.I. 528 (JLH) (slight edits).

### 1.2    Duties as Jurors[27]

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes any instructions that I gave you before and during the trial and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[27]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919, D.I. 528 (JLH) (slight edits).

### 1.3    Evidence Defined[28]

The evidence from which you are to find the facts consists of the following: The testimony of the witnesses; documents, charts, graphics and other things received as exhibits; and any facts that are stipulated, that is, formally agreed to by the parties.

The following things are not evidence: Statements, arguments and questions of the lawyers for the parties in the case; charts and graphics not received as exhibits; objections by lawyers; any testimony I tell you to disregard; and anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in Court. Do not let rumors, suspicions or anything else that you may see or hear outside of Court influence your decision in any way.

---

[28]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

### 1.4    Direct and Circumstantial Evidence[29]

There are two types of evidence that you may use when reaching your verdict.  One type of evidence is called "direct evidence."  An example of direct evidence is when a witness testifies about something the witness knows through his own senses, something the witness has seen, felt, touched, heard or did.

The other type of evidence is "circumstantial evidence."  Circumstantial evidence is proof of one or more facts from which you could find another fact.

I will give you an example of the difference between direct and circumstantial evidence.

If a witness testified that he saw it raining outside and you believed him, then that would be direct evidence that it was raining.  However, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining, even though you didn't see it for yourself.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

---

[29]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

### 1.5    Consideration of Evidence[30]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience of people and events and give it whatever weight you believe it deserves.  When your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[31]

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, then that lawyer may object.  This simply means that the lawyer requested that I make a decision on a particular rule of evidence.  You should not be influenced by the fact that an objection is made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that the evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.  If I sustain an objection, then ignore the question.  If I overruled it, then treat the answer like any other.  If I instructed you that some item of evidence was received for a limited purpose only, then you must follow that instruction.

Also, I may have excluded some evidence or ordered certain testimony or other evidence stricken from the record.  Do not consider any testimony or other evidence that I struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

---

[30]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

[31]    *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW); *Cirba Inc. v. VMWare, Inc.*, C.A. No. 19-742, D.I. 1767 (GBW); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919, D.I. 528 (JLH).

### 1.6    Credibility of Witnesses[32]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You are the sole judges of the credibility of the witnesses.  "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says, or only part of it, or none of it.  In deciding what to believe, you may consider a number of factors including the following: The opportunity and ability of a witness to see or hear or know the things the witness testifies to; the quality of the witness's understanding and memory; the witness's manner while testifying; whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and any other factors that bear on believability.

---

[32]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 1.7    Number of Witnesses[33]

Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[33] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 1.8    Expert Witnesses[34]

You have heard testimony containing expert opinions from several expert witnesses.  When weighing this expert opinion testimony, you may consider each witness's qualifications, the reasons for his or her opinions, and the reliability of the information supporting those opinions, as well as the factors I previously mentioned for weighing the testimony of other witnesses.  The opinions of these individuals should receive whatever weight and credit, if any, you think appropriate given all the other evidence in the case.

In deciding whether to accept or rely upon the opinions of any of these expert witnesses, you may consider any bias that any witness may have, including any bias that may arise from evidence that they have been or will be paid for reviewing the case and testifying.

---

[34] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *Med-El Elektromedizinische Gerate, et al v. Advanced Bionics*, Case No. 1:18-cv-01530, D.I. 440 (D. Del.). (slightly modified).

### 1.9    Prior Sworn Testimony[35]

Before this trial, the lawyers for the parties questioned witnesses under oath, and a court reporter and videographer recorded everything the witnesses and the lawyers said.  This is called a deposition.

For some witnesses, you have heard that sworn testimony.  Each witness's testimony is entitled to the same consideration as if the witness testified in court.  You should use the same factors to evaluate the believability of this testimony as if the witness testified in person in the courtroom.

The parties may have edited or cut the video to exclude irrelevant testimony.  You should not attribute any significance to the fact that the deposition video may appear to have been edited.

---

[35]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 1.10    Exhibits[36]

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits available during your deliberations.

The remainder of the exhibits, including charts, PowerPoint presentations, pictures, videos, and animations were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial.  You may use these charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them such weight as you think they deserve.

From time to time, the parties may offer into evidence documents that have been partially redacted. You might see a black line or box through the document, or you might just see a white vacant area. These markings—called redactions—cover up certain information that may be irrelevant or confidential. You should not give any weight to the fact the document is redacted.

---

[36]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 1.11    Stipulated Facts[37]

The parties have stipulated that certain facts are true and those stipulations have been read to you during this trial.  You must therefore treat these facts as having been proved for the purposes of this case.

---

[37]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

## 1.12    Use of Notes[38]

You may use notes taken during trial to assist your memory.  However, as I instructed you at the beginning of the case, you should use caution in consulting your notes.  Jurors often have a tendency to attach undue importance to matters which one has written down.  But some testimony that you thought was unimportant at the time presented and that's not written down takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[38] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *Cirba Inc. v. VMWare, Inc.*, C.A. No. 19-742, D.I. 1767 (GBW) (slightly modified); *Board of Regents, The University of Texas System v. Boston Scientific Corp.*, C.A. No. 18-392, D.I. 326 (GBW) (slightly modified); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919, D.I. 528 (JLH); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW) (slightly modified).

### 1.13    Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." **[Moderna's Position: The standard of proof applies to questions of fact and not to questions of law.]**[39]

As you have heard, Genevant contends that Moderna infringes claims in each of the four Asserted Patents. Genevant also contends that it is entitled to damages as a result of that infringement. A party asserting patent infringement has the burden of proving infringement by a preponderance of the evidence. A preponderance of the evidence is evidence that, when considered in light of all the facts, leads you to believe that what a party claims is more likely true than not true. To put it differently, if you were to put the parties' infringement evidence on opposite sides of a balance scale, Genevant's evidence would have to make the scale tip somewhat toward its side. If the scale should remain equal or tip in favor of Moderna, then you must find for Moderna.

If you decide that Moderna infringed, then you will address the additional issue of whether Moderna's infringement was willful. Genevant bears the burden to prove willful infringement by

---

[39]   **Moderna's Position:** Plaintiffs do not dispute this is an accurate statement. *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011) (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)); *id.* at 114 (Breyer, J., joined by Scalia and Alito, JJ., concurring) (same). A jury may not understand that their sole role is a fact finding one. Moderna believes this sentence clarifies that.

**Plaintiffs' Position:** Moderna's proposed instruction can only serve to confuse the jury about whether they are deciding legal issues. The jury will have already been told, in the very first instruction given, that the jury is the judge of the facts and the judge is the judge of the law. That concept is explained again in Section 1.2 of the final instructions. Moderna's proposal does not clarify that concept and instead risks confusing the jury about the appropriate burden of proof.

a preponderance of the evidence.  As with infringement and damages, this evidentiary standard requires Genevant to prove that it is more likely than not that Moderna's infringement was willful.

In addition to denying infringement, Moderna contends that each of Genevant's Asserted Claims is invalid.  Moderna has the burden of proving invalidity by clear and convincing evidence.  Clear and convincing evidence is evidence that makes it highly probable that a fact is true.  Thus, Moderna has the burden of proving that it is highly probable that Genevant's Asserted Claims are invalid.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

If Genevant persuades you that Moderna has infringed at least one patent claim and Moderna has not persuaded you that that claim is invalid, then Genevant [*Plaintiffs' Proposal: is*][**Moderna's Proposal: may be**] entitled to damages in an amount to compensate it for that infringement.[40]  Genevant must prove the amount of its damages, if any, by a preponderance of the evidence. As with infringement, this evidentiary standard requires Genevant to prove that it is

---

[40] **Moderna's Position:** Moderna objects to Plaintiffs' inclusion of this instruction, which is contradicted by the law, as "the patent damages statute, 35 U.S.C. § 284, 'does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts.'" *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299 (Fed. Cir. 2025) (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020)); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.").

**Plaintiffs' Position**:  Moderna's objection conflates the legal entitlement to damages with the need to prove the amount of damages.  It is black-letter law that a patent infringement plaintiff is entitled to no less "than a reasonable royalty."  35 U.S.C. § 284; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) ("When a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" (quoting 35 U.S.C. § 284)).  *Rex Medical* is not to the contrary; it confirms that Section 284 "requires the award of a reasonable royalty," but explains that there still must be evidence as to the amount of damages.  156 F.4th at 1299 (citation omitted).  That is precisely what the very next sentence of the instruction explains— that "Genevant must also prove the amount of its damages, if any, by a preponderance of the evidence."  These two sentences together are an accurate and neutral statement of the law.

more likely true than not true that Genevant is entitled to the damages you award. Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

## 2.    THE PARTIES AND SUMMARY OF PATENT ISSUES

### 2.1    The Parties and their Contentions[41]

As I previously told you, the plaintiffs in this case are Genevant Sciences and Arbutus Biopharma.  The lawyers, witnesses and I have referred to these plaintiffs as "Genevant" or "Arbutus" during the trial, as well as by the names of their predecessor companies, Protiva and Tekmira.  Throughout these instructions I will refer to either or both of Genevant and Arbutus simply as "Genevant."  The defendants in this case are Moderna, Inc. and ModernaTx. Inc.  You have heard the lawyers, witnesses and me refer to the defendant as "Moderna" throughout the trial.

There are four patents at issue in this case.

The first patent at issue is United States Patent No. 9,504,651, which we have been calling the '651 patent or the Encapsulation patent.

The second patent at issue is U.S. Patent No. 9,364,435, which we have been calling the '435 patent.

The third patent at issue is U.S. Patent No. 8,492,359, and U.S. Patent No. 8,492,359 which we have been calling the '359 patent.

The fourth patent at issue is U.S. Patent No. 11,141,378, which we have been calling the '378 patent.

During the trial the lawyers and I have referred to the '435, '359, and '378 patents together either as the Lipid Composition Patents or the Ratio Patents, as these three patents are part of the same patent family.  We have referred to all four patents together as the "Asserted Patents." Genevant contends that Moderna has infringed the following claims: claims 7, 9, 11, 13, and 14,

---

[41]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case).

of the '651 Patent, claims 7 and 12 of the '359 Patent, claims 7, 8, and 16 of the '435 Patent, and claims 2, 7, 13, 18, and 19 of the '378 Patent.

The lawyers and I may have referred to these patent claims as the "Asserted Claims."

The product that Genevant accuses of infringement is Moderna's Spikevax COVID-19 vaccine, which is also referred to as "mRNA-1273." The lawyers and I may have referred to this product as the "Accused Product."

Genevant also contends that Moderna's infringement was willful and that Genevant is entitled to damages as a result of Moderna's infringement.

Moderna denies that the Accused Product infringed the Asserted Claims, denies that any infringement was willful, and denies that Genevant is entitled to any damages. Moderna also contends that the Asserted Claims are invalid.

Genevant denies that any of the Asserted Claims are invalid.

## 2.2    Summary of Patent Issues[42]

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.

1.    Whether Genevant has proven by a preponderance of the evidence that Moderna's COVID-19 Vaccine literally infringed claims 7, 9, 11, 13, or 14 of the '651 patent;

2.    Whether Genevant has proven by a preponderance of the evidence that Moderna's COVID-19 Vaccine literally infringed claims 7, 8, or 16 of the '435 patent;

3.    Whether Genevant has proven by a preponderance of the evidence that Moderna's COVID-19 Vaccine literally infringed claims 7 or 12 of the '359 patent;

4.    Whether Genevant has proven by a preponderance of the evidence that Moderna's COVID-19 Vaccine literally infringed claims 2, 7, 13, 18, or 19 of the '378 patent;

5.    Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through inducement claims 7, 9, 11, 13, or 14 of the '651 patent;

6.    Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through contributory infringement claims 7, 9, 11, 13, or 14 of the '651 patent;

7.    Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through inducement claims 7, 8, or 16 of the '435 patent;

8.    Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through contributory infringement claims 7, 8, or 16 of the '435 patent;

---

[42]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case); AIPLA's Model Patent Jury Instructions (Jan. 2, 2024) at V.3.8; *see also Microchip Tech. Inc. v. Aptiv Servs. US*, C.A. No. 17-1194-JDW, D.I. 386 (D. Del. Apr. 6, 2022) (as read); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW).

9.      Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through inducement claim 7 or 12 of the '359 patent;

10.      Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through contributory infringement claim 7 or 12 of the '359 patent;

11.      Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through inducement claims 2, 7, 13, 18, or 19 of the '378 patent;

12.      Whether Genevant has proven by a preponderance of the evidence that Moderna has indirectly infringed through contributory infringement claims 2, 7, 13, 18, or 19 of the '378 patent;

13.      Whether Moderna has proven by clear and convincing evidence that claims 7, 9, 11, 13, and 14 of the '651 patent are invalid for lack of written description, lack of enablement, derivation, indefiniteness, anticipation, or obviousness;

14.      Whether Moderna has proven by clear and convincing evidence that claims 7, 8, and 16 of the '435 patent are invalid for lack of written description, lack of enablement, indefiniteness, or obviousness

15.      Whether Moderna has proven by clear and convincing evidence that claims 7 and 12 of the '359 patent are invalid for lack of written description, lack of enablement, indefiniteness, or obviousness

16.      Whether Moderna has proven by clear and convincing evidence that claims 2, 7, 13, 18, and 19 of the '378 patent are invalid for lack of written description, lack of enablement, indefiniteness, or obviousness;

17.      If you decide that Genevant has proven that Moderna has infringed a claim of the Asserted Patents and that Moderna has not proven that the claim is invalid, then you should also

45

decide whether Genevant has proven by a preponderance of the evidence that the infringement of the '651, '435, '359, or '378 patent was willful;[43]

18.    If you decide that Genevant has proven that Moderna has infringed a claim of the Asserted Patents and that Moderna has not proven that the claim is invalid, then you should also decide the amount of damages that is adequate to compensate for the infringement of that claim. Genevant must prove its damages by a preponderance of the evidence.

I will provide more detailed instructions on these issues shortly.

---

[43]    **Moderna Position**: Moderna proposes that the jury decide willfulness after damages, as the damages award must reflect the amount to compensate for infringement, not willfulness, and asking about willfulness after damages will avoid jurors mistakenly thinking they are awarding damages for willfulness. Moderna proposes that the instructions be ordered in the same way as the verdict form (willfulness after damages). *See, e.g., Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189-LPS-CJB (D. Del.), D.I. 274; *see also* Moderna's proposed verdict form, citing six verdict forms from D. Del. ordering willfulness after damages.

**Plaintiffs' Position:** Plaintiffs' position is consistent with the Court's instruction in each of its prior cases, which have instructed the jury as to willful infringement as part of its instructions concerning infringement generally, prior to an instruction on damages.  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.); *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions, at 40 (D. Del. Nov. 21, 2025); *Microchip Technology Inc. v. Aptiv Services US, LLC*, C.A. No. 17-1194, D.I. 395-2 at 375:17-21, 377:13-19, (JDW) (Final Jury Instructions (as read); *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 440 at 643:6-22 (D. Del. Feb. 15, 2024) (Dec. 14, 2023 Trial Tr.). Further, the issue of willful infringement is inherently tied to the analysis of infringement itself, and thus should be considered by the jury after infringement, not damages.  *See 10x Genomics, Inc. v. NanoString Techs., Inc.*, No. 1:21-cv-00653-MFK, D.I. 300 at 25 (D. Del. Nov. 16, 2023).  This Court has taken this approach in verdict forms as well.  *E.g.*, *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 595, Final Verdict Sheet (D. Del. Nov. 21, 2025).

### 3.    PATENT INSTRUCTIONS

### 3.1    Patent Claims Generally[44]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The claims are intended to define, in words, the bounds of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. You must consider each of the Asserted Claims individually.

To know what a claim covers, a claim sets forth in words a set of requirements. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all the requirements of the claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

In other words, the claim covers a product or process where each of the claim elements or limitations is present in that product or process.

---

[44]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case); Federal Circuit Bar Association Model Patent Jury Instructions, B.2.; (2.1 Patent claims) (2020).

## 3.2    Effective Filing Date[45]

Under U.S. patent law, an issued patent may be treated as if it has the same filing date as the earliest application to which it claims priority.  A patent can validly claim priority to an application if the patent identifies the priority application while the patent is under review, and if the subject matter claimed in the patent is also disclosed in the priority application.

---

[45]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified).

### 3.3    Dependent and Independent Claims[46]

Patents may contain two types of claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The Asserted Claims at issue in this case are all "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim, but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim or claims to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers.  A product or process that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

When you receive a copy of these instructions, you will see a chart that identifies the various dependencies for each dependent claim at issue in this case.

In the '651 Patent, Claim 7 depends from Claim 6, which in turn depends from Claim 4, which in turn depends from Claim 1.  Claims 9, 11, 13, and 14 all depend from Claim 1.

In the '435 Patent, Claims 7 and 8 depend from Claim 5, which in turn depends from Claim 1.  Claim 16 depends from Claim 1.

In the '359 Patent, Claims 7 and 12 depend from Claim 1.

---

[46]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case); *Nippon Shinyaku Co.. Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 695 (D. Del. Dec. 19, 2024); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-1250-GBW, D.I. 605 (D. Del. May 12, 2023).

In the '378 Patent, Claim 2 depends from Claim 1. Claim 7 depends from Claim 6, which in turn depends from Claim 5, which in turn depends from Claim 4, which in turn depends from Claim 3, which in turn depends from Claim 2, which in turn depends from Claim 1. Claim 13 depends from Claim 12, which in turn depends from Claim 1. Claims 18 and 19 depends from Claim 17, which in turn depends from Claim 16, which in turn depends from Claim 15, which in turn depends from Claim 14, which in turn depends from Claim 13, which in turn depends from Claim 12, which in turn depends from Claim 1.

### 3.4    Open Ended "Comprising" or "Consisting essentially of" Claims[47]

The beginning portion of a patent claim, also known as the preamble, often uses the word "comprising."  When the word "comprising" is used in a preamble, it means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that the Accused Product includes all of the requirements of that claim, then the claim is infringed.  This is true even if the Accused Product contains additional components.

The preamble also often uses the words "consisting essentially of."  The words "consisting essentially of" mean "including the following and possibly including unlisted components that do not materially affect the invention."  When "consisting essentially of" is used in the preamble, if you decide that the Accused Product includes all of the elements of that claim, then that claim is literally infringed, even if the Accused Product includes additional components, provided the presence of these additional components does not negate an element of the claim or materially affect the basic and novel properties of the invention.[48]

---

[47]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case).

[48]    AIPLA, Model Patent Jury Instructions (Aug. 18, 2025) § 3.6.

### 3.5    Claim Construction[49]

It is the Judge's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claim terms.  You must apply the meaning that I give for each patent claim term to decide if the claim is infringed or invalid.  You must accept my definitions of these words in the claims as being correct.  And you must ignore any different testimony that any witness or attorney may have used.  It is your job to take these definitions and apply them to the issues that you are deciding.  When you receive a copy of these instructions, you will see a chart with each of the claim terms, along with my corresponding instruction.  These definitions have been provided to you in a chart in your juror notebooks as well.

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning  as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the claimed invention.[50]

My construction of the term "___ mol % of the total lipid present in the particle" in the asserted claims of the Lipid Composition Patents/Ratio Patents, is "___ mol % of the total lipid present in the particle."  Moreover, my construction of the term is that the recited "mol %" ranges are understood to be subject to the rules of rounding, and thus encompass their standard variation based on the number of significant figures recited in the claim.  So, for example, where a range recites a range with 50 mol % to 65 mol % cationic lipid, I have interpreted that to mean 49.5 mol % to 65.49 mol % cationic lipid.  Likewise, where a claim recites a range of 0.5 mol % to 2 mol

---

[49]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also Nippon Shinyaku Co.. Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 695 (D. Del. Dec. 19, 2024); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125-GBW, D.I. 605 (D. Del. May 12, 2023) (conforming edits); Federal Circuit Bar Association Model Patent Jury Instructions, B.2. (2.1 Patent Claims) (2020).

[50]    AIPLA's Model Patent Jury Instructions (Jan. 2, 2024) at V.2.1.

% conjugated lipid, I have interpreted that language to mean between 0.45 mol % and 2.49 mol % conjugated lipid.

My construction of the term "a cationic lipid having a protonatable tertiary amine" in the asserted claims of the '378 patent is its plain and ordinary meaning, *i.e.*, a "cationic lipid having a protonatable tertiary amine."

My construction of the term "wherein at least 70% / at least 80% / about 90% of the mRNA in the formulation is fully encapsulated in the lipid vesicles" in the asserted claims of the '651, or the Encapsulation, patent is "wherein at least 70% /at least 80% / about 90% of the mRNA in the formulation is fully, as distinct from partially, contained inside the lipid vesicles."

## 4.    INFRINGEMENT

### 4.1    Infringement Generally[51]

I will now instruct you how to decide whether Genevant has proven by a preponderance of the evidence that Moderna infringed any of the Asserted Claims.  Patent law gives the owner of a valid patent the right to exclude others from making, using, selling, offering to sell or importing patented products or performing a patented method within the United States during the term of the patent.  Any person or company that is engaged in any of those acts without the patent owner's permission infringes the patent.  A product developed before the issuance date of the patent may infringe that patent only if the product is made, used, sold, offered for sale or imported after the patent's issuance date and before the patent expires.

Infringement is assessed on a claim-by-claim basis.  You may find that there is infringement of one claim but no infringement of another.  Accordingly, for each Asserted Claim, Genevant bears the burden of proving by a preponderance of the evidence that the Asserted Claim is infringed.  Therefore, you, the jury, must determine infringement for each patent claim separately. [**Moderna's Proposal: The parties dispute whether the Accused Product infringes, and also the number of units that infringe (for example, the number of doses of the vaccine.)**][52]  [*Plaintiffs' Proposal: Although the parties dispute whether certain evidence, such as*

---

[51]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case).

[52]  **Moderna's Position:** Moderna's instruction is appropriate given that Plaintiffs have varied theories of infringement and even within those theories, conflicting evidence with varying number of doses implicated. For example, Plaintiffs' expert alleges that approximately 4% of Moderna's doses infringe the '435 Patent based on certificates of analysis, but 100% of doses infringe based on Plaintiffs' expert testing, with Plaintiffs' damages expert providing varying opinions on the damages for the different numbers of doses. D.I. 658, Ex-A2 at ¶ 1630 ("I calculate the royalty base for each of these using Dr. Mitchell's opinions regarding the foregoing infringement theories (i.e., Fractionation Testing, Moderna's Certificates of Analysis, and DOE), which are set forth in

*fractionation testing, establishes infringement, the parties do not dispute the number of doses implicated by the evidence.*][53]  Additionally, a different number of doses is accused of infringing the different asserted patents based on the issuance and expiry dates of the patent.  [*Plaintiffs' Proposal: Infringement or non-infringement of batches of the accused product can be demonstrated through evidence related to a subset of representative batches.*[54]  *Moderna does not dispute that batches of the Accused Product with a given part number tested by Dr. Schuster are representative of all batches of the Accused Product with that same part number, and that batches of version 2 of the Accused Product tested by Dr. Schuster are representative of all batches of version 2 of the Accused Product, although Moderna disputes that expired batches are*

---

Schedule 2.1.").  Moderna's proposed instruction appropriately notes that they will have to decide the number of doses that infringe.

**Plaintiffs' Position:** Neither Moderna nor any of its experts have ever disputed to the number of batches Dr. Mitchell identifies as infringing pursuant to different evidence such as testing. Rather, Moderna solely disputes whether the evidence demonstrates infringement to begin with. Moderna's jury instruction creates confusion as to where the dispute lies. While Moderna disputes whether the COA and testing theories show infringement, neither Moderna nor its experts have ever disputed Dr. Mitchell's calculations or the specific batches identified in Dr. Mitchell's tables.

[53] **Plaintiffs' position:** This instruction is intended to clarify for the jury what is in dispute (whether certain evidence demonstrates infringement) versus what is not in dispute. As explained in *supra* note 52, while Moderna disputes whether the COA and testing theories show infringement, neither Moderna nor its experts have ever disputed the batches identified in Dr. Mitchell's tables as infringing pursuant to the associated testing or COA evidence.

**Moderna's Position:** Plaintiffs' proposal misstates what is in dispute. As explained *supra* note 52, Plaintiffs' expert put forth two forms of evidence (COAs and expert testing) to establish the percentage of doses that infringe for each patent, and those forms of evidence contradict each other regarding the number of doses implicated for each patent. Stating that "the parties do not dispute the number of doses implicated by the evidence" is simply inaccurate. Stating that "*a* different number of doses is accused of infringing the different asserted patents" is confusing and would mislead the jury as to whether the parties agree (and whether Plaintiffs' expert agrees) on the number of infringing doses for each patent.

[54]  *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1351-1352 (Fed. Cir. 2010).

*representative of unexpired batches.*][55]  Genevant bears the burden of proving by a preponderance of the evidence the number of units of the Accused Product that infringe.

The entirety of an accused product does not need to practice a claim for you to find infringement.  Even if only a part of the accused product practices the claim, that is enough for infringement, as long that part of the product meets all elements of the asserted claim.[56]

[*Plaintiffs' Proposal: You have heard evidence that Moderna has its own patents in the field of nucleic acid lipid nanoparticles (LNPs).  While this evidence may be relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  In other words, the fact that Moderna also has patents in the same field as that of Genevant's patents is not relevant in determining infringement in this case.  Therefore, you must not consider the existence of Moderna's own patents when determining if Moderna infringed Genevant patents.*][57]  [**Moderna's Proposal: However, Moderna's ownership of patents might**

---

[55]  **Moderna's Position:** Plaintiffs' Proposal introduces an unnecessary amount of complexity into the jury instructions, including improperly making arguments related to specific expert witnesses and/or evidence. This is not the place to introduce evidence.

**Plaintiffs' Position**: Plaintiffs' proposal is in accord with the parties' stipulation regarding part-number representativeness, D.I. 228 ¶ 5, and in accord with the parties' good faith negotiations about a forthcoming stipulation regarding version 2 representativeness. Moderna does not dispute the representativeness of lots, including in its footnote here.

[56]  *SunTiger, Inc. v. Sci. Rsch. Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1356 (Fed. Cir. 2013).

[57] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case).

**Moderna's Position:** Plaintiffs' proposal is confusing at best. A product must be found to infringe. To start talking about parts of a product, the jury may incorrectly think that just because the COVID-19 vaccine has four lipids it infringes the Lipid Composition Patents/Ratio Patents. There is no reason to introduce this complexity and confusion.

**Plaintiffs' Position:** Plaintiffs' proposal is nearly identical to the jury instructions in *Wirtgen*. Such instructions are necessary to prevent the high risk of confusion to juries that ownership of patents by defendant may present. Moderna refused to enter a stipulation limiting its ability to

be relevant to your determination of whether Moderna's infringement was willful if you conclude that those Moderna patents bear on Moderna's good faith belief that it was not infringing.][58]  [*Plaintiffs' Proposal: However, Moderna's ownership of patents might be relevant to your determination of whether Moderna's infringement was willful if you conclude that those Moderna patents demonstrate innovation or demonstrate copying in a manner that bears on Moderna's belief regarding whether or not it was infringing.*][59]

___

offer evidence about its own patents and has repeatedly represented to Plaintiffs its intention to present evidence related to Moderna's patents at trial—including in the subsequent footnote about willfulness as well as discussions between the parties regarding motions in limine—such that the risk of confusion is particularly salient in this case.

[58]  **Moderna's Position:** Moderna's position is that if Plaintiffs' proposed language about Moderna's patents is included in the jury instructions, then this additional language should be included as well. *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 21, 2024 Trial Tr.) (modified for party name). At the very least, Moderna has presented evidence that it attempted to design around the asserted patents.

**Plaintiffs' Position:** Plaintiffs object to Moderna's proposed additional instruction.  In *Wirtgen*, "Caterpillar witnesses … testified that they personally had a good faith belief" that they did not infringe.  *Wirtgen*, No. 17-770, D.I. 307 at 7 (Caterpillar Opp. Br.).  By contrast, Moderna invoked privilege to prevent discovery into its subjective belief.  *See e.g.*, Deposition Transcript of Dr. Orn Almarsson, 181:11-182:2; Deposition Transcript of Dr. Don Parsons, 80:1-81:6, 132:12-133:5. There is therefore no factual basis for an instruction about Moderna's evidence of its subjective beliefs.  *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991) ("[I]n order for a party to have its requested instruction given, there must be evidence in the record supporting its submission.").  In addition, neither Moderna nor its experts have ever cited a Moderna patent or patent application as evidence related to willfulness—including as evidence of an attempted design around effort—in its contention interrogatory response on willfulness (No. 3) or in any of its expert reports.

However, if the Court believes an additional instruction is necessary, Plaintiffs propose that their alternative language be used.  Plaintiffs also propose that any such instruction be given as part of the willfulness instructions (Section 4.7, *infra*), as giving this instruction in connection with infringement may confuse the jury into thinking that infringement turns on willfulness.

[59]  *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 971 (Fed. Cir. 2018) (finding evidence of copying relevant to willfulness). Plaintiffs' object to Moderna's proposal for the reasons explained in the proceeding footnote. However, if the court is to adopt an instruction on this topic, Plaintiffs' proposal seeks to strike a more balanced approach, and unlike Moderna whose experts do not opine on Moderna's patents in any manner relevant to willfulness, Plaintiffs' experts do cite Moderna patents and applications, including WO 2013/090648, as evidence of copying.

## 4.2    Direct Infringement[60]

In order to prove direct infringement of an Asserted Claim, Genevant must prove by a preponderance of the evidence that Moderna has made, used, sold, offered to sell or imported into the United States the invention defined in the claim during the term of the patent, *i.e.*, after the issue date of that patent and before that patent expires.

As I just told you, you must determine separately for each Asserted Claim whether there was infringement.  There's one exception to this rule: if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim.  On the other hand, if you find an independent claim has been infringed, then you must still decide separately whether Moderna's Accused Product meet the additional requirements of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.

Plaintiffs allege that Moderna's COVID-19 vaccines directly infringes claims 7 and 12 of the '359 patent, claims 7, 8, and 16 of the '435 patent, claims 2, 7, 13, 18, and 19 of the '378 patent, and claims 7, 9, 11, 13, and 14 of the '651 patent.

---

[60]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case).

### 4.2.1   Literal Infringement[61]

To prove literal infringement, Genevant must prove by a preponderance of the evidence that Moderna has made, used, sold, offered for sale, or imported into the United States a product that meets or performs all of the requirements of a claim during the term of its patent—*i.e.*, after the issue date of that patent and before that patent expires.[62]

To decide literal infringement, you must compare the Accused Product to each Asserted Claim of the Asserted Patents, as I have construed them.  A patent claim is literally infringed only if the accused product or method includes every limitation in that claim.  For a method claim specifically, the party claiming infringement must show that the Accused Product performed each step of the claimed method, not just that it was able to do so.

If the Accused Product does not contain or perform one or more elements or steps of a patent claim, then there is no infringement.  [**Moderna's Proposal: For patent claims using "comprising" in the preamble,**] the presence of other elements or additional steps of the Accused Product or accused method beyond those claimed, however, does not avoid infringement, as long as every claimed element is present. [**Moderna's Proposal: For claims using "consisting essentially of" in the preamble, the presence of other elements or additional steps of the Accused Product or accused method beyond those claimed does not avoid infringement,**

---

[61]   *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also TwinStrand Bioscis., Inc. v. Guardant Health, Inc.*, No. 21-cv-01126, D.I. 494, Final Jury Instructions (Nov. 14, 2023) (Instruction No. 4.2, Literal Infringement); *Cirba Inc. v. VMWare, Inc.*, No. 19-cv-00742, D.I. 1767, Final Jury Instructions (Apr. 28, 2023) (Instruction No. 4.2, Direct Infringement); *Pact XPP Schweiz AG v. Intel Corp.*, No. 1:19-cv-1006-JDW, D.I. 553, Joint Proposed Final Jury Instructions (Nov. 3, 2023) (Instruction No. 3.5, Direct Infringement).

[62]   *TwinStrand Bioscis., Inc. v. Guardant Health, Inc.*, No. 21-cv-01126, D.I. 494, Final Jury Instructions (Nov. 14, 2023) (Instruction No. 4.2, Literal Infringement) (modified to include expiration date as well).

**provided the presence of these additional components does not negate an element of the claim or materially affect the basic and novel properties of the invention.**][63]

You should not compare the Accused Product to any specific example set out in the Asserted Patents in reaching your decision.  [*Plaintiffs' Proposal: Nor should you compare the Accused Product with products licensed by Genevant.*][64]  The only correct comparison is between Moderna's Accused Product and the language of the claim itself.

---

[63]    AIPLA, Model Patent Jury Instructions (Aug. 18, 2025) § 3.6 (modified).

**Moderna's Position:** There are two types of preambles in the asserted claims (comprising and consisting essentially of). Moderna proposed that no instructions were necessary on either preamble given the parties' contentions. However, Plaintiffs insisted on the "comprising" instruction being given, which, if given on its own, misleadingly suggests to the jury that it applies to all claims or that the same applies to the other preamble. Moderna only suggests this out of completeness.

**Plaintiffs' Position:** Plaintiffs' object to Moderna's proposal.  Moderna does not dispute infringement on the basis of preamble language and does not—either in its contention interrogatory responses or in its experts' reports—contend that any additional elements or steps of the accused product "negate[s] an element of the claim or materially affect[s] the basic and novel properties of the invention." As such, the additional language is irrelevant and unduly confusing to the jury.  *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991) ("[I]n order for a party to have its requested instruction given, there must be evidence in the record supporting its submission.").

[64]    **Moderna's Position:** Moderna does argue that the accused product should be compared to a produce licensed by Genevant. This instruction is instruction is improper. *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991) ("[I]n order for a party to have its requested instruction given, there must be evidence in the record supporting its submission.")

**Plaintiffs' Position:** *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 at 2082:16-17 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) ("Nor should you compare the Accused Products with Wirtgen's products.").  The caselaw does not make a distinction between patentee's products and products that license from the patentee in this context.  *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a *commercialized embodiment* of the patentee.") (emphasis added).  Moderna's infringement expert, Dr. Prud'homme, compares the Accused Product to Genevant's licensed product Onpattro on multiple occasions.

A party can literally infringe a patent without knowing of the patent or without knowing that what it was doing constitutes patent infringement. A party may also literally infringe a patent, even though it believes in good faith that it is not infringing the patent or that the patent is invalid. Thus, Moderna's knowledge of the Asserted Patents and Moderna's intent are irrelevant to your determination of literal infringement. [*Plaintiffs' Proposal: In addition, ownership of separate patents is not a defense to patent infringement. Thus, Moderna may infringe the Asserted Patents even if it has its own patents.*][65]

---

[65]  **Moderna's Position**: Moderna objects to including this sentence as it is redundant of language above in Section 4.1 about considering Moderna's patents. Moreover, Moderna has not argued and does not intend to argue that because it has its own patents, it does not literally infringe. If Moderna does not intend to make an argument, it is improper to add jury instructions about it. *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991) ("[I]n order for a party to have its requested instruction given, there must be evidence in the record supporting its submission."). This instruction only serves to confuse the jury.

**Plaintiffs' Position**: The Court's prior instructions have included instructions in both places. *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 at 2079:21-2080:11, 2083:3-6 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.). Plaintiffs disagree that the sentence is redundant as there are two separate issues: (1) that ownership of separate patents is not relevant to infringement and (2) that it is not an affirmative defense to infringement. Regardless of what Moderna intends to argue, knowledge of Defendants' patents introduces significant risk of confusion. Moderna has repeatedly represented to Plaintiffs' its intention to present evidence related to Moderna's patents at trial—including during discussions regarding motions in limine and including in the subsequent footnote about willfulness—such that the risk of confusion is particularly salient in this case.

### 4.3    Indirect Infringement Through Inducement[66]

In addition to direct infringement, Genevant accuses Moderna of inducing its customers, like pharmacists and other health care professionals, to infringe the Asserted Claims.  To find that Moderna induced infringement, Genevant must prove by a preponderance of the evidence that: (1) at least one customer has directly infringed – making that customer the "direct infringer," and (2) Moderna induced these acts of direct infringement. You must determine whether there has been active inducement on a claim-by-claim basis.

1.    To prove inducement, Genevant must establish that it's more likely than not that:

2.    Moderna actively and knowingly aided, instructed, or otherwise acted with the specific intent to cause acts by the direct infringer that would constitute direct infringement of the patent claim;

3.    Moderna knew of the patent or showed willful blindness to the existence of the patent at that time;

4.    Moderna knew or showed willful blindness that the actions of the direct infringer would infringe that claim of the patent; and

5.    The direct infringer infringed at least one patent claim.

To find intent, you should consider whether Moderna intended to cause the direct infringer to act in a way that caused direct infringement, regardless of whether Moderna believed a patent was invalid.

---

[66]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-00083, D.I. 737, Final Jury Instructions (Oct. 16, 2023) (Instruction No. 3.6, Indirect Infringement Through Inducement); AIPLA's Model Patent Jury Instructions (Jan. 2, 2024) at V.3.8.

To find willful blindness, you must find that: (1) Moderna subjectively believed there was a high probability that a patent existed covering the Accused Product, and (2) Moderna took deliberate actions to avoid learning of the patent. If you find that Moderna was aware of an Asserted Patent but believed that the acts it encouraged did not infringe that patent, Moderna cannot be liable for inducement. In addition, it's not enough for Genevant to prove that Moderna was aware of someone else's direct infringement or of some risk that someone else might infringe the Asserted Claims. Instead, Genevant must prove by a preponderance of the evidence that Moderna intended that someone else infringe the patent or that Moderna believed there was a high probability that a third party would infringe the Asserted Claims, but deliberately avoided learning the infringing nature of the third party's acts.[67]

---

[67] *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Feb. 15, 2024) (Dec. 14, 2023 Trial Tr.); Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) § 3.2.

### 4.4    Indirect Infringement Through Contributory Infringement[68]

In addition to direct and induced infringement, Genevant asserts that Moderna has contributed to another person's infringement of the Asserted Claims. To find contributory infringement, you must find that someone other than Moderna has directly infringed an Asserted Claim. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To establish contributory infringement, Genevant must prove that it is more likely than not that Moderna had knowledge of both the asserted patent claim and of a third party's direct infringement of that claim. Genevant must prove that each of the following is more likely than not:

1.    Someone other than Moderna directly infringed an Asserted Claim;

2.    Moderna sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing method;

3.    the component or apparatus is not a staple article or commodity of commerce capable of substantial noninfringing use;

4.    the component or apparatus constitutes a material part of the claimed invention;

5.    and Moderna was aware of the asserted patent claim and[69] knew that the component was especially made or adapted for use in an infringing method.

---

[68]    *See MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Feb. 15, 2024) (Dec. 11, 2023 Trial Tr.) (slightly modified).

[69]    Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) § 3.3; AIPLA's Model Patent Jury Instructions (Aug. 18, 2025) at V.3.10.

A staple, article, or commodity of commerce capable of substantial noninfringing use is something that has uses other than the patented method and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

### 4.5     Infringement by Supplying All or a Substantial Portion of the Components of a Patented Invention to Another Country[70]

In addition to the types of infringement I have just discussed, Genevant asserts that Moderna has infringed the Asserted Claims in this case under a provision of the patent laws that prohibits supplying a substantial portion of the components of the patented product from the United States to another country and inducing the assembly of those components into a product that would infringe an asserted claim of the '651, '435, '359, or '378 patent if the product had been assembled within the United States.

To show infringement under this theory, Genevant must prove each of the following by a preponderance of the evidence:

(1) that the Accused Product that was intended to be assembled outside the United States included all elements of at least one of the Asserted Claims;

(2) that Moderna actually supplied or caused to be supplied components from the United States that made up all or a substantial portion of any one of the Asserted Claims; and

(3) that Moderna specifically intended the combination of the components into a product that would infringe the Asserted Patents if the components had been combined in the United States.[71]

A "substantial portion" of components requires a quantitative, not a qualitative assessment. The export of a single component of a multicomponent invention cannot create liability under this provision of law.

---

[70]   *Prolitec Inc. v. Scentair Techs., Inc.*, No. 1:20-cv-00984-WCB, D.I. 301 (D. Del. Jan. 26, 2024) (as modified for this case); 35 U.S.C. § 271(f)(1).

[71]   *Prolitec Inc. v. Scentair Techs., Inc.*, No. 1:20-cv-00984-WCB, D.I. 301 (D. Del. Jan. 26, 2024) (modified to include party names and capitalize phrased defined herein); AIPLA's Model Patent Jury Instructions (Aug. 18, 2025) at V.3.9; 35 U.S.C. § 271(f)(1).

### 4.6    Infringement by Supplying Components Especially Made or Adapted for Use in the Patented Invention to Another Country[72]

Genevant next asserts that Moderna has infringed the Asserted Claims under a related provision of the patent laws that prohibits supplying components of an invention covered by the Asserted Claims from the United States into a foreign country, where the exported components were specially made or adapted for use in an invention covered by the asserted claims of the '651 patent, '435 patent, '359 patent, or '378 patent.

To show infringement of an Asserted Claim in this way, Genevant must prove each of the following by a preponderance of evidence:

1.    That Moderna supplied components from the United States into a foreign country or caused them to be supplied from the United States to a foreign country;

2.    That Moderna knew or should have known that the components were especially made or adapted for use in a product that infringed an Asserted Claim;

3.    That those components have no substantial non-infringing use; and[73]

4.    That Moderna intended for the components to be combined into that product.

It is not necessary for you to find that the components actually were combined into an infringing product, as long as you find that Moderna intended the component to be combined into a product that would have infringed an Asserted Claim if the complete product had been made in the United States.

---

[72]    *Prolitec Inc. v. Scentair Techs., Inc.*, No. 1:20-cv-0098J4-WCB, D.I. 301 (D. Del. Jan. 26, 2024) (Jury instructions); *CIF Licensing, LLC v. Agere Systems, Inc.*, No. 7-170-JJF, D.I. 369 (D. Del. Feb. 13, 2009) (Jury instructions); 35 U.S.C. § 271(f)(2).

[73]    *Prolitec Inc. v. Scentair Techs., Inc.*, No. 1:20-cv-0098J4-WCB, D.I. 301 (D. Del. Jan. 26, 2024) (Jury instructions); AIPLA's Model Patent Jury Instructions (Aug. 18, 2025) at V.3.11; 35 U.S.C. § 271(f)(2). Moderna's position is that Plaintiffs' proposal inappropriately modified this element of the instructions from *Prolitec* and the statutory language.

In this context, a substantial use of an accused feature is a use that is not occasional,

farfetched, impractical, experimental, or hypothetical.[74]

---

[74]  AIPLA's Model Patent Jury Instructions (Aug. 18, 2025) at V.3.11.

### 4.7    [Plaintiffs' Proposal:  Infringement by Offer for Sale

As I said earlier, one of the ways that a patent may be infringed is if a party makes an offer from within the United States to sell, without the patent owner's permission, a product, apparatus, or method legally protected by at least one claim of a patent, without the patent owner's permission and before the patent expires.  That is called the "offer for sale."][75]

---

[75]  **Moderna's Position:** The instruction is confusing and unnecessary, given the instructions regarding infringement generally and direct infringement in section 4.2.  35 U.S.C. § 271(a) identifies many methods of infringement—i.e., "makes, uses, offers to sell, or sells any patented invention."  Plaintiffs' proposal to have a specific, standalone instruction for "offer for sale" but no separate instructions for making, using, or selling would mislead the jury as to any significance of an "offer for sale."  Plaintiffs did not present a theory of infringement based on an "offer for sale." Although this instruction is on infringement and not damages, Plaintiffs also do not have a theory of damages based on "offer for sale."  Rather, Plaintiffs' damages calculations are ultimately based on sales of the Accused Product.  Plaintiffs' position below conflates the fact that the parties do not dispute a hypothetical negotiation date of May 31, 2020 based on an offer for sale versus an actual damages theory based on an "offer for sale." Plaintiffs' damages expert, Ms. Lawton, also testified at her deposition that she was only seeking to present two theories at trial (if not excluded under *Daubert*, and this specious "offer for sale" theory—which depends entirely on the jury finding that 100% of Moderna's doses sold do not infringe under any theory—was not among them.

**Plaintiffs' Position**: Plaintiffs disclosed an alternative damages theory based on Moderna's May 31, 2020 offer of sale to the U.S. Government.  This instruction is also appropriate because the parties agree in this case that Moderna's first act of infringement was its offer to sell the Accused Product on May 31, 2020.  Accordingly, the parties' experts have adopted the date of this initial offer as the date of the Hypothetical Negotiation.

While Moderna asserts that there are not instructions for other acts of infringement identified in § 271(a), an instruction as to the offer for sale is necessary because Moderna apparently intends to dispute that such an offer *can* be an act of infringement.  Because Moderna intends to make this a disputed issue in this case, an instruction concerning the statutory requirements is warranted.

Moderna also misrepresents Ms. Lawton's deposition testimony.  She never disclaimed a reliance on a damages theory based upon Moderna's May 31, 2020 offer for sale.  Rather, she repeatedly explained that she offered opinions applying royalty rates based upon both her analytical approach and hypothetical negotiation analyses.  *See, e.g.*, Lawton Dep. Tr. 13:6-16:1. The damages that she calculates based upon Moderna's offer for sale are fully disclosed in her expert reports, and apply the same $4.77/dose royalty rate that she calculated using the hypothetical negotiation.  *See* Lawton Open. Expert Report ¶¶ 1654-662.

### 4.8    Willful Infringement[76]

Genevant alleges that Moderna willfully infringed the Asserted Patents.  If you find at least one Asserted Claim was both infringed and not invalid, then you must determine whether the infringement was willful.

Willfulness requires you to determine whether Genevant proved that it is more likely than not that Moderna knew of the Asserted Patents and that Moderna's infringement was intentional or carried out with reckless disregard for Genevant's patents.  You may not determine if the infringement was willful just because Moderna knew of the Asserted Patents and infringed them.  Instead, you must also find that Moderna deliberately or recklessly infringed the Asserted Patents.

To determine whether Moderna acted willfully, consider all facts.  These include, but are not limited to:

1.    Whether Moderna acted consistently with the standards of behavior for the field;

2.    Whether Moderna intentionally copied a [*Plaintiffs' proposal: product licensed by Genevant*] [**Moderna's proposal: Genevant product**][77] that is covered by the Asserted Patents,

---

[76]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case); see also Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) at 3.10; *3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-00083, D.I. 737, Final Jury Instructions (Oct. 16, 2023) (Instruction No. 4, Willful Infringement); *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970, D.I. 404 (May 5, 2022) (Instruction II.I, Willful Infringement); *Cirba Inc. v. VMWare, Inc.*, No. 1:19-cv-00742, D.I. 1767 (Apr. 28, 2023) (Instruction No. 4.8, Willful Infringement).

[77]    *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996) (relevant inquiry is whether the accused infringer intentionally copied the ideas or design of another).

**Moderna's Position:** Neither of the cases Plaintiff cites involves a third-party's or licensee's product. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1324 (Fed. Cir. 2016) (sole inventor owned the entity assigned the patents-in-suit and the company manufacturing products embodying the patent-in-suit); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1410 (Fed. Cir. 1996) (patent-in-suit assigned to same company manufacturing commercial embodiment).

including by copying the limitations of the claim *[Plaintiffs' proposal:, such as the claimed composition or percent of fully encapsulated mRNA]*,[78] but evidence that Moderna copied unpatented features is not evidence of willful infringement;

       3.     Evidence that Moderna copied [*Plaintiffs' proposal: a product licensed by Genevant*] [**Moderna's proposal: Genevant's products**][79] before the issuance of a patent if Moderna continued to sell the infringing products after the patent issued;

---

**Plaintiffs' Position**: Moderna's position improperly would exclude evidence that Moderna copied a licensee's product that embodies the invention claimed in the Lipid Composition Patents/Ratio Patents, such as Onpattro®.  The salient legal question is not whether Moderna copied Plaintiffs' product or a third-party's (or licensee's) product; the question is whether Moderna copied a product that has a nexus to the claimed invention.  *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329–30 (Fed. Cir. 2016); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996) (relevant inquiry is whether the accused infringer "intentionally copied the ideas or design of another").

[78] **Plaintiffs' Position:** This proposal helps provides clarification to the jury regarding the relevant claim limitations to copying.

**Moderna's Position:** Plaintiffs' instruction unnecessarily repeats Plaintiffs' arguments and contentions rather than explaining the legal standards the jury is applying.

[79] *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 21, 2024 Trial Tr.) (modified for party name).

**Moderna's Position:** Neither of the cases Plaintiffs cites involves a third-party's or licensee's product. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1324 (Fed. Cir. 2016) (sole inventor owned the entity assigned the patents-in-suit and the company manufacturing products embodying the patent-in-suit); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1410 (Fed. Cir. 1996) (patent-in-suit assigned to same company manufacturing commercial embodiment).

**Plaintiffs' Position**: Moderna's position improperly would exclude evidence that Moderna copied a licensee's product that embodies the invention claimed in the Lipid Composition Patents/Ratio Patents, such as Onpattro®.  The salient legal question is not whether Moderna copied Plaintiffs' product or a third-party's (or licensee's) product; the question is whether Moderna copied a product that has a nexus to the claimed invention.  *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329–30 (Fed. Cir. 2016); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996) (relevant inquiry is whether the accused infringer "intentionally copied the ideas or design of another").

4.      Whether Moderna reasonably believed it [*Plaintiffs' Proposal: did not infringe or that the Asserted Patents were invalid*][80] **[Moderna's Proposal: had a defense to infringement, such as an invalidity defense]**[81];

_____

[80] *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 21, 2024 Trial Tr.) (modified for party name).

[81]    *SRI Int. Inc. v. Cisco Sys. Inc.*, No. 1:13-cv-01534 (D. Del.), D.I. 336; *EMC Corp. v Zerto, Inc.*, No. 1:12-cv-00959 (D. Del.), D.I. 208 (modified for clarity); *Nanology Alpha LLC v. Witec Wissenschaftliche Instrumente Und Technologie GmBH*, No. 6:16-cv-00445-RWS (E.D. Tex.), D.I. 161 (modified for clarity).

**Plaintiffs' Position**:  Moderna's proposal would unduly confuse a jury into thinking that "[p]roof of an objectively reasonable litigation-inspired defense to infringement" is a proper consideration, despite that this is "no longer a defense to willful infringement."  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).  In addition, Moderna cannot rely on its subjective beliefs regarding defenses to infringement, as it did not disclose such an argument in response to Plaintiffs' interrogatory asking for Moderna's contentions that it did not willfully infringe the Asserted Patents.  *See* Moderna 17th Supp. R&Os to First Set of Rogs. at 60.  Moreover, Moderna repeatedly invoked privilege to preclude discovery on that topic.  *See e.g.*, Deposition Transcript of Dr. Orn Almarsson, 181:11-182:2; Deposition Transcript of Dr. Don Parsons, 80:1-81:6, 132:12-133:5.  Notably, Moderna does not dispute below that it never disclosed a subjective belief of invalidity as in response to Plaintiffs' interrogatories asking for the bases for Moderna's position that it did not willfully infringe the Asserted Patents.  Nor does Moderna dispute that it repeatedly asserted privilege to deny Plaintiffs discovery into Moderna's purported subjective beliefs of invalidity.

Moderna's reliance below on *Sherwin Williams*, is misplaced.  There the court simply held that it was permissible for the accused infringer to rely upon public filings submitted during reexamination proceedings as a defense to willful infringement.  *See Sherwin-Williams Co. v. PPG Indus., Inc.*, No. CV 17-1023, 2020 WL 6803077, at *4 (W.D. Pa. Nov. 19, 2020).  To the extent that Moderna seeks to introduce its own public filings from the IPRs against the Asserted Patents, Plaintiffs do not object to Moderna doing so, so long as Plaintiffs are permitted to offer evidence that those arguments were rejected during the IPR and corresponding appeals to the Federal Circuit.

Otherwise, courts routinely hold that where a party has invoked privilege to preclude discovery into subjective beliefs of invalidity or infringement, then a party cannot rely on that evidence at trial without effecting a subject matter waiver.  *E.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, No. CV 08-309-LPS, 2018 WL 5631531, at *1 (D. Del. Oct. 31, 2018); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 890 (E.D. Wis. 2017).  Moderna's efforts to distinguish these cases (below) fall flat.  Just as in *Power Integrations*, Moderna has not pointed to any non-privileged evidence as a basis for any subjective beliefs that the patents were invalid, but has instead asserted privilege over the bases for such beliefs.  As courts routinely conclude in similar contexts, it is improper to allow a party to "provide testimony

5.    Whether Moderna made a good-faith effort to avoid infringing the Asserted Patents, for example, by attempting to design around the patents; and

6.    Whether Moderna tried to cover up its infringement.

---

or argument that suggests or implies they thought their challenged infringing actions were legal based on knowledge gleaned from their general or overall consultations with counsel, without waiving the privilege as to the relevant attorney-client communications." *Canon, Inc. v. Color Imaging*, 227 F. Supp. 3d 1303, 1309 (N.D. Ga. 2016).

**Moderna's Position:** Plaintiffs are wrong. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340 (Fed. Cir. 2016), does not permit "***litigation-contrived***" "obviousness and non-infringement defenses" to be used to rebut willfulness, under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). But Plaintiffs bear the burden of demonstrating that Moderna acted willfully or recklessly under a subjective standard, *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352 (Fed. Cir. 2019), and courts have consistently permitted evidence of a defendant's good-faith *subjective* belief that it had an infringement or invalidity defense *at the time of infringement* to rebut a patentee's accusation of willfulness or recklessness, *see, e.g.*, *HarcoSemco, LLC v. Herber Aircraft Serv. Inc.*, 2025 WL 2020009, at *1–2 (C.D. Cal. June 20, 2025) (belief in invalidity based on reverse-engineering efforts); *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2024 WL 83505, at *4 (E.D. Tex. Jan. 8, 2024) (belief it was receiving a license). Indeed, "[w]illful infringement is an inquiry that considers the totality of the circumstances." *G+ Commc;ns*, 2024 WL 83505, at *4. Moreover, Plaintiffs are plainly incorrect that Moderna cannot provide evidence of its subjective beliefs regarding defenses to infringement solely because Moderna declined to waive privilege. *Sherwin-Williams Co. v. PPG Indus., Inc.*, 2020 WL 6803077, at *3 (W.D. Pa. Nov. 19, 2020) (declining to exclude non-privileged evidence of subjective good faith as a defense to willful infringement of patent where defendant declined to waive privilege). Plaintiffs' attempt to distinguish *Sherwin-Williams* splits hairs without meaningfully contesting the at-bottom result: that the court considered evidence of subjective belief without a waiver of privilege. *Id.* Moreover, *Power Integrations* and *Milwaukee Electric Tool* did not create the general rule advanced by Plaintiffs. The court in *Power Integrations* excluded certain evidence because, without the waiver of privilege in that case, there was insufficient "linking evidence that would allow a reasonable factfinder to find that [defendant] subjectively believed in its defenses." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, No. CV 08-309-LPS, 2018 WL 5631531, at *1 (D. Del. Oct. 31, 2018). The court did not foreclose the admission of evidence of subjective belief without waiving privilege—merely the admission of such evidence where the only link to the alleged infringer's subjective belief was the advice of counsel, and where the alleged infringer had not waived privilege. *Id.* And in *Milwaukee Electric Tool*, the court emphasized that employees' own subjective beliefs regarding invalidity were probative of the company's subjective beliefs regarding invalidity. *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 872, 890 (E.D. Wis. 2017). The court ultimately excluded evidence of the employees' beliefs based on "the danger of juror confusion" alone—not based on Plaintiffs' purported rule. *Id.* at 891.

73

[**Moderna's Proposal: If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages you award for infringement.**][82]

---

[82]    **Moderna's Position:** Moderna's proposal is supported by case law and  is not confusing. Given the potential prejudice to Moderna if damages are increased due to a finding a willful infringement, Moderna maintains this instruction is appropriate both here and in any appropriate damages instructions, particularly where Plaintiffs propose that the jury is instructed on, and asked to decide, willfulness immediately before damages. *3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-00083, D.I. 737, Final Jury Instructions (Oct. 16, 2023) (Instruction No. 4, Willful Infringement); *see also* AIPLA's Model Patent Jury Instructions (Aug. 18, 2025) at V.11.1.

**Plaintiffs' Position:** Plaintiffs object to Moderna's inclusion of this instruction as it is may confuse the jury and is repetitive of language already included below with respect to the quantum of damages.  The damages instruction should be given all at once, rather than piecemeal, to ensure the jury understands it accurately.

5.    **INVALIDITY**

**5.1    Patent Invalidity Generally[83]**

I will now instruct you on the rules you must follow in deciding whether Moderna has proven that the Asserted Claims are invalid.  [*Plaintiffs' Proposal: The granting of a patent by the United States Patent and Trademark Office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent.  Each of the Asserted Claims is presumed valid independently of the validity of each other claim.  This presumption puts the burden on Moderna of proving invalidity by clear and convincing evidence on a claim-by-claim basis.  That is, you must be left with an abiding conviction that each Asserted Claim is invalid.*]  As a reminder, proof by clear and convincing evidence is a higher burden than proof by preponderance of the evidence.  *[Plaintiffs' Proposal: This burden may be more difficult to meet when Moderna attempts to rely on prior art that has been before the Patent Office during examination of the Asserted Patents.[84]*]

---

[83]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) (slightly modified).

[84]    **Moderna's Position:** This instruction is unfairly prejudicial, by bolstering the Patent Office. Additionally, the last sentence in this paragraph should not be included in the general invalidity instruction—it is specific to prior art, not all invalidity defenses. Additionally, the factfinder is allowed *not* to give weight to the prior art having been before the Patent Office. *Sciele Pharma*, 684 F.3d 1253, 1260–61 (Fed. Cir. 2012). Further, Plaintiffs have repeated the legal standard for invalidity **over 30 times** in these instructions (including three times in this instruction only)—this is unnecessary and their continued efforts to expand, complicate, and duplicate the instructions throughout these materials is prejudicial and inappropriate.

**Plaintiffs' Position:** This instruction, including the last sentence, is substantively identical to that read to the jury in *Med-El*, with the only modifications made to replace party names and patent claims with those in this case.  *Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) at 663:18-664:5.  Additionally, even the case Moderna cites acknowledges that "whether a reference was before the PTO goes to the weight of the evidence."  *Sciele Pharma*, 684 F.3d 1253, 1260–61

As with infringement, you must determine whether each Asserted Claim is invalid on a claim-by-claim basis. As I instructed you earlier, there are independent claims and dependent claims of a patent. Claims are defined in the same way for determining infringement as they are for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement as you do for issues of invalidity.

Moderna alleges that certain Asserted Claims of the '651 Patent are invalid because:

1.  The claims are anticipated.

2.  The claims are obvious.

3.  The claims are indefinite.

4.  The specification of the Asserted Patents does not contain an adequate written description of the full scope of the claims.

5.  The specification of the Asserted Patents does not enable a person of ordinary skill in the art to make and use the full scope of the claimed invention.

---

(Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered.").

While Moderna takes issue with the repeated legal standard for invalidity, Plaintiffs' burdens are repeated no less than *35 times* in these instructions, including multiple times in a single instruction. For each defense Moderna asserts, it is important for the jury to understand which side bears the burden of proof, just as it is important for the jury to understand which side bears of burden of proving infringement, willfulness, objective indicia of non-obviousness, and damages. Additionally, Moderna itself has repeatedly proposed instructions likely to confuse the jury about the ultimate burden of proof, such as instructions on situations where the burden of production may shift or where a presumption may apply. It is unfairly prejudicial to Plaintiffs to allow Moderna to introduce such law without reminding the jury following those instructions where Moderna maintains the ultimate burden of proof, which necessitates additional references to the burden.

6.      The claimed invention was derived from Moderna.

Moderna alleges that certain Asserted Claims of the Lipid Composition Patents/Ratio Patents are invalid because:

1.      The claims are obvious.

2.      The claims are indefinite.

3.      The specification of the Asserted Patents does not contain an adequate written description of the full scope of the claims.

4.      The specification of the Asserted Patents does not enable a person of ordinary skill in the art to make and use the full scope of the claimed invention.

I will now explain each of these defenses in more detail.

## 5.2    Person of Ordinary Skill in the Art[85]

At several points in these instructions, you will hear me refer to a "person of ordinary skill in the art," because many issues in patent law are judged from that perspective. The hypothetical person of ordinary skill in the art is presumed to be aware of all the prior art at the time of the invention.

I will provide more detailed instructions to you later, but ultimately, you must determine the level of ordinary skill in the field of invention. In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including, but not limited to: The levels of education and experience of the inventors and other persons actively working in the field; the types of problems encountered in the field; prior art solutions to those problems; rapidity with which the innovations are made; and the sophistication of the technology.

---

[85]    *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970, D.I. 404, (May 5, 2022) (Instruction II.M, Person of Ordinary Skill in the Art); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW); *TRUSTID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 (D. Del. July 16, 2021).

**Moderna's Proposal:** The instruction on a person of ordinary skill in the should be moved up in the instructions because the concept of the person of ordinary skill in the art applies to other issues (e.g., claim scope). *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 21, 2024 Trial Tr.); *Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.).

**Plaintiffs' Position:** It is critical that the instruction on a person of ordinary skill be given during validity, where it is most relevant. Consequently, this instruction is given alongside validity across model jury instructions as well as in past jury instructions given by the Court. *See, e.g.*, *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970, D.I. 404, (May 5, 2022) (Instruction II.M, Person of Ordinary Skill in the Art); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW); *TRUSTID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 (D. Del. July 16, 2021).

### 5.3    Priority Date[86]

[*Plaintiffs' Proposal: Before you can consider what is prior art, you must determine the invention date for the Asserted Patents. The invention date is the date of conception. Essentially, the day that an inventor came up with a definite and permanent idea of the complete and operative invention.*] In this case, the date of conception is relevant only to determining whether you may consider two references as prior art against the Asserted Patents: the international patent application WO 2013/090648, filed in 2012, which I will refer to as the Moderna 2012 Patent Application which Moderna alleges is a prior invention, and the U.S. Patent Publication US 2010/0015218 to Jadhav, which I will refer to as Jadhav '218, which Moderna alleges is prior art.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. [87] **[Moderna's Proposal: An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he or she hopes to pursue.[88]]** [*Plaintiffs' Proposal: In that regard, the conception analysis necessarily turns on the inventor's ability to describe his invention with*

---

[86]    *See Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) (slightly modified); FCBA Model Patent Jury Instructions 4.3a-2 (slightly modified).

**Moderna's Position**: This section may be simplified after the issues narrow further for trial.

[87]    *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

[88]    *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

*particularity.  An inventor need not know that his invention will work for conception to be complete.[89]]* **[Moderna's Proposal: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose or when a patent application describing the invention is filed.[90]]** [*Plaintiffs' Proposal:  Reduction to practice may be actual or constructive.  An actual reduction to practice occurs when the inventor has made an embodiment of the invention and determined the invention would work for its intended purpose.[91] The law does not require commercial or market readiness; prototypes and benchtop embodiments*

---

[89]    *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

**Plaintiffs' Position**: Moderna's proposal is one-sided and unfairly prejudicial to Plaintiffs, ignoring the key formulation of the law in the very case it cites.  However, should Moderna's prior proposal be read, this additional clarifying language from the same case should be read as well.

**Moderna's Position**: Moderna's instruction is balanced in describing both what is and is not sufficient.

[90]    FCBA Model Patent Jury Instructions at p. 78.

**Moderna Position:** this instruction is warranted given Plaintiffs' contention that filing the 2002 priority application constituted constructive reduction to practice for the '651 Patent, which Moderna disputes.

**Plaintiffs' Position**: The parties agree, per Moderna's footnote above, that only conception is at issue and that reduction to practice is not disputed.  *Supra* n. **Error! Bookmark not defined.** ("Moderna's position is that conception is disputed.").  Notably, this footnote had been left in the proposal and referenced in this position statement for nearly a week until the morning of the filing of these instructions, when Moderna revised the original line, which read "Moderna's position is that conception is disputed, *not reduction to practice*."  Moderna's proposal, which instructs the jury on reduction to practice, is unnecessarily confusing to the jury and unfairly prejudicial to Plaintiffs to the extent that it implies Plaintiffs need to show facts not in dispute. Additionally, Moderna has disclosed no evidence or expert opinions regarding constructive reduction to practice of the Asserted Patents, or any evidence or opinions on reduction to practice of the '651 Patent.  Moderna's proposal seeks to needlessly complicate these instructions beyond what the parties will argue.  Finally, Moderna's proposed instruction conflates actual reduction to practice and constructive reduction to practice, and interjects such proposal in the middle of instructions on conception, appearing to further attempt to conflate conception and reduction to practice.  This degree of confusion is unnecessary, particularly on a point the parties agree is undisputed.

[91] *In re Steed*, 802 F.3d 1311, 1318 (Fed. Cir. 2015).

can be sufficient.[92]   *A constructive reduction to practice occurs when a patent application describing the invention is filed.[93]*]  This requirement does not mean that the inventor has to have a prototype built, or have actually explained her or his invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

With respect to the '651 Patent, Genevant filed the application for the '651 Patent on June 13, 2014, and the related U.S. application data for the '651 Patent lists a provisional patent application filed June 28, 2002.  Genevant contends that the invention date for the Asserted Claims of the '651 Patent is June 28, 2002 (that is, the filing date for the provisional patent application).  [*Plaintiffs' Proposal: Moderna disputes that and contends that the invention date is June 13, 2014.*]  [**Moderna's Proposal: Moderna disputes that and contends that Plaintiffs' earliest possible conception date is June 13, 2014, when Plaintiffs filed the application that issued as the '651 Patent with claims to lipid formulations comprising fully encapsulated mRNA.**][94]

---

[92] *Scott v. Finney*, 34 F.3d 1058, 1061-62 (Fed. Cir. 1994).

[93] *Frazer v. Schlegel*, 498 F.3d 1283, 1288 (Fed. Cir. 2007).

[94]   **Moderna's Position:** Plaintiffs' proposal is inaccurate. Moderna does not contend that the invention date **is** June 13, 2014, rather Moderna argues that the **earliest possible conception date** is June 13, 2014. *E.g.*, D.I. 663-30, Prud'homme Reply Report, ¶ 138. Plaintiffs' instruction incorrectly suggests that Moderna agrees that there was conception on June 13, 2014. Plaintiffs previously acknowledged Moderna's position that both "**the '651 patent** and its 2002 priority application do not adequately describe and enable the claimed invention." D.I. 592, ¶ 131.

**Plaintiffs' Position**: Moderna has not asserted any conception date later than June 13, 2014, and the law is clear that at the latest, filing of patent claims constitutes conception, *see Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application.").  Even

You will have to determine whether the invention date is June 28, 2002, or is June 13, 2014 [**Moderna's Proposal:** or later.][95]

The invention date will determine the prior art available to the '651 Patent. In making this determination, Genevant has *[Plaintiffs' Proposal: an obligation to put forward]* [**Moderna's Proposal:** an initial burden to produce][96] evidence linking the Asserted Claims in the '651 Patent

---

Moderna's own citation purportedly preserving this argument does not disclose any actual later date. D.I. 663-30, Prud'homme Reply Report, ¶ 138 ("the earliest possible priority date of the '651 patent is June 13, 2014, the date on which the application that issued as the '651 patent was filed"). Moderna's citation to D.I. 592 is irrelevant, as it refers to a disputed priority date of *2002*, not dates later than *2014* Moderna is now claiming to also dispute. Moderna's proposed language implying a later conception date than it has argued or than is supported by the law, as well as its repeated references to its only proposed conception date as the "earliest possible conception date" is unduly prejudicial to Plaintiffs, and its expert's use of the same phrase with no further detail does not entitle Moderna to instruct the jury on an argument it has not further articulated.

[95] **Moderna's Position:** Plaintiffs' proposal is inaccurate. Moderna does not contend that the invention date *is* June 13, 2014, rather Moderna argues that the ***earliest possible conception date*** is June 13, 2014. *E.g.*, D.I. 663-30, Prud'homme Reply Report, ¶ 138.

**Plaintiffs' Position**: Moderna has not asserted any conception date later than June 13, 2014, and the law is clear that at the latest, filing of patent claims constitutes conception, *see Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the application."). Even Moderna's own citation purportedly preserving this argument does not disclose any actual later date. D.I. 663-30, Prud'homme Reply Report, ¶ 138 ("the earliest possible priority date of the '651 patent is June 13, 2014, the date on which the application that issued as the '651 patent was filed"). Moderna's proposed language implying a later conception date than it has argued or than is supported by the law, as well as its repeated references to its only proposed conception date as the "earliest possible conception date" is unduly prejudicial to Plaintiffs, and its expert's use of the same phrase with no further detail does not entitle Moderna to instruct the jury on an argument it has not further articulated.

[96] **Plaintiffs' Position**: Use of the word "burden" to describe a burden of production is needlessly confusing to the jury and unfairly prejudicial to Plaintiffs to the extent such confusion distracts the jury from Moderna's ultimate burden of proof to demonstrate invalidity by clear and convincing evidence. *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) ("[M]entioning the defendant's burden of production in jury instructions risks confusing the jury about who bears the burden of persuasion throughout the trial"); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000). Plaintiffs' proposal communicates the same substantive point using language unlikely to confuse the jury.

to an invention date of June 28, 2002 [*Plaintiffs' Proposal: , or to some other date before June 13, 2014*[97]]. You must compare the claimed subject matter of the Asserted Claims of the '651 Patent with the application filed on June 28, 2002, and determine whether the application reasonably conveys to one of skill in the art that the inventor was mentally in possession of the subject matter claimed in the '651 Patent at the time the application was filed on June 28, 2002. **[Moderna's Proposal: Because Genevant is relying on the June 28, 2002 patent application as evidence of conception, Genevant has the burden to show that this patent application discloses all limitations of the Asserted Claims of the '651 Patent. In other words, Genevant must show that the June 28, 2002 patent application provides support for all limitations of the Asserted**

---

[97]    **Moderna Position:** Moderna objects to Plaintiffs' attempt to rely on a conception date later than 2002 and before 2014 as Plaintiffs did not disclose any alternative conception dates during discovery, and unambiguously represented to Moderna that they would be relying on the filing date of the 2002 application as conception and constructive reduction to practice, including in response to Moderna's Interrogatory No. 1 on alleged conception and reduction to practice and in any expert report. The cited ¶ 484 of Dr. Murthy's report referring to the 2009 formulation attempt does not describe it as conception ("Plaintiffs formulated mRNA-LNPs embodying the claimed invention in November 2009,").

The embodiment Plaintiffs refer to was not made by the named inventors, and Plaintiffs did not claim it was a conception date.

**Plaintiffs' Position**: Plaintiffs maintain that the proper conception date is June 28, 2002 (the filing date for the provisional patent application), but have also raised evidence supporting later conception dates before June 13, 2014, such as Plaintiffs' first physically making an embodiment of the claims in 2009. *See, e.g.*, Plaintiffs' Response to Moderna's Interrogatory No. 7; Feb. 2, 2014 Responsive Expert Report of Dr. Niren Murthy ¶ 484. Plaintiffs' response to Moderna's Interrogatory No. 1 only stated that they would not propose an *earlier* date with respect to the '651 patent. Moderna's argument that Plaintiffs' creation of an embodiment of the claimed invention does not describe conception makes little sense: creation of an embodiment and appreciation of what was made (which is undisputed) constitutes conception. *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1341 (Fed. Cir. 2001).

Further, the embodiment Plaintiffs refer to was made in a collaboration under the supervision of lead inventor Ian MacLachlan, and was reported to Dr. MacLachlan at the time as part of his supervision. Moderna once again confuses the concepts of conception and reduction to practice by making an argument based in reduction to practice in objecting to this instruction on conception.

Claims of the '651 Patent in the manner required by § 112.][98]  If not, then Genevant is not entitled to rely on the earlier patent application for its invention date.

[*Plaintiffs' Proposal:* If Genevant produces some evidence to support its position, then the burden is fully on Moderna to prove by clear and convincing evidence that Genevant is not entitled to claim priority to June 28, 2002 and that the invention date for the '651 Patent is June 13, 2014.][99]

With respect to the Lipid Composition Patents/Ratio Patents, Genevant filed a provisional patent application on April 15, 2008.  Genevant contends that the invention date for the Asserted Claims of the Lipid Composition Patents/Ratio Patents is November 14, 2006, with the exception

---

[98]  *Brown v. Barbacid*, 276 F.3d 1327, 1336 (Fed. Cir. 2002) ("A conception must encompass all limitations of the claimed invention"); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1323 (Fed. Cir. 2013) (rejecting conception date for failure to demonstrate evidence "satisfie[d] all the limitations recited in [the asserted claims]"); *In re Chu*, 66 F.3d 292, 297 (Fed.Cir.1995) ("It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.").

[99]  **Moderna's Position:** Plaintiffs' proposal is an inaccurate statement of the law. Moderna has identified the Moderna 2013 Patent Application as an intervening prior art reference, and in such circumstances, the law is clear that the patentee bears a burden of production to show the priority application has § 112 support for the later-filed claims. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

**Plaintiffs' Position**: Moderna's proposal is the inaccurate statement of the law, which improperly attempts to shift the burden of persuasion to Plaintiffs, *contra* Moderna's objection in the next footnote.  Further, none of Moderna's cited cases support its proposition: both *Brown* and *In re Chu* involve interference proceedings where the question is not whether the patentee or the accused infringer bears the burden of proof, but *which* patentee bears the burden of proof between the junior and senior parties.  And *Taurus* itself expressly states that the burden of proof never shifts: "After an accused infringer has put forth a prima facie case of invalidity, the burden of *production* shifts to the patent owner to produce sufficient rebuttal evidence to prove entitlement to an earlier invention date.  The ultimate burden of proving invalidity by clear and convincing evidence—i.e., the burden of *persuasion*—however, remains with the accused infringer."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013) (emphasis in original).

Additionally, Plaintiffs object to Moderna's instruction referencing the "burden" of production at all.  *See United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) ("[M]entioning the defendant's burden of production in jury instructions risks confusing the jury about who bears the burden of persuasion throughout the trial"); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000).

of claims 13, 18, and 19 of the '378 Patent, which it contends have an invention date of April 15, 2008. [*Plaintiffs' Proposal: Moderna disputes that and contends that the invention date is April 15, 2008, for all Asserted Claims of the Lipid Composition Patents/Ratio Patents.*] [**Moderna's Proposal: Moderna disputes that and contends that Plaintiffs' earliest possible conception date is April 15, 2008 for all Asserted Claims of the Lipid Composition Patents/Ratio Patents.**][100] You will have to determine whether the invention date of most Asserted Claims of the Lipid Composition Patents/Ratio Patents is November 14, 2006, or is April 15, 2008 **Moderna's Proposal:** [or later].[101]

---

[100] **Moderna's Position:** Plaintiffs' proposal is inaccurate. Moderna does not contend that the invention date *is* April 15, 2008, rather Moderna argues that the ***earliest possible conception date*** is April 15, 2008. *E.g.*, Prud'homme Reply Report, ¶ 138.

**Plaintiffs' Position**: Moderna has not asserted any conception date later than April 15, 2008, and the law is clear that at the latest, filing of patent claims constitutes conception. *See Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Even Moderna's own citation purportedly preserving this argument does not disclose a later date. D.I. 663-30, Prud'homme Reply Report, ¶ 138 ("the earliest possible priority date of the '651 patent is June 13, 2014, the date on which the application that issued as the '651 patent was filed"). Moderna's proposed language implying a later conception date than it has argued or than is supported by the law, as well as its repeated references to its only proposed conception date as the "earliest possible conception date" is unduly prejudicial to Plaintiffs, and its expert's use of the same phrase with no further detail does not entitle Moderna to instruct the jury on an argument it has not articulated.

[101] **Moderna's Position:** Plaintiffs' proposal is inaccurate. Moderna does not contend that the invention date *is* April 15, 2008, rather Moderna argues that the ***earliest possible conception date*** is April 15, 2008. *E.g.*, Prud'homme Reply Report, ¶ 138.

**Plaintiffs' Position**: Moderna has not asserted any conception date later than April 15, 2008, and the law is clear that at the latest, filing of patent claims constitutes conception, *see Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Even Moderna's own citation purportedly preserving this argument does not disclose a later date. D.I. 663-30, Prud'homme Reply Report, ¶ 138 ("the earliest possible priority date of the '651 patent is June 13, 2014, the date on which the application that issued as the '651 patent was filed"). Moderna's proposed language implying a later conception date than it has argued or than is supported by the law, as well as its repeated references to its only proposed conception date as the "earliest possible conception date" is unduly prejudicial to Plaintiffs, and its expert's use of the same phrase with no further detail does not entitle Moderna to instruct the jury on an argument it has not articulated.

The invention date will determine the prior art available to the Lipid Composition/Ratio Patents. [**Moderna's Proposal: While Moderna bears the burden to show that references are prior to the Lipid Composition Patents/Ratio Patents, Genevant must meet its burden to demonstrate an earlier conception date.**][102]  In making this determination, Genevant has an

---

[102] **Moderna's Position:** Moderna's proposal clarifying that Plaintiffs have the burden to demonstrate an earlier conception date is supported by case law. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014). Here, the language differs from the '651 patent because, derivation is not disputed with respect to the Lipid Composition Patents/Ratio Patents. Plaintiffs do not dispute that they do indeed have the burden of production to show they are entitled to an earlier conception date, but appear to take issue with simply telling the jury that. Instead, Plaintiffs conflate the burden of production with the burden of persuasion in an attempt to manufacture the threat of jury confusion. The jury **would be** confused if they are not told that Plaintiffs do indeed have the burden of production. The jury would be further confused by the statement that "**some** evidence" must be produced by Genevant if it is not accompanied with an explanation of how much evidence is required and how to assess it (*i.e.*, a statement that Genevant must satisfy the burden of production). Although Moderna's proposals are straightforward, to the extent there is any confusion, it would be remedied by explaining what the burdens of production/persuasion require, not entirely ignoring that Plaintiffs have the burden of production.

**Plaintiffs' Position**: As Plaintiffs have articulated above, Moderna's proposal is unfairly prejudicial in attempting to shift the burden to Plaintiffs and confuse the jury to detract from its own burden of proving invalidity via derivation, and Moderna is legally incorrect in proposing such. *Every single case* Moderna has cited involving the burden between a patentee and accused infringer expressly states that Plaintiffs do not bear the "burden to demonstrate an earlier conception date," *contra* Moderna's proposed language. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) ("While defendants bear the burden of persuasion to show that the Brandt references are prior art to the '404 patent by clear and convincing evidence, the patentee nevertheless must meet its burden of *production* to demonstrate an earlier conception date.") (emphasis added); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("Neither TLC's burden to prove infringement nor Gennum's burden to prove invalidity, both ultimate burdens of persuasion, ever shifts to the other party—the risk of decisional uncertainty stays on the proponent of the proposition."), 1328 ("Assuming then that TLC's evidence and argument in support of the earlier filing date is now before the court, the burden of going forward again shifts to the proponent of the invalidity defense, Gennum, to convince the court that TLC is not entitled to the benefit of the earlier filing date. 'Convince' is the operative word, because if the court is not persuaded by clear and convincing evidence that Gennum is correct, Gennum has failed to carry its ultimate burden of persuasion."). Moderna has not put forward any instruction clarifying the role of the burden of production vs the burden of persuasion, and Plaintiffs' position is that such an instruction would be wholly unnecessary and confusing to the jury.

obligation to put forward evidence linking the Asserted Claims in each patent to an invention date of November 14, 2006.

If Genevant produces some evidence to support its position, then the burden is fully on Moderna to prove by clear and convincing evidence that Genevant is not entitled to claim an invention date of November 14, 2006.

---

Plaintiffs also dispute Moderna's assertion that the jury is not being informed of Plaintiffs' burden of production: the parties' joint instruction following this proposal already points to "Genevant['s] obligation to put forward some evidence" in this regard.  Plaintiffs object to Moderna's instruction referencing the word "burden," which risks confusing to the jury.  *See United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) ("m[M]entioning the defendant''s burden of production in jury instructions risks confusing the jury about who bears the burden of persuasion throughout the trial"); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000).

Additionally, the proposed language without Moderna's addition mirrors the format that the parties agreed to for the '651 Patent in this family.  If anything, there being fewer issues in dispute should lead to *fewer* complexities and instructions, and does not support Moderna's attempt to bog down the jury with more instructions to make up for its fewer defenses.

## 5.4    Prior Art[103]

You have heard the attorneys and witnesses speak of "prior art" throughout this trial. "Prior art" is the term that patent law uses to describe what others had done in the field before the invention was made.  Prior art is the general body of knowledge in the public domain in this country or a foreign country before the invention was made, such as: items that were publicly known or that have been used or offered for sale; and references, like publications or other patents, that purportedly disclosed the claimed invention or elements of the claimed invention.  The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself to prior arts' contents.

It is the burden of the party alleging invalidity to establish that a particular document or thing is, in fact, prior art to the challenged patent claim.

Moderna contends that the following is prior art to the '651 Patent: the international patent application WO 2013/090648 to de Fougerolles, filed in 2012, which I will refer to as the Moderna 2013 Patent Application; the 2001 journal article by Semple, which I will refer to as Semple Article; the 1989 journal article by Malone, which I will refer to as Malone 1989; international patent application WO 98/51278 by Semple, which I will refer to as Semple '278; U.S. Patent 6,271,208 to Bischoff, which I will refer to as Bischoff; the 2002 journal article by Adler-Moore, which I will refer to as Adler-Moore 2002; and U.S. Patent 6,110,745 to Zhang, which I will refer to as Zhang '745.

---

[103]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (modified to fit this case); FCBA Model Patent Jury Instructions 4.3a-2 (modified to fit this case).

Moderna contends that Moderna's 2013 Patent Application is prior art because Ian MacLachlan derived the formulation in the asserted '651 Patent claims from Moderna. [104]

*[Plaintiffs' Proposal: To establish that the Moderna 2013 Patent Application is prior art, Moderna must prove by clear and convincing evidence that Genevant is not entitled to claim a priority date for the '651 patent of June 28, 2002, as explained in the previous section on Priority Date.][105]*

**[Moderna's Proposal: To establish that the Moderna 2013 Patent Application is not prior art, Genevant must meet a burden of production to show that the '651 Patent claims are**

---

[104] FCBA Model Patent Jury Instructions 4.3a-2 (modified for this case).

[105] **Moderna's Position:** Plaintiffs' position is an inaccurate statement of the law. Moderna has identified the Moderna 2013 Patent Application as an intervening prior art reference, and in such circumstances, the law is clear that the patentee bears a burden of production to show the priority application has § 112 support for the later-filed claims. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

**Plaintiffs' Position**: Plaintiffs' proposal is a correct statement of the law, and Moderna's proposal seeking to instruct the jury on incorrect law by misrepresenting cases demonstrates precisely why this instruction is necessary.  Moderna's case makes clear, as Moderna correctly states in its argument, that the burden of *production* shifts to Plaintiffs to put forward evidence that the claimed limitations are described in the application, but Moderna omits the Federal Circuit's clear holdings in this case both that a) the burden of proof remains on Moderna, and b) once Plaintiffs make a showing, the burden going forward shifts back to Moderna.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("Neither TLC's burden to prove infringement nor Gennum's burden to prove invalidity, both ultimate burdens of persuasion, ever shifts to the other party—the risk of decisional uncertainty stays on the proponent of the proposition."), 1328 ("Assuming then that TLC's evidence and argument in support of the earlier filing date is now before the court, the burden of going forward again shifts to the proponent of the invalidity defense, Gennum, to convince the court that TLC is not entitled to the benefit of the earlier filing date.  'Convince' is the operative word, because if the court is not persuaded by clear and convincing evidence that Gennum is correct, Gennum has failed to carry its ultimate burden of persuasion.").

Plaintiffs also object to the reference in Moderna's proposal to a "burden of production."  Such an instruction would be confusing to the jury, especially as the concept can be described without using the term "burden".  Moderna's attempt to instruct the jury on the "burden" of production risks confusing the jury into thinking Plaintiffs bear the burden to prove validity, when they do not.  *See United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) ("[M]entioning the defendant's burden of production in jury instructions risks confusing the jury about who bears the burden of persuasion throughout the trial"); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000).

entitled to the benefit of a filing date prior to the Moderna 2013 Patent Application. This requires Genevant to produce sufficient evidence and argument to show that the June 28, 2002 application supports and enables all limitations of the Asserted Claims of the '651 Patent in the manner required by § 112.] To prove derivation, Moderna must show by clear and convincing evidence that Moderna conceived of this invention first and [Moderna's position: that Moderna's conception was communicated to Ian MacLachlan] [*Plaintiffs' Position: communicated it to Ian MacLachlan.*][106]

Moderna contends that the following is prior art to the '435 Patent: U.S. Patent Publication US 2006/0240554 to Chen, which I will refer to as Chen '554; the 1996 journal article by Semple, which I will refer to as Semple 1996; Plaintiffs' 2:40 Formulation; US Patent Publication US 2010/0015218 to Jadhav, which I will refer to as Jadhav '218; the Semple Article; US Patent Publication 2006/0134189, which I will refer to as MacLachlan '189; and the 2005 journal article by Heyes, which I will refer to as Heyes 2005.

Moderna contends that the following is prior art to the '359 patent: the Chen '554 patent publication; the Semple 1996 journal article; the Semple Article; Plaintiffs' 2:40 Formulation; the Jadhav '218 patent publication; and the MacLachlan '189 patent publication.

And Moderna contends that the following prior art to the '378 patent: the Chen '554 patent publication; the Semple 1996 journal article; the Semple Article; Plaintiffs' 2:40 Formulation; the

---

[106] *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003).

**Plaintiffs' Position**: Moderna's instruction is confusing and unfairly prejudicial to Plaintiffs by implying that it is the burden of proof, rather than the burden of production, that shifts to Plaintiffs. *See United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) ("[M]entioning the defendant's burden of production in jury instructions risks confusing the jury about who bears the burden of persuasion throughout the trial"); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000).

Jadhav '218 patent publication; the Malone 1989 publication; and the MacLachlan '189 patent publication.

You must determine whether Jadhav '218 is prior art that can be considered in determining whether the Asserted Claims of the '435 Patent and '359 Patent and claims 2 and 7 of the '378 Patent are anticipated or obvious.

Moderna contends that Jadhav '218 is prior art because it is a U.S. published patent application filed by another person before April 15, 2008, which is the filing date of the provisional application for the Lipid Composition/Ratio Patents.[107]  Genevant contends that Jadhav '218 is not prior art, because it is filed after November 14, 2006, which Genevant asserts is the priority date for most Asserted Claims.  If you find the priority date of these claims of the Lipid Composition Patents/Ratio Patents to be November 14, 2006, you cannot consider Jadhav '218 in determining whether the Asserted Claims of the '435 Patent and '359 Patent and claims 2 and 7 of the '378 Patent are obvious.

---

[107]  AIPLA's Model Patent Jury Instructions (Jan. 2, 2024) at V.6.8.1.

## 5.5    Anticipation[108]

Moderna contends that the Asserted Claims of the '651 Patent are invalid for anticipation by the prior art.  Moderna bears the burden of establishing anticipation by clear and convincing evidence.

In order for someone to be entitled to a patent, the invention must be "new."  In general, inventions are new when the identical invention claimed has not been used or disclosed before.  If the claim is not new, then we say that it was "anticipated" by prior art.  As I just explained, prior art is the general body of knowledge in the public domain, such as articles or other patents before the claim was made.  A claim that is "anticipated" by the prior art is not entitled to patent protection.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. In order to rely on a particular prior art to show that the claimed invention was anticipated, the prior art must provide an enabling disclosure with respect to the disclosed subject matter.[109]

[**Moderna's Proposal: Prior art for the purposes of anticipation must teach a person of ordinary skill in the art to carry out the invention (i.e., it must be enabled).[110]  Disclosures in**

---

[108]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also Bd. of Regents, Univ. of Texas Sys. v. Boston Sci. Corp.*, C.A. No. 18-392 (D.I. 326) (D. Del. Jan. 31, 2023) (Final Jury Instructions, Phase 1); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 605 (GBW).

[109]  *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 297 (Fed. Cir. 1985) (modified slightly); *see also Marktek Biosciences Corp. v. Nutrinova Inc.*, C.A. No. 1:03-cv-00896-GMS D.I. 269 (D. Del. Oct. 19, 2006) (jury instructions as read).

[110]  *Impax Lab'ys, Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1381 (Fed. Cir. 2006); *Agilent Techs., Inc. v. Synthego Corp.*, 139 F.4th 1319, 1327 (Fed. Cir. 2025).

a prior art patent are presumed enabled.[111]  **If a prior art reference contains a similar level of disclosure to the asserted patent, that is sufficient to meet the prior art standard of enablement.[112]][113]** *[Plaintiffs' Proposal: However, Genevant may argue that the disclosures of a prior art patent are not enabled and therefore are not pertinent prior art.[114]  A prior art reference is not enabling if it is inoperative without modification, in which case it cannot be anticipatory even if said prior art meets the textual requirements of the claims absent modification.[115]  Prior art enablement cannot be determined by comparing the disclosures of a prior art reference to the disclosures of the asserted patent that it purportedly anticipates, instead the question is whether the disclosure of the prior art reference is itself enabling.[116] If Genevant presents evidence of non-enablement that you find persuasive, you must then exclude that particular prior art reference for anticipation purposes, as the presumption has been overcome.[117]][118]  [Plaintiffs' Proposal:*

---

[111]  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

[112]  *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1193–94 (Fed. Cir. 2008).

[113]  **Moderna's Position:** Moderna's proposal includes three simple statements about ***standards*** for enablement of prior art—all which are supported by law. Plaintiffs' counterproposal is filled with complexities, including their own arguments, which are inappropriate in a jury instruction.

**Plaintiffs' Position**: Moderna's proposal is not a complete statement of the law.  Moderna does not dispute that Plaintiffs are entitled to rebut the presumption of enablement that attaches to prior art patents.  Plaintiffs' instruction provides the law relevant to that issue, which Moderna's instruction entirely ignores in a prejudicial and biased manner.  Moderna does not contest that Plaintiffs' instruction is accurate as a matter of law nor does Moderna identify which statements of law constitute Plaintiffs' "own arguments."

[114]  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

[115]  *Apple Inc. v. Corephotonics, Ltd.*, 861 Fed. Appx 443, 450-51 (Fed. Cir. 2021).

[116]  *Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*, 955 F.3d 16 (Fed. Cir. 2020); *In re Morsa*, 713 F.3d 104, 110-111 (Fed. Cir. 2013).

[117]  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

[118]  **Moderna's position:** Plaintiffs' proposal adds unnecessary complexity to the prior art enablement question, including by repeating the enablement standard that is Moderna's proposal

*Although the standard of evaluating prior art enablement is the same as evaluating enablement of the patent claims themselves, which I will describe in more detail below, a finding that the prior art is not enabled does not mean that the patent claims are not enabled, as additional enabling teachings may be provided by the patent specifications. And ultimately, Moderna always bears the ultimate burden of demonstrating anticipation by clear and convincing evidence.]*[119]

and twice stating Genevant's position about enablement. Plaintiffs' counterproposal is filled with complexities, including their own arguments, which are inappropriate in a jury instruction.

**Plaintiffs' Position**: Plaintiffs do not believe that Moderna's proposal is necessary, as it provides unneeded detail about the legal question of prior art enablement beyond what the jury needs to evaluate the underlying factual disputes, and beyond what is read to juries in cases with prior art anticipation disputes, *see Marktek Biosciences Corp. v. Nutrinova Inc.*, C.A. No. 1:03-cv-00896-GMS D.I. 269 (D. Del. Oct. 19, 2006) (jury instructions as read), which is covered by the parties' joint proposal. However, should Moderna's proposal be read, Plaintiffs' request that additional clarifications of the law be provided, so as not to unfairly prejudice the jury by only stating one side of the legal standard. Plaintiffs disagree that this articulation of the prior art enablement standard is repeating Moderna's proposal, and believes that clarifying the relevant burden of proof is not "twice stating Genevant's position." If Moderna seeks to instruct the jury about a presumption of enablement, it is unfairly prejudicial to Plaintiffs to exclude instructions on how Plaintiffs may rebut that assumption.

[119] **Moderna's Position:** Plaintiffs' proposal adds nothing of value to the jury instructions. Instead it adds even more detail to the enablement standard (in a section on anticipation), tells the jury what the instructions will tell the jury later, and again repeats the legal standard that Plaintiffs have repeated for invalidity *over 30 times* in these instructions (including four times in this instruction only)—this is unnecessary and their continued efforts to expand, complicate, and duplicate the instructions throughout these materials is prejudicial and inappropriate.

**Plaintiffs' Position**: This proposal clarifies to the jury the difference between the prior art enablement instructions Moderna proposes and the enablement defenses Moderna later raises. If the jury is provided the level of detail in Moderna's proposal on prior art anticipation, this instruction is necessary to clarify to the jury that a decision on prior art enablement is not to be confused with an enablement decision on the Asserted Patents. Failure to give such an instruction is unfairly prejudicial to Plaintiffs, as it may allow Moderna to argue that Plaintiffs' assertions that the prior art is not enabled should be considered contradictory to Plaintiffs' assertions that the Asserted Patents are enabled, when Plaintiffs' ultimate point is that the Asserted Patents contain teachings absent from the prior art that enable the invention.

Additionally, Plaintiffs' repetition of the burden of proof addresses a confusion of Moderna's own making by its proposal introducing a presumption of enablement and necessitating description of how Plaintiffs may rebut that standard—an instruction Moderna separately seeks to exclude, preferring its presumption to go unrebutted in spite of the law. Moderna cannot

In determining whether the prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the prior art, but also what is inherently present in it and what inherently results from its practice. Prior art inherently anticipates a patent claim if the element or feature that is not expressly disclosed in the prior art would necessarily and inevitably result each and every time, without fail, from what the single item of prior art teaches to persons of ordinary skill in the art. Evidence of even one failure to result in the missing element or feature means that inherent anticipation cannot be shown.

A party claiming inherent anticipation must prove that the allegedly inherent element or feature necessarily is present by clear and convincing evidence. Evidence outside of the prior art reference itself may be used to show that elements or features that are not expressly disclosed in the reference are inherent in it. To be inherent, the element or feature that is alleged to have been inherent must necessarily have existed in the prior art. The fact that the element or feature is likely to have existed is not sufficient. It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the prior use or disclosure of a patented invention that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent element or feature was necessarily present in the prior use or disclosure.

---

object to clarification about the burden of proof when it seeks to insert confusion on the very topic.

To be clear, Plaintiffs agree that this instruction should only be read if Moderna is asserting an invalidity defense for lack of enablement, and Plaintiffs' position is that both sides' proposals on prior art enablement are unnecessary.

### 5.6    Obviousness

#### 5.6.1    Obviousness Generally[120]

**[Moderna's Proposal: Under the patent laws, a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before.[121]]**

Moderna contends that the Asserted Claims are invalid for being obvious over the prior art. Moderna bears the burden of establishing obviousness by clear and convincing evidence.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious today to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining whether the claimed invention was obvious, you must consider each claim separately.  You should not use hindsight, such as by using an Asserted Patent as a roadmap to select the prior art and retrace the path of the inventors.  In other words, you should only consider

---

[120] *See Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) (slightly modified).

[121] **Moderna's Position:** Moderna's proposal is supported by case and sets forth clarifying instruction for the jury. *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025).

**Plaintiffs' Position:** This preamble differs from the format of every other subsection for invalidity as agreed upon by the parties, as well as from the instructions as read in *Med-El*, and is unfairly prejudicial to Plaintiffs' in framing non-obviousness as something the patentee must demonstrate, when Moderna bears the burden of demonstrating obviousness.  Additionally, this language is unfairly prejudicial in implying a newness component in addition to non-obviousness, which is the role of the anticipation requirement, not obviousness.

what was known prior to the invention date of the Asserted Patent, without the benefit of the Asserted Patent at issue and what that patent teaches.

**[Moderna's Proposal: Obviousness may be proven by considering one item of prior art or by a combination of more than one item of prior art.[122]]** The existence of each and every element of a claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time of invention and consider if there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue.

To find that the prior art rendered a claimed invention obvious, you must also find that a person having ordinary skill in the art would have had a reasonable expectation of successfully combining or modifying the prior art to arrive at the claimed invention. To find a claim obvious, the prior art must enable one of ordinary skill in the art to make and use the claimed invention.[123]

In determining obviousness or nonobviousness of the subject matter of each of the asserted claims, you should take the following steps: Determine the scope and content of the prior art; identify the differences, if any, between each asserted claim and the prior art; determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made; and consider

---

[122] **Moderna's position:** Moderna's proposal sets forth clarity for the jury in an already complicated case. Plaintiffs have not disputed that accuracy of this statement, and Moderna believes it is helpful to set up the discussion about how prior art may be used in the context of obviousness.

**Plaintiffs' Position**: This sentence is duplicative of the instructions later on about what may be considered prior art and about how to evaluate the teachings of the prior art. Repeated instructions about how "obviousness may be proven" is unfairly prejudicial to Plaintiffs, particularly as this sentence was not read in the instructions of *Med-El*, which otherwise closely map onto this section. *See Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) (slightly modified).

[123] *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021).

objective factors are nonobviousness.  Against this background, you will then decide whether the subject matter of each asserted claim would have been obvious or not obvious to a person of ordinary skill in the pertinent art.

I've already instructed you about determining the level of ordinary skill in the pertinent art, which is the third step, and that instruction applies to this analysis.  I will now instruct you on the other three steps.

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor is faced.  Prior art is reasonably pertinent if it is in the same field as a claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.

You should analyze whether there are any relevant differences between the prior art taken as a whole and the Asserted Claims from the view of a person of ordinary skill in the art as of the time of the claimed invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole and not merely some portion of it.

You should consider the prior art as a whole and determine whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the prior art in the way the claimed invention does.  [*Plaintiffs' Proposal: The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. You may consider whether the problem or need was known, whether the possible approaches to solving the problem*

*or addressing the need were known and finite, and whether the solution was predictable through the use of a known option. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.*

*On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.]*[124]

[**Moderna's Proposal: In arriving at your decision on the issue of whether the Asserted Claims would have been obvious to a person of ordinary skill in the art, you may take into account such factors as:**

- **Whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);**

- **Whether the claimed invention provides an obvious solution to a known problem in the relevant field;**

---

[124] **Moderna's Position:** Moderna's proposal (directly below this proposal) is supported by the FCBA's Model Jury instructions and case law. Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) § 4.3c; *see also SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025).

**Plaintiffs' Position**: Plaintiffs' proposed language is nearly word-for-word identical to that read to the jury in *Med-El*, with only removal of language duplicative of the prior art instructions and language which both parties agreed were duplicative of material within this proposal. While Plaintiffs are amenable to formatting these instructions in list form, Plaintiffs believe the proposed language more clearly instructs the jury as to the interrelatedness of the factors and provides clearer guidance on how to approach the question than an itemized list that may confuse the jury. Most significantly, Plaintiffs object to Moderna's inclusion of factors not at issue in this case. *See Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991).

- **Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;**

- **Whether the prior art teaches away from combining elements in the Asserted Claims;**

- **Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.][125]**

[**Moderna's Proposal: Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation.[126] Under analysis of routine optimization, an overlap between a claimed range and a prior art range creates a presumption of obviousness that can be rebutted with evidence that the given parameter was not recognized as result-effective.[127]][128]** *[Plaintiffs'*

---

[125] **Moderna's Position:** Moderna's proposal is supported by the FCBA's Model Jury instructions and case law. Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) § 4.3c; *see also SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025). And contrary to Plaintiffs' objection, Moderna has properly preserved these factors in this litigation.

**Plaintiffs' Position:** Plaintiffs object to the inclusion of factors in this instruction for which there is no "evidence in the record supporting [their] submission." *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 694 (3d Cir. 1991).

[126] *In re Aller*, 220 F.2d 454, 456 (CCPA 1955); *Pfizer Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341, 1347 (Fed. Cir. 2024).

[127] *Pfizer Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341, 1347 (Fed. Cir. 2024).

[128] **Moderna's Position:** Moderna's proposal is supported by case law which Plaintiffs' do not dispute. *See In re Aller*, 220 F.2d 454, 456 (CCPA 1955); *Pfizer Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341, 1347 (Fed. Cir. 2024). Regarding the IPRs, Moderna will not relitigate summary judgment in a footnote and incorporates by reference its explanation of why prior findings regarding overlapping ranges do not apply here to the presently asserted claims and patents. D.I. 556 at 4–12.

*Proposal: Before the presumption of obviousness can be applied, Moderna must show that a person of ordinary skill would have understood the prior art to teach or suggest a range that overlaps with the claimed range.[129]  Additionally, if there are multiple result-effective variables, evidence that the variables interacted in an unpredictable or unexpected way can render the combination nonobvious.[130]  The lipid components of a nucleic acid-lipid particle are interdependent, and they interact with each other unpredictably.[131]  If any of the lipid components are result-effective variables, then the other lipid components are also result-effective variables, and unpredictable interactivity between various lipid components renders the claims nonobvious.[132]][133]*  **[Moderna's Position: A routine optimization analysis generally requires**

---

**Plaintiffs' Position**: Plaintiffs believe that a jury instruction as to the presumption of obviousness under range law is inappropriate, as the Federal Circuit has already held ranges of lipid nanoparticles nonobvious in this patent family, *see ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364 (Fed. Cir. 2021), and Moderna should be precluded from raising any argument contrary to the factual or legal findings of the Federal Circuit.  Moderna's proposal is not accurate, including because it omits the binding Federal Circuit precedent regarding ranges of lipid molar ratios at issue in this case.  Should Moderna be allowed to proceed with this argument and jury instructions on this issue, it would be unfairly prejudicial to Plaintiffs to allow Moderna to cite contrary law without providing the jury with the relevant rulings of the Federal Circuit.

[129]  *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1373-74 (Fed. Cir. 2021).

[130]  *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1376 (Fed. Cir. 2021) (quoting *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012)).

[131]  *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1374-75 (Fed. Cir. 2021).

[132]  *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1376-77 (Fed. Cir. 2021).

[133]  **Moderna's Position:** Plaintiffs' proposal is unnecessarily argumentative for the purposes of jury instructions, including the assumption regarding "unpredictable interactivity." Regarding the IPRs, Moderna will not relitigate summary judgment in a footnote and incorporates by reference its explanation of why prior findings regarding overlapping ranges do not apply here to the presently asserted claims and patents.  D.I. 556 at 4–12.

**Plaintiffs' Position**: Moderna's use of scare quotes does not convert Federal Circuit law into mere assumption.  Plaintiffs' proposal is an accurate restatement of directly relevant and binding holdings of the Federal Circuit, including its "h[o]ld[ing] that evidence that the components 'interacted in an unpredictable or unexpected way could render the combination nonobvious'" which "applies even more strongly here, where the assumption necessary to derive the implicit

consideration whether a person of ordinary skill in the art would bridge any gaps in the prior art to arrive at a claimed invention.][134]

[Moderna's Position: When a patent holder seeks to overcome a prima facie case of obviousness by showing improved performance in a range that is within or overlaps with a range disclosed in the prior art, the patent holder must show that the claimed range is critical, generally by showing that the claimed range achieves unexpected results relative to

_____

overlapping range is itself undermined by the *unpredictable interactivity* between the components." *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1376-77 (Fed. Cir. 2021). Should Moderna be allowed to proceed with this argument and jury instructions on this issue, it would be unfairly prejudicial to Plaintiffs to allow Moderna to cite contrary law without providing the jury with the relevant rulings of the Federal Circuit.

[134] **Moderna's Position:** Plaintiffs' position is inaccurate. Patent claims cannot be held valid—patents can only be found not invalid, and every claim in a patent is different. As such, there is no preclusion that applies based on other patent claims, reviewed with other prior art, and before a different forum. *Pfizer Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341, 1348 (Fed. Cir. 2024). Regarding the IPRs, Moderna will not relitigate summary judgment in a footnote and incorporates by reference its explanation of why prior findings regarding overlapping ranges do not apply here to the presently asserted claims and patents. D.I. 556 at 4–12.

**Plaintiffs' Position**: Plaintiffs believe that no jury instructions as to the presumption of obviousness under range law is appropriate, as the Federal Circuit has already held ranges of lipid nanoparticles nonobvious in this patent family, *see ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364 (Fed. Cir. 2021), and Moderna should be precluded from raising any argument contrary to the factual or legal findings of the Federal Circuit. Moderna's case for this proposition is completely silent on this point—it is simply a case on range law that Moderna cites to support its own proposal, and has nothing to do with any part of Moderna's stated position here. *See Pfizer Inc. v. Sanofi Pasteur Inc.*, 94 F.4th 1341 (Fed. Cir. 2024). Additionally, Moderna misinterprets Plaintiffs' proposal—Plaintiffs agree that patent claims cannot be held valid and have never asserted otherwise. Plaintiffs' proposal is a restatement of binding Federal Circuit precedent regarding the presumption of obviousness and implications of results-effective variables, including the prime example in the Federal Circuit's case law of various lipid components in lipid nanoparticles as being multiple results-effective variables. Should Moderna be allowed to proceed with this argument and jury instructions on this issue, it would be unfairly prejudicial to Plaintiffs to allow Moderna to cite contrary law without providing the jury with the relevant rulings of the Federal Circuit.

the prior art range.]<sup>135</sup>  [*Plaintiffs' Proposal: If you find that a presumption of obviousness applies, Genevant may overcome that presumption by showing evidence of teaching away, unexpected results, or other pertinent evidence of nonobviousness.  Once such evidence is put forward, the burden of persuasion to prove obviousness remains with Moderna.]<sup>136</sup>*

---

<sup>135</sup>  **Moderna's Position:** Moderna's proposal is black letter law and one of the disputed issues in this case. The jury should be properly instructed on how to interpret overlapping ranges.  *In re Patel*, 566 F. App'x 1005, 1011 (Fed. Cir. 2014). Regarding the IPRs, Moderna will not relitigate summary judgment in a footnote and incorporates by reference its explanation of why prior findings regarding overlapping ranges do not apply here to the presently asserted claims and patents. D.I. 556 at 4–12.

**Plaintiffs' Position**: Plaintiffs believe that a jury instruction as to the presumption of obviousness under range law is inappropriate, as the Federal Circuit has already held ranges of lipid nanoparticles nonobvious in this patent family by holding explicitly that "Moderna had not established that a presumption of obviousness applies based on overlapping ranges" based on much of the exact prior art Moderna raises in this case, *see ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364 (Fed. Cir. 2021), and Moderna should be precluded from raising any argument contrary to the factual or legal findings of the Federal Circuit. Additionally, Moderna's case on this point has nothing to do with how "[t]he jury should be properly instructed on how to interpret overlapping ranges," as it involves a PTAB affirmance of an examiner's final rejection. *In re Patel*, 566 F. App'x 1005, 1006 (Fed. Cir. 2014).  While Plaintiffs do not dispute the general legal propositions Moderna proposes, Plaintiffs dispute their application to the present case along with any citation of some case law while omitting the binding Federal Circuit precedent regarding ranges of lipid molar ratios at issue in this case. Should Moderna be allowed to proceed with this argument and jury instructions on this issue, it would be unfairly prejudicial to Plaintiffs to allow Moderna to cite contrary law without providing the jury with the relevant rulings of the Federal Circuit.

<sup>136</sup>  *Janssen Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, 141 F.4th 1367, 1375 (Fed. Cir. 2025).

**Moderna's Position:** Plaintiffs cite no case law support for their argument that a presumption of obviousness does not apply to "range law." The Federal Circuit has never made such a carve out to this general rule. Regarding the IPRs, Moderna will not relitigate summary judgment in a footnote and incorporates by reference its explanation of why prior findings regarding overlapping ranges do not apply here to the presently asserted claims and patents. D.I. 556 at 4–12.

**Plaintiffs' Position**: Moderna's position misstates Plaintiffs' position.  Plaintiffs are not saying that a presumption of obviousnesss can never apply to overlapping ranges, and Plaintiffs are not saying that there is some special "carve out" for this presumption of obviousness.  Plaintiffs' position is that there are factors under which the presumption of obviousness either does not in fact apply or could be rebutted, that the *Moderna* case articulates those factors, which the jury

should consider (to the extent the jury is instructed on overlapping range law).  Plaintiffs have consistently cited the *Moderna* case as support for these arguments, as they accurately reflect the holdings of that case, a fact that Moderna has not disputed despite proposing contrary instructions.

Ultimately, Plaintiffs believe that no jury instructions as to the presumption of obviousness  in situations with overlapping ranges is appropriate, as the Federal Circuit has already held ranges of lipid nanoparticles nonobvious in this patent family, *see ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364 (Fed. Cir. 2021), and Moderna should be precluded from raising any argument contradictory to the factual or legal findings of the Federal Circuit. However, should Moderna be allowed to proceed with this argument and jury instructions on this issue, it would be unfairly prejudicial to Plaintiffs to instruct on the times when burden shift to Plaintiffs without including instructions as to what burdens remain with Moderna, as such instructions may confuse the jury as to who bears the ultimate burden of proof.

### 5.6.2 Objective Indicia of Non-Obviousness or Obviousness[137]

You must take into account any objective evidence, sometimes called objective indicia or secondary considerations, that may shed light on whether the claims are obvious.  Objective indicia or secondary considerations must be considered before a conclusion on obviousness is reached.  Objective indicia or secondary considerations can include:

- Whether the invention was commercially successful, at least in part as a result of the merit of the claimed invention rather than the result of design needs or market pressure, advertising, or similar activities;

- Whether the invention satisfied a long-felt need;

- Whether others copied the invention;

- Whether the invention achieved unexpected results compared to the closest prior art;

- Whether others tried and failed to make the invention;

- Whether others in the field praised the invention;

- Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

- Whether the inventor proceeded contrary to accepted wisdom in the field;

- And whether others invented the invention at roughly the same time.

Evidence of unexpected results may be used to rebut a case of obviousness even if that evidence was obtained after the patent's filing or issue date. There's no requirement that the invention's properties and advantages were fully known before the patent application was filed.

---

[137] *See Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Dec. 14, 2023 Trial Tr.) (slightly modified).

**[Moderna's Proposal: Unexpected results that are probative of nonobviousness are those that are different in kind and not merely in degree from the results of the prior art.]**[138]

[*Plaintiffs' Position: A marked superiority between the prior art and the invention may be sufficient evidence.*[139]][140]  To show non-obviousness, Genevant has to show evidence of objective indicia or secondary considerations and to show there's a connection, sometimes called a nexus, between the evidence showing any of these factors in the claimed invention.  *[Plaintiffs' Position: Nexus is presumed where the objective indicia or secondary consideration (like commercial success, praise, or copying) is tied to a specific product and the product is the invention disclosed and claimed.*[141]*]*  **[Moderna's Proposal: for this evidence to be given weight by you in arriving at your conclusion on the obviousness issue. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim.**]**[142]

---

[138] *Galderma Lab'ys, L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013).

**Moderna's Position:** Moderna's proposal clarifies that nexus is a requirement in order for such evidence to be afforded any weight, as Plaintiffs' proposal merely states that the burden exists, but not its practical impact in these circumstances. *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025).

[139] *Bristol-Myers Squibb Co. v. Teva*, 752 F.3d 967, 977 (Fed. Cir. 2014).

[140] **Moderna's Position**: this is a requirement for unexpected results, which the parties have disclosed extensive opinions about.  Plaintiffs do not dispute the clear Federal Circuit authority.

**Plaintiffs' Position**: Instructing the jury at this level of detail is unnecessary and inconsistent with this Court's usual instructions.  Plaintiffs request adoption of their instruction—which Moderna does not dispute—only if the preceding Moderna instruction is adopted.

[141] *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019).

[142] **Moderna's Position:** Moderna's proposal clarifies that nexus is a requirement in order for such evidence to be afforded any weight, as Plaintiffs' proposal merely states that the burden exists, but not its practical impact in these circumstances. *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025). Additionally, Plaintiffs' citation to *Fox Factory* misleads the jury by not identifying the presumption as a rebuttable one, and ignores subsequent case law clarifying that the presumption

You are to give weight to *[Plaintiffs' Proposal: this evidence]*[143] **[Moderna's Proposal: any objective indicia or secondary considerations that you find to exist, and to have a nexus with the claimed invention,]** in arriving at your conclusion on the obviousness issue.  Even if present, objective indicia may not be able to overcome a strong case for obviousness.  Alternatively, objective indicia may establish that an invention appearing to have been obvious in light of the prior art was not.[144]  However, Moderna always maintains the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

---

does not apply if, when the factfinder "consider[s] the ***unclaimed features*** of the stated products to determine their level of significance and their impact on the correspondence between the claim and the products," those unclaimed features materially affect the functionality of the products. *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1361–63 (Fed. Cir. 2021).

**Plaintiffs' Position:** Each of these sentences is duplicative of the agreed-on sentence before Moderna's Proposal.  Instructing the jury repeatedly on Plaintiffs' burden to show nexus is unfairly prejudicial to Plaintiffs.  Moderna's instruction also ignores the presumption of nexus, which Plaintiffs rely on and disclosed, including in the Rebuttal Expert Report of Dr. Mitchell.  *Contra* Moderna's position, the agreed-upon instruction in the sentence above instructs on the practical impact of Plaintiffs failing to establish nexus.  Moderna does not dispute that Plaintiffs' instruction is an accurate statement of law, but contends that Plaintiffs fail to identify that the presumption is a rebuttable one.  That is true of other presumptions, such as the presumption of prior art enablement, yet Moderna sees no issue omitting that fact in other places.  The parties' joint instruction also already is clear that to be relevant, objective indicia must be tied to the claimed features.

[143] *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025).

**Plaintiffs' Position:** Moderna's Proposal is unnecessarily duplicative of the language either party proposes before.  Instructing the jury repeatedly on nexus is unfairly prejudicial to Plaintiffs.

[144] *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012).

## 5.7    Indefiniteness[145]

Moderna contends that the Asserted Claims are invalid for being indefinite. Moderna bears the burden of establishing indefiniteness by clear and convincing evidence.

[*Plaintiffs' Proposal: As the party asserting indefiniteness, Moderna must prove that a challenged patent claim, viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the bounds of the claim with reasonable certainty. The definiteness requirement mandates clarity, while recognizing that absolute precision is unattainable. In other words, the definiteness standard allows for a modicum of uncertainty but also requires clear notice of what is claimed.*[146] ][147][148]

---

[145] **Moderna Proposal**: Depending on which indefiniteness issues remain in the case after further narrowing of asserted patents/claims and defenses, indefiniteness may be amenable to resolution as a question of law by the Court. *See, e.g., Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016); *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, No. 2023-2308, 2025 WL 1793374, at *3 (Fed. Cir. June 30, 2025).

**Plaintiffs' Position**: Plaintiffs recognize that "indefiniteness is amenable to resolution by jury where the issues are factual in nature." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). Given the Court's statement in denying summary judgement on indefiniteness that "[a] jury will have to resolve questions of invalidity," D.I. 697 at 32, Plaintiffs believe that jury instructions on indefiniteness will be necessary.

[146] *See Greatbatch Ltd. v. ATX Corp.*, C.A. No. 13-723-LPS, D.I. 623 (D. Del. Jan. 25, 2016) (slightly modified).

[147] *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005).

[148] **Moderna's Position:** Plaintiffs' proposal is unnecessarily argumentative and takes on a persuasive tone that is improper in jury instructions. Moderna's proposal instead is supported by recent jury instructions in this District. *W.R. Grace & Co. v. Elysium Health, Inc.*, No. 20-cv-01098, D.I. 310, Final Jury Instructions (D. Del. Aug. 25, 2023) (Instruction No. 4.7 Invalidity - Indefiniteness). Moderna also disagrees that it does not have invalidity theories premised on the lack of a defined approach for determining a claimed parameter separate from theories about different methods giving different results, as litigated in summary judgment for both patent families. D.I. 697 at 27-28.

Moderna also disagrees that this instruction is appropriate, as the Court has already recognized that Moderna's indefiniteness grounds are not premised in arguments about whether or the accused infringer (Moderna) could determine whether or not they infringe. D.I. 697 at 27–28.

[**Moderna's Proposal: The definiteness requirement focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the scope of the patentee's right to exclude. A patent is invalid for indefiniteness if its claim, read in light of the specification delineating the patent, and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. In other words, a patent claim is invalid as indefinite when a person or ordinary skill in the art reading the claim in the context of the written description would be unable to determine what the claim covers and what the claim does not cover.[149]**]

The failure to define a term does not render a claim indefinite if the meaning of the term is inferable with reasonable certainty from the patent.[150]

[**Moderna's Proposal: The patent and prosecution history must disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select.[151]**] *[ Plaintiffs' Proposal: Even*

---

**Plaintiffs' Position**: Plaintiffs' proposal is simply a restatement of the law, and is also based on jury instructions as read in this District. *See Greatbatch Ltd. v. ATX Corp.*, C.A. No. 13-723-LPS, D.I. 623 (D. Del. Jan. 25, 2016). Moderna's proposal is unnecessarily confusing, as evidenced by its repeated references to written description, which will likely confuse the jury given Moderna's unrelated written description arguments. Moderna's proposal also includes unnecessary references to factors that neither party is relying on for this contention, such as prosecution history. Additionally, Moderna's proposal adopts a significantly more persuasive tone than Plaintiffs', with repeated articulations that "a patent [] is invalid [as] indefinite[]..." On the other hand, Plaintiffs' proposal adopts alternating references to definiteness and indefiniteness to avoid biasing the jury.

[149] *W.R. Grace & Co. v. Elysium Health, Inc.*, No. 20-cv-01098, D.I. 310, Final Jury Instructions (D. Del. Aug. 25, 2023) (Instruction No. 4.7 Invalidity - Indefiniteness).

[150] *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004).

[151] **Moderna's Position:** Moderna's proposal is supported by ample case law and other relevant jury instructions. *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, No. 22-00266, D.I. 594, Post-Trial Jury Instructions (D. Del. Nov. 21, 2025); *see also Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125, D.I. 602 (GBW); *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d

*where the inconsistency of test results presents a question about the meaning of a claim, the mere*

*possibility of different results from different measurement techniques does not render a claim*

*indefinite.  In order to demonstrate indefiniteness based on different measurement techniques,*

*Moderna must prove by clear and convincing evidence that the method of measurement is in fact*

---

1366, 1371 (Fed Cir. 2015); *Pac. Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.*, 816 F. App'x 454, 459 (Fed. Cir. 2020).

Moderna's instruction also aligns with the Court's opinion on summary judgment. D.I. 697 at 31 ("[W]here different approaches to measurement are involved," "the patent and prosecution history must disclose a single known approach **_or_** establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630 (Fed. Cir. 2015).") (emphasis added).

**Plaintiffs' Position**: Moderna's proposal is both vague and legally incorrect, as it fails to clarify what "approach" refers to, and states that the existence of multiple approaches alone necessitates indefiniteness unless the POSA knows which to select, misstating the law at minimum by omitting the requirement that this be related to the POSA's understanding of the scope of the claim (as opposed to, for example, multiple approaches to achieving a claimed result, which has nothing to do with indefiniteness).  Further, *Dow Chemical*, which Moderna cites, recognizes that a claim is not indefinite simply because "multiple known approaches exist" and the POSA would not know which approach to select.  The critical question in that scenario is whether the different approaches yield different results that are outcome-determinative to the infringement analysis.  *Dow Chem.*, 803 F.3d at 630 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341, 1344-45, and stating "claim indefinite where molecular weight could be measured three different ways ***and would yield different results*** and the patent and prosecution history did not provide guidance as to which measure to use").  This is consistent with the Court's summary judgment opinion.  D.I. 697 at 31 ("There is conflicting evidence in the record as to ***whether the existing methods would give meaningfully different results***.").  Moderna's proposal would bias and confuse the jury by introducing only limited portions of the law.

Additionally, Moderna's proposed instruction in this paragraph is duplicative of its later proposed instructions regarding multiple methods of measurement, as Moderna has only asserted that a POSA would not know which approach to select regarding measurement techniques.  Instructing the jury as to known approaches generally, independent from the law on measurement techniques, is confusing and unfairly prejudicial to Plaintiffs because it implies Moderna has asserted these as separate arguments.  If only one of this and Moderna's proposal on multiple methods of measurements is read, Plaintiffs' propose having its language read immediately following.  If both of Moderna's proposals are read, Plaintiffs propose having them read without interrupting instructions on other law, with Plaintiffs' proposal following.

*outcome-determinative in the infringement analysis.[152]  In other words, Moderna must prove that there is a definitional problem, where a term is capable of multiple correct meanings and those meanings are tied up with methods of measurement, and then Moderna must show that this introduces an ambiguity about the scope of the claims that materially affects the outcome of the infringement analysis.  Disagreement between the parties about the application of a known methodology is insufficient to establish that a claim is indefinite.[153]]***[154]*

**[Moderna's Proposal: The fact that the Court construed claims does not mean that those claims are definite.[155]]**  *[Plaintiffs' Proposal: However, you must adopt the scope of the claims as construed by the Court when determining whether the claims are definite, and may not*

---

[152] *Takeda Pharmaceuticals Co. Ltd. v. Zydus Pharmaceuticals USA, Inc.*, 743 F.3d 1359, 1366-67 (Fed. Cir. 2014).

[153] *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1289-90 (Fed. Cir. 2023).

[154] **Moderna's Position:** Plaintiffs' proposed instruction is unnecessarily complicated, and unnecessarily repeats the clear and convincing burden standard in a prejudicial manner. Inconsistency in test results is directly tied to indefiniteness, as articulated by the Federal Circuit in, *e.g.*, *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542–43 (Fed. Cir. 2020); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015). Moreover, this Court emphasized, in accordance with Federal Circuit precedent, that the correct inquiry is whether the methods of measurement "would give **meaningfully different results**" as to "*[claim] scope*, not infringement." D.I. 697 at 27, 31.

**Plaintiffs' Position**: Moderna's proposal is both vague and legally incorrect, as it fails to clarify what "approach" refers to, and states that the existence of multiple approaches necessitates indefiniteness. Under Moderna's own proposed instructions, the fact that multiple known approaches exist does not alone render a claim indefinite. *See* n.161. Moderna's proposed instruction in this paragraph is duplicative of its later proposed instructions regarding multiple methods of measurement, as Moderna has only asserted that a POSA would not know which approach to select regarding measurement techniques. Instructing the jury as to known approaches generally, independent from the law on measurement techniques, is confusing and unfairly prejudicial to Plaintiffs because it implies Moderna has asserted these as separate arguments. If only one of Moderna's proposals is read, Plaintiffs' propose having its language read immediately following. If both of Moderna's proposals are read, Plaintiffs propose having them read without interrupting instructions on other law, with Plaintiffs' proposal following.

[155] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (2014).

*consider alternate definitions and whether they are ambiguous. Once a claim term's definition has been reduced to words by the Court, the question of definiteness is whether a person of ordinary skill can translate that definition into meaningfully precise claim scope.[156]]*

**[Moderna's Proposal: A claim is invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different results for the claim's scope such that a product or method may infringe the claim under one method but not infringe when employing another method.][157]**    *[Plaintiffs'*

---

[156] *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

**Moderna's Position:** While Plaintiffs call Moderna's proposal unnecessary and duplicative, it is not. Plaintiffs have not identified another instruction where this point is made. By contrast, Plaintiffs' proposed edit here is duplicative and unnecessary by repeated the same claim construction instructions cited Instruction 3.5.

**Plaintiffs' Position**: Moderna's proposed instruction is unnecessary, as it is duplicative of the repeated articulations of the *Nautilus* standard put forward in both parties' proposed instructions. However, if this sentence of Moderna's proposed instruction is adopted, Plaintiffs request that the jury be additionally instructed on how to compare the Court's claim construction to the question of definiteness. Otherwise, Moderna's instruction alone is unfairly prejudicial to Plaintiffs by implying the Court's imprimatur that issues of indefiniteness remains and could not have been resolved by claim construction, without instructions for the jury on how the processes relate.

[157] **Moderna's Position:** Moderna's proposed instruction is consistent with this Court's opinion on summary judgment. D.I. 697 at 27 (noting Dr. Prud'homme's opinions correctly applied the law in opining that "the various methods of measurement available produce meaningfully different results."), 31. Moderna's proposal accurately summarizes the overlap of indefiniteness with the ability to obtain consistent results from testing, and uses language consistent with the Federal Circuit's recent discussion of this issue. *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542-43 (Fed. Cir. 2020); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015*)*.

**Plaintiffs' Position**: Moderna's proposed instruction omits significantly relevant case law, and oversimplifies the law into a three step process unsupported by the case law. The Court's summary judgment opinion that Dr. Prud'homme did not misapply infringement law to indefiniteness is not carte blanche support of Moderna's assertions of law in a completely different phrasing, and does not give Moderna license to compile doctrines of disputed applicability into its own rule that excludes Plaintiffs' cited law. Indeed, Plaintiffs' proposal adds significant details omitted by Moderna's proposal, such as the fundamental requirement that Moderna must put forward a

112

*Proposal: Even where the inconsistency of test results presents a question about the meaning of a claim, the mere possibility of different results from different measurement techniques does not render a claim indefinite. In order to demonstrate indefiniteness based on different measurement techniques, Moderna must prove by clear and convincing evidence that the method of measurement is in fact outcome-determinative in the infringement analysis.[158] In other words, Moderna must prove that there is a definitional problem, where a term is capable of multiple correct meanings and those meanings are tied up with methods of measurement, and then Moderna must show that this introduces an ambiguity about the scope of the claims that materially affects the outcome of the infringement analysis.[159] Disagreement between the parties about the application of a known methodology is insufficient to establish that a claim is indefinite.[160]][161]*

---

definitional problem with the scope of the claims, and must prove that such as by using an example of multiple methods of measurement, rather than Moderna's proposal which wrongly implies that this is an entirely separate defense under indefiniteness and that the patent must put forward evidence in the record suggesting one measurement method in particular. Providing not only one but *two separate proposals paragraphs apart* unfairly prejudices Plaintiffs and risks unnecessarily confusing the jury about the number of arguments Moderna is asserting and the burdens of proof the parties bear.

[158] *Takeda Pharmaceuticals Co. Ltd. v. Zydus Pharmaceuticals USA, Inc.*, 743 F.3d 1359, 1366-67 (Fed. Cir. 2014).

[159] *Kaneka Corp. v. Designs for Health, Inc.*, 2025 WL 1684677, at *5 (D. Del. June 16, 2025) (Bryson, J.).

[160] *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1289-90 (Fed. Cir. 2023).

[161] **Moderna's Position:** Plaintiffs' position could not be more wrong. As discussed *supra* note 144, the Federal Circuit proscribes that "[c]onsistent with the purpose of the definiteness requirement, differences in measurement methods ***must matter*** for determining whether or not a claim limitation is met by those who might realistically be practicing the other claim limitations." *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.,* 838 F. App'x 538, 542 (Fed. Cir. 2020). This Court recognized the relationship between measurement methods and indefiniteness in its recent Memorandum Opinion. D.I. 697 at 25-32, including, *e.g.* at 27 (noting Dr. Prud'homme's opinions correctly applied the law in opining that "the various methods of measurement available produce meaningfully different results."). Further, twice within this instruction Plaintiffs propose the same exact position—i.e., "*Disagreement between the parties about the application of a known methodology is insufficient to establish that a claim is indefinite.*"

## 5.8    Written Description[162]

Moderna contends that the Asserted Claims are invalid for failure to satisfy the written description requirement.  Moderna bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the invention claimed in the patent at the time of its priority date.  This requirement helps ensure that the patent applicant actually invented

---

Plaintiffs' attempt to laden these instructions with bias and duplicative instructions is improper. Moderna also disagrees that it does not have invalidity theories premised on the lack of a defined approach for determining a claimed parameter separate from theories about different methods giving different results, as litigated in summary judgment for both patent families.

**Plaintiffs' Position**:  Should instructions be read on the implications of multiple means of measurement for indefiniteness, Plaintiffs propose additional clarification language providing details as to the intersection between Moderna's standards and other aspects of definiteness, as well as clarification of Moderna's burden.  Plaintiffs' position is consistent with Federal Circuit precedent, including *Ball Metal*—the unpublished Federal Circuit decision on which Moderna relies, as well as several others that Plaintiffs' cite and Moderna ignores.  For example, even under *Ball Metal*, differences in methods of measurement do not necessarily matter:  for instance, the differences in results must be outcome determinative for infringement.  The Court's summary judgment opinion is in accord, and the Court's finding that Dr. Prud'homme correctly applied the law and did not confuse infringement with indefiniteness is not a carte blanche imprimatur of Moderna's completely separate statement of law in proposed jury instructions.

Additionally, Moderna misunderstands Plaintiffs' proposals requesting the same language: Moderna's instructions are repetitive and cover the same law (as Moderna has not raised any "approach" it claims is unclear from the patent not related to "methods [] for calculating a claimed parameter"), so Plaintiffs' request is that if both of Moderna's proposed instructions on this topic are read, they be read immediately in sequence with each other, immediately followed by Plaintiffs' proposal, so as not to confuse the jury by instructing the jury twice on one argument Moderna has raised and unfairly prejudice Plaintiffs by implying that Moderna has raised two separate assertions when it has not.  Moderna's response that it has disclosed theories "premised on the lack of a defined approach" does not resolve the issue, because Moderna's other proposal is not about "*the lack of* a defined approach," but rather about "disclos[ing] a single known approach or establish[ing] that, where *multiple known approaches* exist, a person having ordinary skill in the art would know *which* approach to select." (emphasis added).

[162]  *See SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 594 (D. Del. Nov. 21, 2025) (slightly modified); *see also Microchip Technology Inc. v. Aptiv Services US, LLC*, C.A. No. 17-1194, D.I. 395-2 (JDW) (Final Jury Instructions (as read)); *Bd. of Regents, Univ. of Texas System v. Boston Scientific Corp.*, C.A. No. 18-392, D.I. 326 (GBW).

the full scope of their claimed subject matter when they filed their patent application. Written description requires an objective inquiry into the four corners of the patent specification from the perspective of the person of ordinary skill in the art.[163]  To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.  When determining whether the specification discloses the invention, the claim must be viewed as a whole.  If the patent claim lacks adequate written description in the patent specification, it is invalid.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor had mental possession of the subject matter claimed in the patent.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples, including embodiments having all the limitations of the claims, are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor had mental possession of the full scope of the invention.  If the claim is broader than the specification support, such that the full scope of the claimed invention is not supported, the written description requirement is not met. To make that determination, you may consider such factors as:

- The nature and scope of the patent claim;

- The complexity, predictability, and maturity of the technology at issue;

- The existing knowledge in the relevant field; and

---

[163]  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir.) (en banc).

- The scope and content of the prior art.[164]

The patent applicant may rely on, and need not disclose, information that is well-known in the art for purposes of meeting the written description requirement.[165]  When the claim is to a composition rather than a process, the written description requirement does not demand that the specification describe technological developments in the way in which the claimed composition is made that may arise after the patent application is filed.[166]  **[Moderna's Proposal: While the written description requirement does not require that the specification recite the claimed invention in any particular way, pointing to an amalgam of disclosures from which an artisan could have created the claimed invention does not satisfy this requirement. Instead, the specification must present each claim as an integrated whole.[167]  And a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.[168]]**  *[Plaintiffs'*

---

[164] *SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 594 (D. Del. Nov. 21, 2025); *see also Microchip Technology Inc. v. Aptiv Services US, LLC*, C.A. No. 17-1194, D.I. 395-2 (JDW) (Final Jury Instructions (as read)).

[165]165    *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006).

[166] *See Amgen v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003).

[167] *Flash-Control, LLC v. Intel Corp.*, No. 2020-2141, 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013).

[168] *Bd. of Regents, Univ. of Texas System v. Boston Scientific Corp.*, C.A. No. 18-392, D.I. 326 (GBW); Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) § 4.2a.

**Moderna's Position:** This and the prior instruction are relevant to Moderna's written description defenses for both patent families that the claims recite combinations of elements not found together in the specification. Without these instructions, jurors would not have any guidance as to how to assess whether combinations of disparate disclosures—including teachings related to siRNA or plasmid DNA, different lipids and lipid amounts, and a laundry list of 18+ nucleic acids—together could meet the written description requirement for claims to "mRNA" and "nucleic acids" generally.

**Plaintiffs' Position:**  Moderna's proposal is not relevant to any defense that has been preserved and will be argued to the jury.  For example, none of Moderna's experts have ever opined that the patent specification's express definition of "nucleic acid"—which includes siRNA, plasmid DNA,

*Proposal: However, it is common for patent claims to pick out a subset of the full range of described features, omitting others. The specification need not set forth all combinations or subcombinations of described features. Nor does the specification need to describe the exact combination that falls within the claims. Similarly, ranges found in a patent applicant's claims need not correspond exactly to those disclosed in the patent specification. The issue is whether one skilled in the art could derive the claimed ranges from the patent specification.]*[169]

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims. However, finding that an independent claim is invalid due to a lack of written description also invalidates any claim that depends from the invalid independent claim.

The written description requirement ensures that any subject matter presented in the claims of a subsequent patent application was sufficiently disclosed at the time of the initial application's filing.[170] *[Plaintiffs' Proposal: There is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a patent covering a known competitor's product already on the market, so long as the application complies with the requirements for patenting, including the written description requirement; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the inventor has learned about after the initial filing*

---

and mRNA—is an amalgam of disclosures of nucleic acids. Moderna cannot introduce arguments for the first time in this case in its proposed jury instructions. This level of additional instruction also is unnecessary and inconsistent with the Court's typical instructions. Further, Moderna's instruction cherry-picks statements from the caselaw while ignoring important context and thus is prejudicial. To the extent this instruction is provided, Plaintiffs request adoption of their proposal as well.

[169] *Scriptpro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014); *Union Oil Co. of California v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991).

[170] *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991).

*date.]*[171] **[Moderna's Proposal: In drafting a continuation application, a patentee is permitted to draft claims to cover a competitor's product, provided that the application otherwise**

---

[171]  *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 871 F.2d 1054, 1065 (Fed. Cir. 1989) (same).

**Moderna's Position:** Plaintiffs' proposal is inconsistent with *Kingsdown* and an improper attempt to confuse or mislead the jury. *Kingsdown* and its progeny expressly recognize that drafting claims to cover a competitive product is proper *only if* there is support in the originally filed specification for the new claims—necessary context Plaintiffs' proposal omits. *Kingsdown*, 863 F.2d at 874 ("Any such amendment or insertion [to cover a competitor's product] *must comply with all statutes and regulations.*"); *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002) ("While it is legitimate to amend claims or to add claims to a patent application purposefully to encompass devices or processes of others, *there must be support for such amendments or additions in the originally filed application*."); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 n.2 (Fed. Cir. 2004) ("If the disclosure does not support the broadened claims, the applicant will not be accorded priority based on the original disclosure, and the claims may be invalidated."). Moreover, following *Kingsdown*, the Federal Circuit held in *Gentry Gallery, Inc. v. Berkline Corp.* that a patentee's attempt to draft claims to cover competitive products was relevant to a determination of whether there was adequate written description under 35 U.S.C. § 112. 134 F.3d 1473, 1479 (Fed. Cir. 1998). Further, Plaintiffs propose this instruction as an end-run around the *motion in limine* limits, because Plaintiffs disclosed essentially the same instruction as a MIL but chose not to move on it.

Finally, Plaintiffs' reference to there allegedly being nothing "improper, illegal or inequitable" is unsupported by law and confusing. That language appears in *Kingsdown* in the context of discussion of inequitable conduct—not the context relevant here of written description or derivation. *Kingsdown*, 863 F.2d at 874.

**Plaintiffs' Position**: This instruction is necessary given Moderna's arguments that certain Asserted Patents lack written description because they were filed as continuation applications of a parent application that did not initially claim the same subject matter, as well as Moderna's arguments that Plaintiffs' knowledge of Moderna at the time of filing continuation applications is at all probative to written description of the resulting patents.  Plaintiffs' would be unfairly prejudiced if Moderna is allowed to advance such arguments and improperly imply that Plaintiffs acted improperly.  This is not an "end-run around the *motion in limine* limits," but instead necessary to ensure the jury is instructed on the relevant law needed to resolve disputed issues.

*Contra* Moderna's position, Plaintiffs' instruction is consistent with *Kingsdown*, including because Plaintiffs expressly acknowledge that a continuation application must comply with the requirements for patenting.  Moderna's reliance on *Gentry Gallery* is unavailing.  The Federal Circuit has stated repeatedly that *Gentry Gallery* is not a "watershed case" and did not, through dicta, announce a new 112 standard.  *Amgen Inc. v. Hoescht Marion Roussel, Inc.*, 314 F.3d 1313, 1333 (Fed. Cir. 2003); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc*., 291 F.3d 1317, 1323 (Fed. Cir. 2002) ("[I]n *Gentry,* we applied and merely expounded upon the unremarkable proposition that a broad claim is invalid when the entirety of the specification

**complies with all requirements for patenting. This includes compliance with the written description requirement, which requires that the specification of the parent application must describe the full scope of the claimed invention in sufficient detail that one skilled in the art can clearly and reasonably conclude that the inventor—at the time the parent application was filed—had possession of the invention claimed in the continuation application.][172]** In this case, as the Lipid Composition Patents/Ratio Patents all have the same specification, the filing date of each application is irrelevant to written description beyond its applicability to the general question of whether the original specification filed on April 15, 2008 contains adequate written description to support the Asserted Claims.

---

clearly indicates that the invention is of a much narrower scope."). In fact, the Federal Circuit has reinforced *Kingsdown*'s clear holding and stated, in no uncertain terms, that a continuation application's "genesis in the marketplace is simply irrelevant." *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1405 (Fed. Cir. 2022) (quoting *Kingsdown*).

Finally, Moderna's argument that the language "improper, illegal or inequitable" is unsupported by law or confusing is contradicted by the fact that it is a word-for-word quote from *Kingsdown*. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[i]t should be made clear at the outset of the present discussion that there is nothing *improper, illegal or inequitable* in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market"). *Kingsdown*'s holding is not cabined to inequitable conduct defenses, as Moderna suggests. *See, e.g.*, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) (applying *Kingsdown* to written description argument).

[172] **Moderna Position**: Moderna submits that neither Plaintiffs' instruction prior to this nor this instruction is necessary or appropriate, but if one is given, Moderna's aligns with the law as explained in the Moderna's prior footnote.

**Plaintiffs' Position**: Plaintiffs incorporate its argument in the prior footnote on Plaintiffs' counterproposal as to why Moderna's proposal is duplicative, confusing, inappropriate, and unfairly prejudicial.

### 5.9    Enablement[173]

Moderna contends that the Asserted Claims are invalid for lack of enablement.  Moderna bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

[*Plaintiffs' Proposal: The enablement requirement applies only to the claimed invention, not to matter outside the claims.*][174]

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain. **[Moderna's Proposal: If technical information was not disclosed in the patent and maintained as a trade secret by the patent holder, meaning it was not public knowledge, that confidential information is not considered part of the knowledge of a person of ordinary**

---

[173]   *See Microchip Tech. Inc. v. Aptiv Servs. US LLC*, C.A. No. 17-1194-JDW, D.I. 395-2 (D. Del. Aug. 16, 2022) (Apr. 12, 2022 Trial Tr.) (as modified for this case).

[174]   *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020).

**Moderna's Position:** This instruction is unnecessarily confusing for the jury. The prior paragraph is clear that the question of enablement is analyzed in view of the claims.

**Plaintiffs' Position**: This instruction is black-letter law, and necessary to prevent any undue confusion to the jury that a patent can be invalid for lack of enablement of unclaimed properties. Nor is this paragraph duplicative: the prior paragraph simply states that the claim must be enabled, and does not clarify the inverse statement that additional unclaimed properties need not be enabled.

skill.[175]]   *[Plaintiffs' Proposal: The omission of technical information from a patent, whether a trade secret or otherwise, is not relevant to enablement unless the challenger proves by clear and convincing evidence that the omitted information was required for one of ordinary skill in the art to practice the claimed invention without undue experimentation.[176]]*

---

[175]   *See Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 930 (Fed. Cir. 2013).

**Moderna's Position:** Given Plaintiffs' reliance on certain trade secrets to support their enablement position, Moderna maintains that this instruction is necessary. *See* Dkt. 556 at 28. And under Federal Circuit law, the use of a trade secret cannot be evidence of enablement—the trade secret, by definition, is not disclosed within the patent. *Union Pacific Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690–91 (Fed. Cir. 2001); *Convolve, Inc. v. Compaq Computer. Corp.*, 527 F. App'x 910, 930 (Fed. Cir. 2013).

**Plaintiffs' Position:** The parties' agreed instructions already addresses the requirement that information outside the patent be information a POSA "would be likely to know or could obtain," and trade secret or proprietary information is not treated any differently from information that is not likely to be known or obtainable. Plaintiffs object to adding an instruction specifically about alleged trade secrets, as both the existence and relevance of such trade secrets to the patent teachings are disputed facts. *See Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1155–56 (Fed. Cir. 2004). Any instruction on the topic proposed by Moderna would unfairly prejudice Plaintiffs by giving the jury the imprimatur of the Court's evaluation that any information not disclosed in the patent is a trade secret and therefore a sign of non-enablement.

Additionally, neither of Moderna's cited cases stand for its proposition that "trade secret[s] *cannot* be evidence of enablement"—they are simply two instances in which a trade secret *is not* considered evidence of enablement or non-enablement.. *Convolve* found that patentee "fail[ed] to provide any evidence that would create a genuine dispute of material fact." *Convolve, Inc. v. Compaq Computer. Corp.*, 527 F. App'x 910, 931 (Fed. Cir. 2013). And *Union Pacific* makes clear that the district court found that the trade secret method "was not considered by the inventors to be the best mode of practicing the invention" and so instead solely evaluates the district court's nonenablement findings for the invention as envisioned by the inventors. *Union Pacific Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 691 (Fed. Cir. 2001).

[176]   **Moderna's Position:** Given Plaintiffs' reliance on certain trade secrets to support their enablement position, Moderna maintains that this instruction is necessary. *See* Dkt. 556 at 28. And under Federal Circuit law, the use of a trade secret cannot be evidence of enablement—the trade secret, by definition, is not disclosed within the patent. *Union Pacific Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690–91 (Fed. Cir. 2001); *Convolve, Inc. v. Compaq Comput. Corp.*, 2013 WL 3285331, at *18–19 (Fed. Cir. July 1, 2013)

**Plaintiffs' Position:** Plaintiffs object to adding an instruction specifically about alleged trade secrets, as both the existence and relevance of such trade secrets to the patent teachings are disputed facts. *See Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1155 (Fed. Cir. 2004)

*[Plaintiffs' Proposal: The enablement requirement is met if the description enables any mode of making and using the invention.[177]   If the specification discloses multiple modes of achieving the invention, Moderna can prove lack of enablement only by showing that all of the disclosed alternative modes are insufficient to enable the claims.[178]][179]*

**[Moderna's Proposal: It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention to constitute adequate enablement. Although the knowledge of one skilled in the art is indeed relevant, the novel aspect of an invention must be enabled in the patent specification itself.]**[180]

---

(holding that evidence that omitted information was proprietary "does not demonstrate that [the omitted information] was required for one of ordinary skill in the art to practice the claimed invention or that undue experimentation would be required for one of ordinary skill in the art to" practice the invention).  Plaintiffs object to Moderna's proposed language, but maintain that if it is included, then Plaintiffs' proposed language should be included as well.

[177] *Takeda Pharmaceutical Co. Ltd. v. Zydus Pharmaceuticals USA, Inc.*, 743 F.3d 1359, 1369 (Fed. Cir. 2014).

[178] *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1361 (Fed. Cir. 1998).

[179] **Moderna's Position:** This sentence is unnecessarily duplicative. And almost identical sentence (and point) is made in the second paragraph of this instruction, stating that the enablement requires must teach a POSA how to make and use the claimed invention. No extra complexity is necessary.

**Plaintiffs' Position**: Plaintiffs disagree.  The instruction that enablement requires teaching "the full scope" of the invention is different from the instruction that teaching "any mode" of the invention is sufficient.  Without both instructions, the jury may be confused into thinking either that the full scope need not be enabled, which would cause prejudice to Moderna, or that every possible mode of making the invention needs to be enabled, which would cause prejudice to Plaintiffs.

[180] **Moderna's Position**: Plaintiffs' position misreads the instructions in Moderna's proposal. Moderna's proposal specifically says "it is the specification, not the knowledge of one skilled in the art . . ."—they dispute this instruction says this. Regardless, this proposal is supported by law. *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)).  Further, there is no confusion that will result from the word "novel"—all patents are based on prior art. Further, Plaintiffs' cannot and do not dispute that, e.g., lipid nanoparticles with all four lipids claimed were

[*Plaintiffs' Proposal: A showing of non-enablement requires concrete identification of at least some embodiment or embodiments asserted not to be enabled—including what particular products or processes are or may be within the claim, as well as identification of how much experimentation a skilled artisan would have to undertake to make and use those products or processes.*][181]  The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent is not enabled.  [*Plaintiffs' Proposal: It is Moderna's burden as the patent challenger to show by way of testimony or documentary evidence the amount of experimentation was needed.  Unsubstantiated statements indicating that experimentation would be "difficult" or "complicated" are not*

_____

known in the prior art. Plaintiffs' arguments, and the jury's focus, should remain on what Plaintiffs' claim is novel.

**Plaintiffs' Position:** Moderna has failed to raise any assertion or expert opinion that it is knowledge of the POSA, rather than teachings from the specification, that enable the "novel aspect" of the invention.  This instruction's reference to the "novel aspect" of the invention is likely to confuse the jury into wrongly thinking that the enablement inquiry is related to anticipation and/or obviousness, which is highly prejudicial to Plaintiffs.  This is particularly at issue because Moderna has also proposed instructions in anticipation that could confuse the jury into wrongly equating prior art enablement with the enablement of the Asserted Patents.  *Supra* n.**Error! Bookmark not defined.**.  Indeed, the fact that Moderna's position resorts to arguing that all patents must be nonobvious and not anticipated over prior art claiming four lipids in support of its enablement instruction suggests that that is precisely what Moderna will do in arguing enablement before the jury should this instruction be read.

[181]  *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020).

**Moderna's Position:** This instruction is unnecessarily confusing and filled with legalese rendering it very difficult to parse. The prior instructions in this section inform the jury what they need to do to conclude whether the claims are not enabled. It is unnecessary to give them inverse instruction s regarding what is not enabled, particularly in such verbose fashion.

**Plaintiffs' Position**: Moderna bears the burden of proof on enablement, and this instruction accurately states that burden as articulated by the Federal Circuit.  Moderna cannot only instruct the jury on what is required for a patent to be enabled by objecting that instructions on its required showing are "inverse."  Such one-sided instructions would prejudice Plaintiffs by suggesting that Plaintiffs bear the burden to prove enablement.  Plaintiffs especially request that this proposal be approved if Plaintiffs' subsequent proposal is rejected, or else the enablement instructions will be entirely one-sided.

*sufficient, instead, descriptions of what such experimentation would actually entail and evidence that it would be undue are required.*[182]][183]  [*Plaintiffs' Proposal: The specification does not have to describe or enable the accused product.*][184]

Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.    The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

2.    The amount of direction or guidance disclosed in the patent;

---

[182]  *Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013).

[183]  *See Cephalon, Inc. v. Watson Pharms.*, Inc., 707 F.3d 1330, 1336 (Fed. Cir. 2013) (modified for this case).

**Moderna's Position:** Plaintiffs' proposal is unnecessary and only further complicates the jury instructions. Each party must always support their claims by record evidence and unsubstantial statements are rarely (if ever) permissible. Unless the parties intend to add this additional instruction to every claim and defense, this instruction should be removed as unnecessary and redundant.

**Plaintiffs' Position**: Plaintiffs' proposal is an accurate statement of law outlining the degree of evidence required for Moderna to meet its burden, which is particularly necessary given the rest of the proposed enablement instructions focus almost exclusively on what the patent is required to disclose to satisfy enablement, even though it is Moderna's burden to demonstrate a lack of enablement.

[184]  **Moderna's Position:** Plaintiffs' proposal adds unnecessary complexity and confusion. The accused product is irrelevant to enablement and should not be discussed here.

**Plaintiffs' Position**: Plaintiffs' proposal is a straightforward and indisputably correct statement of law.  Plaintiffs agree that the accused product is irrelevant to enablement, but propose this instruction because the jury may be confused on this point, particularly as Moderna's experts have opined on the alleged lack of enablement of unclaimed features of the Accused Product that are only relevant to this case as manufacturing technology Moderna asserts as grounds for apportionment.  *E.g.* Prud'homme Rep. ¶ 189.  As long as Moderna seeks to introduce evidence of its later technological developments incorporated in the accused product, failing to instruct the jury on the undisputed irrelevance of such arguments to enablement is unfairly prejudicial to Plaintiffs.

3.      The presence or absence of working examples in the patent;

4.      The nature of the invention;

5.      The state of the prior art;

6.      The relative skill of those in the art;

7.      The predictability of the art; and

8.      The breadth of the claims.

## 6.    DAMAGES

### 6.1    Patent Infringement Damages Generally[185]

I am now going to instruct you on damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue, and you should not read into my instruction a suggestion that damages are appropriate or inappropriate in this case.

If you find that Moderna has infringed one or more of the Asserted Claims, and if you find that the infringed claims are not invalid, then you must determine the amount of damages to be awarded to Genevant for those claims.  On the other hand, if you find that each Asserted Claim is either invalid or not infringed, then you should not consider damages in your deliberations.

Genevant has the burden to prove each element of its damages, including the amount of the damages, by a preponderance of the evidence.  In other words, you should award only those damages that Genevant established that it more likely than not suffered.  While damages need not be proven with mathematical precision, they must be proven with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

[**Moderna's Proposal: In determining the amount of damages, you must determine when damages began.  If you find infringement of a valid claim of the '651, '435, and '359 patents, damages begin no earlier than May 31, 2020.  If you find infringement of a valid claim of the '378 patent, damages begin no earlier than October 12, 2021.  Damages for the '651 patent end on June 30, 2023, when that patent expired.**]

---

[185] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 1, 2024 Trial Tr.) (as modified for this case).

126

[*Plaintiffs' Proposal: The time period for which damages may be found is different for some of the patents, because of when they issued or expired:*

- *For the '435 and '359 patents, you must determine damages for any acts of infringement of a valid claim that occurred between May 31, 2020, and the present.*

- *For the '651 patent, you must determine damages for any acts of infringement of a valid claim that occurred between May 31, 2020, and the expiration of the '651 patent on June 30, 2023.*

- *For the '378 patent, you must determine damages for any acts of infringement of a valid claim that occurred between the issuance of the '378 patent on October 12, 2021, and the present.*][186]

Should you find that Moderna has infringed more than one Asserted Claim or more than one Asserted Patent, you must not award damages to Genevant in a manner that results in double or multiple recoveries for the same injury.

[*Plaintiffs' Proposal: The amount of damages you award must be adequate to compensate Genevant for the infringement.*][187]    You may not add anything to the amount of damages for

---

[186] **Moderna's position:** Moderna's proposed instruction appropriately informs the jury of the relevant time frames infringement is at issue in a straightforward manner.  Moderna objects to the language "you must determine damages" in Plaintiffs' proposal as prejudicial because it misleads the jury to make a finding of damages even absent infringement of a valid claim.

[187] **Moderna's position:** Moderna objects to Plaintiffs' inclusion of this instruction, including the language "must be adequate to compensate Genevant for the infringement," which is contradicted by the law, as "the patent damages statute, 35 U.S.C. § 284, 'does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts.'"  *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299 (Fed. Cir. 2025) (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020)); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.").

interest.  Damages are not meant to punish Moderna.[188]  **[Moderna's Proposal: That means, for example, that any determination you make as to whether any infringement was willful should not affect the amount of any damages you award.]**[189]

Genevant seeks damages in the amount of a reasonable royalty.  I will explain what that means.

---

**Plaintiffs' position**:  Plaintiffs' proposed instruction is plain statement of the statutory requirements laid out in 35 U.S.C. § 284; *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012) ("When a patent is infringed, the patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" (quoting 35 U.S.C. § 284)).  The Court has previously offered this instruction.  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362, at 187:7-9 (D. Del. Mar. 20, 2024) (Feb. 1, 2024 Trial Tr.); *Med-El Elektromedizinische Gerate et al. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 440 at 43:5-7 (D. Del. Dec. 14, 2023 Trial Tr.); *Microchip Technology Inc. v. Aptiv Services US, LLC*, C.A. No. 17-1194, D.I. 395-2 at 413:17-19 (JDW) (Final Jury Instructions (as read)).  *Rex Medical* is not to the contrary; it confirms that Section 284 "requires the award of a reasonable royalty," but explains that there still must be evidence as to the amount of damages.  156 F.4th at 1299 (citation omitted).  That is exactly what the jury is told in the third paragraph of this section, which provides a detailed description of Genevant's burden to establish its damages:

> ***Genevant has the burden to prove each element of its damages***, including the amount of the damages, by a preponderance of the evidence.  In other words, ***you should award only those damages that Genevant established that it more likely than not suffered***.  While damages need not be proven with mathematical precision, they must be proven with reasonable certainty.  ***You may not award damages that are speculative***, damages that are only possible, or damages that are based on guesswork.

[188]  FCBA, May 2020, Model Patent Jury Instructions § 5.1 (as modified for this case).

[189]  **Plaintiffs' Position**: Plaintiffs object to Moderna's inclusion of this instruction in multiple places throughout the parties' proposed instructions, including both here and in Section 4.8 above.  The agreed-upon instruction already instructs the jury that "damages are not meant to punish Moderna," which adequately apprises the jury of the law.  By providing Moderna's additional proposed instruction regarding willful infringement here, Moderna's instruction could lead the jury to place undue emphasis on this instruction.

**Moderna's position:** Plaintiffs' case involves an allegation as to willful infringement, which will feature prominently in Plaintiffs' presentation to the jury.  A clarification that a factual finding of willful infringement by the jury (if any) should not factor into the jury's determination of damages (if any) is helpful and necessary here.

### 6.2   Reasonable Royalty Generally[190]

A reasonable royalty is a payment made to a patent holder in exchange for the right to make, use, sell, offer for sale, or import the claimed invention.

[*Plaintiffs' Proposal: Estimating a reasonable royalty is not an exact science.   The reasonable royalty may be determined by any method that is reasonable and tied to the facts of this case.   The evidence may support more than one reliable method for estimating a reasonable royalty.[191],[192]*

*Reasonable royalty awards may take the form of a running royalty based on the revenue from or the volume of sales of licensed products.   When a running royalty is paid, the infringer pays a certain amount in compensation to the patentee for each incremental infringing sale.*

*A reasonable royalty can be calculated by multiplying a royalty base by a royalty rate. The royalty base is the revenue from the sale of infringing products.   The royalty rate is the percentage or dollar amount of those sales that the patent owner should receive for the infringer's*

---

[190]   *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 (D. Del. Mar. 20, 2024) (Feb. 1, 2024 Trial Tr.) (as modified for this case); *MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 440 (D. Del. Feb. 15, 2024) (Dec. 14, 2023 Trial Tr.) (as read); *10x Genomics, Inc. v. NanoString Techs., Inc.*, No. 1:21-cv-00653-MFK, D.I. 300 (D. Del. Nov. 16, 2023).

[191]   *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

[192]   **Moderna's position:** Moderna objects to Plaintiffs' inclusion of this instruction, as it is unnecessary and duplicative of the information contained in section 6.5 regarding the *Georgia-Pacific* factors.

**Plaintiffs' Position:** This is an accurate statement of law, *see Summit 6*, 802 F.3d at 1296.  Because the parties have presented multiple methods of calculating damages, it will help the jury to understand that these multiple methods are legally permissible.   The other section cited by Moderna is not inconsistent with that principle.

*use of the patented technology. A reasonable royalty can also be calculated by multiplying the number of infringing products or product units sold by a royalty amount per unit.]*[193]

You are tasked with determining a reasonable royalty based on your consideration of all the evidence presented by the parties.

*[Plaintiffs' Proposal: If you find that Moderna has infringed any Asserted Claim that is not invalid, then Genevant is entitled to at least a reasonable royalty to compensate it for that infringement.]*[194]

---

[193] **Moderna's position:** Moderna objects to Plaintiffs' inclusion of this instruction, as jury instructions must apprise the jury of what the law is, not list examples of what the jury can do. The parties will present evidence regarding their respective damages calculations, which use different methodologies, that more than suffices to inform the jury of ways in which damages can be calculated.

**Plaintiffs' Position:** Moderna has not suggested that there is anything legally incorrect about this instruction. Given the different damages theories being presented by the parties, it is important for the jury to understand that there are different legally permissible ways to calculate the damages figure. Indeed, the Court has previously instructed the jury using the language Plaintiffs propose. *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362 at 104:8-22 (D. Del. Mar. 20, 2024) (Feb. 1, 2024 Trial Tr.).

[194] **Moderna's position:** Moderna objects to Plaintiffs' inclusion of this instruction, which is contradicted by the law, as "the patent damages statute, 35 U.S.C. § 284, 'does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts.'" *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299 (Fed. Cir. 2025) (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020)); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.").

**Plaintiffs' Position**: Moderna's objection conflates the legal entitlement to damages with the need to prove the amount of damages. It is black letter law that a patent infringement plaintiff is entitled to no less "than a reasonable royalty." 35 U.S.C. § 284. That is not inconsistent with the requirement that Plaintiffs prove the amount of damages, which the jury is also being instructed, including in Section 6.1. The Court previously instructed a jury using this language. *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362, at 105:11-15 (D. Del. Mar. 20, 2024) (Feb. 1, 2024 Trial Tr.).

**6.3**    [*Plaintiffs' Proposal:* **Reasonable Royalty – The Analytical Method**[195]

*As I noted already, there are many acceptable methods of calculating a reasonable royalty. One way to calculate a reasonable royalty, called the analytical approach, is to subtract the infringer's usual or acceptable net profit from its anticipated net profit realized from sales of the infringing product. This approach focuses on the infringer's own internal profit projections for the infringing product at the time the infringement began.[196,197] The comparison used in an analytical approach must isolate the value of the patented features and no more.*][198]

---

[195] *Bd. of Regents, Univ. of Tex. v. Bos. Sci. Corp.*, 18-CV-392-GBW, D.I. 329 (D. Del. Feb. 1, 2023) at 8 (Final jury instructions) (as modified for this case).

[196] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

[197] **Moderna's position:** Moderna objects to the sentence "This approach focuses on the infringer's own internal profit projections for the infringing product at the time the infringement began," which quotes out of context dicta from *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The Court in *Lucent* noted that each party "adopted the hypothetical negotiation approach, without objection," and it therefore did ***not*** apply the "analytical method," rendering this dicta regardless of its citation in other cases. Plaintiffs' example of *Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1296 (Fed. Cir. 2015) is further dicta regarding the "Analytical Method," which again the Court did not apply in that case.

**Plaintiffs' Position**: The language from *Lucent* that Moderna characterizes as dicta has been repeatedly relied upon by courts, including the Federal Circuit, when describing the Analytical Method. *E.g., Summit 6, LLC v. Samsung Elecs. Co*., 802 F.3d 1283, 1296 (Fed. Cir. 2015). It is also consistent with the holding of *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986), which did involve the use of the analytical method, and specifically the use of internal profit projections.

[198] **Moderna's position:** Aside from specific objections *supra*, Moderna further objects in entirety to this instruction, including but not limited to referencing this instruction as "The Analytical Method." As set forth in Moderna's pending *Daubert* motion (D.I. 683), "the analytical method" as proffered by Plaintiffs does not apply in this case. Therefore, such an instruction is improper and irrelevant. Moreover, Moderna objects to the language that "an analytical approach must isolate the value of the patented features and no more" as misleading, as it suggests to the jury that mere subtraction concludes the damages inquiry, without performing any further analysis, e.g., as to apportionment. Moderna also objects to the inclusion of a separate jury instruction for each of the theories Plaintiffs' damages expert presents, which is unnecessary and likely to confuse the jury as to the relationship between section 6.3 ("The Analytical Method") and section 6.4 ("The Hypothetical Negotiation Method"). Even cases where a proper analytical method was employed by an expert, the court nevertheless did not provide specific jury instructions as to the analytical

### 6.4    Reasonable Royalty – Hypothetical Negotiation Method[199]

Another method for determining a reasonable royalty may be the amount of a royalty payment that would have been agreed to in a hypothetical negotiation between two parties: Genevant and Moderna.  [*Plaintiffs' Proposal: Arbutus would not be one of the participants in the negotiation.*][200]   The hypothetical negotiation would take place at the time prior to when the

---

method. *See SPEX Techs., Inc. v. W. Digital Corp.,* No. 8:16-CV-01799-JVS (AGRX), 2025 WL 1748190, at *7–8 (C.D. Cal. June 16, 2025); *SPEX Techs., Inc. v. W. Digital Corp.,* No. 8:16-CV-01799 (C.D. Cal.), D.I. 592, at 28–30.

**Plaintiffs' Position**:  An instruction on the analytical method is appropriate, as it is one of the two approaches that Plaintiffs' damages expert applies to calculate a reasonable royalty in this case. Further, titling this instruction as "The Analytical Method" is appropriate, as this title is consistent with the terminology the parties have previously used and is consistent with the terminology that courts have used in addressing this approach to calculating a reasonable royalty.  Plaintiffs' response to Moderna's *Daubert* motion explains fully the basis for applying the analytical method to this case.  D.I. 672.  The instruction that the comparison used in the analytical approach "must isolate the value of the patented features and no more," is consistent with the Federal Circuit's explanation that part of the analytical method is "apportioning the projected profits between the patent owner and the infringer." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (quoting *Patent Damages Law & Practice* § 3:4 (2008)).  Where, as here, the jury will hear evidence of the analytical method, it is appropriate to instruct the jury on that method.  *See, e.g.*, *Bd. of Regents, Univ. of Tex. v. Bos. Sci. Corp.*, 18-CV-392-GBW, D.I. 329 (D. Del. Feb. 1, 2023).

[199]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (as modified for this case); *Bd. Of Regents, Univ. of Tex. v. Bos. Sci. Corp.*, 18-CV-392-GBW, D.I. 329 (D. Del. Feb. 1, 2023), at 8 (as modified for this case).

[200]  **Moderna's position:** Moderna objects to this instruction.  Arbutus, as the owner of the Asserted Patents, should be a participant at the hypothetical negotiation.  In particular, Plaintiffs' damages expert relies on interaction between Moderna and Arbutus (and predecessors of Arbutus), including license offers as early as in 2013 as the basis of her opinions.  E.g., Lawton Opening Report ¶ 1358 (noting at "the hypothetical negotiation on May 31, 2020, the economics of [a May 2013] offer would establish an absolute floor for the negotiation…").  Plaintiffs' deemphasis of Arbutus participating at the hypothetical negotiation is at odds with its current witness list, which only includes Mark Murray, former CEO of Arbutus, as a "will call" fact witness.  D.I. 691, Ex. 5P.

**Plaintiffs' Position**: Moderna's objection is directly contrary to the opinion disclosed by its damages expert, which is that "there is no dispute among the Parties that the Hypothetical Negotiation would be between Genevant (as licensor) and Moderna (as licensee)."  Vellturo Rebuttal Rpt. ¶ 70 n.196.  Moderna has not disclosed any contention that Arbutus would be a

infringement first began.  In this case, the hypothetical negotiation would have taken place on May 31, 2020, which corresponds to the date of first infringement.  Of course, we know that they did not agree to a license and royalty payment.  But considering this hypothetical negotiation, you should focus on what the expectations of Genevant and Moderna would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.  In determining this, you must determine that the parties to the hypothetical negotiation believed the Asserted Patents were valid and infringed, and that the parties were willing to enter into an agreement.  [*Plaintiffs' Proposal: You should additionally assume that Genevant and Moderna had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.*][201]  The reasonable royalty you determine must be a royalty that would

_____

participant at the hypothetical negotiation, nor does the evidence relied on, or the makeup of the witness list, change the agreement of both parties' experts on this point.  Moderna should not be permitted to alter its damages theories in a footnote to proposed jury instructions.

[201] **Moderna's position:** Moderna objects to inclusion of the sentence "You should additionally assume that Genevant and Moderna had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation."  Plaintiffs' proposed phrasing is confusing and unnecessary.  The language Plaintiffs include comes from *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012), but that language is simply to emphasize that the parties assume infringement and invalidity, and must reach agreement.  The jury is already instructed on those concepts and would only need further explanation as to how this particular sentence relates to those already included concepts.  *In re Innovatio IP Ventures, LLC Pat. Litig.*, No. 11-9308, 2013 WL 5593609, at *7 (N.D. Ill. Oct. 3, 2013) (referencing same language in *LaserDynamics* and explaining "[s]tated another way, the hypothetical negotiator could no longer leave the negotiating table to contest liability in court, and could no longer demand the benefit of uncertainty about a court's rulings.  Accordingly, '[t]he hypothetical negotiation also assumes that the asserted patent claims are valid and infringed,' *Lucent Techs.*, 580 F.3d at 1325, because no hypothetical negotiation would have taken place if it were otherwise. The patent infringer gets no discount on its licensing fee because of uncertainty about its liability that has since been cleared up by litigation.").

**Plaintiffs' position**: Moderna does not dispute that the instruction Plaintiffs have proposed is legally correct.  The Court has given this instruction to the jury multiple times before.  *See MED-EL Elektromedizinische Gerate v. Advanced Bionics*, C.A. No. 18-1530-JDW, D.I. 440, at 675:4-7 (D. Del. Feb. 15, 2024) (Dec. 14, 2023 Trial Tr.) (as read); *Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 362, at 103:12-16 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.)

have resulted from the hypothetical negotiation and not just a royalty either party would have preferred.

Damages are not based on a hindsight evaluation of what happened but on what the parties to a hypothetical license negotiation would have agreed on.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted just prior to the first infringement.

**6.5    Reasonable Royalty – [*Plaintiffs' Proposal: Hypothetical Negotiation Factors*[202]] [Moderna's Proposal: Relevant Factors]**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:[203]

(1)    The royalties received by Genevant for the licensing of the Asserted Patents, proving or tending to prove an established royalty;

(2)    The rates paid by Moderna for the use of other patents comparable to the Asserted Patents;

(3)    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted, in terms of territory, or with respect to whom the manufactured product may be sold;

(4)    Genevant's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

(5)    The commercial relationship between Genevant and Moderna, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6)    The effect of selling the patented specialty in and promoting sales of other products of Moderna, the existing value of the invention to Genevant as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

---

[202]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); FCBA Model Patent Jury Instructions B.5(5.8) (edited to list all *Georgia-Pacific* factors).

[203]  FCBA, May 2020, Model Patent Jury Instructions § 5.8 (as modified).

(7)    The duration of the Asserted Patents and term of the license;

(8)    The established profitability of the product made under the Asserted Patents, its commercial success and its current popularity ;

(9)    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Genevant, and the benefits to those who have used the invention;

(11)    The extent to which Moderna has made use of the invention and any evidence probative of the value of that use;

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(13)    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Moderna;

(14)    The opinion testimony of qualified experts;

(15)    The amount that a licensor (such as Genevant) and a licensee (such as Moderna) would have agreed upon at the time the infringement began, if the parties had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee—who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit, and

which amount would have been acceptable by a prudent patent holder who was willing to grant a license; and

You may also consider any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award.  Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.[204]

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  As consistent (and not in contradiction) with these instructions, you may also consider any other factors which in your mind would have increased or decreased the royalty that Moderna would have been willing to pay and that Genevant would have been willing to accept, acting as normally prudent business people.[205]

---

[204]  *See* FCBA Model Patent Jury Instructions B.5 (§ 5.9)

[205]  FCBA, May 2020, Model Patent Jury Instructions § 5.8 (as modified for this case).

## 6.6    Reasonable Royalty – Apportionment[206]

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the Accused Product, or other factors such as marketing or advertising, or Moderna's size or market position.  A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the product and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the Accused Product has both patented and unpatented features, the reasonable royalty awarded must be apportioned so that it is based only on the value of the patented features and no more.  [**Moderna's Proposal: Further, in this case, the amount of a reasonable royalty cannot be increased based on the special demand for the product created by the pandemic and the government's planned response to it at the time of the hypothetical negotiation.  Value that was created by the urgency of the need for a product does not reflect what a willing buyer would pay to a willing seller.**[207]]

---

[206] *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *TwinStrand Bioscis., Inc. v. Guardant Health, Inc.*, No. 21-cv-01126, D.I. 494, Final Jury Instructions (Nov. 14, 2023) (Instruction No. 5.5, Damages Apportionment); Federal Circuit Bar Ass'n Model Patent Jury Instructions (May 2020) at 5.12, Damages—Apportionment.

[207] **Plaintiffs' position**: Plaintiffs object to Moderna's inclusion of this instruction, as it disregards the hypothetical negotiation inquiry, which must "accurately reflect[] the real-world bargaining" dynamics of the parties.  *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018).  Thus, the jury must consider the parties' expectations at the time of the hypothetical negotiation, which would include each parties' expectations of demand for the Accused Product, the availability of funding during the pandemic, and the value of time-to-market in the context of the pandemic.  *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (hypothetical negotiation requires consideration of "state of mind at the time of the hypothetical negotiation"); *Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (hypothetical negotiation inquiry requires consideration of what parties "would have considered at the time of the negotiations.").  Moderna's instruction is also legally incorrect because it is premised on a theory of "hold-up" that only applies to Standard Essential Patent cases.  *Orexo AB v. Actavis Elizabeth LLC*, 2019 WL 10060475, at *2 (D. Del. Mar. 19, 2019).  Moderna's

**6.7    [Plaintiffs' Proposal: Reasonable Royalty – Non-Infringing Alternatives[208]**

*In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable, non-infringing alternatives to the patented invention, among the other factors that I have listed.  To determine whether a non-infringing alternative was available, you may consider whether a party had the necessary equipment, know-how, and*

---

only support is a series of inapposite Takings cases (*e.g.*, *Cors*), which deal with situations where demand outruns supply.  Moderna's instruction also risks confusing the jury about the impact of Moderna's lack of non-infringing alternatives, a factor the Federal Circuit holds would support increasing the amount of a royalty at the hypothetical negotiation.  *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015).

**Moderna's position:** Moderna disagrees with Plaintiffs' objection.  The "real-world bargaining dynamics of the parties" should be clarified from the concept of patent hold-out.  *See United States v. Cors*, 337 U.S. 325, 333–34 (1949) (noting a price of damages "enhancement [that] reflects elements of the value that was created by [an] urgency … does not reflect what 'a willing buyer would pay … to a willing seller' in a fair market" because "[t]hat is a hold-up value, not a fair market value"); *Carlstrom v. United States*, 275 F.2d 802, 808 (9th Cir. 1960); *Boeing Co. v. United States*, 86 Fed. Cl. 303, 315 (2009); *Nat'l Food & Beverage Co. v. United States*, 105 Fed. Cl. 679, 696 (2012); *United States v. Weyerhaeuser Co.*, 538 F.2d 1363, 1366 (9th Cir. 1976).  Plaintiffs' only supporting case is *Orexo AB v. Actavis Elizabeth LLC*, 2019 WL 10060475 (D. Del. Mar. 19, 2019), which lacks the unique factual circumstances of this case (*e.g.*, exigencies from the pandemic, numerous agreements that appropriately exclude the "hold-up" value Plaintiffs seek to obtain).  The parties' "state of mind" or "consider[ations]" at the time of the hypothetical negotiation supports inclusion of Moderna's instruction, as opposed to inviting the jury to engage in "speculation and guesswork" or ignore the 'willing-buyer/willing-seller concept" because of unprecedented circumstances of the pandemic.  *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983).  There is also no risk that the jury will be "confused" by this instruction.  To the contrary, failing to instruct the jury on this point, which will be a focus of Plaintiffs' case at trial, seriously risks that the jury will, in fact, include the "value" of the pandemic or other exigencies that are not attributable to the patents.  Nothing in *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), is to the contrary (or even on point).

[208]  *See Wirtgen Am. v. Caterpillar, Inc.*, C.A. No. 17-770-JDW, D.I. 351 (D. Del. Mar. 20, 2024) (Feb. 12, 2024 Trial Tr.) (slightly modified); *see also 3G Licensing, S.A. v. HTC Corp.*, No. 17-cv-00083, D.I. 737, Final Jury Instructions (Oct. 16, 2023) (Instruction No. 5.8, Damages—Availability of Non-Infringing Alternatives); *W.R. Grace & Co. v. Elysium Health, Inc.*, No. 20-cv-01098, D.I. 310, Final Jury Instructions (Aug. 25, 2023) (Instruction No. 6.12, Reasonable Royalty—The Cost Approach / Availability of Non-Infringing Substitutes); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991).

*experience to implement the alternative at a time and cost to the party of implementing the alternative.  An alternative must be a product that is licensed under the patent or does not infringe the patent.  To be available, the alternative must have been known or foreseeable at the time of the hypothetical negotiation.  A non-infringing alternative need not have been actually used or implemented.*][209]

---

[209] **Moderna's position:** Moderna objects in entirety to this instruction because the availability and acceptability of non-infringing alternatives or non-infringing substitutes arises in the context of lost profits or the cost approach, neither of which is a theory relied on in this case for computation of damages.  *See* FCBA, May 2020, Model Patent Jury Instructions § 5.2 (providing model instructions regarding lost profits and the "but for" test).  The only instruction needed for the jury, if any, with respect to non-infringing alternatives is to understand if a non-infringing alternative is acceptable and available.  Plaintiffs' proposal only addresses "available" non-infringing alternative but does not inform or instruct the jury what is an "acceptable" non-infringing alternative.

**Plaintiffs' position**: Plaintiffs contend that an instruction on non-infringing alternatives is necessary, because non-infringing alternatives may be considered as part of the reasonable royalty inquiry.  Moderna is incorrect on the law to say that non-infringing alternatives are only considered in the context of lost profits or the cost approach because, "if avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater."  *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014).  "[U]nder Federal Circuit precedent evidence of the availability of an acceptable noninfringing alternative is relevant to a lost profits analysis ***and to a reasonable royalty analysis***."  *In re Ecast, Inc.*, 96 F. App'x 710, 711 (Fed. Cir. 2004) (citations omitted).  Courts thus routinely provide instructions as to the absence or availability of non-infringing alternatives with respect to a jury's consideration of a reasonable royalty.