IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MODERNA, INC. and MODERNATX, INC. | ) ) | C.A. No. 22-252 (JDW) |
| Defendants. | ) ) | |
| MODERNA, INC. and MODERNATX, INC., | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) ) | REDACTED - PUBLIC VERSION |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) ) | |
| Counterclaim Defendants. | ) ) | |

**MODERNA'S MOTIONS *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

**Page**

**MIL #1: Preclude Evidence, Testimony and Argument Related to the MC3 Email ............. 1**

    A.    Background ..................................................................................................... 1

    B.    The MC3 Email and Related Evidence Has No Relevance to This Case ............... 3

    C.    The Email Is Inadmissible to Attack Credibility .................................................. 3

    D.    The MC3 Email Is Highly Prejudicial ................................................................. 4

**MIL #2: Preclude Evidence, Testimony, and Argument Relating to Ratio Patent IPRs**
**.................................................................................................................................... 5**

    A.    Evidence or Argument Relating to the '069 IPR Should Be Excluded ................. 5

    B.    Evidence or Argument Relating to the '435 IPR Should Be Excluded ................. 8

**MIL #3: Preclude Evidence, Testimony, and Argument From (and About) Unrelated**
**Lawsuits and Disputes Involving Moderna .................................................................... 10**

    A.    The *Pfizer* Case and the NIH Dispute Are Irrelevant to This Case ..................... 10

    B.    The Dangers of Unfair Prejudice, Confusing the Issues, and Wasting Time
        Substantially Outweigh Any Marginal Relevance of Both Disputes.................... 13

    C.    *Pfizer* Case Deposition Testimony Is Not Admissible ........................................ 15

    D.    *Pfizer* Case Expert Reports Are Not Admissible ................................................ 16

**MIL #4:  Preclude Evidence and Argument Related to Settlement Discussions ................. 16**

    A.    Background ................................................................................................... 17

    B.    Argument ...................................................................................................... 17

**MIL #5: Preclude Evidence, Testimony, and Argument Relating to Irrelevant,**
**Prejudicial Financial Information Concerning Moderna ........................................... 20**

    A.    Background ................................................................................................... 20

    B.    Moderna's Worldwide Finances, Wealth, and Capital Are Irrelevant................. 20

    C.    Any Marginal Relevance of Moderna's Finances Is Outweighed by the
        Danger of Unfair Prejudice and Constitutes Improper Character Evidence........ 24

# TABLE OF AUTHORITIES[1]

**Page(s)**

## Cases

*Affiliated Mfg., Inc. v. Aluminum Co. of Am.*,
  56 F.3d 521 (3d Cir. 1995)..................................................................................18

*AgroFresh Inc. v. Essentiv LLC*,
  C.A. No. 16-662-MN-SRF, 2018 U.S. Dist. LEXIS 213203 (D. Del. Dec. 11,
  2018) ....................................................................................................................19

*Andrade v. Walgreens-Optioncare, Inc.*,
  784 F. Supp. 2d 533 (E.D. Pa. 2011) ....................................................................4

*Arlio v. Lively*,
  474 F.3d 46 (2d Cir. 2007)..................................................................................13

*In re Bankatlantic Bancorp, Inc. Sec. Litig.*,
  C.A. No. 07-61542-CIV-UNGARO, 2010 WL 11426137 (S.D. Fla. Aug. 20,
  2010) ...................................................................................................................25

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)...............................................................................6

*Belden Canada ULC v. Commscope, Inc.*
  No. 22-782-RGA, D.I. 318 (D. Del. Oct. 10, 2025) ............................................23

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
  C.A. No. 00-564-JJF, 2003 U.S. Dist. LEXIS 23837 (D. Del. Nov. 25, 2003)......18

*Coleman v. Home Depot, Inc.*,
  306 F.3d 1333, 1343 (3d Cir. 2002)......................................................................14

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  No. 93 C 4788, 1994 WL 270252 (N.D. Ill. June 16, 1994) .................................25

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978)....................................................................................21

*Evolved Wireless, LLC v. Apple Inc.*,
  C.A. No. 15-542-JFB-SRF, 2019 WL 1100471 (D. Del. Mar. 7, 2019) ................25

---

[1] Unless otherwise indicated, all emphasis has been added, and internal quotation marks, brackets, and citations have been omitted and otherwise cleaned up from quoted material.

*Finjan, Inc. v. Cisco Sys. Inc.*,
C.A. No. 17-cv-00072-BLF, 2020 WL 13180008 (N.D. Cal. June 5, 2020) ..........................9

*Finjan, Inc. v. Sophos, Inc.*,
C.A. No. 14-cv-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016)...............7, 8, 10

*Flexuspine, Inc. v. Globus Med., Inc.*,
C.A. No. 6:15-cv-201-JRG-KNM, 2016 WL 9279999 (E.D. Tex. July 6, 2016) ...........................................................................................................................18

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983)................................................................................18

*Hui Cai v. CMB Exp. LLC*,
C.A. No. CV 22-02025, 2024 WL 4796318 (C.D. Cal. Oct. 31, 2024) .............3-4

*Ingenico Inc. v. Ioengine, LLC*,
C.A. No. 18-826-WCB, 2022 WL 22835287 (D. Del. Jul 5, 2022) .......................15

*Int'l Bus. Machines Corp. v. Zynga Inc.*,
C.A. No. 22-590-GBW, 2024 WL 3993290 (D. Del. Aug. 29, 2024)....................14

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
C.A. No. 2:17-CV-00661-JRG-RSP, 2019 WL 1979866 (E.D. Tex. May 3, 2019) ..............................................................................................................................6

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
C.A. No. 2:17-cv-00662-JRG-RSP, 2019 WL 1987172 (E.D. Tex. Apr. 12, 2019) ..............................................................................................................................6

*Interdigital Commc'ns Inv. v. Nokia Corp.*,
C.A. No. 13–10–RGA, 2014 WL 8104167 (D. Del. Sept. 19, 2014)..............7, 8, 10

*Inventio AG v. Thyssenkrupp Elevator Corp.*,
C.A. No. 08–874–RGA, 2014 WL 554853 (D. Del. Feb. 6, 2014) .......................25

*Johns Hopkins Univ. v. Alcon Lab'ys Inc.*,
No. CV 15-525, 2018 WL 4178159 (D. Del. Aug. 30, 2018) ................................11

*Johnson v. Fed. Express Corp.*,
C.A. 1:12–CV–444, 2014 WL 805995 (M.D. Pa. Feb. 28, 2014)..........................21

*Lab'y Corp. of Am. Holdings v. Natera, Inc.*,
C.A. No. 21-669-GBW, C.A. No. 21-1635-GBW, 2025 WL 2467548 (D. Del. Aug. 27, 2025) ........................................................................................................14, 16

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...................................................................................25

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
   C.A. No. 17-14-JFB-SRF, 2019 WL 2775515 (D. Del. Jul. 2, 2019) .............................21, 25

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)...............................................................................13, 14

*Orexo AB v. Actavis Elizabeth LLC*,
   424 F. Supp. 3d 371 (D. Del. 2019)........................................................................................14

*PharmaStem Therapeutics, Inc. v. Viacell Inc.*,
   C.A. No. C.A. 02–148 GMS, 2003 WL 22387038 (D. Del. Oct. 7, 2003)...........................18

*Speyside Med., LLC v. Medtronic Corevalve, LLC*,
   No. 20-361 (JLH) (CJB), D.I. 571 (D. Del. Sept. 20, 2024)...................................................14

*TOT Power Control, S.L. v. Apple, Inc.*,
   C.A. No. 21-1302 (MN) (D. Del. June 20, 2025), D.I. 437.....................................................23

*United States v. Casoni*,
   950 F.2d 893 (3rd Cir. 1991) ....................................................................................................4

*United States v. Saada*,
   212 F.3d 210 (3d Cir. 2000).......................................................................................................5

*United States v. Wright*,
   534 F. Supp. 3d 384 (M.D. Pa. 2021) ........................................................................................5

*VLSI Tech. LLC v. Intel Corp.*,
   C.A. No. 18-0966-CFC, 2020 WL 3488584 (D. Del. June 26, 2020).......................................6

*Wonderland Switzerland AG v. Evenflo, Co.*,
   C.A. No. 20-cv-00727-JPM, 2023 U.S. Dist. LEXIS 155276 (D. Del. Jul. 3,
   2023) ...........................................................................................................................................5

**Rules**

Fed. R. Civ. P. 26 .............................................................................................................10, 16

Fed. R. Civ. P. 32 .............................................................................................................10, 15

Fed. R. Civ. P. 37 .............................................................................................................10, 16

Fed. R. Evid. 401 ....................................................................................................... *passim*

Fed. R. Evid. 402 ....................................................................................................... *passim*

Fed. R. Evid. 403 ....................................................................................................... *passim*

Fed. R. Evid. 404 ....................................................................................................... *passim*

Fed. R. Evid. 408 ................................................................................................ *passim*

Fed. R. Evid. 608 ................................................................................................1, 3, 4

Fed. R. Evid. 609 ................................................................................................1, 4

Fed. R. Evid. 701 ................................................................................................10, 16

Fed. R. Evid. 802 ................................................................................................10, 16

Fed. R. Evid. 804 ................................................................................................15

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Description |
|---|---|
| '069 Patent | U.S. Patent No. 8,058,069 – initially asserted and dropped as part of claim narrowing (D.I. 691 ¶ 2) |
| '069 IPR | *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* No. IPR2019-00554 |
| '127 Patent | U.S. Patent No. 9,404,127 – not asserted |
| '127 IPR | *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* No. IPR2018-00680 |
| '127 IPR Appeal | *ModernaTx, Inc. v. Arbutus Biopharma Corporation*, 65 F.4th 656 (Fed. Cir. 2023) |
| '435 Patent | U.S. Patent No. 9,364,435 – currently asserted, Ratio Patent Family |
| '435 IPR | *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* No. IPR2018-00739 |
| '435 IPR Appeal | *ModernaTx, Inc. v. Arbutus Biopharma Corporation*, No. 2020-1184 (Fed. Cir.) |
| Arbutus | Arbutus Biopharma Corporation |
| Asserted Patents | U.S. Patent Nos. 9,504,651; 9,364,435; 8,492,359; and 11,141,378 |
| BioNTech | BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. |
| EP 254 | EP 2 279 254, foreign counterpart to Ratio Patents |
| FRCP | Federal Rules of Civil Procedure |
| FRE | Federal Rules of Evidence |
| Genevant | Genevant Sciences GmbH |
| IPR | *inter partes* review |
| MC3 | shorthand chemical name of a cationic lipid |
| MERS | Middle East Respiratory Syndrome |
| MIL | motion *in limine* |
| Moderna | Moderna, Inc. and ModernaTX, Inc. |
| mRNA | messenger RNA |
| NIH | National Institutes of Health |
| Plaintiffs | Arbutus and Genevant |
| Pfizer | Pfizer, Inc. |

**TABLE OF EXHIBITS**

| Exhibit # | Exhibit Description |
|---|---|
| A | November 15, 2019 Email from Mark Cornebise to Kerry Benenato bearing production Bates number MRNA-GEN-01430937 (PTX-65). |
| B | Excerpts from the Opening Expert Report of Dr. Michael Mitchell (November 25, 2024) |
| C | Excerpts from the Expert Report of Catharine M. Lawton (November 25, 2024) |
| D | Excerpts from the Deposition Transcript of Peter Zorn (June 5, 2024) |
| E | Excerpts from the Reply Expert Report of Dr. Michael Mitchell (March 21, 2025) |
| F | November 20, 2019 Moderna presentation bearing Bates MRNA-GEN-01430938 through MRNA-GEN-01430944. |
| G | Excerpts from Plaintiffs' deposition designations of the Deposition Transcript of Kerry Benenato (May 17, 2024) |
| H | Excerpts from Plaintiffs' deposition designations of the Deposition Transcript of Stephen G. Hoge (May 22, 2024) |
| I | Petition, *Moderna Therapeutics, Inc. v Arbutus Biopharma Corporation*, IPR No. 2019-00554, Paper 1 (P.T.A.B. Jan 9, 2019) (PTX-63) |
| J | Exhibit 1008, *Moderna Therapeutics, Inc. v Arbutus Biopharma Corporation*, IPR No. 2019-000554 (P.T.A.B. Jan. 2, 2019) bearing Bates GENV-01087543 through GENV-01087616 (PTX-565) |
| K | Petitioner's Reply to Protiva's Response, *Moderna Therapeutics, Inc. v Protiva Biotherapeutics, Inc.*, IPR No. 2019-00554, Paper 21 (P.T.A.B. Mar. 20, 2020) (PTX-641) |
| L | Judgment, *Moderna Therapeutics, Inc. v Arbutus Biopharma Corporation*, IPR No. 2019-00554, Paper 40 (P.T.A.B. July 23, 2020) bearing Bates range GENV-01013979 through GENV-01014017 (PTX-768) |
| M | Decision, *Moderna Therapeutics, Inc. v Arbutus Biopharma Corporation*, Appeal No. 2020-2329 (C.A.F.C. Dec. 1, 2021) (PTX-971) |
| N | Arbutus Biopharma Corporation, Form 8-K (January 15, 2026) |
| O | Petitioner's Reply to Patent Owner Response, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.*, IPR2018-00739, Paper 28 (P.T.A.B. Mar. 22, 2019) bearing Bates GENV-01087779 through GENV-01087811 (PTX-64) |

| Exhibit # | Exhibit Description |
|---|---|
| P | Exhibit 1007, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR2018-00739 (P.T.A.B. Mar. 5, 2018) bearing Bates GENV-00030241 through GENV-00030309 (PTX-511) |
| Q | Petition, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR2018-00739, Paper 2 (P.T.A.B. Mar. 5, 2018) bearing Bates GENV-00030150 through GENV-00030225 (PTX-512) |
| R | Petitioner's Opposition to Patent Owner's Contingent Motion to Amend, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR No. 2018-00739, Paper 29 (P.T.A.B. Mar. 22, 2019) (PTX-514) |
| S | Patent Owner's Preliminary Response Pursuant to 37 C.F.R. 42.107, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR2018-00739, Paper 12 (P.T.A.B. June 14, 2018) bearing Bates MRNA-GEN-02671754 through MRNA-GEN-02671803 (PTX-531) |
| T | Exhibit 1020, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR2018-00739 (P.T.A.B. Feb. 5, 2019) (PTX-572) |
| U | Exhibit 1021, *Moderna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.,* IPR2018-00739 (P.T.A.B. Mar. 22, 2019) (PTX-577) |
| V | Final Written Decision, *Moderna Therapeutics, Inc. v Protiva Biotherapeutics, Inc.,* IPR No. 2018-00739, Paper 51 (P.T.A.B. Sept. 11, 2019) (PTX-602) |
| W | Decision, *ModernaTx, Inc. v. Arbutus Biopharma Corp.,* Appeal No. 2020-1184 (C.A.F.C. Dec. 1, 2021) (PTX-972) |
| X | Excerpts from the Responsive Expert Report of Niren Murthy (February 14, 2025) |
| Y | Excerpts from the Deposition Transcript of Hamilton B. Bennett (May 20, 2024) |
| Z | Excerpts from the Expert Report of James E. Malackowski (February 23, 2024) bearing Bates MRNA-GEN-02616560 through MRNA-GEN-02616811 (PTX-106) |
| AA | Excerpts from the Opening Expert Report of Graham Brazier (February 23, 2024) bearing Bates MRNA-GEN-02615980 through MRNA-GEN-02616043 (PTX-1374) |
| AB | Declaration of James E. Malackowski, *BioNTech SE v. Moderna Tx, Inc.,* IPR No. 2023-01359 bearing Bates GENV-01079456 through GENV-01079539 (PTX-1396) |

| Exhibit # | Exhibit Description |
|---|---|
| AC | Excerpts from the Patent License Between NIH and ModernaTX, Inc. (December 12, 2020) bearing Bates MRNA-GEN-01720811 through MRNA-GEN-01720844 (PTX-1290) |
| AD | Excerpts from the Deposition Transcript of Hamilton B. Bennett (July 12, 2024) |
| AE | Declaration of Mark C. McLennan |
| AF | Excerpts from Plaintiffs' deposition designations from the Deposition Transcript of Guillaume Stewart-Jones. Ph.D. (December 15, 2023) bearing Bates MRNA-GEN-01735436 through MRNA-GEN-01635489 |
| AG | *New York Times* article titled *After Long Delay, Moderna Pays N.I.H. for Covid Vaccine Technique* (November 21, 2024) bearing Bates GENV-00963807 through GENV-00963811 (PTX-1134) |
| AH | Excerpts from the Opening Expert Report of David Ho, M.D. (February 23, 2024) bearing Bates MRNA-GEN-02616044 through MRNA-GEN-02616559 (PTX-1375) |
| AI | Exhibit 2198, Declaration of Warren Chan, Ph.D., *BioNTech SE and Pfizer Inc. v. Moderna Tx, Inc.*, IPR No. 2023-01358 (P.T.A.B. Mar. 29, 2024) (PTX-1397) |
| AJ | Exhibit 2201, Declaration of Deborah H. Fuller, Ph.D., *BioNTech SE v. Moderna TX, Inc.*, IPR No. 2023-01358, bearing Bates GENV-01099242 through GENV-01099758 (PTX-1398) |
| AK | Amended Rule 26(a) Initial Disclosures of Plaintiff Arbutus Biopharma Corporation (May 24, 2024) |
| AL | Amended Rule 26(a) Initial Disclosures of Plaintiff Genevant Sciences GMBH (May 24, 2024) |
| AM | Email from Mark McLennan to Matthew Lachman regarding Arbutus v. Moderna Motions in Limine (Jan. 21, 2026) |
| AN | Letter from Sascha Bucher and William H. Collier to Stéphane Bancel and Lori Henderson regarding Arbutus/Genevant LNP Technology and Intellectual Property (Nov. 23, 2020) |
| AO | Letter from Markus Rohrwild and William H. Collier to Stéphane Bancel and Shannon Klinger regarding Arbutus/Genevant LNP Technology and Intellectual Property (Oct. 12, 2021) |
| AP | Email chain dated between March 12, 2021 and April 5, 2021 between Pete Zorn to Neal Dahiya regarding Follow Up. |

| Exhibit # | Exhibit Description |
|-----------|--------------------|
| AQ | Email chain dated between June 23, 2021 and June 30, 2021 between Neal Dahiya to Pete Zorn regarding Proposal. |
| AR | Email dated between January 15, 2021 and January 28, 2021 involving Said Francis, Pete Zorn, Shaun Ryan, and Pete Lutwyche regarding Revised CDA. |
| AS | Excerpts from a Moderna presentation bearing Bates MRNA-GEN-01251860 through MRNA-GEN-01252028 (PTX-0070) |
| AT | Excerpts from a Moderna presentation bearing Bates MRNA-GEN-01570975 through MRNA-GEN-01571159 (September 2, 2020) (PTX-0808) |
| AU | Excerpts from a Moderna presentation bearing Bates MRNA-GEN-01320828 through MRNA-GEN-01321012 (September 1, 2021) (PTX-941) |
| AV | Moderna, Inc. Spreadsheet of Statement of Operations (December 31, 2020) (PTX-1086) |
| AW | Moderna, Inc. Spreadsheet of Statement of Operations (December 31, 2020) (PTX-1239) |
| AX | Excerpts from the Deposition Transcript of Christopher Vellturo (April 17, 2025) |
| AY | Excerpts from a Moderna presentation (May 15, 2020) bearing Bates MRNA-GEN-02645641 through MRNA-GEN-02645677 (PTX-68) |
| AZ | Moderna presentation (April 14, 2020) bearing Bates GENV-01001886 through GENV-01002144  (PTX-662) |
| BA | Youtube video entitled "Moderna raises eyebrows with stock offering ahead of STAT News report." (May 19, 2020) (PTX-686) |
| BB | Excerpts from the Deposition Transcript of Catharine Lawton (April 30, 2025) |
| BC | New York Times article entitled "How Upbeat Vaccine News Fueled a Stock Surge, and an Uproar," (May 23, 2020) bearing Bates GENV-01011429 through GENV-0101143 (PTX-765) |
| BD | Press release entitled "Moderna Announces Phase 3 COVE Study of mRNA Vaccine Against COVID-19 (mRNA-1273) Begins," (July 27, 2020) bearing Bates GENV-01012204 through GENV-01012206 (PTX-82) |
| BE | "Ego, ambition, and turmoil: Inside one of biotech's most secretive startups," bearing Bates GENV-01009060 through GENV-01009061 (PTX-445) |
| BF | Press release entitled "Moderna Announces Pricing of Public Offering of Shares of Common Stock," (May 19, 2020) bearing Bates GENV-00994895 through GENV-00994896 (PTX-684) |

| Exhibit # | Exhibit Description |
|---|---|
| BG | Excerpts from the Opening Expert Report of Catharine M. Lawton (November 25, 2024) (PTX-26) |
| BH | Moderna, Inc. Form S-3 Registration Statement (May 18, 2020) bearing Bates GENV-00997084 through GENV-00997135 (PTX-683) |
| BI | Email from Stéphane Bancel to Stephen Hoge (March 13, 2020) bearing Bates MRNA-GEN-01725263 through MRNA-GEN-01725264 (PTX-1325) |
| BJ | Excerpts from the Rebuttal Expert Report of Christpher A. Vellturo, Ph.D. (February 14, 2025) |
| BK | Excerpts from the Rebuttal Report of Pierre Meulien, Ph.D. (February 12, 2025) |

The questions for the jury are simple: are the Asserted Patents invalid, did Moderna infringe any valid claims, and, if necessary, what is their real economic value? To keep the jury focused on those core questions, Moderna moves to bar irrelevant sideshows that will only inflame, confuse, and distract the jury.

**MIL #1: Preclude Evidence, Testimony and Argument Related to the MC3 Email**

Plaintiffs should be precluded from introducing any evidence, testimony, or argument at trial related to an irrelevant 2019 email chain that Plaintiffs seek to use to baselessly impugn Moderna's character. Specifically, Moderna seeks to exclude reference to a 2019 email that Plaintiffs intend to introduce to argue that Moderna "hid" the use of an irrelevant lipid ingredient (MC3) in a 2019 presentation. Their allegations of dishonesty are not only untrue, they are also irrelevant to the asserted patents and accused product, and improperly intended to paint Moderna as a bad actor to unfairly prejudice the jury against Moderna. *See* FRE 401, 402, 403, 608, 609.

### A.    Background

MC3 is a cationic lipid that Moderna previously used in early, pre-COVID-19 pipeline products in development. It is not one of the four lipids in Moderna's COVID-19 vaccine, which relies on Moderna's own SM-102 cationic lipid. D.I. 1 ¶136. MC3 is neither specifically claimed nor even disclosed in any of the four patents Plaintiffs assert. Ex-E ¶242. It was invented later by another company (Acuitas) and separately patented.[2] In May 2019, before the pandemic, two Moderna employees (Kerry Benenato, Mark Cornebise) exchanged emails about an internal presentation surveying historical cationic lipids the company had "moved well beyond," including MC3. Ex-A (PTX-65) ("MC3 Email"), Ex-F (attachment to MC3 Email). Mr. Cornebise asked whether the slide could identify "MC3" by name; Dr. Benenato suggested referring to it more

---

[2] MC3 was first synthesized by AlCana Technologies, Inc. (later known as Acuitas). D.I. 659-4 ¶239. Arbutus was later assigned the unasserted Acuitas patents which purport to cover MC3. *Id.*

1

generically as a "legacy lipid" because the presentation was not intended to detail obsolete chemistry. Ex-A. Dr. Benenato stated "I know it is hard as a chemist but we have to fib a bit and not tell the whole structure story … I think you need to take out the mc3 part of the story." *Id.* Plaintiffs and their experts now contend this single email shows Moderna tried to "hide" use of MC3, supporting a finding of willful infringement. *See, e.g.*, D.I. 658-1 ¶¶617, 644, 685, 729, 1169, 1412–13, 1683–84; Ex-C ¶909; D.I. 659-2 ¶537; D.I. 659-4¶826; D.I. 660-1¶141. That contention is misplaced—the 2019 MC3 Email predates the accused vaccine, involves a lipid no longer used, and has no connection to the patents or claims at issue. Ex-C at ¶247. Moderna and its scientists "hid" nothing related to MC3: the slide deck revised as Dr. Benenato suggested still referred to MC3 in both name and chemical structure. Ex-F at -939. And Moderna has plenty of publications and documents detailing their early work with MC3, which Plaintiffs' expert analyzed at length. *See, e.g.*, D.I. 659-4 ¶¶269–87, 289–91; Ex-B ¶¶268, 288.

Plaintiffs' repeated use of the MC3 Email throughout expert reports and in filings confirm they seek to misleadingly paint Moderna as a dishonest and untrustworthy company. *E.g.*, D.I. 564 at 16. In fact, even setting aside willful infringement allegations, Plaintiffs' ***damages*** expert repeatedly (***8 times***) brings up this email to suggest that Moderna attempted to avoid a license and encouraged others to infringe the asserted patents, despite those points having no relevance to damages and despite MC3 having no relevance to the Accused Product or Asserted Patents. *See, e.g.*, D.I. 658-1¶¶617, 644, 684, 729, 1169, 1412, 1413; Ex-C ¶909; D.I. 564 at 16. And Plaintiffs plan to continue this misleading narrative and endlessly parade around this exhibit at trial—e.g., Plaintiffs designated over 20 pages of testimony on this one email. Ex-G at 20:14–28:18, 29:17–31:14, 32:7–21, 33:4–36:22, 39:20–45:10; Ex-H at 436:22–439:2. The MC3 Email and related testimony should be precluded as irrelevant, improper character evidence, and highly prejudicial.

2

### B. The MC3 Email and Related Evidence Has No Relevance to This Case

MC3 is a cationic lipid that has no relevance to this case. FRE 402. It is undisputed that: (1) the accused vaccine uses SM-102 and not MC3 as the cationic lipid, D.I. 1 ¶136; (2) MC3 was not disclosed or specifically claimed in the Asserted Patents, Ex-E ¶242; and (3) MC3 was invented **after** all asserted patents issued, *id.* at ¶239. In fact, the MC3 Email itself states that Moderna had "moved well beyond" MC3 and was sent in 2019, before the pandemic and any alleged infringement. Ex-A; *see also* D.I. 658-1¶ 644 (showing Moderna used MC3 in 2017 in its Zika product). Despite these undisputed facts, Plaintiffs nonsensically claim that MC3 is relevant to show that the Accused Product (which does not use MC3) willfully infringes the Asserted Patents (which do not claim or disclose MC3). *See* D.I. 659-4¶826; D.I. 658-1 ¶¶1683–84. It defies logic to suggest that a 2019 email about a lipid never used in the accused product, sent before the accused product was even conceptualized can be relevant to infringement—let alone willful infringement. And while Plaintiffs' expert Dr. Mitchell suggested that "MC3" in certain instances might refer to more than just the cationic lipid such as the ratio of four lipids in a **formulation**, D.I. 660-1¶ 244, that is undoubtedly not true of the slide deck attached to the MC3 Email, which solely focuses on comparisons between cationic lipids with no mention of ratios or formulations. Ex-A ("'MC3' describes part of the **structure**.'"), Ex-F. The Court should preclude any reference to the MC3 Email and related testimony as irrelevant under FRE 401/402.

### C. The Email Is Inadmissible to Attack Credibility

Given the MC3 Email is inadmissible on relevance grounds, Plaintiffs may also try to use it indirectly to attack credibility. But that too would be impermissible. To start, the email cannot be used to attack **Moderna's** credibility as a company. Evidence or testimony regarding a lack of truthfulness can only be used to attack the credibility of specific witnesses under FRE 608. *Hui Cai v. CMB Exp. LLC*, 2024 WL 4796318, at *12 (C.D. Cal. Oct. 31, 2024). And even if the email

did shed light on a witness's character for truthfulness (it does not), the email and related testimony is still inadmissible under FRE 608. "Except for a criminal conviction under Rule 609, ***extrinsic evidence is not admissible*** to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FRE 608(b). This email is extrinsic evidence—not testimony—and is thus inadmissible. *See Andrade v. Walgreens-Optioncare, Inc.*, 784 F. Supp. 2d 533, 536 (E.D. Pa. 2011) ("If the conduct is probative of the witness's character for truthfulness, a party may inquire of that conduct on cross-examination, but ***may not*** offer extrinsic evidence of the conduct.") (emphasis in original). Further, "[p]articular instances of conduct . . . may be inquired into on cross-examination" and such testimony is generally limited to circumstances where a witness "***testifies concerning his character for truthfulness***." FRE 608 (Advisory Committee Notes). As such, Plaintiffs cannot open the door to a witness's character for truthfulness unless the witness first opens the door.

> ### D.    The MC3 Email Is Highly Prejudicial

To the extent the MC3 Email has any minimal relevance or has an ability to shed light on witness credibility (it does not), the email is still inadmissible under FRE 403 given how far afield it is from the factual issues of the case and its obvious prejudicial effect on the jury. *See* FRE 403; *see also United States v. Casoni*, 950 F.2d 893, 919 (3rd Cir. 1991) ("Rule 403 authorizes a district court in its ***broad discretion to exclude collateral matters*** that are likely to confuse the issues.").

At best, the MC3 Email would only serve to confuse the jury in an already complex case, and at worst it would prejudice the jury against Moderna by introducing an email exchange whose inflammatory value far exceeds any minimal relevance. The jury does not need a side show which would introduce a non-relevant lipid that has no bearing on any issue in this case. Indeed, "[t]he purpose of Rule 608(b)'s 'ban on extrinsic evidence . . . is 'to avoid minitrials on wholly collateral matters which tend to distract and confuse the jury . . . and to prevent unfair surprise arising from

false allegations of improper conduct.'" *United States v. Wright*, 534 F. Supp. 3d 384, 392 (M.D. Pa. 2021) (quoting *United States v. Saada*, 212 F.3d 210, 222 (3d Cir. 2000) (cleaned up)). The introduction of evidence or arguments related to this email would require Moderna to explain its context, including explaining that MC3 is not used in the accused product, and is not claimed or described in the patents. This detour is a waste of the Court's and the jury's time.

In sum, Plaintiffs' introduction of the MC3 Email or testimony about it will only serve to bias the jury against Moderna as a dishonest company based on a one-off email exchange that has nothing to do with the facts of this case. The risk that the jury will infer all of Moderna's testimony is tainted by false credibility attacks outweighs the value of an irrelevant six-year-old email. *See Wonderland Switzerland AG v. Evenflo, Co.*, 2023 U.S. Dist. LEXIS 155276, at *22 (D. Del. Jul. 3, 2023) (excluding email under FRE 403, finding that "the potential to cause confusion and the overall prejudicial effect of the email outweigh[ed] its probative value and limited relevance").

**MIL #2: Preclude Evidence, Testimony, and Argument Relating to Ratio Patent IPRs**

Plaintiffs should be precluded from introducing any evidence, testimony, or argument at trial relating to IPRs Moderna filed against certain Ratio Patents prior to this litigation. One IPR was against the '069 Patent, which Plaintiffs dropped from this case as part of court-mandated case narrowing. D.I. 475. Another IPR invalidated some claims of the '435 Patent; other claims that were upheld remain in suit in this case. Although Plaintiffs argue that they should be able to introduce evidence of the '069 and '435 IPRs—including the ***results*** of those IPRs—as relevant to willfulness and damages, the IPRs are irrelevant and prejudicial, and evidence and argument relating to them should be excluded under FRE 401, 402, and 403.

**A.    Evidence or Argument Relating to the '069 IPR Should Be Excluded**

Plaintiffs dropped the '069 Patent from this case, and thus, non-infringement and invalidity of this patent are not at issue at trial. D.I. 691 ¶ 2. Nonetheless, Plaintiffs' exhibit list contains

many documents relating to the '069 IPR, including the results of that IPR. *E.g.*, Ex-I (PTX-63); Ex-J (PTX-565); Ex-K (PTX-641); Ex-L (PTX-768); Ex-M (PTX-971). Plaintiffs claim this evidence is purportedly relevant to willfulness and damages. Plaintiffs are wrong.

The law is clear that Plaintiffs may not use the dropped '069 Patent to establish willful infringement of the remaining Asserted Patents: willful infringement requires knowledge of the ***asserted patents themselves*** and deliberate or intentional infringement of those patents. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). "[K]nowledge of [a parent patent] or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient." *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 1987172, at *2 (E.D. Tex. Apr. 12, 2019) (recommending grant of summary judgment of no willfulness), *adopted*, 2019 WL 1979866 (E.D. Tex. May 3, 2019); *VLSI Tech. LLC v. Intel Corp.*, 2020 WL 3488584, at *5 (D. Del. June 26, 2020) ("Allegations about . . . patents not asserted here do not plausibly establish that [plaintiff] had knowledge of infringement."). Although the '069 IPR may tend to establish Moderna's pre-suit knowledge of the '069 Patent (an undisputed fact D.I. 321, Ans. ¶ 38), it does nothing to establish Moderna's pre-suit knowledge of the ***Asserted Patents***, let alone any purported intentional infringement of the ***Asserted Patents***. The IPR thus cannot be relevant to willfulness.

Nor is it relevant to Plaintiffs' damages theories. Plaintiffs' damages expert puts forth an unfounded theory that Plaintiffs' licenses to its portfolio including the Asserted Patents are not reflective of their true value because Moderna's Patent Office challenges depressed their licensing rates. *E.g.*, D.I. 671 at 9; D.I. 658-1 ¶¶ 374–81, 835. Even if the Court does not exclude Plaintiffs' damages expert, Plaintiffs have ***no*** evidence that any IPR, let alone the '069 IPR specifically, had any effect on licensing. While their licensing 30(b)(6) witness claimed otherwise, there is not a single document that supports this dubious assertion. Ex-D at 91:12–92:23, 126:8–128:21 (noting

patents are "the last thing that gets determined" when finalizing a license). Plaintiffs' self-serving narrative does not justify introducing the fact of, or the results of, the IPR. *See* FRE 401–402.

Plaintiffs' arguments of relevance are further undermined by Plaintiffs' irreconcilable position that the jury should not hear about two other Patent Office challenges filed by Moderna in the same time period, which invalidated other non-asserted patents. During the meet-and-confer process, Plaintiffs objected to Moderna referencing results of the '127 IPR, which held Plaintiffs' '127 Patent invalid, and a similar challenge to Plaintiffs' EP 254, a European counterpart to the Ratio Patents that was recently held invalid for lack of disclosure. '127 IPR Appeal at 659; Ex-N at 2. If the results of a Patent Office challenge concerning one unasserted patent in Plaintiffs' patent portfolio ('069 Patent) are relevant to Plaintiffs' willfulness and damages theories, then so, too, are the results of ***any other*** challenge to any unasserted patent within the portfolio. Indeed, if Plaintiffs' theory about the "cloud" over its portfolio had any relevance to damages, the '127 IPR and EP 254 decision would certainly be relevant to show that any such cloud was justified.

Even if the '069 IPR bore any relevance to the issues to be tried (it does not), any probative value of the IPR is substantially outweighed by the dangers of unfair prejudice to Moderna, confusing the issues to be tried, and wasting time. *See* FRE 403. Evidence relating to the '069 IPR would only serve to distract the jury into focusing on an irrelevant patent and an irrelevant proceeding. Courts have previously explained that it takes "a significant amount of time and effort to adequately explain the relevance and limitations of [Patent Office] proceedings to the jury" and that "there is a substantial risk that the jury will improperly substitute its own judgment for the PTO decisions." *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016); *see also Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 8104167, *1 (D. Del. Sept. 19, 2014) (holding that IPR denial was "of marginal relevance, and the probative value is greatly outweighed

by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence"). The risk is particularly acute where, as here, Plaintiffs seek to introduce Patent Office proceedings involving an unasserted patent. Not only would Moderna have to explain why it filed an IPR against the '069 Patent, it would also have to explain why the '069 IPR is irrelevant to the validity of the Asserted Patents. *See* D.I. 559 ¶ 132. At bottom, Plaintiffs made the strategic decision to drop the '069 Patent from this case, just as Moderna significantly narrowed its own case, and they must live with the consequences of that decision.

### B.    Evidence or Argument Relating to the '435 IPR Should Be Excluded

Plaintiffs also intend to introduce evidence of the '435 IPR (*e.g.*, Ex-O (PTX-64); Ex-P (PTX-511); Ex-Q (PTX-512); Ex-R (PTX-514); Ex-S (PTX-531); Ex-T (PTX-572); Ex-U (PTX-577); Ex-V (PTX-602); Ex-W (PTX-972)), but again, that IPR is irrelevant to the issues to be tried and should be excluded.

Plaintiffs may argue the '435 IPR shows Moderna had pre-suit knowledge of the '435 Patent. But Moderna admits pre-suit knowledge of this patent (D.I. 321, Ans. ¶ 37), and Plaintiffs can introduce that evidence through Moderna's fact witnesses without referring to the IPR. To the extent Plaintiffs argue that the IPR shows that Moderna intended to infringe the '435 Patent, they are incorrect. The '435 IPR was filed in 2018, and the Patent Office rendered its decision in 2019—before Moderna developed its COVID-19 vaccine. Ex-V (PTX-602). Further, Moderna's appeal was dismissed for lack of standing after Arbutus argued "there [was] no existing or imminent threat of infringement." '435 IPR Appeal, D.I. 22 at 9. On this record, the '435 IPR cannot show that Moderna intended to infringe the '435 Patent and is therefore irrelevant. FRE 401–402.

Plaintiffs also contend that the '435 IPR is relevant to their contrived damages theory regarding depressed licensing rates for Plaintiffs' patent portfolio. That argument fails for the same reasons described above with respect to the '069 IPR. As a last-ditch effort to admit the results of

the '435 IPR, Plaintiffs make the specious assertion that if the '435 IPR is admitted at all, then the **results** of the IPR must come in. Otherwise, according to Plaintiffs, the jury may be left with the impression that the '435 Patent was held invalid. That is nonsensical: no jury is likely to believe that it is adjudicating a dispute over an invalid patent. Further, the results of the '435 IPR were mixed: some claims were held invalid as anticipated, while others were upheld. Ex-V (PTX-602) at 925. Plaintiffs should not be permitted to tell the jury that the '435 Patent was held "valid" while attempting to preclude Moderna from mentioning this additional context.

The '435 IPR should also be excluded under FRE 403. Plaintiffs plainly intend to use the '435 IPR to bolster the validity of the '435 Patent, which may "mislead the jury into believing that because the Asserted Patents have survived many attacks, they must be valid against the attacks presented in this case." *Finjan, Inc. v. Cisco Sys. Inc.*, 2020 WL 13180008, at *9 (N.D. Cal. June 5, 2020). For instance, both in filings to this Court and in their expert reports disclosing opinions they plan to present at trial, Plaintiffs have taken the position that "proving invalidity is practically impossible" due to the IPRs. D.I. 170 at 4; *see also* Ex-X ¶¶ 246–66 (stating that IPRs "bear strongly on the validity of the claims asserted in this case"). To rebut Plaintiffs' assertion that the IPR settled the validity of the asserted claims, Moderna would be forced to spend significant time addressing the material differences between the evidence, issues, and standards in the IPR and this case. D.I. 556 at 4–14 (describing differences between proceedings).

The prejudice would be compounded if Moderna does not present an obviousness defense[3] with respect to the '435 Patent. It would be difficult, if not impossible, to explain to the jury that the IPR has no effect on its verdict on Moderna's § 112 defenses, and the jury could be misled into thinking the patent claims are valid simply because they survived an IPR. Moreover, apart from

---

[3] Moderna has not alleged an anticipation defense with respect to the '435 Patent.

the confusion that is inherent in introducing Patent Office proceedings to the jury, explaining such proceedings in the absence of prior-art defenses would unnecessarily introduce extraneous legal concepts to the jury. *See Finjan*, 2016 WL 4560071, at *14; *see also Interdigital Commc'ns*, 2014 WL 8104167, *1. In such circumstances, the jury is even more likely to confuse the irrelevant legal concepts with the issues it must actually decide, counseling in favor of exclusion.

**MIL #3: Preclude Evidence, Testimony, and Argument From (and About) Unrelated Lawsuits and Disputes Involving Moderna**

Plaintiffs should be precluded from introducing any evidence, testimony, or argument at trial about the following irrelevant lawsuits or disputes involving Moderna: *Moderna, Inc. v. Pfizer, Inc.*, No. 22-cv-11378 (D. Mass.) and related IPRs filed by Pfizer and BioNTech ("*Pfizer* case") and a purported dispute between Moderna and NIH regarding the inventorship of a patent application ("NIH dispute").[4] The *Pfizer* case and the NIH dispute are irrelevant to the issues to be litigated here, and introducing evidence of them to the jury is nothing more than an effort to impugn Moderna's character. It would also be unfairly prejudicial, confuse the jury, and waste time, and divert significant resources to "mini trials" on the merits of those disputes. Plaintiffs should be precluded from doing so under FRE 401, 402, 403, 404, 701, and 802, and FRCP 26, 32, and 37.

A.     **The *Pfizer* Case and the NIH Dispute Are Irrelevant to This Case**

Plaintiffs should be precluded from introducing evidence or argument based on the *Pfizer* case and the NIH dispute because both are irrelevant to the issues to be litigated here. Evidence from a prior proceeding "may be used only for impeachment of [] witnesses who testified in that proceeding, under [FRE] 613, or as substantive evidence of a testifying witness's prior sworn testimony under [FRE] 801(d)(1)." *Johns Hopkins Univ. v. Alcon Lab'ys Inc.*, 2018 WL 4178159,

---

[4] Plaintiffs agreed not to refer to lawsuits or disputes (actual or threatened) involving Moderna *other than* those that are the subject of this MIL. D.I. 691 ¶ 51.

at *21 (D. Del. Aug. 30, 2018). Moreover, evidence that is introduced solely to impugn a defendant's character is generally not relevant and is therefore inadmissible. FRE 404.

The same should hold true here. The issues set for trial in this case relate to the non-infringement and invalidity of **Plaintiffs'** Asserted Patents and **Plaintiffs'** alleged damages. By contrast, the *Pfizer* case is a patent infringement suit Moderna filed against Pfizer and BioNTech, alleging that Pfizer/BioNTech's COVID-19 vaccine infringes three Moderna mRNA patents. *Pfizer* Case, D.I. 1. The *Pfizer* case involves two directly competing companies, different patents (*i.e.*, Moderna's patents regarding mRNA technology), different parties (*i.e.*, Moderna as the plaintiff and different counterparties), and a different accused product (*i.e.*, Pfizer's vaccine). Evidence or argument relating to the *Pfizer* case does not make it more or less likely that Plaintiffs' patent claims are infringed or invalid. Similarly, the NIH dispute also does not relate to Plaintiffs' patents or any other issue in this case, but instead involved a patent application filed by Moderna. NIH contended that three of its scientists should be named as co-inventors on the application. Ex-Y at 325:7–327:22. Eventually, the issue was resolved when Moderna abandoned the patent application and dedicated the invention to the public. *Id.* Although Moderna intends to rely on certain Moderna patents for apportionment at trial, that abandoned application is not among them and was not analyzed by any expert. Thus, any facts relating to the NIH dispute are irrelevant.

Plaintiffs contend that evidence and argument regarding the *Pfizer* case and NIH dispute are relevant to Plaintiffs' damages case. For example, Plaintiffs seek to introduce the opinions of Moderna's damages and licensing experts, James Malackowski and Graham Brazier, from the *Pfizer* case. Ex-Z (PTX-106); Ex-AA (PTX-1374); *see also* Ex-AB (PTX-1396). Neither is an expert in this case, and neither was deposed in connection with either litigation. And, while their *Pfizer* case reports were produced here, they were heavily redacted for *Pfizer* confidential

information. Moreover, Mr. Malackowski's and Mr. Brazier's opinions have no application here. Because Moderna and Pfizer/BioNTech market competing COVID-19 vaccines, Mr. Malackowski opined on both lost profits (which Plaintiffs never claimed in this case) and a reasonable royalty for mRNA patents, and Mr. Brazier opined on licensing dynamics between competitors. Ex-Z (PTX-106) at 614–41, 651–55, 681–702; Ex-AA (PTX-1374) at 007–08, 024–35. Here, Plaintiffs and Moderna do not compete, the patents relate to LNPs, and Plaintiffs purport to **exclude** the value of any mRNA technology from their royalty. D.I. 658-1 ¶¶ 1260–69, 1389–92. Moderna's damages theories in a different case on different patents have no bearing on the issues here.

During the meet-and-confer on this MIL, Plaintiffs indicated they will attempt to misleadingly connect the dispute between Moderna and NIH over inventorship of abandoned patent application to Moderna's decision to take a license to separate NIH technology that does not include the Asserted Patents and that the parties agree is not comparable to the technology at issue here.[5] Ex-AE ¶ 5; *see also* D.I. 691 ¶ 51; Ex-AF at 103:13–17, 103:24–106:11, 107:7–14, 107:16–110:6; Ex-C ¶¶ 1089–99; D.I. 663-1 ¶¶ 201–03. Moderna also anticipates Plaintiffs will introduce evidence regarding the NIH dispute to launch false allegations that Moderna took NIH's inventions as part of an alleged "steal-what-you-want" business strategy. D.I. 658-1 ¶ 730; Ex-AG (PTX-1134). None of that has any bearing on non-infringement, invalidity, or damages.

In addition, Plaintiffs seek to introduce the opinions of Moderna's validity experts from the *Pfizer* case IPRs and district court litigation. *E.g.*, Ex-AH (PTX-1375); Ex-AI (PTX-1397); Ex-AJ (PTX-1398). Plaintiffs used these materials to argue that Moderna is taking inconsistent

---

[5] Moderna licensed unrelated technology from NIH relating to "2P" mRNA modifications claimed in patents and patent applications with a priority date of 2016. Ex-AC (PTX-1290) at 831. The license was agreed to in 2022, and the licensed technology does not relate to the abandoned patent application. Ex-AD at 107:15–109:5.

positions regarding the prior art in this case and the *Pfizer* case. *E.g.*, Ex-X ¶¶ 455, 776, 778, 781, 1080. However, the *Pfizer* case patents describe and claim modified mRNA technology—unlike the Asserted Patents—and list priority dates years after the Asserted Patents. *Pfizer* Case, D.I. 1 ¶¶ 59 (2012 priority), 66 (2015 priority), 69 (same); D.I. 301-2, 301-4, 301-6 (2008 priority); D.I. 301-5 (2002 priority). *No* expert in this case offered themselves as a POSITA with respect to the *Pfizer* case patents. Although Moderna plans to rely on the patents it asserted in the *Pfizer* case, among at least nine others, for apportionment purposes, no expert in this case argued that those patents were invalid. Ex-BJ ¶ 274; Ex-BK ¶¶ 55–95. Validity, including the universe of prior art, is clearly different between the two cases. Out-of-context statements from the *Pfizer* case regarding unrelated technology have ***no*** relevance to the validity of Plaintiffs' patents.

### B.     The Dangers of Unfair Prejudice, Confusing the Issues, and Wasting Time Substantially Outweigh Any Marginal Relevance of Both Disputes

Any purported relationship that Plaintiffs identify between the *Pfizer* case, the NIH dispute, and this case is superficial, at best, and has no impact on the issues to be decided here. But to the extent these disputes have any marginal relevance at all, that relevance is substantially outweighed by the dangers of unfair prejudice to Moderna, confusing the issues, and wasting time.

Allowing evidence or argument relating to the *Pfizer* case or NIH dispute risks the parties litigating aspects of those disputes, effectively creating a case-within-a-case. Courts considering whether to allow evidence relating to prior litigation routinely exclude it where, as here, the potential for confusing the merits of the two cases is high. *See, e.g.*, *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (quoting *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007)) ("Courts routinely exclude 'evidence relating to previous litigation involving one or both of the same parties' where the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'"); *see also Coleman v. Home Depot, Inc.*, 306 F.3d

1333, 1343 (3d Cir. 2002). Moderna should not have to litigate the issues from the *Pfizer* case and the NIH dispute while simultaneously litigating the different claims and defenses of this case. *See, e.g.*, *MF Glob. Holdings*, 232 F. Supp. 3d at 568 (finding evidence regarding prior litigation inadmissible under FRE 403 where merits were likely to be confused); *Int'l Bus. Machines Corp. v. Zynga Inc.*, C.A., 2024 WL 3993290, at \*2 (D. Del. Aug. 29, 2024) (collecting cases).

Moreover, Moderna would need to waste valuable trial time explaining to the jury the *Pfizer* case patents and accused products, the differences between the allegations in this case and the *Pfizer* case, and the positions of the *Pfizer* case parties, as well as the context of the NIH dispute. This detour into entirely different disputes is a clear waste of time. *See Orexo AB v. Actavis Elizabeth LLC*, 424 F. Supp. 3d 371, 382–83 (D. Del. 2019) (concluding evidence from a prior case "involv[ing] a different drug than the accused products" had "limited probative value [which was] substantially outweighed by the jury confusion and unfair prejudice its admission at trial would have caused"); *Lab'y Corp. of Am. Holdings v. Natera, Inc.*, 2025 WL 2467548, at \*5 (D. Del. Aug. 27, 2025) ("[C]ourts routinely exclude evidence and argumentation relating to prior litigation because the risk of unfair prejudice substantially outweighs the probative value of any evidence. In patent cases, evidence from prior litigations is sometimes excluded even when there is an overlap between litigants and asserted patents."); *Speyside Med., LLC v. Medtronic Corevalve, LLC*, No. 20-361 (JLH) (CJB), D.I. 571 at 76–77 (D. Del. Sept. 20, 2024) (denying "request to read in trial and deposition testimony from [another] case" because "the prejudice substantially outweighs any probative value"). This concern is heightened here because the parties anticipate a timed trial, which would force Moderna to waste trial time to explain the facts of different disputes or play additional deposition testimony to provide adequate context to cherry-picked evidence. Thus, even if the *Pfizer* case and the NIH dispute have any relevance, testimony

14

and argument about them should be excluded.

### C.    *Pfizer* Case Deposition Testimony Is Not Admissible

Plaintiffs seek to present designations from twelve deposition transcripts from the *Pfizer* case, bringing the total number of depositions Plaintiffs intend to introduce to 33. *See* D.I. 686-3. All twelve of these transcripts are inadmissible.

FRCP 32 governs when a deposition "may be used." Depositions taken in a different action may only be used if the "later action involv[es] the same subject matter between the same parties," FRCP 32(a)(8)—and it is "not enough" that the party had notice of the prior deposition, *see Ingenico Inc. v. Ioengine, LLC*, 2022 WL 22835287, at *10 (D. Del. Jul 5, 2022) (Bryson, J.). The *Pfizer case* involves **different parties**, **different patents**, and a **different accused product**. *See* D.I. 231 at 123:8–10 (Judge Goldberg agreeing "these are your clients being deposed in another case . . . . That's a different case in a different jurisdiction. I'm with you, different issues.").

Plaintiffs contend that they may designate from the *Pfizer case* if the transcripts are admissible under the FRE. *See* FRCP 32(a)(8) ("A deposition previously taken may also be used as allowed by the [FRE]."). That sentence refers primarily to specific FRE provisions governing use of former testimony, *see* FRCP 32 Advisory Committee Notes (1972), which do not apply here because, in the *Pfizer* case, Moderna had no "motive to develop" testimony on the different issues here (*see* § I.A), FRE 804(b)(1). If there were truly no limits on the use of deposition testimony from unrelated cases other than ***not being inadmissible*** under the FRE—which is already a requirement under FRCP 32(a)(1)—then the "same subject matter between the same parties" limitation provided by FRCP 32(a)(8) would be rendered a nullity. So would the limits on the use of employee depositions under FRCP 32(a)(3). That cannot be correct. The *Pfizer case* depositions fall outside the limits on use of former testimony.

Six transcripts are additionally excludable under FRCP 37, which provides that "[i]f a party

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial." FRCP 37(c)(1). In contravention of this rule, six of the twelve deposition transcripts designated by Plaintiffs are from witnesses who were **never** disclosed or deposed in this case. Ex-AK; Ex-AL; D.I. 686-3.

### D.    *Pfizer* Case Expert Reports Are Not Admissible

In addition to introducing expert opinions from the *Pfizer* case, Plaintiffs also seek to introduce the reports themselves into evidence. Ex-Z (PTX-106); Ex-AA (PTX-1374); Ex-AH (PTX-1375); Ex-AB (PTX-1396); Ex-AI (PTX-1397); Ex-AJ (PTX-1398). Expert reports are hearsay, and none of the experts were retained, disclosed, or deposed in this case. Thus, their opinions (which are irrelevant in any event) are also inadmissible pursuant to FRCP 26 and FRE 701 and 802. *Lab'y Corp.*, 2025 WL 2467548, at *11 (D. Del. Aug. 27, 2025) (granting MIL to preclude expert reports and deposition testimony from unrelated litigation, the court holding that "expert reports are classic hearsay and generally barred from admission at trial by Rule 802").

**MIL #4:  Preclude Evidence and Argument Related to Settlement Discussions**

Moderna requests that this Court preclude all evidence and argument related to the parties' prior settlement discussions. While Plaintiffs agree that discussions between the parties following the filing of the IPRs in 2018 and **the terms of the license** it offered in 2021 are settlement discussions subject to FRE 408's prohibitions (Ex-AM), Plaintiffs seek to selectively introduce two communications from the parties' prior negotiations in 2020 and 2021: (1) Plaintiffs' alleged offer to license certain patents-in-suit and (2) Plaintiffs' request for samples of Moderna's COVID-19 vaccine during those discussions. Both fall squarely under FRE 408's prohibition on evidence related to settlements. Both were made in the context of negotiations directly related to resolving the IPRs and/or the allegations underlying this litigation, and both are being used for purposes prohibited by FRE 408—namely, to "prove . . . the validity" of Plaintiffs' disputed claim for

infringement. FRE 408. Plaintiffs' intended use for these negotiations is also highly prejudicial, rendering them inadmissible under FRE 403.

### A.    Background

Since Moderna filed its IPR challenges starting in 2018 (*see* MIL #2, above), the parties have from time to time discussed resolving the IPR challenges, and, after Moderna developed its COVID-19 vaccine in 2020, resolving any potential threat of litigation regarding the asserted patents. Ex-AN; *see also* Ex-AO. Throughout these communications, Moderna maintained that "it does not infringe the Arbutus patents." Ex-AP at 3; *see also* Ex-AQ at 1 ("Our technology captured in our COVID-19 vaccine has advanced beyond what you have claimed, and in no way relied on your IP. Our efforts to resolve this matter are aimed at avoiding unnecessary expenses and distractions while we continue to advance lifesaving medicines."). Plaintiffs, however, requested samples to investigate infringement for themselves. Ex-AP at 1, 3. Moderna responded that it could not provide samples given the highly confidential nature of the requested materials and the risk that confidential information could be revealed publicly, even unintentionally. *Id.* at 2. The parties continued to discuss resolving the disputes, including by a possible license—all under the protection of FRE 408 and all under the threat of litigation. *E.g.*, *id.* at 1. Ultimately, the settlement discussions led nowhere, and Plaintiffs sued Moderna for patent infringement asserting six of the patents listed in their notice letters. *See* D.I. 1; Ex-AN; Ex-AO.

### B.    Argument

FRE 408 prohibits the use of the following types of evidence "either to prove or disprove the validity or amount of a disputed claim": "(1) furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim." FRE 408(a). "The purpose of Rule 408 is to encourage full and frank disclosure between parties in order to promote settlements,

rather than protracted litigation." *PharmaStem Therapeutics, Inc. v. Viacell Inc.*, 2003 WL 22387038, at *3–4 (D. Del. Oct. 7, 2003) ("exclud[ing] from evidence **all discovery** relating to settlement negotiations"). "[I]f application of Rule 408 exclusion is doubtful, [the] better practice is to exclude evidence of compromise negotiations." *Chase Manhattan Bank v. Iridium Afr. Corp.*, 2003 U.S. Dist. LEXIS 23837, at *4 (D. Del. Nov. 25, 2003) (*citing Affiliated Mfg., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d Cir. 1995)). Plaintiffs have not—and cannot—identify "another purpose" for which this evidence might be properly admitted. *See* FRE 408(b).

Plaintiffs offered to license the patents for valuable consideration—i.e., effectively asking Moderna to drop its IPRs and the related then-pending appeals and implying it would not sue Moderna for infringement if it took a license. Ex-AR; Ex-AP; Ex-AQ. Plaintiffs now want to use these offers to license as evidence of willful infringement. Such offers to license, however, made during settlement negotiations related to **the same accused infringement at issue** in this case are inadmissible under FRE 408. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (evidence of licensing offers were properly excluded "because they were offers in compromise made in contemplation of infringement litigation and therefore inadmissible under Rule 408"); *see also Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 9279999, at *4–5 (E.D. Tex. July 6, 2016) (negotiations admissible when "more akin to negotiations to settle a contested infringement claim, rather than purely a business endeavor"). Indeed, Plaintiffs suggest any other parts of those communications, such as the **terms** of the offered license, may not be introduced at trial (Ex-AM), which demonstrates their acknowledgement that the negotiations did in fact take place under the protections of FRE 408.

Plaintiffs' request for samples during the negotiation, which came as a request to combat Moderna's position that it did not (and does not) infringe the asserted patents, is also inadmissible

18

because they seek to introduce this evidence to support their claim for alleged infringement. *See* FRE 408(a). Specifically, most of the samples of Moderna's COVID-19 vaccine that Plaintiffs tested to show alleged infringement were expired. Moderna contests that expired samples can show infringement, so now Plaintiffs want to blame Moderna for not providing the samples during a pre-suit request that took place during compromise negotiations. Ex-AM; D.I. 659-4¶¶642–43. Plaintiffs' argument misses its mark. "Rule 408 unequivocally states that settlement evidence offered 'either to prove or disprove the validity . . . of a disputed claim' is not admissible." *AgroFresh Inc. v. Essentiv LLC*, 2018 U.S. Dist. LEXIS 213203, at *6–8 (D. Del. Dec. 11, 2018) (*citing* FRE 408(a)). Here, one of the disputed claims is infringement. As such, any "conduct or a statement made during [the] compromise negotiations about" Plaintiffs' "disputed claim" to infringement, including a request for samples, must be precluded. FRE 408(a).

Further, while plainly prohibited under FRE 408, these negotiations are separately inadmissible under FRE 403 based on the unfairly prejudicial manner in which Plaintiffs intend to use them by attempting to paint Moderna as a bad actor by introducing the offers to license with its warped and false narrative that Moderna knew it infringed and tried to hide it, including through its experts who had no role in those discussions. *See, e.g.*, D.I. 658-1 ¶¶811–15; Ex-B ¶497; D.I. 660-1¶839 ("My statement is plainly relevant: Moderna concealed its infringement, even after Plaintiffs asked Moderna to produce technical information (including samples of the mRNA-1273 Product) in 2021—several years before Plaintiffs had to bring a lawsuit for patent infringement."). Moreover, to rebut Plaintiffs' false narrative, Moderna would have to introduce still more evidence regarding the settlement negotiations, which will only serve to waste time and confuse the jury. Evidence regarding the parties' settlement negotiations should be excluded.

19

**MIL #5: Preclude Evidence, Testimony, and Argument Relating to Irrelevant, Prejudicial Financial Information Concerning Moderna**

Plaintiffs should be precluded under FRE 401, 402, 403, and 404(b) from introducing any evidence, testimony, or argument at trial regarding irrelevant financial information that will unfairly prejudice Moderna, and confuse and bias the jury by impermissibly skewing the damages horizon. Moderna is not seeking to wholesale exclude entire documents but instead requests that irrelevant and prejudicial financial figures be addressed via appropriate redactions and excerpts.

**A.     Background**

Damages in this case are limited to accused product sales with a U.S. nexus ($16 to $24 billion), but Plaintiffs intend to introduce evidence of Moderna's worldwide sales for accused and unaccused products ($38 billion). The sole relevance Plaintiffs identified for Moderna's worldwide sales is "commercial success," but Moderna does not dispute that its COVID-19 vaccine has been successful. Plaintiffs also intend to introduce misleading and selective excerpts of Moderna's market capitalization projections at the start of the pandemic, suggesting Moderna could have a $100 billion valuation by 2025. D.I. 658-1 ¶¶ 1138–44; Ex-AS (PTX-70). These projections, however, were based on Moderna's worldwide sales and an assumption that Moderna would commercialize pipeline products beyond the accused COVID-19 vaccine. Plaintiffs also intend to baselessly argue that Moderna raised nearly $1.34 billion in capital to launch its COVID-19 vaccine by making omissions to the SEC and enriching itself. Introducing these outsized numbers under a cloud of suspicion serves only to make Plaintiffs' multibillion-dollar damages claim seem reasonable by comparison and paint Moderna as a deceitful, wealthy company that can afford to pay an inflated award. Moreover, assuming her opinions are permitted, Plaintiffs' damages expert can present her calculations without referring to these unfairly prejudicial and irrelevant numbers.

**B.     Moderna's Worldwide Finances, Wealth, and Capital Are Irrelevant**

Moderna's worldwide sales, market capitalization projections, and other forecast or financial documents not expressly relied on for a damages calculation are not relevant to any claim or defense in this action and should thus be excluded under FRE 401 and 402. *E.g.*, Ex-AS (PTX-70) at 964; Ex-AT (PTX-808) at 043, 114; Ex-AU (PTX-941) at 830, 837, 848; Ex-AV (PTX-1086); Ex-AW (PTX-1239). Courts routinely hold that evidence of a company's "overall financial status is irrelevant" and "potentially prejudicial." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 2775515, at *1 (D. Del. Jul. 2, 2019); *Johnson v. Fed. Express Corp.*, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014) ("[F]inancial condition is not relevant"). Indeed, arguments regarding a party's wealth and size made to bias the jury have been found to constitute prejudicial error. *See Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (granting new trial in part because "[c]ounsel repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff").

Plaintiffs contend Moderna's worldwide sales are relevant to the commercial success of Moderna's COVID-19 vaccine and therefore necessary to rebut Moderna's obviousness case. But Moderna and its experts do not dispute the success of Moderna's COVID-19 vaccine. Ex-AX at 275:19–276:10. Moderna only disputes that there is a ***nexus*** between that success and Plaintiffs' Asserted Patents, and worldwide sales does not fill that gap. Indeed, when the parties met and conferred on this MIL, Plaintiffs rejected Moderna's offer to stipulate that its COVID-19 vaccine is commercially successful. Ex-AE ¶¶ 6, 9. Further, even if commercial success were a disputed issue, Moderna's accused sales of $16 to $24 billion are plainly significant. There is simply no reason to introduce Moderna's worldwide sales other than for the improper purpose of biasing the jury and irretrievably skewing the damages horizon.

Similarly, Plaintiffs intend to introduce Moderna's market capitalization projections, "at

21

risk" capital raise, and documents untethered to any damages calculation as purportedly relevant to the hypothetical negotiation and the time period surrounding the May 31, 2020 hypothetical negotiation date. D.I. 658-1 ¶¶ 1138–44; Ex-AY (PTX-68) at 661, 653, 660; Ex-AS (PTX-70) at 964; Ex-AZ (PTX-662) at 902; Ex-AT (PTX-808) at 979. But these documents discuss Moderna's plans on a companywide, worldwide scale, and include substantial figures that have no bearing on damages. For example, Plaintiffs have included at least two profit and loss statements, which tally global net sales (not just the accused sales) of upwards of $38 billion (Ex-AW (PTX-1239)), and a forecasting presentation that describes a ██████████████████████ (Ex-AS (PTX-70) at 964). Indeed, it is apparent that Plaintiffs plan to show the jury huge dollar values, whether theoretical or actual, at every opportunity to desensitize the jury to their damages ask. *See* Ex-AY (PTX-68) at 653 (multiple mentions of █████ of working capital" for worldwide operations), 660–61 (worldwide revenue scenarios ranging from ████████████████).

Plaintiffs do not merely seek to introduce large, irrelevant numbers. They also intend to falsely suggest that Moderna earned its financial status in a deceitful matter. For example, Plaintiffs' exhibit list includes documents regarding Moderna's "deployment of at-risk capital" to suggest that Moderna raised capital in a suspect way that "raised eyebrows" and "dr[ew] SEC scrutiny" (D.I. 658-1 ¶¶ 266–302; Ex-BA (PTX-686) at 0:00–1:18), including minutes from a May 2020 Board meeting that authorized Moderna's CEO to prepare and file an S-3,[6] which Plaintiffs insinuate contains intentional omissions (D.I. 658-1 ¶¶ 273–80; Ex-BB at 228:9–233:19); Moderna's announcement of a $1+ billion stock offering after the SEC accepted Moderna's S-3 filing, which purportedly set off an "uproar" (D.I. 658-1 ¶¶ 277–78; Ex-BC (PTX-765)); and

---

[6] An S-3 filing is a streamlined "short-form" required by the SEC for publicly traded companies, used for subsequent capital raises and involves less detail compared to S-1 filing or annual 10-Ks.

CNBC commentary discussing insider trading, omission of material facts, integrity of press releases, and trading suspensions regarding Moderna's capital raise (D.I. 658-1 ¶¶ 284–302; Ex-BD (PTX-82); Ex-BE (PTX-445); Ex-BA (PTX-686); Ex-BF (PTX-684)). According to Plaintiffs' damages expert, the "[SEC] would never allow" this type of conduct and should have investigated a "parallel criminal component." D.I. 658-1 ¶¶ 284, 290-91, 295-97; Ex-BA (PTX-686) 3:17-19.

This has nothing to do with damages (*i.e.*, Plaintiffs are not claiming disgorgement of Moderna's capital raise, nor is the capital raise a result of the Asserted Patents). None of these documents talk about the Asserted Patents or tie any of those figures to the allegedly patented features at issue here. They are simply not relevant. *TOT Power Control, S.L. v. Apple, Inc.*, C.A. No. 21-1302 (MN), D.I. 437 at n.3 (D. Del. June 20, 2025); *Belden Canada ULC v. Commscope, Inc.*, No. 22-782-RGA, D.I. 318 at 2 (D. Del. Oct. 10, 2025). To the extent Plaintiffs argue capital raise evidence is tied to Ms. Lawton's "analytical method" damages opinion (currently the subject of Moderna's *Daubert* motion, D.I. 656), Moderna is not seeking to preclude reliance on or disclosure of the two source documents used in Ms. Lawton's calculation. *See* D.I. 658-1 ¶¶ 1251–52 (calculating a "subtraction" of $0.33/dose); Ex-BG (PTX-26) at 2; Ex-AT (PTX-808) at 979 (amount raised from capital markets); Ex-AY (PTX-68) at 661, 653, 660 (Moderna weighted average cost of capital (WACC) of 25%). Thus, Ms. Lawton can still describe the evidence underlying her "analytical method" opinion (if those opinions are not excluded under *Daubert*), but she has no reason to otherwise refer to Moderna's capital raise. And anything beyond the specific documents indicating the minimum return Moderna had to earn on its investments for its shareholders should be excluded as irrelevant under FRE 401.

Further, the stock Moderna sold before the parties' *undisputed* May 31, 2020 hypothetical negotiation date in this case is neither a result of the Asserted Patents nor connected to any claim

or defense. If anything, such financial information would bias the jury into believing that a larger damages quantum can, or should, be borne by Moderna. And under the guise of discussing Moderna's capital raise, Plaintiffs intend to suggest that Moderna has a pattern of committing bad acts. D.I. 658-1 ¶¶ 284–302; FRE 404(b). Plaintiffs will claim Moderna's S-3 submission (Ex-BH (PTX-683)), which was filed in advance of Moderna's capital raise, concealed information from the SEC because in an email months earlier, Moderna's CEO stated he "dropped the MERS data from S3" (Ex-BI (PTX-1325)). *See also* D.I. 658-1 ¶¶ 63, 1672; Ex-BB at 228:9–233:19. Moderna's studies **years earlier** concerning MERS are not related to COVID-19 and are therefore irrelevant to any issue in this case. Plaintiffs also intend to introduce news articles and a CNBC clip (Ex-BA (PTX-686)) about Moderna's "aberrational" stock price fluctuation surrounding its capital raise, including commentary on the adequacy of Moderna's disclosures and how the SEC should investigate the existence of "a parallel criminal component." D.I. 658-1 ¶ 284 (alleging Moderna's clinical trial data announcement "is the equivalent of a chief executive of a public company announcing a favorable earnings report without supplying supporting financial data, which the [SEC] would never allow"), ¶¶ 290–91 (discussing how Moderna's share price "ballooned"), ¶¶ 295–97 (Moderna's "overhyp[ed]" positive clinical trial data was followed up with a public stock offering that "set off a frenzy on Wall Street"). Again, even if Plaintiffs' damages expert (who cites these documents) is not excluded, these projections and other financial information have no relevance to the hypothetical negotiation or the computation of damages.

### C.     Any Marginal Relevance of Moderna's Finances Is Outweighed by the Danger of Unfair Prejudice and Constitutes Improper Character Evidence

Even if evidence of Moderna's worldwide sales, market capitalization projections, and capital raise figures were minimally, these should nonetheless be excluded under FRE 404(b) and 403. It is improper to introduce past investigations or non-compliance with the law unrelated to

the present claims and defenses to suggest a party is more likely to commit bad acts in this case. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 1994 WL 270252, at *2 (N.D. Ill. June 16, 1994); *In re Bankatlantic Bancorp, Inc. Sec. Litig.,* 2010 WL 11426137, at *3 (S.D. Fla. Aug. 20, 2010). Here, Plaintiffs take it one step further—by attempting to use an unsubstantiated *potential* for an SEC investigation or *hint* of non-compliance with federal regulations to suggest that Moderna concealed and skirted the law. Further, courts have repeatedly recognized that evidence of a party's overall financial status is unfairly prejudicial. *See, e.g.*, *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 2775515, at *1 (D. Del. July 2, 2019) ("any evidence as to defendants' overall financial status [was] potentially prejudicial"); *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1100471, at *4 (D. Del. Mar. 7, 2019) ("[T]he probative value of [defendants' total profits and revenue] is outweighed by the danger that the jury might set damages on ability to pay rather than proper evidence of damages."); *Inventio AG v. Thyssenkrupp Elevator Corp.*, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) (agreeing that an "attempt to unfairly portray the Defendants as huge companies" should be excluded under Rule 403). In a related context, the Federal Circuit has cautioned against admission of "overall revenues" because it "only serve[s] to make a patentee' s proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculations." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Additionally, Plaintiffs' reference to Moderna's capital raise is wildly prejudicial because it frames Moderna as a company that obtained an overnight influx of capital by nefarious means in order to enrich itself.

If evidence of Moderna's worldwide sales, market capitalization projections, and capital raise is not excluded, there is a high risk the jury will award damages not based on the alleged infringement but based on Moderna's perceived wealth. Moderna respectfully requests the Court exclude this evidence under FRE 401, 402, 403, and 404(b).

25

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

_____

Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Leslie M. Schmidt, P.C.
Mark C. McLennan
N. Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4679

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

Noah Frank
Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Yan-Xin Li
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
(415) 439-1400

Elizabeth Elrod
KIRKLAND & ELLIS LLP
401 West 4th Street
Austin, TX  78701
(512) 678-9100

February 11, 2026

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 11, 2026, upon the following in the manner indicated:

John W. Shaw, Esquire                                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs Arbutus Biopharma*
*Corporation and Genevant Sciences GmbH*

Daralyn J. Durie, Esquire                               *VIA ELECTRONIC MAIL*
Adam R. Brausa, Esquire
Eric C. Wiener, Esquire
Annie A. Lee, Esquire
Shaelyn K. Dawson, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

Kira A. Davis, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David N. Tan, Esquire                                          *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David I. Berl, Esquire                                         *VIA ELECTRONIC MAIL*
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

Andrei Iancu, Esquire                                          *VIA ELECTRONIC MAIL*
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC  20006
*Attorneys for Plaintiff Genevant Sciences GmbH*


                                        */s/ Travis J. Murray*
                                        _____
                                        Travis J. Murray (#6882)

2