# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH<br><br>*Plaintiffs*,<br><br>v.<br><br>MODERNA, INC. and MODERNATX, INC.,<br><br>*Defendants*. | **Redacted – Public Version**<br><br><br>C.A. No. 22-252-JDW |
| MODERNA, INC. and MODERNATX, INC.,<br>*Counterclaim-Plaintiffs*,<br><br>v.<br><br>ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH,<br><br>*Counterclaim- Defendants*. | **JURY TRIAL DEMANDED**<br><br>███████████████ |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTIONS *IN LIMINE*

## TABLE OF CONTENTS

I.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT DISCOVERY DISPUTES AND THE TIMING OF DISCOVERY....................................................................................................1

    A.    Background....................................................................................1

    B.    Argument ......................................................................................3

II.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING TO AN UNDISCLOSED INVENTORSHIP CHALLENGE..................................................................................................4

    A.    Background....................................................................................5

    B.    Argument ......................................................................................6

III.    THE COURT SHOULD PRECLUDE MODERNA FROM OFFERING EVIDENCE OR ARGUMENT ON ISSUES FOR WHICH IT WITHHELD DISCOVERY................................................................................................10

    A.    Background..................................................................................11

    B.    Argument ....................................................................................14

IV.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT IRRELEVANT LITIGATIONS...................................17

    A.    Background..................................................................................18

    B.    Argument ....................................................................................19

V.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT PLAINTIFFS' OWNERSHIP STRUCTURE, INCLUDING ROIVANT ...................................................................................23

    A.    Background..................................................................................23

    B.    Argument ....................................................................................23

# TABLE OF AUTHORITIES[1]

## CASES

*Apollo v. Stasinopoulos*,
2021 WL 229654 (N.D. Ill. Jan. 22, 2021) .......................................................................10, 17

*Carswell v. Anderson*,
2024 WL 3104549 (D. Idaho June 24, 2024) ..........................................................................16

*Cellular Commc'ns Equip. v. Apple Inc.*,
2016 WL 11496010 (E.D. Tex. Sept. 2, 2016) ........................................................................25

*Constellation NewEnergy v. Powerweb*,
2004 WL 6031004 (E.D. Pa. Aug. 12, 2004) ..........................................................................16

*Deflecto, LLC v. Dundas Jafine Inc.*,
2015 WL 9413148 (W.D. Mo. Dec. 22, 2015) ........................................................................25

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) .................................................................................................8

*DUSA Pharms. Inc. v. Biofrontera Inc.*,
No. 18-cv-10568, D.I. 389 (D. Mass. Nov. 1, 2021) ..............................................................25

*Edwards Lifesciences LLC v. Medtronic CoreValve LLC*,
2014 WL 12927825 (D. Del. Jan. 2, 2014) .............................................................................21

*Finjan v. Sophos, Inc.*,
2016 WL 4560071 (N.D. Cal. 2016) .......................................................................................20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) .................................................................................................................7, 8

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) .................................................................................................9

*Immunex Corp. v. Sandoz Inc.*,
395 F. Supp. 3d 366 (D.N.J. 2019) ............................................................................................8

*In re Allergan Litig.*,
2022 WL 3211421 (D.N.J. Aug. 9, 2022) ...............................................................................16

---

[1] Unless otherwise noted, all emphasis is added, and internal citations, alterations, and quotations are omitted. All highlighting in the exhibits has been added.

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  2022 WL 2800911 (D. Del. June 27, 2022)................................................................21

*Johns Hopkins Univ. v. Alcon Lab'ys*,
  2018 WL 4178159 (D. Del. Aug. 30, 2018) ..............................................................22

*LoganTree LP v. Fossil Grp.*,
  2024 WL 5333640 (D. Del. Dec. 19, 2024)........................................................1, 3, 4

*Pharmastem Therapeutics v. Viacell, Inc.*,
  2003 WL 22244704 (D. Del. Sept. 30, 2003).............................................................23

*Sonos v. D&M Holdings*,
  2017 WL 5633204 (D. Del. Nov. 21, 2017)................................................................22

*SPEX Techs. v. Apricorn, Inc.*,
  2020 WL 1289546 (C.D. Cal. 2020)............................................................................19

*Strat. Partners v. Figs, Inc.*,
  2022 WL 18399950 (C.D. Cal. Sept. 26, 2022) ...................................................19, 20

*Sysmex Corp. v. Beckman Coulter*,
  2022 WL 2292059 (D. Del. June 24, 2022)..................................................................6

*Thompson v. Glenmede Tr. Co.*,
  1996 WL 529693 (E.D. Pa. Sept. 17, 1996) ................................................................3

*Vanguard Saving & Loan Ass'n v. Banks*,
  1996 WL 69968 (E.D. Pa. Feb. 9, 1996) ...................................................................14

*Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
  2019 WL 4892417 (E.D. Mich. 2019)..................................................................6, 8, 9

*Wherevertv, Inc. v. Comcast Cable Commc'ns*,
  2023 WL 2664200 (M.D. Fla. Mar. 28, 2023) ..........................................................22

## OTHER AUTHORITIES

Fed. R. Civ. P. 26....................................................................................................2, 16

Fed. R. Evid. 401........................................................................................................19

Fed. R. Evid. 402...............................................................................................6, 19, 23

Fed. R. Evid. 403.........................................................................................3, 4, 19, 21, 23

## I.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT DISCOVERY DISPUTES AND THE TIMING OF DISCOVERY

During discovery, the parties disputed various issues including the production of (1) samples of Moderna's Covid-19 vaccine, and (2) documents related to method development for testing by Plaintiffs' expert, Dr. Georg Schuster.  Neither party should discuss these disputes at trial, because "[e]vidence concerning discovery disputes is irrelevant, and references to alleged misconduct do not help the jury decide on the merits." *LoganTree LP v. Fossil Grp.*, 2024 WL 5333640, at *1 (D. Del. Dec. 19, 2024).  But, if Moderna opens the door by disputing infringement on the basis that the samples Dr. Schuster tested were expired or nearly expired, Plaintiffs should be permitted to introduce evidence as to Moderna's delay in producing them. *Id.*

### A.    Background

Moderna disputes that it infringes the Lipid Composition Patents, directed to particles with certain lipid ratios.  Plaintiffs have long asserted that sample testing would prove infringement.  And it did just that: every sample Dr. Schuster tested of Moderna's product infringed.

It thus comes as no surprise that Moderna resisted producing samples for years.  Even before this lawsuit, Plaintiffs requested samples in March 2021.  Ex. 1 at -327, -329.  Moderna refused and continued resisting throughout discovery.  Plaintiffs served a request for production directed to samples on December 20, 2022.  Ex. 2 (RFP Nos. 97–98).  Moderna stalled for months. *E.g.*, Exs. 3-7.  It was only after Plaintiffs moved to compel that Moderna stipulated to produce representative samples of its vaccine and not challenge the applicability of test data generated by Plaintiffs for the produced lots to those lots that were not produced.  D.I. 161; D.I. 228.

Given Moderna's delays, about 90% of the samples Plaintiffs received were expired when Moderna sent them.  Ex. 42.  Although both parties chose samples for testing, nearly all samples Plaintiffs *could* choose were expired by the time the selection occurred. *E.g.*, Ex. 8 ¶ 643 (all lots

using Moderna's v1 formulation expired by April 2023). Plaintiffs thus chose a spectrum of samples to show there was no meaningful difference amongst newly-manufactured samples, samples close to expiry, and long-expired samples. *Id.* ¶ 646.

Moderna now argues that the samples' expiry makes Plaintiffs' testing—which shows infringement for expired and unexpired samples alike—unreliable. To the extent a sample's expiry is relevant to Dr. Schuster's data (it is not), the issue largely is one of Moderna's making. Had Moderna produced samples on a rolling basis when Plaintiffs first requested in March 2021, nearly all of the samples would have been unexpired. Ex. 42. And had Moderna timely shipped samples in response to Plaintiffs' request for production, almost two-thirds of the samples would have been unexpired. *Id.* Under the stipulation regarding samples, Plaintiffs "reserve[d] the right to seek relief and sanctions, including preclusion of arguments, for any samples that expired after the filing of this lawsuit but before they were produced by Moderna." D.I. 228 at 6. Plaintiffs also broached the subject of Moderna's production delays to Judge Goldberg, who instructed Plaintiffs to move in limine. D.I. 231 at 57:15–59:3.

Rather than conduct its own sample testing to rebut infringement, Moderna attacked the sufficiency of Dr. Schuster's testing and reports. His opening report included 60 pages describing his testing methods, and he appended over 90 pages of additional details on the validation of his methods. Exs. 9 & 10. At Dr. Schuster's deposition, months after he served his report, Moderna requested (for the first time) preliminary, method-development data and related documents that either Dr. Schuster did not consider or were duplicative of data already produced. Notwithstanding full compliance with Rule 26 and the irrelevance of the requested materials, Plaintiffs offered to produce them during Dr. Schuster's deposition. Ex. 11 at 123:5–124:3, 265:9–266:17. Moderna rejected that offer and moved to compel. Though the documents were beyond the scope of Rule

26, Plaintiffs agreed to limited additional discovery to maintain the case schedule.  D.I. 484 at 10:19–12:11.  Plaintiffs produced additional documents, made Dr. Schuster available for an additional deposition, and agreed to the service of supplemental expert reports.

### B.    Argument

"Evidence concerning discovery disputes is irrelevant."  *LoganTree*, 2024 WL 5333640, at *1.  Rule 403 also supports exclusion, because allowing evidence of discovery disputes "will detract from the issues in the case" and cause the jury to "be misled by the irrelevant issues of the discovery process" instead of "focus[ing] on the issues in the case."  *Thompson v. Glenmede Tr. Co.*, 1996 WL 529693, at *2 (E.D. Pa. Sept. 17, 1996).  Thus, courts routinely preclude evidence or argument about "the nuances of discovery"—including to establish a "coverup" or attack a party's credibility—to avoid a prolonged sideshow that "may confuse the jury."  *Id.*

These well-established rules control here.  Save for the caveat noted below, the discovery disputes discussed above are irrelevant.  Any minimal probative value is substantially outweighed by Rule 403's countervailing concerns.  Specifically, permitting the parties to refight discovery disputes risks misleading and confusing the jury at the expense of the actual issues in the case.  Thus, Moderna should not be permitted to raise the timing of further discovery into Dr. Schuster's method development.  Moderna obtained the discovery it sought, including documents, more deposition time, and supplemental expert reports to address the additional material.  The timing of that discovery and facts that led to it are irrelevant to the experts' opinions and issues in the case.

Moderna has indicated it may argue that the timing of the discovery goes to Dr. Schuster's credibility.  But Dr. Schuster had no say in what materials were produced, or when.  Moderna is free to cross-examine Dr. Schuster on the import of the additional documents, but it need not wade into a resolved discovery dispute to make that argument.  Allowing Moderna to do so would necessitate an explanation of the timing and only further drag the jury into irrelevancies.

Moderna's insistence on raising this issue is a transparent attempt to distract from its infringement and mislead the jury. The Federal Rules and well-settled precedent preclude just that.

The same rule should apply to discovery disputes regarding sample productions. However, if Moderna criticizes Dr. Schuster's testing based on sample expiry, Plaintiffs should be permitted to respond with evidence about the timing of Moderna's sample production. This Court's decision in *LoganTree* is instructive in that regard. There, the defendant moved to preclude discussion of discovery disputes. The plaintiff generally agreed, but sought to preserve its ability to present evidence defending the merits of its expert's infringement opinions given defendant's argument that plaintiff's expert was unable to test the accused devices. *LoganTree*, No. 21-cv-385, D.I. 238 at 1–2. The defendant in *LoganTree* produced samples of the accused devices, but shut down its servers, effectively preventing testing. *Id.* Defendant's expert then criticized plaintiff's expert for not testing the devices despite having access to them. *Id.* This Court saw through defendant's ruse: "If [defendant] attacks the credibility of [plaintiff's] infringement analysis, [plaintiff] can introduce relevant evidence supporting the credibility of the expert and his analysis, including explanations about the . . . server availability." *LoganTree*, 2024 WL 5333640, at *1.

Plaintiffs seek an equivalent order here. To the extent Moderna attacks Dr. Schuster's testing on the basis that the tested samples were expired, Plaintiffs should be permitted to introduce "relevant evidence supporting the credibility of [Dr. Schuster] and his analysis, including explanations about" Moderna's delay being the reason for the samples' expiry.

## II.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING TO AN UNDISCLOSED INVENTORSHIP CHALLENGE

The technology of the Lipid Composition Patents is essential to Moderna's vaccine. For years, Moderna has used that technology, including one embodiment it called its "standard"

formulation—the 1.5:50 formulation.[2] Ex. 8 (Mitchell Rep.) ¶ 220. Moderna's continuous use of the 1.5:50 formulation—the formulation used in the first FDA-approved LNP product, Onpattro— is relevant to (at least) infringement, willfulness, copying, and apportionment.

Moderna does not dispute its extensive use of the 1.5:50 formulation across nearly a decade of mRNA-LNP work. Nor does Moderna dispute that the 1.5:50 formulation falls within the scope of the Lipid Composition Patents. Instead, Moderna improperly seeks to sow confusion with the jury by arguing that the 1.5:50 formulation was developed by Plaintiffs' licensee, Alnylam. That argument, however, is not relevant to any claim or defense at trial. It also risks confusing the jury about inventorship of the Lipid Composition Patents—an issue Moderna does not contest (nor does Alnylam). Thus, the Court should preclude Moderna from offering any testimony, evidence, or argument at trial suggesting or implying that Plaintiffs did not invent any particular embodiment within the scope of the Lipid Composition Patents, including the 1.5:50 formulation.

## A.    Background

From its first studies through the development of its Covid-19 vaccine, Moderna used the target molar ratios of the 1.5:50 formulation. Ex. 8 (Mitchell Rep.) §§ IX.A, X.D.1. Dr. Prud'homme, Moderna's validity expert, concedes "that [the 1.5:50 formulation] falls within the ranges cited in the [Lipid Composition Patents]." Ex. 12 (Prud'homme Reb.) ¶ 271. But he argues that Alnylam developed independently the 1.5:50 formulation—among others—during a lengthy collaboration with Plaintiffs' predecessors. *Id.* ¶ 270.

Plaintiffs disagree. But everyone—*including Alnylam*—agrees that Plaintiffs invented the Lipid Composition Patents and that the 1.5:50 formulation falls within their scope. Alnylam itself never challenged inventorship, and in fact lists the patents in FDA's Orange Book for Onpattro,

---

[2] The 1.5:50 formulation has target molar ratios of 1.5% conjugated lipid, 50% cationic lipid, 10% phospholipid, and 38.5% cholesterol.

indicating its view that the patents cover the product, with its 1.5:50 target formulation. Ex. 13 (5/30/2024 Bossone Tr.) 173:9–174:3 ("Q: Has Alnylam ever disputed the inventorship of the '069 patent? ... A: We have not."); Ex. 18 (Mitchell Validity Rep.) ¶¶ 32, 51. Dr. Prud'homme initially opined that this formulation allegedly developed by Alnylam represents an invalidating prior use of the claimed inventions. Ex. 19 ¶ 353. But Moderna dropped its prior use defense pursuant to the Court's claim and defense narrowing Order. D.I. 475 at 3; Ex. 14 (6/9/25 Invalidity Defenses).

### B.    Argument

"[E]vidence relating solely to unasserted defenses" is *per se* irrelevant and thus inadmissible. *Sysmex Corp. v. Beckman Coulter*, 2022 WL 2292059, at *2 (D. Del. June 24, 2022); Fed. R. Evid. 402. Thus, in *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 2019 WL 4892417, *3–5 (E.D. Mich. 2019), the court excluded defendant's evidence of its own simultaneous invention of an embodiment within the claim, because it was "of no consequence in determining the issues that remain" for trial. The defendant argued that this evidence was relevant to obviousness under the doctrine of independent simultaneous invention. *Id.* at *3. Nevertheless, the court excluded it because allowing testimony regarding which entity invented a claimed embodiment, absent an allegation of improper inventorship, "will suggest to the jury an improper basis for reaching a conclusion of invalidity"—that the inventors did not invent first. *Id.* *5. The court also rejected a limiting instruction—the "evidence is so suggestive of a decision on an improper legal basis on the facts of th[e] case that it must be excluded." *Id.*

The case for exclusion here is far stronger than in *Webasto*. Moderna no longer asserts prior use—the only defense to which Alnylam's formulation work was potentially relevant—and Moderna has never challenged inventorship. There is no dispute that, in inventing and describing the claimed lipid mol% ranges and embodiments within the claim, the inventors conceived of the claimed genus of lipid formulations. Purported invention of further species of formulations within

6

the claimed genus is irrelevant, especially given that Moderna's argument that Alnylam first invented the 1.5:50 formulation inaptly distinguishes the patent's assignee (Plaintiffs) and licensee (Alnylam).  That Plaintiffs' licensee and collaborator first made the 1.5:50 formulation in a laboratory makes no difference, as Plaintiffs are the undisputed inventors of the formulations within the scope of the Lipid Composition Patents, including the 1.5:50.

Reaching for pretext to impugn Plaintiffs' invention improperly, Moderna asserts that because the Lipid Composition Patents do not include working examples using a 1.5:50 formulation, Moderna can argue that it used Alnylam's work, not Plaintiffs', and that evidence of Alnylam's work is relevant to its § 112 defenses, willfulness, objective indicia, and damages.  Ex. 15; Ex. 16 ¶¶ 304, 314, 329; Ex. 12 ¶ 907.  At the outset, Moderna's experts never once cited Alnylam's formulation work to support their § 112 opinions—nor did Moderna specify the § 112 defense to which this could pertain.  And the salient questions for willfulness, objective indicia, and damages relate to *the claims* that Plaintiffs invented, irrespective of whether a particular claimed *embodiment* Moderna used was first reduced to practice by Plaintiffs or their licensee.

1. <u>Willfulness</u>: Moderna willfully infringes if it knew of the patents and nevertheless engaged in conduct that infringed them without regard for the consequences.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 101–08 (2016).  Moderna built its entire mRNA-LNP platform on the 1.5:50 target formulation knowing it was copying Plaintiffs' patents.  *E.g.*, Ex. 8 (Mitchell Rep.) § XVIII.  Moderna's first iteration of its Covid-19 vaccine (the PVU formulation) likewise used the 1.5:50 formulation.  *Id.* at ¶ 394.  Moderna made slight modifications for its v1 and v2 vaccine formulations, but did so trying to maintain equivalence to the 1.5:50 target formulation—and with knowledge it would still infringe the patents.  *E.g.*, *id*. at ¶ 824.  Moderna is free to contest those facts, but it should not be permitted to dispute that its infringement was willful because it

7

was copying Plaintiffs' licensee, not Plaintiffs.

That Moderna copied a claim embodiment that Alnylam allegedly made first is irrelevant under *Halo*.  There is no dispute that Moderna knew that the 1.5:50 target formulation practices the claims, irrespective of whether Alnylam or Plaintiffs first made it.  *See* Ex. 8 § XVIII; Ex. 12 § X.H.  Moderna cannot escape willful infringement by suggesting, irrelevantly under *Halo*, that it used an embodiment first made by the licensee, especially given the confusion *Webasto* recognized that argument would produce.

2. <u>Objective Evidence of Non-Obviousness</u>: The same result obtains with respect to objective evidence of non-obviousness, specifically copying and simultaneous invention.  Copying a product or "feature" within the scope of a patent is evidence of non-obviousness, particularly when the alleged infringer tries and fails to circumvent it.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1328–29 (Fed. Cir. 2009).  That is precisely what happened here.  Across numerous projects, Moderna repeatedly used the 1.5:50 target formulation and frequently cited Plaintiffs' work with awareness of the patents.  Ex. 43 (Murthy Rep.) ¶¶ 1368–69; Ex. 8 (Mitchell Rep.) § XVIII.  Moderna tried extensively to design around it, but ultimately came back to the 1.5:50 and adopted target molar ratios for its Covid-19 vaccine that produce numerous infringing particles.  Ex. 8 (Mitchell Rep.) § IX.C.  Even if Plaintiffs' licensee first made the 1.5:50 formulation in a lab, it indisputably falls within the Lipid Composition Patents' claims.  Thus, evidence and testimony about inventorship of the 1.5:50 formulation is irrelevant to copying.

Moderna's reliance on Alnylam's work likewise is irrelevant to simultaneous invention.  Simultaneous invention, as objective evidence of obviousness, is "rare[ly]" applicable and requires multiple instances of "independent" invention.  *Immunex Corp. v. Sandoz Inc.*, 395 F. Supp. 3d 366, 407 (D.N.J. 2019).  Alnylam was not independent: it made the 1.5:50 formulation during its

collaboration with Plaintiffs' predecessor.  Ex. 43 (Murthy Rep.) ¶¶ 1437–46.  And even Alnylam does not question inventorship of the Lipid Composition Patents, of which the 1.5:50 formulation is one embodiment.  Ex. 13 (5/30/2024 Bossone Tr.) 173:9–174:3.

Moderna also suggests that the work of Plaintiffs' licensee is relevant to nexus.  Ex. 16 (Prud'homme Reply) ¶ 329.  But the pertinent nexus inquiry is whether there is "a legally and factually sufficient connection between the evidence [of nonobviousness] and the patented invention."  *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019). Regardless of whether Plaintiffs or a licensee made the 1.5:50 formulation, there is no debate that the formulation falls within the scope of the patented invention.

3. Damages:  Evidence and testimony concerning inventorship of patented embodiments is equally irrelevant to damages.  Discussing the value of the Asserted Patents, Dr. Prud'homme opines that the 1.5:50 formulation is not attributable to the Asserted Patents, suggesting it is instead attributable to Alnylam's work.  Ex. 12 (Prud'homme Reb.) ¶ 954.  But this misleading opinion is irrelevant, as Dr. Prud'homme concedes that the 1.5:50 formulation falls within the scope of the Lipid Composition Patents.  *Id.* ¶ 271.  It is nexus to Plaintiffs' claims that controls.

*        *        *

Not only is testimony, evidence, and argument related to inventorship of the Lipid Composition Patents and their embodiments irrelevant, its probative value (to the extent there is any) is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Just as in *Webasto*, if Moderna is permitted to present testimony about who invented certain embodiments of the Lipid Composition Patents, the jury may be confused and misled to conclude that Plaintiffs are not entitled to their patents.  2019 WL 4892417, at *5. Further, as explained above, the testimony, evidence, and argument Plaintiffs move to preclude

are an irrelevant sideshow that would distract from the actual issues and waste the parties' and Court's time. To the extent Moderna calls into question inventorship of the 1.5:50 formulation, Plaintiffs may need to wade into the Alnylam collaboration and subsequent litigation involving the terms and scope of that collaboration, which culminated in Alnylam agreeing to pay $65 million and assign to Plaintiffs' predecessor its patents procured through misappropriation. *E.g.*, Ex. 32. Introducing testimony and evidence about this lawsuit—including the basis for it and the favorable settlement—wastes time, distracts from the issues, and risks disputes over collateral matters. Thus, Plaintiffs request the Court to preclude Moderna from offering testimony, evidence, or argument related to inventorship of the Lipid Composition Patents and their embodiments.

## III.    THE COURT SHOULD PRECLUDE MODERNA FROM OFFERING EVIDENCE OR ARGUMENT ON ISSUES FOR WHICH IT WITHHELD DISCOVERY

"'Justice is not a game,' and nothing could be more basic than the rule that prohibits any party from preventing discovery regarding an issue upon which he is or plans to rely." *Apollo v. Stasinopoulos*, 2021 WL 229654, at *1–2 (N.D. Ill. Jan. 22, 2021). Plaintiffs ask the Court to enforce this basic rule. Moderna repeatedly refused avenues of discovery Plaintiffs requested about the research and development into aspects of Moderna's Covid-19 vaccine other than its lipid molar ratios on the basis such discovery was not relevant. By doing so, Moderna constrained Plaintiffs' ability to cross examine Moderna's narratives about the value of these technologies in Moderna's Covid-19 vaccine.

For example, Moderna juxtaposes the success of its Covid-19 vaccine with its other clinical products, claiming its other products failed because they used Plaintiffs' technology and its Covid-19 vaccine succeeded because of Moderna's own improvements. But Moderna repeatedly limited Plaintiffs' discovery into the areas that Moderna points to in support of that narrative. Judge Goldberg previously warned Moderna that because of its refusal to produce discovery, he would

10

"strongly consider Plaintiffs' objections on the basis of unfair surprise" at this stage of the case. D.I. 355 ¶ 12. Thus, Moderna should be precluded from introducing evidence or argument at trial concerning: (1) the basis for the success or failure of Moderna's clinical trials for other products using Plaintiffs' patented inventions; (2) the benefits or importance of Moderna's purported manufacturing improvements; and (3) the benefits or importance of its SM-102 lipid, including comparison of the benefits or importance of Moderna's SM-102 lipid to other cationic lipids.

### A.    Background

Since Moderna's first studies using LNPs, it has used Plaintiffs' patented technology, culminating in Moderna's decision to use LNPs embodying Plaintiffs' inventions in its first commercial product: its Covid-19 vaccine. Ex. 8 (Mitchell Rep.) ¶¶ 220–67. For example, Moderna used the 1.5:50 formulation in multiple clinical studies, which the FDA authorized and which Moderna reported on favorably in its publications and presentations. *Id.* ¶¶ 247–61.

Outside of this litigation, Moderna has characterized those clinical studies using Plaintiffs' inventions as successes. But in this litigation, Moderna sings a different tune, arguing that its prior work using Plaintiffs' inventions was unsuccessful and Moderna's Covid-19 vaccine succeeded only because of Moderna's own technology. Ex. 20 at 152–53, 155; Ex. 12 ¶¶ 149–51. Among the technologies Moderna points to are its manufacturing methods and the SM-102 cationic lipid. Ex. 20 at 151–52. During fact discovery, however, Moderna repeatedly denied discovery into its historical work using Plaintiffs' technology and Moderna's purported improvements; discovery that would have enabled Plaintiffs to test Moderna's desired trial narrative.

***The success or failure of Moderna's prior products and clinical studies:*** Plaintiffs sought discovery about certain publications that disclosed Moderna's studies using Plaintiffs' technology and direct comparisons between Plaintiffs' MC3 lipid and Moderna's SM-102 lipid. Ex. 21; Ex. 22 at 5–7; Ex. 8 ¶¶ 220–67. But Moderna refused to search for documents concerning the research

underlying those articles, Ex. 23 at 2, or to provide corporate testimony about them, Ex. 21. Moderna thus neutered Plaintiffs' ability to show why Moderna's products were or were not successful and whether its purported improvements in fact played a role in their development. *Id.*

So Plaintiffs sought the Court's assistance in obtaining 30(b)(6) testimony. D.I. 287 at 1. In response, Moderna represented to the Court that the studies disclosed in these articles were not relevant to disputed issues and providing this testimony was too burdensome. D.I. 302 at 1–2. Plaintiffs explained to the Court that their concern was exactly what Moderna now intends to do: argue that its prior work was successful because of Moderna's own innovations and not because of Plaintiffs' LNP. Ex. 24 (6/13/24 Tr.) at 22–23. In response, Judge Goldberg denied Plaintiffs' motion to preclude "testimony or evidence on the content of these publications," but cautioned:

> such a ruling is more appropriately made in the context of either summary judgment briefing or trial. . . . Defendant, however, is advised that if it raises testimony or evidence regarding any publications not disclosed to Plaintiffs in the course of discovery, I will strongly consider Plaintiffs' objections on the basis of unfair surprise. I will otherwise deny Plaintiffs' request to compel Rule 30(b)(6) deposition testimony on this topic as moot.

D.I. 355 at ¶ 12.

Plaintiffs also sought Moderna's Investigational New Drug applications ("INDs") for its products using Plaintiffs' patented inventions, which Moderna submitted to the FDA for authorization to run clinical trials. Ex. 22 at 9–10. Each IND discusses the technology used in clinical trials, provides scientific justifications for the use of that technology, and reports on the success or failure of prior studies. But again, Moderna refused production, forcing Plaintiffs to seek the Court's assistance. D.I. 184 at 1–2. Moderna told Judge Goldberg these INDs were not relevant to disputed issues, D.I. 196 at 1, persuading Judge Golberg to order Moderna to produce just a small portion of three INDs. Ex. 41 at 75–79; D.I. 229.

But Moderna now claims that Plaintiffs' lipid compositions were "inferior and unsuitable for mRNA delivery" by pointing to a failure of clinical material in 2018. Ex. 12 (Prud'homme Reb.) ¶¶ 149–51. In support of its position, Moderna's expert explains that Moderna "stopped further dosing of mRNA-1443 and notified the FDA, and the FDA subsequently placed a clinical hold on the IND." *Id.* ¶ 149 (quoting MRNA-GEN-01266205). In other words, to claim that Plaintiffs' technology is "inferior," Moderna points to information in the very INDs that Moderna told the Court were not relevant and declined to produce after the Court's order.

***Moderna's manufacturing processes:*** Plaintiffs also sought discovery into Moderna's purported inventions related to the manufacturing process for its Covid-19 vaccine. For example, Plaintiffs served document requests seeking information about Moderna's patents that disclose its purportedly novel manufacturing processes and the reason for Moderna's decision to use the mixing process it did for its Covid-19 vaccine. Ex. 22 at 9; Ex. 25 at 4 (requesting documents about "Moderna's reasons for changing the mixer used in its manufacturing process for mRNA-1273 LNP"). Moderna refused, asserting that "these requests directed to methods of manufacture are a blatant fishing expedition on the part of Plaintiffs." Ex. 26 at 3; Ex. 27 at 3, 6 (asserting requests have "no relevance to the asserted patents."). Moderna also refused to search for documents showing the manufacturing processes used in its publications and INDs. Ex. 23 at 2; D.I. 184 at 1–2. So Plaintiffs informed Moderna that they would move to preclude evidence about Moderna's purportedly novel manufacturing process and whether it contributed to the efficacy of Moderna's Covid-19 vaccine if Moderna tried to inject it at trial. Ex. 28 at 6. Nevertheless, Moderna's expert opines about these specific issues in his expert report. *E.g.*, Ex. 12 ¶ 615 ("Moderna 'developed ***proprietary mixing technologies that are quite different from the previous***

13

*generations of mixers*,' which resolved problems associated with previous methods."), and Moderna intends to raise this issue at trial.

*Moderna's SM-102 Lipid*: Plaintiffs also sought discovery into the SM-102 lipid that Moderna claims to have developed, including comparisons between that lipid and other cationic lipids. Ex. 22 at 7–8. Moderna refused, explaining that its conception and reduction to practice of this lipid is "not at issue in this case." Ex. 27 at 5. Based on Moderna's representation, Plaintiffs agreed not to pursue their requests further, but cautioned they would "move to preclude evidence and argument" at trial about "Moderna's research and development of SM-102, any comparison of SM-102 or its purported benefits to other lipids, [and] any argument with respect to apportionment of the value of the Accused Product, based on the value of SM-102." Ex. 28 at 5. And as noted above, Moderna refused the discovery that would allow Plaintiffs to test Moderna's comparisons of this SM-102 lipid against other cationic lipids, such as MC3.

Moderna now intends to make precisely those arguments at trial, arguing the SM-102 lipid contributes to the success of the Covid-19 vaccine, Ex. 20 at 152–56, and Moderna's expert opines at length on the development of this technology. Ex. 12 ¶¶ 91–146,188–208.

### B.    Argument

The Federal Rules put parties to a choice during discovery: provide relevant discovery and preserve the ability to raise a topic at trial; or limit discovery into a topic and forego arguing that topic at trial. When it came to producing information about Moderna's research and development for the separate technology used in its LNP products, Moderna chose the latter. Now Moderna should be held to that choice. As Judge Goldberg explained in his 2024 ruling, Moderna should not be permitted to tell a narrative at trial about the very topics on which it limited discovery.

A party that withholds discovery will be precluded from raising arguments on that subject at trial. *Vanguard Saving & Loan Ass'n v. Banks*, 1996 WL 69968, at *4 (E.D. Pa. Feb. 9, 1996).

Moderna's discovery limitations kept Plaintiffs from obtaining the evidence necessary to challenge Moderna's intended trial narrative about its own research and the reasons for the success of its Covid-19 vaccine.  For example, Moderna intends to introduce evidence about its "failures" with Plaintiffs' inventions by pointing to the FDA's decision to put the IND for its mRNA-1443 clinical trial on hold after the product failed visual inspection.  Moderna and its witnesses assert, *ipse dixit*, that this failure was because of Plaintiffs' patented technology. Ex. 20 at 155; Ex. 12 ¶ 627.  But because Moderna told the Court that the INDs for its other products were not relevant, Moderna did not produce this IND and Plaintiffs did not have the evidence necessary to test Moderna's unfounded say-so of why its clinical trial failed.  *See* Ex. 8 ¶ 274; Ex. 17 ¶¶ 110–11.

Nor do Plaintiffs have the discovery necessary to test Moderna's arguments that its SM-102 lipid improved upon other lipids.  Moderna relies on the data underlying the publications about which it refused to provide 30(b)(6) testimony to argue that its SM-102 lipid has improved properties over other lipids.  Ex. 12 (Prud'homme Reb.) ¶¶ 190, 193.  For example, Plaintiffs specifically requested testimony about the tolerability data in an article on this issue (Hassett 2019), and Moderna refused.  Ex. 21.  Plaintiffs then deposed the authors of that article in their individual capacities, but they were unable to interpret that tolerability-related data.  Ex. 29 (Hassett 4/26/2024 Tr.) 72:6–75:15, 88:15–90:5; Ex. 30 (Benenato 5/17/2024 Tr.) 87:3–88:4, 114:1–117:6, 122:17–123:14.  Yet Moderna's expert now relies on *that precise tolerability data* to support his opinions.  Ex. 12 (Prud'homme Reb.) ¶¶ 188–93.  Moderna's refusal to provide this discovery hindered Plaintiffs' experts' "ability to interpret and provide opinions on the data," including comparing the data underlying these articles to contradictory data that these articles did not disclose.  Ex. 17 (Mitchell Reply) ¶ 151; Ex. 8 (Mitchell Rep.) ¶ 274.

Plaintiffs expect that, in response to its motion, Moderna will argue that it produced substantial discovery—its frequent refrain in response to motions to compel was that it had produced 2 million pages—and that Plaintiffs' ability to respond to Moderna's arguments during expert discovery and in dispositive motions shows Moderna provided adequate discovery. But Rule 26's proportionality standard does not impose a simple numbers or parity game; it requires that the requested discovery is proportional to claims or defenses in the case. *In re Allergan Litig.*, 2022 WL 3211421, at *4 (D.N.J. Aug. 9, 2022). The fact that Plaintiffs mount a partial response based upon the documents that Moderna *did* produce is not dispositive of whether Moderna should be able to advance these arguments at trial after withholding discovery about them.

Moderna also has asserted that it ran multiple search terms across its custodial documents with words related to its other technologies (such as "SM-102," which is also one of the lipid components of its vaccine). But the search terms define the scope of *review*, not *production*—and what Moderna chose not to produce is what matters. Even if a large number of SM-102 related documents were produced, a party "cannot pick and choose which relevant information and documents to provide," as Moderna did. *Carswell v. Anderson*, 2024 WL 3104549, at *2 (D. Idaho June 24, 2024). Because Plaintiffs did not have the necessary documents to examine Moderna's witnesses, Plaintiffs were repeatedly unable to obtain the testimony relevant to rebut Moderna's preferred trial narrative.

Moderna may also assert that if Plaintiffs wished to obtain this evidence, they should have moved to compel. But "[w]hile a requesting party may file a motion to compel, it is not required to do so. The party required to produce documents may not withhold them during discovery and then have the benefit of them at trial." *Constellation NewEnergy v. Powerweb*, 2004 WL 6031004, at *2 (E.D. Pa. Aug. 12, 2004). What is more, Plaintiffs repeatedly did move to compel, including

16

for the specific evidence necessary to test Moderna's claims about its research and development, such as Moderna's INDs and its publications. *See* D.I. 133, 161, 184, 206, 285, 287, 331.

In sum, what Moderna is attempting to argue at trial "is not permitted under basic principles of fairness and is contrary to the regime established by the Federal Rules of Evidence. A party cannot have it both ways" by denying discovery and then still raising the same arguments at trial that that discovery would have addressed. *Apollo*, 2021 WL 229654, at *2. Plaintiffs request that the Court preclude Moderna from introducing any evidence, testimony, or argument as to the basis for the success or failure of Moderna's clinical trials for other products using Plaintiffs' patented inventions, comparisons of the benefits of its SM-102 lipid to other lipids, or the benefits of Moderna's purported manufacturing improvements.

## IV.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT IRRELEVANT LITIGATIONS

Moderna seeks to make arguments and introduce evidence at trial about multiple litigations that do not involve the Asserted Patents and that would force the parties to spend substantial time delving into the merits of these separate, irrelevant proceedings. First, Moderna intends to characterize Plaintiffs as "litigious" as pretext to defend its own conduct over the years. Second, Moderna intends to refer to certain trade secret litigations Plaintiffs' predecessors initiated and dispute the resolution of those actions. And third, Moderna intends to reference a recent decision in the European Patent Office ("EPO") revoking one of Plaintiffs' European patents—*i.e.*, a foreign patent unasserted here, which was revoked under a Europe-specific legal standard in a ruling subject to appellate review. Plaintiffs respectfully request the Court enter an order precluding Moderna from characterizing Plaintiffs or their predecessors as litigious, offering at trial any evidence, testimony, or argument concerning prior litigation brought by Plaintiffs or their predecessors not involving the Asserted Patents or Moderna, or referring to the EPO's revocation.

A.      **Background**

Over the span of more than two decades, Plaintiffs and their predecessors have been forced to litigate to enforce their contractual and intellectual property rights.  For example, Plaintiffs initiated an action in 2011 against Alnylam Pharmaceuticals, alleging that Alnylam had misappropriated confidential information obtained from Plaintiffs' predecessor Tekmira during the course of a confidential collaboration and used to obtain intellectual property (the "Alnylam Trade Secrets Litigation").  Ex. 31.  That action, along with related actions in U.S. and Canada, was ultimately settled in 2012 with Alnylam assigning to Plaintiffs' predecessors rights to the misappropriated intellectual property, including the MC3 cationic lipid, paying Tekmira $65 million, and entering into a cross-license agreement.  Ex. 32.  Tekmira's predecessor, Protiva, also initiated trade secret litigation against Sirna (now a Merck subsidiary), which was settled with Merck paying Tekmira and taking a license to its technology.  Ex. 33.

Moderna seeks to use these actions to paint Plaintiffs in a negative light at trial.  While Moderna has committed that it "will not gratuitously refer to Plaintiffs as litigious," Moderna still intends to introduce evidence referring to Plaintiffs as "litigious" to rebut Plaintiffs' assertions that Moderna should have taken a license to the Asserted Patents.  Ex. 15 (1/21/26 Email).  For example, Moderna's damages Expert, Dr. Vellturo, refers to Plaintiffs' purportedly "litigious history" to critique Plaintiffs' damages expert, Ms. Lawton.  Ex. 34 (Vellturo Reb.) at ¶ 298.  Similarly, Moderna's President, Dr. Hoge, who Moderna has indicated it will call at trial, referred at his deposition to the "litigious history of Arbutus, Tekmira, and others" and characterized the "quagmire between all of the siRNA companies and their disputes."  Ex. 35 (Hoge 5/22/24 Tr.) 174:12–175:8, 308:1–15.  Moderna also indicated that it intends to dispute the origin and ownership of the MC3 cationic lipid that was resolved through the Alnylam Trade Secrets Litigation, apparently seeking to re-litigate the resolution of that proceeding.  Ex. 15.

### B.    Argument

Plaintiffs seek to exclude under Rules 401, 402, and 403 irrelevant evidence about prior proceedings that would waste the jury's time and unfairly prejudice Plaintiffs.

***Characterizations of Plaintiffs as litigious and references to prior lawsuits:*** Courts routinely exclude as unfairly prejudicial characterizations of a party as "litigious," and evidence about irrelevant proceedings admitted to establish that fact.  *E.g.*, *SPEX Techs. v. Apricorn, Inc.*, 2020 WL 1289546, at *2 (C.D. Cal. 2020).  "Trial courts may allow evidence of a party's prior lawsuits **when they are not intended to show litigiousness**."  *Strat. Partners v. Figs, Inc.*, 2022 WL 18399950, at *5 (C.D. Cal. Sept. 26, 2022).  Indeed, consistent with this rule, Plaintiffs agreed not to refer to Moderna's many lawsuits, with the exception of proceedings directly relevant to the claims in this case.  *See* D.I. 691 at 20 (stipulating to exclusion of "evidence referencing lawsuits, threatened litigation, or purported disputes involving Moderna" with certain exceptions).

But Moderna has not shown the evidence of prior proceedings it seeks to admit are relevant and admissible for any permissible purpose.  Moderna only seeks to use evidence of the prior litigations Plaintiffs initiated to make the jury believe Plaintiffs are litigious, an impermissible purpose.  With respect to the Alnylam Trade Secrets Litigation, as noted above, *supra* § II, Moderna has not asserted an inventorship argument and does not dispute that Plaintiffs hold the rights to the Asserted Patents or the patents that were assigned to Plaintiffs through the settlement of that action.  That litigation also did not concern any rights to the Asserted Patents here.  Nor do either side's experts rely on the cross-license agreement that emerged from the settlement to that litigation as a comparable license for purposes of establishing damages.  *See* Ex. 36 (Lawton Rep.) ¶ 920; Ex. 34 (Vellturo Rep.) ¶ 197.  And neither party relies on the litigation with Sirna or the cross-license that resulted from the settlement of that action.  *Id.*  Thus, those actions are not relevant to Moderna's invalidity, infringement, willfulness or damages arguments.

Moderna's only basis for introducing evidence of these prior proceedings is its claim that they explain why Moderna did not take a license to the Asserted Patents. Ex. 15 (1/21/26 Email). In support of that claim Moderna apparently intends to rely on documents in which its President claimed to a Wall Street Journal reporter that Moderna had "never wanted to touch [Plaintiffs' predecessors'] directly because by 2013 it was pretty clear they were toxic. Felt like the company spent more in lawsuits than in the lab." Ex. 37. He also told the same reporter that this same conduct led Moderna to challenge Plaintiffs' patents through *inter partes* reviews. Ex. 38 at -919.

Moderna may think that these insults are good PR, but they are precisely the type of arguments courts exclude as unfairly prejudicial. Even when courts allow evidence of prior litigation where relevant to some issue, they have held that a defendant cannot portray a plaintiff as litigious or otherwise impugn a party based on their prior litigation. *E.g.*, *Strat. Partners*, 2022 WL 18399950, at *5 (allowing evidence of prior litigations "to the extent that [defendant] does not introduce evidence of prior lawsuits improperly to show [plaintiff] as overly litigious"); *Finjan v. Sophos, Inc.*, 2016 WL 4560071, *9–10 (N.D. Cal. 2016) (admitting evidence of certain prior litigation where defendant stated it "does not intend to admit evidence of the [separate] action to assert that [plaintiff] is particularly litigious"). The risk of unfair prejudice and wasted time substantially outweighs any probative value from characterizing Plaintiffs as litigious.

Similarly, Moderna makes arguments that relitigate the outcome of the Alnylam Trade Secrets Litigation. For example, Moderna intends to tell a narrative at trial contesting the inventorship of the intellectual property that was assigned to Plaintiffs' predecessors by virtue of the settlement for that litigation, including the rights to Plaintiffs' MC3 cationic lipid that Moderna used in many of its prior products. Ex. 15; Ex. 12 ¶¶ 273–283. But Moderna does not dispute that Plaintiffs are the proper owners of the patents covering the MC3 lipid by virtue of the settlement

of the Alnylam Trade Secrets Litigation.  Yet it still intends to imply that Plaintiffs are *not* the owners of MC3, claiming that the repeated references to MC3 in its internal documents are not references to Plaintiffs but instead references to Alnylam.  Ex. 15.

If Moderna is permitted to make these arguments—characterizing Plaintiffs as "litigious" or arguing that Plaintiffs are not the proper owners of the intellectual property that was resolved through settlement in prior litigation—then Plaintiffs will be forced to delve into these prior cases to rebut Moderna's improper characterizations.  This would involve introducing evidence about the strength of their litigation positions, their court victories and favorable settlements, and the reasons Plaintiffs' predecessors filed the lawsuits.  The result would be mini-trials over these extraneous matters that have no place in this lawsuit to begin with.  *See IOENGINE, LLC v. PayPal Holdings, Inc.*, 2022 WL 2800911, at *3 (D. Del. June 27, 2022) (excluding evidence of prior litigation that "would likely provoke a dispute over a collateral matter that has little relevance").

***Proceedings in European Patent Office:*** Moderna has also indicated that it intends to rely on the determination in the European Patent Office to revoke one of Plaintiffs' European patents under a different body of law, which remains subject to Plaintiffs' right to seek review of a full appeal board, in response to a challenge brought by Merck and Moderna.  Ex. 15.  Courts in this District routinely exclude such evidence, concluding that under Rule 403, evidence relating to decisions in foreign proceedings must be excluded, as "the probative value of these decisions and proceedings hardly outweighs the substantial risk of prejudice.  Proceedings and the decisions arising from proceedings conducted in foreign jurisdictions, under foreign substantive law and foreign procedural rules, and concerning a foreign patent that is not at issue in the instant action, are of dubious probative value." *Edwards Lifesciences LLC v. Medtronic CoreValve LLC*, 2014 WL 12927825, at *1 (D. Del. Jan. 2, 2014).

Moderna's only basis for admitting this evidence is that it is relevant to "Plaintiffs' damages theory that Moderna's patent challenges created a cloud over the portfolio." Ex. 15. But Moderna's never-before-articulated basis for relevance is cursory and pretextual. Plaintiffs have explained that Moderna's repeated challenges to Plaintiffs' patent portfolio—by filing *inter partes* reviews and by challenging validity of the patents in this proceeding—has depressed the rates that other licensees were willing to pay. Ex. 36 ¶¶ 981, 995, 1002, 1009, 1019. Moderna's pretense (not articulated by its expert) is that the EPO proceeding is relevant to that theory as well. But it is simply not the case that validity challenges to a non-asserted foreign patent are relevant to a cloud over the Asserted Patents in the same way that IPR challenges to the Asserted Patents are. And if anything, that would only support ***Plaintiffs'*** damages theory, not Moderna's, as it would require adjustment of other licenses to a higher royalty rate.

Moderna also asserts that the EPO proceeding should be allowed in because Plaintiffs injected it into the case. Not so. All Moderna points to in response is that Plaintiffs and their expert discuss evidence submitted in declarations in that case. Ex. 15. But the law is clear that the parties can rely on evidence from EPO proceedings (and the Alnylam Trade Secrets Litigation for that matter) even without referring to the actual proceedings or their resolution. *See, e.g.*, *Wherevertv, Inc. v. Comcast Cable Commc'ns*, 2023 WL 2664200, at *5 (M.D. Fla. Mar. 28, 2023). Thus, to the extent that a party can show evidence from these proceedings is admissible for an otherwise permissible purpose, Plaintiffs do not seek to exclude it simply because it was part of the prior litigation. *See Sonos v. D&M Holdings*, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017); *Johns Hopkins Univ. v. Alcon Lab'ys*, 2018 WL 4178159, *21 (D. Del. Aug. 30, 2018).

In any event, whatever minimal, if any, probative value these EPO proceedings have is substantially outweighed by the unfair prejudice:

> An opinion, although of a quasi-judicial or administrative body and albeit that of a foreign jurisdiction, carries with it a certain imprimatur, which creates a substantial risk that the jury will give its conclusions undue deference. Even if the jury is instructed to consider the opinion for its limited purposes, there is a strong likelihood that the jury would be confused as to its relevance.

*Pharmastem Therapeutics v. Viacell, Inc.*, 2003 WL 22244704, at *3 (D. Del. Sept. 30, 2003).

## V.    THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT ABOUT PLAINTIFFS' OWNERSHIP STRUCTURE, INCLUDING ROIVANT

Plaintiffs have a complex corporate structure and history. Moderna seeks to complicate it further and improperly bias the jury by bringing Roivant Sciences Ltd.—Genevant's parent company and an Arbutus stockholder—into the picture. Roivant and its role with respect to Plaintiffs' work is wholly irrelevant to any claim or defense in this case and should be excluded.

### A.    Background

Plaintiffs Arbutus and Genevant emerged from years of work at predecessor companies developing LNP formulations, among other things. The work at those predecessor companies is highly relevant to issues in this case and will be discussed at trial.

In contrast, the identity and involvement of Genevant's parent company—Roivant—has no relevance. Roivant was founded in 2014 by Vivek Ramaswamy. Roivant invested in Arbutus before partnering together to form Genevant in 2018. Pursuant to that agreement, Arbutus licensed patent rights to Genevant for RNA-based applications and Roivant contributed seed capital. Roivant is not a named Plaintiff in this action. Certain produced documents reference Roivant, but Roivant's relationship to Plaintiffs is not relevant to any claim or defense.

### B.    Argument

Evidence, testimony, or argument about Plaintiffs' ownership structure, including as to Roivant, is both irrelevant and unduly prejudicial, and therefore should be excluded under Rules 402 and 403. Roivant's structure and leadership are all irrelevant to the issues in this case.

Moderna resisted a "limitation with regards to [trial references to] Roivant" because it "need[s] flexibility to respond to Plaintiffs' case in chief at trial." Ex. 39. But Roivant plays no role in Plaintiffs' case in chief. Moderna also points to "Roivant's involvement in the formation of Genevant with Arbutus, the capitalization of Genevant, and licensing with Moderna," along with its alleged involvement in patent prosecution and valuation. *Id.* But Moderna's damages expert, Dr. Vellturo, hardly touched these points in his expert report, and certainly not in a way that opens the door to presenting evidence or argument concerning Roivant's assets, structure, and leadership.

Dr. Vellturo notes that Roivant recapitalized Genevant in July 2020, but raises that fact only to contextualize Genevant's shift from building its own product portfolio to focusing on collaborations and licensing its delivery technology. Ex. 34 ¶¶ 30, 251 n.602, 782 n.1933. Dr. Vellturo also cites a 2017 proposal—reviewed by select Arbutus and Roivant employees— discussing a never-adopted "campaign" to bring Moderna to the negotiation table. *Id.* ¶ 782 n.1931. But this is cited only to provide context for his opinion that Genevant and Moderna were not competitors. Elsewhere, Dr. Vellturo refers to Roivant as "Genevant's majority shareholder," but that fact plays no role in his damages analysis. *Id.* ¶ 30. Plaintiffs' damages expert, Ms. Lawton, references similar background facts, Ex. 36 ¶¶ 31, 215, but, as with Dr. Vellturo, they play no role in her analysis. That Plaintiffs' fact witnesses were asked questions about Roivant *by Moderna*, Ex. 39, does not establish Roivant's relevance to the claims and defenses that will be presented to the jury. As for Roivant's role in licensing negotiations (a point not featured in Dr. Vellturo's report), Genevant's President testified that Roivant has no "input as to the terms of any license agreement." Ex. 40 133:2–9. In short, Moderna's reasons for opposing this motion amount to nothing more than pretext for raising irrelevant and prejudicial information about Roivant.

Moderna also argues that Roivant's role is relevant because Roivant (or individuals with Roivant email addresses, some of whom sit on Genevant's board) is named on certain documents and produced documents in response to Moderna's third-party subpoena. Ex. 15. To the extent such documents are admissible, Plaintiffs do not object to their use solely because they mention Roivant. But that is no reason for Moderna to present irrelevant argument or evidence on Roivant's assets or leadership. Plaintiffs thus seek no more than what other courts have ordered in similar situations. *See, e.g.*, *DUSA Pharms. Inc. v. Biofrontera Inc.*, No. 18-cv-10568, D.I. 389 (D. Mass. Nov. 1, 2021) (excluding evidence of "parent company's size or finances" as irrelevant, but allowing "use of documents originating from" parent company).

The danger of unfair prejudice and misleading the jury substantially outweighs the relevance (if any) of Roivant's role, assets, and leadership. For example, the jury may be improperly swayed by Roivant's deeper pockets compared with Plaintiffs or by references to Roivant's broader investments across the life sciences field. Or the publicly known political leanings of Roivant's founder—Vivek Ramaswamy, 2020 presidential candidate and present Ohio gubernatorial candidate—may prejudice jurors against Plaintiffs (or Moderna, for that matter).

Thus, courts routinely exclude reference to a party's corporate structure, including the role of parent companies. *See, e.g.*, *Cellular Commc'ns Equip. v. Apple Inc.*, 2016 WL 11496010, at *1 (E.D. Tex. Sept. 2, 2016) (excluding "[plaintiff's] financial relationship to its parent company"); *Deflecto, LLC v. Dundas Jafine Inc.*, 2015 WL 9413148, at *6–7 (W.D. Mo. Dec. 22, 2015) (excluding "references to Jordan Industries, which is Plaintiff's parent company" and "Jordan Industries' financial condition"). The same order should issue here.

OF COUNSEL:
David I. Berl
Adam D. Harber
Thomas S. Fletcher
Shaun P. Mahaffy
Andrew L. Hoffman
Matthew W. Lachman
Ricardo Leyva
Arthur J. Argall III
Falicia Elenberg
Kathryn Larkin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000

Andrei Iancu
Jeffrey B. Wall
Sullivan & Cromwell llp
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500
*Attorneys for Plaintiff Genevant
Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs/Counterclaim-
Defendants Genevant Sciences GmbH and
Arbutus Biopharma Corporation*

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
*Attorneys for Plaintiff Arbutus*
*Biopharma Corporation*

Dated: February 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL:**

Brian P. Egan
Travis J. Murray
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

Patricia A. Carson, Ph.D.
Jeanna M. Wacker
Mark C. McLennan
Nancy Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Leslie M. Schmidt, P.C.
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
patricia.carson@kirkland.com
jeanna.wacker@kirkland.com
mark.mclennan@kirkland.com
kaye.horstman@kirkland.com
shaoyao.yu@kirkland.com
mara.greenberg@kirkland.com
leslie.schmidt@kirkland.com
andrew.lee@kirkland.com
brad.deem@kirkland.com

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
noah.frank@kirkland.com

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
james.hurst@kirkland.com

Yan-Xin Li
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
yanxin.li@kirkland.com
lauraashley.harris@kirkland.com

Jaime A. Santos
William M. Jay
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000
jsantos@goodwinlaw.com
wjay@goodwinlaw.com

Jordan Bock
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
jason.wilcox@kirkland.com

Gabriel B. Ferrante
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
gferrante@goodwinlaw.com

Elizabeth Elrod
KIRKLAND & ELLIS LLP
401 W. 4th Street
Austin, TX 78701
(512) 678-9100
elizabeth.elrod@kirkland.com

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs/Counterclaim-Defendants Genevant Sciences GmbH and Arbutus Biopharma Corporation*