# EXHIBIT 33

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") sets forth the terms upon which Sirna Therapeutics, Inc. (SIRNA) and Merck & Co., Inc. ("MERCK & CO") and Protiva Biotherapeutics Inc. and Protiva Biotherapeutics (USA), Inc. (collectively "PROTIVA") agree to settle the litigations pending both before the Superior Court of California, San Francisco County, captioned *Protiva Biotherapeutics, Inc. et. al. v. Sirna Therapeutics, Inc., Case No. CGC-06-450694* and before the United States District Court For The Northern District of California, captioned *Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc. and Mark J. Murray, Case No. C-06-1361 (MMC)* (collectively the "Litigation"). SIRNA, MERCK & CO and PROTIVA are individually referred to in this Agreement as a "Party" and collectively as the "Parties". This Agreement shall be effective as of October 9, 2007 ("Effective Date").

## BACKGROUND

SIRNA and PROTIVA entered into a Strategic Alliance Agreement ("SAA") dated February 1, 2005 and a Materials Transfer Agreement dated April 6, 2004 which was modified in an Amended and Restated Materials Transfer Agreement ("MTA") dated October 1, 2004 (collectively the "Prior Agreements"). The disputes that resulted in the Litigation arose from the relationships established and the activities undertaken by the Parties since the inception of these agreements. The Parties wish to completely settle their disputes and the Litigation with this Settlement Agreement.

In consideration of the mutual promises contained herein and any other good and valuable consideration, the adequacy of which is hereby acknowledged, the Parties hereto agree:

## 1. DEFINITIONS

1.1 **"Additional Contested Claims"** shall have the meaning set forth in Section 6.4.3.

1.2 **"Affiliate"** shall mean (i) any corporation or business entity of which fifty percent (50%) or more of the securities or other ownership interests representing the equity, the voting stock or general partnership interest are owned, controlled or held, directly or indirectly, by a Party; or (ii) any corporation or business entity which, directly or indirectly, owns, controls or holds fifty percent (50%) (or the maximum ownership interest permitted by law) or more of the securities or other ownership interests representing the equity, the voting stock or, if applicable, the general partnership interest, of a Party; or (iii) any corporation or business entity of which fifty percent (50%) or more of the securities or other ownership interests representing the equity, the voting stock or general partnership interest are owned, controlled or held, directly or indirectly, by a corporation or business entity described in (i) or (ii).

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY                                GENV-00040097

3.3 With respect to PROTIVA Know-how, PROTIVA covenants not to sue MERCK, its Affiliates, successors, predecessors, directors, officers, partners, employees, customers, agents, and all those acting in privity or concert with any of them for any past or future use of PROTIVA Know-how for any purpose.

3.4 With respect to PROTIVA Patent Rights, PROTIVA covenants not to sue MERCK, its Affiliates (or any of their bona fide collaborators, with respect only to research and/or development within the scope of such collaboration) for any research and/or development activity in the Territory after the Effective Date.

3.5 For the avoidance of doubt, subject to Section 6.1.1, the Parties acknowledge that none of them intend hereby to waive any existing protective order issued in connection with the Litigation or to release any right (i) to raise any matter, fact, theory, or argument on inventorship to the Patent Expert in connection with the process described in Section 6 or (ii) to claim or assert in any forum that any patent claim Controlled by the other Party is invalid or unenforceable.

3.6 The Parties hereto specifically understand, acknowledge, and agree that this is a full and final release of all claims described herein, whether known or unknown, and whether or not included in the pleadings of the Litigation. Each Party therefore hereby expressly and voluntarily waives all rights or benefits which such Party might otherwise have under California Civil Code Section 1542, which provides:

"**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected the settlement with the debtor.**"

Each of the Parties further expressly and voluntarily waive any substantially similar or equivalent statutory, common law, or equitable rights or benefits arising under the laws of any other jurisdiction.

4. LICENSES

4.1 PROTIVA grants MERCK a non-exclusive license in the Territory under PROTIVA Patent Rights and Collaboration Patent Rights for any and all purposes in the Field, including but not limited to: to make, have made, use, offer to sell, sell or import LNP Formulations, Compound and Product(s) (subject to the exclusions stated in Section 1.11 with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). MERCK shall have the right to grant sublicenses under the license in this Section 4.1 to MERCK's Affiliates but not otherwise.

4.2 PROTIVA grants MERCK a non-exclusive license in the Territory under PROTIVA Designated Patent Rights and Collaboration Patent Rights for any and all purposes in the Restricted Field, including but not limited to: to make, have made, use, offer to sell, sell or import LNP Formulations, Compound and

- 8 -

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY                                                    GENV-00040104

Product(s) (subject to the exclusions stated in Section 1.33 ██████████████████████████████████████). MERCK shall have the right to grant sublicenses under the license in this Section 4.2 to MERCK's Affiliates but not otherwise.

4.3 With respect to PROTIVA Patent Rights which PROTIVA either (i) first obtains Control over during the period between the Effective Date and the Anniversary Date or (ii) is a patent application that was filed during the period between the Effective Date and the Anniversary Date and does not claim priority to an application filed before the Effective Date, PROTIVA will promptly disclose such patent or patent application to MERCK in writing following the publication of such patent or patent applications in the Territory and MERCK shall have the option to decline a license under such PROTIVA Patent Rights. MERCK shall notify PROTIVA in writing of its election within sixty (60) days of receipt of PROTIVA's notice.

4.4 At any time or times during the period between the Effective Date and the Anniversary Date, PROTIVA may designate, by written notice to MERCK, a PROTIVA Potential Reserved Target to be a PROTIVA Reserved Target, provided however, that PROTIVA may designate no more than a total of three PROTIVA Potential Reserved Targets during this Agreement.

4.5 MERCK grants to PROTIVA a non-exclusive, perpetual, royalty-free, paid-up license, with right to grant sublicenses in one or more tiers, in the Territory under MERCK Patent Rights to make, have made, use, offer to sell, sell or import LNP Formulations, alone or combined with one or more active ingredients and/or inert ingredients.

4.6 No Party is granting rights by implication or otherwise to any other patents owned or Controlled by that Party. Each Party reserves the right to enforce against the other Parties any patents not expressly included in the license grants under this Section 4.

5. PAYMENTS

5.1 Payments in Settlement. In consideration of PROTIVA's agreement to grant the releases provided for in this Agreement and other valuable consideration, MERCK shall pay up to ████████████████████████████) to Protiva Biotherapeutics Inc., as follows:

(i) MERCK will, within three (3) business days of the Effective Date of this Settlement Agreement, pay Protiva Biotherapeutics Inc. on a non-refundable, non-creditable basis ████████████████████████████ (the "Initial Payment"), and

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY                    GENV-00040105

       (ii) contingent on the occurrence of the events described in Section 5.1.1 and 5.1.2, MERCK will be obligated to pay Protiva Biotherapeutics Inc. up to an additional ■■■■■■■■■■■■■■■■■■■■■■■

5.1.1   <u>Conditional Payments.</u> Subject to the terms and conditions of this Agreement and Section 5.4 below, MERCK shall pay to Protiva Biotherapeutics Inc. the following conditional payments:

    (a)   ■■■■■■■■■■■■■■■■■■■ on the filing and acceptance by the applicable regulatory agency of an IND for the first Covered Product. This conditional payment shall be made only once under this Settlement Agreement and only for the first Covered Product to qualify; and

    (b)   ■■■■■■■■■■■■■■■■■■■ on the dosing of the first patient in first Phase II Studies for a Covered Product. This conditional payment shall be made only once under this Settlement Agreement and only for the first Covered Product to qualify.

5.1.2   Each of the conditional payments set forth in Sections 5.1.1(a) and (b) shall be paid, if ever, only once under this Settlement Agreement. MERCK shall notify PROTIVA in writing within thirty (30) days following the satisfaction of the respective event described, and shall make the appropriate conditional payment within thirty (30) days after the occurrence of such event.

5.2   <u>License Payments.</u> In consideration of PROTIVA's agreement to grant the licenses provided for in Section 4 and subject to the terms and conditions of this Agreement, MERCK will pay Protiva Biotherapeutics Inc. the following milestone payments and the royalties provided for in Section 5.5:

    5.2.1   ■■■■■■■■■■■■■■■■■■■ on the dosing of the first patient in Phase II Studies for each subsequent Covered Product to qualify after payment under 5.1.1(b) has been made;

    5.2.2   ■■■■■■■■■■■■■■■■■■■ on the dosing of the first patient in Phase III Studies for a Covered Product;

    5.2.3   ■■■■■■■■■■■■■■■■■■■ on the filing and acceptance for filing of an NDA in the United States for a Covered Product or the approval of an NDA in a Major Market Country for a Covered Product, whichever comes first;

    5.2.4   Each of the Milestones under this Section 5.2 shall be payable only once for any particular Covered Product. MERCK shall notify PROTIVA in writing within thirty (30) days following the achievement of each

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY     GENV-00040106

milestone, and shall make the appropriate milestone payment within thirty (30) days after the achievement of such milestone.

5.3 In the event that a Product activity does not trigger a conditional payment or a milestone payment under Section 5.1.1 or 5.2 because at the time the activity occurred such Product did not meet the definition of a "Covered Product," but, at a later date, (i) due to the issuance of a patent, such Product does meet the definition of a "Covered Product," and (ii) MERCK is continuing the clinical development of or is selling the Product, then MERCK shall pay the corresponding conditional payment or milestone payment within thirty (30) days of notice by PROTIVA that the patent has issued.

5.4 For the purposes of Sections 5.1.1 and 5.2, any activity or event anywhere in the world with respect to a Product shall be deemed to be such an activity or event with respect to a Covered Product if such Product is then (or thereafter becomes, as described in Section 5.3) a Covered Product in the United States.

5.5 Royalties.

    5.5.1 Royalties Payable By MERCK. Subject to the terms and conditions of this Agreement, MERCK shall pay Protiva Biotherapeutics Inc. royalties, calculated on a Product-by-Product basis, as set forth in this Section 5.5.

    MERCK shall pay Protiva Biotherapeutics Inc. royalties in an amount equal to [REDACTED] of Covered Products by MERCK or its Affiliates.

    All royalties are subject to the following conditions:

    (i) that only one royalty shall be due with respect to the same unit of Covered Product;

    (ii) that no royalties shall be due upon the sale or other transfer among MERCK or its Affiliates, but in such cases the royalty shall be due and calculated upon MERCK's or its Affiliate's Net Sales to the first independent third party;

    (iii) no royalties shall accrue on the sale or other disposition of Covered Product by MERCK or its Affiliates for use in a clinical trial; and

    (iv) no royalties shall accrue on the disposition of Covered Product in reasonable quantities by MERCK or its Affiliates as samples (promotional or otherwise) or as donations (for example, to non-profit institutions or government agencies for a non-commercial purpose).

    5.5.2 Change in Sales Practices. The Parties acknowledge that during the term of this Agreement, MERCK's sales practices for the marketing and distribution of its products generally may change to the extent that the

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY　　　　　GENV-00040107

calculation of the payment for royalties on Net Sales may become impractical or even impossible. In such event the Parties agree to meet and discuss in good faith new ways of compensating PROTIVA to the extent currently contemplated under Section 5.5.1.

5.5.3 <u>Royalties for Bulk Goods</u>. In those cases in which MERCK sells bulk LNP Formulation containing a Compound rather than Covered Product in packaged form to an independent third party, the royalty obligations of this Section 5.5 shall be applicable to the bulk LNP Formulation containing Compound.

5.6 <u>Reports; Payment of Royalty</u>. During the term of this Agreement following the first commercial sale of a Product, MERCK shall furnish to PROTIVA a quarterly written report for the calendar quarter showing the Net Sales of all Products subject to royalty payments sold by MERCK and its Affiliates in the Territory during the reporting period and the royalties payable under this Agreement. Reports shall be due on the sixtieth (60th) day following the close of each calendar quarter. Royalties shown to have accrued by each royalty report shall be due and payable on the date such royalty report is due. MERCK shall keep complete and accurate records in sufficient detail to enable the royalties payable hereunder to be determined.

5.7 <u>Late Payments.</u> MERCK will be liable to Protiva Biotherapeutics Inc. for interest on overdue royalties or other amounts payable hereunder, commencing on the date such amounts become due and ending upon payment of such amounts, at an ▬▬▬▬ ▬▬▬▬ ▬▬▬▬ than the prime interest rate as quoted from time to time during such period by the head office of the Royal Bank of Canada, or the maximum legal rate, whichever is less.

5.8 <u>Audits.</u>

5.8.1 Upon the written request of PROTIVA and not more than once in each calendar year, MERCK shall permit, and shall cause its sublicensed Affiliates to permit, an independent certified public accounting firm of nationally recognized standing selected by PROTIVA and reasonably acceptable to MERCK, at PROTIVA's expense, to have access during normal business hours to such of the records of MERCK and its sublicensed Affiliates as may be reasonably necessary to verify the accuracy of the royalty reports hereunder for any calendar year ending not more than thirty-six (36) months prior to the date of such request. The accounting firm shall disclose to PROTIVA only whether the royalty reports are correct or incorrect and the amount of any discrepancy. No other information shall be provided to PROTIVA.

5.8.2 If such accounting firm correctly identifies a discrepancy made during such period, the appropriate Party shall pay the other Party the amount of the discrepancy within thirty (30) days of the date PROTIVA delivers to MERCK such accounting firm's written report so correctly concluding, or

- 12 -

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY                    GENV-00040108