# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH | |
| *Plaintiffs*, | **Redacted - Public Version** |
| v. | |
| MODERNA, INC. and MODERNATX, INC., | C.A. No. 22-252-JDW |
| *Defendants*. | |
| MODERNA, INC. and MODERNATX, INC., | **JURY TRIAL DEMANDED** |
| *Counterclaim-Plaintiffs*, | ██████████████████ |
| v. | |
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GMBH, | |
| *Counterclaim- Defendants*. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO MODERNA'S MOTIONS *IN LIMINE*

## TABLE OF CONTENTS

I.    The Court Should Deny Moderna's MIL #1 (Moderna's MC3 Email)..............................1

    A.    Background....................................................................................................................1

    B.    Argument ......................................................................................................................3

II.   The Court Should Deny Moderna's MIL #2 (IPRs Against the Asserted Patents) .............6

    A.    Evidence of the '435 IPR is relevant and should not be excluded...........................6

    B.    Evidence of the '069 IPR is relevant and should not be excluded...........................8

III.  The Court Should Deny Moderna's MIL #3 (Related Disputes and Litigations).............11

    A.    The relevance of the evidence from other proceedings far outweighs any
        risk of unfair prejudice or confusion....................................................................12

    B.    Depositions of current and former Moderna employees are admissible................15

    C.    Moderna's expert reports are admissible as adoptive admissions and under
        Rule 703. ....................................................................................................................17

IV.   The Court Should Deny Moderna's MIL # 4 (Rule 408 Material)....................................18

V.    The Court Should Deny Moderna's MIL #5 (Moderna's Financials and Projections)
    ........................................................................................................................................20

    A.    Moderna's global sales figures are relevant and not unfairly prejudicial..............20

    B.    Moderna's projections are relevant and admissible...............................................21

    C.    Evidence from Moderna's May 2020 capital raise is relevant and
        admissible. ..................................................................................................................24

# TABLE OF AUTHORITIES[1]

## STATUTES & RULES

Fed. R. Civ. P. 26(a)(2)(B) ...............................................................................17

Fed. R. Civ. P. 32(a)(8) ....................................................................................15

Fed. R. Evid. 401 ................................................................................................6

Fed. R. Evid. 402 ................................................................................................6

Fed. R. Evid. 403 ...............................................................................5, 7, 10, 23

Fed. R. Evid. 404(b) ..........................................................................................25

Fed. R. Evid. 408 .................................................................................18, 19, 20

Fed. R. Evid. 608(b) ............................................................................................4

Fed. R. Evid. 703 ..............................................................................................17

Fed. R. Evid. 801(d)(2) ........................................................................15, 16, 17

Fed. R. Evid. 804 .........................................................................................15, 16

## CASES

*Adapt Pharma Ops. Ltd. v. Teva Pharms. USA, Inc.*,
   25 F.4th 1354 (Fed. Cir. 2022) ...................................................................20, 21

*AgroFresh v. Essentiv LLC*,
   2018 WL 9578196 (D. Del. Dec. 11, 2018) ......................................................18

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 WL 794328 (N.D. Cal. Feb. 25, 2014) .....................................................14

*Battle Born Muni. Inc. v. Dick's Sporting Goods, Inc.*,
   2021 WL 3810177 (W.D. Pa. Aug. 26, 2021) ...................................................17

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
   2018 WL 6629705 (D. Del. Oct. 12, 2018) .......................................................17

---

[1] Unless otherwise noted, all emphasis is added, and internal citations, alterations, and quotations are omitted.  All highlighting in the exhibits has been added.  All references to Moderna's Memorandum in Support of its Motions in Limine are referred to as "Memo".

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*,
   97 F.4th 854 (Fed. Cir. 2024) .............................................................22

*Carter v. Hewitt*,
   617 F.2d 961 (3d Cir. 1980).................................................................4

*Chase Manhattan Bank v. Iridium Afr.*,
   2003 U.S. Dist. LEXIS 23837 (D. Del. Nov. 25, 2003) ....................18

*Clay v. Buzas*,
   208 F.R.D. 636 (D. Utah 2002) .........................................................15

*Contour IP Holding LLC v. GoPro Inc.*,
   2021 WL 75666 (N.D. Cal. Jan. 8, 2021) ............................................6

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016).............................................................................11

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
   485 F. Supp. 3d 505 (D.N.J. 2020) ......................................................9

*Edwards Lifesciences LLC v. Medtronic CoreValve LLC*,
   2014 WL 12927825 (D. Del. Jan. 2, 2014)........................................11

*Elm Cooper, LLC v. Modular Steel Sys., Inc.*,
   2020 WL 905532 (M.D. Pa. Feb. 25, 2020) .......................................3

*Evolved Wireless, LLC v. Apple Inc.*,
   2019 WL 1100471 (D. Del. Mar. 7, 2019) ........................................22

*Fid. & Deposit Co. of Maryland v. Hudson United Bank*,
   653 F.2d 766 (3d Cir. 1981).................................................................14

*Finjan, Inc. v. Cisco Sys.*,
   2020 WL 13180008 (N.D. Cal. June 5, 2020) .....................................7

*Finjan, Inc. v. SonicWall*,
   No. 17-CV-04467, D.I. 477 (N.D. Cal. May 21, 2021)........................7

*Finjan, Inc. v. Sophos, Inc.*,
   2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) ...............................7, 10

*Flexuspine, Inc. v. Globus Med., Inc.*,
   2016 WL 9279999 (E.D. Tex. July 6, 2016) ......................................18

*Hanson v. Alpine Valley Ski Area*,
   718 F.2d 1075 (Fed. Cir. 1983).....................................................18, 22

*Holley v. Port Auth. of N.Y.*,
    2018 WL 11413338 (D.N.J. May 3, 2018) ...............................................................17

*Illumina, Inc. v. BGI Genomics Co., Ltd.*,
    2021 WL 4979799 (N.D. Cal. Oct. 27, 2021) ............................................................7

*In re 3M Combat Arms Litig.*,
    338 F.R.D. 167 (N.D. Fla. 2021) .............................................................................16

*In re NNN 400 Capitol Ctr. 16 LLC*,
    632 B.R. 243 (D. Del. 2021) ...................................................................................16

*Int'l Bus. Machines Corp. v. Zynga Inc.*,
    2024 WL 3993290 (D. Del. Aug. 29, 2024) ..............................................7, 8, 19, 20

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) ..............................................................................22

*Interdigital Commc'ns Inc. v. Nokia Corp.*,
    2014 WL 8104167 (D. Del. Sept. 19, 2014) ........................................................7, 10

*Inventio AG v. Thyssenkrupp Elevator Corp.*,
    2014 WL 554853 (D. Del. Feb. 6, 2014) .................................................................23

*Kirk v. Raymark Indus., Inc.*,
    61 F.3d 147 (3d Cir. 1995) ................................................................................15, 17

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ...............................................................................................20

*Lab'y Corp. of Am. Holdings v. Natera, Inc.*,
    2025 WL 2467548 (D. Del. Aug. 27, 2025) .........................................................15, 17

*Leonard v. Stemtech Health Scis., Inc.*,
    981 F. Supp. 2d 273 (D. Del. 2013) .........................................................................3

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    2019 WL 2775515 (D. Del. July 2, 2019) ...............................................................23

*LoganTree LP v. Fossil Grp., Inc.*,
    2024 WL 5333640 (D. Del. Dec. 19, 2024) .............................................................12

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................................9

*Medtronic, Inc. v. Adonics Modulation Techs.*,
    2024 WL 3550482 (C.D. Cal. July 18, 2024) ..........................................................23

*Mendenhall v. Cedarapids, Inc.*,
  5 F.3d 1557 (Fed. Cir. 1993)................................................................12

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
  559 F.2d 894 (3d Cir. 1997).................................................................17

*MicroVention, Inc. v. Balt USA, LLC*,
  2022 WL 18284997 (C.D. Cal. Dec. 12, 2022) ......................................6

*Novozymes A/S v. Genencor Int'l, Inc.*,
  2006 WL 318936 (D. Del. Feb. 10, 2006) .............................................15

*Ochoa v. Cty. of Kern*,
  628 F. Supp. 3d 1006 (E.D. Cal. 2022)..................................................4

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
  2006 WL 3041102 (D.N.J. Oct. 26, 2006)....................................13, 14, 15, 16, 17

*PharmaStem Therapeutics v. Viacell*,
  2003 WL 22387038 (D. Del. Oct. 7, 2003) ...........................................18

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n*,
  520 F.3d 109 (2d Cir. 2008)..................................................................19

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)..............................................................19

*Shanklin v. Norfolk S. Ry. Co.*,
  369 F.3d 978 (6th Cir. 2004) ...............................................................15

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011).............................................................24

*Tisa v. Beasley FM Acqu. Corp.*,
  343 F. App'x 793 (3d Cir. 2009) ..........................................................16

*TVIIM, LLC v. McAfee, Inc.*,
  2015 WL 4448022 (N.D. Cal. July 19, 2015).........................................23

*United States v. Cross*,
  308 F.3d 308 (3d Cir. 2002)..................................................................5

*United States v. Finley*,
  726 F.3d 483 (3d Cir. 2013)...............................................................9, 20

*United States v. Sims*,
  2022 WL 17088478 (11th Cir. Nov. 21, 2022).....................................1, 5

*United States v. Wright*,
    534 F. Supp. 3d 384 (M.D. Pa. 2021) ...........................................................................5

*Vectura Ltd. v. GlaxoSmithKline LLC*,
    397 F. Supp. 3d 579 (D. Del. 2019)........................................................................23, 24

*Willis Elec. Co. v. Polygroup Ltd.*,
    2024 WL 118443 (D. Minn. Jan. 9, 2024).............................................................6, 7, 8

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
    2024 WL 4216057 (D. Del. Feb. 7, 2024) ...................................................................10

*Wis. Alumni Rsch. Found. v. Apple, Inc.*,
    135 F. Supp. 3d 865 (W.D. Wis. 2015) ........................................................................14

*Wonderland Switzerland AG v. Evenflo, Co.*,
    2023 U.S. Dist. LEXIS 155276 (D. Del. Jul. 3, 2023) ..................................................5

The Federal Rules are not a license to speak from both sides of the mouth. Moderna moves *in limine* for such license, requesting permission to stake positions at trial that are contrary to positions it has taken before, with impunity. The Court should deny that request.

## I.    The Court Should Deny Moderna's MIL #1 (Moderna's MC3 Email)

The "fib a bit" email Moderna seeks to exclude certainly is damaging to its case. But that does not justify exclusion. *United States v. Sims*, 2022 WL 17088478, at *4 (11th Cir. Nov. 21, 2022). The email is admissible because it is highly relevant to Moderna's willful infringement and apportionment. Moderna's disagreement (at 3-5) rests on false premises. *Contra* Moderna, the email does not just concern a cationic lipid divorced from Plaintiffs' patented technology. For years, Moderna used "MC3" as shorthand for Plaintiffs' patented 1.5:50 LNP *formulation*—what Moderna called its "standard" LNP formulation that it admits infringes the asserted claims. Ex B (Mitchell Rep.) ¶¶ 220, 820; Ex BL (Prud'homme Reb.) ¶ 271. Moderna's efforts to conceal its use of that infringing formulation are crucial evidence for willfulness and apportionment. And even were the email limited to the MC3 cationic lipid, as Moderna argues, it still shows that Moderna concealed its use of Plaintiffs' patented technology, and is relevant to rebut Moderna's damages argument that its cationic lipid, SM-102, vastly improved on MC3. Separately, the Rules of Evidence permit use of the email for impeachment. Moderna's motion should be denied.

### A.    Background

Moderna built its entire mRNA-LNP platform by copying a target molar ratio of 1.5% conjugated lipid, 50% cationic lipid, 10% phospholipid, and 38.5% cholesterol (often called the "1.5:50" formulation), which indisputably uses the Lipid Composition Patents' claimed particles. Ex B (Mitchell Rep.) ¶ 824; Ex BL (Prud'homme Reb.) ¶ 271. MC3, a cationic lipid that Moderna referred to as a "Tekmira compound[]," Ex BM at -752, emerged from a collaboration between Plaintiffs' predecessor Tekmira and AlCana (now Acuitas) and is protected by one of Plaintiffs'

1

patents, Ex E ¶¶ 239-244.  MC3 was Moderna's cationic lipid of choice for many of its pre-Covid studies involving the 1.5:50 target formulation, Ex B (Mitchell Rep.) § IX.A.  For example, a 2019 Moderna presentation cited data from its influenza (Bahl 2017), Zika (Richner 2017), and CMV (John 2018) studies—all of which use the MC3 1.5:50 LNP formulation, Ex B (Mitchell Rep.) ¶¶ 246, 253-255, 263, 269—and described that "mRNA vaccines using *MC3 LNPs* are potent across multiple species and different vaccine targets," Ex BN at -488, -501.

Moderna frequently used the shorthand "MC3" to refer to the MC3 1.5:50 LNP formulation (not just the MC3 cationic lipid itself), as confirmed in its internal "LNP Cheat Sheet" that lists Moderna's common LNP formulations.  Ex BO ("LNP Cheat Sheet") at -077; *see also* Ex BP at -1982, -1983, -2030, -2031 (2015 presentation referring to 1.5:50 MC3 LNP as just "MC3"); Ex BQ at -691 (2018 presentation referring to LNPs as "MC3").  Moderna's Chief Business Officer also testified that he used the shorthand "MC3" to refer to *an LNP* comprising the cationic lipid MC3, not just the lipid itself.  Ex BR (Francis Dep. Tr.) 100:5-101:1, 105:5-17.

Moderna repeatedly hid references to MC3, including in reference to the LNP formulation as a whole.  In a March 2019 email, Dr. Stephen Hoge (Moderna's President) asked Dr. Benenato to remove reference to "MC3" and replace it with "Control," which he viewed as preferable to "legacy LNP."  Ex BS at -645.  And, in an April 2021 email exchange that includes Dr. Benenato, a Moderna employee instructs a colleague to "replace MC3" in a slide deck "with *Legacy LNP* or *Control LNP*."  Ex BT at -486.  Dr. Miracco (a current Director at Moderna) reiterated the sentiment, stating, "we scrub any mention of [MC3] from everything."  *Id.* at -485.

This backdrop informs Benenato's email encouraging her colleague to "fib a bit" and "take out the mc3 part of the story," because Dr. Hoge "d[id] not want to see ... [Moderna] 'learning' from mc3."  Ex A.  The document itself and Moderna's history of removing references to MC3 as

an LNP formulation belie its current mischaracterization of the email and slide deck as "solely focus[ing] on ... cationic lipids with no mention of ratios or formulations." Memo 2-3. For example, a revised slide attached to the "fib a bit" email, Ex F at -940 (revised slides), Ex BU at -932 (original slides), replaces "MC3" with "legacy" and presents data comparing protein expression from delivery of mRNA-LNPs versus "*LNP* pK$_a$" to identify which LNPs "appear[] optimal for mRNA delivery." "MC3" was replaced as a formulation, not a lipid. That the edited attachment still refers to the *MC3 cationic lipid* by name and chemical structure reinforces that, in the challenged email and other documents discussed herein, Moderna was trying to "fib" about its use of the infringing *MC3 LNP formulation* (the 1.5:50 LNP formulation with MC3), not just its use of the MC3 lipid. *Contra* Memo 2.

### B. Argument

The Court should reject Moderna's invitation to resolve what, at most, is a factual dispute about the interpretation of a probative piece of evidence. *Elm Cooper, LLC v. Modular Steel Sys., Inc.*, 2020 WL 905532, at *6 (M.D. Pa. Feb. 25, 2020) ("[A] motion *in limine* is not the appropriate procedural vehicle ... to resolve factual disputes.") Moderna has failed to carry its burden of demonstrating that the "fib a bit" email "is clearly inadmissible on all potential grounds," regardless of whether the email refers to the MC3 lipid, the MC3 1.5:50 LNP formulation, or both. *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

Moderna's use of the 1.5:50 formulation—specifically the MC3-based 1.5:50 formulation—and Benenato's desire to "fib a bit" about that story are central to Plaintiffs' willfulness case. Moderna does not dispute that its use of the 1.5:50 formulation is relevant but moves to exclude the "fib a bit" email on the ground that its subject matter is cabined to the cationic

lipid MC3 itself.[2]  As explained above, that is wrong.  Indeed, the very presentation Dr. Benenato instructed her colleague to edit reveals the broader meaning.  *See* Ex F at -940 (revised slides), Ex BU at -932 (original slides).  At the very least, a reasonable jury could find that the email shows that Moderna did not want to acknowledge the role Plaintiffs' patented lipid formulations played in Moderna's product development.  Moderna's motion thus constitutes an improper request for the Court to resolve a factual dispute.  The Court should not usurp the jury's fact-finding role where, at most, the parties have offered competing interpretations of probative evidence.  *Ochoa v. Cty. of Kern*, 628 F. Supp. 3d 1006, 1010 (E.D. Cal. 2022) ("A motion in limine should not be used to resolve factual disputes or weigh evidence.").

Even under Moderna's misreading, the email is still relevant and admissible.  It is admissible evidence of the untruthfulness of a witness on Moderna's witness list.  Fed. R. Evid. 608(b); *Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir. 1980) (admitting extrinsic evidence used to impeach author of the evidence).  And it is evidence of Moderna's larger effort to hide and sanitize its copying of Plaintiffs' patented technology—including both the 1.5:50 LNP formulation and the MC3 cationic lipid—which is an effort that Moderna will continue to pursue at trial.  For example, Moderna intends to argue that its cationic lipid, SM-102, displaced MC3 and contributed substantially to the efficacy of its Covid-19 vaccine.  Ex BL (Prud'homme Rep.) § VIII.A.5; Ex CA (Moderna's 17th Supp. Interrogatory Resp.) at 155-156.  Dr. Prud'homme dedicates an entire section of his report to arguing that SM-102 is very different from, and superior to, other cationic lipids like MC3.  Ex BL (Prud'homme Rep.) § VIII.A.5.  His opinions heavily rely on testimony and evidence from Benenato, who invented SM-102, including her statement that "MC3 is not part

---

[2] Moderna notes that "MC3 is neither specifically claimed nor even disclosed in" the asserted patents.  Memo 1.  But the claims reciting a "cationic lipid" are not limited to specific cationic lipids and thus include MC3 and Moderna's SM-102 in the recited molar ratios.

of the story of how SM-102 was discovered." *E.g.*, *id.* ¶ 188.  The email Moderna seeks to exclude—*under Moderna's own reading*—reveals that Benenato is "fib[bing]" about that very subject.  Moderna's damages expert relies on these opinions from Dr. Prud'homme for his apportionment and damages opinions.  Ex BJ (Vellturo) ¶¶ 317, 322.  In connection with these disputed arguments, both parties' experts cite a paper regarding MC3 called "Maier 2013."  *E.g.*, Ex BL (Prud'homme Reb.) ¶¶ 197-198; Ex B (Mitchell Rep.) ¶ 286.  Notably, Benenato's requested slide deck revision, *compare* Ex BU at -933 *with* Ex BV at -950, removed the reference to Maier 2013, including the role this reference played in the development of Moderna's lipids. The "fib a bit" email is thus crucial evidence that undermines Moderna's attempts at trial to minimize the importance of MC3 and bolster SM-102 as wholly unrelated and distinct, including through Dr. Prud'homme, and to apportion damages aggressively.

"[A]ll relevant evidence is inherently prejudicial."  *Sims*, 2022 WL 17088478, at *4.  That truism has particular force when considering evidence of willfulness, which, by definition, is used to show deliberate or intentional infringement.  But only ***unfair*** prejudice, substantially outweighing probative value, permits exclusion under Rule 403.  And even then, "when evidence is highly probative, ... a large risk of unfair prejudice may be tolerable."  *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).  As explained above, Benenato's email is highly and uniquely relevant to a number of issues in this case and Moderna's trial narrative.  Moderna's spin on the email is misleading and not a basis for exclusion, under Rule 403 or otherwise.  Because Moderna's argument is built on its false premise about what the email means and its relevance, Moderna's cited cases (at 5) are inapposite.  *United States v. Wright*, 534 F. Supp. 3d 384, 392 (M.D. Pa. 2021) (concern of introducing "minitrials on wholly collateral matters"); *Wonderland Switzerland AG v. Evenflo, Co.*, 2023 U.S. Dist. LEXIS 155276, at *21 (D. Del. Jul. 3, 2023) (excluding email

5

that "involve[d] companies and products that [were] unrelated to the litigation"). The email is anything but collateral. It is highly relevant to willful infringement and apportionment and sheds light on Benenato's credibility, so any prejudice is fair. Moderna's motion should be denied.

## II. The Court Should Deny Moderna's MIL #2 (IPRs Against the Asserted Patents)

Courts routinely hold that evidence of a concluded IPR rejecting an accused infringer's challenges to an asserted patent is relevant to proving willfulness, damages, and validity. Moderna's cases are not to the contrary. They merely concern decisions denying IPR *institution*, not final adjudications of validity challenges. Rules 401, 402, and 403 do not compel exclusion.

### A. Evidence of the '435 IPR is relevant and should not be excluded.

Evidence of Moderna's '435 IPR, which upheld the patentability of claims asserted against Moderna here, is relevant to numerous issues in dispute and not unfairly prejudicial.

First, the '435 IPR is relevant to both willfulness and damages. *Contra* Memo 8-10. The Board's rejection of Moderna's arguments in its Final Written Decision is clear evidence rebutting any contention from Moderna that it had a subjective belief of invalidity. Ex V; *see MicroVention, Inc. v. Balt USA, LLC*, 2022 WL 18284997, at *9 (C.D. Cal. Dec. 12, 2022) ("The IPR petition is plainly relevant to willfulness."). Moderna's effort to invalidate the patent was rejected by the PTAB in 2019, Ex V, and by the Federal Circuit in 2021, Ex W. Thus, by the agreed-upon date of first infringement (May 31, 2020), Moderna's challenges to the '435 patent had already been rebuffed by the PTAB. Thus, courts routinely hold that evidence of the outcomes of such decisions is relevant and admissible to the lack of a good-faith basis for invalidity in the face of continued infringing activity, like Moderna's. *See Contour IP Holding LLC v. GoPro Inc.*, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021); *Willis Elec. Co. v. Polygroup Ltd.*, 2024 WL 118443, at *10 (D. Minn. Jan. 9, 2024). Indeed, as ***Moderna's*** cited case explains in ***denying*** a motion to exclude:

the strength of the Asserted Patents would be relevant to what Cisco would have

> considered during its hypothetical negotiations with Finjan—and is therefore relevant to ***damages***.  The Court is also persuaded that the strength of the Asserted Patents is relevant to Cisco's good faith belief as to the validity of the Asserted Patents—and is therefore relevant to ***willfulness***.

*Finjan, Inc. v. Cisco Sys.*, 2020 WL 13180008, at *10 (N.D. Cal. June 5, 2020) (cited at Memo 9);

*see also Finjan, Inc. v. SonicWall*, No. 17-CV-04467, D.I. 477 at *23 (N.D. Cal. May 21, 2021).

Second, the IPR is also relevant to Moderna's invalidity defenses.  Moderna asserts much of the same prior art here that it asserted in the '435 IPR, and there is substantial overlap in its obviousness arguments in both forums.  *See* D.I. 519 at 10-16.  "Because overlap in prior art references 'provides a legally meaningful basis for the jury to weigh against' an invalidity case, there is special relevance for the introduction of" Moderna's IPRs here.  *Int'l Bus. Machines Corp. v. Zynga Inc.*, 2024 WL 3993290, at *3 (D. Del. Aug. 29, 2024) (citing *Willis Elec.*, 2024 WL 118443, at *9-11).  Crucially, and independent of its obviousness assertion, Moderna also raises arguments about the '435 patent specification that were rejected during the '435 IPR.  *Compare* Ex BW at 4-5 (asserting "lack of written description for 'a nucleic acid'" as invalidity theory for trial), *with* Ex V at 46 ("We find Patent Owner's examples of written description support for the nucleic acid limitation, especially as set forth in the Specification of the '435 patent, sufficient.").

Moderna's desire to wipe the slate clean of already rejected arguments is understandable, but Rule 403 provides no basis to do so, as various courts have held with respect to the admissibility of IPR final written decisions.  *See Illumina, Inc. v. BGI Genomics Co., Ltd.*, 2021 WL 4979799, at *9 (N.D. Cal. Oct. 27, 2021); *Willis Elec.*, 2024 WL 118443, at *9-11.  Moderna has no support for its contrary position; ***every case Moderna cites concerns admission of evidence about a decision denying institution of an IPR.*** Memo 9 (citing *Finjan*, 2020 WL 13180008, at *9); *id.* at 10 (citing *See Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016); *Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 8104167, at *1 (D. Del. Sept. 19,

2014)).  But a decision denying institution of an IPR is a far cry from the Final Written Decision that fully adjudicated, and rejected unanimously, Moderna's invalidity challenge to the currently asserted claims of the '435 patent—a conclusion not disturbed in Moderna's dismissed appeal.

**B.    Evidence of the '069 IPR is relevant and should not be excluded.**

Evidence of Moderna's '069 IPR is likewise relevant and not unfairly prejudicial or confusing to the jury.  While Plaintiffs are not currently asserting this patent for trial as a result of the Court's case narrowing order, the '069 patent was the first patent to issue in the family of Lipid Composition patents, and Plaintiffs continue to assert three other patents from that family (the '435, '359, and '378 patents) that share identical specifications.  D.I. 691-1 ¶ 23.  During the '069 IPR, the PTAB and Federal Circuit rejected the exact obviousness arguments Moderna raises against the '435 patent: (1) that it was "routine" to optimize the lipid components and amounts in LNPs based on the prior art, and (2) that the prior art taught a range of phospholipid that overlaps with the claimed ranges.  *E.g.*, Ex M at 13-19 (no "overlapping [phospholipid] range is actually taught by the prior art" and any "presumption of obviousness" did not apply); Ex L at 21-37 ('189 does not "explicitly disclose[] a phospholipid range").  Undeterred by these precedential rejections, Moderna now raises those exact same arguments against the remaining patents from the family.  *E.g.*, Ex BX (Anderson Rep.) ¶¶ 619, 722, 823, 967.  Issue preclusion forecloses these arguments entirely.  D.I. 519 at 10-18 (Plaintiffs' Motion for Summary Judgment).  But even absent preclusion, this "overlap in prior art references" and obviousness arguments provides a strong basis for admissibility.  *Zynga*, 2024 WL 3993290, at *3; *Willis Elec.*, 2024 WL 118443, at *9-11.

The '069 IPR is also relevant to damages.  *Contra* Memo 6-7.  Moderna takes aim at Plaintiffs' damages expert, Catharine Lawton, who opines that Moderna's IPRs caused an "overhang" that depressed the royalty rates that counterparties were willing to pay to license Plaintiffs' technology.  Ex C ¶¶ 209, 374.  She explains that Moderna's years-long IPR campaign

and ensuing appeals from those IPRs cast doubt on the validity of Plaintiffs' patent portfolio while the IPRs were pending. *Id.*; Ex BY (Lawton Reply) ¶ 19. Her opinion is supported by both record evidence and common sense. And it flows directly from the assumption of the hypothetical negotiation that the patent is valid and infringed. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Explaining the basis for the "IPR overhang" necessarily involves explaining Moderna's IPR challenges, including the '069 IPR.

The '069 IPR is relevant to willfulness as well. Moderna argues otherwise because it admits it was aware of the '069 patent, but contends that knowledge of this parent patent is not sufficient to establish knowledge of the '435, '378, and '359 patents in the same family. Memo 6 (collecting cases). But these cases simply state that knowledge of parent patent is not ***sufficient*** to establish knowledge of a separate asserted patent, not that it is wholly ***irrelevant*** to the inquiry. And Plaintiffs are "entitled to prove [their] case free from [Moderna's] preference to stipulate the evidence away." *United States v. Finley*, 726 F.3d 483, 492 (3d Cir. 2013).

Moderna's failed '069 IPR also shows Moderna did not have a subjective belief of invalidity with respect to other patents in the '069 family. The PTAB rejected every challenge Moderna brought against the '069 patent. Ex L. The Federal Circuit then rejected every one of Moderna's challenges, affirming the Board's patentability determination. Ex M. And on appeal— wherein which Moderna argued to the Federal Circuit that many of the arguments made against the '069 patent were also advanced against the '435 patent. Ex BZ at 10-12. This uniform rejection, at every stage, of Moderna's arguments that it again raises against the trial patents is probative of Moderna's subjective belief that the asserted patents were invalid. *See EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 526 n.19 (D.N.J. 2020) ("[R]epeated failures to invalidate the patents are probative as to willfulness."). Moderna's effort to pretend

that the result of the '069 proceedings somehow does not affect its arguments as to the trial patents defies the record, its own prior representations, and controlling authority.

Again, Moderna's cases (at 7) are inapposite, because they all involve **denials of IPR institution**, not IPRs that resulted in a final written decision, let alone a Federal Circuit affirmance. *See Finjan*, 2016 WL 4560071, at *14; *see also Interdigital*, 2014 WL 8104167, at *1. As Judge Andrews explained in Moderna's cited case: "I do not agree that [denial of institution] is a decision on the merits, any more so than a grant of an IPR is a decision on the merits. It is akin to a ruling on a preliminary injunction, where the merits are assessed with less than a full adversarial proceeding." *Interdigital*, 2014 WL 8104167, at *1. While evidence of interlocutory institution decisions may raise certain concerns under Rule 403—requiring explanation of the nature of the proceedings—evidence from the '069 IPR raises none of those same concerns.

Finally, even were the Court to exclude evidence **about** the '069 IPR (it should not), the Court should still permit evidence **from** the '069 IPR and its appeal. Moderna made statements and admissions during those proceedings that are independently relevant to this case. For example, during the '069 IPR appeal, Moderna asserted that its clinical trial and commercial versions of its vaccine contain the same "lipid carrier particle"; a fact that directly rebuts its contention in this case that it avoided infringement by making minor adjustments to its formulation. Ex CB ¶ 4. That these statements were made during the '069 IPR does not change that they are relevant, admissible statements of a party opponent. Indeed, as statements made during a proceeding against Plaintiffs' patents, these statements are even more relevant. *Cf. Wirtgen Am., Inc. v. Caterpillar, Inc.*, 2024 WL 4216057, at *4 (D. Del. Feb. 7, 2024) (denying motion to "prevent the jurors from learning that a specific piece of evidence came from ITC proceedings").

Moderna finally attempts to muddy the water by referring to Plaintiffs' motion to exclude

references to a recent European Patent Office ("EPO") proceeding.  Evidence of the EPO proceeding is readily distinguishable.  The EPO decision concerned an "added matter" restriction, unrecognized in U.S. law, Ex N; the IPRs concerned the same obviousness and written description challenges Moderna runs here, *see supra*.  The EPO decision is subject to reconsideration from a full appeal board, Ex N; the IPRs reached Final Written Decisions and published Federal Circuit decisions years ago.  Exs L, M, V, W.  The EPO decision applies different burdens of proof and foreign procedures that require explanation, *Edwards Lifesciences LLC v. Medtronic CoreValve LLC*, 2014 WL 12927825, at *1 (D. Del. Jan. 2, 2014); the IPRs would not require explanation of a different standard of proof, as Moderna bears a *higher* burden on invalidity here, *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016).  The EPO decision concerned foreign patents that are not asserted here, Ex N; Moderna's failed IPRs concerned the specific patents and claims asserted in this litigation.  Exclusion of the EPO proceedings thus does not compel exclusion of U.S. IPR proceedings directly relevant to the claims asserted against Moderna in this case.

## III.    The Court Should Deny Moderna's MIL #3 (Related Disputes and Litigations)

The facts surrounding the development of Moderna's Covid-19 vaccine have also been at issue in other cases, and in those cases, Moderna has taken positions on a host of issues relevant in this case.  By its Motion, Moderna seeks dispensation to erase its prior positions and contradict them before the jury here.  Moderna itself injected issues from those other disputes into this case, including by relying for apportionment on the three patents at issue in the *Moderna v. Pfizer* case (and its related IPRs), Ex BK (Meulien Rep.) ¶¶ 56-71, 85-89, as well as relying on the technology Moderna licensed from NIAID (a division of NIH), which was negotiated as a settlement of the NIH inventorship dispute, Ex BJ (Vellturo Rep.) ¶ 203.

Pursuing license to shift its positions with impunity to suit its litigation needs, Moderna seeks to prevent the jury from hearing all the facts about Moderna's development work and urges

a broad rule excluding all evidence from other litigations, relying on a single *in limine* decision addressing the use of prior proceeding evidence.  Memo 10 (citing *Johns Hopkins*, 2018 WL 4178159).  Moderna incorrectly suggests that this case stands for the proposition that evidence from a prior proceeding is entirely inadmissible, other than in connection with a witness that testified in both proceedings.  *Id*  That is not the law.  Evidence from other proceedings is neither "*per se* admissible or excludable;" instead, as with all evidence, courts "must look at particular issues and at the particular evidence proffered" to decide admissibility.  *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1573 (Fed. Cir. 1993); *see also LoganTree LP v. Fossil Grp., Inc.*, 2024 WL 5333640, at *2 (D. Del. Dec. 19, 2024) (evidence from "earlier lawsuits ... could be relevant to issues like invalidity, knowledge, or damages").  In the circumstances of this case, the evidence Moderna seeks to exclude is both relevant and not unfairly prejudicial.  Moderna's assortment of other evidentiary objections are meritless, and its motion should be denied.

### A.    The relevance of the evidence from other proceedings far outweighs any risk of unfair prejudice or confusion.

Moderna's primary arguments are that the evidence is irrelevant and unfairly prejudicial.  Neither is true.  The overlapping factual background of the other proceedings means they involve evidence directly relevant to multiple issues in this case.  For example, evidence produced from the *Moderna v. Pfizer* litigation, and its related IPR is relevant to the following issues:

*Validity*.  Moderna's witnesses contradicted many of Moderna's § 112 arguments about differences between siRNA and mRNA, such as testifying that Moderna "use[d] the same LNPs with the mRNA that had been used with the siRNA."  Ex. CC 201:15-18; Ex CG 154:15-21.

*Willfulness*.  Moderna scientist Sunny Himansu testified that Moderna used "a cationic lipid, non-cationic lipid, PEG lipid and structural lipid in the ratio of 50 to 10 to 1.5 to 38.5"—i.e., a ratio claimed by Plaintiffs' patents—as its "standard LNP."  Ex CC 200:15-201:20, 203:6-23.

***Apportionment***.  Moderna relies on all three patents asserted in the *Pfizer* case as evidence of apportionment here.  Ex BK (Meulien Rep.) ¶¶ 56-71, 85-89.  The related IPR proceeding concerning two of those patents by Pfizer is thus directly relevant to rebutting that position.  Remarkably, Moderna says these IPRs should be excluded because "no expert in this case argued that those patents were invalid," Memo 13, while failing to note that ***the PTAB itself found two of the patents invalid as obvious***, and Plaintiffs' experts rely on that decision, Ex BY ¶ 491; Ex CD ¶ 19.  Moderna should not be allowed to tout its own patents as evidence of its own contributions, but shield from the jury evidence demonstrating that some of these patents were invalid.

There is other evidence from the *Pfizer* litigation rebutting Moderna's apportionment theories, like documents and deposition testimony from Moderna scientists who developed the accused product explaining that "[w]ithout lipid nanoparticle formulation, it's highly likely that the mRNA vaccines wouldn't work," Ex CE (de Fougerolles Tr.) 65:24-66:6, and that the LNP is one of the "critical factors for success," Ex CF (Zaks email).  Moderna asserts the opposite here.  *E.g.*, Ex BK (Meulien Rep.) ¶ 10 (opining that the mRNA contributes more than the LNP).

***Moderna's licensing practices***.  Moderna's experts in the *Pfizer* case offer opinions on licensing practices that directly contradicts Moderna's critiques of Plaintiffs' damages theory here, including opining that "early stage technologies ... typically have lower royalty rates than licenses entered just prior to or following commercialization," Ex Z (Malackowski Rep.) at 145, and that in the absence of alternatives to a patent, "the licensee might be required to agree to a profit share in order to 'win the deal,'" Ex AA (Brazier Rep.) ¶ 80.  There is also evidence directly rebutting Dr. Vellturo's criticisms of Ms. Lawton for relying on Moderna collaboration agreements with Merck and AstraZeneca.  While Dr. Vellturo opines that such agreements are not comparable because they "do not include COVID-19," Ex BJ ¶ 455, and because they "codify longer term, co-

13

development plans," *id.* ¶ 496, Moderna's damages expert previously relied on the very same agreements for a bare patent license in connection with a Covid-19 vaccine, Ex Z at 163. The suggestion that Plaintiffs should not be able to point out the inconsistency of these positions because it would allegedly require a broader discussion of the *Pfizer* case is nothing more than pretext to condone Moderna's desire to talk out of both sides of its mouth.

*NIH Dispute.* Finally, the NIH dispute is likewise relevant because Moderna put it at issue for damages. Moderna disclosed opinions from Drs. Vellturo and Meulien that "the NIAID Technology is more important in relation to the provision of therapeutic benefits by the Accused Product than the Claimed Inventions." Ex BJ ¶ 203; Ex BK ¶ 9. In response, Plaintiffs must be able to offer evidence of the broader context of Moderna's dispute and eventual settlement with NIH, which included issues beyond the 2016 modification. Ex CH (NIAID–Moderna Agenda).

The evidence from these proceedings is not only admissible because of its relevance to the issues in dispute, but also because it demonstrates Moderna's inconsistent positions. "[A] statement made by [a party] in connection with other litigation that is adverse to, or inconsistent with, its position in this case ... is admissible as evidence against" that party. *Fid. & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 777 (3d Cir. 1981). Thus, the opinions of Moderna's experts in these other proceedings can be used to "bolster [Plaintiffs' experts'] credibility and mitigate any argument by [Moderna] that [their] methods are unreliable," as well as to critique the reliability and credibility of Moderna's positions in this case. *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 794328, at *12 (N.D. Cal. Feb. 25, 2014) (admitting expert evidence from prior case); *Wis. Alumni Rsch. Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 881 (W.D. Wis. 2015) (same).

The cases Moderna cites, Memo 13-14, do not suggest otherwise. They stand only for the

proposition that courts *can* exclude evidence from prior proceedings where "the probative value is substantially outweighed" by the risk of confusion or unfair prejudice. But those cases did not involve evidence as relevant to the issues in the case as the evidence here. Because Plaintiffs' evidence goes directly to the core disputed issues in this case—including issues raised by Moderna, like apportionment—such evidence would not create a "detour" into unrelated disputes, Memo 14.

Finally, the broad exclusion Moderna seeks ignores the critical line between evidence *of* the prior litigation and evidence *from* the prior litigation. The latter may still be used at trial even when the former is excluded. *Lab'y Corp. of Am. Holdings v. Natera, Inc.*, 2025 WL 2467548, at *5 (D. Del. Aug. 27, 2025). If the Court allows evidence from these proceedings, the parties could agree on how to reference the other proceedings during trial to minimize any prejudice. *See id.*

### B.    Depositions of current and former Moderna employees are admissible.

In attempting to exclude testimony from the *Pfizer* case so it can take inconsistent positions here, Moderna ignores the plain text of Rule 32(a)(8): "deposition previously taken *may also* be used as allowed by the Federal Rules of Evidence." Thus, while Rule 32(a)(8)'s same subject and parties requirement is an independent exception to the hearsay rule, *Novozymes A/S v. Genencor Int'l, Inc.*, 2006 WL 318936, at *1 (D. Del. Feb. 10, 2006), deposition testimony may also be admitted where it "compl[ies] with the rules of evidence, either as an admission of a party-opponent under Federal Rule of Evidence 801, or as an exception to the hearsay rule under Rule 804," *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 990 (6th Cir. 2004); *see Clay v. Buzas*, 208 F.R.D. 636, 637 (D. Utah 2002). Indeed, the Third Circuit took this approach when deciding the admissibility of testimony from a prior case in *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995)—it first evaluated whether the testimony was non-hearsay under Rule 801(d)(2), and after concluding that the testimony did not qualify for that rule, the Court "next inquire[d] whether it falls within any of the hearsay exceptions enumerated in the Federal Rules of Evidence."

The *Pfizer* depositions are all admissible following this approach. All but three of the witnesses were Moderna employees or 30(b)(6) designees (or both) during their depositions.[3] Their testimony thus constitutes admissible statements by an opposing party. Fed. R. Evid 801(d)(2)(C)-(D); *In re 3M Combat Arms Litig.*, 338 F.R.D. 167, 171-72 (N.D. Fla. 2021) (admitting prior deposition testimony of employees and 30(b)(6) designees as opposing party statements). One of the three other witnesses, Dr. Stewart-Jones, was a Moderna consultant, who spent the "vast majority" of his time—roughly 2,000 hours/year—working for Moderna. Ex AF 124:15-125:18. As an "agent independent contractor," testimony about his work at Moderna satisfies Rule 801(d)(2). *Tisa v. Beasley FM Acqu. Corp.*, 343 F. App'x 793, 798 (3d Cir. 2009).

The testimony of the final two witnesses, Drs. Zaks and Benenato, is admissible as former testimony under Rule 804(b)(1), as Moderna was present at their depositions and had "an opportunity and similar motive to develop" their testimony. In addition to the "same motive ... to ensure that [Zaks] and [Benenato's] testimony was truthful," *In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. 243, 270 (D. Del. 2021), Moderna had a similar motive because the same "key factual issues" were the focus of the prior testimony. *In re 3M*, 338 F.R.D. at 171 (finding similar motive based on overlapping facts). Moderna had every incentive to present truthful testimony about a key factual commonality that both witnesses testified to—the development of its Covid-19 vaccine. For example, Dr. Zaks testified about Moderna's confidence in its Covid-19 vaccine in the spring of 2020, based on its clinical track record (which Plaintiffs will show used their patents). Ex CI 73:1-10. And Dr. Benenato testified about its LNP development, including its use of "legacy

---

[3] <u>Employee and designee</u>: Bennett (Ex CI 11:18-21; 20:11-17); Carfi (Ex CJ 8:21; 13:15-18); Francis (Ex CK 7:25-8:3; 9:12-15); Hassett (Ex CL 10:4-18); Himansu (Ex CC 8:20-22; 10:13-17 40:4-15); Hoge (Ex CM 13:21-14:4; 23:21-24:2); Parsons (Ex CN 10:9-20; 146:11-147:5). <u>Designee</u>: Ciaramella (Ex CG 36:4-7); de Fougerolles (Ex CE 12:13-16).

LNPs" like MC3 and "siRNA precedents."  Ex CJ 101:15-102:3; 106:3-17.

Finally, this deposition testimony is not barred by the failure to list some of the witnesses on Plaintiffs' initial disclosures.  Initial disclosures need not be amended where the identity of the witnesses have "otherwise been made known" during discovery.  *Holley v. Port Auth. of N.Y.*, 2018 WL 11413338, at *2 (D.N.J. May 3, 2018).  There can be no doubt Moderna was made aware of these witnesses—the transcripts were the subject of a motion to compel, they were cited extensively in Plaintiffs' expert reports and summary judgment briefing, and the witnesses were identified in Plaintiffs' November 2025 witness list.  Given Moderna's longstanding notice, any failure to disclose is harmless and thus cannot justify the "extreme sanction" of exclusion.  *Battle Born Muni. Inc. v. Dick's Sporting Goods, Inc.*, 2021 WL 3810177, at *6 (W.D. Pa. Aug. 26, 2021) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1997)).

### C. Moderna's expert reports are admissible as adoptive admissions and under Rule 703.

The expert reports from the *Pfizer* case Plaintiffs seek to use were the reports Moderna chose to submit to reflect the "opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  While an expert is not an agent for purposes of live testimony, *see Kirk*, 61 F.3d at 164, a party's decision to disclose a report or declaration still qualifies as an adoptive admission under Rule 801(d)(2)(B), and thus is not hearsay.  *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 2006 WL 3041102, at *5 n.6 (D.N.J. Oct. 26, 2006).  Moreover, unlike in *Natera*, Memo 16, the reports in the *Pfizer* case were expressly relied upon by Plaintiffs' experts.  *E.g.,* Ex C (Lawton Rep.) ¶ 319; Ex BY (Lawton Reply) ¶¶ 261-265; Ex CD (Porter Rep.) ¶ 58.  Plaintiffs' experts may thus offer testimony about these reports pursuant to Rule 703.  *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 2018 WL 6629705, at *1 (D. Del. Oct. 12, 2018).

## IV.    The Court Should Deny Moderna's MIL # 4 (Rule 408 Material)

Moderna's motion sweeps too broadly and would exclude probative, non-prejudicial evidence not barred under Rule 408.    Plaintiffs seek to introduce narrowly tailored communications for permissible, non-Rule 408 purposes to: (1) show that Plaintiffs requested samples pre-suit; (2) rebut a misleading argument that Plaintiffs focused on lipid inputs when filing suit, not outputs determined via expert testing; and (3) show that Moderna rejected a license to Plaintiffs' patents (without discussing the terms of that license).    These fall within Rule 408's "another purpose" carveout and thus are admissible.

Moderna adopts an overly broad reading of Rule 408 to argue that "offers to license ... made during settlement negotiations related to the same accused infringement at issue in this case are inadmissible."  Memo 18.  Whether Rule 408's "another purpose" exception applies is a fact-specific inquiry, and the limited purposes for which Plaintiffs seek to introduce this evidence are markedly different than the reasons offered in Moderna's cited cases. *Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (proposals offered to "show[] an established [royalty] rate"); *PharmaStem Therapeutics v. Viacell*, 2003 WL 22387038, at *3 (D. Del. Oct. 7, 2003) (same); *AgroFresh v. Essentiv LLC*, 2018 WL 9578196, at *3 (D. Del. Dec. 11, 2018) (defendant offered no particularized showing of need and claimed evidence necessary "to defend against [plaintiff]'s allegations of liability"); *Chase Manhattan Bank v. Iridium Afr.*, 2003 U.S. Dist. LEXIS 23837, at *4 (D. Del. Nov. 25, 2003) ("another purpose" not raised); *Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 9279999, at *5 (E.D. Tex. July 6, 2016) (same).

First, the disputed evidence is relevant to showing that Plaintiffs requested samples even before litigation commenced. *See* Ex AP at -327, -329.  As Moderna indicates (at 19), it intends to argue that Plaintiffs' testing of Moderna's vaccine is unreliable because most tested samples were expired.  Plaintiffs should thus be permitted to offer evidence supporting the reliability of

their testing, including explaining that Moderna's delay—from pre-litigation through discovery—caused the samples' expiry. *See* Pls' MIL # 1. Plaintiffs would not offer evidence of the sample request to "prove or disprove" infringement, as Moderna argues (at 19). *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n*, 520 F.3d 109, 114 (2d Cir. 2008) ("In a sense, all evidence offered seeks either to 'prove liability for or invalidity of [a] claim or its amount.' If we accepted PRL's contention of the meaning of the Rule, ... [t]he exception would be meaningless."). Rather, the evidence would be used to rebut Moderna's reliability attack; a permissible use under Rule 408(b).

Second, the disputed evidence shows that Plaintiffs have long believed that testing the lipid content in the finished Accused Products is relevant to assessing infringement. *See* Ex AP -327, -329. Moderna may argue to the jury that Plaintiffs' infringement claims originally were based on a misapprehension that Moderna used the 1.5:50 LNP formulation for its vaccine "recipe"—*i.e.*, the molar ratios of the lipid *inputs*—and that Plaintiffs' sample testing was contrived at the eleventh hour. *See* D.I. 183 at 1-2. But, as the pre-litigation communications show, Plaintiffs have pushed for years to test samples of Moderna's product, *i.e*, measure the lipid *outputs* of the finished product. This alternative purpose for admission is untethered from proving infringement, validity, or damages, and instead rebuts Moderna's attempt to paint Plaintiffs as grasping at straws.

Third, the disputed evidence is relevant to proving that Plaintiffs offered a license and Moderna chose not to negotiate. "[A] reasonably royalty may permissibly reflect '[t]he fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty.'" *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). Thus, courts in this district have permitted evidence "that, while other companies willingly agreed to take licenses for the patents, [the alleged infringer did] not." *Zynga*, 2024 WL 3993290, at *3. Plaintiffs will not use the license offer "to suggest infringement or imply that the jury should punish [Moderna],"

but "the simple fact that [Moderna] refused to enter a license" is "highly relevant to both damages and willfulness" and "not unduly prejudicial." *Id.*

Moderna's prejudice arguments misstate Plaintiffs' position and are unavailing. Plaintiffs do not intend to use the license offers to "paint Moderna as a bad actor" or suggest that "Moderna knew it infringed and tried to hide it." *Contra* Memo 19. Plaintiffs' limited and permissible reasons for introducing the disputed communications are outlined above, and there is little for Moderna to rebut. *Contra* Memo 19. In fact, Plaintiffs would not raise the pre-litigation sample request if Moderna agreed not to raise the timing of sample expiry to dispute testing results or mischaracterize the original bases for Plaintiffs' infringement claims. Redactions can be applied, as necessary, to temper any prejudice stemming from the settlement negotiations. Moderna's blanket Rule 408 motion should be denied.

## V.    The Court Should Deny Moderna's MIL #5 (Moderna's Financials and Projections)

Moderna heedlessly characterizes three types of financial evidence as irrelevant and unfairly prejudicial: total sales for the Accused Product; Moderna's projections surrounding the hypothetical negotiation; and Moderna's May 2020 capital raise from just days before the hypothetical negotiation. As explained below, they are neither irrelevant nor unfairly prejudicial.

### A.    Moderna's global sales figures are relevant and not unfairly prejudicial.

Moderna does not dispute that its worldwide sales are relevant, at least to commercial success as an indicium of nonobviousness. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). Moderna simply asserts that its agreement that its product is successful can prevent admission of this evidence. Memo 21. But "[Moderna's] preference to stipulate the evidence away" is not enough to exclude it. *Finley*, 726 F.3d at 492. Plaintiffs are entitled to prove their case before the jury notwithstanding Moderna's desire to have it otherwise. And the inquiry into commercial success is not simply a binary box-checking exercise; the inquiry is holistic. *See Adapt*

*Pharma Ops. Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1372 (Fed. Cir. 2022).  The *extent* of commercial success for Moderna's Covid-19 vaccine matters for obviousness.  While Moderna's $24B in U.S. sales show success, Moderna's $38B in global sales show a meaningfully different degree of success that itself undermines the supposed obviousness of the Asserted Patents.

These worldwide sales are also relevant to Plaintiffs' reasonable royalty damages. Plaintiffs' reasonable royalty is based upon sales with a U.S. nexus under § 271(a) and § 271(f). Ex CQ (Scheds. 2.1-2.3).  However, Moderna's worldwide sales are relevant to the royalty rate to which Plaintiffs are entitled because, as explained immediately below, Moderna was aware at the time of the hypothetical negotiation that its foreign sales were directly contingent upon the success of its U.S. product.  To the extent that Moderna is concerned Plaintiffs will equate Moderna's global sales with the royalty base Plaintiffs are seeking, Plaintiffs' confirm that their expert has not disclosed such an opinion, *id.*, and Plaintiffs will not make such an argument at trial.

### B.    Moderna's projections are relevant and admissible.

There is no dispute that Moderna conducted substantial financial modeling after the Covid-19 pandemic began, and leading up to Moderna's first offer to sell the Accused Product, on May 31, 2020 (the hypothetical negotiation date).  Moderna characterizes its projections of sales, revenue, and market capitalization from that period as irrelevant, because they were "companywide" projections.  Memo at 22.  Regardless of scope, this evidence is plainly relevant. For example, Moderna's May 20, "5-Year Accelerated Plan" lays out Moderna's business objectives, and it estimates the value that a successful Covid-19 vaccine would bring to the company.  Ex AS at -961-963, -980.  The Plan explains that Moderna was "on an accelerated path to value creation" because of its Covid-19 sales, and that Moderna could "transition to commercial on the back of COVID licensure" as "our pandemic response to COVID will change our trajectory," leading to new products.  Ex AS at -961, -976, -980; *see also* Ex AT at -051, -057, -

077.  While Moderna objects to these projections because they factor in potential products beyond its Covid-19 vaccine, Memo 20, these same projections and deposition testimony show that it viewed its Covid-19 vaccine as *enabling* these other products, Ex CR at 87:16-88:1.

These considerations of what Moderna thought it could achieve at the time of the hypothetical negotiation are plainly relevant, as the hypothetical negotiation inquiry not only permits—but *requires*—consideration of what Moderna "would have considered at the time of the negotiations." *Hanson*, 718 F.2d at 1081.  Moderna's own cases acknowledge that market capitalization evidence can be relevant for that reason.  *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1100471, at *4 (D. Del. Mar. 7, 2019).  Thus, the Federal Circuit affirms the use of projections to demonstrate the infringer's "state of mind at the time of the hypothetical negotiation."  *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001).

Moderna's argument that these documents are not relevant because they "discuss Moderna's plans on a companywide, worldwide scale" (Memo 22) misses the mark for two reasons.  First, Moderna's projections at the time of the hypothetical negotiation were "worldwide" only because Moderna saw that achieving a successful product in the U.S. was a necessary precursor to achieving a commercial product elsewhere.  Ex AT at -004, -007.  Getting Moderna's Covid-19 vaccine "on the market" was the result of U.S. Government support; as Moderna Senior Director Hamilton Bennett noted, "We never could have done it without BARDA."  Ex CT at -046; Ex CI at 154:10-22.  Fatally for Moderna's motion, the Federal Circuit has explained in a related context that when "foreign conduct increases the value of the domestic infringement itself—because, *e.g.*, the domestic infringement enables and is needed to enable otherwise-unavailable profits from conduct abroad"—such sales may be considered in the reasonable royalty analysis.  *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024).

Accordingly, it is proper to rely on Moderna's projections, which focused on the total value to Moderna from a Covid-19 vaccine—first from the U.S. market, which then would enable access to the global market.  Moreover, even now, Moderna's U.S. and foreign markets are closely intertwined; for 35% of Moderna's foreign sales, the vaccine or its components were exported from the U.S.  Ex C ¶¶ 1582, 1610 & table 6.17.

Second, Moderna's objection to projections of its "companywide" revenue ignores that until 2024, Moderna's only commercial product was its Covid-19 vaccine.  Ex CS.  Thus, Moderna's companywide revenues were one-and-the-same as revenues for its Covid-19 vaccine, making this case unlike those on which Moderna relies, which concerned efforts to use a company's overall size through sales of other products to characterize the defendant unfairly.  *E.g.*, *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 2775515, at *1 (D. Del. July 2, 2019); *Inventio AG v. Thyssenkrupp Elevator Corp.*, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014).  Moderna's projections from the time of the hypothetical negotiation are appropriate bases "that the jury need[s] to hear to understand Plaintiff's damages expert's analysis" because they concern the sales Moderna expected for its Covid-19 vaccine.  *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 596 (D. Del. 2019), *aff'd*, 981 F.3d 1030 (Fed. Cir. 2020) (denying post-trial motion).

The risk of unfair prejudice does not substantially outweigh the relevance to these multiple issues.  Fed. R. Evid. 403.  A damages expert's reliance on evidence relevant to the hypothetical negotiation provides a sufficient basis to outweigh any prejudicial effect of that evidence under Rule 403 balancing.  *See TVIIM, LLC v. McAfee, Inc.*, 2015 WL 4448022, at *2 (N.D. Cal. July 19, 2015); *see also Medtronic, Inc. v. Adonics Modulation Techs.*, 2024 WL 3550482, at *6 (C.D. Cal. July 18, 2024).  Here, Plaintiffs' damages expert did just that—extensively relying on Moderna's expectations at the time of the Hypothetical Negotiation.  D.I. 658-1 ¶¶ 440-466.

The probative value of these documents further weighs against exclusion because *all* of Moderna's projections before the hypothetical negotiation would ostensibly fall under Moderna's motion to exclude.  Plaintiffs should not be barred from introducing highly relevant evidence of Moderna's expectations at the time of the hypothetical negotiation simply because Moderna considered its projected U.S. sales so closely linked to—and a necessary precondition of—its eventual foreign sales that it did not break them out separately.

### C.    Evidence from Moderna's May 2020 capital raise is relevant and admissible.

Moderna's May 2020 $1.3 billion capital raise is also directly relevant to damages.  Less than two weeks before the agreed-upon hypothetical negotiation date—May 31, 2020—Moderna's board "deploy[ed] ~$1 billion of risk capital immediately to capture an unprecedented opportunity in [mRNA-]1273."  Ex AY at -642.  This capital raise was directly tied to Moderna's Covid-19 vaccine, as the capital was used to "accelerate supply build and start delivery in Q4 2020" for its Covid-19 vaccine.  *Id.* at -661.

Moderna's internal documents confirm the raise was necessitated by Moderna's urgency to manufacture its Covid-19 vaccine.  For example, as part of this capital raise, Moderna projected just two weeks before the hypothetical negotiation that if Moderna did not conduct its capital raise, it could result in at least a "3-mo[nth] delay," resulting in a $2-5 billion loss in "vaccine revenue." Ex AY at -642, 653, 660-64.  Plaintiffs' expert explains that this incentive to avoid delay would affect the royalty Moderna would pay to continue using Plaintiffs' technology in its commercial product.  Ex C ¶¶ 507, 906.  Moderna, for its part, has disputed that this time pressure would affect the bargaining dynamics at the hypothetical negotiation.  *E.g.*, Ex BJ ¶ 816.  The documents are needed to rebut Moderna's position.  These documents are also relevant to assessing Moderna's purported non-infringing alternatives, as they show Moderna would not have accepted an alternative that would have resulted in a meaningful delay.  Ex C at 906; *see Spectralytics, Inc. v.*

*Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011) (NIA must be "available and acceptable").

Moderna's capital raise also provides the basis for one of the "subtractions" that Ms. Lawton uses in her Analytical Approach, Ex C ¶¶ 1251-52 & Table 6.2. Ms. Lawton's Analytical Approach derives the reasonable royalty by applying Moderna's internal calculations for sales of its Covid-19 vaccine to derive Moderna's "excess profits," i.e., the portion of Moderna's profits over and above what Moderna deemed an acceptable profit. *Id.* ¶¶ 1232-77. Ms. Lawton then applied "subtractions" to account for other features and circumstances that contributed to the Accused Product, including the $1.3 billion of at-risk capital, used to scale up Moderna's manufactures capacities. *Id.* ¶¶ 1245-59. While Moderna states it would not exclude the "two source documents" for her opinion, Memo 23, Ms. Lawton must be able to provide the context for the capital raise to explain the basis for this subtraction to the jury.

Contrary to Moderna's assertions, *see* Memo 23, evidence about Moderna's capital raise is tied directly to the Accused Product—the capital raise was for manufacturing the Accused Product. Thus, the cases Moderna cites (Memo 23) for the proposition that only financial figures concerning the Accused Product are admissible are inapposite.

Given the relevance of this capital raise, Moderna instead spends the bulk of its motion mischaracterizing Ms. Lawton's opinions, selectively quoting from the background documents she relies upon to provide context. Memo 21-24. But as explained in response to Moderna's *Daubert* motion, Ms. Lawton never opines that Moderna engaged in unlawful activity with respect to its capital raise, D.I. 671 at 16, and Plaintiffs already have agreed not to suggest Moderna did so. D.I. 691 ¶ 51 (Plaintiffs stipulating "not to introduce argument, evidence, or testimony referring to Moderna's alleged actions as 'illegal,' 'unlawful,' … and 'stock price manipulation.'"). Rule 404(b) therefore does not apply, and Moderna's motion should be denied. *Contra* Memo 25.

                                                    /s/ Nathan R. Hoeschen
                                                    John W. Shaw (No. 3362)
                                                    Karen E. Keller (No. 4489)
OF COUNSEL:                                         Nathan R. Hoeschen (No. 6232)
David I. Berl                                       SHAW KELLER LLP
Adam D. Harber                                      I.M. Pei Building
Thomas S. Fletcher                                  1105 North Market Street, 12th Floor
Shaun P. Mahaffy                                    Wilmington, DE 19801
Andrew L. Hoffman                                   (302) 298-0700
Matthew W. Lachman                                  jshaw@shawkeller.com
Ricardo Leyva                                       kkeller@shawkeller.com
Arthur J. Argall III                                nhoeschen@shawkeller.com
Falicia Elenberg                                    *Attorneys for Plaintiffs/Counterclaim-*
Kathryn Larkin                                      *Defendants Genevant Sciences GmbH and*
WILLIAMS & CONNOLLY LLP                             *Arbutus Biopharma Corporation*
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000

Andrei Iancu
Jeffrey B. Wall
Sullivan & Cromwell llp
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006
(202) 956-7500
*Attorneys for Plaintiff Genevant*
*Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric C. Wiener
Annie A. Lee
Shaelyn K. Dawson
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-6080

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017-3543
(213) 892-5200

David N. Tan
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
*Attorneys for Plaintiff Arbutus*
*Biopharma Corporation*

Dated: February 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, this document was served on the persons

listed below in the manner indicated:

**BY EMAIL:**

Brian P. Egan
Travis J. Murray
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

Patricia A. Carson, Ph.D.
Jeanna M. Wacker
Mark C. McLennan
Nancy Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Leslie M. Schmidt, P.C.
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
patricia.carson@kirkland.com
jeanna.wacker@kirkland.com
mark.mclennan@kirkland.com
kaye.horstman@kirkland.com
shaoyao.yu@kirkland.com
mara.greenberg@kirkland.com
leslie.schmidt@kirkland.com
andrew.lee@kirkland.com
brad.deem@kirkland.com

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500
noah.frank@kirkland.com

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
james.hurst@kirkland.com

Yan-Xin Li
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
yanxin.li@kirkland.com
lauraashley.harris@kirkland.com

Jaime A. Santos
William M. Jay
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000
jsantos@goodwinlaw.com
wjay@goodwinlaw.com

Jordan Bock
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
jbock@goodwinlaw.com

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
jason.wilcox@kirkland.com

Gabriel B. Ferrante
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
gferrante@goodwinlaw.com

Elizabeth Elrod
KIRKLAND & ELLIS LLP
401 W. 4th Street
Austin, TX 78701
(512) 678-9100
elizabeth.elrod@kirkland.com

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiffs/Counterclaim-Defendants Genevant Sciences GmbH and Arbutus Biopharma Corporation*