IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARBUTUS BIOPHARMA CORPORATION and GENEVANT SCIENCES GmbH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-252 (JDW) |
| MODERNA, INC. and MODERNATX, INC. | ) ) ) | |
| Defendants. | ) | |

**MODERNA'S BRIEF IN SUPPORT OF ITS
<u>UNOPPOSED MOTION TO SEAL</u>**


OF COUNSEL:

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Leslie M. Schmidt, P.C.
Mark C. McLennan
N. Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4679

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

Noah Frank
Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7500

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

Yan-Xin Li
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
(415) 439-1400

Elizabeth Elrod
KIRKLAND & ELLIS LLP
401 West 4th Street
Austin, TX  78701
(512) 678-9100

February 11, 2026

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD............................................................................................4

III.  BACKGROUND ...................................................................................................5

    A.  Category No. 1: Technical Information ....................................................5

    B.  Category No. 2: Commercial Information .................................................7

    C.  Category No. 3: Financial Information......................................................7

    D.  Category No. 4: Licensing Information .....................................................8

IV.  ARGUMENT .........................................................................................................9

    A.  Moderna's Highly Confidential Technical Information Should Be Sealed............9

        1.  Exhibits 3, 6, 8, 12, 17, 20, 23, 25, 26, 28, 59, 62, 64, 65, 66, B, C, F, BJ, BK, BL, BO, BP, BQ, BU, BV, CD And Moderna's Opposition Brief To Plaintiff's Motions in Limine, Should Be Sealed ......................12

        2.  Moderna Would Be Seriously Harmed If Its Confidential Technical Information Was Publicly Disclosed .......................................................13

    B.  Moderna's Highly Confidential Commercial Information Should Be Sealed.......15

        1.  Portions Of Exhibits C And Z Should Be Sealed .....................................15

        2.  Moderna Would Be Seriously Harmed If Its Confidential Commercial Information Was Publicly Disclosed .......................................................16

    C.  Moderna's Highly Confidential Financial Information Should Be Sealed............18

        1.  Portions Of Exhibits C, Z, AS, AT, AV, AW, AY and Moderna's Motions in Limine Brief Should Be Sealed.................................................19

        2.  Moderna Would Be Seriously Harmed If Its Confidential Financial Information Was Publicly Disclosed .......................................................19

    D.  Moderna's Highly Confidential Licensing Information Should Be Sealed..........21

        1.  Portions Of 1, 8, 12, 54, C, Z, AA, AD, AH, AP, AO, AR, BJ, BK, And BY Containing Confidential Licensing Information Should Be Sealed.................................................................................................22

i

2.    Moderna Would Be Seriously Harmed If Its Confidential Licensing
Information Was Publicly Disclosed .......................................................24

V.    CONCLUSION................................................................................................................25

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aptiv Techs., Ltd. v. Microchip Tech. Inc.*,
    C.A. No. 23-307-JDW, D.I. 163 (D. Del. Apr. 1, 2024) .......................................................9, 10

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
    800 F.2d 339 (3d Cir. 1986)...........................................................................................5

*Delaware Display Grp. LLC v. LG Elecs. Inc.*,
    221 F. Supp. 3d 495 (D. Del. 2016)..........................................................................18

*EIS Inc. v. IntiHealth Ger GmbH*,
    C.A. No. 19-1227-GBW, D.I. 696 (D. Del. Feb. 25, 2025)......................................21

*Guardant Health, Inc. v. Found. Med., Inc.*,
    C.A. No. 17-1616-LPS-CJB, D.I. 447 (D. Del. June 16, 2020) ...............................10

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    924 F.3d 662 (3d Cir. 2019).............................................................................. *passim*

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001)........................................................................................4

*Kaleo, Inc. v. Adamis Pharms. Corp.*,
    C.A. No. 19-917-RGA, 2019 WL 11680196 (D. Del. July 16, 2019)....................21

*Koninklijke KPN N.V. v. Sierra Wireless, Inc.*,
    C.A. No. 17-90-LPS, D.I. 230 (D. Del. Sep. 16, 2019)............................................21

*LEAP Sys., Inc. v. MoneyTrax, Inc.*,
    638 F.3d 216 (3d Cir. 2011)......................................................................................22

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    998 F.2d 157 (3d Cir. 1993)......................................................................................10

*Littlejohn v. Bic Corp.*,
    851 F.2d 673 (3d Cir. 1988)........................................................................................5

*MED-EL Elektromedizinische Geräte Ges.m.B.H. v. Advanced Bionics, LLC*,
    C.A. No. 18-1530-JDW, D.I. 274 (D. Del. Apr. 18, 2022) ........................15, 16, 18

*Miller v. Indiana Hosp.*,
    16 F.3d 549 (3d Cir. 1994).........................................................................................5

*Mosaid Techs. Inc. v. LSI Corp.*,
    878 F. Supp. 2d 503 (D. Del. 2012)......................................................................5, 6, 7

*Nitto Denko Corp. v. Hutchinson Tech. Inc.*,
    C.A. No. 16-3595 (CCC/MF), 2017 WL 2782639 (D.N.J. Mar. 3, 2017) .............................10

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)........................................................................................................11

*PACT XPP Schweiz AG v. Intel Corp.*,
    C.A. No. 19-1006-JDW, D.I. 544 (D. Del. Oct. 30, 2023).........................................................2

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)...............................................................................................5, 10

*SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*,
    C.A. No. 22-266-JDW, D.I. 487 (D. Del. Mar. 11, 2025).........................................11, 18, 21

## I.    INTRODUCTION

Pursuant to the Protective Order (D.I. 91) as modified by the Court's November 14, 2023 Order (D.I. 155) and the Court's August 19, 2025 Order (D.I. 545) and (D.I. 707), Defendants Moderna, Inc. and ModernaTX, Inc. ("Moderna") respectfully move this Court for an order granting leave to file redacted versions of the following documents:  Moderna's Motions *in Limine* Brief;  Moderna's Opposition Brief to Plaintiff's Motions *in Limine*; Exhibit 1 (Email from P. Zorn, dated April 5, 2021); Exhibit 3 (March 3, 2023 Letter from A. Sheh); Exhibit 6 (September 6, 2023 Letter from A. Sheh); Exhibit 7 (Dec. 11, 2023 Email from F. Elenberg); Exhibit 8 (Excerpt of Opening Expert Report of Dr. Michael Mitchell); Exhibit 12 (Excerpt of Rebuttal Expert Report of Dr. Robert Prud'homme); Exhibit 17 (Excerpt of Reply Expert Report of Dr. Michael Mitchell); Exhibit 20 (Defendants' Seventeenth Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories); Exhibit 23 (December 8, 2023 Letter from M. McLennan); Exhibit 25 (Plaintiffs' Second Set of Requests or Production to Defendants); Exhibit 26 (November 6, 2023 Letter from M. McLennan); Exhibit 28 (December 6, 2023 Letter from P. Haunschild); Exhibit 36 (Excerpt of Expert Report of Catharine Lawton); Exhibit 54 (Excerpt of the Expert Report of Catharine Lawton); Exhibit 59 (Excerpt of Deposition Transcript of Kerry Benenato); Exhibit 62 (Moderna's Fourth Revised 30(b)(6) Designations); Exhibit 64 (December 8, 2023 Email from M. McLennan to Plaintiffs' Counsel); Exhibit 65 (Moderna's Search Terms); Exhibit 66 (Excerpt of Deposition Transcript of Michael Smith); Exhibit B (Excerpt of Opening Expert Report of Dr. Michael Mitchell); Exhibit C (Excerpt of Expert Report of Catharine Lawton); Exhibit F (November 20, 2019 Moderna Slide Deck); Exhibit Z (Excerpt of Expert Report of James Malackowski from *ModernaTx, Inc. v. Pfizer Inc.*, C.A. No. 22-11378-RGS (D. Mass.)); Exhibit AA (Excerpt of the Opening Expert Report of Graham Brazier from *ModernaTx, Inc. v. Pfizer Inc.*, C.A. No. 22-11378-RGS (D. Mass.)); Exhibit AD (Excerpt of the

July 12, 2024 deposition transcript of Hamilton Bennett); Exhibit AH (Excerpt of Opening Expert Report of Dr. David Ho from *ModernaTx, Inc. v. Pfizer Inc.*, C.A. No. 22-11378-RGS (D. Mass.)); Exhibit AP (Email from P. Zorn, dated April 5, 2021); Exhibit AQ (Email from N. Dahiya, dated June 30, 2021); Exhibit AR (Email from P. Zorn, dated January 28, 2021); Exhibit AS (Excerpt of Moderna mRNA Presentation); Exhibit AT (Excerpt of Moderna 2020 Long Range Plan Presentation); Exhibit AV (Moderna 2020-2022 P&L Information); Exhibit AW (Moderna 2020-2023 P&L Information); Exhibit AY (Moderna Board Discussion Presentation); Exhibit BG (Excerpt of Opening Expert Report of Catharine Lawton)[1]; Exhibit BJ (Excerpt of Rebuttal Expert Report of Dr. Christopher Vellturo); Exhibit BK (Excerpt of Rebuttal Report of Dr. Pierre Meulien); Exhibit BL (Excerpt of Rebuttal Expert Report of Dr. Robert Prud'homme); Exhibit BO (Moderna LNP Presentation); Exhibit BP (December, 2015 Moderna Presentation); Exhibit BQ (Moderna Presentation); Exhibit BU (November 20, 2019 Moderna Presentation); Exhibit BV (Second November 20, 2019 Moderna Presentation); Exhibit BY (Excerpt of the Reply Expert Report of Catharine Lawton); and Exhibit CD (Excerpt of Reply Expert Report of Dr. Frederick Porter) (collectively, the "Redacted Motion *in Limine* Filings").[2] As explained in more detail below, the portions marked for redaction contain Moderna's sensitive and confidential technical information, including sensitive and proprietary manufacturing,

---

[1] The confidential information in Exhibits 7, 36, 54 and BG have been already been subject to an order granting a motion to seal. *See* D.I. 174, 688. Accordingly, Moderna moves to seal the same information again. *See PACT XPP Schweiz AG v. Intel Corp.*, C.A. No. 19-1006-JDW, D.I. 544 at 6 (D. Del. Oct. 30, 2023) ("[B]ecause Intel's proposed redactions to these documents are a subset of those I've already granted, I won't require duplicative briefing that repeats Intel's prior justifications.").

[2] All other exhibits are filed publicly. In accordance with Section I.D.2 of the Court's Policies and Procedures, the sealed versions of the motion *in limine* papers highlight the portions that Moderna proposes to redact. Redactions were also applied to portions of certain exhibits to redact information not relevant to the parties' motions. Plaintiffs do not oppose this motion.

clinical development, testing and lipid component information of its COVID-19 Vaccine and prior formulations as well as sensitive financial and pricing information, including profit margins, projections, market research, and risk analysis.

In support of this motion, Moderna attaches as Exhibit A the Declaration of Brian Doyle, a Senior Director of Technical Development at Moderna since September 2023.  Mr. Doyle is familiar with Moderna's clinical product development, including development, testing, and manufacturing of lipid nanoparticle ("LNP") products.  Mr. Doyle is also familiar with the fact that Moderna maintains this information as confidential and is familiar with the extensive efforts Moderna takes to protect its confidential information.  As supported by Mr. Doyle, Moderna seeks to seal limited portions of Exhibits 3, 6, 8, 12, 17, 20, 23, 25,26, 28, 59, 62, 4, 65, 66, B, C, F, BJ, BK, BL, BO, BP, BQ, BU, BV, and CD as well as Moderna's Opposition Brief to Plaintiff's Motions *in Limine*.

In further support of this motion, Moderna attaches as Exhibit B, the Declaration of Albert Thomas, the Head of Trade and Fulfillment for the United States as Moderna since January 2024. Previously, Mr. Thomas was the of Executive Director, US Commercial Strategy from January 2023 to January 2024 and Senior Director, Key Account Management from August 2020 through January 2023. In these roles, Mr. Thomas is familiar with Moderna's sensitive commercial practices and business strategies and operations. Mr. Thomas is familiar with the fact that Moderna maintains this information as confidential and is familiar with the extensive efforts Moderna takes to protect its confidential information. As supported by Mr. Doyle, Moderna seeks to seal limited portions of Exhibits A and C.

In further support of this motion, Moderna attaches as Exhibit C, the Declaration of Paul Baranello, the Head of Corporate Financial Planning & Analysis and Treasury at Moderna.

In this role, Mr. Baranello is familiar with Moderna's products, including costs of goods, pricing, and related financial information and considerations. Mr. Baranello is familiar with the fact that Moderna maintains this information as confidential and is familiar with the extensive efforts Moderna takes to protect its confidential information. As support by Mr. Baranello, Moderna seeks to seal limited portions of Exhibits C, Z, AS, AT, AV, AW, and AY, as well as Moderna's Motions *in Limine* Brief.

In further support of this motion, Moderna attaches as Exhibit D, the Declaration of Henry Hagen, Associate Counsel, Business Development, Licensing, and Research at Moderna.  In this role, Mr. Hagen is familiar with Moderna's products (including clinical development), as well as related business contracts relating to the same. Mr. Hagen is familiar with the fact that Moderna maintains this information as confidential and is familiar with the extensive efforts Moderna takes to protect its confidential information.  As supported by Mr. Hagen, Moderna seeks to seal Exhibits 1, 8, 12, 54, C, Z, AA, AD, AH, AP, AQ, AR, BJ, BK, and BY.

All of the Redacted Motion *in Limine* Filings, as explained by the four declarants, contain Moderna's highly confidential information.   Release of Moderna's highly confidential information to the public and Moderna's competitors would create a clearly defined and serious injury to Moderna, as discussed in detail below.

## II.    LEGAL STANDARD

Third Circuit common law presumes a public right of access to judicial records; however, it also protects business and financial information when access would cause economic harm, including competitive harm.  *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "Although the common law right to public access is a recognized and venerated principle, courts have also recognized the accompanying principle that the right is not absolute."  *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (citations and quotations

omitted); *see also Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("Despite the presumption, courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing.").

This presumption is overcome where a movant shows "that the interest in secrecy outweighs the presumption." *In re Avandia Mktg.*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). This showing may be made by demonstrating that disclosure will work a clearly defined and serious injury to the movant and that the material is the kind of information that courts will protect. *See In re Avandia Mktg.*, 924 F.3d at 672 (citing *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). The Court will apply a "good cause" standard justifying sealing judicial records, requiring a "balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507-08 (D. Del. 2012) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)).

## III.     BACKGROUND

Moderna has identified four categories of confidential information that warrant sealing.

### A.     Category No. 1: Technical Information

The first category is technical information, which includes Moderna's proprietary manufacturing process, research, specifications, and tests that it has developed. Mr. Doyle provides a declaration in support of sealing documents that contain this category of information. Significant competition exists among biopharmaceutical companies researching, testing, and developing LNPs for mRNA-based products. Ex. A at ¶ 35. Additionally, there are companies considering entering the vaccine market and companies developing mRNA-based vaccines and therapeutics for other diseases or developing LNPs for mRNA-based products that would be at a strategic advantage if Moderna's proprietary formulation and ratio of ingredients became public.

*Id.* Because there are so few competitors in these markets, the markets are highly competitive, and any information about one of the competitors, even seemingly minor information, may prove competitively advantageous.  *Id.* As described by Mr. Doyle, a competitor with access to Moderna's confidential formulations could redirect its research budget away from basic formulation discovery and toward incremental improvements or differentiation strategies, giving it a material head start.  *Id.* Moderna has spent significant resources to develop its formulation, and the release of such information to the public would significantly harm Moderna.  *Id.*

Moderna would be substantially harmed if its competitors became aware of this highly confidential and trade secret information that Moderna has tested and developed as competitors would save significant time, in some cases potentially months or years, of testing that Moderna had to spend developing its own proprietary formulations, manufacturing processes, and analytical techniques.  Ex. A at ¶ 36.  Disclosure would also result in substantial competitive harm where competitors would be able to replicate Moderna's proprietary formulations, analytical processes, and manufacturing processes.  *Id.*

Moderna intends to keep sealed includes very specific concentrations of lipid components, proprietary encapsulation processes, and assay methods.  This information is highly confidential and trade secret information that Moderna has taken extensive efforts to keep non-public.  The development of these processes and techniques required years of research, testing, and optimization by multi-disciplinary teams at Moderna.  *Id.* at ¶¶ 5, 36.  Disclosure of this information would not only reveal the "successful" processes Moderna relies upon today but also enable competitors to avoid failed or abandoned approaches that Moderna already tested at significant cost.  In effect, disclosure would allow competitors to "leapfrog" years of scientific trial-and-error. *Id.*

6

### B.      Category No. 2: Commercial Information

The second category is commercial information, which includes sensitive pricing and profit margins information.  Mr. Thomas provides a declaration in support of sealing documents that contain this category of information.  It is critical to Moderna that the Court maintain under seal Moderna's confidential commercial information.  Moderna has always taken extensive measures to maintain the confidentiality of its technical and business information, including by implementing procedures that restrict access to sensitive information even within Moderna.  Ex. B at ¶ 10.  Employees have confidentiality obligations as part of their employment.  *Id.*  Internal to Moderna, employee access to commercially sensitive information relating to Moderna's pricing strategies, costs of goods, and financial positions, especially when presented to executives and directors at Moderna, are often restricted on a need-to-know basis, as determined by a person's group or role on a project. *Id.*

### C.      Category No. 3: Financial Information

The third category is financial information, which includes sensitive valuations, investment opportunities, and projections.  Mr. Baranello provides a declaration in support of sealing documents that contain this category of information.  These exhibits contain information relating to costs per dose, profit margins, and pricing structures which reflect Moderna's confidential financial modeling, market forecasting, sensitivity analyses, and risk tolerance.  Ex. C at ¶ 5.  This confidential business, pricing, and financial strategies, including forecasts and non-public revenue and pricing information, would prove highly commercially valuable to Moderna's competitors and seriously harm Moderna's competitive standing among other biopharmaceutical companies in this industry.  *Id.* at ¶¶ 5–6.

D.        **Category No. 4: Licensing Information**

The fourth category is licensing information, which includes confidential licensing and collaboration agreements and terms with third parties.  Mr. Hagen provides a declaration in support of sealing documents that contain this category of information.  This confidential financial information includes methods for calculating relevant sales of the licensed product(s), structure and amount of compensation exchanged between the parties for the licensed rights (e.g., up-front payments, milestone payments, and/or escalating payment obligations based on sales volume).  Ex. D at ¶ 6.  Not only does Moderna routinely maintain the confidentiality of this licensing information, but Moderna would also sustain harm and prejudice to its competitive standing in the pharmaceutical industry if such information were disclosed to the public.  *Id.* Thus, in an increasingly competitive market with various biopharmaceutical companies seeking to develop and sell mRNA-based products, including COVID-19 vaccines, disclosure of Moderna's confidential financial terms would provide competitors with an unwarranted roadmap for structuring rival licensing proposals and undercut Moderna in its future licensing negotiations, forcing Moderna to serve as a stalking horse for competitors by allowing them to see where Moderna sees market opportunities for mRNA products.  *Id.*  In addition, the disclosure of Moderna's confidential financial information would provide licensing counterparties with unfair negotiating leverage—given their insight into Moderna's financial position and licensing strategies—to exert pressure on Moderna to match or exceed its prior license terms in future deals. *Id.*  This is particularly salient in Moderna's negotiations with governmental and quasi-governmental counterparties, many of which possess statutory authority to impose price caps pegged to published or otherwise known payment terms.  *Id.*  The resulting compression in net margins would materially undermine Moderna's ability to generate revenue to reinvest in next-generation vaccine research.  *Id.*  Additionally, if third parties become aware that licenses with

Moderna have become public, they will be less willing to offer favorable terms such as license rates, for fear that those rates would become public and become the new "floor" for future negotiations with others. *Id.*

## IV.    ARGUMENT

Good cause exists here to seal the Redacted Motion *in Limine* Filings because they contain Moderna's highly confidential technical, commercial, financial, and licensing. Disclosure of such information would cause real and serious competitive harm to Moderna, and the information does not need to be disclosed to the public to understand the filings at issue.

### A.    Moderna's Highly Confidential Technical Information Should Be Sealed

The information Moderna seeks to seal in Exhibits 3, 6, 8, 12, 17, 20, 23, 25, 26, 28, 59, 62, 64, 65, 66, B, C, F, BJ, BK, BL, BO, BP, BQ, BU, BV, CD and Moderna's Opposition Brief to Plaintiff's Motions *in Limine* relates to Moderna's clinical development, testing, research, and formulation of LNP products.  This technical information contained in these exhibits and briefs sought to be sealed "is the kind of information that courts will protect and . . . will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg.*, 924 at 672 (citation omitted).  Here, the redacted information in the Redacted Motion *in Limine* Filings are all the types of limited information of the kind that courts in the Third Circuit have recognized as protectable, namely highly sensitive and confidential technical information regarding Moderna's proprietary and trade secret formulation, manufacturing, methods, development, and testing of its COVID-19 Vaccine. *See* D.I. 546 at 7, 9 ("[I]nformation relating to the development, testing, and formulation of Moderna's LNP products is likely a trade secret. . . . I will permit Moderna to redact information in the filings that relates to the molar ratios of its vaccine products"); *see also Aptiv Techs., Ltd. v. Microchip Tech. Inc.*, C.A. No. 23-307-JDW, D.I. 163, at 2–3 (D. Del. Apr. 1, 2024) ("Proprietary technical information is a type of information that courts protect.").

Moderna has always taken extensive measures to maintain the confidentiality of its technical information. Ex. A at ¶ 6. Moderna has been extremely concerned about the protection of its confidential information during this litigation and has been very careful to always protect this information. *Id.* This information is of the type that courts have recognized as protectable. *See, e.g.*, *Nitto Denko Corp. v. Hutchinson Tech. Inc.*, C.A. No. 16-3595 (CCC/MF), 2017 WL 2782639, at *2 (D.N.J. Mar. 3, 2017) (granting motion to seal "confidential technical information" where such information "was not intended to be seen by competitors . . . for review and potential use against the parties," and parties were in a "highly competitive [] industry"); *Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 17-1616-LPS-CJB, D.I. 447 (D. Del. June 16, 2020) (granting motion to redact confidential information concerning defendant's confidential technical information).

Disclosure of Moderna's confidential information regarding either the technical details of Moderna's formulation and researching, testing, and developing of LNPs for mRNA-based products would "work a clearly defined and serious injury" to Moderna. As such, disclosure would provide Moderna's competitors, customers, and potential licensors or licensees with otherwise confidential information regarding Moderna's products and strategies, as well as a competitive advantage in both the vaccine supplier market and in negotiations with Moderna. *See Pansy*, 23 F.3d at 786. Moreover, because this "case involves private litigants" and their confidential information, there is "little legitimate public interest" in the proposed redactions. *Id.* at 788. Under such circumstances, Moderna's interest in maintaining the confidentiality of the proposed redacted information outweighs any countervailing public interest. *See id.* ("[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."); *Leucadia,*

*Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) ("Documents containing trade secrets or other confidential business information may be protected from disclosure" and explaining that the court has "framed the inquiry as whether the need for secrecy outweighs the presumption of access that normally attaches to such documents"); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing").

Moderna seeks only to seal confidential materials at issue as narrowly as possible. This narrow scope of redactions will not inhibit the public's ability to understand the record, and the record will not be impaired any more than necessary to prevent the release of Moderna's most sensitive technical information to its potential competitors, preventing clear competitive harm. *See SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 487, at 3 (D. Del. Mar. 11, 2025) (granting motion to seal because "[t]he market is small and highly competitive, so competitors would likely exploit and benefit from this sort of technical information. The Parties have articulated a specific harm that would come from making this information public, they have supported the request with Declarations rather than just arguments of counsel, and their request is narrowly tailored to the information that would work such a competitive harm.")

Finally, Judge Goldberg and this Court have maintained under seal similar, or the same, highly confidential proprietary information. *See* January 2, 2024 Order (D.I. 178) (granting motion to seal (i) the composition of Moderna's COVID-19 vaccine which indirectly references the quantities of the components, which Moderna maintains as confidential, and (ii) regulatory submissions disclosing specific information concerning Moderna's proprietary and trade secret manufacturing methods for its COVID-19 vaccine including steps in the manufacturing process

and parameters for those steps); *see also* January 16, 2026 Order (D.I. 688 at 6–7) (granting motion to seal "Moderna's highly sensitive, confidential technical information regarding Defendants' proprietary and trade secret formulation, manufacturing, methods, development, and testing of its COVID-19 vaccine" because "[i]f this confidential technical information were released to the public, competitors would gain the ability to leapfrog years of scientific trial-and-error. It follows that a competitor with this information could then redirect funds in its research budget away from basic formulation and discovery and toward incremental improvements and other strategies, effectively putting Defendants at a competitive disadvantage.").

The parties also agreed that proprietary information about their products, including the ratio of lipid components, should be treated as 'Confidential' under the agreed-upon Protective Order. D.I. 91 at 1.2(c).

1.  **Exhibits 3, 6, 8, 12, 17, 20, 23, 25, 26, 28, 59, 62, 64, 65, 66, B, C, F, BJ, BK, BL, BO, BP, BQ, BU, BV, CD And Moderna's Opposition Brief To Plaintiff's Motions *in Limine*, Should Be Sealed**

Exhibits 8, 12, 17, 20, 25, 59, 64, 65, 66, B, C, F, BK, BL, BO, BP, BQ, CD contain highly confidential information about the experimentation that Moderna undertook to develop its LNP formulations and mRNA products, including the chemical and clinical properties that Moderna considered and analyzed. Ex. A at ¶¶ 9–12, 14, 17, 19–24, 26–33. Moderna has taken extensive measures to maintain the confidentiality of this information and prevent disclosure to competitors. If competitors had access to concentrations of these components and their stability properties, it would eliminate the need for competitors to experiment across dozens of permutations, saving them years of development. *Id.* Exhibits 3, 6, 8, 12, 17, 20, 23, 25, 26, 28, 59, 62, 64, 65, 66, B, C, F, BJ, BK, BL, BO, BP, BQ, BU, BV, and CD contain all or some of the following: (1) highly confidential and proprietary information regarding Moderna's manufacturing process for its LNP products, (2) confidential testing results regarding stability,

12

immunogenicity, reactivity, and other clinical properties of Moderna's LNP formulations, (3) Moderna's trade secret manufacturing process, including the order and way in which components of Moderna's mRNA-LNP products are incorporated and combined, and (4) Moderna's confidential research, analysis, and development of its LNP products, including specific lipid concentrations. *Id.* at ¶¶ 7–33. As discussed in Mr. Doyle's Declaration, all of this information is maintained as confidential by Moderna and public disclosure would cause a clearly defined injury to Moderna as its competitors could bypass years and resources of clinical development. *Id.* Even limited information could prove to be a competitive advantage to the limited number of competitors in the LNP product-development market and companies using mRNA-based treatments. This information would prove competitively advantageous to Moderna's competitors when evaluating different formulations and developing their own products. *Id.* Exhibits 64 and 65 contain highly confidential about assays used by Moderna to determine mRNA encapsulation. *Id.* at ¶¶ 19, 20. The specific assays used to measure encapsulation of mRNA are highly confidential, and the exposure of this sensitive information to Moderna's competitors would cause substantial harm to Moderna. *Id.* The parties' motion *in limine* briefing that cites this information should also be sealed.

### 2. Moderna Would Be Seriously Harmed If Its Confidential Technical Information Was Publicly Disclosed

There is significant competition between biopharmaceutical companies researching, testing, and developing LNPs for mRNA-based products. Ex. A at ¶ 35. Additionally, there are companies considering entering the vaccine market and companies developing mRNA-based vaccines and therapeutics for other diseases or developing LNPs for mRNA-based products that would be at a strategic advantage if Moderna's proprietary technical information became public. *Id.* Because there are so few competitors in these markets, the markets are highly competitive, and

any information about one of the competitors, even seemingly minor information, may prove competitively advantageous. A competitor with access to Moderna's confidential research information could redirect its research budget away from basic formulation discovery and toward incremental improvements or differentiation strategies, giving it a material head start. *Id.* Moderna would suffer substantial harm if competitors were provided access to the above discussed confidential information concerning formulations, manufacturing processes, and analytical techniques that Moderna had to spend significant time and resources developing. Moderna has invested countless resources to develop fundamental scientific, technical, and engineering knowledge to successfully scale LNP production to quantities relevant for clinical or commercial manufacturing and to a degree of sophistication, control, and consistency mandatory for use in human clinical studies or in licensed commercial products. *Id.* at ¶ 36. If competitors had access to Moderna's confidential information, it would save them significant time, in some cases potentially months or years, of testing and at significantly lower risk of technical failure. *Id.* Disclosure would also result in substantial competitive harm where competitors would be able to replicate Moderna's proprietary formulations, analytical processes, and manufacturing processes. The harm from disclosure would be immediate and substantial. *Id.* For example, a competitor developing a vaccine could use Moderna's confidential data to quickly identify which specific formulations, manufacturing processes, and analytical tests are most effective, allowing them to shorten their development timelines and simultaneously increase the likelihood of technical success. *Id.* This would not only erase Moderna's competitive advantage but could also jeopardize Moderna's ability to negotiate favorable business partnerships, as collaborators and licensees would perceive Moderna's proprietary information as less secure. *Id.* Likewise, Moderna spent significant time and resources to develop the method and materials for its proprietary and non-

public assay for measuring mRNA encapsulation. *Id.* at ¶ 37. Moderna's request is narrowly tailored to protect only those non-public details that remain proprietary, including precise concentrations, molar ratios across certain of its products, specific assay designs, and the sequencing of manufacturing steps. *Id.* Public disclosure would also permit Moderna's competitors to gain a roadmap to replicate Moderna's successes and avoid its failures, severely disadvantaging Moderna in an area where exclusivity is essential to sustaining innovation. *Id.* at ¶ 38.

**B.     Moderna's Highly Confidential Commercial Information Should Be Sealed**

Exhibits C and Z contain highly confidential commercial information. These exhibits contain sensitive commercial information, including but not limited to pricing, profit margins, financial projections, risk analysis, and costs of goods information. This information is highly sensitive and courts protect public access to this kind of information. *See, e.g., MED-EL Elektromedizinische Geräte Ges.m.B.H. v. Advanced Bionics, LLC*, C.A. No. 18-1530-JDW, D.I. 274 (D. Del. Apr. 18, 2022) (granting motion to seal highly-confidential, non-public information related to the Parties' respective unit sales, revenues, pricing, costs, inventory, profits/margins, sales growth, market shares, market penetration, financial projections, and licensing strategies). In the "highly competitive nature of the [bio]pharmaceutical industry" Moderna's "competitive position in the marketplace would be adversely affected and seriously damaged by disclosure of [its] financial data." *Boehringer Ingelheim Pharma GmbH & Co. KG*, Civil No. 14-4727 (NLH/KMW), 2015 WL 1816473, at *2 (D.N.J. Apr. 22, 2015).

**1.     Portions Of Exhibits C And Z Should Be Sealed**

Exhibits C and Z contain highly confidential commercial information, including pricing per dose and profit margins. Ex. B ¶¶ 6–8. This information, including the underlying considerations that went into it, is a culmination of extensive analysis and planning and is highly

15

confidential.  *Id.*  Exhibit C contains highly confidential information pertaining to Moderna's cost of goods as well as non-public commercial information, including pricing, commercial goals and projections for its COVID-19 vaccine, commercial partnerships, financial reports and analysis provided to Moderna leadership, and other highly sensitive business information that is not publicly known.  *Id.* at ¶ 7.  This analysis and advice to Moderna's executives and the calculations that were performed are sensitive business and financial information that could be analyzed and projected to gain valuable insight into Moderna's current and future financial positions.  *Id.*  Exhibit Z contains highly confidential pricing structure information, including internal parameters for setting specific discounts.  *Id.* at ¶ 8.

### 2.  Moderna Would Be Seriously Harmed If Its Confidential Commercial Information Was Publicly Disclosed

If Moderna's competitors had access to the information in Exhibits C and Z, they could be able to develop their own pricing calculations, make similar commercial plans, and compete against Moderna using Moderna's own strategies.  *Id.* at ¶¶ 7–8.  Public disclosure would arm payers, governmental purchasers, and international health systems with data that lets them back-solve Moderna's floor pricing, demand deeper discounting, and resist price adjustments for future products.  *Id.*  This erodes Moderna's revenue potential for upcoming product cycles, especially as new markets open for future Moderna products.  *Id.*  If Moderna's competitors had access to Exhibit C, they would gain favorable negotiation positions based on Moderna's confidential information and to compete against Moderna.  *Id.* at ¶ 7.  Even if information about cost of goods and margin data is a few years old, its disclosure provides a baseline to reverse engineer Moderna's long-term pricing elasticity and cost-structure assumptions, especially as Moderna expands into other products and therapeutic markets.  *Id.*  If Competitors and negotiating partners had access to the sealed information in Exhibits C and Z, they could use these inferred cost curves to anticipate

16

Moderna's pricing strategy in adjacent markets, enabling them to undercut future launches or anticipate Moderna's willingness to discount. *Id.* at ¶¶ 7–8.  Similarly, costs of goods and margin information, even from prior years, would reveal Moderna's target margins, expected supplier cost reductions, and the economic pressure points in its manufacturing network. *Id.* This harms Moderna because current suppliers could demand higher prices or resist price concessions if they can determine the ranges Moderna considers commercially viable, new suppliers assessing bids for next-generation platform materials or large-scale mRNA manufacturing could raise prices strategically, and contract manufacturing partners (CMOs) could adjust negotiation posture by knowing Moderna's cost tolerance. *Id.*  This could, in turn, diminish Moderna's competitiveness for multiple years because supply agreements in pharma often lock pricing for long durations. *Id.* If the information in Exhibit C was publicly disclosed, it would provide valuable insight into Moderna's market position, revenue streams, projections, and overall financial position and harm Moderna's ability to sell, license, and collaborate in this highly competitive industry. *Id.* at ¶ 7. Additionally, if this information became public, competitors and investors could infer portfolio vulnerabilities, anticipate shifts in capital allocation, and act on speculative strategies based on perceived weaknesses. *Id.*  This could impair Moderna's ability to raise capital for future platform development or execute strategic transactions. *Id.*  This Court also previously granted a motion to seal this type of confidential commercial information. *See* D.I. 688 at 8 (granting motion to seal confidential commercial information when "competitors could use this information to develop commercial plans and prices to compete against Defendants in offering similar products. Third-party purchasers could use the information to negotiate lower prices or resist price adjustments for Defendants' products, which would erode Defendants' revenue potential and ability to develop future products. These harms are sufficient to meet the demands of the second prong of *Avandia*.").

17

### C.    Moderna's Highly Confidential Financial Information Should Be Sealed

The confidential financial information in the Redacted Motion *in Limine* Filings are all the types of limited information of the kind that courts in the Third Circuit have recognized as protectable, namely information relating to costs per dose, profit margins, and pricing structures which reflect Moderna's confidential financial modeling, market forecasting, sensitivity analyses, and risk tolerance. *See MED-EL*, C.A. No. 18-1530-JDW, D.I. 274 (granting motion to seal highly-confidential, non-public information related to the Parties' respective unit sales, revenues, pricing, costs, inventory, profits/margins, sales growth, market shares, market penetration, financial projections, and licensing strategies); *see also Delaware Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (granting motion to seal non-public financial information).   In a highly competitive industry, access to Moderna's pricing analysis, profit margins, and risk tolerance would be highly advantageous.  *See SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 544 (D. Del. May 26, 2025) (granting motion to seal confidential financial information in a highly competitive industry).  This Court also granted a motion to seal confidential financial information.  *See* D.I. 688 at 9 (finding "competitors and third-party contractors could use this information to Defendants' detriment. For instance, third-party contractors could use Defendants' pricing strategies and financial projections to determine Defendants' financial position and ultimately prevent Defendants from negotiating favorable terms in commercial agreements. Competitors could also use the information about Defendants' pricing strategies, financial projections, and investment opportunities to compare and prepare their own business models, thus improving their ability to compete against Defendants. Such competitive disadvantages, in my view, are enough to constitute clearly defined and serious injuries under *Avandia*.") (cleaned up).

1.    **Portions Of Exhibits C, Z, AS, AT, AV, AW, AY and Moderna's
Motions** *in Limine* **Brief Should Be Sealed**

Exhibits C, AS, AT, and AY contain highly confidential financial projections and
sensitive information that is not publicly known. Ex. C at ¶ 5. Exhibits C, AS, AT, and AY also
include highly sensitive information about Moderna's projected valuation, investment
opportunities, and assets that were presented to executive leadership. *Id.* at ¶¶ 7, 9, 10, 13.
Maintaining Moderna's sensitive proprietary business forecasting information as confidential is
crucial for Moderna to be able to prepare informed and specific recommendations and projections
for executive leadership without incurring risk of public disclosure.  Moderna's business
projections contains sensitive financial information and identify specific valuations and
projections that were presented to Moderna's executive leadership. *Id.*  Exhibits C and AY
contain detailed cost of cost per dose information relating to Moderna's COVID-19 vaccine. *Id.*
at ¶¶ 7, 13. Moderna's cost per dose information is not publicly available, and such information
would prove competitively advantageous to Moderna's competitors if made public. *Id.*  Exhibits
C, AS, AT, AV, AW, AY, and Z contain highly confidential information relating to Moderna's
financial position and equity value that is not disclosed in public filings. *Id.* at ¶¶ 7–13.
Specifically, Exhibits AV and AW contain confidential profits and losses information compiled
on a more granular basis than disclosed in public reports, which could allow competitors to use
this information to their advantage when approaching Moderna for contracts or to conduct certain
commercial business and commercial operations based on Moderna's fiscal cycle. *Id.*

2.    **Moderna Would Be Seriously Harmed If Its Confidential Financial
Information Was Publicly Disclosed**

Moderna would be seriously harmed if its confidential financial information in the
Redacted Motion *in Limine* Filings became public.  If Exhibits C, Z, AS, AT, AV, AW, and AY
were unsealed, Moderna's competitors in the biopharmaceutical industry could exploit this

information to compare and prepare their own projections and business models. *Id.* Competitors would bypass the research, effort, and risk valuations undertaken by Moderna, causing a clearly defined injury to Moderna. *Id.* Competitors could also evaluate this information to gain non-public information about Moderna's standing and extrapolate Moderna's future planning and financial position that is not otherwise publicly available. *Id.* Public disclosure of these exhibits could be used by competitors in the biopharmaceutical industry preparing for regulatory approval and commercial production of drug and vaccine products to compare and prepare their own five-year plans. *Id.* at ¶ 9. Competitors would bypass the research, effort, and risk valuations undertaken by Moderna, causing a clearly defined injury to Moderna. *Id.* Competitors could also evaluate this information to gain non-public information about Moderna's standing and extrapolate Moderna's future planning and financial position that is not otherwise publicly available. *Id.* Moderna's cost per dose information—and how they relate to Moderna's pricing strategies and calculations—could be valuable intelligence used by Moderna's competitors to evaluate Moderna's financial position and prepare pricing protocols and calculations for their own products, causing a serious injury to Moderna. *Id.* at ¶¶ 7–13. Although some of this information is years old, the information included projections that extended years into the future. *Id.* at ¶¶ 7, 9, 10, 13. This information could also be extrapolated and used by competitors presently to determine Moderna's pricing strategies by simply accounting for current economic and regulatory factors in view of the model previously used by Moderna. *Id.* Highly confidential financial information prepared for executive leadership, if known to Moderna's competitors, would provide valuable insight into Moderna's market position, revenue streams, projections, and overall financial position and harm Moderna's ability to sell, license, and collaborate in this highly competitive industry. *Id.* at ¶¶ 10–12. Preparation of detailed financial figures, risk

analysis, and other sensitive commercial information that was presented to Moderna's executives and directors and is only known within a select group of Moderna employees entrusted to keep this information confidential. *Id.* Moderna's pricing strategies and calculations could be valuable intelligence used by its competitors to evaluate Moderna's financial position and prepare pricing protocols for their own products, causing a serious injury to Moderna.

### D. Moderna's Highly Confidential Licensing Information Should Be Sealed

Exhibits 1, 8, 12, 54, C, Z, AA, AD, AH, AP, AO, AR, BJ, BK, and BY contain Moderna's confidential licensing information should be sealed. License and collaboration agreements, and the specific terms negotiated by the parties, should be redacted since the terms reflect highly sensitive information, "the disclosure of which [could] harm Plaintiff's competitive position and relationship with contracting parties not subject to suit." *Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, C.A. No. 17-90-LPS, D.I. 230 (D. Del. Sep. 16, 2019). In this highly competitive industry, public disclosure would reveal terms that would put the contracting parties at an economic disadvantage in future agreements. Courts in this district grant motions to seal when the harm outweighs the public's right to access the information. *See EIS Inc. v. IntiHealth Ger GmbH*, C.A. No. 19-1227-GBW, D.I. 696 (D. Del. Feb. 25, 2025) (granting motion to redact licensing information); *see also Kaleo, Inc. v. Adamis Pharms. Corp.*, C.A. No. 19-917-RGA, 2019 WL 11680196, at *1 (D. Del. July 16, 2019) (granting motion to seal details of and discussion of licensing negotiations). Even when the terms of the license are several years old, the license should be sealed when the terms can be extrapolated to analyze present economic and market factors. *See SmartSky Networks, LLC v. Gogo Business Aviation, LLC*, C.A. No. 22-266-JDW, D.I. 578 at 4–6 (D. Del. Nov. 5, 2025) (granting motion to seal license agreement when movant argued that "[w]hile the agreement may be several years old, this information has value to [movant's] present financial position and ability to engage in current negotiations as it is one

21

of the key agreements that impact commercialization of [movant's product] and would be a negotiation tool used by [movant's] competitors and potential licensors […].").   This Court previously granted a motion to seal licensing agreement information.  *See* D.I. 688 at 10 (sealing confidential licensing information when "[c]ompetitors and third-party contractors could use this information to create rival licensing agreements or obtain more favorable terms in license negotiations with Defendants. This is true notwithstanding the fact that some of the information Defendants seek to seal comes from agreements that are approximately 10 years old because this information still has value to Defendants' ability to engage in negotiations for agreements related to the intellectual property covered in these licenses. The competitive harm that Defendants would experience in the event this information was disclosed to the public is sufficient to satisfy the demands of *Avandia*'s second prong.").  Similarly, courts will protect information relating to settlement agreements and settlement offers.  *See* D.I. 688 at 6 (citing *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011)).   "[H]arm is clearly defined and serious enough under *Avandia*" when "[t]he disclosure of confidential settlement discussions could affect [a party's] position with respect to ongoing litigation[.]"  D.I. 688 at 6.

      **1.**     **Portions Of 1, 8, 12, 54, C, Z, AA, AD, AH, AP, AO, AR, BJ, BK, And BY Containing Confidential Licensing Information Should Be Sealed**

Exhibits 12, C, Z, AA, AD, AH, BK, and BY contain highly confidential information relating to license agreements entered into between Moderna and various third parties.  Ex. D at ¶¶ 11, 13–17, 22, 23.  This information is subject to confidentiality agreements and reflects careful negotiations that Moderna structured.  *Id.*  Exhibits C, Z, AA, and BY contain key licensing negotiation information and strategies that Moderna considers when entering into licensing agreements, including the potential financial implications of entering into agreements and developing its products.  *Id.* at ¶¶ 13–15, 23.  They also contain highly confidential

information about Moderna's considerations and goals, as well as Moderna's own internal licensing policies or factors that it considers, that is applies when entering into a potential licensing agreement, as well as manufacturing capacity as it relates to Moderna's expectations for calculating volume, price, costs, and overall profits. *Id.* Exhibit 8 contains highly confidential information pertaining to a confidential collaboration agreement to analysis and formulate certain potential mRNA-LNP formulations as well as a confidential collaboration agreement to study SM-102 as a potential candidate. *Id.* at ¶ 10. The testing, scope of the agreement, result, and source of the formulations are subject to third-party confidentiality agreements and reflect highly valuable information that Moderna's competitors could use to supply and test their own mRNA-LNP candidates. *Id.* Moderna would be harmed by the public disclosure of this sensitive product development information. Exhibit AH also contains highly confidential information about the scope of agreements with various collaborators, licenses, and licensees pertaining to certain categories of patent rights. *Id.* at ¶ 17. If these non-parties or any other competitors became aware of the different scopes of agreements that Moderna entered into, it would detrimentally impact Moderna's negotiation position with current and prospective collaborators, licensors, and licensees. *Id.* Exhibits 1, 54, AP, AQ, and AR contain highly confidential settlement communications pursuant to Federal Rule of Evidence 408. *Id.* at ¶¶ 9, 12, 19, 20. This information contains confidential discussions and proposed terms that would prove invaluable to Moderna's competitors and other intellectual property rights holders to gain insight into Moderna's negotiation strategies, policies, terms, offers, and considerations. *Id.* This highly confidential information was exchanged in confidence that it would remain confidential so as to allow the parties to discuss terms and conditions freely. *Id.*

The parties' respective Motion *in limine* briefing citing this highly confidential information identified above should be redacted to prevent the public disclosure of Moderna or third party confidential information. The redactions are narrowly tailored such that the public's ability to understand the briefing is not inhibited any more than necessary.

### 2. Moderna Would Be Seriously Harmed If Its Confidential Licensing Information Was Publicly Disclosed

The confidential licensing and collaboration information should be maintained under seal to prevent serious harm to Moderna.  If the information in Exhibits 1, 8, 12, 54, C, Z, AA, AD, AH, AP, AO, AR, BJ, BK, and BY became public, Moderna's bargaining abilities and its position to enter into future licensing and collaboration agreements would be hindered.  *Id.* at ¶¶ 9–23. Even though these agreements are older, the sophisticated structure of this agreement would provide valuable insight to Moderna's competitors and potential collaborators and licensees and licensors into Moderna's payment, rights, and responsibilities that Moderna is willing to enter into.  *Id.* at ¶¶ 15, 23, 25.  Likewise, the terms that Moderna negotiates in proposed agreements can provide a roadmap to potential collaborators, licensors, and licensees about the terms, including payment structures, that Moderna considers.  *Id.* at ¶ 6.  Access to Moderna's confidential financial position could be used by Moderna's competitors, to Moderna's detriment, to negotiate agreements.  *Id.* at ¶¶ 15–17, 22.  Moderna's own policies and considerations for entering into license is highly valuable and would weaken Moderna's negotiating ability. Moderna's analysis of its internal profit margins, financial projections, and pricing analysis is also valuable information that its competitors would employ when negotiating with Moderna.  *Id.* at ¶ 6.  The fact that confidential information to be maintained under seal in some of Moderna's exhibits dates back many years (including periods pre-dating the COVID-19 pandemic) does not undermine the risk of concrete harm to Moderna that would result from its disclosure.  *Id.* at ¶ 25.

Especially in the context of licenses involving the exchange of intellectual property rights (which generally have a 20-year term), confidential financial information retains relevance for the entirety of the license period—generally expressed in terms of the expiration date of the last-to-expire licensed patent on a country-by-country basis. *Id.* The amount of financial compensation is intrinsically tied to the scope of licensed intellectual property rights. *Id.* Thus, Moderna's competitive position and ability to negotiate favorable terms in subsequent negotiations relating to the same intellectual property implicated by "older" licenses will be undermined so long as the intellectual property has not expired—a scenario that is applicable to most, if not all, of Moderna's "older" licenses given the twenty-year patent term. *Id.* Because Moderna's key patent rights pre-date the COVID-19 pandemic, terms relating to the valuation and licensing of these rights retain value to Moderna's present financial position and ability to engage in current negotiation, particularly for royalty rates. *Id.* Moderna's highly confidential settlement communications pursuant to Federal Rule of Evidence 408 in Exhibits 1, 54, AP, AQ, and AR should also remain under seal. This highly confidential information was exchanged in confidence that it would remain confidential so as to allow the parties to discuss terms and conditions freely. *Id.* at ¶¶ 9, 12, 19, 20. Moderna's ability to engage in future negotiations would be encumbered if this information became public. *Id.* In a highly competitive industry that takes extreme precautions to ensure that confidential information remains confidential, the industry's view and reputation of Moderna as a contractual party could be materially tarnished if Moderna does not show that it excises great care to keep negotiation terms confidential. *Id.*

## V.    CONCLUSION

Moderna respectfully requests that the Court grant Moderna's Motion to Seal with respect to Moderna's highly confidential information in the Redacted Motion *in Limine* Filings.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

_____

Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

James F. Hurst
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
(312) 862-2000

Patricia A. Carson, Ph.D.
Jeanna M. Wacker, P.C.
Leslie M. Schmidt, P.C.
Mark C. McLennan
N. Kaye Horstman
Shaoyao Yu
Mara L. Greenberg
Andrew Lee
Brad Deem
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4679

Jason M. Wilcox, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

Noah Frank
Alina Afinogenova
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Yan-Xin Li
Laura Ashley Harris
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
(415) 439-1400

Elizabeth Elrod
KIRKLAND & ELLIS LLP
401 West 4th Street
Austin, TX  78701
(512) 678-9100

February 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 11, 2026, upon the following in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Karen E. Keller, Esquire<br>Nathan R. Hoeschen, Esquire<br>Emily S. DiBenedetto, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiffs Arbutus Biopharma Corporation and Genevant Sciences GmbH* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>Adam R. Brausa, Esquire<br>Eric C. Wiener, Esquire<br>Annie A. Lee, Esquire<br>Shaelyn K. Dawson, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>*Attorneys for Plaintiff Arbutus Biopharma Corporation* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017-3543<br>*Attorneys for Plaintiff Arbutus Biopharma Corporation* | *VIA ELECTRONIC MAIL* |

David N. Tan, Esquire                                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC  20037
*Attorneys for Plaintiff Arbutus Biopharma*
*Corporation*

David I. Berl, Esquire                                            *VIA ELECTRONIC MAIL*
Adam D. Harber, Esquire
Thomas S. Fletcher, Esquire
Shaun P. Mahaffy, Esquire
Andrew L. Hoffman, Esquire
Matthew W. Lachman, Esquire
Ricardo Leyva, Esquire
Arthur J. Argall III, Esquire
Falicia Elenberg, Esquire
Kathryn Larkin, Esquire
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC  20024
*Attorneys for Plaintiff Genevant Sciences GmbH*

Andrei Iancu, Esquire                                             *VIA ELECTRONIC MAIL*
Jeffrey B. Wall, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC  20006
*Attorneys for Plaintiff Genevant Sciences GmbH*


                                            */s/ Travis J. Murray*

                                            _____
                                            Travis J. Murray (#6882)


2